1   MORRISON & FOERSTER LLP                LATHAM & WATKINS LLP
    Joseph C. Gratz (SBN 240676)            Andrew M. Gass (SBN 259694)
2    jgratz@mofo.com                         andrew.gass@lw.com
    Tiffany Cheung (SBN 211497)             Joseph R. Wetzel (SBN 238008)
3    tcheung@mofo.com                        joseph.wetzel@lw.com
    425 Market Street                       505 Montgomery Street, Suite 2000
4   San Francisco, CA 94105                 San Francisco, CA 94111
    Telephone: 415.258.7522                 Telephone: 415.391.0600
5
    Allyson R. Bennett (SBN 302090)         Sarang V. Damle (*pro hac vice pending*)
6    abennett@mofo.com                       sy.damle@lw.com
    707 Wilshire Boulevard, Suite 6000      555 Eleventh Street, NW, Suite 1000
7   Los Angeles, CA 90017-3543              Washington, D.C. 20004
    Telephone: 213.892.5454                 Telephone: 202.637.2200
8
                                            Allison L. Stillman (*pro hac vice pending*)
9                                            alli.stillman@lw.com
                                            1271 Avenue of the Americas
10                                          New York, NY 10020
                                            Telephone: 212.751.4864
11
12                                          *Attorneys for Defendants OpenAI, Inc.,*
                                            *OpenAI, L.P., OpenAI OpCo, L.L.C., OpenAI*
                                            *GP, L.L.C., OpenAI Startup Fund GP I, L.L.C.,*
13                                          *OpenAI Startup Fund I, L.P., and OpenAI*
                                            *Startup Fund Management, LLC*
14
                    UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16
                      SAN FRANCISCO DIVISION
17

18   PAUL TREMBLAY, an individual;              CASE NO. 3:23-cv-03223-AMO
     MONA AWAD, an individual,
19                                              **DEFENDANTS' NOTICE OF MOTION,**
          Individual and Representative Plaintiffs,   **MOTION TO DISMISS, AND**
20                                              **MEMORANDUM OF POINTS AND**
          v.                                    **AUTHORITIES IN SUPPORT OF**
21                                              **MOTION TO DISMISS**
     OPENAI, INC., a Delaware nonprofit corporation;
22   OPENAI, L.P., a Delaware limited partnership;   Date:      December 7, 2023
     OPENAI OPCO, L.L.C., a Delaware limited    Time:      2:00 pm
23   liability corporation; OPENAI GP, L.L.C., a    Place:     Courtroom 10 - 19th Floor
     Delaware limited liability company; OPENAI    Before:    Hon. Araceli Martínez-Olguín
24   STARTUP FUND GP I, L.L.C., a Delaware
     liability company; OPENAI STARTUP FUND I,
25   L.P., a Delaware limited partnership; and OPENAI
     STARTUP FUND MANAGEMENT, LLC, a
26   Delaware limited liability company,

27        Defendants.

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 7, 2023 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Courtroom 10, 19th Floor, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendants OpenAI, Inc., OpenAI, L.P., OpenAI OpCo, L.L.C., OpenAI GP, L.L.C., OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., and OpenAI Startup Fund Management, LLC (together, "OpenAI"), through their undersigned counsel, will, and hereby do, move to dismiss Counts II through VI of the Class Action Complaint ("Compl." or "Complaint") pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

OpenAI's Motion to Dismiss is based on this Notice, the supporting Memorandum of Points and Authorities, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing on the Motion.

## STATEMENT OF RELIEF SOUGHT

OpenAI seeks an order pursuant to FRCP 12(b)(6) dismissing Counts II through VI of the Complaint for failure to state a claim upon which relief can be granted.

## ISSUES TO BE DECIDED

The Motion presents the following issues to be decided: (1) Whether Count II of the Complaint, for vicarious copyright infringement, should be dismissed for failure to plead an act of direct infringement and/or failure to plead facts to support the elements of a vicarious infringement claim; (2) Whether Count III of the Complaint, for violation of Section 1202 of the DMCA, *see* 17 U.S.C. § 1202(b), should be dismissed for failure to allege removal or alteration of copyright management information, failure to plead facts to raise a reasonable inference of scienter, and/or failure to allege that OpenAI distributed "cop[ies]" of Plaintiff's work; (3) Whether Count IV of the Complaint, for violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, should be dismissed for failure to state a predicate violation, failure to allege economic harm, and/or failure to establish that Plaintiff lacks an adequate remedy at law; (4) Whether Count V of the Complaint, for "negligence," should dismissed for failure to plead negligence and/or failure to plead facts sufficient to establish that OpenAI owed a duty; (5) Whether Count VI of the Complaint, for

1    "unjust enrichment," should be dismissed for failure to plead facts to satisfy the elements of an

2    unjust enrichment claim; and (6) Whether Counts V and VI of the Complaint, for "negligence"

3    and "unjust enrichment," should be dismissed as preempted by Section 301 of the Copyright Act.

4

5    Dated:  August 28, 2023                    Respectfully submitted,

6                                              By:   */s/ Joseph C. Gratz*_____

7                                              MORRISON & FOERSTER LLP
                                               Joseph C. Gratz (SBN 240676)
8                                               jgratz@mofo.com
                                               Tiffany Cheung (SBN 211497)
9                                               tcheung@mofo.com
                                               425 Market Street
10                                             San Francisco, CA 94105
                                               Telephone: 415.258.7522
11
                                               Allyson R. Bennett (SBN 302090)
12                                              abennett@mofo.com
                                               707 Wilshire Boulevard, Suite 6000
13                                             Los Angeles, CA 90017-3543
                                               Telephone: 213.892.5454
14
                                               By:   */s/ Andrew M. Gass*_____
15
                                               LATHAM & WATKINS LLP
16                                             Andrew M. Gass (SBN 259694)
                                                andrew.gass@lw.com
17                                             Joseph R. Wetzel (SBN 238008)
                                                joseph.wetzel@lw.com
18                                             505 Montgomery Street, Suite 2000
                                               San Francisco, CA 94111
19                                             Telephone: 415.391.0600

20                                             Sarang V. Damle (*pro hac vice pending*)
                                                sy.damle@lw.com
21                                             555 Eleventh Street, NW, Suite 1000
                                               Washington, D.C. 20004
22                                             Telephone: 202.637.2200

23                                             Allison L. Stillman (*pro hac vice pending*)
                                                alli.stillman@lw.com
24                                             1271 Avenue of the Americas
                                               New York, NY 10020
25                                             Telephone: 212.751.4864

26                                             *Attorneys for Defendants OpenAI, Inc., OpenAI,*
                                               *L.P., OpenAI OpCo, L.L.C., OpenAI GP, L.L.C.,*
27                                             *OpenAI Startup Fund GP I, L.L.C., OpenAI*
                                               *Startup Fund I, L.P., and OpenAI Startup Fund*
28                                             *Management, LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION .................................................................................................... 1

II. FACTS ALLEGED ................................................................................................. 4

III. LEGAL STANDARD ............................................................................................. 5

IV. ARGUMENT ......................................................................................................... 6

    A. The Limited Copyright Monopoly .................................................................. 6

        1. The Copyright Act Grants Only Specific, Enumerated Rights .............. 6

        2. Copyright Does Not Protect Ideas, Facts, or Language ......................... 6

        3. Substantial Similarity Is Required for Infringement .............................. 7

        4. Fair Use Is Not Infringement ................................................................. 7

    B. The Bulk of Plaintiffs' Claims Should Be Dismissed ..................................... 8

        1. Plaintiffs Fail to State a Vicarious Infringement Claim ......................... 8

            a. Plaintiffs Have Not Alleged Direct Infringement ......................... 9

            b. Plaintiffs Have Not Alleged the "Right and Ability to Supervise" .................................................................................. 10

            c. Plaintiffs Have Not Alleged "Direct Financial Interest" ............. 11

        2. Plaintiffs Fail to State a Claim under Section 1202(b) of the DMCA ................................................................................................. 11

            a. Copyright Management Information and the DMCA .................. 12

            b. Plaintiffs Fail to State a DMCA Claim ....................................... 13

                 i. Section 1202(b)(1) ........................................................... 14

                 ii. Section 1202(b)(3) ........................................................... 17

        3. Plaintiffs Fail to State a UCL Claim .................................................... 18

        4. Plaintiffs Fail to State a Claim for Negligence .................................... 20

        5. Plaintiffs Fail to State a Claim for Unjust Enrichment ......................... 21

        6. The Negligence and Unjust Enrichment Claims Are Preempted ........... 22

V. CONCLUSION .................................................................................................... 24

## **TABLE OF AUTHORITIES**

### **CASES**

Page(s)

*A.V. ex rel. Vanderhye v. iParadigms, LLC,*
    562 F.3d 630 (4th Cir. 2009) ........................................................................ 2, 8

*A'Lor Int'l, Ltd. v. Tapper Fine Jewelry, Inc.,*
    No. 12-cv-02215, 2012 WL 12921035 (C.D. Cal. Aug. 8, 2012) ................. 18

*AF Holdings, LLC v. Doe,*
    No. 12-cv-2049, 2012 WL 3835102 (N.D. Cal. Sept. 4, 2012) .................... 24

*Alan Ross Machinery Corp. v. Machinio Corp.,*
    No. 17-cv-3569, 2019 WL 1317664 (N.D. Ill. Mar. 22, 2019) ..................... 15

*Armstrong-Harris v. Wells Fargo Bank, N.A.,*
    No. 21-cv-07637, 2022 WL 3348426 (N.D. Cal. Aug. 12, 2022) ............. 18, 19

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................ 5

*Assessment Technologies of WI, LLC v. WIREdata, Inc.,*
    350 F.3d 640 (7th Cir. 2003) ......................................................................... 8

*Associated Press v. All Headline News Corp.,*
    608 F. Supp. 2d 454 (S.D.N.Y. 2009) ..................................................... 13, 16

*Astiana v. Hain Celestial Grp., Inc.,*
    783 F.3d 753 (9th Cir. 2015) ........................................................................ 21

*Atari Games Corp. v. Nintendo of Am. Inc.,*
    975 F.2d 832 (Fed. Cir. 1992) ....................................................................... 8

*Atkins v. Fischer,*
    331 F.3d 988 (D.C. Cir. 2003) ..................................................................... 10

*Authors Guild v. Google, Inc. (Google Books),*
    804 F.3d 202 (2d Cir. 2015) ...................................................................... 2, 7

*Baiul-Farina v. Lemire,*
    804 F. App'x 533 (9th Cir. 2020) ................................................................ 21

*Bateman v. Mnemonics, Inc.,*
    79 F.3d 1532 (11th Cir. 1996) ....................................................................... 8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................. 5, 10

