1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3    Before The Honorable Araceli Martinez-Olguin, District Judge

4

5    TREMBLAY, et al.,              )
                                    )
6            Plaintiffs,            )
                                    )
7    vs.                           )    No. C 23-03223-AMO
                                    )
8    OPENAI, INC., et al.,          )
                                    )
9            Defendants.           )
     _____)
10
                                     San Francisco, California
11                                   Thursday, October 5, 2023

12
     TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
13              RECORDING 3:00 - 3:22 = 22 MINUTES

14   APPEARANCES:

15   For Plaintiffs:
                                     Joseph Saveri Law Firm, LLP
16                                   601 California Street
                                     Suite 1000
17                                   San Francisco, California
                                       94108
18                          BY:   JOSEPH SAVERI, ESQ.
                                     CHRISTOPHER KARL-LUN YOUNG,
19                                     ESQ.

20                                   Matthew Butterick, Attorney at
                                       Law
21                                   1920 Hillhurst Avenue
                                     Suite 406
22                                   Los Angeles, California 90027
                            BY:   MATTHEW BUTTERICK, ESQ.
23

24

25              (APPEARANCES CONTINUED ON NEXT PAGE)

2

1  <u>APPEARANCES</u>:  (Cont'd.)

2  For Defendants:
                                Morrison & Foerster, LLP
3                               425 Market Street
                                San Francisco, California
4                                 94105
                            BY:  JOSEPH CHARLES GRATZ, ESQ.
5
                                Latham & Watkins, LLP
6                               505 Montgomery Street
                                Suite 2000
7                               San Francisco, California
                                  94111
8                           BY:  ANDREW MICHAEL GASS, ESQ.

9  Transcribed by:              Echo Reporting, Inc.
                                Contracted Court Reporter/
10                              Transcriber
                                echoreporting@yahoo.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  <u>Thursday, October 5, 2023</u>                          <u>3:00 p.m.</u>

2                  P-R-O-C-E-E-D-I-N-G-S

3                      --oOo--

4          THE CLERK:  Calling case number 23-CV-3283,

5  Tremblay, et al. v. OpenAI, Incorporated, et al.

6      Counsel, please come up to the podiums and state your

7  appearances, starting with the Plaintiff.

8          MR. SAVERI:  Good morning, your Honor.  Joseph

9  Saveri on behalf of Plaintiffs.

10         MR. GRATZ:  Good morning, your Honor.  Joe Gratz

11 from Morrison and Foerster, on behalf of the Defendants.

12          THE COURT:  Good morning, Counsel.

13         MR. YOUNG:  Good morning, your Honor.  Christopher

14 Young on behalf of Plaintiffs.

15         MR. BUTTERICK:  Good morning.  Matthew Butterick

16 on behalf of Plaintiffs.

17         MR. GASS:  Andy Gass from Latham and Watkins on

18 behalf of Defendants.

19          THE COURT:  Thank you, Counsel.

20     I want to thank you for coming in person.  There's

21 something useful for me at least in terms of meeting you all

22 in person for the first appearance.  I appreciate that.

23     As you all know, we're here mostly to make sure that we

24 set a schedule to keep you all moving.  There were -- I had

25 a few questions for you all.  I've looked through your case

4

1  management statement, but I wanted to confirm, I think I saw

2  that your initial disclosures -- your (indiscernible) on the

3  same day you filed this.  So, I just wanted to check whether

4  you all did exchange initial disclosures.

5          UNIDENTIFIED SPEAKER:  Yes.

6          UNIDENTIFIED SPEAKER:  We did, your Honor.

7          THE COURT:  I also wanted to ask like there's a --

8  there's a note made here about Plaintiffs wanting to expand

9  the discovery limits.  I just wanted to ask if you could

10  give me a sense of -- if you have a sense of the degree to

11  which you want to see them expanded?

12          UNIDENTIFIED SPEAKER:  Generally, your Honor,

13  we've -- we've -- because this -- we feel it's a complex

14  case, we'd probably want to expand the number of

15  depositions.  We -- it's something probably we should

16  discuss.  I don't think this is a case that's going to

17  require 100 depositions; but, certainly, the seven per side

18  or ten per side would need to be expanded.

