Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Holden Benon (State Bar No. 325847)
Aaron Cera (State Bar No. 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940
Email:            jsaveri@saverilawfirm.com
                     czirpoli@saverilawfirm.com
                     cyoung@saverilawfirm.com
                     hbenon@saverilawfirm.com
                     acera@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:   (323) 968-2632
Facsimile:    (415) 395-9940
Email:           mb@buttericklaw.com

Bryan L. Clobes (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
205 N. Monroe Street
Media, PA 19063
Telephone:   (215) 864-2800
Email:           bclobes@caffertyclobes.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION<br><br>This document relates to:<br><br>Case No. 3:23-cv-03416-AMO<br>Case No. 3:23-cv-04625-AMO | Master File No. 3:23-cv-03223-AMO<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ENJOIN DEFENDANTS AND THEIR COUNSEL FROM PROCEEDING IN THE SOUTHERN DISTRICT OF NEW YORK**<br><br>Judge: Araceli Martínez-Olguín<br>Date: April 4, 2024<br>Time: 2:00 p.m.<br>Courtroom 10 — 19th Floor |

## I. INTRODUCTION

In their opposition, Defendants address *some* aspects of Plaintiffs' Motion while glossing over the main substance—the application of the first-to-file rule to these facts. Defendants do this because their hands are tied: mere months ago, Defendants advocated for the application of the first-to-file rule in the parallel *Authors Guild* Action. But after this Court declined to set the case schedule Defendants wanted, they changed course, deciding not to pursue their own first-to-file motion. Defendants fail to address— let alone overcome—Plaintiffs' core arguments for applying the first-to-file rule on the record in this case. Instead, they focus their opposition on tangential aspects of Plaintiffs' Motion. But none of Defendants' arguments hold water.

Defendants do not contest that the requirements for the first-to-file rule have been established, thereby conceding that the prerequisites for applying the first-to-file rule are present here. They also do not dispute that the S.D.N.Y. Actions largely duplicate the consolidated cases before this Court. Each of those actions alleges OpenAI's direct copyright infringement through the unauthorized use of Plaintiffs' books in connection with OpenAI's language models. Defendants also do not dispute that the continuation of the S.D.N.Y. Actions will duplicate effort for the courts and for the parties. Instead, Defendants recite language about the "extraordinary and drastic" nature of Plaintiffs' Motion.

But it was the extraordinary nature of Defendants' strategic maneuvering that led Plaintiffs to file their Motion. As explained in more detail in Plaintiffs' Motion, Defendants initially represented to the court in the Southern District of New York that Defendants would file a motion to dismiss, stay, or transfer the S.D.N.Y. Actions under the first-to-file rule. After Defendants did not obtain the case schedule they desired in this action—after the matter was briefed and decided by this Court— Defendants abstained from filing that motion. Instead, they extracted concessions from the *Authors Guild* Plaintiffs regarding the sequence of that case. Had Defendants followed through with their stated representations, Plaintiffs would not have had to request the "extraordinary" relief they now seek.

In addition to their Motion to Enjoin, Plaintiffs also filed in the Southern District of New York a Motion to Intervene and Dismiss, Stay, or Transfer the S.D.N.Y. Actions ("S.D.N.Y. Motion"). In response to that S.D.N.Y. Motion, OpenAI filed a two-page statement saying they "do not take a position" on the S.D.N.Y. Motion. Once again, OpenAI has chosen not to raise in the S.D.N.Y. Motion

certain arguments it has raised here before this Court, possibly to maintain credibility with Judge Stein, who, just a few months ago, heard arguments by OpenAI about why the first-to-file rule should apply. In short, Defendants do not—and could not—take the position now in the S.D.N.Y. Actions that the first-to-file rule does not apply, because they had previously taken the opposite position. Defendants thereby effectively have conceded that the predicate for the first-to-file rule applies. Mot., 8:6-9. Instead, they complain that the remedy for the situation their conduct has caused is too extreme. The Court should not countenance this inconsistency.

