# LATHAM & WATKINS LLP

Elana Nightingale Dawson
555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
elana.nightingaledawson@lw.com

June 18, 2024

**VIA ECF**

The Honorable Robert M. Illman
United States District Court for the Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Ave. McKinleyville, CA 95519

Re: *In re OpenAI ChatGPT Litigation*, Master File No. 23-cv-3223-AMO

Dear Judge Illman:

Pursuant to the Court's standing order, the parties hereby submit this joint discovery letter brief concerning Defendant OpenAI OpCo, LLC's Request for Production No. 9 ("RFP 9").  Lead counsel for the parties met and conferred in good faith via video conference regarding this Request on June 11, 2024, and were unable to resolve their dispute.

***OpenAI's Statement.***  RFP 9 seeks "All non-privileged Documents and Communications relating to Your investigation of the claims alleged in the Complaint."  OpenAI narrowed the request to (a) the OpenAI account information for individuals who used ChatGPT to investigate Plaintiffs' claims; and (b) the prompts and outputs for Plaintiffs' testing of ChatGPT in connection with their pre-suit ChatGPT testing, including prompts and outputs that did not reproduce or summarize Plaintiffs' works or otherwise support Plaintiffs' claims, along with documentation of Plaintiffs' testing process.  OpenAI is seeking this discovery because Plaintiffs made categorical allegations regarding how ChatGPT allegedly responded to various types of inquiries.  Plaintiffs made those allegations based on their own "interrogation" of ChatGPT.  But rather than disclose the entirety of Plaintiffs' interrogation, Plaintiffs offered up only their preferred, cherry-picked results.  *See* Dkt. 120, Ex. B.  The discovery OpenAI seeks is necessary to test the allegations on which Plaintiffs have chosen to rest their Complaint.  *See* Dkt. 120 ¶¶ 46–51, 62, 70, Ex. B.  Plaintiffs refuse to respond in full based on a claim of work-product protection, offering to produce only "full threads of the prompts and outputs" that led to the examples in Exhibit B to the Complaint.

Plaintiffs waived any arguable work-product protection over the account and prompt-and-output information in two ways: First, Plaintiffs "reveal[ed] or plac[ed] the work product at issue during the course of [this] litigation" by including in the Amended Complaint allegations regarding how ChatGPT responded to Plaintiffs' prompts made from those accounts.  *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (citation omitted).  Second, Plaintiffs revealed the information "to an adversary in litigation" or at the least "substantially increased the opportunities" for OpenAI to "obtain the information" by disclosing the allegedly protected information to OpenAI in ChatGPT.  *Id.*  As to the former, Plaintiffs included in their Complaint an entire section on "interrogating the OpenAI language models using ChatGPT."  Dkt. 120 at 8.  Plaintiffs chose to detail the alleged results of their own interrogation of ChatGPT, claiming, for example, "[i]f a user prompts ChatGPT to summarize a copyrighted book, it will do so." *Id.* ¶ 48.  Plaintiffs allege that, "[w]hen ChatGPT was prompted to summarize books written by each of the Plaintiffs, it generated very accurate summaries." *Id.* ¶ 51; *see also id.* Ex. B.  Plaintiffs disclosed not just the


fact that they tested ChatGPT, but the alleged testing *results*. *See id.* ¶¶ 46–51, 62, 70.

The Ninth Circuit has squarely rejected the tactic Plaintiffs seek to employ because, as a matter of "fairness," a party may not use "the privilege as both a shield and a sword." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Id.* That is what Plaintiffs seek to do here. Plaintiffs allege, for example, that "[w]hen ChatGPT was prompted to summarize books written by each of the Plaintiffs, it generated very accurate summaries." Dkt. 120 ¶ 51. All OpenAI has to test the veracity of that claim is Exhibit B to the Complaint, which contains 36 alleged test results cherry picked by Plaintiffs. That is so even though Plaintiffs now seemingly concede that, despite their categorical representation that ChatGPT allegedly generated accurate summaries when prompted, ChatGPT did *not* always do so. That Plaintiffs had to submit many more prompts, and received many more outputs, beyond those in Exhibit B, directly undercuts Plaintiffs' allegations regarding what ChatGPT does when prompted, *see id.* ¶¶ 48, 51, making such evidence highly probative.

