July 30, 2024

**Via ECF**

The Honorable Robert M. Illman
United States District Court for the Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Ave.
McKinleyville, CA 95519

Re:     *In re OpenAI ChatGPT Litigation*, Master File No. 23-cv-3223-AMO Joint Letter RE: ESI Protocol

Dear Honorable Judge Illman:

Pursuant to the Court's standing order, the parties hereby submit this joint discovery letter brief concerning the Parties' competing Proposed Orders re Discovery of Electronically Stored Information ("ESI"). Lead counsel for the parties met and conferred in good faith to resolve their disputes and have reached an agreement on all aspects of an ESI protocol save for two: (i) the number of document custodians, and (ii) the provisions for a search term validation protocol.

**Plaintiffs' Statement**: After three months of conferring on ESI, including participating in six video conferences and exchanging over 100 emails, the parties have narrowed the issues down to two.

## Number of Document Custodians

Plaintiffs request 28 custodians with the ability to seek more through meeting and conferring or by motion to the Court. On the eve of this filing, Plaintiffs reiterated an outstanding offer to resolve the issue through negotiations in the 18-25 range. Defendants indicated they are amenable; however, the parties remain at impasse on the procedure for identifying custodians, and whether the requesting party should be capped at 5 additional custodians if it determines more are necessary.[1]

The selection of custodians and search terms should be an iterative process, which involves cooperation and transparency. Such a back-and-forth (based on the specific facts at issue and the identification of knowledgeable witnesses) aligns with Rule 26 proportionality concerns, and the interests of justice. *See Hardin v. Mendocino Coast Dist. Hosp.*, 2019 WL 4256383, at *2 (N.D. Cal. Sept. 9, 2019) ("Rule 26 requires the parties to meet and confer about ESI at the beginning of discovery. . . . Custodians are usually negotiated—both who they are and how many.").

Defendants seek to short circuit this orderly process. For example, Plaintiffs requested Defendants' organizational charts to more accurately assess who proper custodians may be. Defendants waited until the eve of this filing to claim they "understood [organizational charts] had already been produced" and that they were forthcoming. Instead of providing this information weeks ago, Defendants cherry-picked their own 12 custodians. This approach suffers from a number of deficiencies. First, when asked during a meet and confer, Defendants declined to represent that their selection of 12 custodians resulted after a diligent process and determination that only those 12 employees would have relevant information. Defendants also have not described any real burden.

Second, Defendants' approach is at odds with the relevant established authorities. "Rule 26 requires the parties to meet and confer about ESI at the beginning of discovery." *Id*. This includes negotiating the number and identity of custodians. *Id.*; *see also Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 109-10 (E.D. Pa. 2010) (ordering parties to confer regarding number of custodians). The unilateral selection of custodians undercuts the discovery process required by the Rules. *See Charvat v. Valente*, 82 F. Supp. 3d 713, 723 (N.D. Ill. 2015) ("[T]he Court is troubled by the unilateral selection of custodians . . . without Plaintiff's input."). In contrast, an iterative, evidence-based transparent process ensures a fair and efficient result. *See Otto v. Abbott Lab'ys, Inc.*, 2014 WL 12612682, at *4 (C.D. Cal. Mar. 10, 2014) (ordering additional custodians where "plaintiff's counsel has not been sufficiently involved in the selection process to ensure a fulsome production of responsive documents."). The iterative, evidence-based process should be adopted.

Nonetheless, Plaintiffs reviewed and analyzed the documents produced to date. That effort identified at least 43 potential custodians, including senior persons with management authority, possessing relevant information on disputed issues in this case. Plaintiffs did not insist on productions from all of these custodians, but instead provided Defendants with detailed reasons for their inclusion and invited a dialogue about additional employees who may have relevant data but were not contained in the productions to date. Plaintiffs compromised by lowering the number of custodians to 35, then 30,

---

[1] Plaintiffs offered to accept the 5-custodian cap if Defendants agree to resolve the total initial count in the 23-25 range, but Defendants rejected this.

and eventually to 28. Ultimately, Defendants agreed to Plaintiffs' offer to negotiate in the 18-25 range, but asserted it was Plaintiffs' burden to identify custodians with nonduplicative information.

