| | |
|---|---|
| JOSEPH C. GRATZ (CA SBN 240676)<br>JGratz@mofo.com<br>TIFFANY CHEUNG (CA SBN 211497)<br>TCheung@mofo.com<br>VERA RANIERI (CA SBN 271594)<br>VRanieri@mofo.com<br>JOYCE C. LI (CA SBN 323820)<br>JoyceLi@mofo.com<br>MELODY E. WONG (SBN 341494)<br>MelodyWong@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street,<br>San Francisco, California 94105-2482<br>Telephone: (415) 268-7000<br>Facsimile: (415) 268-7522<br><br>ALLYSON R. BENNETT (CA SBN 302090)<br>ABennett@mofo.com<br>ROSE S. LEE (CA SBN 294658)<br>RoseLee@mofo.com<br>ALEXANDRA M. WARD (CA SBN 318042)<br>AlexandraWard@mofo.com<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Los Angeles, California 90017-3543<br>Telephone: (213) 892-5200<br>Facsimile: (213) 892-5454<br>[CAPTION CONTINUED ON NEXT PAGE] | ANDREW M. GASS (SBN 259694)<br>Andrew.Gass@lw.com<br>JOSEPH R. WETZEL (SBN 238008)<br>Joe.Wetzel@lw.com<br>LATHAM & WATKINS LLP<br>505 Montgomery Street, Suite 2000<br>San Francisco, California 94111<br>Telephone: (415) 391-0600<br><br>ROBERT A. VAN NEST (CA SBN 84065)<br>rvannest@keker.com<br>R. JAMES SLAUGHTER (CA SBN 192813)<br>rslaughter@keker.com<br>PAVEN MALHOTRA (CA SBN 258429)<br>pmalhotra@keker.com<br>MICHELLE S. YBARRA (CA SBN 260697)<br>mybarra@keker.com<br>NICHOLAS S. GOLDBERG (CA SBN 273614)<br>ngoldberg@keker.com<br>THOMAS E. GORMAN (279409)<br>tgorman@keker.com<br>KATIE LYNN JOYCE (308263)<br>kjoyce@keker.com<br>KEKER, VAN NEST & PETERS LLP<br>633 Battery Street<br>San Francisco, California 94111-1809<br>Telephone: (415) 391-5400<br>Facsimile: (415) 397-7188 |

Attorneys for Defendants
OPENAI, INC., OPENAI, L.P., OPENAI OPCO, L.L.C., OPENAI GP, L.L.C., OPENAI STARTUP FUND GP I, L.L.C., OPENAI STARTUP FUND I, L.P., AND OPENAI STARTUP FUND MANAGEMENT, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION<br><br>This document relates to:<br>All Actions | Master File No. 3:23-cv-03223-AMO<br><br>**DECLARATION OF ALLYSON R. BENNETT IN SUPPORT OF ENTRY OF DEFENDANTS' [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

| | |
|---|---|
| 1 | MAX I. LEVY (CA SBN 346289) |
| | MLevy@mofo.com |
| 2 | MORRISON & FOERSTER LLP |
| | 755 Page Mill Road |
| 3 | Palo Alto, California 94304-1018 |
| | Telephone: (650) 813-5600 |
| 4 | Facsimile: (650) 494-0792 |
| 5 | ERIC K. NIKOLAIDES (*pro hac vice*) |
| | ENikolaides@mofo.com |
| 6 | MORRISON & FOERSTER LLP |
| | 250 West 55th Street |
| 7 | New York, New York 10019-9601 |
| | Telephone: (212) 468-8000 |
| 8 | Facsimile: (212) 468-7900 |
| 9 | SARANG VIJAY DAMLE (*pro hac vice*) |
| | Sy.Damle@lw.com |
| 10 | LATHAM & WATKINS LLP |
| | 555 Eleventh Street, NW, Suite 1000 |
| 11 | Washington, D.C. 20004 |
| | Telephone: (202) 637-2200 |
| 12 | |
| | ALLISON L. STILLMAN (*pro hac vice*) |
| 13 | Alli.Stillman@lw.com |
| | LATHAM & WATKINS LLP |
| 14 | 1271 Avenue of the Americas |
| | New York, New York 10020 |
| 15 | Telephone: (212) 751-4864 |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

