# Exhibit 3

1    JAMES F. MCDONOUGH, III (admitted *pro hac vice*)
     jim@rhmtrial.com
2    ROZIER HARDT MCDONOUGH PLLC
     659 Auburn Avenue NE, Unit 254
3    Atlanta, Georgia 30312
     Telephone: (470) 480-9505
4
     Attorneys for Plaintiff, *Jennifer L. Cook*
5
     RANDI W. SINGER (Bar No. 320587)
6    randi.singer@weil.com
     TODD LARSON (admitted *pro hac vice*)
7    todd.larson@weil.com
     WEIL, GOTSHAL & MANGES LLP
8    767 Fifth Avenue
     New York, New York 10153
9    Telephone: (212) 310-8000
     Facsimile: (212) 310-8007
10
     Attorneys for Defendant, *Meta Platforms, Inc.*
11
     *Additional attorneys listed on signature pages*
12

> **FILED**
>
> Sep 07 2023
>
> Mark B. Busby
> CLERK, U.S. DISTRICT COURT
> NORTHERN DISTRICT OF CALIFORNIA
> SAN FRANCISCO

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                  OAKLAND DIVISION

16

17   JENNIFER L. COOK, d/b/a JL Cook, JL Cook          Case No. 3:22-cv-02485-AMO
     Sculptor and SNAKEARTS.COM,
18                                                      **[PROPOSED]** STIPULATED ORDER RE:
              Plaintiff,                                **DISCOVERY OF ELECTRONICALLY**
19                                                      **STORED INFORMATION**
     v.
20                                                      Dept.: Courtroom 10 – 19th Floor
     META PLATFORMS, INC., f/k/a FACEBOOK,              Judge: Honorable Araceli Martínez-Olguín
21   INC.,

22            Defendant.

23

24

25

26

27

28

Plaintiff Jennifer L. Cook ("Plaintiff") and Defendant Meta Platforms, Inc. ("Defendant") hereby agree that the following procedures shall govern the discovery of electronically stored information and production of documents in this matter.

### 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") ("eDiscovery") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

### 2. COOPERATION AND PROPORTIONALITY

The parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1. The parties acknowledge that cooperation reasonably limiting ESI discovery requests and in reasonably responding to ESI discovery requests tends to reduce litigation costs and delay and commit to cooperation in good faith on issues relating to the preservation, collection, search, review and production of ESI. The parties' cooperation includes propounding reasonably particular discovery requests, identifying appropriate limits to eDiscovery, including limits on custodians, identifying relevant and discoverable ESI, establishing time periods for eDiscovery and other parameters to limit and guide preservation and eDiscovery issues. The failure of counsel or the parties to cooperate in facilitating and reasonably limiting eDiscovery requests and responses will be considered in cost-shifting determinations. The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify, and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1) and ESI Guideline 1.03.

### 3. LIAISON

Each party shall designate or make available an individual or individuals as eDiscovery Liaison(s) who must:

    (a)    be prepared to meet and confer on eDiscovery-related matters and to participate in eDiscovery dispute resolution;

    (b)    be knowledgeable about the party's eDiscovery efforts;

(c)  be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

(d)  be, or have reasonable access to those who are, knowledgeable about the technical aspects of eDiscovery, including electronic document location, storage, organization, accessibility, collection, production, and format issues, and relevant information retrieval technology, including search methodology.

The parties will identify an ESI liaison or liaisons within a reasonable time of the entry of the order adopting of this Stipulation.  In the interim, Defendant's counsel will be prepared to discuss any ESI issues within a reasonable time after notice by Plaintiffs' counsel.  Each party will notify the other of any changes of its designated e-discovery liaison or liaisons.

**4.     PRESERVATION**

Each party is responsible for taking reasonable and proportionate steps to preserve relevant and discoverable ESI within its possession.  Consistent with ESI Guideline 2.01(d), the parties have discussed their preservation obligations and needs and agree that preservation of relevant ESI will be reasonable and proportionate, and within the scope of production under FRCP 26(b)(1) and (b)(2)(B). To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

(a)  Parties will preserve non-duplicative, discoverable information currently in their possession, custody, or control; however, parties are not required to modify, on a going-forward basis, the procedures used by them in the usual course of business to back up and archive data.

