# Exhibit 6

[Counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION | Lead Case No. 3:23-cv-03223-AMO |
| This document relates to:<br>Case No. 3:23-cv-03223-AMO<br>Case No. 3:23-cv-03416-AMO<br>Case No. 3:23-cv-04625-AMO | **[PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

1   Upon the stipulation of the parties, the Court ORDERS as follows:

2          1.      This Order supplements all other discovery rules and orders. It streamlines

3   Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive

4   determination of this action, as required by Federal Rule of Civil Procedure 1."

5          2.      This Order may be modified at the Court's discretion or by stipulation.

6          3.      As in all cases, costs may be shifted for disproportionate ESI production requests

7   pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory

8   discovery tactics are cost-shifting considerations.

9          4.      A party's meaningful compliance with this Order and efforts to promote efficiency and

10  reduce costs will be considered in cost-shifting determinations.

11         5.      The parties are expected to comply with the District's E-Discovery Guidelines

12  ("Guidelines") and are encouraged to employ the District's Checklist for Rule 26(f) Meet and Confer

13  regarding Electronically Stored Information.

14         6.      Pursuant to Federal Rules of Civil Procedure 26(a) and 26(g), and to the extent not

15  already disclosed, the parties shall disclose the following information.

16                 a.   **Custodians**: Each Party will identify the ~~twenty-eight~~fourteen (~~28~~14)

17                      custodians believed most likely to have discoverable ESI in their possession,

18                      custody, or control (hereinafter, "Document Custodians"). OpenAI, Inc.,

19                      OpenAI, L.P., OpenAI OpCo, L.L.C., OpenAI GP, L.L.C., OpenAI Startup

20                      Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund

21                      Management, LLC, and any other OpenAI entity (collectively, "OpenAI") that

22                      may subsequently be named shall collectively be considered a single

                        "Producing Party" for purposes of this order.  The Document Custodians shall

be identified by name. This process shall begin within 7 days of entry of this order, and such identification shall be complete no later than 21 days from entry of this order.

b. **Additional Custodians**: If, after the Parties identify Document Custodians, a Requesting Party believes that additional Document Custodians should be added, then the Requesting Party may request no more than five (5) additional Document Custodians. The Requesting Party shall provide the basis for the request of additional Document Custodians. If the Producing Party objects to any proposed additional Document Custodians (whether a Related Action Custodian or otherwise),[1] the Parties shall meet and confer in good faith to resolve the dispute. If the Parties are unable to reach agreement within 21 days of the Requesting Party's request, then any remaining disagreement shall be addressed in accordance with Section 4 of the General Standing Order of Judge Robert M. Illman, or the then applicable orders of the Court. Nothing in this paragraph waives any objection by a Producing Party that further investigation, discovery or document production is needed before determining the necessity or lack thereof of additional custodians.

c. **Data Sources**: The Producing Party will inform the Requesting Party about

---

[1] The Requesting Party may request that any Document Custodian in the Related Action ("Related Action Custodians") be added as a Document Custodian, even if the Request would result in the addition of more than five Document Custodians. "Related Action" shall refer to *Authors Guild v. OpenAI*, No. 1:23-CV-08292 (S.D.N.Y.).  The parties mutually agree to notify the other of new Related Action Custodians within seven (7) days following first production of their documents in the Related Acton. The Parties reserve all rights regarding whether it would be appropriate to add any Related Action Custodian as a Document Custodian, and the mere fact that a proposed Additional Custodian is a Related Action Custodian is not, in and of itself, sufficient to justify their addition as a Document Custodian in this action.

1    which data sources within the Producing Party's possession, custody, or control

2    have been searched and/or collected from to identify potentially responsive or

3    relevant documents or ESI.

4       d.  The Parties agree to meet and confer regarding the identification of any

5    additional data sources with potentially responsive information, consistent with

6    the Guidelines for the Discovery of Electronically Stored Information (ESI

7    Guidelines) for the Northern District of California.

8       7.  The Parties agree that each Producing Party is best situated to determine the most

9    appropriate method or methods for that Producing Party to search, collect, cull, and produce

10    documents responsive to discovery, consistent with Sedona Conference Principle 6 which instructs

11    that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and

12    technologies appropriate for preserving and producing their own electronically stored information."

13    Nothing in this ESI Protocol alters a producing party's obligation to conduct a reasonable inquiry or

14    use a reasonable process in searching for and producing relevant information, nor does it alter a

15    receiving party's right to challenge a deficient production.

