UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| PAUL TREMBLAY, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>OPENAI, INC., et al.,<br><br>　　　　Defendants. | Case No.  23-cv-03223-AMO (RMI)<br><br>**ORDER RE: FIFTH DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 163 |

Now pending before the court is a jointly-filed discovery dispute letter brief through which the Parties present two broad categories of disagreement regarding an overarching protocol for the Discovery of Electronically Stored Information ("ESI"). *See* Ltr. Br. (dkt. 163) at 1. Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds the matter suitable for disposition without oral argument.

As to the first category of disagreement, the Parties have found themselves at an impasse as to the proper number of document custodians to be set forth in the ESI protocol. *See id*. at 1. Plaintiffs' claim that their review and analysis of the documents produced thus far has led them to identify "at least 43 potential custodians, including senior persons with management authority, possessing relevant information in disputed issues in this case." *Id*. By way of compromise, Plaintiffs claim that they have chosen to request only 28 custodians but ask that they retain the ability to seek more through agreement or by seeking further court intervention in the future. *Id*. Plaintiffs report that Defendants indicated that they would be amenable to agreeing to a number in the 18-25 range, however, Plaintiffs add that the Parties remain at an impasse on the procedure for identifying custodians, and whether the requesting Party should be capped at 5 additional

1  custodians if it determines more are necessary. *Id*. Plaintiffs add that they offered to accept the 5-
2  person cap on additional custodians if Defendants agreed to resolve the total initial count
3  somewhere in the range of 23-25 persons, but Defendants reportedly rejected this proposal. *Id*. at 1
4  fn. 1. Defendants propose an initial floor of 19 custodians and claim that their own search
5  indicates that there might be only 12 custodians that are "most likely to have unique discoverable
6  information responsive to Plaintiffs' requests." *Id*. at 4. Having reviewed the Parties' arguments in
7  support of their respective positions, Plaintiffs' request is **GRANTED in part**. The court will set
8  the initial number of custodians at 24, however, to the extent that Plaintiffs can identify any
9  number of additional custodians (not limited to 5) that Plaintiffs can persuasively argue to possess
10 non-cumulative, unique documents or information that would justify enlarging the list of
11 custodians, the undersigned will hear those arguments through future filings of the Parties using
12 the joint letter-brief process. As to the identification of appropriate custodians with non-
13 duplicative documents or information, the Parties are **ORDERED** to work together in good-faith
14 to make those identifications without the need for further court intervention. If, however, a
15 discreet dispute arises in that context after good-faith and genuine efforts to resolve or narrow the
16 dispute, the Parties may present it through the joint letter-brief process.
17     The second category of disagreement pertains to the Parties dispute about an appropriate
18 validation protocol for ESI review and discovery. *See id*. at 3-4, 5-6. Specifically, the Parties'
19 disagreement in this respect consists of disputes as to: (1) whether the producing Party should
20 disclose its search terms before the review process (and whether input from the requesting party
21 should be considered in determining search terms); (2) whether recall or elusion is the appropriate
22 evaluation method for validating the efficacy of a search; and (3) whether Plaintiffs' proposal of
23 98% +/-2% or Defendants' proposal of 95% +/-5% is the appropriate confidence metric for
24 sampling. *Id*. at 3-4. Defendants submit that "[s]earch term validation is not required by either of
25 this District's model ESI orders," and add that "courts do not find that 'in the first instance, the
26 receiving party has a right to examine and evaluate the way the production was made or require
27 collaboration in the review protocol and validation process.'" *Id*. at 6 (citing *Kaye v. N.Y.C. Health*
28 *& Hosps. Corp.*, No. 18-CV-12137 (JPO) (JLC), 2020 WL 283702, at *2 (S.D.N.Y. Jan. 21,

2020); and Sedona Conference, TAR Case Law Primer, Second Edition, 24 Sedona Conf. J.1, 39 (2023) ("courts typically resist requests for 'discovery on discovery'").

Having reviewed the Parties' arguments in support of their positions, the court rules as follows. As to the first issue (the disclosure of search terms, and the requesting Party's input in determining search terms), the court finds that the disclosure of search terms is appropriate and reasonable – thus, to that extent, Plaintiffs' request is **GRANED**. However, Plaintiffs' suggestion that the requesting Party have input in determining search terms raises the specter of too many future delays and disputes over methodology and search term formulation. Accordingly, to that extent, Plaintiffs' request is **DENIED**. As to search methodologies the court finds that the appropriate language for this portion of the ESI order should be:

> The Parties shall adopt reasonable and proportionate methodologies to identify, search, collect, cull, review, and produce ESI as required under applicable legal standards. The Parties recognize and agree that each Party may use one or more methodologies to identify, search, collect, cull, review, and produce responsive and non-privileged ESI, including the use of keyword search terms and/or the use of technology assisted review ("TAR") as discussed further herein. The Parties further recognize that different data sets may implicate different methodologies to identify, search, collect, cull, review, and produce responsive and nonprivileged ESI. The Parties therefore agree to meet and confer in good faith regarding any potential disputes over their respective ESI productions.

*See In re In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*, 2024 U.S. Dist. LEXIS 75625, *140-41 (N.D. Cal. Feb. 20, 2024). As to the Parties' remaining disputes about validation, Plaintiffs' request is **GRANTED in part**, and the court directs the Parties to disclose their evaluation method for validating the efficiency of searches as well as their method for identifying the confidence metric for their sampling. Further, in balancing the concerns of both Parties, and in light of the need for efficient and effective discovery (as well as the prevailing legal standards), the court holds that the language for this portion of the ESI Protocol shall be as follows:

> Each Producing Party shall take reasonable steps to validate its review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its process. If, after reviewing a Producing Party's production, a

> Requesting Party reasonably requests additional information regarding the validation method(s) used by the Producing Party, the Producing Party will disclose the level of end-to-end recall (the percentage of responsive Documents in the collection which were identified as responsive by that Producing Party's methodology). If there remain disputes between the Parties regarding validation, the Parties shall meet and confer to resolve such disputes in good faith, including a reasonable discussion regarding the tool used and the parameters used to obtain or calculate the level of recall.

*See* id. at 152-153. In light of the above, the Parties are **ORDERED** to meet and confer such as to prepare and submit a proposed ESI Order that reflects the holdings expressed herein.

**IT IS SO ORDERED.**

Dated: July 31, 2024

_____
ROBERT M. ILLMAN
United States Magistrate Judge