# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION<br><br>This document relates to:<br>Case No. 3:23-cv-03223-AMO<br>Case No. 3:23-cv-03416-AMO<br>Case No. 3:23-cv-04625-AMO | Lead Case No. 3:23-cv-03223-AMO<br><br>~~[PROPOSED]~~ **STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Upon the stipulation of the parties, the Court ORDERS as follows:

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

2. This Order may be modified at the Court's discretion or by stipulation.

3. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

4. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5. The parties are expected to comply with the District's E-Discovery Guidelines ("Guidelines") and are encouraged to employ the District's Checklist for Rule 26(f) Meet and Confer regarding Electronically Stored Information.

6. Pursuant to Federal Rules of Civil Procedure 26(a) and 26(g), and to the extent not already disclosed, the parties shall disclose the following information.

    a. **Custodians**: The parties will meet and confer to identify the twenty-four (24) custodians believed most likely to have non-duplicative discoverable ESI in their possession, custody, or control (hereinafter, "Document Custodians"). OpenAI, Inc., OpenAI, L.P., OpenAI OpCo, L.L.C., OpenAI GP, L.L.C., OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund Management, LLC, and any other OpenAI entity (collectively, "OpenAI") that may subsequently be named shall collectively be considered a single "Producing Party" for purposes of this order. If a discrete dispute arises with respect to identification of the 24 initial custodians, the parties may seek the Court's intervention in accordance with Section 4 of the General Standing Order of Judge Robert M. Illman after good faith and genuine efforts to resolve the dispute.

      b. **Additional Custodians**: If, after the Parties identify Document Custodians, a Requesting Party identifies additional document custodians that possess non-cumulative, unique documents or information that would justify enlarging the list of custodians, the Parties shall meet and confer in good faith to determine whether such custodians should be added. If the Parties are unable to reach agreement within 21 days of the Requesting Party's request, then any remaining disagreement shall be addressed in accordance with Section 4 of the General Standing Order of Judge Robert M. Illman, or the then applicable orders of the Court. Nothing in this paragraph waives any objection by a Producing Party that further investigation, discovery or document production is needed before determining the necessity or lack thereof of additional custodians.

      c. **Data Sources**: The Producing Party will inform the Requesting Party about which data sources within the Producing Party's possession, custody, or control have been searched and/or collected from to identify potentially responsive or relevant documents or ESI.

      d. The Parties agree to meet and confer regarding the identification of any additional data sources with potentially responsive information, consistent with the Guidelines for the Discovery of Electronically Stored Information (ESI Guidelines) for the Northern District of California.

7. The Parties agree that each Producing Party is best situated to determine the most appropriate method or methods for that Producing Party to search, collect, cull, and produce documents responsive to discovery, consistent with Sedona Conference Principle 6 which instructs that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." Nothing in this ESI Protocol alters a producing party's obligation to conduct a reasonable inquiry or use a reasonable process in searching for and producing relevant information, nor does it alter a receiving party's right to challenge a deficient production.

a. **Search Methodologies:** The Parties shall adopt reasonable and proportionate methodologies to identify, search, collect, cull, review, and produce ESI as required under applicable legal standards. The Parties recognize and agree that each Party may use one or more methodologies to identify, search, collect, cull, review, and produce responsive and non-privileged ESI, including the use of keyword search terms and/or the use of technology assisted review ("TAR") as discussed further herein. The Parties further recognize that different data sets may implicate different methodologies to identify, search, collect, cull, review, and produce responsive and nonprivileged ESI. The Parties therefore agree to meet and confer in good faith regarding any potential disputes over their respective ESI productions.

b. **Search Terms**: To the extent search terms are used for a given source or set of data, each Producing Party will develop its own appropriately tailored search terms to locate its relevant documents that are responsive to discovery requests. After determining appropriately tailored search terms, the Producing Party shall disclose the search terms to the requesting party, with hit counts for each search term and the total hits.  Following disclosure, the Producing Party may proceed with its review of documents hitting upon the disclosed search terms without input from the Requesting Party.

