**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

*E-FILED*

United States District Court
Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Avenue
McKinleyville, CA, 95519

Re:   *In re OpenAI ChatGPT Litigation*; Master File No. 3:23-cv-3223-AMO

Dear Judge Illman:

Pursuant to this Court's standing order, the parties hereby submit this joint discovery letter brief concerning the selection of custodians pursuant to the Court's Order re: Fifth Discovery Dispute regarding the parties' protocol for the Discovery of Electronically Stored Information ("ESI") and the parties' stipulated ESI Protocol. Counsel for the parties met and conferred yet they were unable to resolve their dispute.

Page 1

# PLAINTIFFS' STATEMENT

Plaintiffs respectfully request an order requiring OpenAI to designate Brad Lightcap and Michael Lampe as part of their initial set of 24 custodians.

The Court set the initial number of custodians at 24. ECF No. 166 at 2. "As to the identification of appropriate custodians with non-duplicative documents or information," the Court permitted the parties to present discrete disputes that may arise in connection with good faith meet-and-confer efforts. *Id.* The parties' stipulated ESI Protocol is consistent with the Court's Order. *See* ECF No. 174, ¶ 6.a. The parties reached agreement on 22 of the 24 OpenAI initial custodians. With respect to the two in dispute, OpenAI proposes Varun Sheddy and Lama Ahmad. Messrs. Lightcap and Lampe are more appropriate for the reasons set forth below.

## I. Applicable Standard

The Court ordered the parties to identify "appropriate custodians with non-duplicative documents or information." ECF No. 166 at 2. The case law on what constitutes "nonduplicative" is scant, but at least one decision provides helpful guidance. In *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843-VC-JSC, 2021 WL 10282213 (N.D. Cal. Nov. 14, 2021) ("*In re Facebook*"), a court-appointed special master granted plaintiffs' request to have Mark Zuckerberg and Sheryl Sandberg added as document custodians. *In re Facebook*, 2021 10282213 at *3. In so ruling, the court looked to whether those individuals were "likely to possess" some of the following categories of relevant information, not available through other data sources:[1]

> (i) *it is possible* that Zuckerberg and Sandberg communicated with each other directly regarding issues relevant to Plaintiffs' allegations and did not include any of the other custodians in the communications; (ii) as key decision makers, *it is possible* one or both of them both of them communicated directly with members of the board of directors regarding these issues without including other custodians; (iii) *it is possible* that one or both of them communicated directly with relevant third parties without other custodians; and (iv) Zuckerberg and/or Sandberg communicated with non-custodian subordinates . . . without including other custodians in the communications.

*Id.* at *2 (emphasis added); *see also Kadrey et al. v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (TSH), ECF No. 212 (N.D. Cal. Oct. 4, 2024) (in substantially similar infringement action, court granted motion to add 5 additional custodians, including Zuckerberg). Application of this analysis here supports including Lightcap and Lampe as custodians.

## II. Brad Lightcap

Brad Lightcap is OpenAI's Chief Operating Officer. Plaintiffs' review of OpenAI's production reveals that Mr. Lightcap regularly interfaces with third parties, including prospective training data licensors. *See*, *e.g.*, OPCO_NDCAL_0854459 (referencing Brad Lightcap's "very good relationship" with third-party AI-data-licensor, Scale, and an upcoming meeting between Mr.

---

[1] The *In re Facebook* court noted it was "not certain" that the listed information exists. *Id.* at n.3.

Page 2

Lightcap and Scale's head of business); *see also* OPCO_NDCAL_1048778 (referencing separate communication between Mr. Lightcap and a representative of third-party Microsoft in connection with OpenAI's partnership with Microsoft). Mr. Lightcap also signed agreements with third-party content owners, further demonstrating that he is or was intimately involved in negotiating and executing training data licensing deals with third parties, and that he is the key decision maker on these matters. *See, e.g.*, OPCO_NDCAL_0122090; https://openai.com/index/content-partnership-with-financial-times/ (April 24, 2024) (containing Brad Lightcap's commentary on "partnership and ongoing dialogue" with comments on data licensing agreements with *Financial Times*). Mr. Lightcap is therefore likely to have communications with those third parties not available through other data sources in OpenAI's possession. And, although Mr. Peter Hoeschele appears to be copied on *some* communications involving Mr. Lightcap and third parties, Mr. Lightcap appears to hold meetings with third parties *without* the involvement of Mr. Hoeschele or other custodians. *See, e.g.*, OPCO_NDCAL_0854447 (meeting invite sent only to Lightcap and three non-custodian third parties); OPCO_NDCAL_0854459 (meeting with head of business for Scale).

