# EXHIBIT 1



**Lieff**
**Cabraser**
**Heimann &**
**Bernstein**
Attorneys at Law

**Susman Godfrey l.l.p.**
a registered limited liability partnership

October 15, 2024

<u>**VIA ECF**</u>

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

      RE:    *Authors Guild v. OpenAI Inc.*, 23-cv-8292 (S.D.N.Y.) and *Alter v. OpenAI Inc.*,
             23-cv-10211 (S.D.N.Y.): Entry of a Deposition Coordination Protocol

Dear Judge Wang:

      Pursuant to Rule II(b) of Your Honor's Individual Practices, Plaintiffs seek a conference to request the entry of their proposed deposition coordination protocol, attached hereto as Exhibit A.[1] Plaintiffs' proposed protocol (a) requires coordination between the Class Cases (in S.D.N.Y. and N.D. Cal.), and separately among the News Cases,[2] but *not* omnibus coordination among *all* the cases; and (b) sets sensible parameters to ensure depositions are efficient but meaningful. Defendants' proposal to have all cases coordinated sets unreasonable constraints on all Plaintiffs' ability to develop their case. *See* Ex. B. For the following reasons, Class Plaintiffs respectfully request that the Court enter their proposed deposition protocol.

      ***Deposition coordination across all open copyright cases against OpenAI is impractical.*** Defendants seek coordination between the Class and News Cases—literally all open copyright cases pending against OpenAI—based on the purported similarity among the cases. This is inefficient, will prejudice Plaintiffs, and ensure that the parties spend far more time on dealing with coordination issues than time spent actually deposing witnesses and moving these cases forward.

      OpenAI has been sued a lot for infringement of intellectual property, much in the way that Apple or Samsung face patent infringement lawsuits. The answer has never been that Apple's Chief Technology Officer gets deposed once in all cases alleging patent infringement against the iPhone, nor is answer the right answer here to force all copyright plaintiffs—no matter how

---

[1] The parties have met and conferred about this relief and did not reach agreement.
[2] The Class Cases are the S.D.N.Y. Class Cases (*Authors Guild et al. v. OpenAI Inc. et. al.*, (S.D.N.Y. No. 1:23-cv-8292), and *Alter et al. v. OpenAI Inc. et al.*, (S.D.N.Y. No. 1:23-cv-10211)), and the California Cases (*Tremblay, et al. v. OpenAI, Inc.*, et al., (N.D. Cal. No. 3:23-cv-03223); *Silverman, et al. v. OpenAI, Inc, et al.*, (N.D. Cal. No. 4:23-cv-03416); *Chabon, et al. v. OpenAI, Inc, et al.*, (N.D. Cal. No. 4:23-cv-04625)). The News Cases are *The New York Times Co. v. Microsoft Corp., et al.*, (S.D.N.Y. No. 1:23-cv-11195) and *Daily News, LP, et al. v. Microsoft Corp., et al.*, (S.D.N.Y. No. 1-24-cv-3285).

October 15, 2024
Page 2

different the case—to share time and coordinate deposition schedules across all open cases.

The reality is that the Class Cases, focused on books, are sufficiently different from the News Cases, focused on news articles, that coordination across those two groups of cases simply does not make sense. For one thing, the training data at issue in the Class Cases is different from the News Cases. OpenAI obtained books datasets from pirate websites. By contrast, The Times alleges that OpenAI "scraped" articles from its website. *N.Y. Times*, Dkt. 170 ¶ 160. The different training data at issue will affect not only the questions asked at depositions, but also the deponents they prioritize. The books datasets were compiled and created by particular individuals on particular teams through distinct processes. Author Plaintiffs will prioritize these deponents and questions about this particular work; News Plaintiffs may not. Those differences undercut the value of forced coordination between the two sets of cases.

In fact, Defendants agree that discovery between the Class Cases and News Cases will diverge in key ways. For instance, OpenAI admitted a few months back that discovery in the *New York Times* action would "differ substantially" from discovery in the Class Cases. *N.Y. Times*, 23-CV-11195, Dkt. 72 ¶ 42 (S.D.N.Y. (Mar. 8, 2024)). That is why OpenAI has refused to cross-produce documents produced in the *NY Times* Action in the Class Cases. *See, e.g.*, Ex. C at 3 (refusing to produce documents produced in the *NY Times* action "because of differences between the two cases.").

Lumping all open copyright cases against OpenAI into a single deposition protocol will also be administratively unworkable. It will force the parties and attorneys across eight different consolidated cases to identify which depositions to take and when, then force attorneys at over ten different law firms to identify times that work for both the parties and the Court. This level of coordination makes identifying a *date* for a single deposition a monumental task. But this level of coordination is not necessary. A far more logical solution is to treat the Class Cases and News Cases separately, a solution that still meaningfully minimizes the burden on OpenAI and Microsoft witnesses, while avoiding the administrative difficulties of Defendants' kitchen-sink deposition protocol.

In cases like this one, courts favor informal coordination over formal ordered coordination. Here, that would mean that the Class Plaintiffs' and News Plaintiffs' make good faith efforts to schedule depositions of the same witness on back-to-back days between the two sets of cases, when feasible and possible. *Steuben Foods, Inc. v. Oystar Group*, 13-CV-1118, 2015 WL 9275748 at *1-2 (W.D.N.Y. Dec. 21, 2015); *Or. Laborers Employers Pension Tr. Fund v. Maxar Techs.*, 19-CV-124, 2022 WL 684168 at *3 (D. Colo. Mar. 8, 2022) ("While the Court expects counsel to . . . use their best efforts to schedule depositions on back-to-back days, ordering the same when scheduling depositions involves coordinating numerous attorney and witness schedules across multiple states, would not be practical."); *Barrett v. Apple Inc.*, 20-CV-4812 Dkt 87, at *3 (N.D. Cal. Feb. 25, 2022) (encouraging but not requiring parties to coordinate scheduling a witness's multiple depositions). Plaintiffs are mindful of Defendants' concerns about its witnesses being deposed multiple times, but multiple depositions are not uncommon for corporations sued by multiple parties asserting disparate intellectual property claims about the same or similar technology. And any burden of being deposed twice does not outweigh the prejudice to Plaintiffs. *See KGK Jewelry LLC v. ESDNetwork*, No. 11-CV-9236, 2014 WL 7333291, at *2 (S.D.N.Y. Dec. 24, 2014) ("[T]he benefits of efficiency can never be purchased at the cost of fairness.") (quoting

October 15, 2024
Page 3

*Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993)). News and Class Plaintiffs should not be required to coordinate, or at a minimum, should be allowed to take several depositions out of order as "safety valves."

**A 280-hour cap on depositions taken by Class Plaintiffs is proportional to the needs of the case.** These are complicated cases involving novel technologies in a rapidly evolving industry. To understand those technologies, Plaintiffs will seek testimony about how the technologies were developed and how they work, obtained through depositions. Even a single one of these cases would therefore demand an unusual number of depositions. Instead, between the Class Cases and News Cases, there are five groups of plaintiffs and two groups of defendants. A 280-hour cap is well within the range of reasonableness for two sets of coordinated, complex class actions like the Class Cases here. *E.g.*, *In re Parmalat Sec. Litig.*, No. 04-CV-30 Dkt. 414 (S.D.N.Y. Mar. 6, 2006) (900 hours); *In re Pfizer Sec. Litig.*, No. 04-CV-9866 Dkt. 223 (S.D.N.Y. Aug. 20, 2010) (600 hours); *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 3:18-MD-2843, Dkt. 1139 (N.D. Cal. Jun. 21, 2023) (306 hours); *Wausau Bus. Ins. Co. v. Turner Const. Co.*, 204 F.R.D. 248, 250 (S.D.N.Y. 2001) ("hundreds of hours").

Plaintiffs' proposed hours cap is also reasonable in light of the number of relevant witnesses. Defendants have together agreed to produce documents from around 40 custodians, 16 of which are identified in Rule 26(a) disclosures. Author Plaintiffs and Defendants have subpoenaed an additional 20 third parties, on top of subpoenas served in the N.D. Cal. Cases. If just a fraction of those parties are deposed within the default seven-hour limit, depositions will exceed 280 hours. Moreover, Class Plaintiffs' proposed cap also includes time for depositions taken under Rule 30(b)(6), including a custodial and substantive Rule 30(b)(6) deposition (i.e., two depositions each) from the OpenAI Defendants and Microsoft. Plaintiffs' request for 280 hours is reasonable, and reflects our intention to litigate the case as efficiently as possible.

**The Court should reject Defendants' proposed per-witness limits.** For many of the same reasons, 8 hours per witness is unworkable. Several of Defendants' deponents have knowledge that stretches across all aspects of the case, from obtaining copyrighted material, to the intricacies of OpenAI's LLMs, the relationship with Microsoft, and the benefits OpenAI has reaped from its infringement. Such individuals will likely require more than eight hours of testimony, especially to multiple groups of plaintiffs. Notably, many of these people are the same individuals whose testimony Defendants seek to restrict even more: OpenAI's C-Suite executives. Limiting those witnesses' depositions would severely hamstring Plaintiffs' case. It would moreover be premature: if Defendants claim deposing a particular witness is unduly burdensome, they should substantiate that claim with respect to each witness by seeking a protective order at the appropriate time, rather than seeking blanket protection through a deposition coordination.

In any event, restrictive per-witness caps are unnecessary here. The "tight time limits . . . herein provide adequate incentive for all parties to conduct depositions as expeditiously as possible." *Parmalat*, Dkt. 414; *see Pfizer* Dkt. 223. Plaintiffs' proposal—10 hours among the Class Cases—strikes a fair middle ground; if the Court orders Author Plaintiffs to coordinate with News Plaintiffs, that number should be expanded further. *Pierre v. City of New York*, 2022 WL 2384150, at *1 (S.D.N.Y. July 1, 2022) (granting additional deposition for a witness because, in "multi-party cases, the need for each party to examine the witness may warrant additional time").

