**E-FILED**

United States District Court
Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Avenue
McKinleyville, CA, 95519

Re:  *In re OpenAI ChatGPT Litigation*; Master File No. 3:23-cv-3223-AMO

Dear Judge Illman:

Pursuant to this Court's standing order, the parties hereby submit this joint discovery letter brief concerning the Plaintiffs' request for additional custodians under the parties' protocol for the Discovery of Electronically Stored Information ("ESI"). Counsel for the parties met and conferred yet they were unable to resolve their dispute. The Court ordered that this submission could be up to seven pages.

**Plaintiffs' Statement**

Plaintiffs respectfully request an order requiring OpenAI to designate the eleven additional custodians listed below, six of whom are the subject of an analogous request in the parallel actions pending in the Southern District of New York. The parties met and conferred but could not reach a mutually agreeable compromise.[1]

The parties have briefed the applicable standard previously. *See* ECF No. 184 citing *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2021 WL 10282213 (N.D. Cal. Nov. 14, 2021) (providing helpful guidance on the issue of whether requested custodians were "likely to possess" categories of relevant information not available through other data sources); *Kadrey et al. v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (TSH), ECF No. 212 (N.D. Cal. Oct. 4, 2024).

I.  **Custodians Who are the Subject of an Analogous Motion in *Authors Guild***

Custodians Shantanu Jain, Jong Wook Kim, Andrew Mayne, Cullen O'Keefe, Ilya Suskever, and Qiming Yuan are proper custodians possessing relevant information, as demonstrated in a similar motion filed in the substantially similar *Authors Guild* Action. *See Authors Guild, et al., v. OpenAI, Inc., et al.*, No. 23-CV-8292, ECF No. 235 (S.D.N.Y.) ("*Authors Guild* Action"). Adding these custodians here would also be consistent with this Court's order directing the parties to "explore every avenue through which the discovery process (and depositions in particular) in these cases may be streamlined and made efficient." ECF No. 144 at 3. Indeed, Defendants have indicated they agree to cross-produce documents from the *Authors Guild* Action. Granting the motion here would enhance the parties' ability to coordinate and prepare for depositions in all the pending actions without additional delay. Indeed, Plaintiffs recently offered to withdraw their motion with respect to these six custodians if Defendants would agree to add any custodians added in the *Authors Guild* Action and search for responsive documents from their custodial files. Defendants rejected this common sense efficient approach, all the while insisting on discovery coordination.

Defendants criticize Plaintiffs for raising the instant motion after Plaintiffs sought relief with respect to two custodians of the twenty-four *initial* custodians. Defendants' argument lacks merit for multiple reasons. First, the Court expressly permitted the phased approach that Plaintiffs follow here. ECF No. 166 at 2 ("[T]o the extent that Plaintiffs can identify any number of additional custodians (***not limited to 5***) that Plaintiffs can persuasively argue to possess non-cumulative, unique documents or information that would justify enlarging the list of custodians, the undersigned will hear those arguments ***through future filings*** of the Parties using the joint letter-brief process") (Emphasis added). As the Court contemplated, there may be follow-on requests after Plaintiffs had an opportunity to digest and analyze the initial document productions in this case. Second, Defendants' timeliness argument is puzzling because Plaintiffs make this motion while Defendants are still completing their document productions, and Defendants continue to resist Plaintiffs' efforts to begin depositions. N. Goldberg email to H. Benon (Nov. 15, 2024) (describing Plaintiffs' inquiry regarding depositions in November as "premature and unreasonable."). Third, Defendants also say this motion is "too early" because the *Authors Guild*

---

[1] Plaintiffs wrote to Defendants with two separate compromise offers, which would have resolved this dispute for eight of the eleven custodians. Defendants rejected both offers.

Court has not yet ruled on the analogous motion for these custodians. Regardless of Defendants' evolving and inconsistent positions, the record developed to date demonstrates that each of these custodians possess unique, non-duplicative information sufficient to satisfy the applicable standard for additional custodians.

**Shantanu Jain** is a member of OpenAI's technical staff who has worked on ▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, OPCO_NDCAL_0045556 (Jain ▮▮▮); OPCO_NDCAL_0045336 (Jain: ▮▮▮); OPCO_NDCAL_0001197 (Jain sharing ▮▮▮). That Mr. Jain has prepared these ▮▮▮ with his colleagues suggests he likely maintains unique, non-duplicative information in his custodial file, including ▮▮▮ Defendants have also produced documents demonstrating that Jain has had relevant communications with non-custodian peers. OPCO_NDCAL_0856565 (referring to a separate conversation between Jain and non-custodian Bianca Martin about Martin's work ▮▮▮).

