Elana Nightingale Dawson
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
elana.nightingaledawson@lw.com

**LATHAM & WATKINS** LLP

November 27, 2024

**VIA ECF**

The Honorable Robert M. Illman
United States District Court for the Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Ave.
McKinleyville, CA 95519

Re: *In re OpenAI ChatGPT Litigation*, Master File No. 23-cv-3223-AMO

Dear Judge Illman:

Pursuant to the Court's standing order, the parties submit this joint discovery letter brief concerning Defendant OpenAI OpCo, LLC's request for an order requiring Plaintiffs to comply with Federal Rules of Civil Procedure 26 and 34. The parties met and conferred both by videoconference and email on multiple occasions, including on October 8, November 6, November 19, and November 25, 2024, but were unable to reach a resolution.

*OpenAI's Statement.*

OpenAI's review of Plaintiffs' productions reveals significant gaps and glaring deficiencies, despite repeated assurances by Plaintiffs such issues had been addressed. These deficiencies could only arise from a fundamentally inadequate search for responsive documents—a process Plaintiffs finally propose to address, but on no timeline, and only as to *some* but not *all* Plaintiffs. OpenAI thus requests an order requiring Plaintiffs to (i) conduct a vendor-led forensic collection of ESI from each Plaintiffs' custodial and non-custodial sources for all of OpenAI's discovery requests; (ii) perform an attorney-supervised search of this data using search terms designed to reasonably target responsive documents; and (iii) produce responsive documents consistent with the operative ESI Order (Dkt. No. 175). OpenAI requests the following framework for search terms: (1) Plaintiffs provide search terms to OpenAI within 7 days; (2) OpenAI proposes any additional search terms or revisions within 7 days; (3) Plaintiffs execute these searches within 3 days, and (4) any disputes regarding search terms are brought before the Court within 14 days.

Plaintiffs' statement largely addresses a request OpenAI has never made. OpenAI has never demanded direct access to Plaintiffs' devices so that *OpenAI* can execute a forensic inspection or collection. Rather, OpenAI has asked *Plaintiffs* to engage their vendor to conduct an industry-standard forensic collection of data from their custodial and non-custodial sources. This proposed process stands in stark contrast to the ad hoc collection process Plaintiffs acknowledge they undertook. Every conferral between the parties (and all associated correspondence) has been clear about the scope of OpenAI's request. *See, e.g.*, Ex. 1.[1] The cases Plaintiffs cite are inapposite.

As background, the 12 Plaintiffs have produced just 1,525 documents—***total***—between all of them. Half of Plaintiffs have produced 100 or fewer documents each. Five Plaintiffs have yet to produce ***more than one email***, with a third having not produced ***even a single email***. In contrast, OpenAI has produced over 60,000 documents to date in response to Plaintiffs' requests. It is inconceivable that, from a multi-year period, 12 Plaintiffs—collectively—have no documents or communications (or a bare few) relating to a range of relevant topics, including "ownership of [their] Copyrighted Works," "licenses and work-for-hire agreements," "the primary and secondary sources used in preparation of [their] Copyrighted Work," and "attempts to license [their] Copyrighted Work" (RFP Nos. 2, 12, 27, and 36, respectively). *See, e.g.*, Ex. A at 3, 10; Ex. B at 9, 17; Ex. C at 4, 11, 25, 35. Several examples further underscore the issue here:

- Plaintiffs Coates, Diaz, Greer, and Klam have not produced ***a single email***. Plaintiff Woodson has produced ***just one email***. Plaintiffs Snyder, Hwang, and Lippman have produced just 2, 4, and 6 emails, respectively.
- Certain agreements are still missing from at least Plaintiffs Kadrey's, Greer's, Klam's, and Lippman's productions. For example, those Plaintiffs appear not to have produced agreements for the translation of their Asserted Work into a foreign language even though OpenAI's investigation shows these Asserted Works are available in other languages and their publishing agreements produced to date do not contain foreign translation rights.[2]

---

[1] OpenAI will file exhibits referenced herein should the Court permit them. *See* Dkt. No. 206.
[2] Plaintiffs Greer, Klam, and Lippman concede they failed to produce these relevant agreements, even if Plaintiff Kadrey now insists (without citation) that he recently produced "numerous" foreign language licensing agreements. To the extent Plaintiff Kadrey did recently produce such documents, this only reinforces the inadequacy of Plaintiffs' prior collection and search.

- Six Plaintiffs have not logged a *single* document on a privilege log, and the other six Plaintiffs have only logged a combined 9 documents, further evidencing the fact that Plaintiffs to date have not conducted a proper search for responsive documents.

