December 6, 2024

**Via ECF**

The Honorable Robert M. Illman
United States District Court for the Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Ave.
McKinleyville, CA 95519

Re:    *In re OpenAI ChatGPT Litigation*, Master File No. 23-cv-3223-AMO Joint Letter

Dear Honorable Judge Illman:

Pursuant to the Court's standing order, the parties hereby submit this joint discovery letter brief concerning Plaintiffs' request for an order compelling the production of responsive documents. The parties met and conferred both by videoconference, letter, and email on multiple occasions, including on October 22, November 6, November 11, November 13, November 22, and November 25, 2024, but were unable to reach a resolution.

**Plaintiffs' Statement**: Plaintiffs respectfully request the Court order OpenAI to comply with its basic discovery obligations to search for and produce documents relevant to Plaintiffs' claims. OpenAI has improperly limited the scope of its production of responsive documents by refusing to produce documents related to OpenAI Language Models currently in development. Plaintiffs request that the Court order OpenAI to search for and produce responsive documents related to all OpenAI GPT-Class Models, including those models in development. Despite multiple meet and confers on these issues, OpenAI declined to comply with its basic discovery obligations.

OpenAI has withheld or refused to search for responsive documents based on its improperly narrow reading of the scope of Plaintiffs' First Consolidated Amended Complaint ("FCAC") (ECF 120). Specifically, OpenAI claims that the only models at issue are those underlying ChatGPT, *i.e.* GPT-3.5 and GPT-4. This position is belied by a basic reading of the allegations. The FCAC's plain definition of "OpenAI Language Models," the scope of Plaintiffs' direct infringement claim, and the class period make clear that *all* GPT-class OpenAI Language Models are at issue irrespective of whether they underly ChatGPT. As alleged in the FCAC, OpenAI's direct infringement of Plaintiffs' Asserted Works did not begin, and has not ended, with GPT Models 3.5 and 4. Plaintiffs are accordingly entitled to discovery on all GPT-class models, including in-development models.

First, the FCAC explicitly defines "OpenAI Language Models" to include GPT-1, GPT-2, GPT-3, GPT-3.5, GPT-4, and "any [OpenAI Large Language Model] in development." FCAC ¶ 36. It further specifies that "[T]he definition of 'OpenAI Language Models' encompasses any language models developed (or in development) by OpenAI, *irrespective of whether those models underly ChatGPT*." *Id.*, n.1 (emphasis added). The FCAC also alleges that OpenAI had already developed at least five iterative language models, that "OpenAI CEO Sam Altman confirmed that GPT-5 is under development," and that "OpenAI has made other language-model variants that are in commercial use but are not publicly accessible." *Id.* ¶ 36. Given these allegations, it can be reasonably inferred that more models were in development at the time of filing. The plain allegations in the FCAC alone are more than sufficient to bring the in-development models within the scope of discovery.

In response to this Joint Letter Brief, OpenAI for the first time distinguishes between "GPT-class" models and other model "versions." To be clear, Plaintiffs are not seeking discovery on all model versions, such as versions with minor bug fixes or the "research artifacts" described by Nick Ryder in his declaration. (Decl. of Nick Ryder, ¶ 4–5.) Instead, Plaintiffs seek discovery on what OpenAI now describes as the "GPT-class" models. OpenAI's argument and the Ryder declaration confirm that GPT-5 (which is specifically referenced in the FCAC at ¶ 36) and Orion are examples of such GPT-class models currently in development. (Decl. of Nick Ryder, ¶ 4.) Although Plaintiffs could not have been aware of OpenAI's specific internal terminology, the FCAC describes the other "GPT-class" models (e.g., GPT-1, GPT-2, GPT-3, GPT-3.5, GPT-4) and specifically refers to models of the same type in development.

Second, Plaintiffs' direct infringement claim is not tethered to or limited by ChatGPT. OpenAI attempts to limit the scope of the FCAC by referencing statements made before the filing of the FCAC, but Plaintiffs have since broadened the scope of their claim in the operative complaint. In Count One, Plaintiffs allege that "OpenAI made copies of Plaintiffs' books *during the training*

1

*process* of the OpenAI Language Models without Plaintiffs' permission." *Id.* ¶ 66 (emphasis added). This claim centers on OpenAI's conduct during the training of its models, not ChatGPT's output. Accordingly, the claim is not limited to the OpenAI models underlying ChatGPT. While the FCAC includes allegations about OpenAI's well-known commercial product ChatGPT, these facts provide background on the commercial nature of OpenAI's use of the Asserted Works, support Plaintiffs' allegations that OpenAI knowingly made copies of Plaintiffs' Asserted Works to train the models, and were alleged to support Plaintiffs' dismissed UCL claim. *Compare* FCAC ¶ 71 (alleging violation of the UCL in training ChatGPT), *with id.* ¶ 66 (alleging violation of section 501 in training "OpenAI Language Models," previously defined). Plaintiffs' direct infringement claim, and the corresponding discovery on that claim, should not be delimited by these specific facts.

