**_E-FILED_**

United States District Court
Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Avenue
McKinleyville, CA, 95519

Re:     *In re OpenAI ChatGPT Litigation*; Master File No. 3:23-cv-3223-AMO

Dear Judge Illman:

Pursuant to this Court's standing order, the parties hereby submit this joint discovery letter brief concerning the certain Requests for Production ("RFPs") that were the subject of meet-and-confer calls on November 27, December 10, and December 11.

**Plaintiffs' Statement**

RFP No. 31: Strategic Growth and Business Plans

Plaintiffs request documents concerning any SWOT analysis, business plan, go-to-market strategy, competitive analysis, executive summary, growth plan, product integration strategy, or revenue operations plan, concerning any of the OpenAI Language Models or ChatGPT.

Courts routinely grant requests for documents and communications concerning, for example, business plans and analyses in analogous contexts. *See, e.g.*, *Sonista, Inc. v. Hsieh*, 2005 WL 2045802, at *3 (N.D. Cal. Aug. 25, 2005) (granting motion to compel business plans to show intent in trademark infringement case); *Teradata Corp. v. SAP SE*, 2021 WL 462658, at *3 (W.D. Wash. Feb. 8, 2021) (granting motion to compel production of "product development plans," *inter alia* in a case involving copyright claims); *Atico Int'l USA, Inc. v. Luv n' care, Ltd.*, 2010 WL 11505474, at *1 n.1, *6 (S.D. Fla. July 21, 2010) (ordering production of documents "reflecting business plans, projections, forecasts, market and industry analyses, market-share analyses, industry trend analyses or budgets relating to the Accused Products" in case involving claims for unfair competition and trademark infringement); *Siniouguine v. Mediachase Ltd.*, 2012 WL 13012493, at *4 (C.D. Cal. Apr. 26, 2012) (in trade secrets case, granting motion to compel production of documents about, *inter alia*, business plans); *MSTG, Inc. v. AT & T Mobility LLC*, 2011 WL 221771, at *15 (N.D. Ill. Jan. 20, 2011) (similar; patent infringement).

Defendants' business plans are relevant for understanding the uses of Plaintiffs' copyrighted works, which is germane to willfulness and fair use factor one. Defendants point out that the *Sonista* court carved out marketing and pricing strategy-related documents from its order compelling production, but this ignores the fact that Plaintiffs here withdrew their dispute on documents regarding pricing strategy. Plaintiffs request an order compelling the production of responsive documents, or in the alternative, all such documents created on or after November 1, 2021 (one year before ChatGPT's release).

RFP No. 41: Projected Income

Plaintiffs request documents *sufficient to show* OpenAI's projected income (narrowed from *all* Documents and Communications concerning projected income).

Courts in this district and elsewhere have found documents regarding projected income to be relevant in infringement cases. *See Phase Four Indus., Inc. v. Marathon Coach, Inc.*, No. 04-4801 JW, 2006 WL 1465313, at *6 (N.D. Cal. May 24, 2006); *Vasudevan Software, Inc. v. MicroStrategy Inc.*, No. 11-CV-06637-RS-PSG, 2013 WL 597655, at *1 (N.D. Cal. Feb. 15, 2013) (in patent infringement case, finding "financial projections . . . related to [infringing] products" to be discoverable); *Sportvision, Inc. v. MLB Advanced Media, L.P.*, No. 18CV03025PGGVF, 2022 WL 2817141, at *2 (S.D.N.Y. July 19, 2022) (finding documents showing financial forecasts or projections relevant to calculation of damages in patent

infringement case); *Linear Grp. Servs., LLC v. Attica Automation*, No. 13-CV-10108, 2013 WL 3944433, at *3 (E.D. Mich. July 31, 2013) (similar).

Information regarding projected income is also relevant to fair-use factor one because it goes to the commerciality of the use. Here, OpenAI designed its corporate structure to be "a partnership between our original Nonprofit and a new capped profit arm—as a chassis for OpenAI's mission: to build artificial general intelligence (AGI) that is safe and benefits all of humanity." https://openai.com/our-structure/. OpenAI no doubt will point to these purported public benefits in asserting fair use. Plaintiffs' request for documents *sufficient to show* OpenAI's projected revenues is aimed at documents to establish the counterpoint that OpenAI is highly motivated by the potential financial upside often associated with the AI industry. These documents also go to damages issues, as under the Copyright Act, disgorgement is a potential remedy.

