January 10, 2025

**Via ECF**

The Honorable Robert M. Illman
United States District Court for the Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Ave.
McKinleyville, CA 95519

Re:     *In re OpenAI ChatGPT Litigation*, Master File No. 23-cv-3223-AMO Joint Letter

Dear Judge Illman:

Pursuant to the Court's order at the December 17, 2024 discovery hearing, the parties hereby submit this joint discovery letter brief concerning in-development models. In accordance with the Court's order, on December 20, 2024, Plaintiffs served Defendants a narrowed Request for Production ("RFP 81"). The parties met and conferred regarding the scope of RFP 81 but were unable to reach a resolution. RFP 81 is attached hereto as Exhibit A.

**Plaintiffs' Statement**: The Court agreed that Plaintiffs' RFP seeking discovery into OpenAI's LLM models in development "seems like a pretty reasonable request." Hrg. Tr. 12/17/24 at 42:16. At the Court's direction, Plaintiffs served a narrowed RFP identifying specific categories of documents that Plaintiffs seek concerning those in-development models ("RFP 81"). RFP 81 is tailored to "things that go squarely towards fair use and really the key claims," consistent with the Court's instruction. *Id.* at 51:1-25. The parties then conferred and resolved some, but not all, of the related disputes. OpenAI also failed to respond substantively to Plaintiffs' request for additional information to enable Plaintiffs to potentially narrow the scope of which models are relevant. OpenAI further refused to produce several categories of documents pertaining to future models, despite their agreement to produce similar documents regarding earlier models.

**Scope of In-Development Models On Which Plaintiffs Seek Discovery:**
Plaintiffs' RFP No. 81 seeks discovery into what OpenAI described in letter briefing as its "GPT-class" models. *See* ECF 217 at 2. Those models include, at a minimum, the two models that OpenAI already disclosed as in development—GPT-5 (which is specifically referenced in the FCAC) and Orion. The FCAC describes the other existing "GPT-class models" (e.g., GPT-1, GPT-2, GPT-3, GPT-3.5, GPT-4), while also referring to in-development models. (FCAC ¶ 36). The Court signaled its agreement with Plaintiffs on the relevance of these models at the December 17 hearing, telling OpenAI that "exactly what you're doing in the later models . . . bolsters [Plaintiffs'] case, whether or not you're infringing or not bolsters what their claims are." 12/17/25 Hr'g Tr. at 45:16-19. Further, Plaintiffs do not seek discovery on all aspects of OpenAI's in-development GPT-class models, such as minor "bug fixes or performance enhancements," or unexplained research "artifacts" that Nick Ryder mentions in his declaration.

But OpenAI "has the burden of clarifying, explaining and supporting its objections." *Shalabi v. Atl. Richfield Co.*, 2012 WL 3727334, at *2 (W.D. Wash. Aug. 28 ,2012). And it has done nothing to identify which so-called "artifacts" are irrelevant. That is largely because OpenAI continues to contend that Plaintiffs' claim is limited to (a) infringement of copyrighted works in the process of training ChatGPT, *see* ECF 217 at 2, 4, and (b) infringement of copyrighted works contained within books1 and books2, as alleged in the FCAC, 12/17/24 Hr'g Tr. at 45:24-46:4 (construing the Ryder Declaration as "explaining that the materials from those datasets [books1 and books2] were not actually being used after GPT 3.5").

But that is not Plaintiffs' case. Plaintiffs allege "OpenAI made copies of Plaintiffs' books *during the training process* of the OpenAI Language Models," and "OpenAI Language Models" is plainly defined therein to include all models in development, not only models that underlie ChatGPT. *See* FCAC ¶ 36, ¶ 36 n.1. Further, the allegations are not limited to infringement of the works in books1 and books2—the class definition includes all owners of copyrights "in any work that was used as training data for the OpenAI Language Models." FCAC ¶ 53.

As a result of these limitations, OpenAI has not told Plaintiffs what its "future models in development" currently are, much less which ones have been trained using the Infringed Works and other copyrighted material. Without that information, neither Plaintiffs nor the Court can readily assess OpenAI's burden argument. But the burden is on OpenAI as the party resisting discovery to specify why the request is unduly burdensome. *Rubke v. ServiceNow, Inc.*, 2024 WL 4540756, at *4-5 (N.D. Cal. Oct. 21, 2024). OpenAI does not satisfy that burden. *See, e.g.*,

*Cory v. Aztec Steel Bldg., Inc.*, 225 F.R.D. 667, 672 (D. Kan. 2005) (rejecting undue burden argument that "complying with plaintiff's request would require 'numerous man hours'"); *see also* Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(iii) (burden must be assessed by "taking into account the needs of the case, the amount in controversy, limitations on the parties' resources and the importance of the issues at stake in the litigation").

