# EXHIBIT A

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@buttericklaw.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (pro hac vice)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312)-782-4880
bclobes@caffertyclobes.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION<br><br>This document relates to:<br><br>Case No. 3:23-cv-03223-AMO<br>Case No. 4:23-cv-03416-AMO<br>Case No. 4:23-cv-04625-AMO | Master File No. 3:23-cv-03223-AMO<br><br>**PLAINTIFFS' REQUEST FOR PRODUCTION REGARDING MODELS IN DEVELOPMENT FOLLOWING DECEMBER 17, 2024 DISCOVERY HEARING** |

In accordance with Federal Rules of Civil Procedure Rules 26 and 34, and the Court's order as stated at the December 17, 2024 discovery hearing, Plaintiffs, by and through their undersigned attorneys, hereby request that Defendants OPENAI, INC., OPENAI, L.P., OPENAI OPCO, L.L.C., OPENAI GP, L.L.C., OPENAI STARTUP FUND GP I, L.L.C., OPENAI STARTUP FUND I, L.P., AND OPENAI STARTUP FUND MANAGEMENT, LLC produce for inspection and copying, within thirty days of service, the documents and things described below, in accordance with the following definitions and instructions. Plaintiffs request that Defendants produce documents and other things described below electronically or at the offices of Joseph Saveri Law Firm, LLP, 601 California Street, Suite 1505, San Francisco, California 94108.

## DEFINITIONS

As used herein, the following words, terms, and phrases—whether singular or plural, or in an alternate verb tense—shall have the meanings ascribed below. Defined terms may not be capitalized or made uppercase. The given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form:

1. "Agreements" means any oral or written contract, arrangement or understanding, whether formal or information, between two or more Persons, including all drafts, versions, modifications, amendments, attachments, exhibits, and appendices thereof.

2. "All," "Or," and "And" should be understood to include and encompass "any"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

3. "ChatGPT" means the web-based software product created, maintained, and sold by OpenAI and made available at https://chat.openai.com.

4. "Dataset(s)" or "Database(s)" means all collections of data—including BookCorpus, Books1, Books2, Books3, Library Genesis (aka LibGen), Z-Library (aka B-ok), Sci-Hub, Bibliotik, Anna's Archive, The Pile, Project Gutenberg, the Standardized Project Gutenberg Corpus, or any other database or compiled sets of documents or data—used, referenced, or intended to be used in connection with the

1  development, training, validation, testing, or evaluation of large language models, and extends to all
2  versions, updates, augmentations, or modifications of any large language model.

3  5. "Communications" means oral or written communications of any kind, communicated
4  directly or indirectly, including, without limitation inquiries, complaints, discussions, conversations,
5  negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondences,
6  memoranda, notes, telegrams, facsimiles, electronic mail (e-mail) messages and attachments, instant or
7  direct messages (including SMS messages, text messages, Apple iMessages, Slack messages, Teams
8  messages), memoranda, documents, writings, or other forms of communications. The term
9  "Communications" includes instances where one party disseminates information that the other party
10 receives but does not respond to.

11 6. "Complaint" refers to the operative complaint at the time documents are produced in
12 response to these requests. At the time of service, the currently operative Complaint is Plaintiffs' amended
13 complaint. ECF No. 120.

14 7. "Concerning," whether capitalized or not, refers to and includes "constituting,"
15 "evidencing," "supporting," "regarding," "mentioning," "reflecting," "concerning," "relating to,"
16 "referring to," "pertaining to," "alluding to," "responding to," "proving," "discussing," "assessing,"
17 "disproving," "connected with," "commenting on," "about," "showing," "describing," and/or logically
18 or factually dealing with the matter described in the request in which the term appears.

19 8. "Defendant" means Defendant OpenAI, Inc., OpenAI, L.P., OpenAI Opco, L.L.C.,
20 OpenAI GP, L.L.C., OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., And OpenAI
21 Startup Fund Management, L.L.C.

22 9. "Document" is used in its broadest sense allowed by Rule 34(a) of the Federal Rules of
23 Civil Procedure and includes, but is not limited to, any writings, drawings, graphs, handwriting,
24 typewriting, printing, photostatting, photographing, photocopying, transmitting by electronic mail or
25 facsimile, and every other means of recording upon any tangible thing, any form of communication or
26 representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any
27 record thereby created, regardless of the manner in which the record has been stored.

