Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Holden Benon (State Bar No. 325847)
Aaron Cera (State Bar No. 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940
Email:            jsaveri@saverilawfirm.com
                      czirpoli@saverilawfirm.com
                      cyoung@saverilawfirm.com
                      hbenon@saverilawfirm.com
                      acera@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:      (415) 395-9940
Email:            mb@buttericklaw.com

Bryan L. Clobes (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
205 N. Monroe Street
Media, PA 19063
Telephone:     (215) 864-2800
Email:            bclobes@caffertyclobes.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION<br><br>This document relates to:<br><br>Case No. 3:23-cv-03223-AMO<br>Case No. 3:23-cv-03416-AMO | Master File No. 3:23-cv-03223-AMO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO QUASH PLAINTIFFS' THIRD-PARTY DEPOSITION SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER** |

Master File No. 3:23-cv-03223-AMO

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO QUASH PLAINTIFFS' THIRD-PARTY DEPOSITION SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

## I. INTRODUCTION

Ben Mann seeks to quash Plaintiffs' deposition subpoena. But Mann is far from a small player in this case. Indeed, he, along with his colleague Dario Amodei[1] are arguably two of the most important witnesses in this case. Mann did not just ███████████████████████████████████████ ██████████████████████████████ he also took part in and arguably supervised the illegal ██████ of that pirated data.

OpenAI did not identify anyone other than Mann and Amodei as having such firsthand knowledge. That illegal ████████ entirely undermines any possible fair use defense and is of clear relevance to whether its infringement was willful. *See Kadrey v. Meta Platforms, Inc.*, Case No. 23-cv-03417, 2025 WL 82205, at *1 (N.D. Cal. Jan. 13, 2025) (finding that evidence about Meta's acquisition and seeding of copyrighted material from LibGen is relevant "to the plaintiffs' assertion of willful infringement or to Meta's fair use defense"). Sometime after they ████ these pirated works and created the datasets for OpenAI's use as training data, both individuals left OpenAI to start a competing AI company. Plaintiffs now seek to depose these critical witnesses.

Mann argues that Plaintiffs should be required to depose other employees with *secondhand* knowledge of the relevant facts first, or even instead of him, but neither the federal rules nor caselaw support that result. Rather, basic common sense and judicial efficiency counsel in favor of first deposing Mann and Amodei, who both have *firsthand* knowledge of facts central to this dispute.

Given Mann's firsthand knowledge on highly relevant and detailed technical issues, denying his motion to quash and requiring him to sit for seven hours of deposition time is appropriate.[2] Plaintiffs remain amenable to coordinating with the *Authors Guild* plaintiffs, and they are flexible in terms of scheduling Mann's deposition before the end of February.

Accordingly, as detailed below, the Motion should be denied.

## II. FACTUAL BACKGROUND

---

[1] The Deposition Subpoena of Dario Amodei is not a subject of Mann's motion to quash.

[2] Mann and Amodei are represented by the same counsel. The parties have already met and conferred regarding the subpoena served on Amodei. Counsel has indicated that Amodei will not appear for deposition. Plaintiffs anticipate moving to compel Amodei's deposition.

Master File No. 3:23-cv-03223-AMO 1

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO QUASH PLAINTIFFS' THIRD-PARTY DEPOSITION SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

1    In response to Plaintiffs' Interrogatories, Defendants indicated that ▮▮▮▮▮▮▮▮▮▮
2    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3    ▮▮▮▮▮▮▮▮. OpenAI Supp. Resp. to Rog. 1. Additionally, Defendants further identified Amodei and
4    Mann as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ OpenAI Supp. Resp. to Rog. 15. On a subsequent meet-and-
6    confer call, OpenAI revealed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Declaration of Holden Benon
8    ("Benon Decl."), ¶ 8. No other individuals were identified.

9    On December 16, 2025, Plaintiffs served a Deposition Subpoena on Ben Mann through his
10   counsel. *Id.*, ¶ 2. The parties met and conferred regarding the deposition subpoena on January 6 and
11   January 13. *Id.*, ¶ 3. Mann agreed to sit for his deposition subject to the following conditions: (i) Plaintiffs
12   would have to coordinate the deposition with the *Authors Guild* plaintiffs; (ii)Mann would sit for only
13   four hours of record time; (iii) Plaintiffs are required to exhaust their depositions of party witnesses
14   before the deposition of Mann; and (iv) Plaintiffs would agree not to depose *Amodei*—not Mann—who
15   had at that time not been subpoenaed. *Id.* On January 13, Plaintiffs emailed Mann's counsel indicating
16   they would not object to coordinating with the *Authors Guild* plaintiffs, but they do not agree to Mann's
17   other conditions. *Id.*, ¶ 4. On the same day, Plaintiffs also served a deposition subpoena on Amodei
18   through his counsel. *Id.*, ¶ 5.

