January 24, 2025

**Via ECF**

The Honorable Robert M. Illman
United States District Court for the Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Ave.
McKinleyville, CA 95519

Re:   *In re OpenAI ChatGPT Litigation*, Master File No. 23-cv-3223-AMO Joint Letter

Dear Judge Illman:

Pursuant to the Court's standing order regarding Discovery Disputes, Plaintiffs and third-party Microsoft Corporation ("Microsoft") hereby submit this joint discovery letter brief by which Plaintiffs seek to compel Microsoft's production of documents in response to the Subpoena to Produce Documents attached as Exhibit 1 (the "Subpoena"). Plaintiffs and Microsoft met and conferred regarding Microsoft's production of documents but were unable to reach a resolution.

**Plaintiffs' Statement**

As of January 2023, Microsoft had reportedly already invested or committed to invest a total of $13 billion in Defendant OpenAI. *See* "Microsoft to Invest $10 Billion in OpenAI, the Creator of ChatGPT," Jan. 23, 2023, *New York Times*. That investment started no later than July 2019, when Microsoft made an initial $1 billion investment. "With $1 Billion From Microsoft, an A.I. Lab Wants to Mimic the Brain," July 22, 2019, *New York Times*. Sam Altman, OpenAI's CEO, dubbed the two companies' partnership "the best bromance in tech." *See* "How Microsoft's Satya Nadella Kept the 'Best Bromance in Tech' Alive," Nov. 20, 2023, *New York Times*. Both public reporting and documents OpenAI has produced in this matter establish that Microsoft and OpenAI have worked in a remarkably close "general" business partnership to train, develop, market, and sell the OpenAI Language Models ("OpenAI LLMs") at issue in Plaintiffs' First Consolidated Amended Complaint. *See, e.g.*, OPCO_NDCAL_1478784-86 at 1478786 (█████████████████████████████████████████████). And OpenAI has performed that training by stealing copyrighted books by the thousands—if not millions—████████████. *See, e.g.*, OPCO_NDCAL_0871051-54 at 871051-52 (█████████████████████████████████████████)

In addition, Microsoft and OpenAI are co-defendants in a case containing similar allegations of copyright infringement in the training of OpenAI's LLMs in which Microsoft has already produced documents concerning infringement and fair use. The Court should order Microsoft to search for and produce documents responsive to all Requests in the Subpoena.[1]

    A. The Subpoena Requests Are Relevant

The Subpoena seeks documents falling into three categories:

1. <u>Training Documents</u> (Requests 1, 2, 3, 19, 20, 21, 22): Documents pertaining to OpenAI's or Microsoft's selection, use, acquisition, or licensing of training data.

2. <u>Oversight, Support, and Integration Documents</u> (Requests 4-9, 16, 17): Documents pertaining to Microsoft's management and support—both financial and non-financial—of OpenAI and its development and commercialization of LLMs, and to Microsoft's integration of OpenAI products and intellectual property into Microsoft's products and business.

3. <u>Investment Documents</u> (Requests 10-15, 18): Documents pertaining to Microsoft's investment decision-making with respect to OpenAI, including documents reflecting analysis of copyrights in relation to Microsoft's investment (Request 13).

Despite Microsoft's acknowledged role in bankrolling and overseeing development of every aspect of the OpenAI LLMs, Microsoft now seeks to avoid its obligations under the Subpoena by

---

[1] Microsoft is simply wrong on the law in its objection that Plaintiffs must revise the Subpoena to reflect a "place of compliance" where Microsoft is headquartered. The place of compliance for a Rule 45 Subpoena is within 100 miles of wherever a company regularly transacts business. FRCP 45(c)(2)(A); *see In re AMD*, 2022 WL 2905068, at *2 (N.D. Cal. July 22, 2022)("AMD does not dispute that the subpoena properly specifies a place for compliance that is within 100 miles of where AMD regularly transacts business" in Austin, TX, and movant's "motion to compel should have been filed in the Western District of Texas, which encompasses Austin"). *AMD* was not decided based on custodians' locations, as Microsoft suggests. Microsoft does not deny that it has at least one office in San Francisco, the place of compliance in the Subpoena.

claiming the Requests impose an undue burden. Microsoft has offered to produce only one category of documents in response to the Subpoena, which is "Licensing and/or Data access agreements" to which Microsoft or OpenAI is a party in response to Request 19. Microsoft is wrong about its obligations. Plaintiffs are entitled to all Rule 26(b)1(1) discovery, meaning they

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

see *S. Cal. Hous. Rts. Ctr. v. K3 Holdings*, 2023 WL 6373143, at *4 (C.D. Cal. Mar. 2, 2023) (scope of discovery under Rule 45 subpoena same as Rule 26).

