JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
M. TODD SCOTT (SBN 226885)
tscott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

CATHERINE MALONE (SBN 325283)
cmalone@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
Telephone:    +1 949 567 6700
Facsimile:    +1 949 567 6710

Attorneys for Non-Party
Benjamin J. Mann

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION | Case No. 3:23-cv-03223-AMO<br><br>**NON-PARTY BENJAMIN J. MANN'S REPLY IN SUPPORT OF MOTION TO QUASH PLAINTIFFS' THIRD-PARTY DEPOSITION SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER** |

## I. INTRODUCTION

Denying the Motion to Quash the deposition of Benjamin J. Mann (the "Motion" or "Mot.")[1] would inflict a substantial and disproportionate burden on Mr. Mann. Plaintiffs' Opposition brief (the "Opposition" or "Opp.") rests on years-old communications, but more importantly, it ignores the fact that the very evidence on which Plaintiffs rely demonstrates that there are numerous party witnesses who have not been deposed from whom information should first be sought. Indeed, Plaintiffs do nothing to justify this third-party deposition in advance of ***any first-party deposition discovery***. Instead, Plaintiffs concede they have not deposed a single OpenAI employee on any topic before seeking to burden Mr. Mann. For these reasons the Subpoena should be quashed.

If the Court is inclined to permit any deposition, which it should not, Mr. Mann is entitled to several basic protections that should be uncontroversial for any third-party deponent. Not only should the Court require Plaintiffs to coordinate his deposition with the plaintiffs in the *Authors Guild* litigation, as Plaintiffs already agreed was appropriate, it should strictly bar any questions about Mr. Mann's current employer (and competitor to OpenAI), Anthropic, and limit the duration to no more than four hours and to subjects not covered by party witnesses. Given Plaintiffs' attempt to invert the normal sequence of first- and third-party discovery and their resultant lack of evidence that Mr. Mann's testimony will provide important and unique facts, they are entitled to no more.

## II. ARGUMENT

### A. The Subpoena Should Be Quashed Because Plaintiffs Admittedly Have Yet to Depose OpenAI Witnesses With the Same Knowledge as Mr. Mann

As the Motion details, and Plaintiffs never dispute, governing law requires courts to quash non-party deposition subpoenas where the "Plaintiffs fail to demonstrate that they could not have obtained the . . . [information] directly from Defendant." *See* Mot. at 6, citing *Ow v. United States*, No. 17-cv-00733-SK, 2018 WL 6267839, at *1 (N.D. Cal. June 12, 2018). That law should end the

---

[1] All Abbreviations and short forms herein are taken from the Motion, and all emphasis of cited sources is in the original unless noted otherwise. "Mann Reply Decl." refers to the Declaration of Benjamin J. Mann filed in support of this brief.

Court's inquiry here. While Plaintiffs urge the Court to simply "disregard" it, Opp. at 6,[2] that law controls, and supports quashing Mr. Mann's non-party Subpoena for two interconnected reasons.

### 1. The Evidence Proves That Many Other OpenAI Employees Share Mr. Mann's Same Knowledge About OpenAI and That OpenAI's Discovery Responses Identifying Mr. Mann Are Incorrect

Plaintiffs cite OpenAI's internal communications from 2020 to argue that Mr. Mann has unique knowledge about issues relevant to their claims, Opp. at 3-5. But those communications prove just the opposite. They show that **more than a dozen other OpenAI employees involved in the same discussions** as Mr. Mann, s*ee, e.g.*, OPCO_NDCAL_0750434 (conversation between 18 recipients, at least four of whom are still at OpenAI), many of whom share Mr. Mann's knowledge about the subject matter being discussed.[3] As federal courts routinely hold, "when an opposing party and a non-party both possess [the same information], the [information] should be sought from the party to the case." *See* Mot. at 1-2, quoting *Genus Lifesciences Inc. v. Lannett Co., Inc.*, No. 18-cv-07603-WHO, 2019 WL 7313047, at *4 (N.D. Cal. Dec. 30, 2019) (citation omitted). Though that case dealt with documents, the rationale applies even more strongly to forcing a third party to sit for deposition, which is far more onerous. *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 411 (C.D. Cal. 2014) (quashing deposition subpoena when it was unclear that information that a non-party possessed was material and uniquely relevant information such that subpoenaing party's need for testimony outweighed the burden on non-party).

