| | |
|---|---|
| **JOSEPH SAVERI LAW FIRM, LLP** | **BOIES SCHILLER FLEXNER LLP** |
| Joseph R. Saveri (SBN 130064) | David Boies (*pro hac vice*) |
| 601 California Street, Suite 1505 | 333 Main Street |
| San Francisco, CA 94108 | Armonk, NY 10504 |
| Telephone: (415) 500-6800 | Telephone: (914) 749-8200 |
| Facsimile: (415) 395-9940 | Email: dboies@bsfllp.com |
| Email: jsaveri@saverilawfirm.com | |
| **CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP** | Matthew Butterick (SBN 250953) |
| | 1920 Hillhurst Avenue, #406 |
| Bryan L. Clobes (*pro hac vice*) | Los Angeles, CA 90027 |
| 205 N. Monroe Street | Telephone: (323) 968-2632 |
| Media, PA 19063 | Facsimile: (415) 395-9940 |
| Telephone: (215) 864-2800 | Email: mb@butgericklaw.com |
| Email: bclobes@caffertyclobes.com | |

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION | Case No. 3:23-cv-03223-AMO |
| This document relates to: | **PLAINTIFFS' MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE [DKT. 247]** |
| Case No. 3:23-cv-03223-AMO<br>Case No. 4:23-cv-03416-AMO<br>Case No. 4:23-cv-04625-AMO | |

# **MOTION**

Plaintiffs move under 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and N.D. Cal. Local Rule 72-2 for relief from a non-dispositive pretrial order of a Magistrate Judge. Plaintiffs respectfully object to and ask the Court to set aside portions of the Discovery Order at Dkt. 247 issued by Magistrate Judge Illman on January 13, 2025, as set forth in the accompanying Memorandum of Points and Authorities ("Memo"). In addition to this Motion and the Memo, the Motion is based on the relevant briefing related to Dkt. 247, the Proposed Order for this Motion, the records and docket in this matter, and any oral argument.

**MEMORANDUM OF POINTS AND AUTHORITIES**

On January 13, 2025, Magistrate Judge Illman ruled on several discovery letter briefs (the "Order"). *See* Dkt. 247. Plaintiffs respectfully object to, and the Court should reverse, three of the rulings in that Order.

**I.     The Order's Adoption of OpenAI's Restrictive Deposition Protocol Is Clearly Erroneous.**

The Order erroneously limited each side to just (a) "105 hours of fact depositions (the equivalent of 15 depositions) including party and non-party witnesses, but excluding 30(b)(6) testimony"; and (b) "20 hours of Rule 30(b)(6) testimony" from OpenAI, or the equivalent *of less than three* depositions. *See* Order at 1-2. Further, the Order, *without* explanation *or* any showing by OpenAI, limited *any* "apex" depositions to 3.5 hours. *Id.* at 2. These limited time allowances are inconsistent with even *less* complex disputes in this District, and they are woefully inadequate for this matter. Plaintiffs' proposal, on the other hand, of 35 Rule 30(b)(1) depositions (or 250 hours), is in line with other complex cases and should be adopted by the Court.

The Order states only that it "consider[ed] the fast-approaching discovery deadline and Plaintiffs' failure to show why more than 15 depositions would be necessary," but it addressed none of the reasons why a substantially greater allotment is necessary—(1) the nature of this far-reaching putative class action involving sophisticated, rapidly proliferating AI technology and complex issues in copyright law and fair use defenses; (2) that OpenAI has infringed at least *hundreds of thousands* of copyrights, putting recoverable damages in the billions; and (3) that a decision in the case will potentially have wide-ranging ramifications on the distribution of IP rights across all media. The Order's deposition cap also is far less than those in other copyright cases that are not even class actions and that involve less complex issues and technology. *See, e.g.*, *Yellow Rose Prods., Inc. v. Pandora Media, LLC*, 2024 WL 1829611, at *2 (C.D. Cal. Apr. 5, 2024) (granting additional depositions in non-class copyright action where parties already agreed to 26 depositions per side). Plaintiffs' requested 35 depositions clearly are proportional to the needs of this case. *See, e.g.*, *In re Uber Technologies, Inc. Passenger Sexual Assault Litig.*, 2024 WL 3747391, at *7 (N.D. Cal. Aug. 9, 2024) (allowing Plaintiffs to depose 45 Uber witnesses in a complex case, while allowing for "additional depositions if there is good cause for such depositions."); Arturo Gonzalez, *Defending Lawyer Depositions: Lessons from Waymo v. Uber*, JD SUPRA (May 1, 2018)[1] (187 depositions in *Waymo v. Uber*, which involved

---

[1] https://www.jdsupra.com/legalnews/defending-lawyer-depositions-lessons-70070/.