*Bittel Technology, Inc. v. Bittel USA, Inc.,*
    No. 10-cv-00719, 2010 WL 3221864 (N.D. Cal. Aug. 13, 2010) ............. 21, 22

*Bosco Wai-Choy Chiu v. NBS Default Servs., LLC,*
    No. 14-cv-05261, 2015 WL 1221399 (N.D. Cal. Mar. 17, 2015) ................. 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:23-cv-03223-AMO

*Cable v. Agence France Presse*,
   728 F. Supp. 2d 977 (N.D. Ill. 2010) ................................................................. 12

*Carlson v. San Mateo Cnty*,
   103 F.3d 137, 1996 WL 717310 (9th Cir. 1996) ................................................. 20

*Castro v. Emeritus Corp.*,
   No. 11-cv-03504, 2012 WL 601857 (N.D. Cal. 2012) ........................................ 15

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ................................................................................ 7

*Corbello v. Valli*,
   974 F.3d 965 (9th Cir. 2020) ................................................................................ 7

*Cromwell v. Certified Forensic Loan Auditors*,
   No. 17-cv-02429, 2019 WL 1095837 (N.D. Cal. Jan. 10, 2019) ......................... 24

*Dam Things from Denmark v. Russ Berrie & Co., Inc.*,
   290 F.3d 548 (3d Cir. 2002) ............................................................................... 10

*Davis v. RiverSource Life Ins. Co.*,
   240 F. Supp. 3d 1011 (N.D. Cal. 2017) .............................................................. 19

*Del Madera Properties v. Rhodes and Gardner, Inc.*,
   820 F.2d 973 (9th Cir. 1987) .............................................................................. 24

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
   528 F.3d 696 (9th Cir. 2008) .............................................................................. 18

*Design Basics, LLC v. WK Olson Architects, Inc.*,
   No. 17-cv-7432, 2019 WL 527535 (N.D. Ill. Feb. 11, 2019) ............................. 18

*Dielsi v. Falk*,
   916 F. Supp. 985 (C.D. Cal. 1996) ..................................................................... 24

*Doe 1 v. Github*,
   No. 22-cv-06823, 2023 WL 3449131 (N.D. Cal. May 11, 2023) ......................... 19

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
   No. 22-cv-01463, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ...................... 17

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003) .............................................................................................. 7

*Erickson Prods., Inc. v. Kast*,
   921 F.3d 822 (9th Cir. 2019) .............................................................................. 11

*ESG Cap. Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) ............................................................................ 21

*Fashion Nova, LLC v. Blush Mark, Inc.*,
   No. 22-cv-6127, 2023 WL 4307646 (C.D. Cal. June 30, 2023) ..................... 15, 16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:23-cv-03223-AMO

*Feist Publications Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ............................................................................................................ 6

*Field v. Google Inc.*,
412 F. Supp. 2d 1106 (D. Nev. 2006) ................................................................................. 2

*Firoozye v. Earthlink Network*,
153 F. Supp. 2d 1115 (N.D. Cal. 2001) ............................................................................ 24

*Fisher v. Forrest*,
286 F. Supp. 3d 590 (S.D.N.Y. 2018) ............................................................................... 18

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996) .............................................................................................. 10

*Free Speech Sys. LLC v. Menzel*,
390 F. Supp. 3d 1162 (N.D. Cal. 2019) ...................................................................... 13, 14

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
No. 13-cv-00496, 2015 WL 263556 (D. Haw. Jan 21, 2015) ...................................... 17, 18

*Fuzzy Logic Prods., Inc. v. Trapflix, LLC*,
No. 15-cv-6203, 2015 WL 12791508 (C.D. Cal. Nov. 20, 2015) ...................................... 9

*Google LLC v. Oracle Am., Inc.*,
141 S. Ct. 1183 (2021) .................................................................................................... 3, 8

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ....................................................................................... 5, 15

*Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*,
No. 07-cv-3983, 2007 WL 4532214 (N.D. Cal. Dec. 19, 2007) ....................................... 24

*Kelly v. Arriba Soft Corp.*,
336 F.3d 811 (9th Cir. 2003) .............................................................................................. 2

*Kelly v. Arriba Soft Corp.*,
77 F. Supp. 2d 1116 (C.D. Cal. 1999) .......................................................................... 13, 16

*Kilina America, Inc. v. Bonded Apparel, Inc.*,
No. 19-cv-3027, 2019 WL 8065854 (C.D. Cal. Nov. 19, 2019) ...................................... 10

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
No. 20-cv-1931, 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ...................................... 18

*Kodadek v. MTV Networks, Inc.*,
152 F.3d 1209 (9th Cir. 1998) .......................................................................................... 19

*Langan v. United Servs. Auto. Ass'n*,
69 F. Supp. 3d 965 (N.D. Cal. 2014) ............................................................................... 20

*Laws v. Sony Music Ent., Inc.*,
448 F.3d 1134 (9th Cir. 2006) ..................................................................................... 23, 24

*Li v. Yellow Cab Co.*,
   13 Cal. 3d 804 (1975) ................................................................................. 21

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ................................................................. 9, 10

*Logan v. Meta Platforms, Inc.*,
   636 F. Supp. 3d 1052 (N.D. Cal. 2022) ....................................................... 13

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) ..................................................................... 22

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
   629 F.3d 928 (9th Cir. 2010) ......................................................................... 9

*Metro-Goldwin-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) ........................................................................................ 2

*Mills v. Netflix, Inc.*,
   No. 19-cv-7618, 2020 WL 548558 (C.D. Cal. Feb. 3, 2020) ....................... 15

*Nash v. CBS, Inc.*,
   899 F.2d 1537 (7th Cir. 1990) ....................................................................... 7

*New Sensations, Inc. v. Does*,
   No. 12-cv-3800, 2012 WL 12898400 (N.D. Cal. Nov. 29, 2012) ................. 21

*O'Neal v. Sideshow, Inc.*,
   583 F. Supp. 3d 1282 (C.D. Cal. 2022) ....................................................... 16

*Parrish v. Nat'l Football League Players Ass'n*,
   534 F. Supp. 2d 1081 (N.D. Cal. 2007) .................................................... 6, 14

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) .............................................................. 8, 10, 11

*Reiffer v. NYC Luxury Limousine Ltd.*,
   No. 22-cv-2374, 2023 WL 4029400 (S.D.N.Y. June 15, 2023) ............... 13, 17

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) ..................................................................... 24

*Robert L. Stark Enters., Inc. v. Neptune Design Grp., LLC*,
   No. 16-cv-264, 2017 WL 1345195 (N.D. Ohio Apr. 12, 2017) ................... 17

*Rosal v. First Fed. Bank of Cal.*,
   671 F. Supp. 2d 1111 (N.D. Cal. 2009) ....................................................... 22

*Schmitt v. SN Servicing Corp.*,
   No. 21-cv-03355, 2021 WL 3493754 (N.D. Cal. Aug. 2021) ....................... 21

*Schneider v. YouTube, LLC*,
   No. 20-cv-04423, 2023 WL 3605981 (N.D. Cal. May 22, 2023) ................... 9

*Sega Enterprises Ltd. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1992) ................................................................. 2, 8

*Semore v. Pool*,
    217 Cal. App. 3d 1087 (1990) .................................................................. 20

*Shade v. Gorman*,
    No. 08-cv-3471, 2009 WL 196400 (N.D. Cal. Jan. 28, 2009)................... 24

*Shihab v. Complex Media, Inc.*,
    No. 21-cv-6425, 2022 WL 3544149 (S.D.N.Y. Aug. 17, 2022)................ 18

*Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*,
    No. 11-cv-01197, 2012 WL 13028094 (C.D. Cal. Apr. 4, 2012) .............. 20

*Silverman v. OpenAI, Inc.*,
    No. 23-cv-03416 (N.D. Cal., filed July 7, 2023) ....................................... 1

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) .................................................................... 7

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..................................................................... 20

*Sony Computer Ent., Inc. v. Connectix Corp.*,
    203 F.3d 596 (9th Cir. 2000) ................................................................... 2, 8

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)................................................................................. 6, 8

*Tremblay v. OpenAI, Inc.*,
    No. 23-cv-03223 (N.D. Cal., filed June 28, 2023)...................................... 1

*Troyk v. Farmers Grp., Inc.*,
    171 Cal. App. 4th 1305 (2009) ............................................................ 19, 20

*Twentieth Century Music Corp. v. Aiken*,
    422 U.S. 151 (1975).................................................................................... 6

*United States ex rel. Berge v. Bd. Of Tr. of the Univ. of Ala.*,
    104 F.3d 1453 (4th Cir. 1997) .................................................................. 22

*Victor Elias Photography, LLC v. Ice Portal, Inc.*,
    43 F.4th 1313 (11th Cir. 2022) ................................................................. 16

## STATUTES

17 U.S.C. § 101 ....................................................................................... 6, 23

17 U.S.C. § 102 ....................................................................................... 6, 23

17 U.S.C. § 106 .................................................................................... 6, 7, 24

17 U.S.C. § 107 ............................................................................................. 7

17 U.S.C. § 1202 ............................................................................................................ *passim*

17 U.S.C. § 1203 ...................................................................................................................... 18

17 U.S.C. § 301 ................................................................................................................... 22, 23

17 U.S.C. § 412 ........................................................................................................................ 18

Cal. Bus. & Prof. Code § 17200, *et seq.* ............................................................................. *passim*

Cal. Civ. Code § 1714 ............................................................................................................. 21

## CONSTITUTIONAL PROVISIONS

U.S. CONST. Article 1, § 8, cl. 8 ............................................................................................. 2, 6

## OTHER AUTHORITIES

William F. Patry, PATRY ON COPYRIGHT  (Mar. 2023 update) ............................................. 10, 23

Andrew Chow, *Why Bill Gates Believes Generative AI Will Be 'Revolutionary,'*
    Time (Mar. 21, 2023), https://time.com/6264801/bill-gates-ai/ ............................................. 1

Cal Newport, *What Kind of Mind Does ChatGPT Have?,*
    New Yorker (Apr. 23, 2013), https://www.newyorker.com/science/
    annals-of-artificial-intelligence/what-kind-of-mind-does-chatgpt-have ................................ 2

Francesca Paris & Larry Buchanan, *35 Ways Real People Are Using A.I. Right Now*,
    N.Y. Times (Apr. 14, 2023), https://www.nytimes.com/interactive/2023/04/14/
    upshot/up-ai-uses.html ........................................................................................................ 1

H.R. Rep. 94-1476 (1976) ............................................................................................... 7, 10, 18

Henry Kissinger, Eric Schmidt & Daniel Huttenlocher, *ChatGPT Heralds*
    *an Intellectual Revolution*, Wall Street Journal (Feb. 24, 2023),
    https://www.wsj.com/articles/chatgpt-heralds-an-intellectual-revolution-
    enlightenment-artificial-intelligence-homo-technicus-technology-cognition-
    morality-philosophy-774331c6 ............................................................................................. 1

Julie E. Cohen, *A Right To Read Anonymously: A Closer Look*
    *at "Copyright Management" in Cyberspace*, 28 CONN. L. REV. 981, 990 (1996) ................ 12

Mark A. Lemley & Bryan Casey, *Fair Learning*, 99 TEX. L. REV. 743 (2021) ........................... 3

Pamela Samuelson, *The Quest For A Sound Conception Of Copyright's*
    *Derivative Work Right*, 101 GEO. L. J. 1505 (2013) ................................................................ 10

S. Rep. 105-190 (1998) ........................................................................................................... 12

U.S. Dep't of Commerce, Information Infrastructure Task Force, Intellectual Property
    and the National Information Infrastructure: The Report of the Working Group on
    Intellectual Property Rights 235-36 (1995) ......................................................................... 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii

DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:23-cv-03223-AMO

## I.      INTRODUCTION

This Motion addresses two near-identical class action complaints seeking to hold OpenAI liable on copyright and other theories for the creation and operation of an artificial intelligence service known as ChatGPT.[1]   OpenAI moves for dismissal of most but not all of the claims asserted.