19     We also would probably want to talk about expanding the

20  off-the-rack number of interrogatories.

21          THE COURT:  That's in your statement that you --

22  the depos and the Rogs that you -- that you want.  I'm just

23  curious if you have a sense.  I appreciate you letting me

24  know that you don't envision 100 depositions, but I think

25  for -- I often like to ask usually the -- so, when the

5

1  parties tell me that they're not seeking to expand the
2  limits of discovery, that gives me a sense of how long you
3  actually need for discovery.  And, so, I'm -- I'm wondering
4  if you're thinking 20, 50.  I'm glad it's not 100.  I
5  imagine you would get a fight on that.  So, let me ask --
6            UNIDENTIFIED SPEAKER:  Yeah --
7            THE COURT:  -- just as example.  I won't hold you
8  to it.  In fact, you'll need to negotiate that to some
9  degree with -- with Defendants.  I am just looking for a
10 ballpark.
11           UNIDENTIFIED SPEAKER:  So, I'd probably say
12 something like 30 perhaps.  There are two parties.  These
13 are complex business organizations.  You know, there are a
14 number of people that are identified in the initial
15 disclosures that would easily put us, you know, in that kind
16 of ballpark.  Once we start talking about custodians, you
17 know, we'll have more information.  Feels like a guess a
18 little bit; but, you know, order of magnitude --
19           THE COURT:  That's all I'm asking.
20           UNIDENTIFIED SPEAKER:  Yeah.
21           THE COURT:  Right.  And in terms of
22 interrogatories?  Again, I recognize that you may -- there
23 will be -- I'm not holding -- I -- of course, you know, I'm
24 not expecting you to -- your -- you will get to object to
25 them when the requests come in and the like.  I'm just

6

1  looking to get a feel for your sense of it.

2          UNIDENTIFIED SPEAKER:  And, so, my sense is that

3  in a case like this, the 25 that we would get are probably

4  on the low side.  I don't think we'd be seeking to double

5  those.  But, you know, so, that kind of puts us somewhere in

6  between.  And, again, I'm not trying to hide the ball.  I'm

7  just -- I don't -- it -- just in terms of order of

8  magnitude, that's my impression of the breakdowns.

9          THE COURT:  Thank you.  I appreciate that.  I very

10 much grasp that it's early days.

11    Let me ask one other question before we sort of get to

12 the last -- to a few other things.  As regards ADR, I

13 appreciate that you all have agreed to going before a

14 Magistrate Judge.  Defendants asked for Judge Kim.  I'm

15 wondering if you have a position on that.

16          UNIDENTIFIED SPEAKER:  We think Judge Kim is

17 great, well qualified; and we -- my position on that is we

18 really leave it up to you about how you think you want to

19 handle that.  We're perfectly happy to -- to use Judge Kim.

20          THE COURT:  I ask because often -- if you both

21 agree with Judge Kim, then I will see if she has the

22 capacity for it, if not it will go -- my -- my -- then I go

23 to the -- I defer to the clerk of the court, and they put it

24 on the wheel.

25          UNIDENTIFIED SPEAKER:  Yeah.

7

1          THE COURT:  Unless you want to designate an

2 alternate.

3          UNIDENTIFIED SPEAKER:  I don't think I have

4 somebody else in mind.

5          UNIDENTIFIED SPEAKER:  I don't think we would --

6 we would -- it may make sense for us to talk about that for

7 a moment.  We might be able to come up with an alternate,

8 although, it sounds like Judge Kim is --

9          THE COURT:  (Indiscernible) to you both.

10          UNIDENTIFIED SPEAKER:  Yeah.  And Mr. Gratz and I

11 have -- have some measure, of course, of dealing.  And, so,

12 we -- I think we feel comfortable that we'd be able to work

13 this out.  And, so, we're happy to agree to Judge Kim now.

14 We're also happy to have more discussions about an

15 alternate.  However you want to handle it.