In fact, OpenAI is not the only party in the S.D.N.Y. Actions that believes the claims asserted in the S.D.N.Y. Actions are sufficiently similar and should be adjudicated in this Court. Recently, the two plaintiffs who filed the *Basbanes* Action in the Southern District of New York (now consolidated with *Authors Guild* Action) have agreed to support Plaintiffs' Motion and their S.D.N.Y. Motion. *See* Declaration of Michael P. Richter ("Richter Decl."), ¶ 2. Counsel in the *Basbanes* Action agrees with the obvious and unremarkable conclusion that the complaints filed in the subsequent consolidated *Authors Guild* Action are substantially identical to the *Tremblay* Action and that each purport to represent proposed classes that are coextensive with and entirely subsumed by the class proposed in the instant Action. *Id.*, ¶ 3. The only parties who seem to disagree with the application of the first-to-file rule appear to be the *Authors Guild* and *Alter* Plaintiffs, and Microsoft Corporation, which is not even a party to this Action.

II.     ARGUMENT

Contrary to Defendants' assertions, the Court has the power to enjoin the Defendants from proceeding in the S.D.N.Y. Actions. Federal courts have the power to address issues arising from related litigation pending concurrently in another federal judicial district. The court's power is an equitable one: its exercise "rest[s] on considerations of wise judicial administration, given regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. V. United States*, 424 U.S. 800, 817 (1976) ("*Colorado River*") (internal quotation marks and citations omitted). Under the Court's inherent powers and the All Writs Act, a court's decision on how to address the pendency of related, concurrent litigation in another district court is driven by the need "to avoid duplicative litigation." *Id.*; *see also* 28 U.S.C. § 1651(a) ("The Supreme Court and all courts

established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").[1] Defendants have not shown that the first-to-file rule does not apply here. They have also not shown why it would be inequitable or contrary to the interests of justice or due process to apply the rule.

### A. At the *Authors Guild* Action Pre-Trial Conference, Judge Stein Expressed Interest in Receiving Briefing on the First-to-File Rule and the Sequencing of Class Certification Before Summary Judgment Motions; Rather than Submit the Requested Briefing, the Parties Reached a Deal that Led to the Subsequent, Duplicative Litigation

Defendants attempt to conceal or justify their prior admission that the first-to-file rule applies to the subsequent actions. Defendants' efforts are unpersuasive, particularly given their selective recitation of proceedings in the *Authors Guild* Action. In the *Authors Guild* Action, Judge Stein held an initial pre-trial conference where he asked the parties about OpenAI's anticipated first-to-file motion and the issue of whether to sequence class certification motions before motions for summary judgment. Defendants' own statements at the initial conference contradict arguments they are making in their opposition to Plaintiffs' Motion.

Defendants point to the addition of Microsoft Corporation as a defendant in the *Authors Guild* Action for their stated reason for not pursuing their anticipated first-to-file motion. Opp at 7:6-11. Indeed, this appears to be clearly untrue. In fact, when asked that very question by Judge Stein—though this exchange was omitted from Defendants' brief—counsel for OpenAI confirmed that Microsoft's

---

[1] With respect to the first-to-file rule, that rule may be applied by either the Court where the first case was filed or in the jurisdictions of the subsequent cases. The better and preferred procedure is for the first-filed court to adjudicate the motion. *See Amerifreight, Inc. v. Belacon Pallet Servs., LLC*, No. 215CV5607RSWLJPRX, 2015 WL 13037420, at *5 (C.D. Cal. Nov. 10, 2015) (noting "several courts have held that the first-filed court should decide whether an exception to the first-to-file rule applies, especially when motions raising identical issues are pending in two different federal courts."); *Brit. Telecomms. plc v. McDonnell Douglas Corp.*, No. C-93-0677 MHP, 1993 WL 149860, at *4 (N.D. Cal. May 3, 1993) (court in the first-filed action should decide the motion; *but see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*, No. C-11-1892 EMC, 2012 WL 3277222, at *7 (N.D. Cal. Aug. 9, 2012) ("Normally, when 'cases involving the same parties and issues have been filed in two different districts,' it is 'the second district court' that exercises its 'discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy.'"). Having the first court determine the motion promotes the interests of judicial efficiency as well as the interests of comity between federal district courts. The Court has the power to enjoin the S.D.N.Y. Actions to accomplish these goals. *See Colorado River, supra*, 424 U.S. at 817; § 1651(a).
Case 3:23-cv-03223-AMO Document 116 Filed 02/29/24 Page 4 of 10