This case is analogous to *Lexington Luminance LLC v. Feit Elec. Co., Inc.*, No. 18-10513, 2020 WL 10052401 (C.D. Cal. June 12, 2020), where the plaintiff sued for patent infringement based on the testing of 44 products, but included in the Complaint testing results for "only one of the forty-four Accused Products." *Id.* at *4. The court concluded that, by disclosing results for one product, the plaintiff put the results "squarely 'at issue' in the judicial arena, and thus, waived work product protection as to the results for all 44 products. *Id.* So too here. Plaintiffs supported their claims with selective results from their ChatGPT testing, dedicating an entire section of the Complaint to their "interrogation" of ChatGPT, thereby putting at issue all of their test results. Plaintiffs' waiver extends to the entirety of their ChatGPT testing—the "subject matter" of the "interrogation" they chose to put at issue. *See id.* *4, *11; *cf. Theranos, Inc. v. Fuisz Techs., Ltd.*, No. 11-cv-5236, 2013 WL 2153276, at *4 (N.D. Cal. May 16, 2013) (no privilege where defendant "may have cherry-picked selective communications that are favorable to him").

Plaintiffs argue no waiver occurred because the Complaint's allegations are not "evidence upon which the jury will be asked to rely," and their testing results—that is, the very results on which they based *and defended* their claim—are not "particularly relevant." *See* Dkt. 120 ¶¶ 46–51, 62, 70; Dkt. 48 at 8 (opposing dismissal on the basis that "[OpenAI's] LLMs have been used to generate outputs that do nothing more than recombine expressive information extracted from the training data."). While Plaintiffs may not think the testing results are "particularly relevant"—especially those that don't *help* them, the results are directly relevant because Plaintiffs chose to pursue a claim based on ChatGPT's alleged regurgitation of Plaintiffs' works. As the court recognized in *Moeller v. Taco Bell Corporation*, it is always the case when a party asserts privilege over a document that "one party is withholding and thus does not intend to introduce" the at-issue document. No. 02-cv-5849, 2009 WL 10710495, at *4 (N.D. Cal. Oct. 6, 2009). "Waiver is justified precisely because of the unfairness" that results from such withholding. *See id.*

Second, Plaintiffs waived any arguable work-product protection over OpenAI account information, as well as prompt and output information, by voluntarily disclosing that information to their "adversary in litigation." *Sanmina*, 968 F.3d at 1121. Where, as here, a party discloses work product "to an adversary in litigation or substantially increased the opportunity for potential

2


adversaries to obtain the information," work product protection is waived. *Id.* Plaintiffs resist this conclusion, contending that no disclosure to "an adversary" occurred because OpenAI's Privacy Policy led Plaintiffs' counsel, Matthew Butterick, to understand that "any prompts input in ChatGPT" would be "private." Yet Mr. Butterick's declaration says nothing about OpenAI's Privacy Policy. In any event, Plaintiffs purposely misread that Policy. The Policy outlines OpenAI's practices with respect to user privacy and its approach to keeping user personal information secure. It explains how Personal Information—that is, "information that alone or in combination with other information in [OpenAI's] possession could be used to identify" a user—may be used, for example, "[t]o comply with legal obligations and legal process" and "to protect [the] rights, privacy, safety, or property" of OpenAI, users, and others. *See* Ex. B § 2; *see also id.* § 3 (OpenAI "may provide" Personal Information "to protect and defend [OpenAI's] rights or property" and "to protect against legal liability"). And it makes clear that it covers Personal Information "included in the input, file uploads, or feedback" provided to OpenAI products. *Id.*[1] The Privacy Policy thus informed Mr. Butterick that information in ChatGPT inputs—including inputs used to manipulate ChatGPT to attempt to create outputs on which Plaintiffs could then sue OpenAI—could be used by OpenAI to defend itself against such a lawsuit. The Policy defeats, not bolsters, Plaintiffs' work-product claim. *See Sanmina*, 968 F.3d at 1121.