Defendants argue Plaintiffs must make a particularized showing that any additional custodians possess unique information not available from the custodians they cherry picked. Defendants cite *Handloser v. HCL Am., Inc.*, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020) ("*Handloser*"). But that case involves a dispute about adding additional custodians long *after* custodians had already been mutually negotiated. And, even though *Handloser* was a smaller and less complex case than this one, the court compelled the parties to negotiate a joint list of custodians *and* permitted plaintiffs to add "[u]p to 10 additional individual custodians . . . whom plaintiffs have a factual basis to believe that the custodian has relevant and responsive information." Ord. re Disc. Dispute No. 3, *Handloser*, ECF No. 64. Thus, *Handloser* provides further support for the process of tying the identification of custodians to the possession of relevant information and the needs of the case.[2]

Plaintiffs have done their best with limited information. They identified 43 potentials along with specific factual bases for their inclusion. Plaintiffs also requested an organizational chart, and a list of 25 additional potentials based on Defendants' own investigations and determinations, but Defendants refused. Despite Plaintiffs' willingness to resolve this in the 18-25 range, Defendants did not participate in narrowing the list. The Court should enter Plaintiffs' proposed ESI Protocol, which calls for 28 custodians, and order Defendants to meet and confer with Plaintiffs on the identity of all potential custodians of relevant data from which the 28 are selected. Defendants should bear the burden of showing that the costs of including additional custodians outweigh the benefit of inclusion. *See* Rule 26 Advisory Committee Notes (2006 Amendments).

## **Validation Protocol**

The parties generally agree on the inclusion of a validation protocol for ESI; however, only Plaintiffs' version is actually effective. Unlike Defendants' version, Plaintiffs' Proposal provides a reliable method of ensuring searches for ESI were done correctly, consistent with Rule 26. Plaintiffs' Proposal is well suited to ensure efficient discovery, imposes a minimal burden on the producing party, and is designed to head off compliance disputes.[3] Defendants' resistance to Plaintiffs' Proposal is rooted not in concerns about proportionality or burden but in reducing transparency.

With respect to the validation protocol, there are three disputed items: (1) whether the producing party should disclose its search terms before the review process (and whether input from the

---

[2] Rather than emphasize their substantive arguments, Defendants draw attention to terms Plaintiffs agreed on in other cases, in negotiations with other parties under different factual circumstances. The Court should see this red herring for what it is and analyze Plaintiffs' Proposal in the context of this case only. Relatedly, Defendants omit that for months during the negotiations, Defendants insisted on the Model ESI Order for Patent Cases. That protocol, which is inapt in the context of copyright litigation, provides far less transparency into the discovery process. In advocating for the model patent order, Defendants revealed they wanted to achieve the bare minimum in discovery. Over the course of several months of negotiations, Plaintiffs updated their proposal to reflect this and other developments that arose based on the documents Defendants produced.

[3] *See, e.g.*, *Vasoli v. Yards Brewing Co.*, 2021 WL 5045920, at **1, 3 (E.D. Pa. Nov. 1, 2021) (imposing sanctions on defendants where it was "clear that there were shortcomings with how Defendants went about searching for documents responsive to Plaintiff's discovery responses.").

requesting party should be considered in determining search terms); (2) whether recall or elusion is the appropriate evaluation method for validating the efficacy of a search; and (3) whether Plaintiffs' proposal of 98% +/-2% or Defendants' proposal of 95% +/-5% is the appropriate confidence metric for sampling. Plaintiffs' Proposal is consistent with Rule 26 and should be adopted.