DECL. OF ALLYSON R. BENNETT ISO
ENTRY OF DEFENDANTS' [PROPOSED]
ESI ORDER

2

MASTER FILE NO. 3:23-CV-03223-AMO

I, Allyson Bennett, declare as follows:

1. I am a partner in the law firm of Morrison & Foerster LLP and counsel of record for Defendants in this matter. I am a member of good standing in the Bar of the State of California, and I am admitted to practice before this Court. I have personal knowledge of the matters set forth in this declaration and, if called upon to do so, I would testify competently to them.

**The Parties' ESI Protocol Negotiations**

2. Attached as Exhibit 1 is a true and correct copy of the parties' correspondence on this issue. Given the length of the email thread—almost 90 pages—the exhibit is abridged to include just the portions of the parties' correspondence cited herein. Defendants are happy to submit the entire thread at the Court's request.

3. On February 2, 2024, Plaintiffs shared their first draft ESI protocol (the "February 2 Draft") for Defendants' review. The February 2 Draft was substantially similar to plaintiffs' initial proposed draft ESI protocol in *Doe 1, et al. v. GitHub, Inc., et al.*, Lead Case No. 4:22-cv-06823-JST (N.D. Cal.) ("*Doe*"), another action brought against OpenAI by the same group of attorneys concerning similar generative AI technology at issue here.

4. Defendants shared their proposed draft ESI protocol with Plaintiffs on February 16, 2024 (the "February 16 Draft"), which was based on the Northern District of California model ESI protocol for patent cases (the "Model Patent Order") and is substantially similar to the ESI protocol ultimately approved by Judge Tigar in *Doe*. Following receipt of Defendants' February 16 Draft, Plaintiffs did not respond for almost two months.

5. On April 10, 2024, Plaintiffs proposed a new ESI protocol (the "April 10 Draft") that is entirely unrelated to their February 2 Draft or the February 16 Draft. Plaintiffs' Counsel explained that the April 10 Draft was based on the ESI protocol entered in *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC, ECF No. 101 (N.D. Cal.) (the "*Kadrey* Order"), another action brought by the attorneys representing Plaintiffs concerning the development of large language models. (Ex. 1 at 86-87.) A true and correct copy of the *Kadrey* Order is attached

hereto as Exhibit 2.

6. In relevant part, the April 10 Draft provided:

| Issue | Proposal |
|---|---|
| Search Term Validation | Multi-step validation process, allowing further search term testing for "any justifiable reason":<br>• Producing party to develop initial set of terms and, thereafter, "review a statistically valid (95% ±5), randomly generated sample set of the documents that do not hit upon any search terms" and amend search terms as appropriate. (April 10 Draft ¶ 7(b).)<br>• The Requesting Party may then request that the parties undertake a four-step process wherein the producing party shall undertake a further review of a null set of documents generated with a confidence interval of 95% ±5, and the Requesting Party may thereafter propose further terms for the Requesting Party to evaluate. (*Id.*)<br>• After completion of the four-step process, the Requesting Party may request even further rounds of validation for "**any kind of justifiable reason to do the four-step process again**." (*Id.*) |
| Total Number of Custodians | "Each party will identify the **ten (10) custodians** believed most likely to have discoverable ESI in their possession, custody, or control" with further custodians added by approval of the Court. (*Id.* ¶¶ 6(a), 6(b).) |

7. Notwithstanding the April 10 Draft's departures from Plaintiffs' prior proposal, Defendants pursued a compromise agreement based on the April 10 Draft. The parties exchanged drafts over the following weeks.