(b)  Subject to and without waiving any protection described in Section 4(a) above, the parties agree that:

1.  The parties agree that documents responsive to the parties' respective discovery requests, subject to each party's objections and any other limitations as may be agreed to between the parties, are relevant ESI that must be preserved.

2. The parties will agree on the number of custodians per party for whom ESI will be preserved. The parties agree to meet & confer to discuss additional custodians as reasonably necessary (i.e., when specific evidence warrants expanding the initial custodian list).

3. The parties will meet and confer as fact discovery proceeds on whether an extension of time for fact discovery may be necessary

(c) The following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and unwarranted extraordinary measures will not be taken to preserve ESI from these sources, which will be retained pursuant to standard business processes, but not otherwise preserved, searched, reviewed, or produced, unless ordered by the Court upon a motion of a party:

1. Backup systems and/or tapes used for disaster recovery; and

2. Systems no longer in use that cannot be accessed by using systems currently in use by the party.

(d) The following data types are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and unwarranted extraordinary measures will not be taken to broadly preserve this ESI, and instead, it will be retained pursuant to standard business processes, but not otherwise preserved, searched, reviewed, or produced, unless ordered by the Court upon a motion of a party:

1. Voice messages.

2. Instant messages and chats that are not chronicled to an email archive system.

3. Sound recordings, including, without limitation, .mp3/.mp4 and .wav files.

4. Information solely contained on mobile devices, except where a custodian is known to have unique, non-duplicative, discoverable information solely on a mobile device.

(e) In addition to the agreements above, the parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors in light of the Parties respective knowledge of their ESI, should not be preserved:

1.       Deleted, slack, fragmented, or unallocated data only accessible by forensics.

2.       Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.       On-line data from individual employees using internet browsers such as temporary internet files, history, cache, cookies, and the like.

4.       Data in metadata fields that are frequently updated automatically, such as last-opened or last modified dates.

5.       Mobile device activity logs.

6.       Server, system, or network logs.

7.       Dynamic fields in databases or log files not stored or retained in the usual course of business.

8.       Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party.

9.       Other forms of ESI whose preservation requires unreasonable, disproportionate, and/or non-routine, affirmative measures that are not utilized in the ordinary course of business.

**5.    SEARCH AND REVIEW**

The Parties agree that each Producing Party is best situated to determine the most appropriate method or methods for that Producing Party to search, collect, cull, and produce documents responsive to discovery, consistent with Sedona Conference Principle 6 which instructs that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.[1]  The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will disclose the method or methods they are employing to identify the appropriate set(s) of documents for review and production and the custodians from whom documents are gathered.

---

[1] The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 118 (2018).

(a)    **Search Terms**: Each Producing Party may use search terms to locate potentially relevant documents for collection and/or culling after collection. Each Producing Party will develop its own appropriately tailored search terms to locate its relevant documents that are responsive to discovery. After applying its search terms to the targeted document set(s), that Producing Party will review a statistically valid (95% ±5), randomly generated sample set of the documents that do not hit upon any search terms ("Null Set Sample") and produce to the Requesting Party the relevant, responsive, non-privileged documents. The Producing Party will develop appropriate new search term(s), if needed, to capture any relevant documents located within the Null Set Sample. The Producing Party will then apply the original and new search terms to the targeted document set and disclose the original and new terms to the Requesting Party, along with a hit report. If the requesting party objects to the sufficiency of the Producing Party's original and new search terms, the Parties agree to conduct one round (and if there is good cause, *i.e.* any justifiable reason to do so, more than one round) of the four-step process identified below:

1.    The Requesting Party may request one additional Null Set Sample to be reviewed by the Producing Party;

2.    The Producing Party will review the additional Null Set Sample and produce all relevant, responsive, non-privileged documents to the Requesting Party;

3.    The Requesting Party can propose additional search terms that would capture the relevant, responsive, non-privileged documents from the additional Null Set Sample; and

4.    The Producing Party will apply the search terms to evaluate their reasonableness. If the search terms proposed by the Requesting Party have an unreasonably high or overbroad yield, the Producing Party may review a randomly generated 95/5 confidence level/margin of error sample set of documents to determine the overbreadth of the proposed search terms. Where appropriate, the Producing Party may develop alternative search terms that are more narrowly tailored to capture the relevant, responsive, non-

privileged documents from the additional Null Set Sample, and provide a hit report on those terms.