16       a.  **Search Terms Use**: Each Producing Party may – but is not required to – use

17    search terms to locate potentially relevant documents for collection and/or

18    culling after collection. As a general matter, each Producing Party will use

19    search terms for searching email and other electronic communications, and

20    other sources that are readily amenable to search terms. For other sources, each

21    Producing Party is best equipped to determine whether search terms or other

22    approaches – such as retrieval of documents and sources identified during

custodial interviews – is appropriate for each such source.

b. **Search Terms**: To the extent search terms are used for a given source or set of data, each Producing Party will develop its own appropriately tailored search terms to locate its relevant documents that are responsive to discovery requests. After ~~determining appropriately tailored search terms, the Producing Party shall disclose the search terms to the requesting party, with hit counts for each search term and the total hits. The Requesting Party can propose additional search terms that it believes may capture additional relevant, responsive, non-privileged documents for assessment by the Producing Party. If the Producing Party wishes to object to a suggested search term, it is incumbent upon that party to provide statistical evidence that precision is too low. After~~ applying its search terms to the targeted document set(s) ~~and completing its review and production of responsive, non-privileged hits plus family~~, that Producing Party will review a ~~statistical sample~~statistically valid (~~98~~95% ~~±~~25), randomly generated sample set of the documents that do not hit upon any search terms without including related parent/child documents ("Null Set Sample"~~, with the "Null Set" being all documents that do not contain search terms or documents with parent/child relationships to documents that contain search terms~~) and produce to the Requesting Party (i) the applied list of search terms, (ii) the relevant, responsive, non-privileged documents within the Null Set Sample ~~plus families and clearly identified as having come from the Null Set Sample~~, and (iii) reports showing the search terms' hit counts, and the ~~number of documents in the Null Set, the number of non-privileged documents in the Null Set Sample, the number~~proportion of responsive, ~~non-privileged~~

documents within the Null Set Sample. (the ~~number of responsive documents produced, from the search term plus family document set (without counting family members that are not responsive). If the lower bound on recall is not above 80%,~~ "Elusion Rate"). The Parties agree to thereafter conduct one round of the three-step process identified below.  If the Elusion Rate of the Null Set Sample is higher than 10%, the Requesting Party may request that the Producing Party ~~will~~ conduct one additional ~~rounds as needed~~ round of the ~~following~~ three-step process:

    ~~i. The Producing Party will select search terms it determines are likely to improve recall. In addition, the Requesting Party can propose additional search terms that would capture the relevant, responsive, non-privileged documents for assessment by the Producing Party. If the Producing Party wishes to object to a suggested search term, it is incumbent upon that party to provide statistical evidence that precision is too low; and~~

    i. The Requesting Party can propose additional search terms that would capture the relevant, responsive, non-privileged documents from the Null Set Sample; and

    ii. The Producing Party will apply the search terms to evaluate their reasonableness and, ~~as~~ when appropriate, may develop alternative search terms that are ~~appropriately~~ more narrowly tailored to capture the relevant, responsive, non-privileged documents from the Null Set Sample; and

    iii. The Producing Party will then review a Null Set Sample that accounts

for the revised terms and produce (i) the applied list of search terms,

(ii) the relevant, responsive, non-privileged documents within the Null

Set Sample, and (iii) reports showing the search terms' hit counts, the

number of responsive documents produced, from the documents

containing search terms and families (not included not-responsive

family members), the number of documents in the Null Set, the

number of non-privileged documents in the Null Set Sample, and the

number of responsive, non-privileged documents in the Null Set

Sample. and the Elusion Rate.

Once the up to two rounds of the process described above isare completed, the

Producing Party will apply the corresponding search terms and produce

relevant, responsive, non-privileged documents captured by those search terms

(with family member inclusion).

c.  **TAR:** The Parties have represented that they do not plan to use Technology

Assisted Review ("TAR").  In the event Producing Party plans to use

Technology Assisted ReviewTAR or other machine learning process to cull

documents from review, the parties shall meet and confer before such process

begins.

d.   **Other Review Procedures:** Nothing in this Order may be construed or

interpreted as precluding a Producing Party from performing a responsiveness

review to determine if documents captured by search terms are in fact relevant

to the Requesting Party's discovery requests. Similarly, nothing may be

construed or interpreted as precluding a Producing Party from performing, by

any means, a privilege review of documents determined to be relevant. Further,

nothing in this Order requires the production of documents that are irrelevant,

privileged, or otherwise protected from disclosure merely because the

documents hit upon a search term. In addition, to the extent that, during the

Producing Party's review, the Producing Party becomes aware of additional ESI

sources that are likely to may contain responsive data, or additional search

terms that are highly likely to result in targeted identification of non-duplicative

responsive data that can be collected and produced with a reasonable burden,

the Producing Party shall take reasonable steps to implement additional

searches that may be appropriate according to its duty of reasonable inquiry.