c. **Validation:** Each Producing Party shall take reasonable steps to validate its review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its process. If, after reviewing a Producing Party's production, a Requesting Party reasonably requests additional information regarding the validation method(s) used by the Producing Party, the

Producing Party will disclose the level of end-to-end recall (the percentage of responsive Documents in the collection which were identified as responsive by that Producing Party's methodology). If there remain disputes between the Parties regarding validation, the Parties shall meet and confer to resolve such disputes in good faith, including a reasonable discussion regarding the tool used and the parameters used to obtain or calculate the level of recall.

d. **TAR:** The Parties have represented that they do not plan to use TAR. In the event Producing Party plans to use TAR or other machine learning process to cull documents from review, the parties shall meet and confer before such process begins.

e.  **Other Review Procedures:** Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the Requesting Party's discovery requests. Similarly, nothing may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be relevant. Further, nothing in this Order requires the production of documents that are irrelevant, privileged, or otherwise protected from disclosure merely because the documents hit upon a search term. In addition, to the extent that, during the Producing Party's review, the Producing Party becomes aware of additional ESI sources that are likely to may contain responsive data, or additional search terms that are highly likely to result in targeted identification of non-duplicative responsive data that can be collected and produced with a reasonable burden, the Producing Party shall take reasonable steps to implement additional searches that may be appropriate according to its duty of reasonable inquiry.

f. **Known, Responsive ESI:** Specific, non-duplicative ESI that is identified by a party as responsive to a discovery request shall not be withheld from review or production solely on the grounds that it was not identified by (or is subject to an exclusion set forth in) the protocols described in, or developed in accordance with, this Order.

g. **Production and Supplementation of ESI:** Production of responsive, non-privileged documents shall proceed on a rolling basis and be substantially completed in view of the Scheduling Order entered in this case.

h. **Hyperlinked Documents and Communications:** The Receiving Party may request the production of the current versions of up to seventy-five (75) non-public, responsive, and non-privileged documents and communications that are within the Producing Party's possession, custody, or control and are hyperlinked within the Producing Party's production by providing to the Producing Party a list of hyperlinks, corresponding Bates numbers, and the basis for its claim that the each hyperlinked document is potentially relevant and needs to be produced independently of the search and review procedures set forth elsewhere in this protocol.  The Producing Party shall produce the version of the requested hyperlinked document that exists as of the date of collection, or state its basis for withholding the same, no later than twenty-one (21) days following receipt of the Receiving Party's request.  The parties agree that the current version of the hyperlinked document may differ from the version of the document at the time the hyperlink was sent.  The parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness of production of the requested documents and communications and any reasonable request to increase the cap on the total number of hyperlinked documents and communications to be produced.

8. **Metadata**: Load or DAT files should include, where applicable and to the extent it exists and was captured at the time of the collection, the information listed in **Exhibit A** attached. To the extent that metadata does not exist or is not reasonably accessible or available for any documents produced, nothing in this Order shall require any party to extract, capture, collect or produce such metadata.

9. **Preservation**: To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

    a. Parties will take reasonable efforts to preserve non-duplicative, relevant information currently in their possession, custody, or control.

    b. Unwarranted, extraordinary measures will not be taken to preserve the two sources of ESI listed immediately below. Those two sources will be retained pursuant to standard business processes but not searched, reviewed, or produced, unless ordered by the Court or agreed to by the parties:

        i. Backup systems and/or tapes used for disaster recovery; and

        ii. Systems no longer in use that cannot be accessed by using systems currently in use by the party.

    c. In addition to the above, the parties agree data from the following sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved:

        i. Deleted, slack, fragmented, or unallocated data only accessible by forensics.

        ii. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

        iii. Data from platforms that do not offer preservation functionality nor allow for the creation of account-wide snapshots or backups.