Thus, Mr. Lightcap is communicating with non-custodian third parties regarding data licensing. It is therefore certain that he possesses relevant, responsive, non-duplicative documents. *In re Facebook*, at *2. And, OpenAI's communications with third-party content owners are relevant because they would reveal how OpenAI and third parties are discussing pricing terms for training data licensing, which goes to fair-use factor four--the effect on the potential market or value of the copyrighted work. *Harper & Row, Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 561 (1985). OpenAI argues that licensing negotiations are not currently covered by Plaintiffs' RFPs, but this ignores that Plaintiffs can simply serve additional RFPs as there are almost four months until close of fact discovery.

OpenAI apparently believes that Varun Shetty would be a more appropriate custodian. Not so. Mr. Shetty started working at OpenAI in January 2024,[2] but OpenAI has been inking licensing deals for AI training data as early as 2023.[3] Even though some deals were executed in 2024, the negotiations underpinning those deals likely took several months, and thus likely pre-date Mr. Shetty's tenure at OpenAI. (Plaintiffs assume, without conceding, that Mr. Shetty's role at the company actually includes this type of work.) Thus, Mr. Shetty's custodial file would not contain the complete set of communications relating to and evidencing OpenAI's deals with third-party content owners. As such, Mr. Lightcap is the more appropriate custodian.

### III. Michael Lampe

Plaintiffs also request that Michael Lampe be added as a custodian. A member of OpenAI's "Technical Staff" since August 2022, Mr. Lampe appears to have played a unique role at the company relating to key issues in this case. While his name is present on only 18 communications produced by OpenAI thus far, the documents nonetheless suggest that Mr. Lampe oversaw relevant projects related to testing the language models' understanding of whether a work is under copyright or in the public domain (OPCO_NDCAL_0003039), including by sourcing content from pre-training data to test model regurgitation (OPCO_NDCAL_0639287). Most notably, Mr. Lampe appears to have developed the source

---

[2] https://www.linkedin.com/in/mrvarunshetty/.
[3] https://www.cbinsights.com/research/ai-content-licensing-deals/

Page 3

code OpenAI has used to prevent the models from regurgitating copyrighted material (OPCO_NDCAL_0001173). In one key document, a non-custodian OpenAI colleague asks Mr. Lampe where he can ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ to which Mr. Lampe responds that he can ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ OPCO_NDCAL_0001173. The creation and functionality of this script relate both to the merits of proving direct infringement and to OpenAI's "fair use" defense, as it demonstrates the company's intentional reliance on copyrighted material for training data in the context of concerns that the models are regurgitating this material in violation of copyright law.

OpenAI claims that Lama Ahmad is a more appropriate custodian. Ms. Ahmad is a member of OpenAI's trust and safety team, and her name appears on 24 documents produced to date. The documents reveal that she focuses on product safety issues—building up policies, systems, and processes to prevent OpenAI's technology from generating misinformation, hate speech, and other content deemed toxic or harmful. *See, e.g.,* OPCO_NDCAL_0864434 (Ahmad discussion of "race and class dynamics" vis-à-vis ChatGPT output). But OpenAI has previously taken the position that these issues are irrelevant to this case. Specifically, when Plaintiffs subpoenaed a former trust and safety team member, OpenAI claimed that the trust and safety team "was not responsible for issues related to copyright or regurgitation of training data." 6/6/2024 M. Levy email to Plaintiffs' Counsel. Why OpenAI now believes a member of that team should be a document custodian is puzzling, at best. For the reasons set forth above, Mr. Lampe is the more appropriate custodian.

## DEFENDANT'S STATEMENT

Plaintiffs' demand for additional OpenAI custodians is unwarranted and unnecessary. OpenAI has already offered to produce documents from 24 custodians, including top OpenAI executives (CEO, Sam Altman; President, Greg Brockman; CTO, Mira Murati[4]) and other senior executives and leaders of OpenAI's technical, research, product, and business teams. OpenAI identified these 24 custodians following its evaluation of which individuals are most likely to have relevant, non-duplicative information.

Unsatisfied with OpenAI's considered decisions, Plaintiffs have rejected two of OpenAI's custodians—Varun Shetty, Head of Media Partnerships, and Lama Ahmad, a Technical Program Manager on OpenAI's Safety Systems Trustworthy AI team—and have instead demanded two different individuals—Brad Lightcap, OpenAI's COO, and Michael Lampe, also a member of OpenAI's Trustworthy AI team. But other than their bare preference for Messrs. Lightcap and Lampe over Mr. Shetty and Ms. Ahmad, Plaintiffs offer little justification for the swap.