October 15, 2024
Page 4

***Defendants' proposed limitations on Rule 30(b)(6) depositions are improper and should be rejected.*** Defendants ask that Plaintiffs in the Class and News Cases take a complete Rule 30(b)(6) deposition of the Defendants in 21 hours. That is not possible. The details of Defendants' proposal only magnify these issues. Defendants allow themselves almost unlimited leeway to limit Rule 30(b)(6) time. To take a few examples: Because they offer no minimum for 30(b)(6) time, Defendants could designate a single 30(b)(6) witness on all topics across all cases, requiring under their proposal that all Plaintiffs to complete 30(b)(6) questioning in 12 hours. Worse, their unified hours cap for personal and representative depositions would let Defendants "curtail 30(b)(6) examinations by designating as a 30(b)(6) witness a person who previously testified for [8] hours as an individual and has only [4] hour[s] left on his or her presumptive [12]-hour clock," restricting 30(b)(6) time to a total of 4 hours across all cases. *Sabre v. First Dominion Capital*, 01-CV-2145, 2001 WL 1590544 at *1 (S.D.N.Y. Dec. 10, 2001). Conversely, "to limit the testimony of an individual," Defendants could "designat[e] the individual as a 30(b)(6) witness; under [Defendants' proposal,] every minute spent conducting the 30(b)(6) deposition would be deducted from the time available to probe the witness's individual knowledge." *Id.* These attempts to shield themselves from questioning are directly contrary to the Federal Rules, *id.*; Plaintiffs' proposal addresses them both.

***Plaintiffs should be permitted to take preliminary custodial Rule 30(b)(6) depositions of Defendants.*** This will significantly streamline discovery. It was discussed at the parties' most recent conference, *see* Sep. 12 Hearing Tr. 41, 51, 82-83, and even ordered by Judge Alsup in a similar LLM copyright case in the N.D. Cal. Ex. D at 10-11. Early custodial 30(b)(6) depositions are a common practice in large cases. *See, e.g.*, *Pfizer*, Dkt. 223 (authorizing the parties to take "30(b)(6) depositions concerning non-case specific issues such as corporate structure, corporate filing systems, etc." early); *In re Zoloft*, 2:12-MD-2342, Dkt. 287 (E.D. Pa. Nov. 16, 2012) (ordering "initial 30(b)(6) depositions on ESI [and] corporate organization/structure"); *Durst v. Zimmer Biomet Holdings, Inc.*, 19-CV-790, Dkt. 6 (S.D.N.Y. Jan. 20, 2019) (ordering an early 30(b)(6) deposition "on the topic of corporate organization and ESI"). And it is particularly critical here, as Defendants have consistently failed to answer basic questions about repositories, *e.g.*, Ex. E, or produce foundational documents evidencing corporate structure. *E.g.*, Ex. F. An early 30(b)(6) deposition will provide needed clarity and limit the disputes the parties bring to the Court.

***Defendants may not tell Plaintiffs how to spend their hours.*** Defendants seek to limit the number of hours Plaintiffs may depose each Defendant—that is, to limit how much time can be spent examining OpenAI witnesses versus Microsoft witnesses. There is no reason why Defendants should have a say on how Plaintiffs use their time under the deposition cap. Such limits would "hamstring Plaintiffs' ability to prove their case . . . . Plaintiffs' proposal, by contrast, preserves the ability of both sides to make deposition decisions based on their specific needs to prove their claims or defenses." *United States v. Am. Airlines Grp.*, 1:21-CV-11558, Dkt. 65 (D. Mass. Nov. 19, 2021) and Dkt. 75 (D. Mass. Nov. 29, 2021) (rejecting defendants' attempt to "dictate how Plaintiffs must allocate their depositions").

***250 hours for Defendants to take depositions is sufficient here.*** Defendants argue that more hours are warranted for depositions of Plaintiffs than of Defendants. Not so. This case will rise or fall on Defendants' conduct—whether OpenAI's mass reproduction and exploitation of authors' works constituted copyright infringement, whether OpenAI conduct constitutes fair use,

October 15, 2024
Page 5

whether authors' works were in OpenAI training dataset, and whether Microsoft knew of the contents of OpenAI's training dataset. While Plaintiffs are the authors and owners of books allegedly used to train OpenAI's models, they were not involved in the creation of OpenAI's large language models or other issues principally in dispute in this case. Given their limited direct involvement in the central issues in the case, class plaintiff depositions regularly take only 3 or 4 hours each. *Carlin v. Daily Am., Inc.*, 09-CV-430, Dkt. 542 (E.D. Cal. Jan. 29, 2018) (limiting class plaintiff depositions to 4 hours); *Onate v. AHRC Health Care, Inc.*, 20-CV-8292, 2023 WL 6973734 at *3 (S.D.N.Y. Oct. 23, 2023) (3 hours); *Severino v. Avondale Care Grp.*, 1:21-CV-10720, Dkt. 259 at *2 (S.D.N.Y. May 16, 2023) (4 hours). Even if Defendants depose each of those individuals for 4 hours, at 250 hours, they will have over 50 hours left over for further questioning or additional deponents. 250 hours is more than enough for Defendants to build out their defenses.

**Defendants must cross-produce documents across coordinated cases.** To the extent the Court requires coordination, whether with the N.D. Cal. case or the News Cases, Defendants must cross-produce documents across the cases in which depositions are coordinated. Defendants contend that cross-production is "outside the scope of this deposition protocol." Ex. B. To the contrary, those issues go hand-in-hand. First, coordination assumes similarities between the cases, and therefore overlapping documents. And second, Plaintiffs cannot efficiently coordinate depositions unless they are making decisions based on the same information. That is why cross-production is standard where parties are coordinating discovery. *See Brown v. Google*, 20-CV-3664, Dkt. 243 (N.D. Cal. Aug. 12, 2021) (requiring defendant to "produce across both Matters all documents of Overlapping Custodians that are produced in either action" to facilitate deposition coordination). For that reason, if the Court requires coordination with the N.D. Cal. Cases, OpenAI should cross-produce "all documents and written discovery," with two exceptions: documents that relate only to the California Unfair Competition Law, and documents specific to Microsoft's liability. Ex. A. By carving out those documents, which are relevant only to the N.D. Cal. and S.D.N.Y. cases, respectively, Author Plaintiffs are seeking production only of documents relevant to their case, consistent with Judge Illman's decision in the N.D. Cal. action. *Tremblay*, 3:23-CV-3223, Dkt. 140 (N.D. Cal. May 14, 2024). By the same token, if the Court orders coordination between the News Cases and this one, OpenAI and Microsoft must cross-produce any documents that relate to both cases.

For the foregoing reasons, the Court should enter Plaintiffs' proposed deposition coordination protocol.

Sincerely,

| LIEFF CABRASER HEIMANN & BERNSTEINS LLP | SUSMAN GODFREY LLP | COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP |
|---|---|---|
| /s/ Rachel Geman | /s/ Rohit Nath | /s/ Scott J. Sholder |
| Rachel Geman | Rohit Nath | Scott J. Sholder |

# EXHIBIT A

## Proposal 1B: Coordination Among Class Cases Only[1]

| Issue | Terms |
|---|---|
| Scope of Coordination / Safety Valve Depositions | • Absent good cause, no individual is deposed more than once across the Class Cases, unless designated as a Rule 30(b)(6) witness or an expert who issues reports in multiple cases<br>• No Safety Valve Depositions |
| Cross-Production | • OpenAI will cross-produce all documents and written discovery in the Class Cases, except that (1) OpenAI does not need to produce any documents to the S.D.N.Y. Class Plaintiffs that relate only to UCL claims, and (2) OpenAI does not need to produce any documents to the N.D. Cal. Class Plaintiffs that relate only to claims against Microsoft. Microsoft does not need to cross-produce documents or written discovery. |
| Plaintiff Side Allotted Hours | • 280-hour cap to be shared by the Class Plaintiffs<br>• This cap includes time for third-party depositions and Rule 30(b)(6) depositions |
| Defendant Side Allotted Hours | • 250-hour cap to be shared by Defendants across Class Cases<br>• No more than 10 hours from any one named Plaintiff. |
| Per-Witness Time Limits (for depositions taken of Defendants' 30(b)(1) witnesses) | • Time limit of 10 hours per witness (if solely in individual capacity), to be shared by the Class Plaintiffs as they see fit |
| Rule 30(b)(6) notices | • Class Plaintiffs will serve consolidated 30(b)(6) notices<br>• Class Plaintiffs may serve up to two 30(b)(6) notices on each Defendant Group,[2] one of which must be limited to custodial topics. "Custodial topics" include the storage and retention of information, employee use of software, programs, or tools, the structure of the relationship between Defendants, the organizational structure of Defendants, and other topics not directly related to the merits of the case that may reasonably inform or cabin subsequent discovery. |
| Rule 30(b)(6) time limit | • If any Defendant designates two or fewer individuals to testify regarding all topics set forth in a Rule 30(b)(6) notice, the class cases are entitled to at least 20 hours of testimony from those individuals or individual. |
| Expert Depositions | • This agreement does not apply to and shall not limit the number and duration of depositions of experts.<br>• The Parties shall endeavor to negotiate in good faith a separate protocol governing expert depositions. |

---

[1] The Class Cases include the SDNY Class Cases, and the California Class Cases (*Tremblay, et al. v. OpenAI, Inc.*, et al., (N.D. Cal. No. 3:23-cv-03223); *Silverman, et al. v. OpenAI, Inc, et al.*, (N.D. Cal. No. 4:23-cv-03416); *Chabon, et al. v. OpenAI, Inc, et al.*, (N.D. Cal. No. 4:23-cv-04625). Proposal 1B is being made on behalf of the Class Plaintiffs.
[2] The two Defendant Groups are: (1) OpenAI, Inc., OpenAI LP, OpenAI GP, LLC, OpenAI, LLC, OpenAI OpCo LLC, OpenAI Global LLC, OAI Corporation, LLC, and OpenAI Holdings, LLC, (the "OpenAI Defendants"); and (2) Microsoft Corporation.