**Jong Wook Kim** played a central role in locating sources of training data, ▮▮▮. *See, e.g.*, OPCO_NDCAL_0065405. Mr. Kim was on Slack channels with non-custodian David A. Mely, which communications refer to separate conversation between Kim and Mely ▮▮▮ OPCO_NDCAL_0046065; s*ee also* OPCO_NDCAL_0856587 (referencing conversations with other non-custodians regarding ▮▮▮).

**Andrew Mayne**: was OpenAI's "Science Communicator," a unique role within the company. https://andrewmayne.com/ ("Andrew was the Science Communicator for OpenAI and their first prompt engineer."). He is no longer with the company. Mr. Mayne was involved in discussions ▮▮▮ OPCO_NDCAL_0068385. The documents involving Mr. Mayne provide that he possessed in his files, and could supply to another colleague (a current custodian), ▮▮▮ OPCO_NDCAL_0141173. That Mr. Mayne possessed relevant information that was not in the possession of a current custodian demonstrates that he possesses unique, nonduplicative information. The facts, on their face, suggest the information is also relevant to Plaintiffs' claims.

**Cullen O'Keefe**: Prior to leaving OpenAI, Mr. O'Keefe appears to have focused on issues involving legal and ethical issues regarding corporate governance. His resume, published online through his personal website, provides he "[l]ed various internal efforts to improve emphasis on and adherence to corporate values," and "[h]elped develop internal compliance programs." https://shorturl.at/6lwWo. In particular, Mr. O'Keefe drafted ▮▮▮

███████████████████ *See* OPCO_NDCAL_0000940 (citing extensively to communications with employees as authority, including communications with non-custodians).

**Ilya Sutskever** is co-founder, former Chief Scientist, and former co-lead of the superalignment team at OpenAI. The documents reveal that he regularly communicates with others who are not document custodians via personal messages on disputed issues central to Plaintiffs' direct copyright infringement claim. *See, e.g.*, OPCO_NDCAL_0001138 ██████████████████████████████████████████████████████████████████). Additionally, Mr. Sutskever personally exchanged messages with non-custodians Nitish Keskar and Bowen Baker on the topics of ████████████████████████████████████████████████████████████████████████████████████████████ *See e.g.*, OPCO_NDCAL_0001193; OPCO_NDCAL_0855123. Mr. Sutskever ████████████████████████████████████████████████████ *See e.g.*, OPCO_NDCAL_0855571 ("████████████████████████████████████████████").

**Qiming Yuan** played a central role in the acquisition of training data, ██████, and the processing of such data for use as training data. ██████████████████████████████ OPCO_NDCAL_0003208. Mr. Yuan was responsible for ████████████████████████████████████████████████████ OPCO_NDCAL_0638295. Other documents show Mr. Yuan discussing ████████████████████████████████████████████████████ that likely would exist in his custodial files, and not in the files of current custodians. OPCO_NDCAL_0001260.

## II.     Other Additional Custodians

**Katie Mayer** manages Defendants's relationship with Microsoft, a non-party, including ██████████████████████████████████████████. Many of the crucial decisions regarding ████████████████████████████████████ which she organized and administered. *See, e.g.*, OPCO_NDCAL_0001038. OpenAI's documents reveal many instances in which Ms. Mayer regularly communicates with Microsoft about ████████████████████████████████████ (relevant to the commerciality prong of the fair use analysis). *See, e.g.*, OPCO_NDCAL_0067338; OPCO_NDCAL_0067353; OPCO_NDCAL_0780319; OPCO_NDCAL_0758917 (Conversations about ████████); *See also* OPCO_NDCAL_0640067 (Mayer noting her intent to reach out to non-custodian Kristen Laird, a member of the Responsible AI Program at third-party Microsoft). That she regularly communicates with non-custodian third parties suggests she likely possesses unique documents and information.

**Jakub Pachocki** is the Chief Scientist at OpenAI, where he has led transformative research initiatives since 2017. He previously served as Director of Research spearheading the development of GPT-4 and OpenAI Five. According to Defendants', he has been instrumental in refocusing the company's vision towards scaling deep learning systems https://openai.com/index/jakub-pachocki-announced-as-chief-scientist/. As Chief Scientist, he is likely to regularly communicate with non-custodian subordinates regarding tasks and experiments they are working on. *See e.g.*, OPCO_ND_CAL_063823 (referencing separate

3

communication with non-custodian Ingmar Kanitscheider where Mr. Pachocki apparently asked Kanitscheider ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇).