Plaintiffs have not used search terms for Requests for Production that OpenAI served prior to October 2024. Plaintiffs offered no justification for failing to provide, let alone uniformly run, search terms targeted at documents responsive to *all* of OpenAI's discovery requests.

Plaintiffs represented to OpenAI that, in response to the Requests for Production OpenAI served prior to October 2024, Plaintiffs conducted "attorney directed searches" for responsive documents. But Plaintiffs admit that they did not use search terms to identify responsive documents, writing, "Plaintiffs have confirmed that . . . no search terms were run." *See* Ex. 2 at 2. Only after OpenAI submitted its initial statement for this joint brief, did 8 of the 12 Plaintiffs offer to negotiate search terms—a process that should have occurred *months* ago. However, Plaintiffs' overdue offer does not even come on behalf of all Plaintiffs, nor does it guarantee the parties will be able to conduct search term negotiations and subsequent document productions in a timely manner without clear guidance and set timelines from the Court.

Plaintiffs' minimal productions highlight the entirely deficient process Plaintiffs deployed in retrieving relevant ESI. Specifically, Plaintiffs' counsel relied on their clients—non-lawyer, percipient witnesses who presumably do not have the experience necessary to reasonably search for, identify, and collect responsive documents. Plaintiffs themselves recognize the insufficiency of such a process, as their own ESI expert submitted a 17-page declaration detailing what Plaintiffs view as the appropriate way to collect, search, and produce ESI, expressly admonishing searches without appropriate iteration and testing—let alone the utter abdication of any responsibility to run search terms at all. Dkt. No. 164 ("Without appropriate iteration and testing, attorney-developed search terms are notoriously ineffective."). But while demanding that OpenAI meet the standards Plaintiffs' ESI expert outlined, Plaintiffs simply ignored them. The result speaks for itself.

The problem with Plaintiffs' productions is not only unproduced documents, but also overall compliance with Federal Rules of Civil Procedure 26 and 34 (as well as the ESI Protocol). For instance, Plaintiffs' (minimal) document productions lack even the most basic metadata that is stored in the ordinary course of business, contrary to Rules 26 and 34 (and the ESI Protocol as well). As just one example, Plaintiffs produced *screenshots* of communications—rather than forensically captured versions—that fail to include information that is maintained with such communications in the ordinary course of business, such as the sender, recipient, time, and date the messages were sent, as required by not only the ESI Protocol but also the Federal Rules of Civil Procedure. *Henderson v. Chicago Cubs Baseball Club, LLC*, No. 5:17-cv-02366, 2018 WL 3326684, at *1 (C.D. Cal. June 14, 2018) (citing Fed. R. Civ. P. 34(i)– (ii)).

When faced with such gross insufficiencies in initial collection and production of documents without an eDiscovery vendor, this Court has ordered a producing party to "redo . . . its collection, review, and production of responsive documents" in light of "the Court's principal concern i[n] ensuring that [the producing party] fully complies with its obligations to produce documents responsive to . . . document requests consistent with the representations it has made in response to those requests." *See Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 16-cv-06370, 2020 WL 2838806, at *6–7 (N.D. Cal. June 1, 2020). The same result is warranted here.

Throughout discovery, OpenAI has raised numerous deficiencies with Plaintiffs' collection of,

search for, and production of documents, including missing responsive documents and corresponding metadata pursuant to the parties' ESI Order. *See, e.g.*, Ex. 3. At each step, Plaintiffs have either agreed to cure the deficiency (Ex. 1), committed to supplement productions (*id.*), or represented their productions were complete (Ex. 2). However, after too many missed deadlines and too many promises unfulfilled, OpenAI has no choice but to seek the Court's assistance to ensure Plaintiffs' compliance with their discovery obligations. Even now, some of the Plaintiffs who promised over a month ago to provide search term hit reports for OpenAI's later requests still have not done so, and 8 Plaintiffs have not produced a single document as a result of implementing search terms.

Given the foregoing, the parties would benefit from clear guidance and direction from the Court to ensure that Plaintiffs promptly comply with their discovery obligations. In light of Plaintiffs' continued failure to uphold their commitments and abide by "their duty under Rule 34 to conduct a diligent search and reasonable inquiry in effort to obtain responsive documents," *Kaur v. Alameida*, No. 05-cv-276, 2007 WL 1449723, at *2 (E.D. Cal. May 15, 2007), OpenAI respectfully requests that the Court grant the relief requested herein.