Third, the class definition clearly contemplates ongoing infringement through the ongoing training of iterative models, further supporting the fact that models in development are at issue in this action. Specifically, the class period alleged in the FCAC runs "through the present," and the class encompasses "[a]ll persons or entities domiciled in the United States that own a United States copyright in any work that was **used as training data for the OpenAI Language Models** during the Class Period." *Id.* ¶ 52–53. OpenAI has acknowledged that it is continuing to train iterative GPT models, but it has denied that it used Plaintiffs' asserted works to train any subsequent model. Plaintiffs should have the right to test their allegations rather than relying on OpenAI's representations.

The decision in *Authors Guild et al. v. OpenAI, Inc., et al.*, 1:23-cv-08292-SHS-OTW, (S.D.N.Y.), should not be imputed to this case because the complaint there does not contain the same allegations about models in-development. Again, the statements referenced by OpenAI with respect to the similarities between the *Authors Guild* case and this case were made *before the filing of the FCAC*. It is in the FCAC that Plaintiffs assert allegations regarding models in development. While Plaintiffs do not have the benefit of reviewing the basis for the court's decisions in *Authors Guild*, the operative complaint in that case does not define the models at issue to include models in development nor contain specific allegations about models in development. In sharp contrast, the FCAC in this case does make such allegations as detailed above.

Last, courts have found that documents relating to the ongoing infringement of non-commercialized or unreleased products are relevant and discoverable. Recently, in another case involving analogous claims of direct infringement, Magistrate Judge Hixson compelled Meta to produce documents related to its model still in development.[1] *Kadrey et al. v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (N.D. Cal.), ECF 279 at 4 ("The Court agrees with Plaintiffs that Llama 4 is relevant to this case, notwithstanding that it is still under development."). The *Kadrey* Plaintiffs' assertion, referenced below by OpenAI, that "Meta's use of 'shadow libraries' . . . has continued and if anything increased over time," is not alleged in the complaint in that case, but is rather a fact elucidated by the limited discovery they had already received as to Llama-4. *See* ECF 267 at 9, 12. This highlights the need for similar discovery in this case—without discovery on the in-development models, Plaintiffs may be missing similar, important information about

---

[1] In *Kadrey v. Meta*, the complaint was silent with respect to models in development. Here, there is an even stronger case for finding that in development models are relevant: they are explicitly part of the allegations in the FCAC.

OpenAI's continued use of the Asserted Works to train its models. *See also Bigband Networks, Inc. v. Imagine Commc'ns., Inc.*, 2010 WL 2898288, at *1 (D. Del. July 20, 2010) (granting discovery into the source code of defendants' future products because "products which have not yet been released for sale to consumers may still be found to infringe."); *Bryant v. Mattel, Inc.*, 2007 WL 5430888, at *3 (E.D. Cal. May 18, 2007) (ordering production of designs and drawings for products "currently under development," in light of claim of copyright infringement supported by allegations of "ongoing conduct of reproducing and creating derivative works").

Because the FCAC encompasses OpenAI Language Models in development, discovery relating to these models is appropriate under Rule 26.

**Defendants' Statement**: This case is focused on ChatGPT. By stipulation, the case is named *In re OpenAI **ChatGPT** Litigation*. (ECF No. 74 at 1.) The parties' stipulated consolidation confirms that "all [plaintiffs] bring putative class action claims regarding ***ChatGPT***." (ECF No. 60 at 2 (emphasis added).) And the complaint confirms that the claims in this case are focused on specific books datasets that were allegedly used to train specific OpenAI large language models powering ***ChatGPT***. (*See, e.g.*, FCAC ¶¶ 38-51.) OpenAI has agreed to provide wide-ranging discovery into the relevant models used to power ***ChatGPT***.[2]

But Plaintiffs now seek discovery into "in-development" models outside the scope of this case and not used for ChatGPT. OpenAI's researchers create hundreds or thousands of large language model versions during development, only a tiny portion of which become production models used for ChatGPT (and, upon becoming production models, are referred to as "GPT-class"). Extending discovery beyond these production models and into in-development models would be a massive exercise that could take ***months or years***, if even possible. Meanwhile, Plaintiffs make no factual allegation—in either their complaint or their discovery brief—that these in-development models are trained on their works. Plaintiffs do not dispute that they lack a basis for such an allegation. (*See supra* at 2-3 (attempting to distinguish *Kadrey* briefing).) The New York court in *Authors Guild v. OpenAI, Inc.* recently heard and rejected a similar demand for discovery, including for unreleased or forthcoming models; Plaintiffs' demand here should likewise be rejected.