RFP No. 45: Use of Torrents

Plaintiffs request Documents and Communications concerning the use of torrents to acquire data for training OpenAI Language Models. OpenAI offered to search for non-privileged documents discussing the acquisition of text training data used to train the relevant models, and it stated that OpenAI is "not excluding" from that search documents containing the term "torrent." Plaintiffs have reviewed the documents and information Defendants produced to date, and while Defendants' productions include some documents that would be responsive to this request, it appears that other types of these documents have not been produced, such that a narrow, targeted request for this category of documents is warranted and proportional to the needs of the case.

Documents regarding the use of torrents, particularly of pirated material, are relevant to the "bad faith" subfactor under factor one of the fair use analysis. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562–63 (1985) (explaining that "the propriety of defendant's conduct" is "relevant to the character of the use."). Piracy, theft, and other intentionally exploitative uses suggest bad faith and thus weigh against a finding of fair use. *See Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000) ("An unlawful acquisition of the copyrighted work generally weighs against a finding of fair use...."). Accordingly, evidence of OpenAI's use of torrents is relevant because torrenting often gives rise to copyright liability. *See, e.g.*, NetNames, *Sizing the Piracy Universe* 18 (Sept. 2013) ("Of all unique visitors to bittorrent portals in January 2013, it is estimated that 96.28% sought infringing content during the month, a total of 204.9m users."); Envisional, Ltd., *Technical Report: An Estimate of Infringing Use of the Internet* 4–5 (Jan. 2011) (stating that "[a]nalysis strongly indicates that private bittorrent sites . . . are overwhelmingly used for the purposes of illegitimately sharing copyrighted data."); *Malibu Media, LLC v. Goodrich,* 2013 WL 6670236, at *8–9 (D. Colo. Dec. 18, 2013) (finding infringement where Defendant visited a torrent site to "upload and download Plaintiff's copyrighted Works"); *United States v. Vaulin*, 2017 WL 3334861, at *1 (N.D. Ill. Aug. 4, 2017) (denying dismissal of indictment for criminal copyright infringement where defendant operated a BitTorrent platform).

Defendants argue that Plaintiffs should be foreclosed from seeking discovery on focused topics that Plaintiffs find important because OpenAI is reportedly casting a wide net which does "not exclud[e]" responsive documents. But Defendants' productions reveal gaps in this particular highly relevant topic. And Plaintiffs are not making an "end-run around the ESI order" as Defendants claim. Defendants are free to employ whatever methodology they find well-suited to conducting a search for responsive documents subject to the ESI Order. Plaintiffs are merely seeking highly relevant documents that have thus far evaded OpenAI's search and collection.

RFP No. 68: Documents Regarding Processing Copyrighted Material

Defendants agreed to produce to "**source code** . . . *related to obtaining publicly available training data from the internet, processing that data for use during pre-training or post-training, and filtering that data*." Plaintiffs request the documents and communications on this topic, which would give context to that source code, but Defendants refuse to produce it. Plaintiffs also request Documents and Communications regarding the storage of copyrighted data would include conversations about storage (local or external) of the copyrighted material OpenAI was processing, and discussions regarding the deletion (actual or contemplated) of copyrighted material. Defendants have offered to provide formal retention and deletion policies, but this is insufficient in part because there has already been an instance in this litigation where OpenAI deleted training data key to this case. Accordingly, the Court should order the production of all Documents and Communications regarding the storage and deletion of training data, and documents and communications on the topic italicized above.