Instead, OpenAI proposes an arbitrary cut-off by allowing inspection of "*text pre-training data* for in-development, text-based GPT-class of models where the pre-training phase has been completed and the model is intended for production." OpenAI's offer does not account for the fact that infringement would occur before pre-training has been completed—it occurs when data is taken and copied, and again during the testing, development, and post-training phases.

**Requests for Documents and Communications Concerning Those In-Development Models:**
*Documents and communications concerning the actual or potential compilation, acquisition, and curation of training data*. With respect to the earlier models, OpenAI has already agreed to produce "non-privileged documents discussing the compilation, acquisition, and curation of the text training data used to train the relevant models." J. Lanham email to H. Benon (Dec. 17, 2024). This subpart merely asks for what OpenAI has already agreed to produce with respect to "the relevant models." OpenAI suggests that inspecting the pre-training data should be sufficient. It is not, in part because OpenAI is improperly limiting "pre-training data" to exclude the raw data it obtains off the internet and instead include only data it has curated and manipulated into its own datasets. Rather, a core issue is where and how data was acquired. For example, was the data unlawfully torrented or downloaded from a shadow library, or was it legally licensed? *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1164 n.8 (9th Cir. 2007) ("[A] party claiming fair use must act in a manner generally compatible with the principles of good faith and fair dealing.") (citing *Harper & Row Publ'rs v. Nation Enters.*, 471 U.S. 539, 562-63 (1985)).

While OpenAI argues that some of the training data available for inspection contains labels suggestive of origin, those labels are generic or opaque, and reveal nothing about the data source, e.g., "books-mix-20220225-v1," "contractor-pdf-ocr," "pdfs-202401." OpenAI suggests this is sufficient for Plaintiffs to question OpenAI on this topic,[1] but that is wrong. Plaintiffs are not required to guess; the information is in OpenAI's possession—the Court should compel production of the documents that would provide information about the origin of its datasets.

*Documents and communications concerning the retention or deletion of training data*. On December 23, 2024, Plaintiffs moved to compel a similar category of documents with respect to the earlier models. ECF No. 242. Plaintiffs have set forth ample reasons why this information should be produced. *Id.* But there is more—OpenAI's counsel of record has testified that the discarding of data is part of its AI model development process. Artificial Intelligence and Intellectual Property: Part I–Interoperability of AI and Copyright Law: Hearing Before the U.S. H. Comm. on the Judiciary, Subcommittee on Courts, Intellectual Property, and the Internet 2 (2023), https://shorturl.at/Ynxrr (statement of Sy Damle) (testifying that "statistical data" from training content "is incorporated into the algorithm, and the original content is discarded."). This is plainly not "discovery on discovery," as OpenAI claims.

---

[1] OpenAI's position that Plaintiffs can simply ask their clients if they've licensed to OpenAI is likewise wrong. This is a class case and discovery has not been bifurcated. Plaintiffs are entitled to take discovery on class issues.

*Documents and communications concerning ingestion of, and experimentation on, copyrighted works*. OpenAI already agreed to produce source code data on the topic of *ingestion* of training data (but only with respect to the models used to power ChatGPT). J. Lanham email to H. Benon (Dec. 16, 2024). Plaintiffs also seek documents on this topic for in-development models. Indeed, regarding experimentation on copyrighted works, OpenAI already produced documents on this topic for earlier models. *See*, *e.g.*, OPCO_NDCAL_0854646; OPCO_NDCAL_0854843. These documents reveal, among other things, improvements in the models' downstream performance when training on LibGen, a shadow library containing pirated works or database that contains the Asserted Works and numerous other copyrighted works. These are plainly relevant.

*Documents and communications concerning the identification of data sources and ethical concerns therewith.* The requested evidence is relevant to, among other things, fair use and whether the infringement was willful. *See Perfect 10*, 508 F.3d at 1164 n.8; 17 U.S.C. § 504(c)(2) (covering damages for willful copyright infringement). Indeed, OpenAI has already agreed to search for and produce similar information for their earlier models. *See* J. Lanham email to H. Benon (Dec. 16, 2024) (agreeing to produce documents "summarizing the sources of training data for the relevant ChatGPT models"); J. Lanham email to H. Benon (Dec. 17, 2024) (agreeing to produce documents "discussing how and why OpenAI curates and uses different types of data to train OpenAI's relevant models"); Defs.' Jan. 3, 2025 Search Term Report (showing OpenAI ran search terms such as "steal," "stole" "copyright," "concern," and "issue").[2]

**Defendants' Statement**
At the December 17, 2024 hearing, the Court articulated the problem posed by Plaintiffs' discovery demands into future models: "It does seem that, you know, if they don't have these completed models and they–you know, how are they supposed to be able to produce these to you? It does seem like that's going to be a very difficult burden for them."[3] Collecting broad discovery on a sweeping set of undefined models is, in short, not workable.