This includes:

- The originals, drafts and All non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise;
- Booklets, brochures, pamphlets, circulars, notices, periodicals, papers, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, financial calculations and representations, invoices, accounting and diary entries, inventory sheets, diaries, appointment books or calendars, teletypes, telefaxes, thermafaxes, ledgers, trial balances, correspondence, telegrams, press releases, advertisements, notes, working papers, drawings, schedules, tabulations, projections, information or programs stored in a computer (whether or not ever printed out or displayed), and All drafts, alterations, modifications, changes or amendments of any of the foregoing;
- Graphic or aural representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotapes, recordings, drawing, charts and motion pictures;
- All letters, words, pictures, sounds, or symbols, or combinations thereof stored in or on any electronic, mechanical, magnetic, or optical device including, but not limited to: (i) computer data storage devices (servers, laptops hard-drives, flash drives, discs, magnetic cards, and the like), (ii) the internet or "the Cloud" (such as e-mail, web posts, social media posts, internet pages, etc.), and (iii) information stored on cell phones.
- Any computer programming code or file, including, but not limited to, source code, scripts, code packages, coding tools, and models.

10. "Identify" as it pertains to Persons means to describe each Person by name, residence address, residence telephone number, occupation, title, business address, and business telephone number. The term "Identify" as pertains to Documents means to state, to the extent known, the date the Document bears, if any; the title of the Document; the author(s) of the Document; the recipient(s) of the Document and the present location(s) or custodian of the Document.

11. "Including" and "Includes," whether capitalized or not, are used to provide examples of certain types of information and should not be construed as limiting a request or definition in any way. The

terms "including" and "includes" shall be construed as if followed by the phrase "but not limited to."

12. "Goldman Sachs" refers to the The Goldman Sachs Group, Inc., its affiliates and subsidiaries, and its employees, agents, attorneys, accountants, representatives, predecessors or successors-in-interest, any corporation or partnership under its direction, or any other person or entity acting on its behalf or under its control.

13. "GPT-1" means the OpenAI Language Model of the same name released in June 2018, as well as precursor models and variant models.

14. "GPT-2" means the OpenAI Language Model of the same name released in February 2019, as well as precursor models and variant models.

15. "GPT-3" means the OpenAI Language Model of the same name released in May 2020, as well as precursor models and variant models.

16. "GPT-3.5" means the OpenAI Language Model of the same name released in March 2022, as well as precursor models and variant models.

17. "GPT-4" means the OpenAI Language Model of the same name released in March 2023, as well as precursor models and variant models.

18. "GPT-4 Turbo" means the OpenAI Language Model of the same name, as well as precursor models and variant models.

19. "GPT-5" means the OpenAI Language Model of the same name intended as a successor to GPT-4 and currently in development at OpenAI (according to a public statement by OpenAI in November 2023), as well as precursor models and variant models.

20. "OCR" means optical character recognition.

21. "OpenAI" means Defendants OpenAI, Inc., a Delaware nonprofit corporation; OpenAI, L.P., a Delaware limited partnership; OpenAI OpCo, L.L.C., a Delaware limited liability corporation; OpenAI GP, L.L.C., a Delaware limited liability company; OpenAI Startup Fund GP I, L.L.C., a Delaware limited liability company; OpenAI Startup Fund I, L.P., a Delaware limited partnership; and OpenAI Startup Fund Management, LLC, a Delaware limited liability company, their respective parents, owners,

directors, subsidiaries and any company, business entity or person in which any of them possess an ownership interest greater than five percent.

22. "OpenAI Language Models" means all instances, iterations, versions, variants, updates, or modifications of the OpenAI Language Model known as "GPT" or "generative pre-trained transformer" and any other model developed or in development by OpenAI. This includes, but is not limited to, the original version, precursor models, Embedding Models, experimental versions, subsequent versions, updates, or refinements made to the underlying algorithms, parameters, or architecture.

23. "Output" means the response provided by OpenAI Models in response to Prompts.

24. "Person" means any natural person or any business, legal, or governmental entity or association.

25. "Prompts" means a question, statement, or other stimulus that a user provides to the OpenAI Models to generate a response.

26. "Relevant Period" includes and encompasses all times relevant to the acts and failures to act which are relevant to the Complaint.

27. "RLHF" means "reinforcement learning from human feedback."

28. "Shadow Dataset(s)" means the type of databases described in paragraph 44 of the Complaint—databases including but not limited to BookCorpus, Books3, Z-Library (aka B-ok), Library Genesis (aka LibGen), Bibliotik, Anna's Archive, and the Pile, or any other database or compiled sets of documents or data—used, referenced, or intended to be used in connection with the development, training, validation, testing, or evaluation of large language models, and extends to all versions, updates, augmentations, or modifications of any large language model. The term encompasses all versions, updates, augmentations, or modifications of such databases.