19   Pursuant to the Court's order at ECF No. 253, the parties met and conferred on January 17 in an
20   effort to resolve the Motion without the need for Court intervention. *Id.*, ¶ 6. The parties also met and
21   conferred regarding a potential deposition of Amodei. Plaintiffs provided Mann's counsel with
22   additional factual detail supporting Plaintiffs' need for seven hours of deposition time for Mann's
23   deposition. Ultimately, Plaintiffs confirmed they will coordinate with the *Authors Guild* plaintiffs, and, as
24   a compromise offer, Plaintiffs agreed to limit any deposition of Amodei to six hours. *Id.* Plaintiffs also
25   agreed the deposition of Mann could take place before the end of February, with Amodei's deposition to
26   occur within two weeks thereafter. *Id.* Counsel responded on Sunday morning simply stating they reject
27   Plaintiffs' offer without further explanation. *Id.*, ¶ 7. No counteroffer was provided. *Id.*
28

## III. ARGUMENT

Under Rule 45, "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules," which in turn is the same as under Rule 26(b). Fed. R. Civ. P. 45 advisory committee's note to 1970 amendment. "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679–80 (N.D. Cal. 2006). "[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *ATS Prods., Inc v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) (citing *Gonzales*, 234 F.R.D. at 680) (denying motion to quash even where information sought was potentially obtainable from more convenient, less burdensome sources); *see also Soc. Ranger, LLC v. Facebook, Inc.*, No. 16-MC-80205-EDL, 2016 WL 11741634, at *2 (N.D. Cal. Nov. 4, 2016) (similar, and denying the motion to quash).

### A. Mann Possesses Highly Relevant Unique Information Regarding Key Facts in this Case.

This action is largely based on OpenAI's unlawful reproduction of copyrighted books it sourced from so-called shadow libraries. The facts and circumstances surrounding the *creation* of those infringing copies are therefore core to this case.

OpenAI has confirmed that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇), which is a notorious pirate database of copyrighted works.[3] Specifically, OpenAI's Supplemental Response to Plaintiffs' Interrogatory 1 provides:

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[3] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

1  OpenAI Supp. Resp. to Rog. 1 (emphasis added).    Additionally, OpenAI's Supplemental Response to
2  Interrogatory No. 15 lists Amodei and Mann as ███████████████████████████████████
3  ████████████████████████████████████████████████ OpenAI Supp. Resp. to
4  Rog. 15. On April 24, 2024, OpenAI ████████████████████████████████████████
5  ████████████████████████████████████████ Benon Decl., ¶ 8. OpenAI has
6  not identified anyone else with this knowledge.

7       In addition to written discovery responses, documents produced by OpenAI further demonstrate
8  that Mann and Amodei have unique first-hand knowledge of at least three relevant categories of
9  information: (1) ████████████████████████████████; (2) █████████████████████
10 ████████████████████████████████████████████ and (3) OpenAI's efforts to
11 mitigate the model's ability to regurgitate copyrighted data. Each of these categories of information
12 would compel Mann and Amodei's depositions—but together, they indicate that these depositions are
13 critical.

14       *Means and Methods of* ████████████████████████████████. A court in this district
15 recently held that information about ██████████████████████████████ for use as generative
16 AI training data is relevant to not only willful infringement but also to the fair use defense. *Kadrey v.*
17 *Meta Platforms, Inc.*, Case No. 23-cv-03417, 2025 WL 82205, at *1 (N.D. Cal. Jan. 13, 2025). ████
18 ████████████████████████████████

19       OpenAI has produced documents revealing Mann's direct involvement in ████████████
20 ████████████████████████████████████████████████████████████████
21 OPCO_NDCAL_0871051 (████████████████████████████████████████████████
22 ████████); *see also* OPCO_NDCAL_0872730 (Mann's checklist for October 8, 2019, which includes
23 ████████████████████████. Other documents show conversations between Mann and Amodei
24 (but no other participants) where Mann asked Amodei about ████████████████████████████
25 ████████████████████████████████████████████ OPCO_NDCAL_0858690. In
26 another document, Mann states: ████████████████████████████████████
27 OPCO_NDCAL_0872951. An employee responds, "omg let's train on it[,]" to which Mann replies,
28

1  "haha ok I'll upload and extract." *Id.* In another document, Mann states ▇▇▇▇▇▇
2  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
3  OPCO_NDCAL_0871057. These documents are consistent with OpenAI's representation that ▇▇
4  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

   *Origin of the Names "Books1" and "Books2."* Efforts to conceal infringement is likewise highly
relevant information. *See Sanrio, Inc. v. Ronnie Home Textile, Inc.*, Case No. CV 14-06369, 2016 WL
5956096, at *9 (C.D. Cal. Jan. 5, 2016). Documentary evidence again indicates that Mann and Amodei
were the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇.