Here, the documents Plaintiffs seek are all relevant to Plaintiffs' claim for infringement and damages associated with it, or else to fair use. The **Training Documents** have obvious relevance to OpenAI's infringement and its willfulness because they concern what material OpenAI used for its LLM training, including copyrighted data (Request 3) and books (Request 21), and Microsoft's licensing of training data is relevant to fair-use factor four—*i.e.*, the existence of a market for training data—and damages—*i.e.*, marketplace value (Requests 19-22). Microsoft closely tracked and assisted OpenAI in managing its training datasets. See OPCO_NDCAL_1478775 at 1478775 ( ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ).

The **Oversight, Support, and Integration Documents**, and the **Investment Documents** are likewise relevant to OpenAI's infringement and willfulness. This is due to the likelihood, if not certainty, that OpenAI discussed with its primary investor and business partner the risks associated with pirating copyrighted material—including books—to train OpenAI's LLMs and bringing them to market. Discussions concerning those risks would arise in the course of Microsoft's strategic management role of OpenAI and Microsoft's use of OpenAI LLMs in Microsoft AI products. OPCO_NDCAL_1463998-1464006 at 1463998-99 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Those categories of documents are also relevant to establishing the *commercial* purpose and character of OpenAI's use of the infringed works, and Plaintiffs' potential disgorgement damages.

### B. No Factor Identified in Rule 26(b)(1) Supports Microsoft's Claim of Undue Burden

Microsoft has attempted to justify its claims of undue burden on fairness grounds, contending that Plaintiffs must seek the documents first from OpenAI. But many of the Requests seek documents that are relevant and clearly are not in OpenAI's possession. For those Requests that do seek documents exchanged with OpenAI, this case is an obvious exception to any "preference" the FRCP may have for seeking documents from a party before seeking them from a third party.[2] There is no unfairness to Microsoft in this instance, considering its indisputably close strategic relationship to OpenAI, its investment of billions of dollars in the company, and Microsoft's completion of the necessary work to produce responsive documents in the ongoing litigation in S.D.N.Y. That lawsuit alleges both OpenAI *and* Microsoft infringed on copyrighted

---

[2] *See generally Soto v. Castlerock Farming & Transp.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012).

material to train the companies' LLMs, and is already at least 10 months into discovery. Even if Plaintiffs were demanding a "re-production" of documents (and they are not), the cost would be borne by *Plaintiffs* by reviewing potentially "false hits." The admitted overlap between the actions substantially reduces the work in searching for, reviewing, and preparing documents for production. Because Microsoft has already reviewed and categorized them for relevance, substance, and privilege, some categories almost certainly will not need *any* extra review. Moreover, the case schedule has no room for Plaintiffs to wait for OpenAI to complete production of documents (which is ongoing) and then revise the scope of the Subpoena. Depositions have started and the discovery cut-off is in three months. Plaintiffs have been reasonable, which is all Microsoft's cases demand, in seeking discovery from OpenAI's deeply invested strategic partner.

Furthermore, Microsoft ignores that every factor in Rule 26(b)(1) supports a finding of *no* undue burden. The "issues at stake in the action" are of great public importance, considering (a) OpenAI's and Microsoft's public predictions about LLMs' effects on the larger economy,[3] and (b) the scope of infringement Plaintiffs allege. The amount in controversy is potentially billions of dollars. Microsoft has information the parties do not, including Microsoft's assessment (as strategic partner and primary investor in OpenAI) of the risks inherent in OpenAI's use of pirated copyrighted material. Microsoft has essentially endless resources to search for and produce any documents it has not already located. Microsoft's investment and its role as a singular strategic partner backing, overseeing, and benefitting from OpenAI's LLM development make documents from both sides of that relationship essential to resolving issues here.

## Non-Party Microsoft's Statement

Microsoft's investment in and collaboration with OpenAI is not a secret. It is equally well known that OpenAI and Microsoft are separate companies, each with their own generative AI product offerings that, at times, compete. Microsoft and OpenAI are involved in several cases related to their products, however Microsoft is not a defendant in this case. Even so, Microsoft indicated to Plaintiffs that it would produce documents in response to the portion of the Subpoena where a nonparty's activities might be relevant.[4] But Plaintiffs want much more, demanding that Microsoft search for and produce documents that they acknowledge are squarely within the possession of a party—OpenAI—as well as documents about Microsoft's activities that they have not shown are relevant to any issue in this case. "[T]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995). "Underlying [those protections] is the recognition that the term 'non-party' serves as a constant reminder of the reasons for the limitations that characterize third-party discovery." *Airwair Int'l Ltd. v. Zoetop Business Co.*, 2021 WL 6091263, at *2 (N.D. Cal. Dec. 23, 2021) (Illman, J.). Plaintiffs have not shown why the Court should forego those protections here. The Court should deny Plaintiffs' request.