Mr. Mann's sworn declarations submitted in support of the Motion and this Reply confirm that his knowledge about OpenAI's actions is shared by his former OpenAI team members, many of whom **are still employed there**. *See* ECF 248-1, Mann Decl. ¶ 5; Mann Reply Decl. ¶¶ 2-3, 5-6. Plaintiffs justify their demand to the Court by claiming that Mr. Mann's former Open AI team

---

[2] Plaintiffs argue that certain of the governing authorities cited by the Motion are inapposite because they address document discovery, not deposition discovery. *See* Opp. at 6, n. 5. But the cases are about non-party discovery in general, and Plaintiffs identify no authority suggesting the Court's Rule 45 evaluation of undue burden depends upon the form of discovery sought.

[3] As discussed further below, if the Court does not quash the Subpoena outright, it should require Plaintiffs to complete the depositions of OpenAI employees first and then confer with Mr. Mann's counsel over the scope of any remaining issues to be covered at his deposition.

1  members have only "**secondhand** knowledge of the relevant facts." Opp. at 1. But the factual record
2  proves the opposite. OpenAI communications Plaintiffs cited in the Opposition, *see, e.g.*,
3  OPCO_NDCAL_0750434 (communication including Mr. Mann's former team members), and Mr.
4  Mann's sworn declaration confirm that his former OpenAI team members "share [his] same
5  knowledge of OpenAI's activities during that period." ECF 248-1, Mann Decl. ¶ 5.

6        Significantly, Plaintiffs' Opposition relies on OpenAI's supplemental interrogatory
7  responses, which incorrectly identified Mr. Mann as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. at 4. But Mr. Mann left OpenAI
9  ***before*** development of ▮▮▮ even began, Mann Reply Decl. ¶ 8, so he could not have been
10 responsible for that ▮▮▮▮▮▮▮▮▮. At bottom, OpenAI's discovery responses are
11 factually incorrect and point the finger at a competitor's employee who was not involved in the
12 creation of ▮▮▮.

13       Plaintiffs further assert that Mr. Mann has unique knowledge about OpenAI's collection of
14 the datasets used to train its LLMs, but Mr. Mann's unrebutted declaration specifically identifies
15 "[m]embers of [his] former team at OpenAI," who are still employed by OpenAI and who "share
16 [his] same knowledge of OpenAI's activities during that period," including "Nick Ryder, Greg
17 Brockman, Shantanu Jain, Alex Paino, Chris Hallacy, and Nik Tekak, among others." ECF
18 No. 248-1, Mann Decl. ¶ 5. In his Reply Declaration, Mr. Mann further explains that current
19 OpenAI employees "Chris Hallacy and Shantanu Jain have firsthand knowledge and were involved
20 in data collection during [his] time at OpenAI," Mann Reply Decl. ¶ 5, and that "Chris Hallacy,
21 Nick Ryder, Shantanu Jain, and Greg Brockman were involved in the decision-making, analysis,
22 and conversations around training data and use, including collection and use of datasets containing
23 books, to the same extent as [him]," *Id.* ¶ 2. Against Mr. Mann's sworn testimony, Plaintiffs have
24 made no showing to suggest that Mr. Mann has information that cannot be acquired from those and
25 other OpenAI witnesses, and the Subpoena should be quashed on that basis.