alleged IP theft of just 9.7 GB, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). And the Order was wrong in stating that Plaintiffs have not made a particularized showing—Plaintiffs explained that the additional depositions will address OpenAI's many infringements and purported fair use, and specifically: the source, scope and contents of copyrighted material OpenAI acquired and used; how copyrighted material was used; the willfulness of OpenAI's copying and use of copyrighted material; the technical aspects of the use of that material to train OpenAI's models; the extent copyrighted material was used in developing and testing the models; OpenAI's efforts to purchase, license, or otherwise legally secure the use of copyrighted material; and OpenAI's intent and efforts to monetize and commercialize its AI models. Dkt. 244 at 3. **Appendix A** lists 39 fact witnesses that Plaintiffs already identified as likely deposition candidates and details evidence produced of their involvement in the alleged wrongful conduct.[2]

The Order's limitations on 30(b)(6) and "apex" depositions are particularly erroneous considering the complexity of the foregoing issues and the importance of OpenAI's willfulness (to prove statutory damages) and bad faith (as relevant to fair use). *See* 17 U.S.C. § 504(c)(2); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1164 n.8 (9th Cir. 2007); *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 562–63 (1985). The apex limitation is also contrary to law. The Order imposed the hours limitation without any requisite showing. Even if the apex doctrine were applicable, given the fact-specific proportionality requirement of Rule 26(b)(2)(C), it must be analyzed on a witness-by-witness basis. OpenAI made *no* showing that *any* deponent qualifies as an apex witness, let alone that *any* limitation is warranted. Further, Plaintiffs designed their proposal consistent with the Class Proposal submitted to Magistrate Judge Wang in the S.D.N.Y. Actions. That Proposal sought 250 hours of 30(b)(1) time (excluding 30(b)(6) time). Notably, in the similar class action *Kadrey v. Meta Platforms*, Magistrate Judge Hixson granted the plaintiffs **25** 30(b)(1) depositions despite a much more rapidly approaching discovery deadline, and he indicated potential willingness to authorize more depositions given the issues at stake in the case. 2024 WL 4502099, at *2-3 (N.D. Cal. Oct. 15, 2024). Accordingly, the Court should adopt Plaintiffs' proposal of 250 hours of 30(b)(1) testimony per side and 35 hours of 30(b)(6) testimony, without predetermined limits on apex depositions.[3]

---

[2] Magistrate Judge Illman's Standing Order prohibits attachments and presentations of evidence such as this Appendix, and there was no hearing on the parties' proposed deposition limits for Plaintiffs to present it orally.

[3] Alternatively, Plaintiffs ask the Court to basically split the difference between the parties' proposals and order

II.   **The Order Erroneously Denied Plaintiffs Document Discovery Into OpenAI's Torrenting of Pirated Copyrighted Works (RFP No. 45) and OpenAI's Projected Income (RFP No. 41).**

**A.  Torrenting is directly relevant to OpenAI's willful infringement and fair use defense.**

The Order held that "Plaintiffs have failed to show why [OpenAI's] current production is insufficient" with respect to RFP No. 45, which requests "All Documents and Communications Concerning the decision to use Torrent Systems to acquire data for training OpenAI Language Models." This was error.

A torrent is a "protocol . . . that is used to distribute a large computer file (such as of digitized music or video) that has been segmented in small pieces between a large number of peer-to-peer users."[4] Think back to Napster. In most cases, users who download via torrent also must *upload the same files* they are downloading to avoid being banned from the site offering the torrent, a process known as "seeding." While torrenting and seeding are data acquisition methods that are not inherently illegal, they are frequently associated with mass acquisition of *pirated* content. *See, e.g.*, Envisional, Ltd., TECHNICAL REPORT: AN ESTIMATE OF INFRINGING USE OF THE INTERNET 4–5 (Jan. 2011) ("Analysis strongly indicates that private bittorrent sites . . . are overwhelmingly used for the purposes of illegitimately sharing copyrighted data.").

Since the Order, OpenAI has produced documents that reveal ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. A (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex. B (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).[5] To assess the full scope of OpenAI's vast piracy and copyright infringement scheme, Plaintiffs need to know ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. These requests are relevant because *piracy, theft,* and other intentionally exploitative uses of copyrighted works negate fair use. *See, e.g.*, *Glacier Films, Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018) (rejecting, as not "a close and difficult case," defendant's argument that torrenting

---

200 hours of 30(b)(1) testimony per side and 30 hours of 30(b)(6) testimony, without prejudice to seeking more.
[4] *Torrent*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/torrent (Jan. 27, 2025).
[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  a copyrighted movie was fair use); *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 879 (N.D. Cal. 2022) (stating, "it is obvious, for example, that downloading and distributing copyrighted music via peer-to-peer systems does not constitute fair use"). Indeed, just two weeks ago, Judge Chhabria held that *Meta's* torrenting and seeding of pirated works was "relevant to the existing [copyright infringement] claim because it is potentially relevant to the plaintiffs' assertion of willful infringement or to Meta's fair use defense." *Kadrey v. Meta Platforms, Inc.*, 2025 WL 82205, at *1 (N.D. Cal. 2025). Thus, discovery into ███████████████████████████████████████████████████████—is extremely relevant to this dispute. But OpenAI recently informed Plaintiffs that it ███████████████████████████████████████████████████. *See* Ex. C. For these reasons, the Court should order OpenAI to run the terms ████████████████[6] and produce the responsive documents.