"ChatGPT and other A.I. tools are helping people to save time at work, to code without knowing how to code, to make daily life easier or just to have fun."  *See* Francesca Paris & Larry Buchanan, *35 Ways Real People Are Using A.I. Right Now*, N.Y. Times (Apr. 14, 2023), https://www.nytimes.com/interactive/2023/04/14/upshot/up-ai-uses.html.   While the technology is still in its early days, some commentators believe that in the future, it may help to remedy "some of the world's worst inequities," from unequal access to health care, to global educational disparities, and beyond.  *See* Andrew Chow, *Why Bill Gates Believes Generative AI Will Be 'Revolutionary,'* Time (Mar. 21, 2023), https://time.com/6264801/bill-gates-ai/.   Others suggest that ChatGPT, in particular, "Heralds an Intellectual Revolution," representing an innovation whose significance may ultimately prove comparable to "the invention of printing."  *See* Henry Kissinger, Eric Schmidt & Daniel Huttenlocher, *ChatGPT Heralds an Intellectual Revolution*, Wall Street Journal (Feb. 24, 2023), https://www.wsj.com/articles/chatgpt-heralds-an-intellectual-revolution-enlightenment-artificial-intelligence-homo-technicus-technology-cognition-morality-philosophy-774331c6.

In its current form, the technology allows users to submit text prompts, and receive back content generated by the software and servers that comprise the ChatGPT service.  That service, in turn, works by combining an underlying engine known as a "large language model" with additional measures intended to ensure the accuracy, appropriateness, safety, and utility of the

---

[1] This brief addresses both complaints and will be filed concurrently on both dockets.  The first case was filed on behalf Paul Tremblay and Mona Awad.  Complaint *in Tremblay v. OpenAI, Inc.*, No. 23-cv-03223, Dkt. 1 (N.D. Cal., filed June 28, 2023) ("Tremblay Compl.").  The same counsel then filed an identical complaint on behalf of three other plaintiffs, including Sarah Silverman (with Tremblay, "Plaintiffs").  Complaint *in Silverman v. OpenAI, Inc.,* No. 23-cv-03416, Dkt. 1 (N.D. Cal., filed July 7, 2023) ("Silverman Compl.").  This Court granted a motion to relate the cases on July 28, 2023, after which Awad dismissed her claims.  No. 23-cv-03223, Dkts. 26, 29. Plaintiffs have not moved to consolidate the cases.

outputs presented to users.  The large language model is a type of "neural network."  It consists of a staggeringly large series of statistical correlations that yield rules about the constitutive elements of human language—correlations and rules the model "learned" by having been shown many, many examples of text.  For the purpose of "training" a model of this type, it is the *volume* of text used, more than any particular *selection* of text, that really matters, for the simple reason that a truly massive quantity of samples is required to derive comprehensively accurate statistical representations of the concepts, grammar, semantics, and quirks that underlie ordinary human language.  "The key," as one commentator explained, "is scale."  *See* Cal Newport, *What Kind of Mind Does ChatGPT Have?*, New Yorker (Apr. 23, 2013), https://www.newyorker.com /science/annals-of-artificial-intelligence/what-kind-of-mind-does-chatgpt-have.

Plaintiffs here are the authors of books.  They filed suit for monetary compensation and other relief, on behalf of themselves and those similarly situated, because they believe their texts were a tiny part of the dataset that OpenAI used to teach its models to derive the rules underlying human language in the service of the goals recited above.

At the heart of Plaintiffs' Complaints are copyright claims.  Those claims, however, misconceive the scope of copyright, failing to take into account the limitations and exceptions (including fair use) that properly leave room for innovations like the large language models now at the forefront of artificial intelligence.  The constitutional purpose of copyright is "[t]o promote the Progress of Science and useful Arts."  U.S. CONST. Art. 1, § 8, cl. 8.  As the Supreme Court has recognized, "[t]he more artistic protection is favored, the more technological innovation may be discouraged; the administration of copyright law is an exercise in managing the tradeoff." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928 (2005).  Numerous courts have applied the fair use doctrine to strike that balance, recognizing that the use of copyrighted materials by innovators in transformative ways does not violate copyright.  *See Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992) (videogame development); *Sony Computer Ent., Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000) (videogame emulators); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) (image search engines), *Field v. Google Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006) (web search engines); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562

1   F.3d 630 (4th Cir. 2009) (plagiarism detection tool); *Authors Guild v. Google, Inc. (Google Books)*,

2   804 F.3d 202 (2d Cir. 2015) (Google Books Project); *Google LLC v. Oracle Am., Inc.*, 141 S. Ct.

3   1183 (2021) (interfaces for Android operating system); *see generally* Mark A. Lemley & Bryan

4   Casey, *Fair Learning*, 99 TEX. L. REV. 743 (2021).  These are the key legal principles upon which

5   countless artificial intelligence products have been developed by a wide array of technology

6   companies.

7         This Motion, however, focuses only on the dismissal of the assortment of ancillary claims

8   that Plaintiffs included in their Complaints—claims for vicarious copyright infringement, violation

9   of the Digital Millennium Copyright Act ("DMCA"), unfair competition, "negligence," and unjust

10  enrichment.  None of these causes of action states a viable claim for relief because none of the

11  legal theories challenged here actually condemns the conduct alleged with respect to ChatGPT,

12  the language models that power it, or the process used to create them.  It is important for these

13  claims to be trimmed from the suit at the outset, so that these cases do not proceed to discovery

14  and beyond with legally infirm theories of liability.

15        With respect to the sole copyright theory challenged here, Plaintiffs' claims for vicarious

16  infringement are based on the erroneous legal conclusion that every single ChatGPT output is

17  necessarily an infringing "derivative work"—which is a very specific term in copyright law—

18  because those outputs are, in only a remote and colloquial sense, "based on" an enormous training

19  dataset that allegedly included Plaintiffs' books.  The Ninth Circuit has rejected such an expansive

20  conception of the "derivative work" right as "frivolous," holding that a derivative work claim

21  requires a showing that the accused work shares copyright-protected, expressive elements with the

22  original.  Plaintiffs' contrary theory is simply incorrect, and would be unworkable were it not.

23  According to the Complaints, *every single* ChatGPT output—from a simple response to a question

24  (*e.g.*, "Yes"), to the name of the President of the United States, to a paragraph describing the plot,

25  themes, and significance of Homer's *The Iliad*—is necessarily an infringing "derivative work" of

26  Plaintiffs' books.  Worse still, each of those outputs would simultaneously be an infringing

27  derivative of *each* of the millions of other individual works contained in the training corpus—

28  regardless of whether there are any similarities between the output and the training works.  That is

not how copyright law works.

The other claims addressed in this Motion are similarly defective. The DMCA claims would ascribe liability to conduct that does not satisfy the detailed statutory elements of the cause of action. The state law claims do not apply to the facts actually alleged: training a large language model to perform as described in the Complaints, for example, is not in any sense "negligence" as tort law defines that term. And those claims are also preempted by federal copyright law.

For these reasons and the others articulated below, OpenAI respectfully seeks dismissal of the claims challenged in this Motion.

## II.    FACTS ALLEGED

<u>Plaintiffs</u>.  Plaintiffs are writers who allege that their books were used to train the language models on which ChatGPT relies. The remaining Plaintiff in the *Tremblay* action is Paul Tremblay, a writer who claims to own a registered copyright in a book titled *The Cabin at the End of the World.* Tremblay Compl. ¶ 10; *see also id.* ¶ 55 (defining "Infringed Works" to mean this book and two others allegedly written by the now-dismissed co-plaintiff, Mona Awad). The three Plaintiffs in the *Silverman* action are writers who claim to own registered copyrights in three books: *The Bedwetter* (Silverman), *Ararat* (Golden), and *Sandman Slim* (Kadrey). Silverman Compl. ¶¶ 10–12; *see also id.* ¶ 56 (defining "Infringed Works" to mean these three books).

<u>Defendants</u>.  The defendants in these actions are seven entities that Plaintiffs collectively refer to as "OpenAI." Tremblay Compl. ¶¶ 13–19, Silverman Compl. ¶¶ 14–20. Plaintiffs allege a series of connections between these entities, *id.*, but do not otherwise distinguish between them.[2]

<u>Plaintiffs' Allegations</u>.  These lawsuits focus on ChatGPT, an OpenAI service that reads user "text prompts" and generates "answers" and other responses that "mimic human language." Tremblay Compl. ¶ 38, Silverman Compl. ¶ 39. Plaintiffs allege that ChatGPT relies on one of two "large language models," referred to as GPT-3.5 and GPT-4. Tremblay Compl. ¶¶ 2, 36, Silverman Compl. ¶¶ 2, 37. They allege that these "large language models" "train" by studying a large amount of "training data," from which the models derive abstract "patterns and connections"

---

[2] Nothing in either Complaint specifies which of these seven entities engaged in the alleged conduct.

about language.  Tremblay Compl. ¶¶ 2, 39, Silverman Compl. ¶¶ 2, 40.  The models then allegedly repurpose these "patterns and connections" to interpret user prompts and generate "convincingly naturalistic text outputs."  *Id.*  As Plaintiffs acknowledge, the ability of digital software to do so reflects a legitimate scientific advancement in the field of artificial intelligence, which seeks to "simulate human reasoning and inference."  Tremblay Compl. ¶ 22, Silverman Compl. ¶ 23.