16          THE COURT:  Well, let's do this.  If I -- the

17 statements that the -- the joint statement was Plaintiff --

18 or, excuse me -- Defendant offering Judge Kim, and I wanted

19 to sort of check in with you before --

20          UNIDENTIFIED SPEAKER:  Right.

21          THE COURT:  -- just sending it, jumping in with

22 Judge Kim.  I will do that.  And if -- if she for some

23 reason doesn't have capacity or -- you know, I will -- I

24 will come back to you all -- rather, my courtroom deputy

25 will -- for the alternate.

8

1          UNIDENTIFIED SPEAKER:  Right.  And, your Honor, I

2    think one of the things, in order to make that process -- to

3    give it as best chance of success, we would need to get some

4    more information to do some discovery.  We're very much at

5    the beginning of this, but that would be fine to get that

6    set up.

7          THE COURT:  You're (indiscernible) to log my other

8    -- I hadn't planned on asking you all this, but it is one of

9    my -- one of my favorite questions to ask at these -- at

10   these, which is how much -- or what -- how much discovery do

11   you think you would need for mediation to be fruitful?

12         UNIDENTIFIED SPEAKER:  So, I could describe it

13   probably generally in terms of subject matter, and then

14   maybe that's the best way to -- to do it.

15       You know, we -- we need to have some more information

16   about the -- the training data and how that training is

17   worked, how many people would be affected.  We have some

18   estimates; but, you know, in the context of settlement, we

19   need to drill down into that.  This is a statutory damage

20   case.  And, so, the -- the number of recurrences matter.

21       So, it's those sorts of things.  There will be also

22   some -- you know, depending on how this proceeds, what the

23   nature of the Defense is, you know, how much of a factual

24   dispute do -- is there.

25       I can't tell right now whether in order to make this

9

1  productive -- we have to have some depositions under our

2  belt or it's going to be, you know, purely about the

3  economics.  And it's just -- it's just really hard to tell

4  until you've been in a room and started to have these

5  discussions.

6          THE COURT:  Mr. Gratz, let me ask you.  Is there

7  discovery that you need from Plaintiffs before mediation

8  could be fruitful?

9          MR. GRATZ:  I think yes, your Honor, there is

10 some.  But I think that the -- I think that, as Mr. Saveri

11 says, the -- the nature of the claims and the nature of

12 defenses, we've got -- we've got copies of the Plaintiffs'

13 works or at least identification of the Plaintiffs' works,

14 which is one of the -- you know, which is one of the things

15 that we would need.

16     I think to the extent that there are -- there is other

17 discovery I think that would be needed to make that

18 fruitful, but I think that it is likely to be relatively

19 small and manageable and that it's unlikely to set the

20 schedule unless there is sort of (indiscernible).

21         MR. SAVERI:  And, your Honor, we are anxious,

22 interested in getting the discovery process going.  And, so,

23 if -- to the extent that there is Plaintiff -- discovery by

24 the Defendants regarding the Plaintiffs, you know, we invite

25 that.  And we're happy to -- to start that -- that process.

10

1   We just are.  I mean, we think it's important.  And, so,

2   we're ready to go.

3           THE COURT:  I think I hear you both saying -- but

4   one of the reasons I ask about how much discovery is needed

5   before mediation is referred, that the last thing I would

6   want to do is refer you all to -- to the Magistrate Judge

7   and find -- to -- for you all to find yourself not having

8   done everything you need to for that -- for that week.  So,

9   it sounds -- I hear you both sort of saying you will be

10  ready to go.  If for some reason you aren't, that is

11  something that you should absolutely just let the Magistrate

12  Judge know or let me know so that we can move that deadline

13  to complete the ADR.

14          MR. GRATZ:  Certainly.  And I think obviously this

15  relates to one of the other issues that arises in the

16  statement, which is the other matter that has been filed.

17  Obviously, there's two that have already been related before

18  your Honor.  There is another, as to which (indiscernible)

19  pending, and there's another identified in the statement

20  that's been filed in another district on overlapping claims

21  with a subset class.  And I think that -- that -- that, in

22  our view -- dissolving that and figuring out where that

23  lands is important to sort of setting a rational schedule,

24  including who needs to be -- who needs to be where in order

25  to have fruitful mediation.