Master File No. 3:23-cv-03223-AMO      3
PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ENJOIN DEFENDANTS AND THEIR COUNSEL FROM PROCEEDING IN THE SOUTHERN DISTRICT OF NEW YORK

status as a named Defendant does **not** change OpenAI's position regarding the first-to-file rule.[2] Transcript at 3:22-25, No. 23-cv-08292, Dkt. 44 (S.D.N.Y. Nov. 29, 2023) (hereinafter, "Transcript"). They are estopped from asserting otherwise. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (judicial estoppel protects "the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.")[3]; *Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997). The doctrine protects the integrity of the judicial process by preventing a litigant from "playing fast and loose with the courts." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990), (quoting *Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council*, 851 F.2d 1208, 1210 (9th Cir. 1988).

OpenAI claims it worked with the other parties to "agree on a case schedule that all parties collectively believed to be most appropriate in light of Second Circuit precedent and Judge Stein's statements at the initial Authors Guild conference." Opp. at 7:11-13. OpenAI puts words in Judge Stein's mouth. Far from indicating that the first-to-file rule does not apply, Judge Stein expressed his interest in OpenAI's anticipated first-to-file motion, asking OpenAI, at the outset of the conference, "[h]ow soon can you get that motion to dismiss or stay, or in the alternative to transfer?" Transcript at 3:22-25. The court then heard discussion from both sides on the issue to "get a sense of the motion to dismiss under the first-file rule or stay." *Id.*, 9:12-13. Far from agreeing that first-to-file motion did not apply, Judge Stein set a hearing on OpenAI's anticipated first-to-file motion for one month out, noting the court "need[ed] to determine the motion to dismiss stay or transfer *ab initio*." *Id.*, 9:10-13. In fact,

---

[2] As Plaintiffs have shown, the application of the first-to-file rule does not require complete identity of the parties or claims.

[3] The Supreme Court, in *New Hampshire v. Maine,* identified several factors that a court should consider, including whether a party's later position was clearly inconsistent with its earlier position; whether the party has succeeded in persuading a court that acceptance of an inconsistent position would create the perception that either the first or the second court was misled; and "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." 532 U.S. at 750. Each apply here. In its opposition, OpenAI makes an argument that is clearly inconsistent with its statement to Judge Stein that Microsoft's addition does not change the calculus under the first-to-file rule. *See* Opp. at 7:6-9; Transcript at 3:22-25. Additionally, the second factor is met because if the Court accepts OpenAI's position, there would be a perception that the Court was misled into doing so: the Court would be accepting a position that directly contradicts OpenAI's earlier, clearly inconsistent position. Lastly, Defendants would be deriving an unfair advantage if they were able to convince this Court to agree with a position that is clearly inconsistent with a position OpenAI took before another court just months earlier.

based on OpenAI's representations, Judge Stein reasonably expected the forthcoming motion in due course. As noted in Plaintiffs' papers, this occurred before OpenAI failed to get its way on the litigation schedule set by this Court. Mot., 4:12-19.

Judge Stein also did not adjudicate the issue of phasing of class certification and summary judgment. To the contrary, the parties had expressed their conflicting views—with the Plaintiffs in the S.D.N.Y. Actions advocating for class certification before summary judgment, and OpenAI advocating for the reverse. As a result, Judge Stein asked the parties to submit briefing to address the issue of sequencing summary judgment before motions for class certification. *See* Transcript at 21:14-17 ("The Court: Okay. This is what I want. I want the parties to submit to me . . . your positions on whether fair use should come first or class certification should come first. You talked around that issue in your proposal here, but you didn't address it, so I want that addressed."). When the Plaintiffs in the S.D.N.Y. Actions subsequently reversed their position and agreed with OpenAI, the issue was not presented to the Court. Indeed, unlike here, the issue was never briefed or resolved on the merits.