Finally, Plaintiffs waived any alleged work product protection over documents showing the process they used to "interrogat[e]" ChatGPT because it "ought in fairness to be considered together" with their testing results, Fed. R. Evid. 502(a), and is among the "materials that [OpenAI] might need to effectively contest or impeach [Plaintiffs'] claim." *See Moeller*, 2009 WL 10710495, at *4 (citation omitted). For example, the "custom instructions" feature allows users to "add preferences or requirements" for "ChatGPT to consider when generating its responses." https://openai.com/index/custom-instructions-for-chatgpt/. OpenAI needs this discovery to test Plaintiffs' allegations regarding ChatGPT's behavior in response to the "interrogation" Plaintiffs chose to put at issue. *See Moeller*, 2009 WL 10710495, at *4; Fed. R. Evid. 502(a).

***Plaintiffs' Statement.*** Defendants appear to concede the material they seek is protected work product because it was obtained by lawyers in connection with this litigation. Assuming, *arguendo*, there was a waiver, it is limited to the material disclosed. Thus, as a compromise, Plaintiffs agreed to produce full threads of the prompts and outputs that produced the factual matter set forth in the exhibits included in the FAC. OpenAI is still unsatisfied. It seeks wide-ranging discovery into Plaintiffs' counsels' investigatory files, regardless of whether the prompts and outputs were used in the complaint, and regardless of whether the prompts and outputs "support Plaintiffs' claims."

There is no dispute that the materials at issue are *prelitigation* materials created by Plaintiffs' counsel in anticipation of litigation and, therefore, protected attorney work product. Defendants do not only seek factual information gathered by Plaintiffs' lawyers which supports their claims. Defendants *also* seek "prompts and outputs that **did not** reproduce or summarize Plaintiffs' works or otherwise support Plaintiffs' claims." (Emphasis added.) OpenAI plainly seeks the thoughts and analysis conducted by Plaintiffs' lawyers in preparation of the litigation. OpenAI has not explained how it cannot develop this evidence without invading the protection for this material or, further,

---

[1] Plaintiffs now also contend that "contents of input or output" do not qualify under the Policy as Personal Information. *Supra* at 5 n.2. But if that is the case, the Privacy Policy is irrelevant because, by its terms, it addresses what OpenAI does "with respect to Personal Information."

3

how it cannot do so "without undue hardship." *See Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F. 2d. 573, 577 (9th Cir. 1992) (holding opinion work product is only discoverable if it is "at issue in a case or the need for the material is compelling."). Such information is not relevant. Even if it were, OpenAI authored and controls the generative AI models at issue and can simply run prompts itself. It does not need Plaintiffs' attorney work product to do so.

The subject materials are protected opinion work product. There can be no legitimate dispute that the material at issue was created by Plaintiffs' counsel in anticipation of litigation. Ex. A, Butterick Decl. ¶¶ 2-3. This material is basic attorney work product under Fed. R. Civ. P. 26(b)(3)(A). The only question is whether that work product was waived.

There has been no waiver. Factual pleading assertions confirming the basis of a claim do not constitute waiver. As Plaintiffs have explained to OpenAI (and as OpenAI omits), even if the inclusion of some prompts and outputs in the FAC operated as a waiver (it does not), it is settled law that any waiver of work product should be "limited to the subject matter of the disclosure that gave rise to the waiver," not to all of the prompts and outputs. *Lexington Luminance LLC v. Feit Elec. Co., Inc.*, 2020 WL 10052401, at *11 (C.D. Cal. June 12, 2020). Plaintiffs allege OpenAI copied Plaintiffs' Asserted Works to train their language models. To support this claim, the FAC contains narrow specific allegations and exhibits showing that interrogation of ChatGPT resulted in ChatGPT emitting unauthorized summaries of Plaintiffs' Asserted Works. FAC ¶ 50. These facts were integral to Plaintiffs satisfying their pleading requirements. Their disclosure does not constitute waiver. *See, e.g.*, *Bristol-Meyers Co. v. Sigma Chem. Co.*, 1988 WL 147409, at *4 (D. Del. 1988) (disclosure of affidavit setting forth pre-infringement suit investigation did not constitute waiver where it was "limited to demonstrating that the plaintiff had a good faith basis . . . for instituting th[e] action[.]").