Filed herewith is a declaration from Tara E. Emory ("Emory Declaration"), a leading expert on ESI-related issues, which explains why Plaintiffs' Proposed Order is preferred, and why Defendants' proposal is deficient and methodologically unsound. Defendants' insistence on using a 10% elusion rate illustrates the deficiencies in Defendants' proposal. As explained in more detail in the Emory Declaration, Defendants' proposed elusion rate test would be passed automatically if the responsiveness of the overall document set is 10% or less before search terms are applied, which is common in many discovery collections. Emory Decl., ¶ 57. Plaintiffs' Proposal uses the recall rate, the standard metric by which to measure search effectiveness. The case law in this district is consistent. *See In re Uber Techs., Inc.*, No. MDL 3084 CRB, 2024 WL 3491760, at *8 (N.D. Cal. Mar. 15, 2024) (J. Cisneros) (adopting plaintiffs' proposed language regarding "the appropriate level of end-to-end *recall* (the percentage of responsive Documents in the initial collection before any search terms or TAR or manual review was applied . . .") (emphasis added).

Plaintiffs do not seek to "commandeer[]" Defendants' review efforts. Plaintiffs seek an iterative testing method that applies only if search terms do not meet specified criteria. This conforms with Rule 26. **The Court should enter Plaintiffs' Proposed Order (Emory Decl., Ex. A).** If the Court is so inclined, Plaintiffs suggest a hearing with the parties' respective experts to explain these issues.

---

**Defendants' Statement**:  Defendants request that the Court enter the order submitted as Exhibit 4 to the Bennett Declaration reflecting Defendants' proposals ("Defendants' Order").

## Document Custodians

Plaintiffs seek to set a floor of 28 custodians in this case, without having to make *any* showing to the Court that there are 28 custodians with relevant and non-duplicative documents.  They also want the right to demand unlimited custodians in the future.  (Bennett Decl. ¶ 30.)  Plaintiffs' request is neither reasonable nor proportional to the needs of this case, and nor are their purported compromises.  Rather, it is OpenAI who has presented a reasonable compromise: OpenAI proposes 14 initial custodians, with the non-producing party able to propose up to five more.  And OpenAI has also agreed that any custodians added from *Authors Guild v. OpenAI*, No. 1:23-CV-08292 (S.D.N.Y.), a related class action pending in New York, may be added (if relevant and proportional), notwithstanding the limit on five additional custodians.  (*Id*.)  The 19 custodians that OpenAI proposes is within the 18-25 range that Plaintiffs claim they would have negotiated within.  But after OpenAI agreed to negotiate within Plaintiffs' proposed range, Plaintiffs conditioned further talks on Defendants' agreement to undertake significant further work (including that ***OpenAI*** come up with its own list of an additional ***25*** custodians), before Plaintiffs would even get on the phone.  Defendants remain willing to meet and confer further.  Indeed, they have offered to mutually exchange custodians with Plaintiffs at multiple points.  But Plaintiffs cannot tie further negotiations to satisfaction of burdensome preconditions.

Defendants' proposal more than satisfies the needs of this case.  Plaintiffs' claims notwithstanding, Defendants conducted a reasonable and diligent search and identified 12 custodians most likely to have unique discoverable information responsive to Plaintiffs' requests.  Defendants ultimately

3

produced about 34,000 documents.  (Bennett Decl.  ¶ 16.)  Defendants produced these documents not to "unilateral[ly]" set the scope of ESI production, but because negotiations were taking so long that they believed they had no choice but to begin ESI review and production to keep the case moving forward.  Should additional custodians with unique and relevant documents be identified, Defendants' Order would allow for their addition.