8. Defendants shared a counteroffer on May 13 (the "May 13 Draft"). The draft accepted many of Plaintiffs' proposals in the April 10 Draft, with modifications to make the subsequent review more manageable. As to the search term validation protocol, Defendants' only substantive change was to cap further rounds of null set testing at two or once fewer than ten percent of documents in the null set were identified as responsive, whichever came first. And Defendants accepted Plaintiffs' offer of ten initial custodians, but Defendants added a cap of five further custodians that could be added later in discovery.

9. Plaintiffs shared a further markup on May 16, 2024 (the "May 16 Draft"). The May 16 Draft made the following material changes to key terms in Plaintiffs' prior drafts:

| Issue | Change |
|---|---|
| Search Term Validation | • Put forward an entirely new validation protocol, with the new protocol calling for an iterative review process requiring the review of null sets of "at least 3,383 documents." (May 16 Draft ¶ 7(b).) |

| | |
|---|---|
| | • The draft also provided for further rounds of review until the Producing Party "reach[ed] an expected recall rate of 80%." (*Id.*) |
| Total Number of Custodians | Increased the minimum number of document custodians to **15** from Plaintiffs' earlier proposal of **10**. (*Id.* ¶ 6(a).) |

10. Defendants responded to Plaintiffs' May 16 Draft on May 20, 2024, noting that Plaintiffs' inconsistent position on their preferred ESI protocol was not an efficient use of the parties' resources, and was holding up the litigation. (Ex. 1 at 68-69.)

11. Plaintiffs shared a further markup on May 22, 2024, noting that they intended to submit it to the Court (the "May 22 Draft"). But the May 22 Draft included changes to Plaintiffs' earlier proposals never previously discussed between the parties. In sharing the draft, Plaintiffs offered no justification as to why these changes were necessary, noting only that the draft was based on the *Kadrey* Order. In relevant part, the May 22 Draft makes the following material changes to the May 16 Draft:

| Issue | Change |
|---|---|
| Search Term Validation | • Reverted back to the April 10 Draft's four-step validation protocol, though increasing the confidence interval for all tested null sets **from 95% ±5 to 98% ±2.** (May 22 Draft ¶ 7(b).)<br>• The draft also removed any reference to recall rates. (*Id.*) |
| Total Number of Custodians | **Increased the minimum number of custodians to 25**, from the May 16 Draft's proposal of 15 custodians and the April 10 Draft's proposal of 10. (*Id.* ¶¶ 6(a), 6(b).) |

12. In further discussions over email, the parties resolved to meet and confer to further discuss areas of disagreement rather than submitting their competing proposals to the Court.

13. The parties met and conferred on May 31, 2024. During the call, defense counsel explained their need for a hard cap on any additional custodians added beyond their proposed initial set of ten. As noted during the call, the cap was necessary to minimize further rounds of document review that would be needed to accommodate new custodians added later in the case.

14. Following the meet and confer, on June 14, 2024, Defendants shared a draft order with further compromises from Defendants' prior drafts (the "June 14 Draft"). In relevant part, as to the number of custodians, Defendants then agreed to increase the number of initial custodians to twelve. (*Id.* ¶ 6(a).)

DECL. OF ALLYSON R. BENNETT ISO
ENTRY OF DEFENDANTS' [PROPOSED]
ESI ORDER
MASTER FILE NO. 3:23-CV-03223-AMO

3

15. As to the search term validation protocol, **Defendants agreed to a minimum of two rounds of testing** and also agreed to increase the total maximum number of rounds of testing to three. (*Id.* ¶ 7(b).) As in the May 13 Draft, null set samples would be generated at a confidence interval of 95% ±5. (*Id.*) The search term validation protocol also provided meaningful opportunities for the Parties to collaborate on proposed terms. As part of each round of review, the Requesting Party would receive "(i) the applied list of search terms, (ii) the relevant, responsive, non-privileged documents within the Null Set Sample, and (iii) reports showing the search terms' hit counts and the proportion of responsive documents within the Null Set Sample." (*Id.*) Then, at the beginning of the second and third rounds of review, the Requesting Party would have the opportunity to propose new terms, and the Producing Party would be obligated to "apply [those] search terms to evaluate their reasonableness." (*Id.*)

16. Given the months-long delays in entering an ESI protocol, Defendants proactively conducted a document collection and review and, in total, produced almost 34,000 documents from 12 document custodians that were responsive to Plaintiffs' requests.