As noted above, for good cause, the Requesting Party can request that there be more than one round of the four-step process described above.  For purposes of this provision, "good cause" shall mean any kind of justifiable reason to do to the four-step process again.

(b)    **Technology Assisted Review ("TAR")**:  In the case that a Party intends to use TAR or similar advanced analytics to filter out or exclude non-responsive documents, the Producing Party must disclose which method(s) it will use[2] to filter out or exclude documents from review, as part of the meet and confer process identified above.  For the avoidance of doubt, the Producing Party must disclose to the Receiving Party the following information regarding its intended use of TAR or similar advanced analytics: (1) the custodians and data sources against which TAR or advanced analytics will be run; (2) the TAR or advanced analytics tool being used and vendor; and (3) the measure(s) used to validate the results of the TAR methodology or similar advanced analytics.

(c)    **Other Review Procedures**:  Nothing in this Order may be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the requesting party's discovery requests.  Similarly, nothing may be construed or interpreted as precluding a producing party from performing, by any means, a privilege review of documents determined to be relevant.  Further, nothing in this Order requires the production of documents that are irrelevant, privileged, or otherwise protected from disclosure merely because the documents hit upon a search term.

(d)    **System Files and Executables**.  Each party will use its best efforts to filter out common and irrelevant system files and application executable files by using a commercially reasonable hash identification process.  For example, Hash values may be filtered out

---

[2] A producing Party need not disclose whether it is using TAR, Continuous Active Learning (CAL), or any other predictive coding to prioritize the review of documents collected.

during this process using the National Software Reference Library ("NSRL") NIST hash
set list.

(e)     **Email Threading**.  Where multiple email messages are part of a single chain or "thread,"
a party is only required to produce the most inclusive message ("Last In Time Email")
and need not produce earlier, less inclusive email messages or "thread members" that are
fully contained, including attachments and including identical senders and recipients,
within the Last In Time Email.  Only email messages for which the parent document and
all attachments are contained in the Last In Time Email will be considered less inclusive
email messages that need not be produced. To avoid doubt, if an email message includes
a "sub-thread of "thread" that has less or more senders and recipients than the parent
document, that set of messages shall be considered a separate "thread" with its own Last
In Time Email.  Additionally, if a thread member contains any additional data that is not
contained in the Last In Time Email (including without limitation attachments or BCC
recipients), it is not a less-inclusive e-mail and must be separately produced. The parties
may suppress any non-substantive images extracted from email documents (e.g., logs,
icons) to the extent they appear as separate attachments to emails prior to production.

**Known Responsive ESI**: Specific, non-duplicative ESI that is identified by a party as responsive
to a discovery request or subject to disclosure under Fed. R. Civ. P. 26(a)(1)(A) and 26(b)(2) may not
be destroyed and/or the obligation to preserve such data shall not be discharged on the grounds that it
was not identified by (or is subject to an exclusion set forth in) the protocols described in, or developed
in accordance with, this Order.

**6.     PRODUCTION FORMATS**

The parties agree to produce documents in the formats described in Appendix 1 to this Order.  If
particular documents warrant a different format, the parties will cooperate to arrange for the mutually
acceptable production of such documents.  The parties agree, to the extent practicable, not to materially
degrade the searchability of documents as part of the document production process.

### 7. PHASING

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI by producing documents on a rolling basis. Following the initial production, the parties will meet and confer as necessary to prioritize the order of subsequent productions. Production in the litigation is anticipated to be conducted with the parties making reasonable efforts to expedite the process. If any Party feels production has been unreasonably delayed, the Parties agree to confer to reach a mutually agreeable consensus prior to court involvement. Nothing in this Section shall excuse a Party's failure to comply with Court ordered deadlines.

### 8. DOCUMENTS PROTECTED FROM DISCOVERY

(a) The Parties and Court have entered a separate Order under Fed. R. Evid. 502(d) that governs the production of documents protected from discovery.

(b) The parties have submitted a separate Stipulated Protective Order that governs the production of documents protected from discovery.

(c) Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B) unless otherwise specified in this ESI Order.

(d) Consistent with the Federal Rules of Civil Procedure, the Parties agree to serve a privilege log providing information regarding all documents withheld under a claim of privilege and/or work product. The protocol for logging privileged information in this action is attached hereto as Appendix 2. Nothing in this Order shall modify the Parties' agreement in their Stipulated Protective Order and/or Rule 502(d) Order concerning the handling of produced material that may be subject to privilege.