e.  **Known, Responsive ESI:** Specific, non-duplicative ESI that is identified by a

party as responsive to a discovery request shall not be withheld from review or

production solely on the grounds that it was not identified by (or is subject to an

exclusion set forth in) the protocols described in, or developed in accordance

with, this Order.

f.  **Production and Supplementation of ESI:** Production of responsive,

non-privileged documents shall proceed on a rolling basis and be substantially

completed in view of the Scheduling Order entered in this case.

g.  **Hyperlinked Documents and Communications:**  The Receiving Party may

request the production of the current versions of up to seventy-five (75)

non-public, responsive, and non-privileged documents and communications that

are within the Producing Party's possession, custody, or control and are

hyperlinked within the Producing Party's production by providing to the

Producing Party a list of hyperlinks, corresponding Bates numbers, and the basis for its claim that the each hyperlinked document is potentially relevant and needs to be produced independently of the search and review procedures set forth elsewhere in this protocol.  The Producing Party shall produce the version of the requested hyperlinked document that exists as of the date of collection, or state its basis for withholding the same, no later than twenty-one (21) days following receipt of the Receiving Party's request.  The parties agree that the current version of the hyperlinked document may differ from the version of the document at the time the hyperlink was sent.  The parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness of production of the requested documents and communications and any reasonable request to increase the cap on the total number of hyperlinked documents and communications to be produced.

8.      **Metadata**: Load or DAT files should include, where applicable and to the extent it exists and was captured at the time of the collection, the information listed in **Exhibit A** attached.  To the extent that metadata does not exist or is not reasonably accessible or available for any documents produced, nothing in this Order shall require any party to extract, capture, collect or produce such metadata.

9.      **Preservation**: To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a.   Parties will take reasonable efforts to preserve non-duplicative, relevant information currently in their possession, custody, or control.

b.   Unwarranted, extraordinary measures will not be taken to preserve the two

sources of ESI listed immediately below. Those two sources will be retained

pursuant to standard business processes but not searched, reviewed, or

produced, unless ordered by the Court or agreed to by the parties:

    i.   Backup systems and/or tapes used for disaster recovery; and

    ii.   Systems no longer in use that cannot be accessed by using systems

       currently in use by the party.

c.   In addition to the above, the parties agree data from the following sources (a)

could contain relevant information but (b) under the proportionality factors,

should not be preserved:

    i.   Deleted, slack, fragmented, or unallocated data only accessible by

       forensics.

    ii.   Random access memory (RAM), temporary files, or other ephemeral

       data that are difficult to preserve without disabling the operating system.

    iii.   Data from platforms that do not offer preservation functionality nor

       allow for the creation of account-wide snapshots or backups.

    iv.   On-line data such as temporary internet files, history, cache, cookies,

       and the like.

    v.   Data in metadata fields that are frequently updated automatically, such

       as last-opened or last modified dates.

    vi.   Mobile device activity logs.

    vii.   Server, system, or network logs.

    viii.   Dynamic fields in databases or log files not stored or retained in the

       usual course of business.

ix.    Information created or copied during the routine, good-faith
performance of processes for the deployment, maintenance, retirement,
and/or disposition of computer equipment by the party.

d.  Section 9(c) shall not apply to any copies of the training datasets known as
books1 and books2 or data known to contain: (i) back-up copies of deleted
Slack messages, (ii) identification of materials incorporated into the books1
and books2 datasets, (iii) web crawler logs and scripts used to populate the
books1 and books2 training datasets, (iv) and any other sources containing
information that could be used to identify the training data incorporated in
books1 or books2, all to the extent such data and sources still exist, can be
located through a reasonable search, and are reasonably recoverable.

e.  The Parties acknowledge that:

i.    OpenAI is subject to various privacy regulations,  court orders, and
contractual obligations that require the disposition of identifiable user
data;

ii.    Such data includes prompt inputs and outputs that are subject to routine
disposition;

iii.    OpenAI indefinitely retains input and output data from ChatGPT unless
users have affirmatively turned off chat history, deleted their past
conversations, deleted their account (in which case new conversations
are retained for 30 days), or have affirmatively asked OpenAI to delete
their data; and that

iv.    Enterprise and API versions of ChatGPT have separate contractual

1    retention policies depending on the customer.