        iv. On-line data such as temporary internet files, history, cache,

cookies, and the like.

    v. Data in metadata fields that are frequently updated automatically, such as last-opened or last modified dates.

    vi. Mobile device activity logs.

    vii. Server, system, or network logs.

    viii. Dynamic fields in databases or log files not stored or retained in the usual course of business.

    ix. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party.

  d. Section 9(c) shall not apply to any copies of the training datasets known as books1 and books2 or data known to contain: (i) back-up copies of deleted Slack messages, (ii) identification of materials incorporated into the books1 and books2 datasets, (iii) web crawler logs and scripts used to populate the books1 and books2 training datasets, (iv) and any other sources containing information that could be used to identify the training data incorporated in books1 or books2, all to the extent such data and sources still exist, can be located through a reasonable search, and are reasonably recoverable.

  e. The Parties acknowledge that:

    i. OpenAI is subject to various privacy regulations, court orders, and contractual obligations that require the disposition of identifiable user data;

    ii. Such data includes prompt inputs and outputs that are subject to routine disposition;

    iii. OpenAI indefinitely retains input and output data from ChatGPT unless users have affirmatively turned off chat history, deleted their past conversations, deleted their account (in which case new

conversations are retained for 30 days), or have affirmatively asked OpenAI to delete their data; and that

  iv. Enterprise and API versions of ChatGPT have separate contractual retention policies depending on the customer.

The Parties agree that these practices do not need to be modified in light of this action.  Further, to the extent that additional identifiable user data subject to routine disposition as required by privacy regulations, court orders, or contractual obligations other than prompt inputs and outputs is identified as relevant to the claims or defenses in this case, the parties will meet and confer on preservation of such information as it exists at that time, including the feasibility of such preservation and the type and import of the user data implicated.

 f. Data that is inaccessible within the meaning of Federal Rule of Civil Procedure 26(b)(2)(B) shall not be produced to another party, either in native form or otherwise, unless ordered by the Court. The parties will meet and confer in good faith regarding whether there are reasonable and practical methodologies to query or sample such data sources.

10. **Production Format for ESI**.

 a. Except as otherwise provided in this Order, all documents existing in electronic format (e.g., Word, PDF, webpage files) shall be produced as 300 DPI TIFF black and white images with a Bates number stamped on each page, document metadata (including extracted or OCR text), and a link to the associated extracted or OCR text file. Slack messages shall be produced in color. Otherwise, the parties will re-produce select and specifically identified electronic format documents as a color PDF upon reasonable request by the receiving party.

 b. Source code and certain other highly confidential technical materials will be produced pursuant to the Protective Order entered in this case.

      c.  Spreadsheet-type files (e.g., Microsoft Excel) should be produced in native format unless they require redaction. The Requesting Party may request that non-native redacted spreadsheet-type files be produced in alternative formats in the event that produced copies of such documents are illegible, experience technical errors, or are otherwise not reasonably usable. Documents produced in native format should be named according to the Bates number assigned, with the Confidentiality designation appended to the Bates numbers with a hyphen. Single-page Bates-stamped TIFF image slip-sheets will be included for each document produced in native format. The slip-sheets will display the Bates number of the native file, the Confidentiality endorsement, and an endorsement stating, "File Produced Natively."

      d.  All attachments, addendums, enclosures, and/or exhibits to a parent document (but not hyperlinks in a parent document) will be, to the extent reasonably possible, produced immediately following the parent document and identified as they relate to the respective parent document with the parent/child relationship intact.

      e.  To the extent reasonably possible, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

The Parties shall meet and confer in good faith regarding the format of production or inspection of telemetry data, training data, and other similarly voluminous data.

11. **Privilege Logs.** The parties shall meet and confer in good faith to address privilege log formatting, timing of production, and any other anticipated issues.