That Plaintiffs prefer Messrs. Lightcap and Lampe is not enough. Every individual may possess some information not available from others. But speculating that a person had conversations that did not involve other designated custodians does not satisfy the legal standard contemplated by the ESI Order. Rather, this Court has ordered that custodians are appropriate only where they are "***most likely*** to have non-duplicative discovery in their possession, custody or control." ESI Order, Dkt. 175 ¶6(a) (emphasis added).

---

[4] Ms. Murati recently departed the company.

Page 4

Though Plaintiffs spill a great deal of ink discussing *In re Facebook*, it does not contradict the ESI Order, nor does it support Plaintiffs' demand. 2021 WL 10282213. There, the court added the requested custodians because they were "key decision-makers related to the issues at the heart of Plaintiffs' allegations[.]" *Id.* at *2. Plaintiffs come nowhere near to making a similar showing. Mr. Shetty and Ms. Ahmad are the appropriate custodians under the ESI Order; Messrs. Lightcap and Lampe are not. As such, the Court should reject Plaintiffs' request.

**I.    Mr. Lightcap**

Plaintiffs seek to add Mr. Lightcap as an ESI custodian for one—and only one—reason: his supposed involvement in negotiating data access agreements with third parties.

But any negotiations that involved Mr. Lightcap are not an issue "at the heart of Plaintiffs' allegations." *Facebook*, 2021 WL 10282213 at *2. None concerned the use of books for training—the copyrighted material at issue in this case. And, tellingly, Plaintiffs ***concede they have not propounded a single RFP*** requesting documents reflecting these negotiations. In other words, Plaintiffs ask the Court to compel OpenAI to designate a custodian to produce documents they have not thought relevant to ask for, ***despite having litigated the case for more than a year***.

Moreover, OpenAI has already designated several custodians broadly knowledgeable about its partnerships with other companies. Because OpenAI's collaborations related to data access fall under this broad umbrella of partnerships, Mr. Lightcap is duplicative at best. OpenAI has offered as custodians its VP of ***Strategy*** and Operations, Peter Hoeschele; its VP of Product & ***Partnerships***, Peter Welinder; and its Head of ***Media Partnerships***, Mr. Shetty. Plaintiffs do not, and cannot, dispute that Messrs. Hoeschele and Shetty (one of the two proposed custodians Plaintiffs have rejected) are knowledgeable about data access partnerships,[5] and cannot justify their demand for Mr. Lightcap in lieu of Mr. Shetty and the other custodians.

To the contrary, the documents Plaintiffs cite above confirm that OpenAI's existing custodians are more than adequate. Plaintiffs cite two documents (OPCO_NDCAL_104877, 0854446) suggesting that Mr. Lightcap has knowledge of OpenAI's relationship with Microsoft. At the outset, ***none of these documents concern data access***. Regardless, those documents involve several of OpenAI's existing custodians, including Mr. Altman, Ms. Murati, and Mr. Hoeschele, and establish that they have the same knowledge as Mr. Lightcap. The document (OPCO_NDCAL_0854459) discussing OpenAI's relationship with a third party, is similarly situated. It does not reflect an attempt to obtain training data, but rather data ***labeling*** services, which the third party provides. The document also reveals that another custodian—Dario Amodei, OpenAI's former VP of Research—was the main point of contact. Plaintiffs also cite a blog post about OpenAI's collaboration with a newspaper organization, but that post contains only a single quote from Mr. Lightcap; it never suggests that he has unique information about the relationship. Finally, Plaintiffs point to an agreement that Mr. Lightcap signed (OPCO_NDCAL_0122090), but courts in this district have rejected requests for custodians

---

[5] Though Plaintiffs do not dispute that Mr. Shetty is knowledgeable about such agreements, they complain that he only joined OpenAI in January 2024. However, Plaintiffs ignore that 15 of the 18 (83%) agreements identified in the article they cite were signed after Mr. Shetty's start date (https://www.cbinsights.com/research/ai-content-licensing-deals/)—in most case, many months after. Regardless, Plaintiffs have identified no agreement that could not be addressed by OpenAI's proposed custodians, much less any reason that Mr. Lightcap would have specific, unique knowledge of any such agreement.