EXHIBIT B

**OpenAI and Microsoft Proposal: Deposition Coordination Among Class Action and News Cases[1]**

| Issue | Terms |
|---|---|
| Scope of Coordination | • Unless otherwise agreed by the Parties or ordered by the Court, no fact witnesses will be deposed more than once, and all Parties will coordinate the date and location of depositions. |
| | • Deposition testimony taken in any case subject to this agreement is usable for all purposes in each case for which the deposition has been noticed as though the testimony was given in such action, provided the deponent or the deponent's present or former employer is a Party to the action in which the testimony is sought to be used, with each Party reserving all other objections. |
| | • Before noticing a deposition of a Party or Party-Affiliated witness, the noticing Party must confer about the scheduling of the deposition with opposing counsel. Parties in receipt of a request for the deposition of a Party or Party-Affiliated witness shall make reasonable efforts to provide proposed deposition dates within 10 days of receiving the request. Parties shall make good faith efforts to accommodate reasonable requests from adverse Parties with respect to the scheduling of Party and Party-Affiliated depositions, to the extent practicable. |
| | • If a Party chooses not to notice a deposition of a fact witness, that Party may not attend the deposition, question the witness, or use the deposition in that Party's case. |
| Cross-Production of Documents and Discovery | • Document production issues are outside the scope of this deposition protocol and are being addressed separately. |
| Plaintiff Side Allotted Hours[2] | • Class Cases: 240-hour-cap to be shared by the Class Plaintiffs, with a maximum of 105 hours for OpenAI witnesses, 85 hours for Microsoft witnesses[3], and 50 hours for non-party fact witnesses. |

---

[1] The Class Cases include the SDNY Class Cases (*Authors Guild et. al. v. OpenAI et. al*. (S.D.N.Y. No. 23-cv-8292); and *Alter et. al. v. OpenAI et al*. (S.D.N.Y. No. 23-cv-10211)), and the California Class Cases (*Tremblay, et al. v. OpenAI, Inc*., et al., (N.D. Cal. No. 3:23-cv-03223); *Silverman, et al. v. OpenAI, Inc, et al*., (N.D. Cal. No. 4:23-cv-03416); *Chabon, et al. v. OpenAI, Inc, et al*., (N.D. Cal. No. 4:23-cv-04625)). A third case originally filed as a putative class action in SDNY, *Basbanes et. al. v. Microsoft et. al*. (S.D.N.Y. No. 24-cv-84), has been stayed and is therefore not included in the aforementioned Class Cases. The News Cases currently include *The New York Times Co. v. Microsoft Corp., et al*., (S.D.N.Y. No. 1:23-cv-11195) and *Daily News, LP, et al. v. Microsoft Corp., et al.*, (S.D.N.Y. No. 1-24-cv-3285). Defendants have filed a motion seeking consolidation of *Center for Investigative Reporting v. OpenAI, Inc., et al.* (S.D.N.Y. No. 24-cv-04872) ("*CIR*") with the News Cases.

[2] Hours caps for Party witnesses include depositions of Party-Affiliated witnesses, including former officers, directors, and/or employees of a Party. If any Party wishes to depose another Party's former officer, director, and/or employee (i.e., a Party-Affiliated witness), the deposing Party will notify the other Parties of its intention to do so prior to serving a subpoena, and any such deposition time will count toward the caps for Party witnesses described above. Counsel for the Party will promptly (and within 5 business days) confirm whether it is able to accept service of any such subpoena on behalf of the Party-Affiliated witness. Depositions of non-party fact witnesses shall proceed pursuant to FRCP 45.

[3] Microsoft is not a party to the CA Class Cases and is not subject to deposition by the CA Class Plaintiffs unless pursuant to standard third-party deposition rules in the event a proper and enforceable subpoena is served on it therein.

| | |
|---|---|
| | • <u>News Cases</u>: 220-hour-cap to be shared by the News Plaintiffs, with a maximum of 85 hours for OpenAI witnesses, 85 hours for Microsoft witnesses, and 50 hours for non-party fact witnesses. If *CIR* is consolidated with the News Cases, 10 hours will be added to the Plaintiff Side Allotted Hours for a total of a 230-hour-cap to be shared by all News Plaintiffs, with a maximum of 90 hours for OpenAI witnesses, 90 hours for Microsoft witnesses, and 50 hours for non-party fact witnesses<br>• These caps include third party witness depositions and 30(b)(6) depositions. |
| Defendant Side Allotted Hours | • <u>Class Cases</u>: 300-hour-cap to be shared by Defendants, with a maximum of 250 hours for Plaintiffs' witnesses (with Microsoft's deposition time limited to the NY Class Cases) and 50 hours for non-party fact witnesses.<br>• <u>News Cases</u>: 250-hour-cap to be shared by Defendants, with a maximum of 200 hours for Plaintiffs' witnesses and 50 hours for non-party fact witnesses. If *CIR* is consolidated with the News Cases, 20 hours will be added to the Defendant Side Allotted hours, for a total of a 270-hour-cap to be shared by Defendants, with a maximum of 220 hours for Plaintiffs' witnesses and 50 hours for non-party fact witnesses.<br>• These caps include third party witness depositions and 30(b)(6) depositions. |
| Per-Witness Time Limits | • For Party witnesses noticed solely in their individual capacity, 8 hours of on the record time across all cases. Notwithstanding the above, and without waiver of any Party's ability to file motions under the "apex" doctrine, depositions of C-Suite executives deposed solely in their individual capacity shall not exceed 7 hours of on the record time across all cases.<br>• For Party witnesses designated to testify on 30(b)(6) topics in addition to their individual capacity, 12 hours of on the record time across all cases. 30(b)(6) deposition shall occur prior to 30(b)(1) deposition, and questioning during 30(b)(1) deposition shall not duplicate questioning or topics covered during 30(b)(6) deposition.<br>• Depositions of third parties are subject to the standard 7-hour limit, absent agreement by the third-party to extend the time limit or court order. |
| 30(b)(6) Notices | • Class Plaintiffs will serve one 30(b)(6) notice for OpenAI and one 30(b)(6) notice for Microsoft.[4]<br>• News Plaintiffs will serve one 30(b)(6) notice for OpenAI and one 30(b)(6) notice for Microsoft.<br>• Defendants OpenAI and Microsoft each will serve one 30(b)(6) notice for each distinct entity among Plaintiffs in the Class Cases and News Cases.<br>• No Party shall be permitted to serve successive 30(b)(6) notices, or amended 30(b)(6) notices with new topics, on the same entity absent the Parties' agreement or leave of court. |
| 30(b)(6) Time | • If any Party receiving a 30(b)(6) notice designates multiple corporate representatives for testimony, the total time for 30(b)(6) testimony of that Party will be limited to a cumulative total of 21 hours of testimony on the record across all such designated corporate representatives. |

---

[4] Microsoft may only be served with a 30(b)(6) notice in the NY Class Cases and Newspaper Cases; as it is not a party to the CA Class Cases, it is not subject to a 30(b)(6) notice in those cases.

| Expert Depositions | • This agreement does not apply to and shall not limit the number and duration of depositions of experts.<br>• The Parties shall endeavor to negotiate in good faith a separate protocol governing expert depositions. |
| --- | --- |

EXHIBIT C

| | |
|---|---|
| **From:** | Charlotte Lepic (via Alter-AI-TT list) |
| **To:** | OpenAICopyright; OpenAIcopyrightlitigation.lwteam@lw.com; KVPOAI@keker.com |
| **Cc:** | Alter-TT (Alter-AI-TT@simplelists.susmangfrey.com) |
| **Subject:** | Re: AG v OAI - Passos/Dyett |
| **Date:** | Friday, October 4, 2024 1:36:59 PM |

---

<mark>EXTERNAL Email</mark>

Chris, contrary to your assertions, we have provided two sets of explanations and several documents. OpenAI, on the other hand, is refusing to explain what differences between the cases justify its refusal to produce. The ball is now in OpenAI's court to provide information on that refusal. If you'd like to discuss, let us know some times next week that work.

_____

**Charlotte Lepic** | Susman Godfrey LLP
212-729-2064 (o) I 646-421-3356 (c)

---

**From:** Christopher S. Sun <CSun@keker.com>
**Sent:** Thursday, October 3, 2024 18:42
**To:** Charlotte Lepic <CLepic@susmangodfrey.com>;
OpenAIcopyrightlitigation.lwteam@lw.com <openaicopyrightlitigation.lwteam@lw.com>;
OpenAICopyright <OpenAICopyright@mofo.com>; KVP-OAI <KVPOAI@keker.com>
**Cc:** Alter-TT (Alter-AI-TT@simplelists.susmangodfrey.com) <Alter-AI-TT@simplelists.susmangodfrey.com>
**Subject:** RE: AG v OAI - Passos/Dyett

<mark>EXTERNAL Email</mark>

Charlotte,

We've already discussed the relevant standard for adding custodians and I would prefer not to have to do it again. As you already know, Plaintiffs bear the burden of demonstrating that newly requested custodians "would provide unique, relevant and noncumulative evidence." Coventry Cap. US LLC v. EEA Life Settlements, Inc., No. 17 CIV. 7417 (VM), 2021 WL 961750, at *2 (S.D.N.Y. Mar. 15, 2021); see also Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A., No. 15CIV0293LTSJCF, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017).

Plaintiffs cannot simply ignore that clear legal requirement because they "believe" it isn't "pertinent here." Contrary to what you suggest, lack of burden does not eliminate the question of duplication. To the contrary, burden is a separate inquiry entirely. See Mortg. Resol. Servicing, LLC, 2017 WL 2305398, at *3 ("Even if the [requesting party] ha[s] cleared the hurdle of showing that the proposed additional custodians had some unique relevant information, discovery of their files would not be warranted [if] the cost and burden would be disproportionate."). I've identified these cases for you numerous times already. If you have authority supporting your asserted belief that duplication is not pertinent here provide it, and we will consider it. You haven't done so to date, despite numerous requests.

Thanks for sending the list of documents. I'll take a look. Could you please also explain why you think

Messrs. Dyett and Passos have unique, non-duplicative information as you've considerably done in the past when negotiating with us about custodians? It will only complicate and slow down our negotiations if I must try to divine from the cited documents the reasons AG thinks these individuals have non-duplicative information. This is now the third time I've asked for that explanation. I'd appreciate not having to ask a fourth. At a certain point, I'm going to have to conclude that you're refusing to provide the requested explanation because none exists.

Also, I can confirm that Messrs. Dyett and Passos were added as custodians to The Times matter, but not here, because of differences between the two cases. We do not believe the Times' justifications for adding these custodians are applicable to AG. If you have a different understanding, please explain it.

It might be more productive to jump on a call to hash this out. Once you get me the explanations I've repeatedly requested—and I've had a chance to review the documents you've cited—maybe we can set a time to talk next week.