**Jeff Wu** is intimately involved in the selection and acquisition of training data and his custodial file almost certainly contains unique, relevant information. Mr. Wu has had communications ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ OPCO_NDCAL_0065403. Other documents show that Mr. Wu was charged with communicating with non-custodians ▇▇▇▇▇▇▇▇▇▇▇▇▇▇. OPCO_NDCAL_0045948 (stating intent to reach out to non-custodian ▇▇▇▇▇▇).

**Wojciech Zaremba** was deeply involved in ▇▇▇▇▇▇▇▇, and his custodial file is likely to contain unique documents and information. *See, e.g.*, OPCO_NDCAL_0856291 (direct message with non-custodian Chelsea Voss: "▇▇▇▇▇▇▇▇▇▇▇▇▇▇"). Other documents reveal the existence of separate conversations between Mr. Zaremba and non-custodians that were omitted from production and not produced. *See* OPCO_NDCAL_0003032 (referencing separate conversation with non-custodian Arka Dhar regarding ▇▇▇▇▇▇▇▇▇▇▇▇).

**Suchir Bilaji** is a former OpenAI researcher who was involved in data collection, organizing and copying of web-gathered training data for OpenAI's language models. *See, e.g.*, OPCO_NDCAL_0045596. Mr. Bilaji recently interviewed with a New York Times reporter for a story about Defendants' conduct relevant to this action. *See* Cade Metz, *Former OpenAI Researcher Says the Company Broke Copyright Law*, New York Times (Oct. 23, 2024), https://www.nytimes.com/2024/10/23/technology/openai-copyright-law.html. That he voiced his concerns to the press suggests he may have voiced similar concerns internally.

### Defendants' Statement

Plaintiffs' demand for more custodians is unwarranted and improper. The parties previously reached agreement on 22 of the 24 OpenAI custodians "most likely to have non-duplicative discoverable ESI in their possession, custody, or control," Dkt. 175 at 2; Dkt. 191 at 1—a list that includes OpenAI's CEO, President, former CTO, and many senior executives and key members of OpenAI's technical, research, product, and business teams. And while the Court "allow[ed] Plaintiffs . . . latitude . . . in identifying the last two of the 24 custodians," it warned that "[i]f Plaintiffs are choosing their custodians unwisely, they will have to bear the consequences of that decision." Dkt. 191 at 3. As a result, OpenAI's COO, Brad Lightcap, and one of its engineers, Michael Lampe, were added as custodians in place of OpenAI employees Lama Ahmad and Varun Shetty.

A month later, Plaintiffs now seek to nullify those very consequences by moving to add *11* more OpenAI custodians. But if these 11 custodians were as critical as Plaintiffs now claim, Plaintiffs should have requested—or at the very least mentioned—them as part of the parties' prior custodian dispute. They did not. And they have no excuse for that failure. *None* of the evidence they cite in support of their current demand is new. *All* of it was produced over five months ago, long before the parties first conferred about custodians and well before Plaintiffs moved to compel OpenAI to add Messrs. Lightcap and Lampe as custodians. Contrary to what they represent, Plaintiffs' have had plenty of "opportunity to digest and analyze the initial document

productions in this case," making it puzzling why they are demanding these new custodians now, after the parties just finished addressing custodians a month ago. Worse, Plaintiffs have refused to confirm that any future requests for new custodians will be based on newly produced evidence. Instead, they apparently intend to continue making haphazard, seriatim demands for new custodians to avoid any "consequence" arising from an "unwise[]" choice.[2] Indeed, that is precisely what they have done in this motion—in many cases recycling the **exact same justifications** they used to support their demands for Messrs. Lampe and Lightcap while simultaneously claiming—without irony—that the new custodians they demand possess unique knowledge.

To be clear, OpenAI remains willing to consider adding custodians as discovery progresses, and as the Court anticipated may be necessary, so long as Plaintiffs satisfy the ESI Order's requirement to show that the new custodians "possess non-cumulative, unique documents or information that would justify enlarging the list of custodians." Dkt. 174. As a good faith compromise, OpenAI has agreed to search the custodial files of former employee Suchir Balaji to identify documents in his custodial file (if any) related to purported copyright concerns he has recently raised following his employment at OpenAI. But Plaintiffs have not, and cannot, show that the remaining ten proposed custodians satisfy the ESI Order's requirements.