*Plaintiffs' Statement*

The Court should deny OpenAI's request for forensic collection because OpenAI fails to meet the high burden required for the Court to order the "extreme step" of forensic collection. *Lee v. Stonebridge Life Ins. Co.*, No. 11-CV-43 RS (JSC), 2013 WL 3889209, at *1 (N.D. Cal. July 30, 2013). Cases where forensic collection is ordered "involve an extreme situation where data is likely to be destroyed" or where "computer content [is] intricately related to the very basis of the lawsuit." *Memry Corp. v. Kentucky Oil Tech., N.V.*, No. C04-03843-RMW-HRL, 2007 WL 832937, at *3 (N.D. Cal. Mar. 19, 2007) (collecting cases). Neither situation is applicable here. Instead, OpenAI requests the Court to order forensic collection merely to confirm the search already done, which is insufficient to justify this "extreme remedy." *See id.*; *Juul Labs, Inc. v. Chou*, No. 2:21-CV-03056-DSFPD, 2022 WL 2161062, at *2 (C.D. Cal. Apr. 19, 2022).

First, OpenAI mischaracterizes Plaintiffs' search efforts and productions. To date, they have already produced 1,525 documents as a result of their attorney-directed search efforts. Plaintiffs produced emails, text messages, social media, documents demonstrating their use of ChatGPT and other AI tools, publishing agreements, licensing agreements, foreign licensing agreements, option agreements, copyright registration certificates and other relevant and responsive documents. Defendant misrepresents that Plaintiff Kadrey failed to produce foreign licensing agreements, when in fact, Plaintiff Kadrey has recently produced numerous foreign language licensing agreements. Rather than review the recent productions, Defendant has chosen to instead burden the Court. Ex. 4 at 2, 5, 7.[3] Plaintiffs or their counsel also contacted their agents, managers, and publishers to locate additional responsive documents. Plaintiffs' production is not deficient and OpenAI fails to point to any serious deficiency that would warrant the extreme relief of a Court-ordered forensic collection or other court supervision.

Critically, all Plaintiffs *are already* conducting a vendor-led forensic collection of ESI from Plaintiffs' data sources and running search terms designed to target responsive documents in response to OpenAI's most recent document requests. And, to be clear, Plaintiffs have provided

---

[3] Plaintiffs will file the referenced exhibits if permitted by the Court. *See* Dkt. No. 211.

3

search terms to Defendant. While some Plaintiffs had not yet provided hit reports, Plaintiffs did clarify during the Parties' November 19, 2024 meet and confer that set of terms disclosed on November 18, 2024 are being used for all Plaintiffs. All Plaintiffs except Diaz and Coates have now provided hit reports. Plaintiffs also represented during the November 19, 2024 conferral that the search terms are sufficiently broad to pull responsive documents to all of OpenAI's requests for production served to date. OpenAI disagreed. Accordingly, in the interest of cooperation and judicial economy, all Plaintiffs offered to negotiate search terms responsive to *all* of OpenAI's RFPs and provide hit reports for forensically-collected data. In other words, those Plaintiffs offered to provide *the exact* relief OpenAI requests in this Joint Letter Brief. OpenAI rejected Plaintiffs' proposal as "too little, too late." Ex. 5 at 1–3, 4.

Second, OpenAI fails to point to any evidence of destruction or other improper discovery conduct that would warrant forensic examination. *See Advante Int'l Corp. v. Mintel Learning Tech.*, 2006 WL 1806151 at *2 (N.D. Cal. June 29, 2006) ("absent specific, concrete evidence of concealment or destruction of evidence, courts are generally cautious about granting a request for a forensic examination.") Instead, OpenAI points to the production of a limited amount of emails, the absence of privileged documents, and the lack of a few foreign language licenses as the basis for its request for a highly invasive, expensive, and burdensome discovery remedy. Discovery is ongoing, and as noted above, the forensic ESI collection that is already underway for all Plaintiffs will likely yield additional documents that address the miniscule alleged deficiencies raised by OpenAI. Ex. 6 at 1–3, 5; Ex. 4 at 2, 5, 7. Plaintiffs have produced privilege logs where required and will update their logs for recent productions within the required time frame. In any event the absence of privileged documents does not evidence an insufficient search, especially here where Defendant has failed to point to specific privileged documents it believes are missing. OpenAI has also misconstrued Plaintiffs' discovery obligations with respect to the deposit copies. While OpenAI has omitted this issue from its brief, Defendant relied on the absence of these documents to support its position throughout the Parties' meet and confers. Plaintiffs agreed to search for and produce deposit copies to the extent they are within their possession, custody, and control, but repeatedly advised OpenAI that Plaintiffs do not possess deposit copies, and that they are equally available to OpenAI. Ex. 6 at 1–2; *see Mercer Publg. Inc v. Smart Cookie Ink, LLC*, No. C12-0188JLR, 2012 WL 12863933, at *1 (W.D. Wash. Nov. 27, 2012) (holding that it is "Defendants' burden to acquire deposit copies" and "obtain [deposit] copies from the Copyright Office."); *see also Dallas Buyers Club, LLC v. Huszar*, No. 3:15-CV-00907-AC, 2019 WL 5856460, at *6 (D. Or. Sept. 3, 2019) ("[Plaintiff does not have possession or custody of the depository copy . . . which was necessarily submitted to the United States Copyright Office …[m]oreover [plaintiffs] control over the depository copy is not any greater than [defendant's], as both are able to request the depository copy."). The fact that a Plaintiff does not have the ability to produce a document is not a valid justification to request the extraordinary remedy of forensic collection.