**OpenAI is already providing wide-ranging discovery into the relevant models (and more).** Even construed broadly, Plaintiffs' claims concern the alleged training of specific GPT-class models with specific internet-based books datasets. (FCAC ¶¶ 36-44 (training of GPT-1 and GPT-3); ¶ 50 (assumptions about GPT-3.5 or GPT-4 training based on ChatGPT output).) Plaintiffs make no factual allegations of infringement directed to other OpenAI GPT models. Nevertheless, OpenAI is providing discovery on *all* GPT-class models up through the date of the

---

[2] ChatGPT is a product that allows users to interact with a large language model in a conversational way. The underlying models (*e.g.*, GPT-3.5, GPT-3.5 Turbo, GPT-4 and GPT-4 Turbo) that have been used to power ChatGPT are from the GPT-class of models, and OpenAI has provided extensive discovery into those models. Moreover, despite disagreeing on relevance, OpenAI has also provided discovery into earlier GPT models (*e.g.*, GPT-1, GPT-2 and GPT-3) that were not used to power ChatGPT.

FCAC:  GPT-1, GPT-2, GPT-3, GPT-3.5, GPT-3.5 Turbo, GPT-4, and GPT-4 Turbo.  This discovery includes, and goes beyond, the models that were used to power ChatGPT.

**Plaintiffs demand vast quantities of irrelevant discovery that would be hugely burdensome to collect, if even possible.**  While developing a model, OpenAI researchers may create hundreds or thousands of versions, including for minor bug fixes or performance enhancements.  (Decl. of Nick Ryder, OpenAI VP of Research, Foundations, ¶ 5.)[3]  Only a small handful of these model versions are put into production as a GPT-class model.  (*Id.*)  Collecting information for each of these model versions would be extraordinarily burdensome, and would take months if not years of work, if even possible.  (*Id.*)  Plaintiffs claim that OpenAI "confirm[s]" that GPT-5 and Orion are "GPT-class models currently in development."  (*Supra* at 1.)  What OpenAI said is: "No models bearing the designations 'GPT-5' or 'Orion' have been completed, much less made available for public use."  (Ryder Decl. ¶ 3 (emphasis added).)  Hundreds or thousands of versions and dead-ends are developed before a GPT-class model is produced.  And while Plaintiffs claim they do not want model variants of "bug fixes" (*supra* at 1), that is exactly the kind of thing that constitutes in-development models.  (*See* Ryder Decl. ¶ 5.)

Meanwhile, there is no allegation that any in-development models are being trained on Plaintiffs' works.  To the contrary, Plaintiffs are aware that post-GPT-3.5 models have not been trained with the supposedly infringing "books corpora" referenced in their complaint.  (*Id.* ¶ 6.)  Plaintiffs instead concede that they want this expansive discovery because they hope to find something that they do not allege.  (*Supra* at 2-3 (attempting to distinguish *Kadrey* briefing).)  That is a textbook misuse of the discovery process.  *See Impinj, Inc. v. NXP USA, Inc.*, 2022 WL 16586886, at *2 (N.D. Cal. Nov. 1, 2022) ("discovery cannot be used as a fishing expedition for evidence of claims that have not been properly pled") (citation omitted).

**The *Authors Guild* court has denied this discovery.**  The court in *Authors Guild, et al. v. OpenAI, Inc., et al.* recently denied, without prejudice, discovery into unreleased models.[4]  Like this case, *Authors Guild* concerns the alleged use of specific books corpora to train specific GPT models.  (*See* ECF No. 98-1 at ¶ 8 (Plaintiff counsel declaration that "complaints filed in the consolidated *Authors Guild* case . . . are substantially identical to the *Tremblay* Action."); ECF No. 139 at 2 (post-FCAC Plaintiff argument that *Authors Guild* "essentially copies the claims at issue here and the operative complaint alleges substantially similar facts").)  The request was overbroad and unduly burdensome in *Authors Guild* and it is here as well.

**Plaintiffs' arguments fail.**  Plaintiffs are mistaken in suggesting that a self-serving footnote in their complaint about "any language models" entitles them to the discovery sought.  The scope of a complaint is determined by its specific factual allegations, not creative pleading devices.  *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 2016 WL 11806000, at *2 (N.D. Cal. Nov.

---

[3] OpenAI will file this declaration should the Court grant its motion for leave.  (ECF No. 214.)  It is also available at *Authors Guild et al. v. OpenAI, Inc., et al.*, 1:23-cv-08292-SHS-OTW, (S.D.N.Y. Nov. 22, 2024), ECF No. 282.