## Defendants' Statement

RFP 31: Strategic Growth and Business Plans:  Plaintiffs assert they need these documents to establish the commercial use of their works. But OpenAI has already agreed to produce those documents, including more than one hundred pages of audited financial statements and numerous internal corporate strategy documents.  OpenAI is also performing a reasonable search for non-privileged documents discussing or describing (1) how ChatGPT and relevant models can be or are used for OpenAI commercial uses and applications and (2) OpenAI's decision to integrate ChatGPT or relevant models in OpenAI's commercial products.  These documents are more than enough, and Plaintiffs make no attempt to establish otherwise.  (*Compare supra* at 1 (arguing that Plaintiffs want discovery into alleged "uses of Plaintiffs' copyrighted works" without explaining how this differs from OpenAI's existing search).)  Rather, Plaintiffs simply demand ***almost any type of business document*** relating to OpenAI's products, including any "executive summary," "competitive analysis," or "business plan[s]."

Plaintiffs fail to articulate why ***all*** such documents are relevant to the case, or why the information already being produced by OpenAI is not enough.  As their own authority notes, a plaintiff is not entitled to business strategy documents unrelated to specific disputed issues, especially when they already have financial information.  *Sonista*, 2005 WL 2045802, at *3 (denying motion to compel pricing and marketing strategy documents not related to alleged use of trademark where party already had financials); *see also Welch v. GEICO Gen. Ins. Co.*, No.

3

8:16-CV-1460-T-36TBM, 2017 WL 3701136, at *2 (M.D. Fla. May 15, 2017) ("Plaintiff demonstrates no justification for the production of all business plans[.]" (emphasis in original)). That Plaintiffs carve out "pricing strategy" from their request is immaterial, given that they are effectively seeking the *universe* of OpenAI business planning and strategy documents.

Plaintiffs rely on cases involving inapposite situations and claims. *See Siniouguine*, 2012 WL 13012493, at *4 (finding business plans relevant to *trade secret* claims, without analysis); *Sonista*, 2005 WL 2045802, at *3 (granting discovery into business plans that may reflect intention to use or not use a *specific trademark*). Plaintiffs' remaining authorities have no bearing on the situation here. *See Teradata*, 2021 WL 462658, at *3 (concerning requests for which subpoena recipient agreed to produce documents for "*underlying antitrust action*") (emphasis added); *MSTG*, 2011 WL 221771, at *15 (privilege claims in *patent* case); *Atico Int'l USA*, 2010 WL 11505474, at *6 (appropriate temporal scope in *trademark* action). Without any showing of proportionality and relevance, and especially given the substantial discovery Plaintiffs are already receiving related to commercialization, Plaintiffs' request should be denied.

RFP No. 41: Projected Income: Plaintiffs can show no support for seeking projected income in this copyright case. Copyright damages are limited to either statutory damages or actual damages and disgorgement of an infringer's additional profits attributable to the infringement. 17 U.S.C. § 504(a). For the latter, to the extent Plaintiffs can prove all other requirements for damages under this theory, the "copyright owner is required to present proof only of the infringer's gross revenue." 17 U.S.C. § 504(b). OpenAI has produced its audited financials with actual revenue and income information. *Projected income* is not relevant. *See Phoenix Techs. Ltd. v. VMware, Inc.*, No. 15-CV-01414-HSG(DMR), 2016 WL 5725044, at *2 (N.D. Cal. Sept. 30, 2016) (in copyright case, projected sales not relevant to damages or value of copyrighted material).

Tellingly, Plaintiffs do not cite a single copyright case that supports their claim that financial projections are relevant. Instead, Plaintiffs cite four patent cases involving a damages analysis under the forward-looking "hypothetical negotiation" framework for a reasonable patent royalty. *See Phase Four*, 2006 WL 1465313, at *6; *Vasudevan Software,*, 2013 WL 597655, at *1 (finding relevance to "relative value of the allegedly infringing patented features"); *Linear Grp. Servs*, 2013 WL 3944433, at *3 (projections are "relevant to the 'reasonable royalty'" determination for patent infringement). And *Sportvision* did not involve future revenue at all, but financial information from a period pre-dating the motion to compel. 2022 WL 2817141, at *2 (concerning various financials "for the accused products for 2015 to 2021").