The Court ordered Plaintiffs to "make a more narrowed request."[4] In the spirit of compromise, OpenAI has offered Plaintiffs significant discovery into in-development GPT-class models, a critical point that Plaintiffs brush off in their letter. But Plaintiffs persist in demanding more. OpenAI respectfully requests the Court deny Plaintiffs' demands.

**OpenAI has agreed to provide broad-ranging discovery into in-development models.**
Though Plaintiffs neglect to mention it, following the last hearing, OpenAI agreed to provide Plaintiffs with extensive discovery into in-development GPT-class models.[5] Among other things, OpenAI confirmed that (1) its search for complaints about copyright issues, (2) its documents concerning efforts to prevent regurgitation of training materials, and (3) its productions

---

[2] Plaintiffs dispute the efficacy of Defendants' selected search terms and other aspects with Defendants' report.
[3] Dec. 17, 2024 Tr. at 48:15–19.
[4] *Id.* at 51:21–52:6.
[5] Plaintiffs' claims that OpenAI is improperly restricting discovery into the models *currently* powering ChatGPT or models trained on "books 1 and books 2" are baseless. OpenAI's prior productions were not so limited, and OpenAI is now agreeing to provide additional discovery on in-development models.

3

concerning agreements and negotiations with third parties would *not exclude* documents because they concern a GPT-class model in development.

Notwithstanding the fact that "in development" models are (by definition) still being developed, *OpenAI has also offered to produce for inspection the text pre-training data* for in-development, text-based GPT-class of models where the pre-training phase has been completed and the model is intended for production, including the next GPT-class model still being developed, which has been referred to as "Orion."

Notably, OpenAI's offer provides Plaintiffs *exactly* what they themselves asked for at the last hearing: pre-training data. At that hearing, Plaintiffs demanded OpenAI produce "what [OpenAI is] going to *pretrain* the model on, right, so what comprises the first data sets" (emphasis added).[6] Plaintiffs also stated that the relevant models are those that will be commercialized, *i.e.*, which would be intended for production.[7] OpenAI's offer to produce the text pre-training datasets for in-development GPT-class models intended for production satisfies both of Plaintiffs' previous statements.[8] In short, Plaintiffs' criticism on the scope of OpenAI's in-development model production are inaccurate and fail to acknowledge the substantial discovery OpenAI is already offering to provide. This discovery is sufficient and more than proportional to the needs of the case.

**Plaintiffs' requests for additional discovery are either mooted by OpenAI's discovery compromises or are improper matters for discovery.** Beyond what OpenAI is already providing, Plaintiffs request the Court order production of four more broad categories of documents and communications concerning GPT-class models in development: (1) "the actual or potential compilation, acquisition and curation" of training data; (2) "identification of data sources," and  "ethical concerns therewith"; (3) the investigation of, and experimentation on, copyrighted works"; and (4) retention or deletion of training data. As explained below, not only are Plaintiffs seeking discovery not relevant or proportional to the needs of this litigation, but the demands are cumulative to what OpenAI has offered to produce through its compromise.

With respect to Categories 1 and 2, Plaintiffs fail to explain why they require further materials that discuss the "actual or potential compilation, acquisition, and curation of training data" (Category No. 1) or "documents and communications concerning the identification of data source" (Category No. 2), *when the pre-training data itself is being offered for inspection*. Plaintiffs respond that the pre-training data does not reveal how and where the data was acquired such as whether it came from the "internet" or was "legally licensed." But as Plaintiffs themselves know, when OpenAI makes training data available for inspection, the data typically shows where the data comes from (*e.g.*, data pulled from Common Crawl are labelled as such).

---

[6] Dec. 17, 2024 Tr. at 49:2–18.

[7] In response to the Court's question regarding the relevance of future models, Plaintiffs' counsel responded, "[O]ne of them's going to be commerciality of–of the products, right, whether or not–how it's going to be used. Their intent to profit or how to monetize or commercialize models in development, that goes squarely into one of the–like several of the fair use–not to mention the materials they're planning to use to develop these models." Dec. 17, 2024 Tr. at 48:2–13.