29. "Torrent System" means a network or application designed for sharing computer data.

30. "You" or "Your" refers to refers to and includes the specific Defendant(s) responding to these Requests, its employees, agents, attorneys, accountants, representatives, predecessors or successors-in-interest, any corporation or partnership under its direction, or any other person or entity acting on its behalf or under its control.

**INSTRUCTIONS**

1. Please separately respond to each item by stating (a) you will produce, (b) you are presently unable to produce, or (c) you object to production.

2. Unless superseded by a mutually-agreed-upon stipulation, the following provisions shall generally govern the production format and procedure for Hard Copy Documents and images:

    a. All Documents originating in hardcopy format will be produced as black-and-white or color (if originally in color), single-page, 300 dpi Group IV tagged image file format ("TIFF") images, with OCR text and related path provided in document level text files.

    b. In scanning hardcopy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hardcopy documents should be logically unitized). The Producing Party will use reasonable efforts to unitize documents correctly.

    c. Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

    d. Productions of the images shall be made using an image load file (.OPT or .LFP) and a delimited database/Metadata load file (.DAT), pursuant to any agreement to be made by the Parties or in accordance with any Stipulated Order Regarding ESI Protocol and Production of ESI and Paper Documents ("ESI Protocol") to be entered by the Parties.

    e. YOU will utilize best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates-stamp order.

3. Unless superseded by a mutually-agreed-upon stipulation regarding the production of ESI, All Documents shall be produced in accordance with the specifications below except for source code, which may be produced in accordance with the specifications below.

a. Where technically feasible, emails shall be produced in TIFF format. TIFFs shall be produced as true color, single-page Group IV TIFF in 8½ X 11-inch page size images at a resolution of at least 300 DPI with the quality setting of 75% or higher.

b. When producing documents in TIFF format, the image files shall be produced along with Concordance/Opticon image load files, linking the images to the corresponding document that indicate the beginning and ending of each document, showing the Bates number of each page and the appropriate unitization of the documents.

c. Each image file of an electronic document will be created directly from the original electronic document. Image files shall show all text and images that would be visible in the original electronic format (Native Format), including redlines and speaker notes.

d. All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent technically feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows. In the case of files with redacted text, OCR'ed text of the redacted documents may be provided in lieu of extracted text. OCR software should be set to the highest quality setting during processing.

e. All documents shall be produced in their original language. For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

f. Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT).

g. Microsoft Word Documents (or similar) (.DOC, .DOCX, or substantially similar non-Microsoft file formats) should be produced as a single color PDF file for each Document, containing all images for that document, and should be imaged in a

manner that captures track changes and comments. To the extent Plaintiffs believes the converted image format distorts, omits, or causes information to be improperly displayed, Plaintiffs may request the Document in Native Format and the Parties shall meet and confer to attempt to resolve the problem(s).

h. In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

i. The following ESI shall be produced in native file format:
   i. Excel files;
   ii. Text message files;
   iii. Presentation files (e.g., PowerPoint);
   iv. Personal databases (MS Access);
   v. Audio/video files;
   vi. Web pages;
   vii. Animations;
   viii. Source code.

j. To the extent responsive Text Messages are being produced, they will be produced in a reasonable usable format. YOU will disclose its production format of Text Messages to the Plaintiffs prior to the production of Text Messages. Plaintiffs retain their rights to meet and confer on the production format to address any concerns.

k. The Parties reserve the right to request production of other ESI types in Native Format, for example, that documents be produced in Microsoft Word, in addition to TIFF images. The Parties agree to meet and confer regarding such requests.

l. PowerPoint or other presentation files should be produced in Native Format as (e.g., as .PPT files). PowerPoint presentations shall also be produced in full-slide image

format, along with speaker notes (which should follow the full images of the slides) with related searchable text, Metadata, and bibliographic information.

m. In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the parties shall meet and confer to determine the appropriate form of production.

n. ESI shall be processed in a manner that preserves hidden columns or rows, hidden text, worksheets, notes, tracked changes, and comments. Any Party seeking a deviation from this provision must provide notice to other Parties and the Parties agree to meet and confer regarding such requests.

o. The Parties will meet and confer about objective coding fields and Metadata that will be produced for all ESI—including ESI produced in TIFF or Native Format, and any such Metadata will be produced in accordance with the Parties' agreement or in accordance with any ESI Protocol to be agreed upon by the Parties.