   OpenAI's documents reveal that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
In one document, for example, Amodei posed the question: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇. OPCO_NDCAL_0750438. ▇▇▇ responded: ▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.*; *see also* OPCO_NDCAL_0780353 (▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This is relevant because it
demonstrates that OpenAI had ethical concerns surrounding ▇▇▇▇▇▇▇ and considered
obfuscating the provenance of this data. These documents go to willfulness and whether OpenAI acted
in good faith. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985) ("Also
relevant to the 'character' of the use is the propriety of the defendant's conduct. Fair use presupposes
'good faith' and 'fair dealing.'") (cleaned up).

   *Mitigation efforts.* Mann and Amodei also possess knowledge of potential mitigation strategies
employed by OpenAI ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. OpenAI has produced conversations
between Mann and Amodei wherein Mann prepared a ▇▇▇▇▇▇▇▇▇▇ including examples of
what appear to be the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇ OPCO_NDCAL_0858864 (internal 0858871). Amodei responds: ▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and Mann responds, ▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇ *Id.*

**B.    There is No Blanket Rule Requiring Plaintiffs to Depose Party Witnesses Before Deposing Third Parties; In Any Event, Plaintiffs will have Already Taken Depositions of Other, Current OpenAI Employees before they Depose Mann.**

Mann claims that Plaintiffs must first depose current employees before seeking his and Amodei's deposition but cites no authority for this proposition—because there is none. Mann refers to several decisions suggesting some courts' preference for first-party discovery before a litigant requests documents from a third party, but the vast majority of these deal with document discovery, not deposition discovery.[4] The Court should disregard those authorities—especially where, as here, a former employee who leaves a company may possess unique knowledge that is not in the possession of the company's current employees.[5] Plaintiffs are entitled to depose the witnesses with firsthand personal knowledge of the events at issue.

The only case that Mann cites on deposition discovery is distinguishable. *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406 (C.D. Cal. 2014). There, the court granted a motion to quash in part because the party seeking the discovery provided "generic" deposition topics that "do not appear to have been framed with [the subpoena recipient] in mind at all." *Id.* at 412. Moreover, that court observed the burden was "substantially greater" because the deposition would have to proceed immediately before the discovery cut-off, and the Court could not assume the witness was in the district. *Id.*

---

[4] *See Genus Lifesciences Inc. v. Lannett Co., Inc.*, No. 18-CV-07603-WHO, 2019 WL 7313047 (N.D. Cal. Dec. 30, 2019) ("[W]hen an opposing party and a non-party both possess *documents*, the *documents* should be sought from the party to the case.") (emphasis added); *Ow v. United States*, No. 17-cv-00733-SK, 2018 WL 267839, at *1 (N.D. Cal. June 12, 2018) (granting motion to quash where "Plaintiffs fail to demonstrate that they could not have obtained the . . . *documents* directly from Defendant") (emphasis added); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the *documents* sought are in possession of the party defendant.") (emphasis added); *Davis v. Pinterest, Inc.,* No. 19-cv-07650-HSG, 2021 WL 3044958, *4 (N.D. Cal. July 20, 2021 (denying motion to compel under Rule 45 where "the Court does not believe that [Plaintiff] ever asked [Defendant] for *these documents*") (emphasis added); *Coppel v. Sea World Parks & Enter., Inc.*, No. 21-cv-1430-RSH-DDL, 2024 WL 4472352, *5 (S.D. Cal. Aug. 19, 2024) ("Having elected not to pursue these *documents* from Defendants, Plaintiffs may not now seek the same *documents* from [a third party].") (emphasis added). (*Compare* ECF No. 248 (counsel citation of these cases commonly replaces "documents" with "information").)

[5] This is different from document discovery where documents in a party's possession are often virtually identical to documents in a third party's possession.

Here, unlike in *Amini*, Plaintiffs identify with specificity the unique personal knowledge that Mann and Amodei possess, which is central to a core factual issue in this action: the facts and circumstances surrounding the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Further, Mann and Amodei are the very two individuals OpenAI itself identified with such knowledge. Testimony from these individuals is critically important because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Additionally, Plaintiffs are not waiting until the eleventh hour or attempting to ramrod the depositions just before the fact-discovery deadline as in *Amini*. Indeed, Plaintiffs have offered the entire month of February as a potential window for Mann's deposition, with Amodei's deposition to occur within two weeks thereafter.

The Court should give no weight to Mann's argument that Plaintiffs could simply depose members of Mann's former team because Mann "shared a transition memo and had multiple meetings during which he transitioned his work and factual knowledge to members of his former team." Mot. at 2:21-22. Secondhand hearsay knowledge gleaned through a "transition memo" and in meetings that occurred in December 2020 (when Mann departed OpenAI)[6] is no substitute for deposing a percipient witness with firsthand knowledge. Plaintiffs should not have to waste precious deposition time exploring whether witnesses remember what Mann may have told them in meetings held over four years ago.