**A. The Subpoena Is Deficient Because It Identifies An Improper Place Of Compliance.**

The Subpoena is deficient because the place of compliance is more than 100 miles from Redmond, Washington, the site of Microsoft's headquarters and where any responsive documents and the relevant custodians reside. The Court should deny Plaintiffs' request on this basis alone and direct

---

[3] Just this month Microsoft announced $80 billion in AI infrastructure investment. "Microsoft plans to invest $80 billion on AI-enabled data centers in fiscal 2025," Jan. 3, 2025, *Reuters*.
[4] Microsoft's willingness to produce was conditioned on Plaintiffs reissuing the Subpoena with a proper place of compliance in or around Redmond, Washington.

3

them to issue a new subpoena with a proper place of compliance, such that the Western District of Washington would be the proper venue to hear challenges to it. As to the production of documents, Rule 45 defines the place of compliance as "a place within 100 miles of where the person resides, is employed, or regularly transacts business." Fed. R. Civ. P. 45(c)(2)(A). With respect to a corporation, courts in the Ninth Circuit have held that the proper place of compliance is within 100 miles of the corporation's headquarters and where its custodians of record reside, are employed, and regularly transact business in person. *See Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (holding that the proper place to hear a motion to compel is where the nonparty is headquartered); *see also Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 984 (N.D. Cal. 2015) (finding there is "no question" that the proper district to hear a motion to compel compliance with a subpoena is where the nonparty is headquartered).[5]

### B. Nearly All Of The Documents Sought Are More Properly Obtained From OpenAI.

In determining whether to enforce a subpoena, courts must look to both Rule 45(d) protecting a nonparty from "undue burden or expense" and Rule 26(b)[6] permitting a court to limit discovery if it "is obtainable from some other source that is more convenient, less burdensome, or less expensive" or "if the burden or expense of the proposed discovery outweighs its likely benefit." Courts in this District have consistently protected nonparties from the burden of producing documents obtainable from a party to the case. *See, e.g., LegalZoom.Com v. RocketLawyer Inc.*, 2015 WL 12832823, at *2 (N.D. Cal. Mar. 23, 2015); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007). "There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant." *Nidec*, 249 F.R.D. at 577.

Most of the documents Plaintiffs seek are undisputedly in OpenAI's possession. *See* Requests 1-3, 7, 9, 11-13, 16 (expressly requesting documents between or exchanged with OpenAI), 4-6, 8, 14-15 (requesting documents on topics that also likely exist with OpenAI). In discussing the documents' purported relevance, Plaintiffs admit that the focus is on "the scope of ***OpenAI's*** [alleged] infringement and its willfulness" and what "***OpenAI*** discussed with its primary investor and business partner." Thus, OpenAI already has possession of the responsive documents.

Plaintiffs' allegation that this case is an exception to requiring a party to seek documents first from a party is unsupported. Plaintiffs have not shown that they are unable to obtain any of these documents from OpenAI, as was done in *Soto v. Castlerock Farming & Transport, Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012), cited by Plaintiffs. Microsoft's relationship with OpenAI does not excuse Plaintiffs' obligation to seek party discovery first. A nonparty is afforded the protections under Rules 26 and 45 regardless of its relationship with any party. *LegalZoom.Com*, 2015 WL 12832823, at *2. Similarly, Plaintiffs do not explain how the existence of the SDNY litigation, where Microsoft *is* a party, affects their ability to obtain documents from OpenAI in this case. Even if there were a complete overlap between the claims, requiring Microsoft to re-produce its SDNY documents in this case would be nothing but an improper fishing expedition given that Plaintiffs have not shown their relevance. *See Pac. Wine Distribs., Inc. v. Vitol Inc.*, 2022 WL

---

[5] *In re AMD*, cited by Plaintiffs, supports Microsoft's position. The court recognized that *Europlay* applies in a case such as this where the nonparty argued both its headquarters and relevant custodians were located in a different district and specifically objected that the subpoena failed to comply with Rule 45(c)(2). *In re AMD*, 2022 WL 2905068, at *2 (N.D. Cal. July 22, 2022).

[6] Plaintiffs' assertion that Microsoft has ignored the factors in Rule 26(b)(1) is absurd. Microsoft's statement focuses on the guideposts of Rule 26(b)(1): relevance, burden, and proportionality.