26       **2.**    **Plaintiffs Have Not Begun to Depose OpenAI's Witnesses**

27       The Subpoena should also be quashed because Plaintiffs have yet to begin, much less
28 exhaust the depositions of Defendant OpenAI's witnesses. *See* Mot. at 6, citing, *e.g., Audio MPEG,*

*Inc. v. HP Inc.*, No. 16-mc-80271-HRL, 2017 WL 950847, at *4 (N.D. Cal. Mar. 10, 2017). Plaintiffs argue there is no authority requiring them to "first depose current [OpenAI] employees before seeking" Mr. Mann's deposition, *see* Opp. at 6, but indeed, their own cited authority proves otherwise. *See Soc. Ranger, LLC v. Facebook, Inc.*, No. 16-MC-80205-EDL, 2016 WL 11741634, at *2 (N.D. Cal. Nov. 4, 2016) ("there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests.") (citation omitted). In *Social Ranger,* the plaintiff had already deposed many party witnesses, and, based on what was learned from them, was able to demonstrate that the non-party witness "likely possess[ed] highly relevant personal knowledge" that required his deposition. *See Id*. Here, by stark contrast, Plaintiffs have not taken even one deposition of Defendant OpenAI's employees, and cannot make any showing that Mr. Mann possesses unique information that cannot be obtained from a party witness. *See* Mot. at 7.

Tacitly conceding their obligation to exhaust party discovery before burdening non-party Mr. Mann, Plaintiffs speculate that "[b]y the time [they] depose Mann, they ***likely*** will have already taken at least one or more depositions of current OpenAI employees." Opp. at 7 (emphasis added). That non-committal speculation does not and cannot discharge Plaintiffs' obligation to exhaust less intrusive discovery from Defendant OpenAI before burdening Mr. Mann. *See, e.g.*, *Davis v. Pinterest, Inc.,* No. 19-cv-07650-HSG, 2021 WL 3044958, *4 (N.D. Cal. July 20, 2021 (denying motion to compel under Rule 45 where "the Court does not believe that [Plaintiff] ever asked [Defendant] for" the information being subpoenaed from the third party).

**B.     In the Alternative, the Court Should Enter a Reasonable Protective Order**

Plaintiffs have now agreed that if the Court allows Mr. Mann's deposition to go forward—and it should not—they will coordinate with plaintiffs in the *Authors Guild* actions so that Mr. Mann is required to sit only once across both actions, and for no more than a day altogether. *See* Opp. at 8.

If the Court declines to quash the Subpoena outright, however, Plaintiffs' offer should be the starting point, and the Court should impose additional restrictions to protect Mr. Mann from an undue burden as a third party. *See* Mot. at 9. First, the Court should also require Plaintiffs to depose

all OpenAI witnesses before Mr. Mann, and then to confer with Mr. Mann about the scope of his deposition, limiting it to whatever non-cumulative factual issues remain to be established. Because OpenAI is a key competitor to Mr. Mann's current employer, the protective order should prohibit any questions about Anthropic.

As discussed in the Motion, Mr. Mann further requests that any deposition be limited in time to what Plaintiffs fairly need after they have finished deposing all OpenAI employees with overlapping knowledge to Mr. Mann, but no more than four hours. *See* Mot. at 9. Limiting the time on the record will ensure that Plaintiffs only question Mr. Mann about non-cumulative information they believe is uniquely within his knowledge and will shield him from part of the burden of a non-party deposition.

### III.  CONCLUSION

For reasons set forth in the Motion and as further explained above, Mr. Mann respectfully requests that the Court grant his motion to quash the Subpoena, or, in the alternative, to issue a protective order to reduce the extreme burden on him.

Dated:  January 27, 2025

JAMES N. KRAMER
M. TODD SCOTT
CATHERINE L. MALONE
Orrick, Herrington & Sutcliffe LLP

By: _____*/s/ James N. Kramer*_____
JAMES N. KRAMER
Attorneys for Non-Party Benjamin J. Mann