**B. Documents sufficient to show OpenAI projected income are relevant and proportional.**

The Order's holding that Plaintiffs aren't entitled to documents responsive to their modified RFP 41 ("Documents and Communications Concerning Your [sufficient to show] projected income from the sale or licensing of any of the OpenAI Language Model or ChatGPT") is clearly erroneous. This request is relevant and proportional: Documents showing projected income provide Plaintiffs evidence relevant to potential disgorgement of profits and fair use factor one (commercial use). Such documents are plainly relevant in infringement cases. *See, e.g., Phase Four Indus., Inc. v. Marathon Coach, Inc.*, 2006 WL 1465313, at *6 (N.D. Cal. May 24, 2006); *Vasudevan Software, Inc. v. MicroStrategy Inc.*, 2013 WL 597655, at *1 (N.D. Cal. Feb. 15, 2013); *Sportvision, Inc. v. MLB Advanced Media, L.P.*, 2022 WL 2817141, at *2 (S.D.N.Y. July 19, 2022). The Order's reasoning that "projected income" documents are unnecessary because OpenAI agreed to produce documents about its models' commercial use is flawed. *See* Order at 2. Plaintiffs are entitled to *all* relevant, nonprivileged, and responsive documents, not just what Defendants unilaterally deem "sufficient." *See, e.g., Sayce v. Forescout Technologies, Inc.*, 2024 WL 4579061, at *1-*2 (N.D. Cal. Sept. 3, 2024) (compelling defendants to produce "all non-privileged, responsive documents" to various RFPs despite defendants' contention that they already produced sufficient responsive documents). Thus, the

---

[6] At a minimum, the Court should order OpenAI to run the search string Plaintiffs proposed previously—████████████████—but that string is underinclusive as OpenAI may have ████████████

Court should order OpenAI to produce documents showing its projected income from the sale and licensing of its AI models.

### III.     The Order Erred by Accepting OpenAI's "Compromise" for In-Development AI Models.

Plaintiffs' RFP 81 seeks discovery into what OpenAI described in letter briefing as its "GPT-class" models. *See* Dkt. 217 at 2. Those models include, at a minimum, the two models OpenAI already disclosed as in development—GPT-5 and Orion. The Court agreed these models are relevant at a December 17 hearing, telling OpenAI that "exactly what you're doing in the later models . . . bolsters [Plaintiffs'] case, whether or not you're infringing or not bolsters what their claims are." Dec. 17, 2025 Hr'g Tr. at 45:16-19.

These models are plainly at issue in the Complaint. Plaintiffs allege that "OpenAI made copies of Plaintiffs' books during **the training process of the OpenAI Language Models**," and that "OpenAI Language Models" is defined to include all models in development. *See* Dkt. 120 at ¶ 36 n.1. Further, the class definition includes all owners of copyrights "in any work that was used as training data for the OpenAI Language Models." Dkt. 120 at ¶ 53. Despite these allegations, OpenAI proposed an arbitrary cut-off by allowing only inspection of "text *pre*-training data for in-development, text-based GPT-class of models ***where the pre-training phase has been completed*** and ***the model is intended for production***" (emphasis added). The Order erred by accepting this purported "compromise" by OpenAI. It's not; it's a drastic limit.

The problem (which the Order did not address) is that OpenAI's "compromise" fails to account for the timing of when copyright infringement occurs in the AI training context. Infringement does not occur *only* during the pre-training process—it *also* occurs *before* pre-training when data is taken or copied in the first instance, and it occurs *again* (and again, and again) during the testing, development, and post-training phases. Fine-tuning a model, for example, involves feeding a pre-trained model even more data.[7] If OpenAI is using copyrighted data to fine-tune its in-development models, that information is surely relevant. *See Kadrey v. Meta Platforms, Inc.*, 2025 WL 240847, at *2 (N.D. Cal. Jan. 17, 2025). It would not, however, be covered by OpenAI's proposed "compromise," which is limited only to pre-training text data. Accordingly, the Court should order OpenAI to produce all data with respect to in-development models, including the data that precedes and succeeds pre-training.

---

[7] The Court need not just take Plaintiffs' word for it. *See* https://platform.openai.com/docs/guides/fine-tuning.

| | |
|---|---|
| Dated: January 27, 2025 | By:   */s/ Maxwell V. Pritt*<br>          Maxwell V. Pritt |

<div style="display: flex;">

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Margaux Poueymirou (SBN 356000)
William W. Castillo Guardado (SBN 294159)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)

601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940

jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
mpoueymirou@saverilawfirm.com
wcastillo@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
Alexander J. Sweatman (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel: (312) 782-4880
bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, 406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

**VENTURA HERSEY & MULLER, LLP**
Daniel J. Muller (SBN 193396)
1506 Hamilton Avenue
San Jose, California
Telephone: (408) 512-3022
Facsimile: (408) 512-3023
Email: dmuller@venturahersey.com

</div>

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

Evan Matthew Ezray *(pro hac vice)*
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
eezray@bsfllp.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*