Plaintiffs brought these lawsuits because they suspect that OpenAI used the "patterns and connections" in their books to teach its models how to "convers[e]" with users.  Tremblay Compl. ¶¶ 36, 39–41, Silverman Compl. ¶¶ 37, 40–42.  The basis for that suspicion is that, when Plaintiffs prompted ChatGPT to "summarize [their books] in detail," ChatGPT was able to generate more-or-less "accurate" summaries.  Tremblay Compl. ¶ 41 & Ex. B, Silverman Compl. ¶ 42 & Ex. B.  These summaries—which Plaintiffs attached to the Complaints, along with the prompts they used to create them—resemble book reports or reviews: they summarize the contours of the books' contents and praise the books' themes.  *See, e.g.,* Tremblay Compl. Ex. B at 1 ("Tremblay skillfully creates an escalating sense of dread . . . playing with themes of . . . familial love.").

On that basis, Plaintiffs seek to represent a class of "[a]ll" U.S persons who "own a []  copyright in any work"—not just books—"used as training data for the OpenAI Language Models."  Tremblay Compl. ¶ 42, Silverman Compl. ¶ 43.  They assert six causes of action: (1) direct copyright infringement (Count I); (2) vicarious infringement (Count II); (3) violation of Section 1202(b) of the Digital Millennium Copyright Act ("DMCA") (Count III); (4) unfair competition under Cal. Bus. & Prof. Code Section 17200 (Count IV); (5) negligence (Count V); and (6) unjust enrichment (Count VI).  OpenAI seeks dismissal of Counts II through VI.

## III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "[A] formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court should disregard conclusory allegations, legal characterizations, unreasonable inferences, and unwarranted factual deductions.  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

1  In a putative class action prior to certification, each of the named plaintiffs must "show that they

2  have satisfied the pleading requirements" and may not "rely on the alleged injuries of others."

3  *Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1094 (N.D. Cal. 2007).

4  **IV.    ARGUMENT**

5         Plaintiffs' claims arise out of a variety of federal and state laws, but each of the claims at

6  issue relate—directly or indirectly—to the Copyright Act and background principles of copyright

7  law.  Several of those principles are discussed briefly below.

8         **A.    The Limited Copyright Monopoly**

9         Copyright is a "statutory monopoly" of "limited scope."  *Twentieth Century Music Corp.*

10  *v. Aiken*, 422 U.S. 151, 156 (1975).  While the Copyright Act "secur[es] for limited times to authors

11  . . . [certain] exclusive right[s] to their respective writings," it does so in service of a broader goal:

12  "[t]o promote the Progress of Science and useful Arts."  U.S. CONST. Art. 1, § 8, cl. 8; *see also*

13  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984) ("reward to the owner"

14  of a copyrighted work is "secondary" to the "general benefits derived by the public" (citation

15  omitted)).   The Copyright Act generally protects "original works of authorship," 17 U.S.C.

16  § 102(a), but the scope of the monopoly is carefully limited to ensure that copyright serves its

17  intended public purpose.

18              1.    The Copyright Act Grants Only Specific, Enumerated Rights

19         "The Copyright Act does not give a copyright holder control over all uses of his

20  copyrighted work."  *Aiken*, 422 U.S. at 154–55.  "Rather, the Copyright Act grants the copyright

21  holder 'exclusive' rights to use and to authorize the use of his work in [six] qualified ways,"

22  enumerated in Section 106 of the Act.  *Sony,* 464 U.S. at 432–33.  As relevant here, the Act grants

23  the exclusive rights to (1) "reproduce the [] work in copies," 17 U.S.C. § 106(1); *see also id.* § 101

24  (defining "copies"); (2) "prepare derivative works," *id.* § 106(2), *see also id.* § 101 (defining

25  "derivative work"); and (3) "distribute copies . . . of the [] work to the public," *id.* § 106(3).

26              2.    Copyright Does Not Protect Ideas, Facts, or Language

27         Copyright protects the particular way an author expresses an idea—not the underlying idea

28  itself, facts embodied within the author's articulated message, or other building blocks of creative

1   expression. 17 U.S.C. § 102(b); *Feist Publications Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344–

2   45 (1991). As a result, "every idea, theory, and fact in a copyrighted work becomes instantly

3   available for public exploitation at the moment of publication." *Eldred v. Ashcroft*, 537 U.S. 186,

4   219 (2003). Accordingly, while an author may register a copyright in her book, the "statistical

5   information" pertaining to "word frequencies, syntactic patterns, and thematic markers" in that

6   book are beyond the scope of copyright protection. *Google Books*, 804 F.3d at 209; *see also id.* at

7   220 (tool that extracts "information about the original [work]" does not infringe because it does

8   not "replicat[e] protected expression"). So too for facts conveyed by the book, or its high-level

9   plot or themes.[3] These principles are essential to copyright's overall goal of "[i]ntellectual (and

10  artistic) progress," which is "possible only if each author [can] build[] on the work of others."

11  *Nash v. CBS, Inc.*, 899 F.2d 1537, 1540 (7th Cir. 1990) (Easterbrook, J).

12              3.    Substantial Similarity Is Required for Infringement

13  These limitations join each other in practice via the doctrine of "substantial similarity,"

14  which is the "hallmark" of any claim of infringement of the rights granted in Section 106.

15  *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). That doctrine requires the court

16  in a copyright case to compare the two works at issue by (1) "disregard[ing] the non-protectible

17  elements" like "stock scenes and themes" and "plot ideas," and (2) asking whether the remaining

18  "protectible elements, standing alone, are substantially similar." *Cavalier*, 297 F.3d at 822–23

19  (citations omitted). If a defendant's work is not "substantially similar" to an original, it is neither

20  a "copy" nor a "derivative work" for purposes of Section 106. 17 U.S.C. § 106(1)–(3).

21              4.    Fair Use Is Not Infringement

22  Even where a defendant has *prima facie* infringed one of the Section 106 rights by creating

23  a "substantially similar" copy or derivative work, Section 107 of the Act provides that "the fair

24  use of a copyrighted work . . . is not an infringement of copyright." 17 U.S.C. § 107. While the

25  fair use doctrine has its roots in the common law and dates back to the 19th century or earlier,

26  Congress codified it in 1976, instructing courts to "free[ly] [] "adapt" the application of fair use in

---

[3] *See Corbello v. Valli*, 974 F.3d 965, 977 (9th Cir. 2020) ("historical fact[s]" and "common . . . jargon" unprotectable (citation omitted)); *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823–24 (9th Cir. 2002) ("themes" and "basic plot ideas" unprotectable).

1   future cases to account for "rapid technological change." H.R. Rep. 94-1476 at 65–66 (1976).

2   Under the resulting judicial precedent, it is not an infringement to create "wholesale cop[ies] of [a

3   work] as a preliminary step" to develop a new, non-infringing product, even if the new product

4   competes with the original. *Oracle*, 141 S. Ct. at 1199 (summarizing *Accolade*, 977 F.2d at 1521–

5   27); *see also Connectix*, 203 F.3d at 603–08.[4]

6       **B.      The Bulk of Plaintiffs' Claims Should Be Dismissed**

7       This motion seeks dismissal with prejudice of Counts II through VI of each Complaint,

8   alleging vicarious copyright infringement (Count II); violation of Section 1202(b) of the Digital

9   Millennium Copyright Act ("DMCA") (Count III); unfair competition under Cal. Bus. & Prof.

10  Code Section 17200, *et seq.* (Count IV); negligence (Count V); and unjust enrichment (Count VI).

11  As discussed below, none of these causes of action applies to the conduct alleged. This motion

12  does not seek dismissal of Count I, for direct copyright infringement, which OpenAI will seek to

13  resolve as a matter of law at a later stage of the case.

14          1.      <u>Plaintiffs Fail to State a Vicarious Infringement Claim</u>

15      Vicarious liability is a legal theory for holding one party responsible for another party's act

16  of copyright infringement. Because "[t]he Copyright Act does not expressly render anyone liable

17  for infringement committed by another," the circumstances under which a non-actor can be held

18  liable are strictly limited. *Sony*, 464 U.S. at 434–35. As relevant here, a defendant may be held

19  "vicariously" liable if it "has (1) the right and ability to supervise the infringing conduct and (2) a

20  direct financial interest in the infringing activity." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d

21  657, 673 (9th Cir. 2017) (citation omitted).

22      Plaintiffs' vicarious infringement claims rest solely on the theory that, "[b]ecause the

23  output" of ChatGPT is "based on expressive information extracted from Plaintiffs' [books],"

24  "every [such] output . . . is an infringing derivative" of those books.   Tremblay Compl. ¶ 59,

25

26  ────────────
[4] Every other circuit to consider the issue has either endorsed these Ninth Circuit cases explicitly
27  or independently embraced the same principles. *iParadigms*, 562 F.3d at 638–40, 645; *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 643–45 (7th Cir. 2003); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1539 n.18 (11th Cir. 1996); *Atari Games Corp. v. Nintendo of Am.*
28  *Inc.*, 975 F.2d 832, 836–37, 842–44 (Fed. Cir. 1992). So has the Supreme Court. *Oracle*, 141 S. Ct. at 1198–99, 1208 (approving *Accolade* and *Connectix*).

Silverman Compl. ¶ 60.  The theory is *not* that OpenAI is vicariously liable for copyright infringements committed only when users are able to, despite OpenAI's best efforts, extract particular outputs from ChatGPT that contain copyright-protected expression from another source. It is instead that OpenAI is vicariously liable for the creation of infringing derivative works consisting of every single output that ChatGPT generates in response to user prompts.[5]  Tremblay Compl. ¶¶ 59–60, Silverman Compl. ¶¶ 60–61.  These claims fail for three independent reasons.

### a.     Plaintiffs Have Not Alleged Direct Infringement

First, a defendant cannot be held vicariously liable unless the plaintiff "first demonstrate[s] [that] direct infringement" actually occurred.  *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 937 (9th Cir. 2010).  Because the derivative-work theory underlying Plaintiffs' vicarious liability claim is wrong as a matter of law, the Complaints fail to identify any *bona fide* act of direct infringement for which OpenAI could be held liable.

Plaintiffs make no attempt to explain how or why any particular outputs are substantially similar to their books.  *Cf. Fuzzy Logic Prods., Inc. v. Trapflix, LLC*, No. 15-cv-6203, 2015 WL 12791508, at *4 (C.D. Cal. Nov. 20, 2015) (dismissing copyright claim where complaint was "devoid of any comparisons of protectable elements").  Instead, in an attempt to avoid the individualized nature of substantial similarity analysis,[6] Plaintiffs claim that "*every output* of the OpenAI Language Models is an infringing derivative" simply because those outputs are, in a remote and colloquial sense, "*based on* expressive information extracted from Plaintiffs' [books]." Tremblay Compl. ¶¶ 58–61 (emphasis added); *see also* Silverman Compl. ¶¶ 59–62.