1        MR. SAVERI:  And, your Honor, so -- so, we agree
2   that we have these other cases that, from our perspective,
3   are highly duplicative of what -- what we did.  And, so, we
4   do need to get that kind of housekeeping taken care of.  We
5   have provided Mr. Gratz with a stipulation about
6   consolidation.  It's under consideration right now.  And,
7   so, I think we're engaged on those issues.  And I do think
8   it -- it's something hopefully we can figure out.  Hopefully
9   we'll reach an agreement quickly, if not, come back quickly.
10  But I think that is important.
11        THE COURT:  Go ahead.
12        MR. GRATZ:  Thank you, your Honor.  That's why, as
13  we said in our statement, we think that sort of figuring out
14  the details in the schedule and maybe even figuring out when
15  the issue exists is something that may make sense to do
16  after the present motion to dismiss is addressed because we
17  will know a little bit more about the scope.  But, also, by
18  that time, some of this stuff may have shaken out.  The
19  shape of the case may well be consolidated in here.  Maybe
20  they know more about if there are other cases that get filed
21  that -- that then may limit it in some detail.
22        THE COURT:  Go ahead.
23        UNIDENTIFIED SPEAKER:  Excuse me.  Your Honor, we
24  have a -- we have a schedule for the motions to dismiss.
25  You know, we're going to -- it's set for hearing on December

12

1 7th in front of your Honor.  The other case that's out here,

2 we have had communications with them.  I think there's a

3 general understanding on our side that given the -- the sim

4 -- the high degree of similarity between the -- the follow-

5 on cases and this one, what the Court does on the motions to

6 dismiss will be highly instructive, if not determinative.

7 And, so, it's important for us to keep that going because I

8 think things will gravitate to the -- the first filed cases

9 because of the duplication in the -- in the follow on.

10          THE COURT:  You can -- you can get one more word

11 in.

12          MR. GRATZ:  And it's just to update your Honor

13 that in -- in another case presenting a similar set of

14 issues which is in front of Judge Chhabria, the same

15 Plaintiffs' counsel recently put in a stipulation indicating

16 that sort of the -- the current -- the pending motion to

17 dismiss should be deemed to apply to their complaint as

18 well.  And I anticipate we may be able to land at the same

19 thing here, except that further briefing or any adjustment

20 to the motion to dismiss schedule would not be necessary.

21          THE COURT:  Well, let me tell you, Counsel.

22 Here's -- I appreciate you all walking me through some of

23 the -- the various pieces.  I saw that Magistrate Judge Kang

24 recently put a little -- he put a reminder for folks there

25 to either consent or decline on jurisdiction on -- on the

13

1  (indiscernible) case, and I'm waiting to let that shake out

2  just like you all.  I'm waiting to see sort of where that

3  goes so that we can see where we are moving forward.  It's

4  due soon.  Yeah, I think he put it for October 17th.  So,

5  that -- I don't think it slows us down any.  It's just a --

6  you know, it's a data point out there.  So, I agree with you

7  that there are things we need to just sort out as we go.

8      So, here's the schedule you're going to get from me.  I

9  -- I appreciate that you all already put into -- that you

10 put into the statement the steps that are -- the dates that

11 we already have, right, the deadline for the opposition to

12 the motion to dismiss.  We're here today for the initial

13 case management conference -- everything else related to the

14 motion to dismiss.

15     I'm going to give you all the schedule that Plaintiffs

16 have proposed through reply to the motion for class cert and

17 Daubert motions.  I agree with -- I agree with you, Mr.

18 Gratz, that it may be a bit premature to sort of put

19 everything else.  So, what I want to do then is, right, so,

20 you should have it in front of you.  That will include --

21 and, Ms. Solorzano, I'll have a copy of this for you, right.