**B.  The *Jimmy John's* Case Cited in OpenAI's Opposition Brief is Inapposite**

OpenAI relies heavily on *In re Jimmy John's Overtime Litig.*, 877 F.3d 756 (7th Cir. 2017) ("*Jimmy John's*") in its attempt to discount Plaintiffs' concern that the duplicative actions could lead to inconsistent decisions. *Jimmy Johns* is readily distinguishable. In *Jimmy Johns*, a group of plaintiffs filed collective actions in federal court under the FLSA. *Id.* at 758. The actions were consolidated in the Northern District of Illinois. *Id.* After the FLSA classes were certified, notice was given and approximately 600 class members opted in. *Id.* Subsequently, three plaintiffs filed collective-action lawsuits against their franchisee employers in the Eastern District of Missouri, the District of Arizona and the Central District of Illinois. *Id.* at 759. The corporate franchisor, Jimmy John's, was not named as a defendant in any of those lawsuits. *Id.* Plaintiffs in the subsequent lawsuits then filed them because, under the FLSA (and unlike here), the FLSA statute of limitations was running continuously on those claims. *Id.* They also argued (unlike here) they could not have originally sued their franchisee employers in the Northern District of Illinois where the prior case was pending because that court lacked personal jurisdiction and venue over the out-of-state franchisees. *Id.* The district court issued an anti-suit injunction against the plaintiffs without providing any authority for doing so. *Id.* at 760. The Seventh

Circuit reversed the injunction, reasoning that the injunction was improper because the district court did not have personal jurisdiction over some of the parties. *Id.* at 766.

Here, of course, there is no contention that any of the courts lack jurisdiction over any of the Defendants.[4] Moreover, as the Court recognized, one of the primary rationales for an injunction where there are overlapping claims is judicial efficiency and economy. As the *Jimmy John's* court noted:

> Avoiding duplicative litigation is desirable "to prevent the economic waste . . . which would have an adverse effect on the prompt and efficient administration of justice." [*Martin v. Graybar Elec. Co.*, 266 F.2d 202, 204 (7th Cir. 1959)]; see also *Gates*, 755 F.3d at 579–80 (affirming district court's decision to enjoin plaintiffs from pursuing duplicative litigation in another district because "[s]uch duplicative litigation . . . wastes judicial and party resources and needlessly muddles proceedings in both districts[.]").

*Jimmy John's*, 877 F.3d at 762; *see also Asset Allocation and Mgmt. Co. v. Western Employers Ins. Co.*, 892 F. 2d 566, 572 (the power to enjoin duplicative proceedings "is not a traditional equitable power that the courts are exercising in these cases but a new power asserted in order to facilitate the economical management of complex litigation.").

Defendants have no answer to the question of whether it would be in the interests of judicial economy for multiple proceedings to proceed on the same claims in multiple jurisdictions. Surely, there is no argument that it would. The presence of these duplicative cases only invites—and indeed essentially guarantees—unnecessary duplicative effort and the waste of judicial resources, as well as the resources of parties and third-party witnesses to the litigation. While efforts to coordinate discovery would be appropriate—and one would guess the Defendants would demand them—there is no need for them. The only reason that this issue is arising is because Defendants sought and obtained a better deal from compliant plaintiffs seeking to advantage themselves, thereby justifying their efforts to multiply the

---

[4] Indeed, as noted below, the jurisdictional connections to the Northern District of California are much stronger than those of the Southern District of New York. Significantly, OpenAI's headquarters are a few blocks from the federal courthouse in San Francisco. Moreover, many of the witnesses can only be compelled to testify at trial in San Francisco. *See* Fed. R. Civ. P. R. 45(c)(1) (100-mile rule). Even though Microsoft Corporation is currently not a party to the instant Action, the Court has personal jurisdiction over Microsoft, a company with "offices across Berkeley, San Francisco, and Silicon Valley." Microsoft Corporation, *Microsoft's Growing Presence in the Bay Area* ( Jan. 21, 2020), https://blogs.microsoft.com/bayarea/2020/01/21/california-bay-area-presence/.

proceedings and undermine the Court's scheduling order. Defendants should not be entitled to tax the system for their own benefit without any justification.