Additionally, work product protection has not been waived because the prompts and outputs at issue are not evidence upon which the jury will be asked to rely on. *See Ferruza v. MTI Tech.*, 2002 WL 32344347, at *5 (C.D. Cal. June 13, 2002) ("The fact-finder in this case will not be invited to rely upon the work product information. Thus, Plaintiffs have not waived any work product protection."). Moreover, the fact that ChatGPT did not *always* produce a summary of Plaintiffs' work when prompted is immaterial because the summaries were simply used to plausibly allege that Defendants trained their products on Plaintiffs' Asserted Works. "Negative" test results are not relevant for the same reason the "positive" test results are not particularly relevant at this stage. Plaintiffs will rely on other, more concrete evidence obtained through discovery to identify the literary works OpenAI used to train their products.

The law requires plaintiffs to have a good faith basis for their claims and to investigate the supporting facts before bringing those claims. The work product doctrine protects the adversarial process by shielding these investigatory efforts from discovery. *See In re Grand Jury*, 23 F.4th 1088, 1093 (9th Cir. 2021) ("The work-product doctrine upholds the fairness of the adversarial process by allowing litigators to creatively develop legal theories and strategies—without their adversaries invoking the discovery process to pry into the litigators' minds and free-ride off them.") (citation omitted). Adversaries should not be able to piggyback on this and obtain evidence by invading this process. *See Admiral Ins. Co. v. United States Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (the primary purpose of the work product doctrine is to "prevent exploitation of a party's efforts in preparing for litigation."). Indeed, "the purpose of the work-product protection is to

safeguard the efforts of the attorney on behalf of his [or her] client by preventing an adversary counsel from obtaining a free ride on the work of the attorney." *Rampton v. Anthem Blue Cross Life & Health Ins. Co.*, 2024 WL 332889, at *3 (N.D. Cal. Jan. 29, 2024). If this protection were not available, parties would be disinclined or prevented from receiving competent representation.

**There has been no *voluntary* disclosure of work product.** Defendants attempt to invade the work product protection on the grounds that the disclosures were voluntary. First, even if one were to assume that the allegations regarding the investigation set forth in the complaint were waived, that does not apply to materials that were not disclosed. OpenAI relies on *Lexington*, which supports the proposition that any waiver is limited to the facts disclosed. The court found "waiver limited to the subject matter of the disclosure that gave rise to the waiver." *Id.* at *11 ("[T]he Court takes a narrow view of the scope of the work product waiver and does not find a wholesale waiver of Lexington's work product protections."). Voluntary disclosure of work product may occur where such disclosure is made to an adversary in litigation or where the disclosure is made in a manner that substantially increases the opportunities for potential adversaries to obtain the work product. *In re Telescopes Antitrust Litig.*, 2022 WL 1693677, at *3 (N.D. Cal. May 26, 2022) (citation omitted). That counsel included allegations regarding facts showing a good faith basis for a claim for pleading purposes does not constitute a broader waiver of other aspects of any investigation. Apparently, OpenAI also claims that simply by using the OpenAI chatbot, Plaintiffs' attorney waived any protection for its investigation. Such a holding would produce the absurd result that Plaintiffs could not investigate their claim without waiving protection. The information is exclusively accessible through OpenAI's website and applications. Plaintiffs' counsel had no choice but to use ChatGPT as part of their investigation. This is not like *Sanmina*, where Sanmina chose to disclose attorney work product where it did not have to. *Sanmina*, at 1125 ("Sanmina could have chosen to substantiate the deduction with other documents.").

Further, OpenAI avers that by disclosing allegedly protected material to OpenAI using ChatGPT, Plaintiff waived any work product protection. But this contravenes OpenAI's own privacy policy. *See* Ex. B, Open AI Privacy Policy preamble; §§ 2-3. When Plaintiffs' counsel conducted the investigation into OpenAI's infringement, counsel understood any prompts input in ChatGPT to be private. *Id.*, Ex. A, Butterick Decl. ¶ 3. "Personal Information," as defined in OpenAI's Privacy Policy, does not include input and outputs generated by users. Ex. B Privacy Policy § 1. OpenAI offers the misleading statement that "[t]he Policy also makes clear that it applies to '[i]nformation that is included in the input, file uploads, or feedback,'" but it conveniently omits the fact that sentence is tied to "**Personal Information** that is included in the input, file uploads, or feedback." (Emphasis added.) Personal Information is a defined term that cannot be reasonably construed to include the contents of an input or output.[2] Furthermore, finding a broad subject matter waiver here could effectively destroy the work product immunity for lawyers who wish to use ChatGPT to investigate other legal issues potentially implicated by this nascent technology.