Defendants' proposal also surpasses the ***total*** number of custodians typically found in technical cases such as this.  This district's Model Stipulated Order Re: Discovery of ESI in Patent Cases ("Model Patent Order"), for example, calls for ***five*** document custodians.  Courts enter ESI protocols based on the Model Patent Order in class actions and other complicated, technical cases.[4]  *See Doe 1, et al. v. GitHub, Inc., et al.*; Lead Case No. 4:22-cv-06823-JST ("*Doe*"), ECF Nos. 165, 168 (imposing a five-custodian cap in a class case brought by Plaintiffs' counsel here against many of the same defendants and involving similar generative AI technology).  Indeed, Plaintiffs themselves previously proposed an ESI order—based on an order entered in another case brought by the same attorneys representing Plaintiffs and involving AI technologies ("*Kadrey*")—that called for ***ten*** initial custodians.  (*See* Bennett Decl. ¶ 6.)

Plaintiffs now claim that they are working with "limited information."  Not so.  In fact, Plaintiffs' proposed list of initial custodians is based on Defendants' voluminous productions to date.  And Plaintiffs' call for an "iterative process" rings hollow given their refusal to identify specific custodians that they need.  (*Id.* ¶¶ 21, 24, 34.)  As Plaintiffs see it, "OpenAI has the burden to explain why individuals [who "appear on relevant documents"] should be removed from the [custodian] list."  (*Id.* ¶ 21.)  But under Rule 26, "discovery ***must*** be limited if it is unreasonably cumulative or duplicative."  *In re Bank of Am. Cal. Unemployment Benefits Litig.*, No. 21MD2992-GPC(MSB), 2024 WL 3174874, at *4 (S.D. Cal. June 25, 2024) (internal quotation omitted) (emphasis added); *see also Handloser v. HCL Am., Inc.*, No. 19-cv-01242-LHK (VKD), 2020 WL 7405686, at *2 (N.D. Cal. Dec.17, 2020) (denying request for further custodians where requesting party failed to show why they "expect to discover information from these custodians that differs from discovery they have already").  Plaintiffs say these cases stand for the notion that discovery should be tailored to the needs of the case.  Defendants agree.  But Plaintiffs have not explained why a minimum of 28 custodians is tailored to the needs of this case.  They have not, for example, articulated any reason to believe that the documents they seek from any of the people on their list would differ at all from the documents produced to date.

## Search Term Validation Protocol

Search term validation is not required by either of this District's model ESI orders.  Because Plaintiffs refused to consider an ESI proposal without it, however, Defendants' proposal provides a cooperative and efficient method for search term validation.  But compromise remains elusive.

Though Plaintiffs now criticize Defendants' proposed test protocol, they ignore that Plaintiffs themselves originally proposed it**.**  Specifically, Plaintiffs first raised the issue of search term validation in a draft that they sent to Defendants on April 10.  Defendants largely agreed to that

---

[4] *See, e.g., Synopsys, Inc. v. Avalent Techs, Inc.*, No. 3:20-cv-06368-EMC, ECF No. 50 (N.D. Cal. May 21, 2023) (concerning unauthorized access to computer chip design software); *In re Sandisk SSDS Litig.*, No. 3:23-cv-04152-RFL, ECF No. 91 (N.D. Cal. Mar. 25, 2024) (class action concerning firmware malfunction in portable hard drives).

April 10 proposal, which was itself based on the order Plaintiffs' counsel agreed to in *Kadrey*. (*See* Bennett Decl. ¶¶ 5, 8, 29.) Like Plaintiffs' prior draft, Defendants' Order calls for testing of search terms through review of non-responsive documents (called a "null set") with a confidence interval of 95% ±5. (*See* Bennett Decl. ¶¶ 8, 15, 28.) Additional terms would then be drafted to hit on responsive documents in the null set. Contrary to Plaintiffs' claims, the null set sampling process calls for close collaboration between the Parties. (*See Id.* ¶¶ 15, 28.)