17. On June 21, 2024, following a review of certain documents in Defendants' production, Plaintiffs shared a revised draft protocol (the "June 21 Draft"). The June 21 Draft provided:

| Issue | Change |
|---|---|
| Search Term Validation | • Reintroduced a recall-focused testing process, calling for review of null set samples and samples of documents hitting on search terms. (June 21 Draft ¶ 7(b).)<br>• Null set samples were to be generated with a **98% ±2 confidence interval.** (*Id.*)<br>• The draft also called for up to two rounds of review, or until a recall rate of 80% was identified. (*Id.*)<br>• Additional search terms could be proposed by the Requesting Party. If the Producing Party wished to object to such terms, it would be "incumbent upon that party to provide statistical evidence that precision is too low." (*Id.*) |
| Total Number of Custodians | • **Increased the minimum number of custodians to 35** (*Id.* ¶¶ 6(a), 6(b)), from the May 22 Draft's 25, the May 16 Draft's 15 custodians, and the April 10 Draft's 10.<br>• In notes to the draft, Plaintiffs commented that their position as to the appropriate number of custodians had "evolved." Plaintiffs took the |

|   |   |
|---|---|
|   | position that "closer to 50 people" had "critically relevant discovery."<br>• The draft did include a cap on five further custodians that could be added following the initial set. |

18. The parties met and conferred again on June 27, 2024, discussing the open issues. As to Defendants' proposal to limit the number of custodians to be added following identification of the initial set, Defendants proposed adding compromise language that would exempt custodians added from a related action from the cap on additional custodians. Versions of Defendants' proposed cap, with the compromise text for custodians from the related action, would stay in every exchanged version of the protocol until Plaintiffs' July 18, 2024 proposal to be submitted to the Court.

19. During the meet and confer, the parties also discussed the search term validation protocol in Plaintiffs' June 21 Draft. Defendants also expressed their frustration with Plaintiffs' about-face on search term validation. As Defendants explained, Plaintiffs had failed to provide any case authority supporting their abandonment of the null-set sampling protocol they previously called for in the April 10 Draft and that Plaintiffs' counsel agreed to in *Kadrey*. Though Plaintiffs took the position that testing for recall was somehow preferable to null set testing, they made no representation that recall testing for search term validation was a required—or even standard—practice. Indeed, Plaintiffs' ESI consultant, Tara Emory, suggested that courts had been slow to get up to speed on what she viewed as a better practice.

20. Continuing the discussion on search term testing, Defendants noted that Plaintiffs' validation proposal was unmanageable because, among other reasons, (i) review of null set samples generated with a confidence interval of 98% ±2 would entail more than 3,000 for every null set sample, (ii) multiple rounds of testing could require review of tens of thousands of documents when accounting for review of documents hitting on search terms and those within the sample set, and (ii) the burdensome requirement that the Producing Party provide "statistical evidence" to "object" to any single proposed search term could add an indeterminate amount of time to the testing process.

21. Shortly following the meet and confer, Plaintiffs wrote to Defendants to share a

list of 43 individuals they identified as potential custodians and to provide supposed case support for the proposed search term validation protocol. (Ex. 1 at 33-36.) As to Plaintiffs' provided list, their basis for adding each of the individuals on the list as custodians was that they "appeared on relevant documents" pertaining to various issues related to the case. (*Id.*) Plaintiffs stated that "OpenAI has the burden to explain why individuals should be removed from the list." (*Id.*)

22. As to case support for their proposal that Defendants review samples of documents hitting on search terms as part of the search term testing protocol, Plaintiffs referred to "Judge Hixson's reasoning from *Cook v. Meta*," wherein Judge Hixson apparently referred in the hearing to the possibility that documents hitting on terms may be reviewed and produced prior to any search term testing process. (Ex. 1 at 36.) Attached hereto as Exhibit 3 is a true and correct copy of the Stipulated Order re Discovery of Electronically Stored Information, from *Cook v. Meta Platforms*, Case No. 3:22-cv-02485-AMO, ECF No. 77 (N.D. Cal. Sept. 7,2023). But, critically, the ESI order that was entered in that case does not call for review of documents hitting on proposed search terms as part of the search term testing protocol as Plaintiffs' June 21 Draft would require. Instead, the *Cook* order only provides for review of null set documents as part of its search term testing protocol.