(e) Furthermore, nothing in this Order requires disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

(f) Nothing in this Order waives the right of any party to petition the Court for an order modifying its terms upon sufficient demonstration that compliance with such terms is

unreasonably burdensome or infeasible or that the production of particular Documents in a different format or with different metadata fields is reasonably necessary, provided, however that counsel for such party must first meet and confer with the counsel for the opposing parties and the parties shall use reasonable best efforts to negotiate an exception from or modification to this Order prior to seeking relief from the Court.

**9. RETENTION OF ORIGINAL DOCUMENTS**

Until there is a final disposition of this case, each party agrees to retain native electronic source documents for all ESI produced in this litigation unless another manner is mutually agreed upon by the parties. Each party agrees to use reasonable measures to maintain the original native source documents in a manner so as to preserve the metadata associated with these electronic materials at the time of collection.

**10. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

[SIGNATURES APPEAR ON NEXT PAGE]

Dated: September 6, 2023                    Respectfully submitted,


                                           By: _/s/ James F. McDonough, III___
                                                JAMES F. MCDONOUGH, III


                                           BRIAN C. GUDMUNDSON
                                           brian.gudmundson@zimmreed.com
                                           RACHEL K. TACK
                                           rachel.tack@zimmreed.com
                                           MICHAEL J. LAIRD
                                           michael.laird@zimmreed.com
                                           ZIMMERMAN REED LLP
                                           1100 IDS Center
                                           80 South 8th Street
                                           Los Angeles, California 90048
                                           Telephone: (612) 341-0400
                                           Facsimile: (612) 341-0400

                                           HRAG A. ALEXANIAN
                                           hrag.alexanian@zimmreed.com
                                           ZIMMERMAN REED LLP
                                           6420 Wilshire Blvd., Suite 1080
                                           Los Angeles, California 90048
                                           Telephone: (877) 500-8780
                                           Facsimile: (877) 500-8781

                                           JAMES F. MCDONOUGH, III*
                                           jim@rhmtrial.com
                                           ROZIER HARDT MCDONOUGH PLLC
                                           659 Auburn Avenue NE, Unit 254
                                           Atlanta, Georgia 30312
                                           Telephone: (470) 480-9505

                                           JONATHAN L. HARDT**
                                           hardt@rhmtrial.com
                                           ROZIER HARDT MCDONOUGH PLLC
                                           712 W. 14th Street, Suite C
                                           Austin, Texas 78701
                                           Telephone: (210) 289-7541

                        Attorneys for Plaintiff, *Jennifer L. Cook*

*admitted *pro hac vice*
 ** admission *pro hac vice* anticipated

1    Dated: September 6, 2023                      Respectfully submitted,

2                                                  WEIL, GOTSHAL & MANGES LLP

3

4                                                  By:  _/s/ Randi W. Singer #___
                                                        RANDI W. SINGER

5                                                  RANDI W. SINGER (Bar No. 320587)

6                                                  randi.singer@weil.com
                                                   TODD LARSON (admitted *pro hac vice*)
7                                                  todd.larson@weil.com
                                                   ELIZABETH MCLEAN (*pro hac vice* pending)
8                                                  Elizabeth.McLean@weil.com
                                                   WEIL, GOTSHAL & MANGES LLP
9                                                  767 Fifth Avenue
10                                                 New York, New York 10153
                                                   Telephone: (212) 310-8000
11                                                 Facsimile: (212) 310-8007

12                                                 DAVID R. SINGH (Bar No. 300840)

13                                                 david.singh@weil.com
                                                   WEIL, GOTSHAL & MANGES LLP
14                                                 201 Redwood Shores Parkway
                                                   Redwood Shores, California  94065
15                                                 Telephone:  (650) 802-3000
                                                   Facsimile:  (650) 802-3100

16                             Attorneys for Defendant, *Meta Platforms, Inc.*

17                                                            *# e-signed with permission*

18

19                                    **ATTESTATION**

20          Pursuant to Civil L.R. 5-1(h)(3), regarding signatures, I hereby attest that concurrence in the

21   filing of this document has been obtained from all the signatories above.