2    The Parties agree that these practices do not need to be modified in light of this

3    action.  Further, to the extent that additional identifiable user data subject to

4    routine disposition as required by privacy regulations, court orders, or

5    contractual obligations other than prompt inputs and outputs is identified as

6    relevant to the claims or defenses in this case, the parties will meet and confer

7    on preservation of such information as it exists at that time, including the

8    feasibility of such preservation and the type and import of the user data

9    implicated.

10    f.    Data that is inaccessible within the meaning of Federal Rule of Civil Procedure

11    26(b)(2)(B) shall not be produced to another party, either in native form or

12    otherwise, unless ordered by the Court. The parties will meet and confer in

13    good faith regarding whether there are reasonable and practical methodologies

14    to query or sample such data sources.

15    10.    **Production Format for ESI**.

16    a.    Except as otherwise provided in this Order, all documents existing in electronic

17    format (e.g., Word, PDF, webpage files) shall be produced as 300 DPI TIFF

18    black and white images with a Bates number stamped on each page, document

19    metadata (including extracted or OCR text), and a link to the associated

20    extracted or OCR text file. Slack messages shall be produced in color.

21    Otherwise, the parties will re-produce select and specifically identified

22    electronic format documents as a color PDF upon reasonable request by the

receiving party.

b.  Source code and certain other highly confidential technical materials will be produced pursuant to the Protective Order entered in this case.

c.  Spreadsheet-type files (e.g., Microsoft Excel) should be produced in native format unless they require redaction. The Requesting Party may request that non-native redacted spreadsheet-type files be produced in alternative formats in the event that produced copies of such documents are illegible, experience technical errors, or are otherwise not reasonably usable. Documents produced in native format should be named according to the Bates number assigned, with the Confidentiality designation appended to the Bates numbers with a hyphen. Single-page Bates-stamped TIFF image slip-sheets will be included for each document produced in native format.  The slip-sheets will display the Bates number of the native file, the Confidentiality endorsement, and an endorsement stating, "File Produced Natively."

d.  All attachments, addendums, enclosures, and/or exhibits to a parent document (but not hyperlinks in a parent document) will be, to the extent reasonably possible, produced immediately following the parent document and identified as they relate to the respective parent document with the parent/child relationship intact.

e.  To the extent reasonably possible, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

The Parties shall meet and confer in good faith regarding the format of production or inspection of telemetry data, training data, and other similarly

voluminous data.

11.  **Privilege Logs.**  The parties shall meet and confer in good faith to address privilege log formatting, timing of production, and any other anticipated issues.

12.  **Non-Party Subpoenas.**  Any Party that issues a non-party subpoena shall timely notify other parties when it receives non-party productions of documents, ESI or other responses from the non-party, and shall provide copies of all such productions in the format in which they were received from the non-party to the other parties.  If the non-party produces documents or ESI that are not Bates labeled, the receiving party will Bates-label the documents or ESI before producing a copy to the other Parties if the produced documents or ESI are of the type so requiring Bates labeling consistent with other provisions of this Order.  Nothing in this Protocol precludes a receiving party from reviewing a non-party production of documents or ESI and applying (if the non-party produced documents without a confidentiality designation) or elevating a confidentiality designation (e.g., elevating documents designated as CONFIDENTIAL to HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY) if the production contains highly sensitive information as set forth in the Protective Order to be entered in this case.

10.  **Discovery Liaisons.** The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

1

2   **IT IS ORDERED** that the forgoing Agreement is approved.

3   Dated:

4                               Honorable Judge Robert M Illman
                                    United States Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**EXHIBIT A**

| Field | Data Type | Paper | Native Files & Email Attachments | Email | Messages (Texts, collaboration platform chats, other messaging applications) |
|---|---|---|---|---|---|
| BegDoc | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # | Starting Bates # |
| EndDoc | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # | Ending Bates # |
| BegAttach | Integer - Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| EndAttach | Integer - Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Attachname | | | File name(s) of attachment(s), with each separated by semi-colon | File name(s) of attachment(s), with each separated by semi-colon | File name of the attachment, with any attachments separated by semi-colon |
| AttachmentIDs | | | Start Bates number of attachment(s), with each separated by semi-colon | Start Bates number of attachment(s), with each separated by semi-colon | Start Bates number of the attachment, with any attachments separated by semi-colon |
| Custodians | Text – paragraph Separate entries with ";" | | All names of custodians the document was collected from even if removed from production as a duplicate | All names of custodians the document was collected from even if removed from production as a duplicate | All names of custodians the document was collected from even if removed from production as a duplicate |
| From | Text - paragraph | | | Sender of message | Full name, username or phone numberof sender of message |
| To | Text – | | | Recipients of | Recipients of message |