12. **Non-Party Subpoenas.** Any Party that issues a non-party subpoena shall timely notify other parties when it receives non-party productions of documents, ESI or other responses from the non-party, and shall provide copies of all such productions in the format in which they

were received from the non-party to the other parties. If the non-party produces documents or ESI that are not Bates labeled, the receiving party will Bates-label the documents or ESI before producing a copy to the other Parties if the produced documents or ESI are of the type so requiring Bates labeling consistent with other provisions of this Order. Nothing in this Protocol precludes a receiving party from reviewing a non-party production of documents or ESI and applying (if the non-party produced documents without a confidentiality designation) or elevating a confidentiality designation (e.g., elevating documents designated as CONFIDENTIAL to HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY) if the production contains highly sensitive information as set forth in the Protective Order to be entered in this case.

13. **Discovery Liaisons.** The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**IT IS SO STIPULATED:**

Dated: August 21, 2024

/s/ *Joseph R. Saveri*
Joseph R. Saveri (State Bar No. 130064)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:     jsaveri@saverilawfirm.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

| | |
|---|---|
| Dated: August 21, 2024 | /s/ Joseph Charles Gratz |
| | Joseph Charles Gratz (SBN 240676) |
| | **MORRISON & FOERSTER LLP** |
| | 425 Market Street |
| | San Francisco, CA 94105 |
| | Telephone: (415) 268-7000 |
| | Facsimile: (213) 268-7522 |
| | Email: jgratz@mofo.com |
| | |
| Dated: August 21, 2024 | /s/ Elana Nightingale Dawson |
| | Elana Nightingale Dawson (*pro hac vice*) |
| | **LATHAM & WATKINS LLP** |
| | 555 Eleventh St., NW, Suite 1000 |
| | Washington, DC 20004 |
| | Telephone: (202) 637-2200 |
| | Email: elana.nightingaledawson@lw.com |
| | |
| Dated: August 21, 2024 | /s/ Paven Malhotra |
| | Paven Malhotra (SBN 258429) |
| | **KEKER, VAN NEST & PETERS LLP** |
| | 633 Battery Street |
| | San Francisco, CA 94111-1809 |
| | Telephone: (415) 391-5400 |
| | Facsimile: (415) 397-7188 |
| | Email: pmalhotra@keker.com |
| | |
| | *Counsel for Defendants* |

## SIGNATURE ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from any other signatory to this document.

| | | |
|---|---|---|
| Dated: August 21, 2024 | By: | /s/ Joseph R. Saveri |
| | | Joseph R. Saveri |

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: August 22, 2024

_____
Honorable Judge Robert M Illman
United States Magistrate Judge

# EXHIBIT A

| *Field* | *Data Type* | *Paper* | *Native Files & Email Attachments* | *Email* | *Messages* (Texts, collaboration platform chats, other messaging applications) |
|---|---|---|---|---|---|
| BegDoc | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # | Starting Bates # |
| EndDoc | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # | Ending Bates # |
| BegAttach | Integer - Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| EndAttach | Integer - Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Attachname | | | File name(s) of attachment(s), with each separated by semi-colon | File name(s) of attachment(s), with each separated by semi-colon | File name of the attachment, with any attachments separated by semi-colon |
| AttachmentIDs | | | Start Bates number of attachment(s), with each separated by semi-colon | Start Bates number of attachment(s), with each separated by semi-colon | Start Bates number of the attachment, with any attachments separated by semi-colon |
| Custodians | Text – paragraph Separate entries with ";" | | All names of custodians the document was collected from even if removed from production as a duplicate | All names of custodians the document was collected from even if removed from production as a duplicate | All names of custodians the document was collected from even if removed from production as a duplicate |
| From | Text - paragraph | | | Sender of message | Full name, username or phone numberof sender of message |
| To | Text – | | | Recipients of | Recipients of message |