Page 5

based on evidence that, as here, "demonstrates nothing more than that [they] signed agreements as a senior officer." *Om Recs., LLC v. OM Dev., SAS*, No. 23-CV-04506-JSW (RMI), 2024 WL 4100870, at *3 (N.D. Cal. Sept. 6, 2024). Moreover, OpenAI has informed Plaintiffs that at least one of its existing custodians is knowledgeable about that same agreement.

Even if OpenAI's existing custodians fail to cover the waterfront—and Plaintiffs offer no reason to think that is the case—OpenAI has provided yet another layer of assurance. OpenAI has expressed that, in response to an appropriately targeted request, it would be willing to consider searching for relevant, non-privileged communications between OpenAI and third parties about executed data access agreements (subject to addressing third-party confidentiality concerns), even if those communications did not involve any of the 24 designated custodians. In other words, OpenAI would consider producing a broader set of relevant documents than what Plaintiffs could hope to collect from Mr. Lightcap alone. OpenAI further expressed that it was willing to discuss other solutions to collect the documents Plaintiffs seek. Plaintiffs rejected both offers, apparently in the hopes that they can persuade this Court to let them unilaterally dictate which OpenAI employees must be subject to custodial discovery. The Court should reject Plaintiffs' request and instead hold them to the standard set forth in its ESI Order. *See* Dkt. 175. Because Plaintiffs cannot show that Mr. Lightcap is likely to have *any* non-duplicative discovery, Plaintiffs' request to add him as a custodian should be denied.

## II.     Mr. Lampe

Plaintiffs' arguments regarding Mr. Lampe suffer from the same infirmities. As with Mr. Lightcap, Plaintiffs seek to designate Mr. Lampe based on his supposed knowledge about a single issue: OpenAI's efforts to prevent regurgitation. But OpenAI has already identified at least three people who know about those efforts. They include Mr. Lampe's team leader and VP of Safety Systems, Lilian Weng; Ms. Weng's direct report, Johannes Heidecke; and head of OpenAI's Privacy Engineering team (responsible for developing the relevant tools), Vinnie Monaco. These facts alone make Mr. Lampe duplicative. In fact, a court in this district refused to compel designation of additional custodians when faced with similar circumstances. In *Handloser Tv. HCL Am., Inc.*, the Court denied plaintiffs' request for three custodians after observing that plaintiffs had already received custodial discovery from others, including the "**heads of the relevant departments**." No. 19CV01242LHKVKD, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020) (emphasis added). Here, OpenAI has likewise already agreed to produce from the heads of the relevant departments.

Moreover, the evidence Plaintiffs submit confirms that OpenAI's existing custodians have the knowledge Plaintiffs seek. *See* OPCO_NDCAL_0639287 (discussion between Ms. Weng and Mr. Monaco); OPCO_NDCAL_00030309 (referencing advice from OpenAI's head of Post-Training Barret Zoph, a designated custodian).

Finally, Ms. Ahmad is a more appropriate custodian than Mr. Lampe. She has specific knowledge and responsibility related to "red teaming," the process by which OpenAI tests and assesses its products and models for harmful capabilities, including regurgitation. Plaintiffs mischaracterize Ms. Ahmad's role—OPCO_NDCAL_0864434 says nothing about that role. Nor is it true that Ms. Ahmad's team does not work on regurgitation. The cited email from Mr. Levy is discussing an entirely different person. Plaintiffs' demand that OpenAI substitute Mr. Lampe for Ms. Ahmad should thus be denied.

Page 6

Sincerely,

| | |
|---|---|
| Dated: October 8, 2024 | JOSEPH SAVERI LAW FIRM, LLP |
| | By: /s/ *Joseph R. Saveri* |
| | Joseph R. Saveri (State Bar No. 130064)<br>JOSEPH SAVERI LAW FIRM, LLP<br>601 California Street, Suite 1505<br>San Francisco, CA 94108<br>Telephone: (415) 500-6800<br>Facsimile: (415) 395-9940<br>Email:     jsaveri@saverilawfirm.com |
| | *Counsel for Individual and Representative Plaintiffs and the Proposed Class* |
| Dated: October 8, 2024 | KEKER, VAN NEST & PETERS LLP |
| | By: /s/ *Christopher S. Sun* |
| | KEKER, VAN NEST & PETERS LLP<br>CHRISTOPHER SUN (SBN 308945)<br>csun@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:    415 391 5400<br>Facsimile:     415 397 7188 |
| | *Attorneys for OpenAI Defendants* |

## E-FILING ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

/s/ *Christopher S. Sun*
CHRISTOPHER S. SUN