Thanks,

Chris

---

**From:** Charlotte Lepic <CLepic@susmangodfrey.com>
**Sent:** Wednesday, October 2, 2024 8:57 AM
**To:** Christopher S. Sun <CSun@keker.com>; OpenAICopyrightlitigation.lwteam@lw.com; OpenAICopyright <OpenAICopyright@mofo.com>; KVP-OAI <KVPOAI@keker.com>
**Cc:** Alter-TT (Alter-AI-TT@simplelists.susmangodfrey.com) <Alter-AI-TT@simplelists.susmangodfrey.com>
**Subject:** Re: AG v OAI - Passos/Dyett

[EXTERNAL]

---

Chris, given the minimal burden of producing these documents, we don't believe duplicativeness is pertinent here. The custodians have relevant information, and it is not burdensome to produce their documents, so they should be produced.

Moreover, OpenAI is producing these custodians' files to the New York Times. If OpenAI is refusing to produce the files of these custodians on the basis of differences between the cases, please identify those supposed differences.

In any event, see below a few of the bates numbers that support our conclusions that these custodians have unique, non-duplicative knowledge of the areas indicated. More generally, James Dyett's sales role is unique among the custodians OpenAI has agreed to produce, as is Alex Passos's involvement in the ███████████████████████████████████
███████████████

EXHIBIT D

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

_____

| | | |
|---|---|---|
| **Bartz, et al.,** | ) | |
| | ) | No. 3:24-CV-05417-WHA |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | San Francisco, California |
| **Anthropic PBC,** | ) | October 10, 2024 |
| | ) | 11:33 a.m. |
| Defendants. | ) | |
| _____ | ) | |


BEFORE:  THE HONORABLE WILLIAM H. ALSUP, JUDGE


<u>REPORTER'S TRANSCRIPT OF PROCEEDINGS</u>


<u>INITIAL CASE MANAGEMENT CONFERENCE</u>

Official Court Reporter:
**Cathy J. Taylor, RMR, CRR, CRC (By Zoom Videoconference)**
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

<pre>
 1                    A P P E A R A N C E S

 2   For the Plaintiffs:
          SUSMAN GODFREY, LLP
 3        By:   Justin A. Nelson, Esq.
          1000 Louisiana Street, Suite 5100
 4        Houston, Texas  77002

 5        SUSMAN GODFREY, LLP
          By:  Rohit Dwarka Nath, Esq.
 6        1900 Avenue of the Stars, Suite 1400
          Los Angeles, California  90067
 7
          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
 8        By:  Reilly Todd Stoler, Esq.
          275 Battery Street, 29th Floor
 9        San Francisco, California  94111-3339

10        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
          By:  Rachel Geman, Esq.
11        250 Hudson Street, 8th Floor
          New York, New York  10013-1413
12
     For the Defendant:
13        ARNOLD & PORTER KAYE SCHOLER, LLP
          By:   Douglas Andrew Winthrop, Esq.
14             Estayvaine Bragg, Esq.
               Jessica Lim Gillotte, Esq.
15        Three Embarcadero Center, 10th Floor
          San Francisco, California  94111-4024
16
          LATHAM & WATKINS
17        By:  Joseph Richard Wetzel, Esq.
          505 Montgomery Street, Suite 2000
18        San Francisco, California  94111

19

20

21

22

23

24

25
</pre>

1           MR. NELSON:  Correct.

2           THE COURT:  All right.  So why is that not good

3     enough?

4           MR. WINTHROP:  Because that is not in the complaint,

5     and we talked this morning.  And if I -- they saw from the

6     statement one concern we have, and they told me they were going

7     to try to tell me and show me that, in fact, they have this

8     evidence.

9           I am skeptical, Your Honor, but I'm open-minded.  I

10    don't want to file a motion.

11          THE COURT:  Please don't file one when it's that easy.

12          I want you by the end of the week, show him the

13    Atlantic list.  Highlight the names of the three.

14          MR. NELSON:  Absolutely, Your Honor.

15          THE COURT:  All right.  Okay.  Now, do you deny that

16    your company uses Books3?

17          MR. WINTHROP:  I don't know at this point that the --

18    the full use of the training, but that's -- so that would be a

19    question --

20          THE COURT:  That's what's alleged.

21          MR. WINTHROP:  Yes --

22          THE COURT:  So --

23          MR. WINTHROP:  -- I understand.

24          THE COURT:  -- why don't you go take the deposition

25    tomorrow of a 30(b)(6) person to find out if they're using

UNITED STATES DISTRICT COURT

1    Books3.

2          This ought to be -- the facts here should not be in

3    dispute.  If it's truly fair use, you should be open about

4    everything that happened --

5          MR. WINTHROP:  Yeah.

6          THE COURT:  -- and -- and so that they -- we -- okay.

7          Now, what is your answer to his point?  His point is,

8    we're not selling pirated copies.  We're not going out -- and

9    what's the name of this book?  The Last -- the Lost Night, a

10   novel.

11         They're not going out and selling bootleg copies of

12   this novel.  Kind of the classic misuse of copyright.

13         What they're doing is, he says, a transformative use,

14   the words in that novel and, as you say, the expression to

15   train their -- what's it called?

16         MR. WINTHROP:  It'll a model.  Claude.

17         THE COURT:  Claude, yes.

18         So that -- I can see the argument.  I'm not saying I

19   agree with it.  I don't know yet.  But tell me, preview what

20   your response to that's going to be.

21         MR. NELSON:  Sure.  And we'll put aside the output

22   case, whether it actually is transformative.  But just this is

23   an input case.  The -- the copying of a pirated book is a

24   copyright violation.  And the American -- the *A&M Records vs.*

25   *Napster*, 239 F.3d 1004 at 1015, Ninth Circuit, I'm going to

1

2

3

4                        **C E R T I F I C A T E**

5

6          I, CATHY J. TAYLOR, do hereby certify that I am duly

7    appointed and qualified to act as Official Court Reporter.

8          I FURTHER CERTIFY that the foregoing pages constitute

9    a full, true, and accurate transcript of all of that portion of

10   the proceedings contained herein, had in the above-entitled

11   cause on the date specified therein, and that said transcript

12   was prepared under my direction and control.

13         DATED this 10th day of October, 2024.

14

15

16

17                     */s/ Cathy J. Taylor*
                       _____

18                     Cathy J. Taylor, RMR, CRR, CRC

19

20

21

22

23

24

25

EXHIBIT E

| | |
|---|---|
| **From:** | Charlotte Lepic |
| **To:** | Ranieri, Vera; Alter-AI-TT@simplelists.susmangodfrey.com; OpenAICopyright; Latham OpenAI Copyright Team; KVP-OAI; nyclassactions_microsoft_ohs@orrick.com; #Microsoft.NYClassAction.FDBR |
| **Subject:** | Re: Authors Guild v. OpenAI - follow up on meet and confer |
| **Date:** | Monday, October 14, 2024 9:02:19 PM |

Vera,

<mark>Thank you for confirming that OpenAI will not disclose whose texts it is reviewing, whether it has virtual data rooms or is searching them, and whether it is searching Asana, Notion, or Salesforce.</mark>

We disagree with your read of the cases with respect to social media for the reasons we've explained.

We intend to move on all of these repositories. Specifically:

- As it relates to texts, we plan to move on Sam Altman, Mira Murati, Greg Brockman, and Angela Jiang.

- As it relates to direct messages on x.com, we plan to move on Chelsea Voss, Sam Altman, Greg Brockman, and Nick Turley.



We intend to include these items in our agenda to the Court. We are happy to discuss tomorrow afternoon as planned, or at another time if convenient.

Kind regards,
Charlotte

_____

**Charlotte Lepic** | Susman Godfrey LLP
212-729-2064 (o) | 646-421-3356 (m)

---

**From:** Ranieri, Vera <VRanieri@mofo.com>
**Sent:** Wednesday, October 9, 2024 7:26 PM
**To:** Charlotte Lepic <clepic@susmangodfrey.com>; Alter-AI-TT@simplelists.susmangodfrey.com <Alter-AI-TT@simplelists.susmangodfrey.com>; OpenAICopyright <OpenAICopyright@mofo.com>;

Latham OpenAI Copyright Team <openaicopyrightlitigation.lwteam@lw.com>; KVP-OAI
<KVPOAI@keker.com>; nyclassactions_microsoft_ohs@orrick.com
<nyclassactions_microsoft_ohs@orrick.com>; #Microsoft.NYClassAction.FDBR
<MicrosoftNYClassActionFDBR@faegredrinker.com>
**Subject:** RE: Authors Guild v. OpenAI - follow up on meet and confer

EXTERNAL Email
Charlotte,

For all documents we've agreed to search for, we're conducting a reasonable search, pursuant to our obligations under Rule 26 and the Federal Rules, and our investigation and search remains ongoing. It is inappropriate for Plaintiffs to continually seek to direct our search efforts.  If, once we have completed our production of documents and Plaintiffs have completed their review of those documents, Plaintiffs have a good faith basis to believe information is missing or OpenAI's reasonable search was inadequate, we can have a conversation then. As you know from the cases cited in your email, "the Court, however, generally is not in the business of prescribing for counsel how to conduct its review [for responsive documents.]" *Smith v. Pergola 36 LLC*, 2022 WL 17832506, at *5 (S.D.N.Y. Dec. 21, 2022).

As to social media accounts, we find it troubling that Plaintiffs would seek to intrude upon the personal, private social media accounts of OpenAI employees without any showing that such invasion is necessary or appropriate.  The attempt to have OpenAI collect and review the highly personal communications of its employees appears to be a fishing expedition and is highly intrusive. Nor have Plaintiffs provided any justification for why such an intrusive act should be taken. Plaintiffs have not provided a basis to believe the private social media accounts of OpenAI employees contain relevant, discoverable information under the standards of Rule 26 that Plaintiffs are not already able to access or is not otherwise provided to Plaintiffs.  If that's incorrect, please provide the basis for why Plaintiffs believe their requested discovery is justified in view of the privacy interests of OpenAI employees, including those protected by California statutory and constitutional law, is warranted, as we would like to consider it.

Indeed, you have provided no reason to conclude those accounts are under OpenAI's control. The cases you cite acknowledge that "[d]ocuments are considered to be under a party's control when that party has the **right, authority, or practical ability** to obtain the documents from a non-party to the action." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14CV04394AJNBCM, 2016 WL 5408171, at *5 (S.D.N.Y. Sept. 27, 2016) (emphasis added). And California Labor Code § 980 provides states that "[a] employer shall not require or request an employee" to "[d]ivulge any personal social media," with limited, inapplicable exceptions. Given that California law forbids OpenAI from even asking an employee to provide personal social media, what basis is there to believe that OpenAI has the right, authority or ability to obtain that social media from its employees? *See Royal Park Invs. SA/NV*, 2016 WL 5408171, at *5.