The fact that some of these custodians have been recently *demanded*—but not yet designated as custodians—in the *Authors Guild* action does not change that conclusion and says nothing about whether they "possess non-cumulative, unique documents or information that would justify enlarging the list of custodians." Dkt. 174. Adding these custodians also would not streamline discovery, as Plaintiffs disingenuously suggest. All of the custodians in Authors Guild are already custodians in this case. What Plaintiffs demand now is either the designation of custodians that have merely been requested in Authors Guild or the addition here of all custodians designated in Authors Guild going forward–regardless of their relevance to this case. But that's not all. On top of that, they also demand at least five more custodians now plus an unspecified number in the future. No part of that request is "streamlined." In any event, Plaintiffs' custodian demands are improper and should be rejected, for the reasons discussed below.

**Ilya Sutskever.** Plaintiffs request Mr. Sutskever because of his purported knowledge of OpenAI's efforts ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But **Plaintiffs moved to compel OpenAI to designate Mr. Lampe as a custodian for that same reason, which the Court granted.** Dkt. 184 at 3-4, 6. OpenAI has now designated four custodians with this same knowledge, including its former head of Safety and the head of its Privacy Engineering team. Plaintiffs do not need a fifth. Their only other justification for adding Mr. Sutskever—his knowledge of training data—is even weaker. OpenAI has designated multiple custodians to cover training data issues, including, but not limited to, the heads of the Training teams, Nick Ryder (Pre-Training) and Barret Zoph (Post-Training); Ian Sohl, the head of the Data Acquisition team; Dario Amodei, former VP of Research; and five additional engineers (Alec Radford, Ben Mann, Alex Paino, Chris Koch, and John Schulman) who all have worked directly

---

[2] Plaintiffs represented to OpenAI that "there may be another request [for additional custodians] in the future" and that request "may rely on evidence contained in documents currently in [Plaintiffs'] possession to support a later ask."

on training the relevant OpenAI models. So any knowledge Mr. Sutskever possesses would be duplicative.

The documents Plaintiffs cite do not prove otherwise. OPCO_NDCAL_0001138 is discussing a *hypothetical*, not OpenAI's operations. OPCO_NDCAL_0001193 contains no statements from Mr. Sutskever and thus cannot prove he has relevant knowledge. In OPCO_NDCAL_0855123, Mr. Sutskever exclusively asks questions, which suggests he lacks knowledge rather than possesses it. OPCO_NDCAL_0855571 compels a similar conclusion by showing that Mr. Ryder, a designated custodian, educates Mr. Sutskever about training data issues.

**Jakub Pachocki.** Plaintiffs assert only that Mr. Pachocki was involved in developing GPT-4 and OpenAI Five, and that he communicates about unspecified "tasks and experiments." But Plaintiffs cannot explain why that information is relevant. OpenAI Five is a video game computer program with no connection to this action. If Plaintiffs want custodians knowledgeable about OpenAI products and models, they already have them.

**Shantanu Jain.** Plaintiffs request Mr. Jain because he purportedly worked on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. But OpenAI has designated at least Messrs. Amodei, Mann, Radford, and former engineer Tom Brown as knowledgeable about these subjects. Plaintiffs also cite documents that include designated custodians (e.g., Messrs. Radford, Brockman, Ryder, Paino). While Plaintiffs argue Mr. Jain's documents may be unique because they might include ▇▇▇▇▇▇▇▇▇▇▇▇▇▇, in the same breath they cite a document confirming Mr. Jain's experiments duplicate ▇▇▇▇▇▇▇▇▇▇ by current custodian Mr. Amodei. *See* OPCO_NDCAL_0045335 at 339. Mr. Amodei would thus have cumulative information. Moreover, the single document Plaintiffs cite to argue that Mr. Jain had separate conversations with a non-custodian, Bianca Martin, (OPCO_NDCAL_0856565) is unsupportive. Ms. Martin served as the Chief of Staff for designated custodian Mira Murati; thus, Plaintiffs have not shown why Ms. Murati's knowledge is insufficient for this subject matter. Finally, Plaintiffs' selective quotation to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, which Plaintiffs fail to tie to any issue relevant to the case. *See* OPCO_NDCAL_0045336.

**Katie Mayer.** Plaintiffs request Ms. Mayer, citing her purported knowledge of OpenAI's relationship with Microsoft. But Plaintiffs cannot provide any reason to believe her knowledge is unique. **Indeed, knowledge of OpenAI's relationship with Microsoft is the same justification Plaintiffs used to request Mr. Lightcap.** Dkt. 184 at 2-3, 5. And beyond Mr. Lightcap, OpenAI has designated four other current and former executives with information about the Microsoft relationship: current CEO, Sam Altman, former CTO, Mira Murati, current VP of Strategy and Operations, Peter Hoeschele, and current VP of Product and Partnerships, Peter Welinder. Plaintiffs' cited documents confirm that relevant knowledge Ms. Mayer possesses overlaps with Mr. Hoeschele, who Plaintiffs cite as "lead[ing] data strategy at OpenAI." OPCO_NDCAL_0001039. And while Ms. Mayer communicated with Microsoft, those communications principally concerned logistics (e.g., coordinating meetings and the exchange of information, granting access to databases, etc.). The substantive discussions in these documents were primarily supplied by designated custodians (Messrs. Schulman, Paino, Hoeschele, Ryder).