The Court should reject OpenAI's request because they fail to demonstrate the "strong showing" required to warrant the "extraordinary remedy" of forensic inspection. *Vasudevan Software, Inc. v. Microstrategy Inc.*, No. 11-CV-06637-RS-PSG, 2013 WL 1366041, at *2 (N.D. Cal. Apr. 3, 2013). "'In the absence of a strong showing that the responding party has somehow defaulted in this obligation, the court should not resort to extreme, expensive, or extraordinary means to guarantee compliance.'" (*Id.* (quoting *Brocade Commc'n Sys., Inc. v. A10 Networks, Inc.,* Case No. 10–cv–3482, 2010 WL 70428, at *3 (N.D. Cal. Jan 9 2012)); *see also Memry Corp. v. Kentucky Oil Tech.*, 2007 WL 832937, at *3 ("[A] mere desire to check that the opposition has

4

been forthright in its discovery responses is not a good enough reason" to order forensic inspection) (citing *McCurdy Group LLC v. American Biomedical Group, Inc.*, 9 Fed. Appx. 822, 831 (10th Cir.2001)). "[F]orensic imaging must be premised on an interest significant enough to override" the countervailing privacy interests and burden on the producing party. *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008).

The single authority Defendant relies on in support of its request is inapposite. In *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 16-cv-06370, 2020 WL 2838806 (N.D. Cal. June 1, 2020), the court ordered the producing party's counsel to re-do the search where it was clear that counsel had not supervised the collection, and where it had found that the producing party had withheld responsive documents. *Id.* at *4–5. However, even in the face of the party's clear failure to meet its discovery obligations, the court did not prescribe the method for "re-do[ing]" the search. *See id.* at *6–7. Further distinguishing this case, the producing party in *Optronic Techs.* was a corporation with six document custodians, whereas the Plaintiffs here are individuals who possess invariably fewer documents than a corporate entity.

Moreover, OpenAI fails to inform the Court of key facts regarding the ESI Protocol. First, the Court did not enter the Stipulated ESI Protocol until August 22, 2024. *See* ECF No. 175. This was 8 months after OpenAI served its first set of document requests on Plaintiffs Tremblay, Kadrey, and Silverman, and 3 months after OpenAI served its first set of document requests on Plaintiffs Coates, Diaz, Greer, Hwang, Klam, Lippman, Snyder, and Woodson. By the time the ESI Protocol was entered, Plaintiffs had already conducted a reasonable, diligent, and attorney-supervised document collection in response to OpenAI's document requests. Further, Plaintiffs produced the relevant and responsive documents over the next few months. OpenAI now seeks retroactive application of the terms of the ESI Protocol *that did not exist* at the time Plaintiffs' responses to OpenAI's first sets of discovery requests were due. The Court should reject OpenAI's attempt to force Plaintiffs into a corner by retrofitting obligations onto Plaintiffs that were *not in existence or agreed to at the time* Plaintiffs conducted their initial searches and productions.

OpenAI is not entitled to a forensic examination without providing specific, concrete evidence of a failure to preserve documents and information, concrete evidence of concealment, or destruction of evidence. *John B. v. Goetz*, 531 F.3d at 460 ("[M]ere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures" and override th[e] risk improperly exposing private personal information). Plaintiffs have conducted diligent and reasonable searches in compliance with their obligations under the federal rules. The Court should accordingly deny OpenAI's requests.

Dated: November 27, 2024            Respectfully Submitted,

*/s/ Elana Nightingale Dawson*
Elana Nightingale Dawson (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Email: elana.nightingaledawson@lw.com

*Counsel for Defendants*

*/s/ Bryan L. Clobes*
Bryan L. Clobes (*pro hac vice*)
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
135 S. LaSalle Street
Suite 3210
Chicago, IL 60603
Telephone: (312) 782-4880
Email: bclobes@caffertyclobes.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

## **ATTESTATION**

I, Elana Nightingale Dawson, am the ECF user whose user ID and password authorized the filing of this document and enclosed exhibits. Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred in their filing.

Dated: November 27, 2024                                         */s/ Elana Nightingale Dawson*