[4] This hearing took place on December 3, 2024.  The transcript or written order are not available as of the filing of this brief.  OpenAI will provide supplemental exhibits once available and if its motion for leave is granted.  (ECF No. 214.)

7, 2016) (denying motion to compel that relied on complaint footnote defining software at issue as "includ[ing], without limitation" identified products; limiting discovery to software "specifically put at issue by the complaint").  By Plaintiffs' own repeated admission in the complaint and elsewhere, this case is about the models underlying ChatGPT.  (*See* FCAC ¶¶ 38-51; ECF No. 91 at 2, 4, 7 (these are cases "challenging OpenAI's ChatGPT AI products"); ECF No. 98 at 9 (Plaintiffs' "theory of liability" is "that ChatGPT could create a detailed summary of specific infringed works").)  Plaintiffs' attempt to distinguish these representations as predating the FCAC lacks merit–their FCAC added no factual allegations about supposed infringement through in-development models.[5]

Nor does Plaintiffs' boilerplate class period of "through the present" support discovery untethered to the specific allegations of the complaint.  *See Williams v. J.B. Hunt Transp.*, Inc., 2021 WL 3625337, at *7 (C.D. Cal. May 19, 2021) (denying motion to compel relying on class definition broader than plaintiffs' factual allegations).  If anything, Plaintiffs' own class allegations undercut their request for unreleased, non-public models, as their alleged common issues focus on whether OpenAI "downloaded copies of Plaintiffs' copyrighted books and used them to train ***ChatGPT***" and "whether ***ChatGPT*** itself is an infringing derivative work."  (FCAC ¶ 58(a)-(b) (emphasis added).)

Plaintiffs' authority does not help them.  The *Kadrey* decision concerns a different set of facts, about different models with different development histories and different training datasets.  Among other things, the *Kadrey* plaintiffs requested discovery on a single model and alleged that "Meta's use of 'shadow libraries'—or online repositories comprising mass pirated copyrighted works—has continued and if anything increased over time."  *Kadrey, et al. v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC, (N.D. Cal. Nov. 9, 2024), ECF No. 267, at 9 ("*Kadrey* Br.").  Plaintiffs have ***no*** allegation of "shadow library" usage for later models or in-development models, either in their complaint or their brief.  And there is no reason to believe that any other models were trained with the "books1" or "books2" corpora at issue here.  (Ryder Decl. ¶ 6.)  Moreover, Meta made no showing of burden.  *Kadrey* Br. at 11-12.  The opposite is true here: the requested discovery would be hugely burdensome.  (*See* Ryder Decl. ¶¶ 4-5.)

Plaintiffs' other authority is equally unpersuasive.  In *Bryant*, the "under development" material involved sketches of dolls that were part of "ongoing conduct" in alleged infringement and trade secret theft; again dissimilar from the allegations and burden considerations here.  2007 WL 5430888, at *4.  *Bigband* was a patent case that turned in part on interpretation of the patent code regarding a product that is made but not sold.  2010 WL 2898288, at *1.  Plaintiffs' motion should be denied.

---

[5] If Plaintiffs mean that their claim of infringement "during the training process" was added in the FCAC (*supra* at 2), they are wrong.  (*Compare* ECF No. 1 at ¶ 55 *with* FCAC ¶ 66.)

Respectfully Submitted,

Dated: December 6, 2024 /s/ *Joseph R. Saveri*

    Joseph R. Saveri
    JOSEPH SAVERI LAW FIRM, LLP
    601 California Street, Suite 1505
    San Francisco, California 94108

    Bryan L. Clobes
    CAFFERTY CLOBES MERIWETHER &
    SPRENGEL LLP
    135 S. LaSalle Street Suite 3210
    Chicago, IL 60603

    *Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Dated: December 6, 2024

By: */s/ Paven Malhotra*
PAVEN MALHOTRA
KEKER, VAN NEST & PETERS LLP
pmalhotra@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

By: */s/ Elana Nightingale Dawson*
Elana Nightingale Dawson (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Email: elana.nightingaledawson@lw.com

By: */s/ John R. Lanham*
JOHN R. LANHAM
MORRISON & FOERSTER LLP
jlanham@mofo.com
12531 High Bluff Dr
Suite 100
San Diego, CA 92130
Telephone: 858-720-5100
Fax: 858-720-5125

*Attorneys for Defendants*

## ATTESTATION

I, Joseph R. Saveri, am the ECF user whose user ID and password authorized the filing of this document and enclosed exhibits. Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred in their filing.

Dated: December 6, 2024                                          */s/ Joseph R. Saveri*
                                                                              Joseph R. Saveri