Plaintiffs' argument that they want projected income for "fair-use factor one" fares no better. Plaintiffs cite no authority that discovery into projected income is proportional to assess commerciality or to the needs of *this* case, especially in light of Supreme Court guidance that "many common fair uses are indisputably commercial." *Google LLC v. Oracle Am., Inc*., 593 U.S. 1, 32 (2021). Here, Plaintiffs already have ample discovery into commerciality, including the documents showing OpenAI's actual financials for its products, as well as a reasonable search for non-privileged documents relating to (1) how ChatGPT and relevant models can be or are used for OpenAI commercial uses and applications and (2) OpenAI's decision to integrate ChatGPT or relevant models in OpenAI's commercial products. Discovery must have some bounds, and Plaintiffs cannot establish that projected income discovery is warranted here.

4

RFP No. 45: Use of Torrents:  Plaintiffs' demand for all documents and communications concerning use of torrents to acquire data for training is an attempted end-run around the ESI Order and should be rejected.  As OpenAI has told Plaintiffs, it is already conducting a reasonable search for non-privileged documents discussing the compilation, acquisition, and curation of the text training data used to train the relevant models.  That is broader than Plaintiffs' document request and should cover any relevant documents.  Plaintiffs appear to concede that OpenAI has produced "responsive" documents, yet generically speculate about "gaps" or that "it appears that other types" of responsive documents "have not been produced." (*Supra* at 1-2.)  But Plaintiffs make no attempt to substantiate this argument (which was only added to their brief the afternoon of filing) and have not raised such a concern on any meet and confer with OpenAI.

It is apparent that Plaintiffs are actually seeking, while being careful to avoid saying so directly, an order compelling OpenAI to apply a specific search strategy, such as a term search for "torrent."  The Court has already rejected Plaintiffs' attempt to involve themselves in OpenAI's preparation of search terms, finding that such involvement "raises the specter of too many future delays and disputes over methodology and search term formulation." (ECF No. 166 at 3.) Plaintiffs' demand contradicts the Court's instructions, creating the "delays" and needless "disputes over methodology" the Court sought to avoid, and should be rejected.

RFP No. 68:  Documents Regarding Processing:  Plaintiffs take issue with OpenAI's offer to produce source code (the core of technical discovery) in response to this request.  But Plaintiffs fail to acknowledge that OpenAI has additionally offered to perform a reasonable search for non-privileged documents (1) relevant to how OpenAI curates and uses different types of data to train OpenAI's relevant models and (2) relevant to the methods it implements to avoid copyright infringement for the relevant models.  OpenAI has also confirmed that it is performing a reasonable search for non-privileged documents discussing the deletion of the specific datasets referenced by Plaintiffs. These offers more than adequately cover the request.  Plaintiffs ignore most of this offered production, fail to explain why it is insufficient, and again resort to a "boil the ocean" demand for irrelevant information.  Should there be some remaining issue with the scope of OpenAI's offered discovery, the solution is an order requiring Plaintiffs to comply with the Standing Order and meaningfully confer on each issue raised in their briefs before serving their letter brief portions or filing something with the Court.

Dated: December 23, 2024

Respectfully Submitted,

*/s/ Joseph R. Saveri*

Joseph R. Saveri
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1505
San Francisco, California 94108

Bryan L. Clobes
CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP
135 S. LaSalle Street Suite 3210
Chicago, IL 60603

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*

Dated:  December 23, 2024

By:    */s/ Christopher S. Sun*

Christopher S. Sun
KEKER, VAN NEST & PETERS LLP
csun@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

By:    */s/ Michael A. David*

Michael A. David (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1505
Washington, DC 20004
Telephone: (202) 637-2200
Email: michael.david@lw.com

By:    */s/ John R. Lanham*

John R. Lanham
MORRISON & FOERSTER LLP
jlanham@mofo.com
12531 High Bluff Dr
Suite 100
San Diego, CA 92130
Telephone:  858-720-5100
Fax: 858-720-5125

*Attorneys for Defendants*

## **E-FILING ATTESTATION**

I, Joseph R. Saveri, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above have concurred in this filing.


By:                                              */s/ Joseph R. Saveri*
                                          _____
                                               Joseph R. Saveri