[8] Plaintiffs state that they are not seeking discovery into the types of continuous model upgrades to already released (and thus already commercialized) models such as upgrades to address bug fixes or performance enhancements that were discussed by OpenAI engineer Nick Ryder in his declaration (Dkt. 245).

4

And if Plaintiffs have further questions about a particular dataset (such as the ones they identify above), the proper course is to ask about *that set*—not to force OpenAI into blanket search across multiple custodians and repositories for *all datasets*. As for counsel's desire to know if OpenAI "legally licensed" the asserted works, they can ask their clients or simply review agreements that OpenAI has *already agreed to produce, which will not exclude agreements related to in-development GPT-class models*. On Plaintiffs' demands for materials concerning "ethical concerns" with training data for future GPT-class models, Plaintiffs never explain the relevance of such materials to a copyright dispute, and in any case, OpenAI's production of complaints about copyright issues will not exclude "in-development" models.

As for Category No. 3, OpenAI's compromise offer already addresses Plaintiffs' request for materials concerning the ingestion of works used in GPT-class models intended for production where the pre-training run is complete. With respect to the request for materials on "experimentation," Plaintiffs' request runs headlong into the concern that voluminous experimentation occurs before arriving at a production-ready GPT-class model,[9] a concern that motivated the Court's order that Plaintiffs narrow their requests in the first place.[10] Plaintiffs neglect to address this burden concern, instead relying upon a misreading of years-old documents and allegations about datasets that are irrelevant for current "in-development" models.[11]

Plaintiffs assert that infringement could happen "before training is complete" but never explain how and why the data used *in completed pre-training is insufficient*. As for "post-training," because such work is not yet complete for the models at issue, producing such materials *now* is a speculative and burdensome endeavor, which was highlighted for the Court at the last hearing.

Finally, with respect to Category No. 4, given OpenAI's offer to produce the actual text pre-training dataset used for GPT-class models intended for production, Plaintiffs fail to substantiate the relevance of any documents or communications concerning retention or deletion that led to the final set of materials ultimately used in the final pre-training run. *See Taylor v. Google LLC*, 2024 WL 4947270, at *2 (N.D. Cal. Dec. 3, 2024) ("mere speculation about missing evidence is insufficient" to compel discovery). Plaintiffs' citation to the Congressional testimony of Mr. Sy Damle is off-point. Mr. Damle was *not* counsel for OpenAI at the time he testified (May 2023)[12] and was testifying in his personal capacity. So, he was not—and could not have been—describing OpenAI's training process. More importantly, his testimony concerned how training data is *not* stored in the statistical weights behind AI models—files that are nothing more than a collection of numbers. He was *not* testifying that training data itself is "discarded," a misconception debunked by the fact OpenAI has produced training data for the relevant models. OpenAI has made a significant compromise in an attempt to resolve Plaintiffs' discovery requests into "in-development" models. Plaintiffs' requests for more should be denied.

---

[9] *See* Ryder Declaration, Dkt. 245, at ¶¶ 4–5.
[10] Dec. 17, 2024 Tr. at 48:11–19, 49:21–50:1, and 51:21–52:6.
[11] *See* Ryder Declaration, Dkt. 245, at ¶ 6.
[12] Indeed, the first US copyright lawsuit against OpenAI was not filed until months later on July 7, 2023 (*Silverman v. OpenAI, Inc.* Case No. 23-cv-3416 (N.D. Cal.)).

Dated: January 10, 2025                    Respectfully Submitted,

                                           */s/ Joseph R. Saveri*

                                           Joseph R. Saveri
                                           JOSEPH SAVERI LAW FIRM, LLP
                                           601 California Street, Suite 1505
                                           San Francisco, California 94108

                                           *Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Dated:  January 10, 2025        By:        */s/ Paven Malhotra*
                                           ROBERT A. VAN NEST
                                           R. JAMES SLAUGHTER
                                           PAVEN MALHOTRA
                                           MICHELLE S. YBARRA
                                           NICHOLAS S. GOLDBERG
                                           KEKER, VAN NEST & PETERS LLP
                                           PMalhotra@keker.com
                                           633 Battery Street
                                           San Francisco, CA 94111-1809
                                           Telephone: 415 391 5400
                                           Facsimile: 415 397 7188

                                           *Attorneys for Defendants*

## **E-FILING ATTESTATION**

I, Joseph R. Saveri, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above have concurred in this filing.

By:  /s/ Joseph R. Saveri
     Joseph R. Saveri