p. Any Document produced in native format, will be produced according to the following specifications:

   i. A unique Bates number and confidentiality designation shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be: "BATES000001_HighlyConfidential.xls"

   ii. The native format Documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow the Parties to track and authenticate the native format documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately calculated "MD-5 Hash Value"; (iii) the original name of the file; and (iv) a Bates number.

   iii. In all cases, unless there is no textual content, an OCR or Extracted Text file shall be produced along with the native file. For any native format documents

that cannot be imaged or where the image is produced as a separate document, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number and confidential designation, if any, of the corresponding file.

    iv. In order to preserve the integrity of any file produced in Native Format, no Bates number, confidentiality designation or internal tracking number should be added to the body of the Native Format document unless otherwise agreed to between the Producing Party and the Receiving Party during any meet and confer related to the production of that Native Format document.

    v. Plaintiffs may also request that You produce additional file types of electronic Documents in Native Format where converted image formats distort or otherwise cause information to be improperly displayed. The Parties shall meet and confer regarding such requests in good faith and cooperation.

4. These Requests for Productions should be deemed continuing such that if Your directors, officers, employees, agents, representatives or any person acting on Your behalf, subsequently discover or obtain possession, custody, or control of any document or ESI previously requested or required to be produced, and supplemental productions should be provided as additional documents become available.

5. If You claim You are unable to produce a Document, you must state whether that inability is because the Document never existed; has been destroyed, lost, misplaced or stolen; or has never been or is no longer in your possession, custody or control. Such a statement must further set forth the name and address of any person or entity that you know or believe to have possession, custody or control of that item or category of item. If any Document responsive to a request has been destroyed, produce all documents describing or referencing: (1) the contents of the lost or destroyed document; (2) all locations in which any copy of the lost or destroyed Document had been maintained; (3) the date of any such loss or destruction to the extent known; (4) the name of each person who ordered, authorized and carried out the destruction of any lost or destroyed Document; (5) all document retention and destruction policies in effect at the time

any requested Document was destroyed; and (6) all efforts made to locate any responsive Document alleged to have been lost or destroyed.

6. If You object to any item or category of item, Your response shall (a) identify with particularity each document or thing to which the objection is made and (b) set forth clearly the extent of, and specific ground for, the objection; and You should respond to the Request to the extent it is not objectionable.

7. If You object that a Document is covered by the attorney-client or other privilege, or is work-product, You shall provide a Privilege Log containing: (1) the name of the Document; (2) the name and address of the person(s) who prepared it; (3) the person(s) to whom it was directed or circulated; (4) the date on which the Document was prepared or transmitted; (5) the name and address of the person(s) now in possession of the Document; (6) the description of the subject matter of the Document; and (7) the specific nature of the privilege claimed, including the reasons and each and every fact supporting the withholding, and legal basis sufficient to determine whether the claim of privilege is valid with respect to the Document (without revealing privileged information).

8. In responding to these Requests for Production, You are to include Documents (1) obtained from witnesses who gave information to any governmental agency or investigatory body, including Congress; (2) that constitute, refer or relate to summaries of testimony or other statements in connection with any governmental agency or investigatory body proceeding or investigation, including before Congress; or (3) obtained on Your behalf in preparation for testimony or interviews before any governmental agency or investigatory body, including Congress.

# REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 81**

Documents and communications concerning:

(1) the potential or actual compilation, acquisition, curation, ingestion, retention, deletion, and experimentation of the text training data used to train models in development, including documents and communications concerning: (i) the sources or types of text training data to train OpenAI Language Models in development, (ii) the identification or contents of text training data whether contemplated or actually used as training data including but not limited to knowledge of the contents of specific training datasets and ethical concerns with respect to the use of certain content or training datasets as training data for models in development; (iii) negotiations with third parties to license the rights to copyrighted texts for use as training data for models in development, (iv) the storage and any deletion of potentially copyrighted works used to train models in development; (v) experimentation on, or ingestion of, potentially copyrighted works into models in development, whether for pre-training, post-training, or testing models in development;

(2) any efforts, attempts, or measures implemented by You to prevent OpenAI Language Models from emitting or outputting copyrighted material, including documents regarding "regurgitation," "antiregurgitation," "masking," and "memorization"; and

(3) any agreements, licenses, contracts, purchase orders, or negotiations, whether actual or contemplated, for the sale, incorporation, licensing, or other distribution for commercial purposes, whether in part or in whole, for OpenAI Language Models in development.