By the time Plaintiffs depose Mann, they likely will have already taken at least one or more depositions of current OpenAI employees, including Nick Ryder and Alex Paino. Benon Decl., ¶ 9. To the extent those employees offer testimony on the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Plaintiffs will have every incentive not to seek cumulative testimony on these topics from Mann and Amodei, given the Court has ordered an hours-based cap on deposition time, inclusive of third-party depositions. *See* ECF No. 247 at 1–2.

### C. The Severe Time Restrictions Mann Seeks are Improper Because He Was Intimately Involved in the Defendants' Unlawful Conduct.

Unless otherwise stipulated or ordered, the Federal Rules provide for a default 7-hour limit on depositions. Fed. R. Civ. P. 30(d)(1). The court must allow additional time consistent with Rule 26(b)(1)

---

[6] *See* https://www.linkedin.com/in/benjamin-mann/ (Mann's LinkedIn profile stating he left OpenAI in December 2020).

and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination. *Id.*

Here, Plaintiffs agree to coordinate with the *Authors Guild* Plaintiffs. Although such coordination could create logistical complications which may impede or delay the examination, Plaintiffs have agreed not to seek an enlargement of the seven-hour default limit at this time. At least seven hours of testimony is appropriate for Mann's deposition given the importance of the witness's firsthand knowledge to core factual issues in this case.[7]

The cases cited in the Motion are inapposite. Mann relies on *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 265 (N.D. Cal. 2012), but that case dealt with a "quintessential 'apex'" witness. Here, neither Amodei nor Mann are "quintessential apex witnesses." Given his position as "Member Of Technical Staff,"[8] Mann does not even meet the threshold definition of an "apex" witness. And this is not a situation where Plaintiffs are seeking to depose a CEO with limited firsthand knowledge regarding their role in, say, developing policies or strategies, for which a half-day of deposition time could be considered appropriate. Rather, these witnesses have a rich understanding of how and why OpenAI ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ and the company's views regarding the same. The discovery produced to date reveals they have extensive knowledge of these highly technical topics for which 7 hours of initial deposition time is appropriate.

Plaintiffs will make best efforts to coordinate the deposition so that it concludes within a single day. Plaintiffs have also noticed the deposition for a location in the same city where Mann resides. Plaintiffs will also coordinate the deposition with the *Authors Guild* plaintiffs. But ultimately, given Mann's intimate involvement in the conduct that is core to action, there is no reason for the severe time restrictions that Mann is seeking.

---

[7] During the parties' negotiations, Plaintiffs offered to reduce the default cap for Amodei to six hours. Benon Decl., ¶ 6. Plaintiffs also offered to schedule Amodei's deposition at any time between February 1 and March 14.

[8] *See, supra*, note 7 (Mann's LinkedIn profile listing him as "Member Of Technical Staff" in his current role at Anthropic and his former role at OpenAI).

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Mann's Motion in its entirety.

| | | |
|---|---|---|
| Dated: January 22, 2025 | By: | */s/ Joseph R. Saveri* |
| | | Joseph R. Saveri |

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
William W. Castillo Guardado (State Bar No. 294159)
Holden Benon (State Bar No. 325847)
Aaron Cera (State Bar No. 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:     (415) 500-6800
Facsimile:       (415) 395-9940
Email:             jsaveri@saverilawfirm.com
                        czirpoli@saverilawfirm.com
                        cyoung@saverilawfirm.com
                        wcastillo@saverilawfirm.com
                        hbenon@saverilawfirm.com
                        acera@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:       (415) 395-9940
Email:             mb@buttericklaw.com

Bryan L. Clobes (pro hac vice)
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
205 N. Monroe Street
Media, PA 19063
Telephone:     215-864-2800
Email:             bclobes@caffertyclobes.com

Alexander J. Sweatman (pro hac vice anticipated)
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone:     312-782-4880
Email:             asweatman@caffertyclobes.com

Daniel J. Muller (State Bar No. 193396)
**VENTURA HERSEY & MULLER, LLP**
1506 Hamilton Avenue
San Jose, California 95125
Telephone: (408) 512-3022
Facsimile: (408) 512-3023
Email:      dmuller@venturahersey.com

David Boies
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8201
Fax: (914) 749-8300
Email: dboies@bsfllp.com

Jesse Michael Panuccio
Evan Matthew Ezray
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone: (954) 377-4237
Email: jpanuccio@bsfllp.com
       eezray@bsfllp.com

Maxwell V. Pritt
Joshua Michelangelo Stein
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6813
Telephone: (415) 293-6800
Email: mpritt@bsfllp.com
       jstein@bsfllp.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*