1489474, at *1 (N.D. Cal. May 11, 2022) (recognizing the need to show relevance of every document when requesting re-production from another case). Plaintiffs' point as to the shifting burden of a re-production is also irrelevant as "before the Court addresses burden, the subpoenaing party must demonstrate relevance" and Plaintiffs "ignore[] the burden of producing confidential business information." *Id.* at *2. Absent a complete re-production, Microsoft would be required to review each document from SDNY to determine whether it is responsive to the Subpoena. Finally, Plaintiffs' concerns regarding the schedule in this case do not excuse them from meeting their obligations under Rules 26 and 45 to take "reasonable steps" to avoid imposing an undue burden on Microsoft. *See LegalZoom.Com*, 2015 WL 12832823, at *2 (finding that a party must identify any specific gaps in an opposing party's production in a subpoena to a nonparty). Plaintiffs' requests should be denied for this reason as well.

### C. Many Requests Seek Irrelevant Information Or Are Improper.

"The party seeking to compel compliance with a subpoena bears the burden of establishing that its request seeks relevant information and thus falls within the appropriate scope of discovery." *Sacks Holdings, Inc. v. Vaidya*, 2024 WL 4730424, at *3 (N.D. Cal. Nov. 7, 2024). Plaintiffs fail to meet this burden as to nearly all of the requests. Specifically, Plaintiffs have not shown how **Microsoft's** internal documents and due diligence related to its investments in OpenAI are relevant to this action where Microsoft is not a party and its own conduct is not at issue. *See* Requests 4, 10-15, 18.[7] Plaintiffs' arguments confirm that the only basis for relevance is that such documents may reveal discussions between Microsoft and OpenAI. However, as discussed above, such information is undisputedly in OpenAI's possession and, as such, even if it is relevant, it is disproportionate to the needs of the case to require Microsoft to produce any such documents.

Notably, Plaintiffs have not even attempted to justify the relevance of various other requests. For example, Plaintiffs' Request 5 seeks Microsoft's profits and revenues for its products. Plaintiffs do not provide any independent relevance basis for this request, which is not surprising given that no Microsoft product is at issue in this case and, therefore, Microsoft's related profits and revenue can be of no relevance. Similarly, Plaintiffs do not explain the relevance of Request 17 seeking Microsoft's offers of employment to any OpenAI officer, director, or manager. It is entirely unclear how any such documents would reveal relevant discussions between Microsoft and OpenAI, which is the sole assertion of relevance that Plaintiffs provide for these documents.

Finally, Plaintiffs allege that their broad requests for all documents related to Microsoft's licensing of data (Requests 19-22) are relevant to the existence of a market. However, Microsoft has agreed to produce documents "sufficient to show licensing and/or data access agreements . . . that provide for Microsoft and/or OpenAI to receive, access, and/or use text data in training Large Language Models" and Plaintiffs fail to show how anything beyond that is relevant to the existence of a market in this case. Requiring Microsoft to produce more is beyond its obligations under Rule 45.

The limited relevance of these documents, as well as the undue burden on Microsoft to search for and produce them, mandates denial of Plaintiffs' request in its entirety.

---

[7] Requests 15 and 18 seeking documents sufficient to show various Microsoft agents involved in its investment in OpenAI are also improper because, in addition to being irrelevant to the claims in this case, they effectively amount to impermissible interrogatories served on a nonparty under Rule 45. *See Correct Transmission LLC v. Microsoft Corp.*, 2023 WL 7301240, at *2 (W.D. Wash. Nov. 6, 2023); *see also Candler v. Santa Rita Cty. Jail Watch Commander*, 2014 WL 2120310, at *4 (N.D. Cal. May 12, 2014) ("Interrogatories may only be propounded on parties to the case.").

Date:  January 24, 2025                           By:   /s/ *Maxwell V. Pritt*

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street Armonk,
NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

Evan Matthew Ezray *(pro hac vice)*
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
eezray@bsfllp.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Margaux Poueymirou (State Bar No. 35600)
William W. Castillo Guardado (State Bar No. 294159)
Holden Benon (State Bar No. 325847)
Aaron Cera (State Bar No. 351163)
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com

mpoueymirou@saverilawfirm.com
wcastillo@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, 406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
Email:            mb@buttericklaw.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
Alexander J. Sweatman (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel: (312) 782-4880
bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

**VENTURA HERSEY & MULLER, LLP**
Daniel J. Muller (State Bar Bo. 193396)
1506 Hamilton Avenue
San Jose, California
Telephone: (408) 512-3022
Facsimile: (408) 512-3023
Email: dmuller@venturahersey.com


*Counsel for Individual and Representative Plaintiffs and the Proposed Class*


**ORRICK, HERRINGTON & SUTCLIFFE LLP**

 */s/ Annette L. Hurst*
Annette L. Hurst

Attorneys for Non-Party Microsoft Corp.

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 24, 2025

BOIES SCHILLER FLEXNER LLP

*/s/ Maxwell V. Pritt*
    Maxwell V. Pritt

*Attorneys for Plaintiffs*