But the Ninth Circuit has squarely rejected the proposition that a secondary work that is "based on" an original is necessarily a derivative work.  *See Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (calling this argument "frivolous").  Instead, the Circuit embraced the black-letter principle that "[t]o prove infringement" of any of the rights in Section 106, "one must show

---

[5] This distinction is critical *inter alia* because it goes to the heart of the appropriateness of asserting a class action and seeking class certification, which Plaintiffs have done and which will be addressed later in the case.  A theory that vicarious liability arises from every single output yields a very different class certification analysis from a theory that vicarious liability requires examining each output to see whether it is, in the copyright-law sense, "substantially similar" to a given input.

[6] *See Schneider v. YouTube, LLC*, No. 20-cv-04423, 2023 WL 3605981, at *6 (N.D. Cal. May 22, 2023) (similarity is "fact-specific" and generally precludes certification of infringement claims).

1    substantial similarity." *Id.*[7]

2         Every circuit to consider the question has reached the same conclusion: that "[i]n order to

3    infringe the derivative right, there must be substantial similarity in protectible expression."  4

4    PATRY ON COPYRIGHT § 12:13 & n.1 (Mar. 2023 update) (citing *Litchfield* along with cases from

5    Second, Fifth, Sixth, Eighth, and Eleventh Circuits); *see also Atkins v. Fischer*, 331 F.3d 988, 993

6    (D.C. Cir. 2003) (derivative work must be "substantially similar" to the original); *Dam Things

7    from Denmark v. Russ Berrie & Co., Inc*., 290 F.3d 548, 565 (3d Cir. 2002) (same); H.R. Rep. 94-

8    1476 at 62 ("[T]o constitute a violation of [the derivative work right], the infringing work must

9    incorporate a portion of the copyrighted work in some form; for example, a detailed commentary

10   on a work or a programmatic musical composition inspired by a novel would not normally

11   constitute infringements.").  Plaintiffs' theory that "every output . . . is [necessarily] an infringing

12   derivative" is wrong as a matter of law, which means their vicarious liability claim rests on conduct

13   that is not copyright infringement at all.  The claim fails for that reason alone.

14              **b.    *Plaintiffs Have Not Alleged the "Right and Ability to Supervise"***

15        Second, a defendant may only be held "vicariously" liable for another's direct infringement

16   if it had the "right and ability to supervise" that infringement.  *Giganews*, 847 F.3d at 673; *see,

17   e.g., Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262–63 (9th Cir. 1996) (organizer of

18   swap meet vicariously liable for sale of bootlegs because it "controlled and patrolled" vendors'

19   booths).  All Plaintiffs have pleaded on this score is the conclusory assertion that "OpenAI has the

20   right and ability to control the output of the OpenAI Language Models," without alleging any

21   supporting facts.  Tremblay Compl. ¶ 60, Silverman Compl. ¶ 61.  That is not enough to survive a

22   motion to dismiss a vicarious copyright infringement claim.  *Kilina America, Inc. v. Bonded

23   Apparel, Inc*., No. 19-cv-3027, 2019 WL 8065854, at *2 (C.D. Cal. Nov. 19, 2019) ("Merely

24   alleging that the Defendants had the 'right and ability to supervise the infringing conduct' lacks

25   the requisite detail to sustain a claim."); *see also Twombly*, 550 U.S. at 555 ("formulaic recitation

---

[7] This is the reason "[e]xplanations, commentaries, [or] prefaces" are not derivatives of the material they are "based upon"—absent similarity of "expression," they do not "fall[] within [copyright's] derivative work right."  Pamela Samuelson, *The Quest For A Sound Conception Of Copyright's Derivative Work Right*, 101 GEO. L. J. 1505, 1540 (2013).

1   of the elements of a cause of action will not do").  This pleading failure is an independent basis on

2   which the claim should be dismissed.

3          *c.*     *Plaintiffs Have Not Alleged "Direct Financial Interest"*

4         Third, a vicarious liability claim requires that the defendant have a "direct financial

5   interest" in the direct infringement at issue.  *Giganews*, 847 F.3d at 673.  It is not enough that the

6   challenged activity is carried out by users of tools offered for profit by a technology company:

7   rather, to satisfy the "direct financial interest" prong, the material that infringes the plaintiff's

8   works must "act[] as a draw for [defendant's] customers" such that there is a direct "causal link

9   between the infringement of the plaintiff's *own copyrighted works* and any profit to the

10   [defendant]."  *Id.* (citation omitted) (emphasis added).

11         Plaintiffs' sole allegation with respect to an alleged direct financial benefit is that OpenAI

12   "benefited financially."  Tremblay Compl. ¶ 60, Silverman Compl. ¶ 61.  But that alone does not

13   sustain a vicarious copyright infringement claim.  *Giganews*, 847 F.3d at 673–74.  Nor would it

14   matter if users were "drawn to [OpenAI's products] to obtain access to infringing material in

15   general."  *Id.* at 673 (cleaned up).  The operative pleading standard is materially higher, requiring

16   a closer nexus between the infringement of the plaintiffs' works and a cognizable financial benefit

17   to the defendant.  *See id.*; *see also Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 829–30 (9th Cir.

18   2019) (rejecting vicarious infringement claim because plaintiff "[did] not contend that anyone

19   visited [defendant]'s website in order to view his photographs or purchased [defendant's] services

20   because they saw the photographs").  The absence of alleged facts to support the legal conclusion

21   that OpenAI derives the requisite direct financial benefit from infringing activity is a third

22   independent basis on which the vicarious infringement claim should be dismissed.

23         2.    Plaintiffs Fail to State a Claim under Section 1202(b) of the DMCA

24         Plaintiffs bring claims under Section 1202(b) of the Digital Millennium Copyright Act

25   ("DMCA"), which (as relevant here) prohibits the "intentional[] remov[al] or alter[ation]" of

26   copyright management information ("CMI"), *see* 17 U.S.C. § 1202(b)(1), and the "distribut[ion]"

27   of "works" or "copies of works . . . knowing that [CMI] has been removed or altered," *see id.*

28   § 1202(b)(3).  Plaintiffs allege that OpenAI "intentionally removed CMI from [their] Infringed

1    Works" during the "training process" in violation of 17 U.S.C. § 1202(b)(1), *see* Tremblay Compl.

2    ¶ 64, Silverman Compl. ¶ 65, and "distribut[ed]" the models' outputs without Plaintiffs' CMI in

3    violation of 17 U.S.C. § 1202(b)(3), *see* Tremblay Compl. ¶ 65, Silverman Compl. ¶ 66.   These

4    claims are far afield from the statutory language and purpose of Section 1202, which is briefly

5    surveyed below.   That background illuminates the flaws in these claims.   As addressed below,

6    Plaintiffs' Section 1202(b)(1) claims fail because (1) Plaintiffs do not plausibly allege that any

7    CMI was removed during the training process, and (2) Plaintiffs do not plead facts sufficient to

8    draw a reasonable inference that OpenAI designed its process with the requisite intent to conceal

9    infringement.   And Plaintiffs' Section 1202(b)(3) claims fail because that provision applies only

10   if the defendant "distribute[d]" the plaintiff's actual "works" or "copies of [them]," which is not

11   alleged here.

12                    a.      *Copyright Management Information and the DMCA*

13           Congress enacted Section 1202 of the DMCA as part of a policy initiative to "help

14   copyright owners police their copyrights, in light of the otherwise trivial ease of generating and

15   distributing unauthorized copies of their works throughout cyberspace."   Julie E. Cohen, *A Right

16   To Read Anonymously: A Closer Look at "Copyright Management" in Cyberspace*, 28 CONN. L.

17   REV. 981, 990 (1996); *see also* S. Rep. 105-190 at 8, 11 n.18 (1998) (noting the overarching

18   legislative purpose to "discourage piracy" on the Internet); U.S. Dep't of Commerce, Information

19   Infrastructure Task Force, Intellectual Property and the National Information Infrastructure: The

20   Report of the Working Group on Intellectual Property Rights 235–36 (1995) (initially proposing

21   Section 1202).   To permit copyright owners to "track[] and monitor[]" how their works are used

22   online, Section 1202 encourages owners to affix "copyright management information" or "CMI"

23   to their works, and imposes penalties on defendants who frustrate those efforts by removing or

24   altering that information.   S. Rep. 105-190 at 16–17; 17 U.S.C. § 1202(b).   Thus, in the typical

25   Section 1202 case, the plaintiff might allege that it published a photograph along with a "photo

26   credit and copyright notice," and that the defendant both copied that photograph and "deliberately

27   removed" the accompanying CMI—*e.g.*, by cropping out the photo credit—to hide its wrongdoing.

28   *See, e.g., Cable v. Agence France Presse*, 728 F. Supp. 2d 977, 978 (N.D. Ill. 2010); *see also*

1   *Associated Press v. All Headline News Corp.*, 608 F. Supp. 2d 454, 458 (S.D.N.Y. 2009) (Section

2   1202 claim based on allegation that editors "instructed reporters to remove or alter the

3   identification of the AP as author or copyright holder of [news] articles").

4         To ensure the statute hewed closely to that purpose, Congress included in Section 1202 a

5   "double-scienter" requirement.  Simply removing CMI from a copyrighted work does not yield

6   liability.  A Section 1202 plaintiff must also establish both (1) that the removal or alteration was

7   done "intentionally" (or, for distribution-based claims, was done "knowing that [CMI] has been

8   removed or altered") and (2) that these acts were performed with "reasonable grounds to

9   know . . . that [they] will induce, enable, facilitate, or conceal an infringement [of copyright]."  17

10  U.S.C. § 1202(b).  In the typical Section 1202 case, these elements are not difficult to plead.  *See,*

11  *e.g., Reiffer v. NYC Luxury Limousine Ltd*., No. 22-cv-2374, 2023 WL 4029400, at *8 (S.D.N.Y.

12  June 15, 2023) (scienter requirement satisfied because "Defendant saw Plaintiff's attribution on

13  the Work and removed it before uploading it to its website").  But the double-scienter requirement

14  generally precludes application of the statute in circumstances that do not involve the intentional

15  frustration of copyright management efforts.  For example, it precludes liability for the omission

16  of CMI that occurs as an "unintended side effect" of a technological process—like scraping images

17  from the internet without also scraping associated CMI.  *Kelly v. Arriba Soft Corp.*, 77 F. Supp.

18  2d 1116, 1122 (C.D. Cal. 1999), *rev'd on other grounds by* 336 F.3d 811 (9th Cir. 2003) (no

19  Section 1202 liability arising from the fact that search engine "crawler did not include [CMI] when

20  it indexed the images"); *see also Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1064 (N.D.

21  Cal. 2022) ("Unlike editing a plaintiff's watermark out of a photo, automatically omitting CMI by

22  embedding a photo out of the full context of the webpage where the CMI is found cannot itself

23  plead intentionality as required by the DMCA.").  In other words, the incidental removal of CMI

24  does not raise an inference that the defendant knew its actions would conceal infringement.