22     You'll -- we'll close fact discovery -- well, including

23 no expert depositions after the 29th.  Deadline for

24 Plaintiffs' expert reports will be December 12th.

25 Defendants' experts reports will be due January 13th.

14

1    Plaintiffs' rebuttal expert -- expert reports will be due
2    February 11th.  The close of expert discovery will be March
3    13th.  The deadline for class cert motions and Daubert
4    motions will be April 10th.  Oppositions May 23rd, reply
5    June 24th.  The Court will set a hearing thereafter and
6    we'll say 14 days or so after you get a decision on the
7    motions for class cert or any Daubert motions, we'll do this
8    again as may be needed to set further scheduling.
9            UNIDENTIFIED SPEAKER:  Your Honor, one item that
10   would have arisen had we -- had we -- right, had we -- had
11   we --
12           THE COURT:  Had a crystal ball?
13           UNIDENTIFIED SPEAKER:  Had a crystal ball or -- or
14   -- or regarded this as being a -- a place for setting -- for
15   -- for addressing this question, which is we think this is
16   somewhat unusual and may be a case where briefing summary
17   judgment together with class certification is very -- would
18   be important.  That's something that has been done in some
19   other fair use cases and 1202 cases.  That is how we
20   addressed this issue in a -- in the Stevens case in the
21   Southern District of California.  And the reason for that is
22   the decision on many of the class cert issues is -- sort of
23   requires consideration in connection with a lot of the
24   summary judgment issues.  For example, whether certain
25   issues are common or not, whether -- whether certain issues

1  are individualized or predominate depends on, particularly

2  in this area of law and particularly for fair use

3  determinations, decisions about the merits of those claims.

4  And, so, doing those together -- and I think there are --

5  there are, in cases where summary judgment is done before

6  class certification for this reason in various cases, can be

7  extremely -- extremely helpful and -- and increase

8  efficiency so that there is one common question can be

9  considered, sort of (indiscernible) rather than briefing the

10  summary judgment effectively in the context of class

11  certification and then again in the context of summary

12  judgment.

13        MR. SAVERI:  So, your Honor, my sense of this is

14  that piling on the summary judgment determination on behalf

15  of -- on top of the class certification decision creates a

16  lot of unnecessary complexity and a lot of work.  It is

17  certainly the case that it's happened.  My view would be

18  that it makes sense to separate them, if only to kind of

19  allocate the -- the work for the lawyers and for the Court

20  in -- in a way that gives appropriate focus on these

21  separate steps.

22     We have another case in front of Judge Tigar where this

23  issue came up, and Judge Tigar agreed or concluded that the

24  class determination and the summary judgment should be

25  sequenced.  That's -- that's my view, that it's probably the

16

1   most efficient way to do it, and in a lot of ways is best

2   for the parties and the Court.

3        Ultimately, it's -- it's your call.  You have a lot of

4   discretion.  My sense is it should be as we laid it out for

5   the reasons I said.

6            UNIDENTIFIED SPEAKER:  And, your Honor, doing --

7   we -- we aren't opposed in principle to doing them

8   separately, but we think that summary judgment then -- at

9   least partial summary judgment, at least on some of these

10  for example, the fair use issue or the mental state issue on

11  the 1202 claim should go first.  And there are a number of

12  reasons for that, but one of them is there is a -- as -- as

13  Mr. Saveri says, this is a statutory damages case, and the

14  determination of those issues can be very important to

15  thinking about what this -- what this case would mean if

16  what would need to be decided were -- were it on a class

17  basis on these particular claims presenting the fair use

18  question and those section 1202 claims.

19           THE COURT:  Let me ask both of you all, could you

20  all -- so -- so, for now, we'll set the schedule that I've

21  laid out, but I'm very -- but I'm still open to considering

22  what you're suggesting in terms of having the motion for

23  summary -- I mean, you know, I -- I think both of you have

24  looked at my standing order.  My general practice is just to

25  allow one motion for summary judgment.  It can't -- would

17

1   you be proposing then to have your one motion for summary

2   judgment be this one or are you hoping to -- it sounds --

3   what I hear you proposing sounds like this is a case where

4   you'd make -- it would make sense to perhaps have a motion

5   for summary judgment on some issues at the beginning and

6   then, as the case proceeds, perhaps a second one.

7           UNIDENTIFIED SPEAKER:  Well, I think -- I think,

8   your Honor, that we would be happy to have our one motion

9   summary judgment -- for summary judgment be one that occurs

10  before class certification has (indiscernible), yes.