Further, Defendants never grapple with the issues arising from the fact that the class proposed in the *Authors Guild* FCCAC is coextensive with, and entirely subsumed by, the class in *Tremblay*. The FCCAC duplicates the claims in Tremblay, but on behalf of a smaller group of persons. The classes asserted in the *Authors Guild* Action are entirely subsumed by the *Tremblay* Action.[5] Nor do Defendants address the authorities that provide, in analyzing the first-to-file rule in the class-action context, "the classes, and not the class representatives, are compared." *Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008); *see also Manier v. L'Oreal USA, Inc.*, No. 2:16-CV-06886-ODW-KS, 2017 WL 59066, at *3 (C.D. Cal. Jan. 4, 2017) ("Where the proposed classes in both actions overlap, courts have held that the parties are substantially similar.") (Citing *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010)); *Subbaiah v. GEICO Gen. Ins. Co.*, No. 219CV06717ABJPRX, 2019 WL 9904278, at *5 (C.D. Cal. Dec. 11, 2019) ("Notably, Plaintiff and Munoz are absent members of each other's putative classes. Accordingly, the Court finds that the parties are substantially similar under the first-to-file rule.").

### C.  Plaintiffs in the S.D.N.Y. Action Support the Application of the First-to-File Rule Here

Notably, certain plaintiffs in the S.D.N.Y. Action support the application of the first-to-file rule here. *See* Richter Decl., ¶¶ 2-4. Having been involved in the S.D.N.Y. Actions from the outset, they agree that the cases involve overlapping duplicative issues. *Id.* at ¶ 3. Specifically, they agree that, at core, the cases involve OpenAI's direct copyright infringement when they made and used copies of Plaintiffs' books—without Plaintiffs' permission—during the process of training OpenAI's language models. *Id.* They confirm that each complaint filed in the S.D.N.Y. Actions purport to represent proposed classes that are entirely subsumed by the class proposed in the instant Action. *Id.* Having participated in the S.D.N.Y. Actions in the months since they were filed, and having participated in discussions with counsel for Plaintiffs and Defendants, they agree that other than filing complaints and

---

[5] As discussed above, unlike *Jimmy Johns*, there is no statute of limitations to protect.

commencing with limited discovery, the S.D.N.Y. Actions are not substantially advanced. *Id*. at ¶ 4. They confirm that the other plaintiffs in the *Authors Guild* Action have handled those proceedings in a way that advantages themselves. *See Id*. at ¶¶ 5-22.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant their Motion and enjoin the S.D.N.Y. Actions and further enjoin Defendants and their counsel from proceeding in the Southern District of New York.

Dated: February 29, 2024

By:     */s/ Joseph R. Saveri*
            Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K. L. Young (State Bar No. 318371)
Holden Benon (State Bar No. 325847)
Aaron Cera (State Bar No. 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:   jsaveri@saverilawfirm.com
         czirpoli@saverilawfirm.com
         cyoung@saverilawfirm.com
         hbenon@saverilawfirm.com
         acera@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:  (323)968-2632
Facsimile:   (415) 395-9940
Email:       mb@buttericklaw.com

Bryan L. Clobes (pro hac vice)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
205 N. Monroe Street
Media, PA 19063
Telephone:    215-864-2800
Email:        bclobes@caffertyclobes.com

Alexander J. Sweatman (pro hac vice anticipated)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone:     312-782-4880
Email:            asweatman@caffertyclobes.com

Daniel J. Muller (State Bar No. 193396)
**VENTURA HERSEY & MULLER, LLP**
1506 Hamilton Avenue
San Jose, California 95125
Telephone: (408) 512-3022
Facsimile: (408) 512-3023
Email:            dmuller@venturahersey.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*