OpenAI runs roughshod over the work product doctrine. It demands, without limitation, *any and all* prompts that Plaintiffs' counsel ever input into ChatGPT as part of Plaintiffs' pre-lawsuit investigation. But this information is not relevant. And OpenAI can obtain the material itself—it can interrogate ChatGPT for itself. Nevertheless, to resolve this dispute, Plaintiffs have agreed to provide the prompts used to generate the facts set forth in the complaint. This resolution is fair.

---

[2] None of the limited exceptions to disclosure of Personal Information apply here. Ex. B, Privacy Policy § 2.

Dated: June 18, 2024 				Respectfully Submitted,

*/s/ Elana Nightingale Dawson*
Elana Nightingale Dawson (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Email: elana.nightingaledawson@lw.com

Andrew M. Gass (SBN 259694)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600

*Counsel for Defendants*


*/s/ Joseph R. Saveri*
Joseph R. Saveri (State Bar No. 130064)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

# EXHIBIT A

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@butterickslaw.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION<br><br>This document relates to:<br><br>Case No. 3:23-cv-03223-AMO<br>Case No. 3:23-cv-03416-AMO | Master File No. 3:23-cv-03223-AMO<br><br>**DECLARATION OF MATTHEW BUTTERICK IN SUPPORT OF PARTIES' JOINT LETTER BRIEF REGARDING REQUEST FOR PRODUCTION NO. 9** |

I, Matthew Butterick, declare as follows:

1. I am a duly licensed attorney authorized to practice in California. I am co-counsel for Plaintiffs in the above-referenced Action.

2. In or around May and June 2023, I conducted an investigation into the facts and circumstances that give rise to the above-referenced Action. Specifically, I assessed whether Defendants had committed copyright infringement by training their artificial-intelligence products on copyrighted literary works. As part of the investigation, I interrogated OpenAI's ChatGPT product to determine whether it was capable of emitting summaries of specific copyrighted books, including works created by Plaintiffs Kadrey, Golden, Tremblay, and Silverman.

3. The above-referenced investigation was done for the purpose of providing legal advice to book authors whose copyrighted works I believed were illegally reproduced. The above-referenced investigation was also done in preparation of drafting a complaint against Defendants, which complaint I ultimately drafted and filed on behalf of the Plaintiffs.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 18, 2024.

By:     */s/Matthew Butterick*
        Matthew Butterick

# EXHIBIT B

# Privacy policy

**Updated**
April 27, 2023

We at OpenAI OpCo, LLC (together with our affiliates, "OpenAI", "we", "our" or "us") respect your privacy and are strongly committed to keeping secure any information we obtain from you or about you. This Privacy Policy describes our practices with respect to Personal Information we collect from or about you when you use our website and services (collectively, "Services"). This Privacy Policy does not apply to content that we process on behalf of customers of our business offerings, such as our API. Our use of that data is governed by our customer agreements covering access to and use of those offerings.

For information about how we collect and use training information to develop our language models that power ChatGPT and other Services, and your choices with respect to that information, please see this help center article.

## 1. Personal information we collect

We collect information that alone or in combination with other information in our possession could be used to identify you ("Personal Information") as follows:

**Personal Information You Provide**: We may collect Personal Information if you create an account to use our Services or communicate with us as follows:

- *Account Information:* When you create an account with us, we will collect information associated with your account, including your name, contact information, account credentials, payment card information, and transaction history, (collectively, "Account Information").
- *User Content:* When you use our Services, we may collect Personal Information that is included in the input, file uploads, or feedback that you provide to our Services ("Content").

- *Communication Information*: If you communicate with us, we may collect your name, contact information, and the contents of any messages you send ("Communication Information").
- *Social Media Information*: We have pages on social media sites like Instagram, Facebook, Medium, Twitter, YouTube and LinkedIn. When you interact with our social media pages, we will collect Personal Information that you elect to provide to us, such as your contact details (collectively, "Social Information"). In addition, the companies that host our social media pages may provide us with aggregate information and analytics about our social media activity.