Defendants' proposal exceeds their discovery obligations. Search term validation is not typically required. Rather, courts do not find that "in the first instance, the receiving party has a right to examine and evaluate the way the production was made or require collaboration in the review protocol and validation process." *Kaye v. N.Y.C. Health & Hosps.Corp.*, No. 18-CV-12137 (JPO) (JLC), 2020 WL 283702, at *2 (S.D.N.Y. Jan. 21, 2020); *see also* Sedona Conference, *TAR Case Law Primer, Second Edition*, 24 Sedona Conf. J.1, 39 (2023) ("courts typically resist requests for 'discovery on discovery'"). And where validation *is* performed, courts endorse the type of null set sampling that Defendants propose (and that Plaintiffs themselves proposed). *See, e.g.*, *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 494 (N.D. Ill. 2018).

Plaintiffs now claim that recall rates must be measured. But Plaintiffs' April 10 draft did not mention recall rates, which Plaintiffs now say is the "standard metric" to validate search terms. (Emory Decl. ¶ 19.) Plaintiffs' new proposal—first raised weeks after Defendants largely agreed to Plaintiffs' null set procedure—is overly burdensome and would cause significant delay and burden. Plaintiffs' Order would require testing of both null set samples *and* samples of documents hitting on proposed search terms, with the null set samples alone consisting of more than 3,000 documents each. (*See* Bennett Decl. ¶¶ 20, 30.) Plaintiffs would impose successive rounds of this process—without limit—until the terms satisfied an 80% recall rate. (Plaintiffs' Order ¶ 7(b).) The process could involve the review of tens of thousands of documents that do not hit on agreed upon search terms. Plaintiffs would also allow the Requesting Party to impose even more burden by proposing large numbers of search terms, because it would be "incumbent upon" the Producing Party to undertake further reviews to "develop statistical evidence" to object to *any* search term proposed by the Requesting Party. (*Id.*) None of these requirements is in Plaintiffs' April 10 order or *Kadrey*. (*See* Bennett Decl. ¶¶ 5, 6.) Plaintiffs have not explained why their own proposal is now somehow inadequate, and they now refuse to even discuss the issue further unless Defendants commit to further concessions. (*Id.* ¶ 34.)

The result is an unworkable review process that prioritizes Plaintiffs' desire to impose a burden over any adherence to the principles of proportionality in discovery. Indeed, Plaintiffs cite only one case supporting their current proposal—*In re Uber Technologies, Inc. Passenger Sexual Assault Litigation*, Case No. 3:23-md-03084-CRB, ECF No. 345 (N.D. Cal. Mar. 15, 2024). (*See* Bennett Decl. ¶ 22.) But *In Re Uber*, a mass tort multidistrict litigation comprised of hundreds of lawsuits against scores of defendants, is irrelevant. The ESI protocol there merely provides that the parties shall "meet and confer regarding . . . an appropriate level of end-to-end recall." *In re Uber* at 15. The order does not require review of sample sets with thousands of documents in each sample, and it does not set an absolute minimum recall threshold, as Plaintiffs' Order here would impose. In fact, the court there expressly noted that a recall rate of less than 70% "does not necessarily indicate that a review is inadequate." *Id.* at 11. Defendants therefore respectfully request that the Court enter Defendants' Order.

*/s/ Joseph R. Saveri*
Joseph R. Saveri (State Bar No. 130064)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:      jsaveri@saverilawfirm.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*


 /s/ *Allyson R. Bennett*
Allyson R. Bennett (SBN 302090)
**MORRISON & FOERSTER LLP**
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: (213) 892 -5200
Facsimile: (213) 892-5454
Email: ABennett@mofo.com


/s/ *Elana Nightingale Dawson*
Elana Nightingale Dawson (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh St., NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Email: elana.nightingaledawson@lw.com


/s/ *R. James Slaughter*
R. James Slaughter (SBN 192813)
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
Email: rslaughter@keker.com

*Counsel for Defendants*

## **E-FILING ATTESTATION**

   I, Joseph R. Saveri, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above have concurred in this filing.

 By:             */s/ Joseph R. Saveri*
                 Joseph R. Saveri