23. Plaintiffs wrote again on July 1, 2024, sharing a further ESI protocol entered in *In re Uber Technologies, Inc. Passenger Sexual Assault Litigation*, Case No. 3:23-md-03084-CRB, ECF No. 345 (N.D. Cal. Mar. 15, 2024) as support for their proposed search term validation protocol.

24. The parties met and conferred again on July 11, 2024, with the parties' discussion focusing on the number of custodians and a search term validation protocol. Discussing the custodian count, Defendants expressed their concern that Plaintiffs' list of 43 custodians "appearing on relevant documents" in Defendants' production failed to account for proportionality considerations and instead suggested that the individuals' documents would be cumulative of those already produced. Defendants asked that Plaintiffs identify which custodians they believed were necessary for their case.

**The Parties' Orders**

25. Defendants shared the final proposed protocol they intended to present to the Court on July 15, 2024, and Plaintiffs followed with their proposal shortly thereafter on July 18, 2024 ("Plaintiffs' Order").

26. Attached as Exhibit 4 is a true and correct copy of Defendants' July 15, 2024 [Proposed] Order Re: Discovery of Electronically Stored Information ("Defendants' Order"). Defendants' Order is based on Plaintiffs' April 10 Draft, which is itself based on the *Kadrey* Order. Defendants' Order reflects a number of compromises agreed between the parties since the June 14 Draft.

27. As relevant to the dispute on the number of custodians currently before the Court, Defendants' Order increases the number of initial custodians to 14 and sets a cap at five further custodians, though custodians from *Authors Guild v. OpenAI*, No. 1:23-CV-08292 (S.D.N.Y.) may be added irrespective of the cap. (Ex. 4 ¶¶ 6(a), 6 (b).)

28. With respect to the search term validation protocol, Defendants' Order mirrors the compromises Defendants agreed to in the June 14 Draft. In particular, Defendants' Order provides for the same collaborative process as does the June 14 Draft whereby the Requesting Party will receive documents and information about the Producing Party's validation work, including hit reports and null set documents identified as responsive. Following receipt of this information, the Requesting may propose further terms for the Producing Party to apply and evaluate. (*Id.* ¶ 7(b).)

29. Attached as Exhibit 5 is a redline comparing Defendant's Order to the *Kadrey* Order (excluding exhibits concerning production of metadata), showing the extent to which Defendants have agreed to terms even more favorable to the Requesting Party than Plaintiffs' counsel secured in *Kadrey*.

30. Plaintiffs' Order follows their June 21 Draft, with certain material changes. As to the count of custodians, Plaintiffs' Order drops the initial count of custodians to 28, but it removes ***any limit*** on the total number of custodians that may be added thereafter. (Plaintiffs'

1  Order ¶¶ 6(a), 6 (b).)  As to search term testing, Plaintiffs' Order mirrors the June 21 Draft, but it
2  requires additional rounds of search term testing until a recall rate of 80% or higher is satisfied.
3  This new language presents an even further burden than previously proposed in light of its call for
4  a necessarily indeterminate number of rounds of review.  It also represents a fundamental
5  departure from the protocol Plaintiffs proposed on April 10.  Though Plaintiffs now take the
6  position that null set sampling is somehow "meaningless" and "illogical," and that samples
7  generated at a 95% ±5 confidence interval are somehow insufficient, **Plaintiffs previously**
8  **advocated for these exact specifications as part of their April 10 Draf**t.