22

23   Dated: September 6, 2023                      By:  _/s/ James F. McDonough, III_____
                                                        JAMES F. MCDONOUGH, III
24
                                            **********
25
     **IT IS ORDERED** that the forgoing Agreement is approved.
26

27   Dated: September 7, 2023          _____

28                                     HONORABLE THOMAS S. HIXSON
                                       UNITED STATES MAGISTRATE JUDGE

**APPENDIX 1: PRODUCTION FORMAT AND DELIVERY REQUIREMENTS**

1.  **General Instructions**. All productions must be made by secure file transfer, if practical, to agreed-upon e-mail addresses. In the event the producing party deems it is not practical to upload a voluminous production to secure file transfer site, it shall be sent to the receiving parties by overnight mail on CD-ROM, DVD, external hard drive (with standard PC-compatible interface), or such other readily accessible computer or electronic media.

    (a) Each media volume must have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001) and be labeled with the following:

    i.   Case number;

    ii.  Production date;

    iii. Bates range;

    iv.  Disk number (1 of X, 2 of X, etc.), if applicable.

    (b) The producing party shall encrypt the production data using WinRAR or 7-Zip (or similar AES-256 bit) encryption, and the producing party shall forward the password to decrypt the production data separately from the CD, DVD, external drive or FTP to which the production data is saved.

    (c) Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

2.  **Production Components.** Except as otherwise provided below, ESI shall be produced in accordance with the following specifications, as further delineated in the sections below:

    (a)    an ASCII (or UTF8) delimited data file (.DAT) using standard delimiters;

    (b)    an image load file (.OPT) that can be loaded into commercially acceptable production

1      software (*e.g.* Concordance or Relativity);

2      (c)    TIFF images;

3      (d)    and document level .TXT files for all documents containing extracted full text or OCR

4      text;

5      (e)    Parent-child relationships will be maintained in production. Links within a document are

6      not considered attachments.

7      If a particular document warrants a different production format, the parties will cooperate in good

8      faith to arrange for a mutually acceptable production format.

9      **3.**    **Production Media and Access Controls.**  Documents shall be encrypted and produced through

10     electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or

11     external hard drive ("Production Media").  Each piece of Production Media shall identify a

12     production number corresponding to the production volume (*e.g.* "VOL001").  Each piece of

13     Production Media shall also identify: (a) the case caption; (b) the following label: "This media

14     contains material subject to Court Ordered security measures"; (c) the producing party's name;

15     (d) the production date; and (e) the Bates Number range of the materials contained on the

16     Production Media.  If a Bates number or set of Bates numbers is skipped, the skipped numbers

17     or set of numbers will be noted.

18     Nothing in this Order will preclude or impair any and all protections provided the parties

19     by any Protective Order(s) agreed and entered into by the parties.  Any data produced by the

20     producing party must be protected in transit, in use, and at rest by all in receipt of such data.

21     Parties will use best efforts to avoid the unnecessary copying or transmittal of produced

22     documents.  Any copies made of produced data must be kept on media or hardware employing

23     whole-disk or folder level encryption or otherwise secured on information systems and networks

24     in a manner consistent with the best practices for data protection.  If questions arise, Parties will

25     meet and confer to ensure security concerns are addressed prior to the exchange of any

26     documents.

27     **4.**    **Data Load Files/Image Load Files.**  Each production, including the data load files and image

28     load files, shall be produced in a way that is readable and loadable by most major vendors (*e.g.*,

in Concordance format). Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets and is unique across a party's entire document production. Attachments to documents and embedded objects extracted from or attached to documents or e-mails will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they are attached. Parent-child relationships for all groups of documents will be indicated by applying sequential Bates numbers to all items within the parent-child group, and identified by Bates numbers in the relevant ESI metadata fields. For example, if a party is producing an e-mail with attachments, the attachments will be processed and assigned Bates numbers in sequential order, following consecutively behind the parent e-mail. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

5. **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. If burden or technological difficulty is claimed by the producing party, it must be disclosed to the Requesting Party. Any redactions for privilege reasons shall be recorded on a privilege log. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

      i.    ESI items shall be processed to reflect the date and time standardized to a single time zone for all productions by a party, that time zone shall be Pacific Standard Time (PST). The parties understand and acknowledge that such standardization affects only metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for

example, in an e-mail thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with the formats set forth in section I.

ii.     ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes, comments, and other rich data (including, but not limited to strikethrough text, etc.) as displayed in the document to the extent reasonably and technically possible.