| Field | Data Type | Paper | Native Files & Email Attachments | Email | Messages (Texts, collaboration platform chats, other messaging applications) |
|---|---|---|---|---|---|
| | paragraph Separate entries with ";" | | | message | |
| CC | Text – paragraph Separate entries with ";" | | | Copied recipients | |
| BCC | Text – paragraph Separate entries with ";" | | | Blind copied recipients | |
| Subject | Text - paragraph | | | Subject of message | Subject of message (if applicable) |
| DateSent | Date (mm/dd/yyy y) | Date of hard copy document if coded | | Date message sent | Date message sent |
| DateReceived | Date (mm/dd/yyy y) | | | Date message received | Date message received |
| DateCreated | Date/Time (mm/dd/yyy y) | | Date file was created | | |
| DateModified | Date/Time (mm/dd/yyy y) | | Date file was last modified | | |
| FileName | Text - paragraph | | Name of original file including extension | Name of original file including extension | Name of original file including extension |
| FileExtension | Text | | Extension of original file | Extension of original file | Extension of original file |
| File Path | Text | | Directory structure of the original file(s). Any container name is included in this | Directory structure of the original file(s). Any container name is included in this path. | |

| Field | Data Type | Paper | Native Files & Email Attachments | Email | Messages (Texts, collaboration platform chats, other messaging applications) |
|---|---|---|---|---|---|
| | | | path. | | |
| Author | Text - paragraph | | Document author from metadata | | |
| Time Sent | Text (hh:mm:ss) | | | The time an email was sent. | The time the chat message was sent. |
| Time Received | Text (hh:mm:ss) | | | The time an email was received. | The time the chat message was received. |
| Time Created | Text (hh:mm:ss) | | The time a document was created according to the file application. | The time a document was created according to the file application. | The time a document was created according to the file application. |
| Time Last Modified | Text (hh:mm:ss) | | The time a document was last modified according to the file application. | The time a document was last modified according to the file application. | The time a document was last modified according to the file application. |
| MD5Hash | Text | | The MD5Hash value of the file | The MD5Hash value of the file | The MD5Hash value of the file |
| MessageID | Text | | | Unique identifier of email messages in mail stores. EntryID for MS Outlook, the UniqueID for Lotus Notes, or equivalent value for proprietary email store formats. | |
| Confidentiality | Single choice | Designation branded onto the document | Designation branded onto the document | Designation branded onto the document | Designation branded onto the document |
| TextLink | Link | Link to the extracted or OCR text | Link to the extracted or OCR text file | Link to the extracted or OCR text file | Link to the extracted or OCR text file |

| Field | Data Type | Paper | Native Files & Email Attachments | Email | Messages (Texts, collaboration platform chats, other messaging applications) |
|---|---|---|---|---|---|
| | | file | | | |
| NativeLink | Link | Link to the native file | Link to the native file | Link to the native file | Link to the native file |
| Redaction | Text | Identifies if a document has been redacted | Identifies if a document has been redacted | Identifies if a document has been redacted | Identifies if a document has been redacted |
| Redaction Reason | Paragraph | The reason a document is being redacted. | The reason a document is being redacted. | The reason a document is being redacted. | The reason a document is being redacted. |
| ProdVol | Text | Identifies the production volume. | Identifies the production volume. | Identifies the production volume. | Identifies the production volume. |
| ThreadID | Text | | | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that permits email threading in review software. | |
| ChatName | Text | | | | The channel team group name for chats |

| Field | Data Type | Paper | Native Files & Email Attachments | Email | Messages (Texts, collaboration platform chats, other messaging applications) |
|---|---|---|---|---|---|
| | | | | | and messaging data. |
| ConversationID | Text | | | | The unique identifier for a chat, channel, team or group. |
| Slack_Members | Text | | | | Application assigned ID of sender of message |
| All Active Participants | Text | | | | List of all active participant names and/or telephone numbers who were part of identified chat, channel or group message. |
| All Participants | Text | | | | List of all participant names and/or telephone numbers who are part of identified chat, channel or group message. |
| FamilyRelationship | Text | | | | Status as message or attachment |
| Time Zone | Text | | UTC | UTC | UTC |