| Field | Data Type | Paper | Native Files & Email Attachments | Email | Messages (Texts, collaboration platform chats, other messaging applications) |
|---|---|---|---|---|---|
| | paragraph Separate entries with ";" | | | message | |
| CC | Text – paragraph Separate entries with ";" | | | Copied recipients | |
| BCC | Text – paragraph Separate entries with ";" | | | Blind copied recipients | |
| Subject | Text - paragraph | | | Subject of message | Subject of message (if applicable) |
| DateSent | Date (mm/dd/yyyy) | Date of hard copy document if coded | | Date message sent | Date message sent |
| DateReceived | Date (mm/dd/yyyy) | | | Date message received | Date message received |
| DateCreated | Date/Time (mm/dd/yyyy) | | Date file was created | | |
| DateModified | Date/Time (mm/dd/yyyy) | | Date file was last modified | | |
| FileName | Text - paragraph | | Name of original file including extension | Name of original file including extension | Name of original file including extension |
| FileExtension | Text | | Extension of original file | Extension of original file | Extension of original file |
| File Path | Text | | Directory structure of the original file(s). Any container name is included in this | Directory structure of the original file(s). Any container name is included in this path. | |

| Field | Data Type | Paper | Native Files & Email Attachments | Email | Messages (Texts, collaboration platform chats, other messaging applications) |
|---|---|---|---|---|---|
| | | | path. | | |
| Author | Text - paragraph | | Document author from metadata | | |
| Time Sent | Text (hh:mm:ss) | | | The time an email was sent. | The time the chat message was sent. |
| Time Received | Text (hh:mm:ss) | | | The time an email was received. | The time the chat message was received. |
| Time Created | Text (hh:mm:ss) | | The time a document was created according to the file application. | The time a document was created according to the file application. | The time a document was created according to the file application. |
| Time Last Modified | Text (hh:mm:ss) | | The time a document was last modified according to the file application. | The time a document was last modified according to the file application. | The time a document was last modified according to the file application. |
| MD5Hash | Text | | The MD5Hash value of the file | The MD5Hash value of the file | The MD5Hash value of the file |
| MessageID | Text | | | Unique identifier of email messages in mail stores.  EntryID for MS Outlook, the UniqueID for Lotus Notes, or equivalent value for proprietary email store formats. | |
| Confidentiality | Single choice | Designation branded onto the document | Designation branded onto the document | Designation branded onto the document | Designation branded onto the document |
| TextLink | Link | Link to the extracted or | Link to the extracted or | Link to the extracted or | Link to the extracted or OCR text file |

| Field | Data Type | Paper | Native Files & Email Attachments | Email | Messages (Texts, collaboration platform chats, other messaging applications) |
|---|---|---|---|---|---|
| | | OCR text file | OCR text file | OCR text file | |
| NativeLink | Link | Link to the native file | Link to the native file | Link to the native file | Link to the native file |
| Redaction | Text | Identifies if a document has been redacted | Identifies if a document has been redacted | Identifies if a document has been redacted | Identifies if a document has been redacted |
| Redaction Reason | Paragraph | The reason a document is being redacted. | The reason a document is being redacted. | The reason a document is being redacted. | The reason a document is being redacted. |
| ProdVol | Text | Identifies the production volume. | Identifies the production volume. | Identifies the production volume. | Identifies the production volume. |
| ThreadID | Text | | | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that permits email threading in review software. | |
| ChatName | Text | | | | The channel team |

| Field | Data Type | Paper | Native Files & Email Attachments | Email | Messages (Texts, collaboration platform chats, other messaging applications) |
|---|---|---|---|---|---|
| | | | | | group name for chats and messaging data. |
| ConversationID | Text | | | | The unique identifier for a chat, channel, team or group. |
| Slack_Members | Text | | | | Application assigned ID of sender of message |
| All Active Participants | Text | | | | List of all active participant names and/or telephone numbers who were part of identified chat, channel or group message. |
| All Participants | Text | | | | List of all participant names and/or telephone numbers who are part of identified chat, channel or group message. |
| FamilyRelationship | Text | | | | Status as message or attachment |
| Time Zone | Text | | UTC | UTC | UTC |