We'd appreciate if you clarified Plaintiffs' position on this point. Is it your contention that OpenAI should proceed to attempt to collect its employees' social media accounts notwithstanding the Labor Code? Relatedly, you ask us to "provide any authority suggesting that Cal. Labor Code 980 overcomes OpenAI's discovery obligations under federal law." Is it Plaintiffs' contention that—

unspecified—"discovery obligations under federal law" not only permit, but **affirmatively require**, an employer to ignore employee privacy interests? If so, please identify authority that supports such a conclusion. That Plaintiffs "have had extensive experience in federal discovery against California employers in the past 12 years" says nothing about its applicability. We decline your invitation to rely on your "experience" when interpreting and applying the law. Please identify a case to support your position, as you are obligated to do. *See Owen v. Elastos Found.,* 2023 WL 2537287, at *3 (S.D.N.Y. Mar. 16, 2023) (noting that the burden of showing ability to obtain information "lies with the party seeking discovery").

Unsurprisingly, none of the cases you cite suggest that the information you seek is in OpenAI's possession, custody, or control, especially in light of the legal requirements that the California Labor Code imposes. For example, *Chevron Corp. v. Salazar*, 275 F.R.D. 437 (S.D.N.Y. 2011) is a case about waiver and the crime-fraud exception to privilege. In that case, the question was whether a personal email account, *that was used to conduct business*, was in the possession, custody, or control of a party. *See id.* at 448. No argument was raised there that the local law prevented the party from asking its employee for the materials. *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 5408171, at *7 (S.D.N.Y. Sept. 27, 2016) notes that many factors are considered when a court determines whether employee's personal information is in the "possession, custody, or control" of a party, including whether "the corporation can discharge the individual if he or she fails to cooperate in discovery." We have seen nothing to suggest that standard would apply except under limited circumstances that Plaintiffs have not shown here. *See* Cal. Lab. Code 980(e). Finally, the party in *Smith* did *not* dispute that its employees' documents were in its possession, custody, or control, making any discussion dicta. Moreover, that case only related to the collection of information from personal devices, not from social media accounts that were not used to conduct business or subject to laws restricting access to that information. *See Owen,* 2023 WL 2537287, at *3 (declining to compel production of an employee's personal Gmail account where the employee did not use the personal account to conduct business); *see also id.* (recognizing that part of the test as to whether a party has "possession, custody, or control" is "whether the individual has a duty, **under local law**, to turn over the documents on request") (emphasis added).

OpenAI takes the privacy rights of its employees seriously. We would not invade the privacy rights of our employees haphazardly or lightly. We have serious concerns about Plaintiffs' demands and why they are being made, and whether it is an attempt to place OpenAI's employees in an untenable position or, worse still, create tensions between OpenAI and its employees.

Thanks,

Vera

---

**From:** Charlotte Lepic <CLepic@susmangodfrey.com>
**Sent:** Wednesday, October 9, 2024 9:15 AM
**To:** Ranieri, Vera <VRanieri@mofo.com>; Alter-AI-TT@simplelists.susmangodfrey.com; Charlotte Lepic <CLepic@susmangodfrey.com>; OpenAICopyright <OpenAICopyright@mofo.com>; Latham OpenAI Copyright Team <openaicopyrightlitigation.lwteam@lw.com>; KVP-OAI <KVPOAI@keker.com>; nyclassactions_microsoft_ohs@orrick.com; #Microsoft.NYClassAction.FDBR

&lt;MicrosoftNYClassActionFDBR@faegredrinker.com&gt;
**Subject:** Re: Authors Guild v. OpenAI - follow up on meet and confer

External Email

---

Hi Vera, quick bump on this. Thanks.

_____

**Charlotte Lepic** | Susman Godfrey LLP
212-729-2064  (o) | 646-421-3356 (m)

---

**From:** Charlotte Lepic (via Alter-AI-TT list) &lt;Alter-AI-TT@simplelists.susmangodfrey.com&gt;
**Sent:** Tuesday, October 1, 2024 10:59 PM
**To:** Ranieri, Vera &lt;VRanieri@mofo.com&gt;; Alter-AI-TT@simplelists.susmangodfrey.com &lt;Alter-AI-TT@simplelists.susmangodfrey.com&gt;
**Cc:** OpenAICopyright &lt;OpenAICopyright@mofo.com&gt;; Latham OpenAI Copyright Team &lt;openaicopyrightlitigation.lwteam@lw.com&gt;; KVP-OAI &lt;KVPOAI@keker.com&gt;; nyclassactions_microsoft_ohs@orrick.com &lt;nyclassactions_microsoft_ohs@orrick.com&gt;; #Microsoft.NYClassAction.FDBR &lt;MicrosoftNYClassActionFDBR@faegredrinker.com&gt;
**Subject:** Re: Authors Guild v. OpenAI - follow up on meet and confer

EXTERNAL Email
Vera,

For the text messages of the relevant custodians, please explain what a "reasonable search" looks like in this context.

For task management and CRM software, including Notion, Asana, and Salesforce, and code repositories which your email notes OpenAI is investigating, please confirm that you are actively running the negotiated search terms on the texts of the relevant custodians.

For your custodians' Twitter/X (including DMs), Discord, WhatsApp, Signal, iMessage and Facebook/Facebook Messenger messages or posts, your 9/19 message appears to imply that these repositories may not be in "OpenAI's possession, custody, or control." This is troubling to learn, as "Courts have repeatedly found that employers have control over their employees and can be required to produce documents in their employees' possession." *Chevron Corp. v. Salazar*, 275 F.R.D. 437 (S.D.N.Y., 2011); *also Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 5408171, at *7 (S.D.N.Y. Sept. 27, 2016); *Smith v. Pergola 36 LLC*, 2022 WL 17832506, at *4 (S.D.N.Y. Dec. 21, 2022).  Please provide any authority suggesting that Cal. Labor Code 980 overcomes OpenAI's discovery obligations under federal law. We note that counsel for Plaintiffs have had extensive experience in federal discovery against California employers in the past 12 years since the passage of California Labor Law 980, and we are not

aware of any employer failing to disclose relevant messages on this basis. This is especially troubling given the extensive commentary provided from OpenAI employees' social media accounts on issues relevant to this case. Please confirm that you have directed your employees to preserve their social media accounts, posts, and DMs.

Kind regards,
Charlotte

_____
**Charlotte Lepic** | Susman Godfrey LLP
212-729-2064  (o) | 646-421-3356 (m)

---

**From:** Ranieri, Vera <VRanieri@mofo.com>
**Sent:** Thursday, September 19, 2024 10:43 AM
**To:** Charlotte Lepic <clepic@susmangodfrey.com>; Alter-AI-TT@simplelists.susmangodfrey.com <Alter-AI-TT@simplelists.susmangodfrey.com>
**Cc:** OpenAICopyright <OpenAICopyright@mofo.com>; Latham OpenAI Copyright Team <openaicopyrightlitigation.lwteam@lw.com>; KVP-OAI <KVPOAI@keker.com>; nyclassactions_microsoft_ohs@orrick.com <nyclassactions_microsoft_ohs@orrick.com>; #Microsoft.NYClassAction.FDBR <MicrosoftNYClassActionFDBR@faegredrinker.com>
**Subject:** RE: Authors Guild v. OpenAI - follow up on meet and confer

<mark>EXTERNAL Email</mark>
Hi Charlotte,

<mark>OpenAI has already confirmed that it has or will conduct a reasonable search of all repositories in its possession, custody, and control that are likely to contain responsive, discoverable information and the costs and burdens do not outweigh the relevancy (i.e. are discoverable pursuant to Rule 26). This seems like it should be sufficient confirmation.  As we noted, our investigation into where discoverable documents exist does not exclude any data repository per se.  For the avoidance of doubt and as a show of good faith, I can confirm our investigation includes "task management and CRM software (such as Notion, Asana, or Salesforce) and code repositories."  This statement isn't intended to exclude any other repositories but rather confirm that we're doing our diligence to investigate where we can find relevant, discoverable documents in line with Rule 26.</mark>

As to employee social media or other personal accounts, we're evaluating whether this information is in our possession, custody, or control and whether we can collect and/or review it.  We note that California Labor Code, section 980, specifically prevents OpenAI from inquiring into employee social media use other than in limited circumstances.  If you're aware of authority that suggests employee personal social media is in our possession, custody, or control notwithstanding or that we can or are obligated to collect it despite the Labor Code provision, we'd like to consider it, and please send it along.

Finally, we feel it's a bit of discovery churn to go around on these issues, and it's not clear to us what more you're asking for or why what we've stated is insufficient, and its devoting resources that could

likely be better spent actually tracking down documents and getting them produced.

Thanks,

Vera

---

**From:** Charlotte Lepic <CLepic@susmangodfrey.com>
**Sent:** Monday, September 16, 2024 10:39 AM
**To:** Ranieri, Vera <VRanieri@mofo.com>; Alter-AI-TT@simplelists.susmangodfrey.com
**Cc:** OpenAICopyright <OpenAICopyright@mofo.com>; Latham OpenAI Copyright Team <openaicopyrightlitigation.lwteam@lw.com>; KVP-OAI <KVPOAI@keker.com>
**Subject:** Re: Authors Guild v. OpenAI - follow up on meet and confer

External Email

---

Vera, my email was not inaccurate, as your August 11 email did not clarify whether you would search virtual data rooms, which was my question. Your email below still does not respond to that question.

Likewise, I correctly stated that OpenAI refused to "provide information about task management and CRM software (such as Notion, Asana, or Salesforce) and code repositories." I asked whether OpenAI would search those repositories. You said that OpenAI will search those repositories *if* you believe it has discoverable information. That does not answer my question.

Your email also does not respond to Craig's email of 9/13, also attached. Craig asked whether you are "collecting, at least, your custodians' Twitter/X (including DMs), Discord, WhatsApp, Signal, iMessage and Facebook/Facebook Messenger messages or posts to the extent OpenAI believes that these were used to communicate regarding any relevant matter as part of its 'investigation.'" This question is necessary because you have failed to clarify whether you consider those repositories to be within your "possession, custody, or control," or whether you consider that they have "relevant, discoverable information, that can be located after a reasonable search, and does not represent non-cumulative information and the burdens of production do not outweigh the costs." Please tell us whether you are collecting and searching these repositories.