**Jong Wook Kim.** Plaintiffs argue Mr. Kim purportedly possesses information about training data sources ▇▇▇▇▇▇▇▇▇▇▇▇▇. But that issue is well covered by no fewer than *nine* custodians, including the head of OpenAI's Data Acquisition team. Plaintiffs' cited

6

communications do not show otherwise, as they all either include the training data custodians or others (e.g., Messrs. Brockman, Weng, Welinder). The only documents between Mr. Kim and non-custodians do not reveal unique knowledge of relevant issues. In one, Mr. Kim states that there was ███████████████████████ *See* OPCO_NDCAL_0856587. In another, he merely speculates that a website is ████████████████████ OPCO_NDCAL_0065405.

**Andrew Mayne**. Mr. Mayne is a published author who keeps unreleased copies of his personal writings. Plaintiffs use those personal works to argue Mr. Mayne has unique information. But Mr. Mayne's works are not at issue in this case. And OpenAI has designated nine custodians with information on training—that Mr. Mayne mused on Slack ████████████████████ (he is not an attorney) does not demonstrate that he has unique knowledge of relevant issues.

**Cullen O'Keefe.** Plaintiffs demand Mr. O'Keefe because he was supposedly involved in OpenAI efforts related to corporate values and internal compliance programs, and ███████████████████████ Mr. O'Keefe, then working in a legal capacity, is not the only source for this information. As Plaintiffs admit, Mr. O'Keefe based ████████████████████████████████████████ Messrs. Weng, Paino, and Ryder—all custodians—████████████████████████ And Plaintiffs cannot point to any relevant information ███████ supplied by a non-custodian. That thin reed is insufficient to justify searching Mr. O'Keefe's files, which would require a burdensome privilege review.

**Jeff Wu.** Plaintiffs request Mr. Wu because he was purportedly involved in the selection and acquisition of training data ████████. As explained above, that topic is well-covered, a fact confirmed by the communications Plaintiffs point to, which all involve designated custodians (Messrs. Radford, Paino, Amodei, Brockman, Turley, Welinder, and Ms. Murati). Plaintiffs also contend Mr. Wu is knowledgeable ████████████, but this is yet another **recycled justification Plaintiffs used to demand Mr. Lightcap.** Dkt. 184 at 5.

**Qiming Yuan.** Plaintiffs request Mr. Yuan because he was purportedly involved in acquiring and processing training data, including ████████. Mr. Yuan reports to Mr. Paino, who reports to Mr. Ryder, both of whom are custodians. In a separate conversation, Mr. Yuan identifies Mr. Paino as knowledgeable on any subjects he could provide information about. *See* OPCO_NDCAL_0856402 at 3. And OpenAI has designated at least two custodians (the head of OpenAI's Privacy Engineering team and its head of Data Acquisition) who can cover Mr. Yuan's supposed knowledge of ████.

**Wojciech Zaremba.** Plaintiffs demand Mr. Zaremba because he was involved in training data selection. But, again, OpenAI's head of Data Acquisition is already a custodian, as are eight other individuals with knowledge of this topic. All the communications Plaintiffs cite include existing custodians (Messrs. Ryder, Schulman, Altman, and Ms. Murati). And anything that is not already covered is irrelevant. For example, OPCO_NDCAL_0003032 contains a discussion about ████████████████████████████████████. But Plaintiffs cannot explain what that model involves or how it relates to their claims—because it does not.

   Plaintiffs' request for 11 additional custodians should be denied.

Dated: November 25, 2024            JOSEPH SAVERI LAW FIRM, LLP

By:    /s/ *Joseph R. Saveri*

Joseph R. Saveri (State Bar No. 130064)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:       jsaveri@saverilawfirm.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Dated:  November 25, 2024            KEKER, VAN NEST & PETERS LLP

By:    /s/ *Christopher Sun*
KEKER, VAN NEST & PETERS LLP
CHRISTOPHER SUN (SBN 308945)
csun@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:     415 397 7188

*Attorneys for OpenAI Defendants*

## E-FILING ATTESTATION

I, Joseph R. Saveri, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above have concurred in this filing.

By:    */s/ Joseph R. Saveri*
        Joseph R. Saveri