| | | |
|---|---|---|
| Dated: December 20, 2024 | By: | /s/ Joseph R. Saveri |

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Holden Benon (State Bar No. 325847)
Aaron Cera (State Bar No. 351163)
Margaux Poueymirou (State Bar No. 35600)
William W. Castillo Guardado (State Bar No. 294159)
Melissa Tribble (State Bar No. 339098)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:   (415) 500-6800
Facsimile:   (415) 395-9940
Email:   jsaveri@saverilawfirm.com
          czirpoli@saverilawfirm.com
          cyoung@saverilawfirm.com
          hbenon@saverilawfirm.com
          acera@saverilawfirm.com
          mpoueymirou@saverilawfirm.com
          wcastillo@saverilawfirm.com
          mtribble@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, 406
Los Angeles, CA 90027
Telephone:   (323)968-2632
Facsimile:   (415) 395-9940
Email:   mb@buttericklaw.com

Bryan L. Clobes (*pro hac vice*)
Alexander J. Sweatman (*pro hac vice anticipated*)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: 312-782-4880
Email:   bclobes@caffertyclobes.com
          asweatman@caffertyclobes.com

*Counsel for Individual and Representative Plaintiffs
and the Proposed Class*

# CERTIFICATE OF SERVICE

I, the undersigned, am employed by the Joseph Saveri Law Firm, LLP. My business address is 601 California Street, Suite 1505, San Francisco, California 94108. I am over the age of eighteen and not a party to this action.

On December 20, 2024, I caused the following documents to be served by email upon the parties listed on the attached Service List:

- **PLAINTIFFS' REQUEST FOR PRODUCTION REGARDING MODELS IN DEVELOPMENT FOLLOWING DECEMBER 17, 2024 DISCOVERY HEARING**

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 20, 2024.

*Rya Fishman*
Rya Fishman

# SERVICE LIST

Joseph Charles Gratz
Joyce C. Li
Melody Ellen Wong
Tiffany Cheung
Vera Ranieri
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105
Email: jgratz@mofo.com
   joyceli@mofo.com
   melodywong@mofo.com
   tcheung@mofo.com
   VRanieri@mofo.com

Alexandra Marie Ward
Rose S. Lee
**MORRISON & FOERSTER LLP**
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
Email: alexandraward@mofo.com
   roselee@mofo.com

Eric Nikolaides
**MORRISON & FOERSTER LLP**
250 W. 55th St
New York, NY 10019
Email: enikolaides@mofo.com

Max I. Levy
**MORRISON & FOERSTER LLP**
755 Page Mill Road
Palo Alto, CA 94304-1018
Email: mlevy@mofo.com

OpenAICopyright@mofo.com

Andrew Michael Gass
Joseph Richard Wetzel
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Email: andrew.gass@lw.com
   joseph.wetzel@lw.com

Allison L. Stillman
Rachel R. Blitzer
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Email: alli.stillman@lw.com
   rachel.blitzer@lw.com

Sarang Damle
Elana Nightingale Dawson
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1505
Washington, DC 20004
Email: sy.damle@lw.com
elana.nightingaledawson@lw.com

openaicopyrightlitigation.lwteam@lw.com

[continued on next page]

Master File No. 3:23-cv-03223-AMO           15
PLAINTIFFS' REQUEST FOR PRODUCTION REGARDING MODELS IN DEVELOPMENT FOLLOWING
DECEMBER 17, 2024 DISCOVERY HEARING

| | |
|---|---|
| 1 | Paven Malhotra |
| 2 | Robert Addy Van Nest |
| | Christopher Steven Sun |
| 3 | Katie Lynn Joyce |
| 4 | Michelle Sabrina Ybarra |
| | Nicholas Samuel Goldberg |
| 5 | R. James Slaughter |
| 6 | Thomas Edward Gorman |

**KEKER VAN NEST & PETERS**
633 Battery St.
San Francisco, CA 94111
Email: pmalhotra@keker.com
        rvannest@keker.com
        csun@keker.com
        kjoyce@keker.com
        mybarra@keker.com
        ngoldberg@keker.com
        rslaughter@keker.com
        tgorman@keker.com

*Counsel for Defendants OpenAI, Inc., a Delaware nonprofit corporation; OpenAI, L.P., a Delaware limited partnership; OpenAI OpCo, L.L.C., a Delaware limited liability corporation; OpenAI GP, L.L.C., a Delaware limited liability company; OpenAI Startup Fund GP I, L.L.C., a Delaware limited liability company; OpenAI Startup Fund I, L.P., a Delaware limited partnership; OpenAI Startup Fund Management, LLC, a Delaware limited liability company*