25        *b.*    *Plaintiffs Fail to State a DMCA Claim*

26        To state a Section 1202 claim, a plaintiff must *inter alia* allege specific facts regarding

27  "what the removed or altered CMI was."  *Free Speech Sys. LLC v. Menzel*, 390 F. Supp. 3d 1162,

28  1175 (N.D. Cal. 2019) (dismissing claim for failure to do so).  Here, Plaintiffs allege that two

1   pieces of CMI were included in their books: (1) "the name of the author" and (2) "the year of

2   publication." Tremblay Compl. ¶ 10, Silverman Compl. ¶¶ 10–12.[8]  Plaintiffs allege that this CMI

3   was included on their books' "title page[s]."  Tremblay Compl. ¶ 25, Silverman Compl. ¶ 26.

4   Plaintiffs then allege that OpenAI violated Section 1202(b) in two distinct ways.

5                                   i.      Section 1202(b)(1)

6         Plaintiffs allege that OpenAI violated Section 1202(b)(1) by "remov[ing] CMI" from their

7   books during the "training process."  Tremblay Compl. ¶ 64, Silverman Compl. ¶ 65.  The

8   Complaints address this issue only in a single paragraph, in which Plaintiffs claim that the training

9   process "does not preserve any CMI" "by design," and that by running this process, "OpenAI

10  intentionally removed CMI from" the books at issue here.  *Id.*  Notably, however, Plaintiffs

11  affirmatively plead that the CMI that OpenAI allegedly removed—Plaintiffs' names and the

12  publication year of their books—was embodied *within* the books themselves.  Tremblay Compl.

13  ¶¶ 10, 25, Silverman Compl. ¶¶ 10–12, 26.  By alleging that OpenAI "intentionally removed" CMI,

14  Plaintiffs appear to be claiming that OpenAI *deleted* (or somehow redacted) their names and

15  publication years from the "copie[s]" of the books that OpenAI allegedly created when compiling

16  its training dataset.  Tremblay Compl. ¶ 64, Silverman Compl. ¶ 65.

17        Plaintiffs offer no facts that might support such a theory, and instead allege a number of

18  facts that would contradict it.  Both Complaints claim that Plaintiffs' books were "copied by

19  OpenAI" *in their entirety* and "ingested by the underlying OpenAI Language Model."  Tremblay

20  Compl. ¶ 40; Silverman Compl. ¶ 41.  The Complaints are completely devoid of any explanation

21  as to (1) how OpenAI might delete author names and publication years from the books in its

22  training data, (2) why OpenAI would do such a thing, or (3) what Plaintiffs' good-faith basis for

23  ───────────────

[8] Other parts of the Complaints vaguely gesture at other forms of CMI, but notably do not
24  specifically allege that the named Plaintiffs included those kinds of CMI in their books.  *See, e.g.*,
    Tremblay Compl. ¶ 63 ("Plaintiffs included one or more forms of [CMI] in each of the Plaintiffs'
25  Infringed Works, including: copyright notice, title and other identifying information, the name or
    other identifying information about the owners of each book, terms and conditions of use, and
26  identifying numbers or symbols referring to CMI.").  These allegations are insufficiently tethered
    to Plaintiffs' particular works—there is no basis to discern which additional information beyond
27  name and publication year was appended to which books, or whether any such information was
    included in the named Plaintiffs' books at all—and the Court should thus disregard them.  *Menzel*,
28  390 F. Supp. 3d at 1175; *see also Parrish*, 534 F. Supp. 2d at 1094 (named plaintiff in putative
    class action may not "rely on the alleged injuries of others").

1   believing this occurred might consist of. The bare speculation that this happened, for no apparent

2   reason and in contravention of the allegation that OpenAI trained its models using entire books

3   obtained from third party sources, *see id.*, is precisely the kind of "unwarranted deduction[] of

4   fact" that this Court must disregard on a motion to dismiss, *Gilead*, 536 F.3d at 105. Plaintiffs'

5   "suspicion" that OpenAI scrubbed their names and publication years from its set of training data

6   is not enough to "raise a right to relief above the speculative level." *Castro v. Emeritus Corp.*, No.

7   11-cv-03504, 2012 WL 601857, at *2 (N.D. Cal. 2012) (cleaned up).

8       Moreover, Plaintiffs' own pleadings suggest the exact opposite. The ChatGPT outputs

9   attached to the Complaints include multiple references to the Plaintiffs' names. *See, e.g.,* Tremblay

10   Compl. Ex. B. at 2 ("Throughout these chapters, Tremblay masterfully maintains the suspense and

11   psychological terror . . ."), Silverman Compl. Ex. B at 1 ("Silverman uses her sharp wit to lend a

12   comedic touch . . ."). This would plainly not be possible if OpenAI had deleted all references to

13   "the name of the author" from each book before using the alleged copies to train the models on

14   which ChatGPT relies.

15       Separately, even if OpenAI's training process *did* result in the omission of CMI from the

16   alleged copies in its training dataset, Plaintiffs make no attempt to explain how that omission could

17   "induce, enable, facilitate, or conceal" the alleged copyright infringement, much less how OpenAI

18   could have "known[]" that it would do so. 17 U.S.C. § 1202(b); *see also Mills v. Netflix, Inc.*, No.

19   19-cv-7618, 2020 WL 548558, at *3 (C.D. Cal. Feb. 3, 2020) (dismissing DMCA claim because

20   the complaint "fails to include specific allegations as to how identifiable infringements will be

21   affected by Defendants' alleged removing or altering of CMI" or "demonstrat[e] Defendants knew

22   or had reason to know that their actions would cause future infringement" (cleaned up)). "The

23   point of CMI is to inform *the public* that something is copyrighted and to prevent infringement."

24   *Alan Ross Machinery Corp. v. Machinio Corp.*, No. 17-cv-3569, 2019 WL 1317664, at *2 (N.D.

25   Ill. Mar. 22, 2019) (emphasis added); *see also Fashion Nova, LLC v. Blush Mark, Inc.*, No. 22-cv-

26   6127, 2023 WL 4307646, at *5 (C.D. Cal. June 30, 2023) ("[T]he purpose of CMI is to provide

27   the public with notice that a work is copyrighted."). But OpenAI's training dataset is not publicly

28   accessible, as Plaintiffs admit. Tremblay Compl. ¶¶ 31, 35, Silverman Compl. ¶¶ 32, 36.

In the typical Section 1202 case, a plaintiff might allege scienter by alleging the defendant "instructed reporters to remove or alter the identification of the [original publisher]" before "distribut[ing] its articles to paying clients" who, as a result of the CMI removal, would have no way to know that the defendant had infringed another publisher's copyright. *All Headline News*, 608 F. Supp. 2d at 458. In other words, there is a direct and obvious causal connection between the CMI omission and the "facilitat[ion]" of "infringement" to satisfy the statute's double-scienter requirement. 17 U.S.C. § 1202(b); *see also Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1325 (11th Cir. 2022) ("[T]he statute's plain language requires some identifiable connection between the defendant's actions and the infringement or the likelihood of infringement."); *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1287 (C.D. Cal. 2022) (a "plaintiff must plausibly allege that future infringement is likely . . . to occur *as a result of* the [alleged DMCA violation]" (cleaned up) (emphasis added)).

Here, however, because the CMI was allegedly removed from an *internal* dataset, that alleged omission has no effect on the public at all. Because that dataset is not publicly accessible, the inclusion of CMI in that dataset could not "provide the public" with any information about the works at issue, *Fashion Nova*, 2023 WL 4307646, at *5, nor could the alleged exclusion of CMI from that dataset withhold any such information from public view. Therefore, even if it were an "infringement" for OpenAI to create copies of books for its training dataset, the removal of CMI from those copies could not possibly "induce, enable, facilitate, or conceal" that infringement— and OpenAI certainly could not have "know[n]" that it would. 17 U.S.C. § 1202(b). Even if the Court were to assume that OpenAI's "training process does not preserve any CMI" "by design," Tremblay Compl. ¶ 64, Silverman Compl. ¶ 65, that exclusion of CMI would be an "unintended side effect" of the training process—not a subversive tactic to disguise wrongdoing—which is not a Section 1202(b)(1) violation, *Kelly*, 77 F. Supp. 2d at 1122. And, in any event, the fact that ChatGPT readily and repeatedly referenced Plaintiffs' names in its outputs—and indeed generated those outputs in response to prompts by Plaintiffs' counsel based on the allegedly removed CMI— forecloses any argument that the alleged "removal" of CMI from the training dataset was intended to facilitate or conceal the creation of supposedly infringing ChatGPT outputs.

ii.     Section 1202(b)(3)

Plaintiffs allege that OpenAI violated Section 1202(b)(3) because OpenAI "created derivative works"—*i.e.* ChatGPT outputs—and "distribut[ed] these [derivative] works without [the] CMI" that Plaintiffs included in their books, *i.e.*, without reproducing Plaintiffs' "name[s]" and "the year of [their books'] publication."  Tremblay Compl. ¶ 65; *see also id.* ¶ 10, Silverman Compl. ¶ 66; *see also id.* ¶¶ 10–12.  This claim fails for two independent reasons.

First, even assuming that each and every one of ChatGPT's outputs is necessarily a "derivative work," *see* Tremblay Compl. ¶ 65, Silverman Compl. ¶ 66; *but see supra* at 9, the relevant DMCA provision does not apply unless the works "distribute[d]" are the *original* "works" themselves or actual "copies of [them]," 17 U.S.C. § 1202(b)(3).  Nothing in the statute prohibits the distribution of derivative works without the CMI that accompanied the original.  *See Robert L. Stark Enters., Inc. v. Neptune Design Grp., LLC*, No. 16-cv-264, 2017 WL 1345195, at *11 (N.D. Ohio Apr. 12, 2017) (rejecting Section 1202(b)(3) claim based on contention that alleged infringer "created derivative works without retaining [opponent's] CMI" because the statute requires that "copies" be distributed); *see also Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-cv-00496, 2015 WL 263556, at *4 (D. Haw. Jan 21, 2015), *aff'd*, 600 F. App'x 674 (9th Cir. 2017) (rejecting Section 1202(b) claim because "[a]t most," defendant "created [a] derivative work," which does not support claim that it "removed the [CMI] from [plaintiff's] original work").  Plaintiffs do not allege that OpenAI distributed unaltered "copies" of their books.  17 U.S.C. § 1202(b)(3).