11          THE COURT:  Go ahead, please.

12          MR. SAVERI:  Oh, your Honor, well, I agree about

13  the -- about one summary judgment as opposed to, well, a

14  series of them.  I do think there is an issue about -- about

15  one-way intervention.  If the summary judgment determination

16  is made before class certification and there is a question,

17  I think the law is that it creates a situation where if they

18  were to lose, we would get the benefit of that.  That's an

19  issue that's -- arises if the class certification

20  determination happens after summary judgment.

21          THE COURT:  So, let me -- again --

22          MR. SAVERI:  And, so, the -- excuse me, your

23  Honor.  And, so, from my perspective, the consequence of

24  that is -- and that's a strong reason to doing class cert

25  first, seeing if the class is certified.  People -- class

18

1  members will have an opportunity to -- of (indiscernible)

2  and be bound by the result, and then summary judgment

3  motions could be teed up and addressed, and they'll be

4  binding -- to the extent the class is certified, excuse me.

5          THE COURT:  And then, of course -- and, so, to the

6  extent that -- that Mr. Gratz mentioned this earlier, I too

7  wish I had a crystal ball, despite the fact that I'm the one

8  -- despite the fact that I'm the one sort of setting the

9  schedule.

10      But, so, let's actually do this.  Where I think we've

11  landed is that I could use a little bit more from each of

12  you about how to structure this briefing, in terms of the

13  implications we're having to go through the summary

14  judgment, either at the same time or first.  So -- so, Ms.

15  Solorzano, what we'll do is we'll set the schedule that --

16  that I -- that I've read out, that I've proposed.  We'll do

17  that.

18      And let me ask you, does five pages seem like too

19  little?  Can you all do this in -- can you give me just five

20  pages on how to do this?

21          MR. GRATZ:  Yes.

22          MR. SAVERI:  Yes.

23          THE COURT:  Wonderful.  And how about we do that

24  and --

25          UNIDENTIFIED SPEAKER:  If we -- excuse me.

19

1          THE COURT:  Yes.

2          UNIDENTIFIED SPEAKER:  If we get our own five

3 pages.

4          THE COURT:  Oh, of course, yes, yes, yes.  You can

5 each -- you can each have five pages, and since -- I think

6 -- I want to see -- I just want to see what Judge -- what

7 happens with -- with the case in front of Judge Kang.  Why

8 don't we go ahead and look for a similar deadline.  I can

9 just look at all of that on October 17th.

10          UNIDENTIFIED SPEAKER:  Great.

11          UNIDENTIFIED SPEAKER:  So -- so, with respect to

12 the Magistrate Judge issue, my -- my recollection is that if

13 Mr. Gratz were to decline the Magistrate Judge, that would

14 be taken care of.

15          UNIDENTIFIED SPEAKER:  That might -- then it will

16 be.  I'd be happy to take a look at that and chat about that

17 intimately.

18          THE COURT:  All right.  Counsel, thank you both.

19 Anything else?  That's the only thing I have.  Go ahead.

20          UNIDENTIFIED SPEAKER:  Excuse me, the five-page

21 briefs, when are they going in and when are these --

22          THE COURT:  October -- so, why don't -- why don't

23 we have you go -- essentially -- I'm thinking of it as your

24 motion.  So, why don't we -- why don't we have yours due the

25 17th, yours a week later?

20

1          UNIDENTIFIED SPEAKER:  All right.

2          THE COURT:  Okay.  And if you want a short reply,

3   a few days thereafter.

4          UNIDENTIFIED SPEAKER:  Great.  But, before I say

5   yes, do other --

6      (Simultaneous speaking.)

7          UNIDENTIFIED SPEAKER:  -- I have to be -- I want

8   to be circumspect about that.

9          THE COURT:  Counsel, thank you.

10          UNIDENTIFIED SPEAKER:  Thank you, your Honor.

11          UNIDENTIFIED SPEAKER:  Thank you, your Honor.

12      (Proceedings adjourned at 3:22 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

21

CERTIFICATE OF TRANSCRIBER

1

2

3      I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9      I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15

16

17          Echo Reporting, Inc., Transcriber

18              Thursday, November 8, 2023

19

20

21

22

23

24

25