**Personal Information We Receive Automatically From Your Use of the Services**: When you visit, use, and interact with the Services, we may receive the following information about your visit, use, or interactions ("Technical Information"):

- *Log Data*: Information that your browser automatically sends whenever you use our website ("log data"). Log data includes your Internet Protocol address, browser type and settings, the date and time of your request, and how you interacted with our website.
- *Usage Data*: We may automatically collect information about your use of the Services, such as the types of content that you view or engage with, the features you use and the actions you take, as well as your time zone, country, the dates and times of access, user agent and version, type of computer or mobile device, computer connection, IP address, and the like.
- *Device Information*: Includes name of the device, operating system, and browser you are using. Information collected may depend on the type of device you use and its settings.
- *Cookies*: We use cookies to operate and administer our Services, and improve your experience on it. A "cookie" is a piece of information sent to your browser by a website you visit. You can set your browser to accept all cookies, to reject all cookies, or to notify you whenever a cookie is offered so that you can decide each time whether to accept it. However, refusing a cookie may in some cases preclude you from using, or negatively affect the display or function of, a website or certain areas or features of a website. For more details on cookies please visit All About Cookies.
- *Analytics*: We may use a variety of online analytics products that use cookies to help us analyze how users use our Services and enhance your experience when you use the Services.

## 2. How we use personal information

We may use Personal Information for the following purposes:

- To provide, administer, maintain and/or analyze the Services;
- To improve our Services and conduct research;
- To communicate with you;
- To develop new programs and services;
- To prevent fraud, criminal activity, or misuses of our Services, and to ensure the security of our IT systems, architecture, and networks; and

- To comply with legal obligations and legal process and to protect our rights, privacy, safety, or property, and/or that of our affiliates, you, or other third parties.

**Aggregated or De-Identified Information**. We may aggregate or de-identify Personal Information and use the aggregated information to analyze the effectiveness of our Services, to improve and add features to our Services, to conduct research and for other similar purposes. In addition, from time to time, we may analyze the general behavior and characteristics of users of our Services and share aggregated information like general user statistics with third parties, publish such aggregated information or make such aggregated information generally available. We may collect aggregated information through the Services, through cookies, and through other means described in this Privacy Policy. We will maintain and use de-identified information in anonymous or de-identified form and we will not attempt to reidentify the information.

As noted above, we may use Content you provide us to improve our Services, for example to train the models that power ChatGPT. See here for instructions on how you can opt out of our use of your Content to train our models.

## 3. Disclosure of personal information

In certain circumstances we may provide your Personal Information to third parties without further notice to you, unless required by the law:

- *Vendors and Service Providers*: To assist us in meeting business operations needs and to perform certain services and functions, we may provide Personal Information to vendors and service providers, including providers of hosting services, cloud services, and other information technology services providers, event management services, email communication software and email newsletter services, and web analytics services. Pursuant to our instructions, these parties will access, process, or store Personal Information only in the course of performing their duties to us.

- *Business Transfers*: If we are involved in strategic transactions, reorganization, bankruptcy, receivership, or transition of service to another provider (collectively a "Transaction"), your Personal Information and other information may be disclosed in the diligence process with counterparties and others assisting with the Transaction and transferred to a successor or affiliate as part of that Transaction along with other assets.

- *Legal Requirements*: If required to do so by law or in the good faith belief that such action is necessary to (i) comply with a legal obligation, including to meet national security or law enforcement requirements, (ii) protect and defend our rights or property, (iii) prevent fraud, (iv) act in urgent circumstances to protect the personal safety of users of the Services, or the public, or (v) protect against legal liability.

- *Affiliates*: We may disclose Personal Information to our affiliates, meaning an entity that controls, is controlled by, or is under common control with OpenAI. Our affiliates may use the Personal Information we share in a manner consistent with this Privacy Policy.

Explore our developer-friendly HTML to PDF API   Printed using PDFCrowd   HTML to PDF

## 4. Your rights

Depending on location, individuals in the EEA, the UK, and across the globe may have certain statutory rights in relation to their Personal Information. For example, you may have the right to:

- Access your Personal Information.
- Delete your Personal Information.
- Correct or update your Personal Information.
- Transfer your Personal Information elsewhere.
- Withdraw your consent to the processing of your Personal Information where we rely on consent as the legal basis for processing.
- Object to or restrict the processing of your Personal Information where we rely on legitimate interests as the legal basis for processing.