9       31.    Attached as Exhibit 6 is a true and correct copy of a redline comparing
10  Defendants' Order with Plaintiffs' Order.

**Final Negotiations Prior to Filing the Instant Discovery Letter**

12       32.    On July 25, 2024, Plaintiffs' counsel contacted counsel for Defendants proposing
13  that the parties further negotiate the custodian count. (Ex. 1 at 12.)  The outreach took place just
14  over four hours prior to the agreed upon time for the parties to exchange second drafts of the
15  discovery letter filed herewith.

16       33.    Defendants' counsel responded several hour later, agreeing to further meet and
17  confer on the custodian count issue and requesting that the parties revisit the search term
18  validation dispute in light of Plaintiffs' apparent misunderstandings about Defendants' proposal,
19  evidenced in the first drafts of their discovery letter papers. (*Id.* at 10.)  Defendants agreed to
20  provide information on Plaintiffs' misconceptions about Defendants' Order if Plaintiffs would
21  agree to tailor their list of 43 proposed custodians to those custodians they believed were
22  necessary and non-duplicative.  Defendants' counsel noted that a tailored custodian list would
23  help move discussions between the parties forward.

24       34.    Plaintiffs' counsel responded late that night. (*Id.* at 9-10.)  With respect to the
25  custodian count, Plaintiffs clarified that any further negotiation would be for an initial count of
26  custodians only and that they would not agree to any set cap on a total number of custodians.
27  Plaintiffs also refused to provide a tailored list of custodians they believed necessary to their case,
28

DECL. OF ALLYSON R. BENNETT ISO
ENTRY OF DEFENDANTS' [PROPOSED]
ESI ORDER
MASTER FILE NO. 3:23-CV-03223-AMO

8

noting that they did not believe they were required to do so. As to the search term validation protocol, Plaintiffs refused to consider the subject unless Defendants made further concessions on their own proposed protocol no later than 10 AM the following morning. Plaintiffs threatened to move forward with their own submission to the Court if Defendants did not satisfy their deadline.

35. Defendant's counsel responded the following morning, asking Plaintiffs to clarify their position as to the burden they would have to satisfy in order add custodians beyond any initial count. (*Id.* at 7-8.) Plaintiffs wrote back several hours later, ignoring Defendants' question as to their position on burden and instead setting an ***entirely new condition for further discussion of an initial set of document custodians within the range of 18-25***. Notwithstanding the fact that Plaintiffs already prepared their own list of proposed custodians based on their review of Defendants' document productions, Plaintiffs now demanded that Defendants prepare "a list of at least 25 additional potential custodians they have identified." (*Id.* at 8 (emphasis added).) For each individual on the demanded list, Plaintiffs expected Defendants to provide "a brief description of the nature of the employee's work that related to case issues."

36. Defendants' counsel responded several hours later, clarifying their question as to Plaintiffs' position on burden and noting their disagreement with Plaintiffs' last-minute condition for further negotiations on the custodian count. (*Id.* at 5-6.) As to the substance of the demand, Defendants noted that Plaintiffs already had sufficient information—interrogatory responses and tens of thousands of produced documents— to evaluate whether further custodians should be added. (*Id.* at 6.) Even so, Defendants confirmed their willingness to meet and confer on document custodians if Plaintiffs agreed to reconsider their new conditions on further talks. (*Id.*)

37. Plaintiffs' counsel responded shortly thereafter, stating that they interpreted Defendants' response as a rejection of their offer to further meet and confer.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DECL. OF ALLYSON R. BENNETT ISO
ENTRY OF DEFENDANTS' [PROPOSED]
ESI ORDER
MASTER FILE NO. 3:23-CV-03223-AMO

9

1    Executed on July 29, 2024, in Los Angeles, California.

*/s/ Allyson R. Bennett*
Allyson R. Bennett

DECL. OF ALLYSON R. BENNETT ISO
ENTRY OF DEFENDANTS' [PROPOSED]
ESI ORDER
MASTER FILE NO. 3:23-CV-03223-AMO

10