iii.     The parties are not obligated to populate or edit manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALLCUSTODIAN(S) (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, (j) TEXTFILEPATH, and (k) HASHVALUE, which should be populated by the party or the party's vendor.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHNAME | The file name(s) of attachments to a parent documents (separated by a semicolon) |
| PRODVOL | Production volume |
| ALLCUSTODIAN(S) | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |

| Field Name | Field Description |
|---|---|
| HASHVALUE | MD5 hash value of document |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| [LASTMODIFIEDBY | Any value populated in the last modified by field of the document properties] |
| FILENAME | Filename of an electronic document |
| FILESIZE | The original file size of the produced document |
| FILEPATH | Original path to the individual source file. Includes path up to and including internal path of containers |
| TITLE | Any value populated in the Title field of the document properties |
| FILEEXTENSION | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM SS) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM SS) |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| REDACTIONS | Indicate Yes/No if document redacted |
| PAGECOUNT | The number of pages of the document, excluding the pages of documents in the same family |
| ATTACHCOUNT | Number of attached files |

| Field Name | Field Description |
|---|---|
| CONVERSATION INDEX | The identifier value assigned by a Program to group communication/message conversations together |
| HAS HIDDEN DATA | Indication of the existence of hidden data such as hidden text, columns, rows, worksheets, comments, or notes |
| FOLDER | Folder location of the e-mail within the PST/OST/NSF |
| MESSAGE ID | The Unique Identifier assigned by a program to a Message/Communication |
| APPLICATION | Indicates software application that generated the ESI item |
| DOCUMENT TYPE | Descriptor for the type of document: "E-Doc" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image |

6.     **TIFF Image Files.**  Documents that exist only in hard copy format shall be scanned, OCRed, and produced as TIFFs.  Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below.  The parties shall take reasonable efforts to process presentations (*e.g.* MS PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image.  Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents.  Each TIFF image shall be named according to a unique corresponding Bates number associated with the document.  Each image shall be branded according to the Bates number and the agreed upon confidentiality designation.   If the placement in the lower right-hand corner will result in obscuring the underlying image, the producing party will attempt to adjust the Bates number as near to that position as possible while preserving the underlying image.   Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).  Where feasible, documents which contain hidden content, tracked changes, comments, deletions, or revision marks (including, where available, the identity of the person making the comment, deletion, or revision and the date and time thereof), speaker notes, or other user-entered data that the source application can display to the user shall be processed such that all such data is visible

in the produced image.  Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

7. **Color.**  The parties may request color copies of a limited number of documents where color is necessary to accurately interpret the document.  The production of such documents in color shall be made in JPEG format. If either party deems the quality of the document produced in JPEG format to be insufficient, the producing party may produce the color image in TIFF or another reasonably usable format. All requirements for productions stated in this Order regarding production in TIFF black and white format apply to any production of documents in color JPEG or TIFF format.

8. **Text Files.**  A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename.  When possible, the text of native files should be extracted directly from the native file.  To the extent it is not technically feasible to extract text directly from the native file, the text for each ESI item shall be generated by applying OCR to the native file under the provision above.  Text files will not contain the redacted portions of the documents.  A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions. The parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. OCR text files should indicate page breaks where possible.  Extracted text shall include available comments, revisions, tracked changes, speaker notes, and hidden content (including, worksheets, slides, columns, rows, notes). In the event that discoverable ESI includes foreign language text and is produced in a way that it is otherwise unusable, the receiving party will raise the issue and the parties will meet and confer regarding an appropriate manner to reproduce the materials in a usable format.

   (a)   OCR or Extracted Text files shall be provided in a \TEXT\ directory containing document level text files.

   (b)   The text file name shall be the same name of the first image page for the document set, followed by .txt.

(c)      An OCR or extracted text file containing the produced document's content will be provided for all documents whether it is produced as an image file or natively.

9.     **Native files.**  Spreadsheets (*e.g.* MS Excel, Google Sheets) will be produced in native format. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format.  Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 5 above.  A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

(a)      Native files shall be provided in a separate NATIVES\ directory containing the native file referenced in the NativeFilePath field of the .DAT file.

(b)      The native file name shall be the same name as the first image page for the document.