If we do not know whether OpenAI is searching each of these repositories, our only choice is to move to compel on those repositories. If, in response to such a motion, OpenAI would disclose whether it was searching those repositories, we would expect OpenAI to provide that information now.

Kind regards,
Charlotte

_____

**Charlotte Lepic** | Susman Godfrey LLP
212-729-2064 (o) | 646-421-3356 (m)

---

**From:** Ranieri, Vera <VRanieri@mofo.com>
**Sent:** Monday, September 16, 2024 12:26 PM
**To:** Charlotte Lepic <clepic@susmangodfrey.com>; Alter-AI-TT@simplelists.susmangodfrey.com <Alter-AI-TT@simplelists.susmangodfrey.com>
**Cc:** OpenAICopyright <OpenAICopyright@mofo.com>; Latham OpenAI Copyright Team <openaicopyrightlitigation.lwteam@lw.com>; KVP-OAI <KVPOAI@keker.com>
**Subject:** RE: Authors Guild v. OpenAI - follow up on meet and confer

<mark>EXTERNAL Email</mark>

Charlotte,

Following up on this, your email is inaccurate. We responded to your request for information about OpenAI's data repositories and collection process weeks ago. I note that your email below does not include my email, sent on August 11, where we provided this information. I have attached it here again for your convenience.

Specifically, as we stated, <mark>if there is a repository that exists that we believe has relevant, discoverable information, that can be located after a reasonable search, and does not represent non-cumulative information and the burdens of production do not outweigh the costs (i.e. the search of it is proportional under Rule 26) and OpenAI has agreed to produce that information, we will search it. That includes the repositories you mention below.</mark>

This email also provides a response to Craig's email, sent on Friday September 13, regarding messaging services. Our response equally applies to any repository in OpenAI's possession, custody, or control.

Thank you,

Vera

---

**From:** Charlotte Lepic <CLepic@susmangodfrey.com>
**Sent:** Thursday, August 29, 2024 3:48 PM
**To:** Ranieri, Vera <VRanieri@mofo.com>; Alter-AI-TT@simplelists.susmangodfrey.com
**Cc:** OpenAICopyright <OpenAICopyright@mofo.com>; Latham OpenAI Copyright Team <openaicopyrightlitigation.lwteam@lw.com>; KVP-OAI <KVPOAI@keker.com>
**Subject:** Re: Authors Guild v. OpenAI - follow up on meet and confer

<mark>External Email</mark>

Counsel,

As referenced in your email below and my emails of 7/20, we discussed in our meet and confer on 7/16 whether OpenAI would agree to search virtual data rooms shared with investors. We have not received a response. We also discussed whether OpenAI would provide information about task management and CRM software (such as Notion, Asana, or Salesforce) and code repositories, so that the parties could discuss whether OpenAI should search those repositories. You categorically refused to provide such information.

By Thursday Sep. 5, please confirm whether you have searched or intend to search those repositories.

Kind regards,
Charlotte

_____
**Charlotte Lepic** | Susman Godfrey LLP
212-729-2064  (o) | 646-421-3356 (m)

---

**From:** Ranieri, Vera <VRanieri@mofo.com>
**Sent:** Friday, July 26, 2024 7:49 PM
**To:** Alter-AI-TT@simplelists.susmangodfrey.com <Alter-AI-TT@simplelists.susmangodfrey.com>; Charlotte Lepic <CLepic@susmangodfrey.com>
**Cc:** OpenAICopyright <OpenAICopyright@mofo.com>; Latham OpenAI Copyright Team <openaicopyrightlitigation.lwteam@lw.com>; KVP-OAI <KVPOAI@keker.com>
**Subject:** Authors Guild v. OpenAI - follow up on meet and confer

EXTERNAL Email
Charlotte,

This email is in response to the two emails you sent on Saturday, July 20.

As an initial matter, we disagree with several of the characterizations you made in your emails about the parties' discussion during the meet and confers.  As just one example, your email of Saturday July 20 at 7:27 pm point 2 did not accurately reflect the parties discussions.  Your email states we did not explain why we believed the proposal of new terms was out of line with our proposed ESI order. We did so.  We explained how nothing in our proposal allows for the addition of new terms without justification.  Your email also improperly ignores that Plaintiffs previously recognized that proposing terms for all RFPs was not appropriate nor required, and there was no expectation or need for Plaintiffs to "ideate search terms in the first instance."  We ask that you accurately reflect the parties' discussions going forward.

Setting aside your emails' inaccuracies, we've provided our responses on the discovery issues as we understood them below. To the extent plaintiffs would like to meet and confer on any issue, we can

tentatively agree to be available for a meet and confer for Tuesday, July 30 during one of the following times: 11:30am – 2pm ET, 3pm – 3:30pm ET, 4:30pm – 6pm ET, with the tentativeness being driven by whether we can collect certain necessary information in advance.

1. **Proposal for Negotiating Search Terms and Custodians.**  OpenAI agrees to add the following custodians:
   1. Henrique Ponde de Oliveira Pinto
   2. Lilian Weng
   3. Nick Turley
   4. Vinnie Monaco

   We do not agree at this time to adding additional custodians beyond those above.

   We reiterate that it does not make sense to consider Plaintiffs' proposed search terms until we can have a holistic discussion regarding all custodians and/or that issue has been settled. We are in the process of collecting the four custodians listed above's documents and running search terms for a hit report. Once that process is complete (which we expect to be done in the next few days), we will provide a search term hit count for current terms and we can meet and confer to have a holistic discussion regarding the burden of Plaintiffs' proposed search terms as applied to all 16 custodians' documents.   On that meet and confer, please be prepared to explain the relevancy of each term proposed by Plaintiff and what RFP it relates to.

2. **Additional Custodians Requested by Plaintiffs.**  Plaintiffs have failed to demonstrate good cause to add additional custodians, including because Plaintiffs requests are burdensome and duplicative over current custodians, and because there is no demonstrated need for those custodians' documents that does not represent an unreasonable burden on OpenAI, especially in light of documents and custodians already produced or as agreed to by OpenAI. If you would like to meet and confer on the issue, we can provide high-level overviews of our bases for not adding Plaintiffs' additional requested custodians. We note that the explanations Plaintiffs have provided to date regarding the need for documents from these custodians are inadequate.  Rather than explaining why Plaintiffs believe any custodian has unique, non-duplicative information and why the request is proportional to the needs of the case in light of documents already in Plaintiffs' possession or expected to be produced via current search terms/custodians, Plaintiffs appear to take the position that merely because a custodian might have relevant documents, they should be added as a custodian.  This is not an adequate basis for imposing burdensome discovery on OpenAI.

   In addition, we note that if Plaintiffs insist on adding additional custodians, this insistence will impact the parties discussions surrounding current custodians and search terms.  On any meet and confer, please be prepared to discuss how to account for the burden of current terms and custodians informs your request for additional custodians, and how you intend to accommodate that fact.

   Finally, we do not believe it is relevant to provide information on (a) whether we have collected documents from proposed custodians yet or (b) the relevant accounts of these custodians. This is a request for discovery on discovery, which is not appropriate.

3. **Custodian-Specific Slack Message Search.**  We've communicated with our vendor, who reviewed the information you provided and has explained to us that you appear to misunderstand the data that Slack makes available and in what form.  Additionally, we have been told that it would be extremely difficult and burdensome to run custodian-specific searches across Slack messages.  We also don't believe that searching for documents in this manner would return a materially different set of documents than those we plan to or have already reviewed.  If you have additional questions, we can discuss on a meet and confer.

4. **Burden of Search Terms.**  While we're not obligated to disclose this information, as a gesture of good faith we can confirm we've reviewed approximately 215K documents to date using both terms agreed-upon by the parties and through other search and review methods.  We continue to believe that your additional search terms will impose an undue burden, particularly given the addition of four custodians.  We are amenable to further meeting and conferring on the proposed search terms and associated hit counts, but would like Plaintiffs to provide adequate justification for their belated proposal of terms.  Specifically, please be prepared to explain what RFPs those terms relate to, and why Plaintiffs could not propose those terms earlier.

5. **Hit Counts.**  The parties have agreed to provide custodian-by-custodian and unique hit counts.  We have begun to collect that information and will provide it as soon as we can.  Please provide your equivalent information as soon as possible.

We are still waiting to hear from you on your search for relevant, responsive documents from president@authorsguild.com, president@authorsguild.com, mlang@authorsguild.com and dpreston@authorsguild.com.  You indicated that you would provide an update this week.  Please let us know when to expect it.

**Repository requests**

In light of your explanations of why you need this information on our last meet and confer, it is clear that your repository requests are an improper attempt to serve discovery on discovery.  We decline that request for information with respect to all items.  In addition, your email included several inaccuracies as to what the parties discussed on the meet and confer.  We've clarified our positions on some requests below, and provide additional reasons for declining your requests with respect to specific items below.  These reasons are not exhaustive.

**Item 1.**  We did not agree to provide this information to you, contrary to the implication you state in your July 20 at 7:29pm PT email.  Instead, we stated on the call that we would consider your request in light of your stated reasons for its relevance.  We have considered it.  Our dataset storage has no audit functionality that would allow us to feasibly generate the information that you've requested.

**Item 2.**  See above.  Similarly, we did not agree to provide this information.  Instead, we agreed to consider the basis you provided for how this is relevant.

**Item 6.**  This request is overly broad.  Plaintiffs can serve targeted discovery for documents they

view as relevant and OpenAI will respond accordingly.

**Item 7.**   We confirm that if an employee is on legal hold, their materials are still retained when they depart the company.

**Item 9.**  Our position remains the same as was stated in our May 14 email.  We do not understand what you mean by retention policies "implemented programmatically, rather than documented in writing" and we will not be producing that information, at least because we do not understand it.

Thanks,

**Vera Ranieri**
Of Counsel | Morrison & Foerster LLP
425 Market St. | San Francisco, CA 94105
**P:** +1 (415) 268-6025
mofo.com | LinkedIn | Twitter

============================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.
.

============================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.
.

============================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.
.
To unsubscribe from this list please go to https://simplelists.susmangodfrey.com/confirm/?u=SntCTGorhR74gzVq8zpmlA3u0mONDWvJ

============================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.

.