Second, to plead a Section 1202(b)(3) claim, Plaintiffs must establish that the CMI at issue was actually "removed or altered" from the works that OpenAI allegedly "distribute[d]."  17 U.S.C. § 1202(b).  In a typical Section 1202 case, a plaintiff might make that showing by pleading that the defendant "cropped the [plaintiff's] image so that the [CMI] . . . could no longer be seen" before distributing it.  *Reiffer*, 2023 WL 4029400, at *1.  But there is a legally significant difference between (1) removing or cropping out CMI embedded in a plaintiff's "work" or an otherwise identical "cop[y]" of it, *see* 17 U.S.C. § 1202(b)(3), and (2) creating a new work that does not include that CMI.  Courts have uniformly declined to apply Section 1202 to the latter circumstance because the DMCA "does not prohibit merely omitting CMI from an infringing work."  *Dolls Kill,*

*Inc. v. Zoetop Bus. Co.*, No. 22-cv-01463, 2022 WL 16961477, at *3–4 (C.D. Cal. Aug. 25, 2022). Any contrary rule would mean that every copyright plaintiff—including, for example, a photographer who claims that an artist's painting infringed one of her images—could also bring a claim under Section 1202, along with a demand for statutory damages under that section. *See* 17 U.S.C. § 1203(c)(3)(B) (providing for statutory damages "for each violation . . . of not less than $2,500").[9] Nothing in the statutory language or legislative history suggests that (incorrect) result.

Some courts frame this inquiry by asking whether the infringing work is "identical"—and, if not, holding there has been no removal or alteration. *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. 20-cv-1931, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) (dismissing claim because "while the works may be *substantially similar*, [d]efendant did not make *identical* copies . . . and then remove engraved CMI").[10]   Because Plaintiffs do not allege that OpenAI "distributed" works "identical" to their books, they have not stated a Section 1202(b)(3) claim.

### 3.   Plaintiffs Fail to State a UCL Claim

Plaintiffs also bring state law unfair competition claims under Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").   To plead a UCL violation, a plaintiff must allege a "business act or practice" that is "either 'unlawful,' 'unfair,' or 'fraudulent.'" *Armstrong-Harris v. Wells Fargo*

---

[9] To provide copyright owners "an incentive to register their copyrights promptly," *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700 (9th Cir. 2008), Section 412 of the Copyright Act generally precludes recovery of statutory damages for copyright infringement unless the plaintiff registered the work at issue with the U.S. Copyright Office before the infringement "commenced," 17 U.S.C. § 412.  Section 412's registration bar, however, does not apply to the DMCA's separate statutory damages provision.  *See Shihab v. Complex Media, Inc.*, No. 21-cv-6425, 2022 WL 3544149, at *8 (S.D.N.Y. Aug. 17, 2022).  If every copyright infringement claim necessarily constituted a separate DMCA violation for CMI removal, plaintiffs could easily avoid the Section 412 registration bar by seeking statutory damages under the DMCA.  That would materially undermine Congress's attempt to incentivize copyright holders to register their works.  *Cf.* H.R. Rep. No. 94-1476 at 158 (noting the "importan[ce]" of "[c]opyright registration" to "users and the public at large").

[10] *See also Design Basics, LLC v. WK Olson Architects, Inc.*, No. 17-cv-7432, 2019 WL 527535, at *5 (N.D. Ill. Feb. 11, 2019) (where complaint "[did] not allege [defendant] directly reproduced [plaintiff's] work without CMI," dismissing Section 1202(b) claim "with prejudice because further amendment would be futile"); *Fisher v. Forrest*, 286 F. Supp. 3d 590, 609 (S.D.N.Y. 2018) (because plaintiff's work was not "substantially or entirely reproduced," defendant "cannot be said to have removed CMI from [plaintiff's] 'works'"); *Frost-Tsuji*, 2015 WL 263556, at *3 (no Section 1202 claim because defendant's drawing "is not identical to the drawing by [plaintiff]"); *A'Lor Int'l, Ltd. v. Tapper Fine Jewelry, Inc.*, No. 12-cv-02215, 2012 WL 12921035, at *10 (C.D. Cal. Aug. 8, 2012) (dismissing Section 1202(b) claim with prejudice because "the plain language of the statute encompasses only removal and alteration" and does not "include [mere] omissions").

*Bank, N.A.*, No. 21-cv-07637, 2022 WL 3348426, at *2 (N.D. Cal. Aug. 12, 2022) (citation omitted). Each adjective captures a "separate and distinct theory of liability." *Id.* Here, Plaintiffs' UCL claims are based on the UCL's "unlawful" prong, which "borrows violations of other laws and treats them as unlawful practices." *Id.* at *3 (citation omitted); *see also* Tremblay Compl. ¶ 69, Silverman Compl. ¶ 70. The sole predicate violation alleged in the Complaint is that OpenAI "violat[ed] the DMCA." Tremblay Compl. ¶¶ 69–70, Silverman Compl. ¶¶ 70–71.[11]

This claim fails three times over. First, as explained above, Plaintiffs have failed to plead DMCA claims, which means that "the UCL claim[s] also fail[]." *Armstrong-Harris*, 2022 WL 3348426, at *3 (citation omitted); *see supra* at 13.

Second, Plaintiffs have not alleged an economic injury flowing directly from the alleged DMCA violations. To plead a UCL claim, a plaintiff must "(1) establish a loss or deprivation of money or property . . . and (2) show that economic injury was the result of, i.e., *caused by*," the alleged predicate violation. *Davis v. RiverSource Life Ins. Co.*, 240 F. Supp. 3d 1011, 1017 (N.D. Cal. 2017) (emphasis in original); *see also Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1348 n.31 (2009) (requirement is "more stringent than" that Art. III injury-in-fact inquiry); Cal. Bus. & Prof. Code § 17204 (permitting relief for "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition"). As noted above, the two DMCA-based predicates at issue here are (1) the alleged removal of CMI during the "training process" and (2) the alleged distribution of supposed "derivative" ChatGPT outputs without Plaintiffs' CMI. Tremblay Compl. ¶¶ 64–65, Silverman Compl. ¶¶ 65–66. The only allegation as to harm arising from these alleged violations is a single sentence included in both Complaints: "Plaintiffs have been injured by OpenAI's removal of CMI." Tremblay Compl. ¶ 67, Silverman Compl. ¶ 68. Nothing in the Complaint explains how Plaintiffs "lost money or property" in connection with these claims. Cal. Bus. & Prof. Code § 17204; *see also Doe 1 v. Github*, No. 22-cv-06823, 2023

---

[11] Plaintiffs vaguely suggest that this claim is also based on the use of "Plaintiffs' Infringed Works to train ChatGPT," in what appears to be a reference to the copyright infringement claims. Tremblay Compl. ¶ 69, Silverman Compl. ¶ 70. But the paragraphs that directly address the UCL claim assert the alleged DMCA violation as the sole predicate. Tremblay Compl. ¶ 70, Silverman Compl. ¶ 71. In any case, copyright infringement is not a valid predicate for a UCL claim due to Copyright Act preemption. *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998) (UCL claim "expressly base[d] . . . on . . . the Copyright Act" was "clear[ly]" preempted).

1   WL 3449131, at *14 (N.D. Cal. May 11, 2023) (dismissing UCL claim because "the Court cannot

2   discern how Defendants' alleged violations of the DMCA have caused or will cause Plaintiffs

3   economic injury").[12]

4       Third, Plaintiffs have failed to plead facts that would justify any relief under the UCL.

5   "Remedies under the UCL are limited to restitution and injunctive relief, and do not include

6   damages." *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, No. 11-cv-01197, 2012 WL

7   13028094, at *2 (C.D. Cal. Apr. 4, 2012).  And to state a claim for either form of relief, a plaintiff

8   "must establish that she lacks an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*,

9   971 F.3d 834, 844 (9th Cir. 2020).  Plaintiffs have not done so here.  *Silvercrest*, 2012 WL

10  13028094, at *3 (UCL claim "deficient" because plaintiff "fails [to] explain why the damages it

11  seeks elsewhere in its complaint are not adequate to compensate it for its alleged injuries").

12                      4.    Plaintiffs Fail to State a Claim for Negligence

13      Count V, asserting "negligence," also fails.  First, the only acts challenged in the

14  Complaints are purportedly intentional, not negligent.  "[I]ntentional act[s] with intended

15  consequences [do not] fall[] within the ambit of a negligence cause of action." *Carlson v. San

16  Mateo Cnty*, 103 F.3d 137, 1996 WL 717310 (Table) at *3 (9th Cir. 1996); *see also Semore v.*

17  *Pool*, 217 Cal. App. 3d 1087, 1105 (1990) (dismissing negligence claim because "any actions by

18  the [defendant] were intentional, not negligent").  Indeed, Plaintiffs' allegations that the challenged

19  conduct was undertaken "negligently" or "recklessly," Tremblay Compl. ¶ 75, Silverman Compl.

20  ¶ 76, are irreconcilable with their DMCA claims, which require Plaintiffs to establish that the

21  violations were undertaken "intentionally" or "knowing[ly]," *see* 17 U.S.C. § 1202(b).

22      Second, Plaintiffs have not established that OpenAI owes them a duty.  "The existence of

23  a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for

24  negligence." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 987 (N.D. Cal. 2014)

25  (citation omitted).  Plaintiffs' sole basis for alleging the existence of such a duty in support of their

26

27  _____

[12] The Complaints state that OpenAI "fails to attribute the success of their product to the copyright-protected work on which it is based," suggesting that Plaintiffs suffer some form of reputational injury.  Tremblay Compl. ¶ 72, Silverman Compl. ¶ 73.  But intangible harms do not satisfy the UCL's standing requirements. *See Troyk*, 171 Cal. App. 4th at 1348 n.31.

28

negligence claims lies in a single paragraph that makes vague mention of OpenAI's "obligations," "custom and practice," and control over "information in its possession." Tremblay Compl. ¶ 74, Silverman Compl. ¶ 75.[13] Plaintiffs also cite Cal. Civ. Code § 1714, which merely "state[s] the basic rule of negligence." *Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 821 (1975).

None of these allegations suggests OpenAI owed Plaintiffs a duty of care. While Plaintiffs insist that this supposed "duty" is "based on [OpenAI]'s relationship to [Plaintiffs]," Tremblay Compl. ¶ 74, Silverman Compl. ¶ 75, there are no allegations regarding any relationship between the parties that could have given rise to such a duty, *New Sensations, Inc. v. Does*, No. 12-cv-3800, 2012 WL 12898400, at *3 (N.D. Cal. Nov. 29, 2012) (complaint that failed to allege facts to support conclusion that defendants owed a "legal duty" was "not sufficient to support a negligence cause of action").