You can exercise some of these rights through your OpenAI account. If you are unable to exercise your rights through your account, please send your request to dsar@openai.com.

A note about accuracy: Services like ChatGPT generate responses by reading a user's request and then predicting the next most likely words that might appear in response. In some cases, the most likely next words may not be the most factually accurate ones. For this reason, you should not rely on the factual accuracy of output from our models. If you notice that ChatGPT output contains factually inaccurate personal information about you and you would like us to correct the inaccuracy, you may submit a correction request to dsar@openai.com. Given the technical complexity of how our models work, we may not be able to correct the inaccuracy. In that case, you may request that we remove your personal information from ChatGPT's output by filling out this form.

For information on how to exercise your rights with respect to data we have collected from the internet to train our models, please see this help center article.

## 5. California privacy rights

The following table provides additional information about how we disclose Personal Information. You can read more about the Personal Information we collect in "Personal information we collect" above, how we use Personal information in "How we use personal information" above, and how we retain personal information in "Security and Retention" below.

| Category of Personal Information | Disclosure of Personal Information |
|---|---|
| Identifiers, such as your contact details | We disclose this information to our affiliates, vendors and service providers, law enforcement, and parties |

| | |
|---|---|
| | involved in Transactions. |
| Commercial Information, such as your transaction history | We disclose this information to our affiliates, vendors and service providers, law enforcement, and parties involved in Transactions. |
| Network Activity Information, such as Content and how you interact with our Services | We disclose this information to our affiliates, vendors and service providers, law enforcement, and parties involved in Transactions. |
| Geolocation Data | We disclose this information to our affiliates, vendors and service providers, law enforcement, and parties involved in Transactions. |
| Your account login credentials (Sensitive Personal Information) | We disclose this information to our affiliates, vendors and service providers, law enforcement, and parties involved in Transactions. |

To the extent provided for by law and subject to applicable exceptions, California residents have the following privacy rights in relation to their Personal Information:

- The right to know information about our processing of your Personal Information, including the specific pieces of Personal Information that we have collected from you;
- The right to request deletion of your Personal Information;
- The right to correct your Personal Information; and
- The right to be free from discrimination relating to the exercise of any of your privacy rights.

We don't sell or share Personal Information as defined by the California Consumer Privacy Act, as amended by the California Privacy Rights Act. We also don't process sensitive personal information for the purposes of inferring characteristics about a consumer.

**Exercising Your Rights**. California residents can exercise their CCPA privacy rights by sending their request to dsar@openai.com.

**Verification**. In order to protect your Personal Information from unauthorized access, change, or deletion, we may require you to verify your credentials before you can submit a request to know, correct, or delete Personal Information. If you do not have an account with us, or if we suspect fraudulent or malicious activity, we may ask you to provide additional Personal Information and proof of residency for verification. If we cannot verify your identity, we will not provide, correct, or delete your Personal Information.

**Authorized Agents**. You may submit a rights request through an authorized agent. If you do so, the agent must present signed written permission to act on your behalf and you may also be required to independently verify your identity and submit proof of your residency with us. Authorized agent requests can be submitted to dsar@openai.com.

## 6. Children

Our Service is not directed to children who are under the age of 13. OpenAI does not knowingly collect Personal Information from children under the age of 13. If you have reason to believe that a child under the age of 13 has provided Personal Information to OpenAI through the Service please email us at legal@openai.com. We will investigate any notification and if appropriate, delete the Personal Information from our systems. If you are 13 or older, but under 18, you must have consent from your parent or guardian to use our Services.

## 7. Links to other websites

The Service may contain links to other websites not operated or controlled by OpenAI, including social media services ("Third Party Sites"). The information that you share with Third Party Sites will be governed by the specific privacy policies and terms of service of the Third Party Sites and not by this Privacy Policy. By providing these links we do not imply that we endorse or have reviewed these sites. Please contact the Third Party Sites directly for information on their privacy practices and policies.