10.    **Hard Copy Documents.**  All coding information applicable to "paper" or "hard copy" documents shall be produced in the data load file accompanying production of hard copy documents. The parties will make reasonable efforts to ensure that hard copy documents are logically unitized for production. The parties will make their best efforts to unitize parent-child groups correctly. Where a document or a document group – such as folder, clipped bundle, or binder – has an identifiable and accessible identification spine, "Post-It Note" or any other label, the information on the label shall be scanned and produced as the first page of the document or grouping if doing so would be reasonable and proportional to the needs of the case.

11.    **Confidentiality Designation.**  Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter.  Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

12.    **Attachments.**  The parties agree that if any part of an e-mail or its attachments is responsive, the entire e-mail and attachments will be considered responsive. The parties acknowledge that if any part of an e-mail or its attachments is privileged, that email and/or attachment may be withheld or redacted for privilege.

13. **Embedded Files.**  The parties agree to take reasonable steps to ensure that embedded ESI (e.g., a spreadsheet embedded within a word processing document, multimedia and other word processing files embedded in PowerPoint) shall be produced as independent document records and that the parent-child relationship is indicated by assigning sequential Bates numbers as set forth above.

14. **Databases and Other Structured Data.**  The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party, by, for example, requiring development of reports and/or software code to extract the information. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.  To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer to reach an agreement on alternative methods to enable the requesting party to view the ESI.

15. **Redaction.**  The parties agree that where non-Excel-type spreadsheet ESI items need to be redacted, they shall be produced solely in TIFF with each redaction clearly indicated on the document.

16. **Encryption.**  To the extent practicable, before the application of search terms to a database of documents, the searching party shall use reasonable efforts to de-encrypt encrypted documents in the database if otherwise, without de-encryption, the search terms will not pick up hits in the encrypted documents.  The parties will make reasonable efforts to ensure that all encrypted or password-protected documents are successfully processed for review and production under the requirements of this Order, including all automated mechanisms presently offered by the party's document vendor and approaching the custodian for any relevant passwords, if the custodian is accessible, and if produced in native format, the decrypted document is produced. To the extent encrypted or password-protected documents are successfully processed according to the requirements of this Order, the parties have no duty to identify the prior encrypted status of such

documents but will produce such processed documents in accordance with the specifications of this Order. The parties will consider reasonable requests for information regarding the number, custodians, and/or locations of encrypted documents that are not able to be de-encrypted using reasonable means.

17. **Deduplication**. The producing party need only produce a single copy of a particular ESI item, and may deduplicate ESI globally across the population of records. The parties agree to the following:

    i.    Duplicates shall be identified by using industry standard MD5 or SHA-1 algorithms only to create and compare hash values for exact matches only. The resulting hash value for each item shall be reflected in the HASH field specified in section II.

    ii.    Deduplication shall be performed only at the document family level so that attachments are not de-duplicated against identical stand-alone versions of such documents and vice versa, although each family member shall be hashed separately for purposes of populating the HASH field in section II.

    iii.    An email that includes content in the BCC or other blind copy field should not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.

## APPENDIX 2: PROTOCOL FOR PRIVILEGE LOGS

1.  The Parties shall include the following information in their privilege logs for each communications or records withheld or redacted under a claim of privilege: (a) the beginning date range; (b) the end date range; (c) the names of the authors and recipients, including identification of any in-house or outside counsel; (d) a general description of the subject matter; (e) if the communication or record is an email, the subject of the email, or if another type of document, the title of that document; (f) the grounds on which the documents are being withheld (e.g., "attorney-client privilege," "attorney work product," etc.); and (g) the document types (e.g., emails, Word documents, etc.).

2.  Communications involving or work product associated with inside or outside counsel for the parties related to this case that post-date the filing of the complaint need not be placed on a privilege log.

3.  Parties agree to log only the Last In Time Emails in a thread and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the Last In Time Email. An email needs to be separately logged if it would need to be separately produced under this Order.

4.  The parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines. Unless otherwise agreed to by the parties, privilege logs must be produced within (60) days after the document was withheld from a production in which it would have otherwise been produced.

5.  If the requesting party requires further information about certain privilege log entries, it shall explain in writing the need for such information and reasonably identify the entries for which it seeks this information. Within 14 days of such a request, or as otherwise agreed by the Parties, the producing party must either (i) provide the requested information or (ii) challenge the request. If a Party challenges a request for further

1    information, the parties shall meet and confer in good faith to try to reach a mutually

2    agreeable solution.  If they cannot agree, the Parties may request a conference with the

3    Court before any motions may be filed.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28