# EXHIBIT F

| | |
|---|---|
| **From:** | Charlotte Lepic (via Alter-AI-TT list) |
| **To:** | Jordan Connors; Craig Smyser; nyclassactions_microsoft_ohs@orrick.com; Alter-AI-TT@simplelists.susmangodfrey.com; MicrosoftNYClassActionFDBR@faegredrinker.com; Arbatman, Leeza |
| **Cc:** | Dupree, Andrea; Geman, Rachel; Dozier, Wesley; Stoler, Reilly T.; ssholder@cdas.com; ccole@cdas.com; OpenAICopyright; Lanham, John R.; Christopher S. Sun; Andrew S. Bruns; Wood, Emily Claire; KVPOAI@keker.com; openaicopyrightlitigation.lwteam@lw.com; Newman, Zak |
| **Subject:** | Re: SERVICE: Authors Guild v. OpenAI, Inc. - SDNY No. 23-08292 & Alter v. OpenAI - SDNY No. 23-10211 |
| **Date:** | Monday, October 14, 2024 3:22:03 PM |
| **Attachments:** | image001.png image002.png image003.png image004.png |

**EXTERNAL Email**

Thanks, Leeza. A few reactions:

As an initial matter, we reiterate that your below response still fails to provide a position regarding RFPs 90-94 and the "which entities" issue more generally. Almost two weeks have elapsed since Jordan's email on this subject. Please provide a response as soon as possible.

RFP 37: We can agree that we will produce any such documents that are non-privileged in our possession, custody or control located after a reasonable search. Specifically, in addition to our existing search protocol, for each Bulletin article attributed to an AG employee or named plaintiff, we will run the following term: <"[title]" AND ("generative ai" OR "gen ai" OR "genai" OR LLM OR "large language model" OR openai)>. Please confirm that OpenAI will produce in response to this request.

RFP 98: Our recollection differs. Our notes suggest that it OpenAI that was going to propose a search protocol, including for the individuals who are not currently custodians, as you are of course in the best position to do. Since OpenAI has once again failed to propose such a protocol, we propose the following:

1. For individuals who are or become custodians, in addition to the search terms already agreed on, OpenAI will run the following terms:
   a. (copyright* OR copywrite OR copywrited OR copyrights OR copyleft* OR safety OR job OR danger*) AND [[the names of each of the below individuals]]
   b. "right to warn"
2. For individuals who are not custodians, OpenAI will search the following terms:
   a. "fair use"
   b. ((creat* OR destr* OR eliminat* OR los*) w/5 job*) w/40 (author* OR artist* OR creativ* OR writ*)
   c. ((licens* OR pay OR paid OR steal*) w/15 ((work* w/3 copyright*) OR book))
   d. copywrite OR copywrites OR copyleft* OR copywrited
   e. Pirat* OR pirac*
   f. (Copyright* w/10 (concern* OR issue* OR subject OR book* OR material* OR work* OR text* OR audio OR data))
   g. "right to warn"
3. OpenAI will ask all these individuals about their communications regarding safety related issues, and based on those conversations will compile other search terms for this.
4. OpenAI will ask these individuals whether and how they communicated about safety-related issues, including whether there were designated group chats or Slack channels, and will collect and search those.
5. OpenAI will produce drafts of the public statement made at the following link: https://righttowarn.ai/ that are in their possession, custody, or control, and will search for internal communications relating to that statement.

Thanks,
Charlotte

_____

**Charlotte Lepic** | Susman Godfrey LLP
212-729-2064  (o) | 646-421-3356 (m)

_____

**From:** Arbatman, Leeza (via Alter-AI-TT list) <Alter-AI-TT@simplelists.susmangodfrey.com>
**Sent:** Friday, October 11, 2024 12:01 PM
**To:** Jordan Connors <jconnors@SusmanGodfrey.com>; Craig Smyser <CSmyser@susmangodfrey.com>;
nyclassactions_microsoft_ohs@orrick.com <nyclassactions_microsoft_ohs@orrick.com>; Alter-AI-
TT@simplelists.susmangodfrey.com <Alter-AI-TT@simplelists.susmangodfrey.com>;
MicrosoftNYClassActionFDBR@faegredrinker.com <MicrosoftNYClassActionFDBR@faegredrinker.com>
**Cc:** Dupree, Andrea <ADupree@mofo.com>; Geman, Rachel <rgeman@lchb.com>; Dozier, Wesley
<wdozier@lchb.com>; Stoler, Reilly T. <rstoler@lchb.com>; ssholder@cdas.com <ssholder@cdas.com>;
ccole@cdas.com <ccole@cdas.com>; OpenAICopyright <OpenAICopyright@mofo.com>; Lanham, John R.
<JLanham@mofo.com>; Christopher S. Sun <CSun@keker.com>; Andrew S. Bruns <ABruns@keker.com>; Wood,
Emily Claire <EWood@mofo.com>; KVPOAI@keker.com <KVPOAI@keker.com>;
OpenAIcopyrightlitigation.lwteam@lw.com <openaicopyrightlitigation.lwteam@lw.com>; Newman, Zak
<ZNewman@mofo.com>
**Subject:** RE: SERVICE: Authors Guild v. OpenAI, Inc. - SDNY No. 23-08292 & Alter v. OpenAI - SDNY No. 23-10211

EXTERNAL Email
Jordan,

Please find our counterproposals to Plaintiffs' RFPs No. 29, 34, 35, 37, 45, 52, 54, and 98 below.  Once you've
had a chance to review, let us know when you would like to meet and confer to discuss live.

**Data access agreements.**  In **RFP 29**, Plaintiffs seek all documents "sufficient to show any deals, contracts,
[and] agreements . . . concerning the licensing or purchase of data . . . to train ChatGPT."  The parties have
ongoing discussions about productions of data access agreements in a separate thread and we think it makes
sense to consolidate the discussion there.

**Retention agreements.**  In **RFPs 34 and 35,** Plaintiffs seek retention agreements between OpenAI and any law
firms (without any temporal limitation), as well as retention agreements with MoFo and Latham between 2016
and 2022.  Plaintiffs' latest email confirms that the parties are still investigating the facts that underlie the
purported relevance for this request, i.e., alleged spoliation.  Accordingly, this issue is not yet ripe.  We are
happy discussing what productions, if any, make sense after we've resolved those underlying issues.

**Documents related to USPTO Comment on IP for AI innovation.**  In **RFP 37**, Plaintiffs seek all documents
relating to the preparation of the comment OpenAI submitted in response to the USPTO's "request for
comments on intellectual property protection for [AI] innovation," including documents provided to those who
drafted the comment.   As previously stated, OpenAI will conduct a reasonable search for non-privileged
documents in its possession, custody, or control that were relied upon in preparing the comment, provided that
Plaintiffs agree to a reciprocal production.  During the meet and confer, Plaintiffs sought clarity about the
parameters of the reciprocal production.  OpenAI refers Plaintiffs to RFP 41, which it served on Plaintiffs on
March 22, 2024.  OpenAI requested "[a]ll documents and communications relating to any articles (including any
notes, drafts, and final versions of articles) published in The Authors Guild Bulletin relating to Generative AI."
Plaintiffs limited their response to "final version of articles published in the Authors Guild Bulletin relating to
Generative AI."  Accordingly, OpenAI's compromise offer is contingent on Plaintiffs similarly producing
documents related to any articles they published in the AG Bulletin relating to Generative AI.

**Conversion to for-profit entity.**  In **RFP 45**, Plaintiffs seek all documents concerning OpenAI's "potential or actual conversion to a for-profit entity."  This request is overly burdensome, duplicative, and seeks irrelevant information, but to compromise, OpenAI will produce documents that address (a) OpenAI's decision to form a for-profit entity, (b) OpenAI's efforts to secure investments or generate revenue, and (c) OpenAI's GPT products or OpenAI's GPT LLMs.  OpenAI also flags for Plaintiffs that it has already agreed to produce documents about how OpenAI earns profits (e.g., RFP 49: We will conduct a reasonable search for relevant and non-privileged documents in our possession, custody, and control discussing or describing (i) how ChatGPT and relevant models can be or are used for OpenAI commercial uses and applications; and (ii) OpenAI's decision to integrate ChatGPT or relevant models in OpenAI's commercial products.)

**Outputs related to Plaintiffs' works.**  In **RFP 52**, Plaintiffs seek all documents sufficient "to show the output of any [LLMs] created by [OpenAI] related to Plaintiffs' works."  As OpenAI explained in the meet and confer on 9/30, this request poses a question of technical feasibility.  OpenAI will follow up with Plaintiffs as it continues to investigate.

**ChatGPT terms of use.**  In **RFP 54**, Plaintiffs seek all documents concerning OpenAI's decision to include, modify, or remove specific language from ChatGPT's terms and conditions asserting that OpenAI should log the privileged documents.  Plaintiffs assert that this RFP seeks relevant information because it concerns "an additional way to gather Copyrighted works for use in training data."  But OpenAI has already offered to conduct a reasonable search for non-privileged documents in its possession, custody, and control discussing how and why OpenAI curates different types of data to train OpenAI's relevant models.  To reiterate, in performing that search, if OpenAI encounters non-privileged documents discussing the use of the identified provision to gather training data, it will produce them. But asking OpenAI to conduct a search specifically related to why it included, removed, or modified provisions of its terms of service would necessarily implicate predominantly privileged documents, making such a search disproportionate and unduly burdensome.  Accordingly, OpenAI will not conduct a separate search for documents related to the terms of service.

**Statements made about copyrighted material and risks to creators.**  In **RFP 98**, Plaintiffs seek all documents relating to statements made or concerns raised by specific OpenAI personnel about OpenAI's use of purportedly copyrighted material to train its LLMs, its alleged lack of sufficient internal controls with regards to the acquisition of training materials, and the general harm or risk to content creators posed by LLMs.  In the last meet and confer, Plaintiffs suggested they would agree to propose search terms to run on the existing custodians' files to identify the information they seek in response to this RFP.  OpenAI is waiting for Plaintiffs' proposal of these terms.