### 5.   Plaintiffs Fail to State a Claim for Unjust Enrichment

Count VI, asserting "unjust enrichment," also fails on the merits. Under California law, a cause of action for "unjust enrichment" is construed "as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted); *see also Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020) ("Unjust enrichment is not a cause of action under California law." (cleaned up)). As such, to plead this claim, Plaintiffs must allege that OpenAI "received and unjustly retained a benefit at plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Additionally, "a plaintiff must show that the benefit was conferred on the defendant through mistake, fraud, or coercion." *Bittel Technology, Inc. v. Bittel USA, Inc.*, No. 10-cv-00719, 2010 WL 3221864, at *5 (N.D. Cal. Aug. 13, 2010) (citation omitted).

In a typical case, for example, a plaintiff pleads that the defendant solicited and received some payment from the plaintiff, which the defendant then improperly "retained." *See, e.g.,*

---

[13] Plaintiffs' allegations regarding OpenAI's "control" of the "information in its possession" suggests that Plaintiffs are attempting to invoke the duty to safeguard personal identifying information. *See, e.g., Schmitt v. SN Servicing Corp.*, No. 21-cv-03355, 2021 WL 3493754, at *4 (N.D. Cal. Aug. 2021). But the "information" at issue here—published books written by Plaintiffs—is public, not private.

*Stratos*, 828 F.3d at 1039 (analyzing claim for mishandling and unlawfully retaining client trust account). This case looks nothing like that. The core facts appear to be nothing more than those underlying the copyright infringement claims, re-asserted on a quasi-contract theory. To the extent that there are any unique factual allegations with respect to the unjust enrichment claim specifically, they simply parrot the elements of the cause of action via conclusory assertions. Tremblay Compl. ¶¶ 79–86, Silverman Compl. ¶¶ 80–87. Plaintiffs provide no explanation whatsoever as to what "benefit" they quasi-contractually "conferred" on OpenAI, or how their choice to confer that benefit was the result of "mistake, fraud, or coercion." *Bittel*, 2010 WL 3221874, at *5. The Complaints simply assert, without explanation, that OpenAI "derived profit and other benefits from the use of the Infringed Materials" and that it would be "unjust" to retain "those benefits." Tremblay Compl. ¶¶ 84–85, Silverman Compl. ¶¶ 85–86. Those threadbare allegations do not state a viable claim for relief. *See Bosco Wai-Choy Chiu v. NBS Default Servs., LLC*, No. 14-cv-05261, 2015 WL 1221399, at *9 (N.D. Cal. Mar. 17, 2015) (dismissing unjust enrichment claim "without leave to amend" where allegations were "conclusory and speculative"); *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009) ("conclusory allegation" that defendants "retain[ed] profits, income and ill-gotten gains at the expense of plaintiff" was "insufficient").

### 6. The Negligence and Unjust Enrichment Claims Are Preempted

As noted above, Plaintiffs' negligence and unjust enrichment claims are also overt attempts to reframe the Complaints' direct copyright infringement claims in the vernacular of California common law claims. *See, e.g.,* Tremblay Compl. ¶ 77 (negligence claim based on OpenAI's use of Plaintiff's "Infringed Works" to "train ChatGPT"); *id.* ¶ 81 (unjust enrichment claim based on OpenAI's "access to the Infringed Materials to train ChatGPT"); *see also* Silverman Compl. ¶¶ 78, 82. As such, both claims are preempted by Section 301 of the Copyright Act, which bars any state law claim if (1) the "subject matter" of the claim falls within the "subject matter of copyright as specified by sections 102 and 103 [of the Act]" and (2) if the rights asserted under state law are "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [of the Act]." 17 U.S.C. § 301(a); *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010

(9th Cir. 2017); *see also United States ex rel. Berge v. Bd. Of Tr. of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997) ("[T]he shadow actually cast by the [Copyright] Act's preemption is notably broader than the wing of its protection.").

<u>Subject Matter of Copyright</u>.  Plaintiffs explicitly state that both the negligence claims and the unjust enrichment claims are based on OpenAI's use of the "Infringed Works," *i.e.*, the books at issue in this lawsuit.  *See* Tremblay Compl. ¶¶ 77 (negligence claim), 83 (unjust enrichment claim), 55 (defining "Infringed Works"); *see also* Silverman Compl. ¶¶ 56, 78, 84.  Books are "literary works" that fall directly within the "subject matter of copyright" for purposes of preemption.  17 U.S.C. § 101 (defining "literary works"); § 102 ("literary works" are within copyright's subject matter).  The "subject matter" of these claims therefore falls within the "subject matter of copyright as specified by [§] 102." *Id.* § 301(a).

<u>Equivalent Rights</u>.  To survive preemption under the "equivalent rights" prong of Section 301, a plaintiff must show that the asserted state law right is "qualitatively different from" the rights protected by copyright law.  *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1143–44 (9th Cir. 2006).  "The state right may be narrower, broader, or contain somewhat different elements, yet it will still be preempted if its essence is the same as the federal right."  6 PATRY ON COPYRIGHT § 18:16.  Courts often frame this inquiry as whether the state claim has an "extra element" that is sufficient to "transform the nature of the action."  *Laws*, 448 F.3d at 1144.  But the fact that the literal elements of a state law claim "may not be identical to the elements in a copyright action" is not dispositive; what matters is the "underlying nature of [the] state law claims." *Id.*  Where the "essence of [the state law] claim" is the plaintiff's "object[ion]" to the use of a copyrighted work, the equivalent rights prong is satisfied in favor of preemption.  *Id.*

Here, the negligence and unjust enrichment claims are predicated expressly on the "us[e] [of] the Infringed Works to train ChatGPT."  Tremblay Compl. ¶ 76 (negligence claim); *see also id.* ¶ 82 (unjust enrichment claim); Silverman Compl. ¶¶ 77, 83.  According to Plaintiffs, that "us[e]" occurred when OpenAI (1) "cop[ied] . . . text" from their books, (2) "extract[ed] expressive information from [them]," and (3) used that information to create a language model.  Tremblay Compl. ¶¶ 2, 23, Silverman Compl. ¶¶ 2, 24.

1    But the right to control the creation of "cop[ies]" of a literary work is indistinguishable

2 from copyright's reproduction right.  17 U.S.C. § 106(1).  So is the right to control the extraction

3 of "expressive" information from a work.  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1122 (9th Cir.

4 2018).  And the right to control the use of Plaintiffs' expressive content to create a new product is

5 functionally equivalent to the exclusive right to prepare derivative works.  17 U.S.C. § 106(2); *see*

6 *also* Tremblay Compl. ¶ 56 (alleging that the language models "are themselves infringing

7 derivative works"), Silverman Compl. ¶ 57 (same).  The mere fact that the Complaints feature the

8 word "use" instead of the word "copy" is not enough to save these claims from preemption.  *See*

9 *Laws*, 448 F.3d at 1144 (focusing on the "underlying nature" of [the] state law claims"); *see also*

10 *Del Madera Properties v. Rhodes and Gardner, Inc*., 820 F.2d 973, 977 (9th Cir. 1987) (unjust

11 enrichment claim based on allegedly improper "use" of map preempted); *Shade v. Gorman*, No.

12 08-cv-3471, 2009 WL 196400, at *5 (N.D. Cal. Jan. 28, 2009) (unjust enrichment claim based on

13 "use[]" of "plaintiff's [] footage" to create new work preempted); *Firoozye v. Earthlink Network*,

14 153 F. Supp. 2d 1115, 1128 (N.D. Cal. 2001) (unjust enrichment claim, which "at its core alleges

15 that the defendants unfairly benefitted from their unauthorized use" of plaintiff's work, was

16 "equivalent" to copyright claim and preempted).

17    While Plaintiffs seek to reframe these allegations in the language of state law negligence

18 or unjust enrichment caselaw, "[s]imply recharacterizing the claim as one of 'negligence' [or

19 unjust enrichment] does not add a legally cognizable additional element" sufficient to survive

20 preemption.  *AF Holdings, LLC v. Doe*, No. 12-cv-2049, 2012 WL 3835102, at *4 (N.D. Cal. Sept.

21 4, 2012) (negligence claim preempted).[14]

22 **V.    CONCLUSION**

23    For the foregoing reasons, OpenAI requests dismissal of Counts II through VI of the

24 Complaints.

25

---

26 [14] *See also Cromwell v. Certified Forensic Loan Auditors*, No. 17-cv-02429, 2019 WL 1095837, at *11 (N.D. Cal. Jan. 10, 2019) (negligence claim preempted); *Jonathan Browning, Inc. v.*

27 *Venetian Casino Resort, LLC*, No. 07-cv-3983, 2007 WL 4532214, at *9 (N.D. Cal. Dec. 19, 2007) (unjust enrichment claim preempted); *Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996)

28 (rejecting attempt to "merely recharacterize[] a copyright infringement claim as one for negligence").

1   Dated:  August 28, 2023                      Respectfully submitted,

2
                                                 By:  */s/ Joseph C. Gratz*
3
                                                 MORRISON & FOERSTER LLP
4                                                Joseph C. Gratz (SBN 240676)
                                                  jgratz@mofo.com
5                                                Tiffany Cheung (SBN 211497)
                                                  tcheung@mofo.com
6                                                425 Market Street
                                                 San Francisco, CA 94105
7                                                Telephone: 415.258.7522

8                                                Allyson R. Bennett (SBN 302090)
                                                  abennett@mofo.com
9                                                707 Wilshire Boulevard, Suite 6000
                                                 Los Angeles, CA 90017-3543
10                                               Telephone: 213.892.5454

11                                               By:  */s/ Andrew M. Gass*

12                                               LATHAM & WATKINS LLP
                                                 Andrew M. Gass (SBN 259694)
13                                                andrew.gass@lw.com
                                                 Joseph R. Wetzel (SBN 238008)
14                                                joseph.wetzel@lw.com
                                                 505 Montgomery Street, Suite 2000
15                                               San Francisco, CA 94111
                                                 Telephone: 415.391.0600
16
                                                 Sarang V. Damle (*pro hac vice pending*)
17                                                sy.damle@lw.com
                                                 555 Eleventh Street, NW, Suite 1000
18                                               Washington, D.C. 20004
                                                 Telephone: 202.637.2200
19
                                                 Allison L. Stillman (*pro hac vice pending*)
20                                                alli.stillman@lw.com
                                                 1271 Avenue of the Americas
21                                               New York, NY 10020
                                                 Telephone: 212.751.4864
22
                                                 *Attorneys for Defendants OpenAI, Inc., OpenAI,*
23                                               *L.P., OpenAI OpCo, L.L.C., OpenAI GP, L.L.C.,*
                                                 *OpenAI Startup Fund GP I, L.L.C., OpenAI Startup*
24                                               *Fund I, L.P., and OpenAI Startup Fund*
                                                 *Management, LLC*
25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

I, Andrew M. Gass, am the ECF user whose user ID and password authorized the filing of this document.   Under Civil L.R. 5-1(h)(3), I attest that all signatories to this document have concurred in its filing.

Dated: August 28, 2023                                    */s/ Andrew M. Gass*