## 8. Security and Retention

We implement commercially reasonable technical, administrative, and organizational measures to protect Personal Information both online and offline from loss, misuse, and unauthorized access, disclosure, alteration, or destruction. However, no Internet or email transmission is ever fully secure or error free. In particular, email sent to or from us may not be secure. Therefore, you should take special care in deciding what information you send to us via the Service or email. In addition, we are not responsible for circumvention of any privacy settings or security measures contained on the Service, or third party websites.

We'll retain your Personal Information for only as long as we need in order to provide our Service to you, or for other legitimate business purposes such as resolving disputes, safety and security reasons, or complying with our legal obligations. How long we retain Personal Information will depend on a number of factors, such as the amount, nature, and sensitivity of the information, the potential risk of harm from unauthorized use or disclosure, our purpose for processing the information, and any legal requirements.

We may also anonymize or de-identify your Personal Information (so that it can no longer be associated with you) for research or statistical purposes, as described above, in which case we may use this information indefinitely without further notice to you.

## 9. International users

By using our Service, you understand and acknowledge that your Personal Information will be transferred from your location to our facilities and servers in the United States.

For EEA, UK or Swiss users:

**Legal Basis for Processing**. Our legal bases for processing your Personal Information include:

- Performance of a contract with you when we provide and maintain our Services. When we process Account Information, Content, and Technical Information solely to provide our Services to you, this information is necessary to be able to provide our Services. If you do not provide this information, we may not be able to provide our Services to you.

- Our legitimate interests in protecting our Services from abuse, fraud, or security risks, or in developing, improving, or promoting our Services, including when we train our models. This may include the processing of Account Information, Content, Social Information, and Technical Information. See here for instructions on how you can opt out of our use of your information to train our models.

- Your consent when we ask for your consent to process your Personal Information for a specific purpose that we communicate to you. You have the right to withdraw your consent at any time.

- Compliance with our legal obligations when we use your Personal Information to comply with applicable law or when we protect our or our affiliates', users', or third parties' rights, safety, and property.

**EEA and UK Representative**. We've appointed VeraSafe as our representative in the EEA and UK for data protection matters. You can contact VeraSafe in matters related to Personal Information processing using this contact form. Alternatively:

- For users in the EEA, you can contact VeraSafe at VeraSafe Ireland Ltd, Unit 3D North Point House, North Point Business Park, New Mallow Road, Cork T23AT2P, Ireland.

- For users in the UK, you can contact VeraSafe at VeraSafe United Kingdom Ltd., 37 Albert Embankment, London SE1 7TL, United Kingdom.

If you feel we have not adequately addressed an issue, you have the right to lodge a complaint with your local supervisory authority.

**Data Transfers**. Where required, we will use appropriate safeguards for transferring Personal Information outside of the EEA, Switzerland, and the UK. We will only transfer Personal Information pursuant to a legally valid transfer mechanism.

**Data Controller**. For the purposes of the UK and EU General Data Protection Regulation 2018, our data controller is OpenAI OpCo, LLC at 3180 18th Street, San Francisco, CA, United States.

## 10. Changes to the privacy policy

We may change this Privacy Policy at any time. When we do, we will post an updated version on this page, unless another type of notice is required by applicable law. By continuing to use our

Service or providing us with Personal Information after we have posted an updated Privacy Policy, or notified you by other means, you consent to the revised Privacy Policy.

## 11. How to contact us

Please contact support if you have any questions or concerns not already addressed in this Privacy Policy.

OpenAI

**Research**
Overview
Index

**Product**
Overview
ChatGPT
GPT-4
DALL·E 2
Customer stories
Safety standards
Pricing

**Safety**
Overview

**Company**
About
Blog
Careers
Charter
Security

OpenAI © 2015–2023
Terms & policies

Twitter
YouTube

Explore our developer-friendly HTML to PDF API    Printed using PDFCrowd    HTML to PDF

Privacy policy
Brand guidelines

GitHub
SoundCloud
LinkedIn

Back to top ↑

Explore our developer-friendly HTML to PDF API          Printed using PDFCrowd          **HTML to PDF**

## **ATTESTATION**

I, Elana Nightingale Dawson, am the ECF user whose user ID and password authorized the filing of this document and enclosed exhibits. Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document and Exhibit A have concurred in their filing.

Dated: June 18, 2024                                                         */s/ Elana Nightingale Dawson*