**Leeza Arbatman**
Associate
LArbatman@mofo.com
T +1 (925) 766-6920



---

**From:** Arbatman, Leeza
**Sent:** Tuesday, October 8, 2024 3:07 PM
**To:** 'Jordan Connors' <jconnors@SusmanGodfrey.com>; Craig Smyser <CSmyser@susmangodfrey.com>; nyclassactions_microsoft_ohs@orrick.com; Alter-AI-TT@simplelists.susmangodfrey.com; MicrosoftNYClassActionFDBR@faegredrinker.com
**Cc:** Dupree, Andrea <ADupree@mofo.com>; Geman, Rachel <rgeman@lchb.com>; Dozier, Wesley <wdozier@lchb.com>; Stoler, Reilly T. <rstoler@lchb.com>; ssholder@cdas.com; ccole@cdas.com;

OpenAICopyright <OpenAICopyright@mofo.com>; Lanham, John R. <JLanham@mofo.com>; Christopher S. Sun <CSun@keker.com>; Andrew S. Bruns <ABruns@keker.com>; Wood, Emily Claire <EWood@mofo.com>; KVPOAI@keker.com; OpenAIcopyrightlitigation.lwteam@lw.com
**Subject:** RE: SERVICE: Authors Guild v. OpenAI, Inc. - SDNY No. 23-08292 & Alter v. OpenAI - SDNY No. 23-10211

Thanks, Jordan.  We are working on our proposals to the pending RFPs and will get back to you shortly.

**Leeza Arbatman**
Associate
LArbatman@mofo.com
T +1 (925) 766-6920



**From:** Jordan Connors <jconnors@SusmanGodfrey.com>
**Sent:** Wednesday, October 2, 2024 5:00 PM
**To:** Arbatman, Leeza <LArbatman@mofo.com>; Craig Smyser <CSmyser@susmangodfrey.com>; nyclassactions_microsoft_ohs@orrick.com; Alter-AI-TT@simplelists.susmangodfrey.com; MicrosoftNYClassActionFDBR@faegredrinker.com
**Cc:** Dupree, Andrea <ADupree@mofo.com>; Geman, Rachel <rgeman@lchb.com>; Dozier, Wesley <wdozier@lchb.com>; Stoler, Reilly T. <rstoler@lchb.com>; ssholder@cdas.com; ccole@cdas.com; OpenAICopyright <OpenAICopyright@mofo.com>; Lanham, John R. <JLanham@mofo.com>; Christopher S. Sun <CSun@keker.com>; Andrew S. Bruns <ABruns@keker.com>; Wood, Emily Claire <EWood@mofo.com>; KVPOAI@keker.com; OpenAIcopyrightlitigation.lwteam@lw.com
**Subject:** Re: SERVICE: Authors Guild v. OpenAI, Inc. - SDNY No. 23-08292 & Alter v. OpenAI - SDNY No. 23-10211
**Importance:** High

<mark>External Email</mark>

Counsel, thank you for conferring with us on Monday regarding some of OpenAI's responses to our third and fourth sets of document requests. Please see below our takeaways from the call. We encourage you to correct anything that we have characterized inaccurately or that might need clarification.

We look forward to prompt production of the documents you agreed to search for and produce that are responsive to **RFP Nos. 36, 44, 46, 47, 48, 49, 57, 58, 66**.

**RFP 29**: You noted that this conversation is ongoing and has proceeded in a separate thread. You noted the agreement Leeza referenced below on September 28, 2024, and you agreed that, for any of the responsive "data access agreements and term sheets," by October 11 either a third party will file a motion to intervene or for a protective order or else OpenAI will produce the agreement or term sheet. Please note that Plaintiffs sent an email on this subject on September 25 and OpenAI has still not responded. Please provide a response to our proposal as soon as possible.

**RFP 34-35**: We noted that, given that OpenAI has not confirmed that the book-related

datasets it has produced are Books1 and Books2, the spoliation issue, and therefore this request, is still live. OpenAI agreed to consider whether it would produce redacted retention agreements showing the date and scope of retention, and redacting any privileged material. Please let us know your position by Tuesday, October 8. As I stated on the call, I will let you know in advance if and when we decide to move to compel on this issue.

**RFP 37**: You indicated in your email that OpenAI would be willing to produce the requested documents if plaintiffs made a reciprocal production. We asked you on the call to explain what you meant by that, and to point to any requests that relate to this issue or to any particular documents or things that we have refused to produce related to this issue. Please let us know by Tuesday, October 8.

**RFP 45**: We asked OpenAI to shed light on the volume of responsive documents to this request or to articulate any particular burden associated with producing them. We also noted that OpenAI's proposed limitation, depending on how it is applied to OpenAI's search and collection, might exclude relevant documents that speak generally to the conversion of OpenAI to a for-profit entity, but do not mention a GPT service by name. OpenAI explained that our formulation might include documents related to tax treatment that have no relevance to this dispute. OpenAI asked us to narrow the request.

We propose the following language to narrow the request, in response to the concern you expressed during our meet and confer:

> All Documents Concerning or Relating to Your potential or actual conversion to a for-profit entity, which also discuss or reference (1) a GPT service or (2) the advantages, disadvantages, benefits, strategy, implications, or business projections associated with that potential or actual conversion. Additionally, this request excludes Documents directed solely to the tax implications of Your conversion to a for-profit entity.

**RFP 46**: You offered in an email below to conduct a reasonable search for documents "discussing whether and to what extent the relevant models reproduce, distribute, display, or create derivative works of copyrighted works." We asked whether your formulation of the request would include documents that discuss whether the use of copyrighted materials to train OpenAI LLMs complies with copyright law. You confirmed that the search you would conduct would include those documents as well. We look forward to receiving this production promptly.

**RFP 51**: You indicated that OpenAI is "still working on" a position with respect to RFP

No. 51. You were unable to give us a date when we could expect to hear OpenAI's position, but you noted that you are aware that the parties are working against the backdrop of the Court's deadline to file an agenda for the October 30 conference.

**RFP 52**: OpenAI asked us before the call to explain what we mean by outputs related to the Plaintiff works. We explained, as we had done on a previous meet and confer and in the email strong below, that we would like OpenAI to run author and class work names (e.g., as set forth by the "class work" terms in the parties' custodial search term proposal) against retained LLM prompts and outputs. You responded that you are still investigating the technical feasibility of this request. Please let us know your position by Tuesday October 8.

**RFP 54**: You indicated that OpenAI believed this request pertained to a legal issue and that any responsive document about changing the terms and conditions would be privileged. We elaborated on the relevance of OpenAI's terms and conditions ("ToC") and explained that it appeared OpenAI actively changed the ToC to add an additional way to gather Copyrighted works for use in training data, which is relevant to Plaintiffs' claims. We explained that because there appear to be business reasons behind the change, it is not clear that the requested documents would be privileged. You said that you would consider this and let us know whether you would search for and produce documents in response to this request. Please let us know by October 6.

**RFP 90-94**: You indicated that OpenAI would prefer not to produce any documents in response to these requests and asserted that only OpenAI OpCo is relevant to this lawsuit. You indicated that OpenAI would be willing to submit a declaration to that effect in lieu of producing documents. We explained that a declaration is not acceptable to Plaintiffs and that OpenAI should satisfy its discovery obligations with respect to these relevant requests, and we noted that, in a prior meet and confer, OpenAI's counsel indicated that it would speak to the client about what documents it would be willing to produce in response to these requests.

As far as the relevance of these requests, in brief, they seek basic discovery concerning Plaintiffs' claims against seven related entities that are all defendants in this lawsuit. The operative complaint identifies these entities and alleges facts as to each of them, which, if established, support claims for copyright infringement. Dkt No. 47, ¶¶ 49-58, 412-429. Many of those allegations regard control and management of OpenAI or of OpenAI OpCo LLC by these other OpenAI Entities, together with knowledge of the infringing activity and financial interests in that same activity. See, e.g., Id. at 420, 421, 428. RFP Nos. 90-94 are targeted at documents and things that will support those allegations, such as transfers of assets and liabilities between and among these OpenAI entities (RFP Nos. 90

and 91), operational documents establishing a control structure among them, as alleged in the Complaint (RFP No. 94), and financial statements establishing the financial interests of each of these entities in the infringement alleged in the Complaint (RFP No. 93).

We assert these requests seek basic, highly relevant discovery that the Court will order OpenAI to produce if you force us to file a motion to compel.

If you have evidence that any of these entities have been dissolved and never had control, management, ownership, or financial interests in the entities that have used or trained the LLMs at issue, please send us that evidence without further delay.

Kind regards,
Jordan

---

Jordan W Connors
Partner | SUSMAN GODFREY LLP
(O) 206-516-3814 | (C) 646-413-0743 | JConnors@SusmanGodfrey.com

---

**From:** Arbatman, Leeza (via Alter-AI-TT list) <Alter-AI-TT@simplelists.susmangodfrey.com>
**Date:** Saturday, September 28, 2024 at 2:49 PM
**To:** Craig Smyser <CSmyser@susmangodfrey.com>, nyclassactions_microsoft_ohs@orrick.com <nyclassactions_microsoft_ohs@orrick.com>, Alter-AI-TT@simplelists.susmangodfrey.com <Alter-AI-TT@simplelists.susmangodfrey.com>, MicrosoftNYClassActionFDBR@faegredrinker.com <MicrosoftNYClassActionFDBR@faegredrinker.com>
**Cc:** Dupree, Andrea <ADupree@mofo.com>, Geman, Rachel <rgeman@lchb.com>, Dozier, Wesley <wdozier@lchb.com>, Stoler, Reilly T. <rstoler@lchb.com>, ssholder@cdas.com <ssholder@cdas.com>, ccole@cdas.com <ccole@cdas.com>, OpenAICopyright <OpenAICopyright@mofo.com>, Lanham, John R. <JLanham@mofo.com>, Christopher S. Sun <CSun@keker.com>, Andrew S. Bruns <ABruns@keker.com>, Wood, Emily Claire <EWood@mofo.com>, KVPOAI@keker.com <KVPOAI@keker.com>, OpenAIcopyrightlitigation.lwteam@lw.com <openaicopyrightlitigation.lwteam@lw.com>
**Subject:** RE: SERVICE: Authors Guild v. OpenAI, Inc. - SDNY No. 23-08292 & Alter v. OpenAI - SDNY No. 23-10211

EXTERNAL Email
Hi Craig,

As promised, here is a summary of our positions on pending RFPs in Plaintiffs' third set. We look forward to discussing these proposals with you during the meet and confer on Monday (9/30).

**Data access agreements.** In **RFP 29**, Plaintiffs seek all documents "sufficient to show any deals, contracts, [and] agreements . . . concerning the licensing or purchase of data . . . to train ChatGPT." As OpenAI has previously stated, it has already produced certain data access agreements and term sheets. It is in the process of providing