Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Holden Benon (State Bar No. 325847)
Aaron Cera (State Bar No. 351163)
Margaux Poueymirou (State Bar No. 35600)
Melissa Tribble (State Bar No. 339098)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:         jsaveri@saverilawfirm.com
               czirpoli@saverilawfirm.com
               cyoung@saverilawfirm.com
               hbenon@saverilawfirm.com
               acera@saverilawfirm.com
               mpoueymirou@saverilawfirm.com
               mtribble@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
Email:         mb@butterficklaw.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION<br><br>This document relates to:<br><br>All Actions | Master File No. 3:23-cv-03223-AMO<br><br>**PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF DARIO AMODEI**<br><br>Hearing<br>Date: March 4, 2025<br>Time: 11:00 a.m.<br>Judge: Hon. Robert M. Illman |

## NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT

PLEASE TAKE NOTICE that Plaintiffs hereby seek to compel the deposition of nonparty Dario Amodei pursuant to the attached deposition subpoena (the "Subpoena," attached as Exhibit A) served on Amodei through his counsel in *In re OpenAI ChatGPT Litigation*, 3:23-cv-03223-AMO. This Motion is based on the following points and authorities, the Declaration of Holden Benon ("Benon Decl."), the entire record in this matter, and on such evidence and argument as may be presented at any hearing of this Motion, on a date and time to be determined by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs respectfully move to compel the deposition of Dario Amodei. Amodei is a former employee of Defendant OpenAI. While employed by OpenAI, Amodei was directly responsible for procuring and supervising the acquisition of datasets for the OpenAI large language models, which this case is largely about. Amodei supervised and directed ███████████████████████████ ██████████████████████████████████████████████████████████ ███ He did so knowing that those datasets ████████████████████████ █████████████████████████████ OPCO_NDCAL_0750438. And, having pirated hundreds of thousands of works, Amodei conspired to hide his actions by relabeling the datasets to make it harder to trace their origin. It is also likely that Amodei was directly involved and therefore has personal knowledge of the illegal ████████ of those works from the online pirated database.



PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF DARIO AMODEI

OpenAI itself has identified Amodei, in addition to Benjamin Mann,[2] as having personal knowledge on ████████████████████████  The illegal ████████ of copyrighted works undermines any possible fair use defense and is clearly relevant to whether OpenAI's infringement was willful. *See, e.g.*, *Glacier Films, Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018) (rejecting, as not "a close and difficult case," defendant's argument that torrenting a copyrighted movie was fair use); *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 879 (N.D. Cal. 2022) (stating "it is obvious, for example, that downloading and distributing copyrighted music via peer-to-peer systems does not constitute fair use"); *see also Kadrey v. Meta Platforms, Inc.*, Case No. 23-cv-03417, 2025 WL 82205, at *1 (N.D. Cal. Jan. 13, 2025) (finding that evidence about Meta's acquisition and seeding of copyrighted material from LibGen is relevant "to the plaintiffs' assertion of willful infringement or to Meta's fair use defense").

Plaintiffs expect Amodei to argue that they should be required to depose OpenAI employees, or other persons, in place of Amodei. Neither the federal rules nor caselaw support that result. Rather, basic common sense and judicial efficiency strongly support first deposing Amodei and Mann, who both have firsthand knowledge of important facts central to this dispute.

At core, this case is about OpenAI's infringement of Plaintiffs' copyrighted works. The facts and circumstances surrounding the acquisition and creation of infringing copies, where the copyrighted data was sourced, how that data was reproduced, and the state of mind of the individuals who created those copies are critical factual issues in this case. Among other things, these facts go to fair use factor one (the nature and character of the use), including whether the reproductions were created in good faith and whether the infringement was willful. As further explained below, Plaintiffs are entitled to depose Amodei because he plainly has key information that is relevant to Plaintiffs' core claim, and the request is clearly proportional to the needs of this case. Accordingly, pursuant to Federal Rules of Civil Procedure 37 and 45, Plaintiffs request that the Court order Amodei to attend his properly noticed deposition.

---

[2] Sometime after they stole these pirated works and created the datasets for OpenAI's use as training data, both individuals left OpenAI to start a competing AI company. Plaintiffs now seek to depose these critical witnesses. The deposition of Ben Mann is the subject of a separate motion to quash. *See* ECF No. 248.

## II.    **BACKGROUND**

The source, creation, and use of the databases OpenAI opaquely described to the outside world as ███████████████████ is a central issue in the case. In 2020, in its one public white paper announcing the development of its flagship large language model, GPT-3, Open AI disclosed that it had used databases it called "Books1" and "Books2", among other things, as datasets used to create the training datasets for the large language models at issue in this lawsuit, including GPT-3. Brown et al., *Language Models are Few-Shot Learners* (2020). In response to Plaintiffs' Interrogatories, Defendants admitted that ████████████████████████, and that they did so using materials from Library Genesis, an infamous dataset of pirated copyrighted works. OpenAI Supp. Resp. to Rog. 1; (*see* ECF No. 120, at 7.) Defendants further identified Amodei and Mann as ████████████████ ████████████████████████████████ OpenAI Supp. Resp. to Rog. 15. On a subsequent meet-and-confer call, OpenAI then advised that ██████████████████████████████████████████ ████████████████████. Declaration of Holden Benon ("Benon Decl."), ¶ 9. According to OpenAI, ████████████████████████████████.

On January 13, 2025, Plaintiffs served the Subpoena on Amodei through counsel (the same lawyers who represent Mann). *See* Ex. A. The parties met and conferred on January 17. *Id.*, ¶ 5. Plaintiffs proposed the following compromise offer: (1) Mann appears for a seven-hour deposition as provided by the Federal Rules; (2) Amodei would appear for a six-hour deposition, to occur within two weeks of Mann's; and (3) Plaintiffs would coordinate these depositions with the class Plaintiffs in the Southern District of New York *Authors Guild* case. *Id.*

Counsel for Amodei responded on January 19 simply rejecting Plaintiffs' compromise offer. *Id.*, ¶ 6. Notwithstanding Amodei's failure to provide an explanation or counteroffer to Plaintiffs' January 17 proposal, Plaintiffs wrote to Amodei's counsel on January 24 offering to limit Amodei's deposition to *five* hours of record time, if Amodei and Mann would agree to the other terms of Plaintiffs' January 17 proposal. *Id.*, ¶ 7. Having heard no response, on January 27, Plaintiffs' counsel followed up via telephone. *Id.*, ¶ 8. Counsel for Amodei and Mann responded by rejecting Plaintiffs' offer and refusing to change positions. *Id.* They did not convey a counteroffer. *Id.*

III.   **ARGUMENT**

Nonparty witnesses may be compelled to testify at a deposition pursuant to Rule 45. Fed. R. Civ. P. 30(a)(1). If necessary to enforce that subpoena, a party may move to compel a deposition of a nonparty in the court where the discovery is to be taken. *See* Fed. R. Civ. P. 37(a)(1)–(2). A nonparty seeking to avoid subpoenaed discovery bears the "heavy burden" of showing why it should not be permitted. *Xcentric Ventures, LLC v. Arden*, 2010 WL 424444, at *1 (N.D. Cal. Jan. 27, 2010) (citing *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966)); *Dairy v. Harry Shelton Livestock, LLC*, No. 18-CV-06357-RMI, 2021 WL 4476778, at *1 (N.D. Cal. Sept. 30, 2021) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

a.   **The Subpoena Seeks Relevant Discovery Because Amodei Possesses Highly Relevant Unique Information Regarding Key Facts in this Case.**

The gravamen of this case is on OpenAI's unlawful acquisition and reproduction of copyrighted works, largely from material we now know it sourced from so-called shadow libraries. The facts and circumstances surrounding the *acquisition* and *creation* of those infringing copies are principal facts in this case. Logically, Plaintiffs intend to offer evidence of how the infringing copies were obtained, from where, and how OpenAI used them in developing its large language models.

OpenAI has confirmed that ███████████████████████████████████████████████ ███████████████████████████████████████████████████, which is a notorious pirated database of copyrighted works.[3] Specifically, OpenAI's Supplemental Response to Plaintiffs' Interrogatory 1 concedes:

███████████████████████████████████

OpenAI Supp. Resp. to Rog. 1 (emphasis added).[4] Additionally, OpenAI's Supplemental Response to Interrogatory No. 15 lists Amodei and Mann as ██████████████████████████████ ████████████████████████████████████████ OpenAI Supp. Resp. to Rog. 15. On April 24, 2024, OpenAI ███████████████████████████████████ ███████████████████████████████████████. OpenAI has never identified anyone else. Amodei has relevant, unique, and likely superior knowledge of these and other facts.

In addition to written discovery responses identifying Amodei as a person possessing discoverable evidence, documents produced by OpenAI further demonstrate that Amodei has his own firsthand knowledge of at least five other relevant categories of discoverable information: (1) ████████ ██████████████████████████████████ (2) the reasons and rationale for acquiring long form text (books) and their value to OpenAI's large language models; (3) t██████████ ████████████████████████████████████████ ██████████████ (4) OpenAI's efforts to mitigate the model's regurgitation of copyrighted data without authorization; and (5) OpenAI's destruction of Books1 and Book2. Any one of these categories alone is sufficient. When taken together, and viewed in light of the amount in dispute, the size, and importance of this litigation, they easily satisfy the proportionality considerations of Rule 26(b)(2)(C) and establish a strong basis for the deposition.

*Means and Methods of* ████████████████████████.

---

[4] OpenAI's original objections to the Interrogatory were frivolous. And even the supplemental interrogatory answers are far from straightforward.

[5] It appears that the first use of █████████████████████████████████████ ████████ occurred in the OpenAI white paper entitled "Language Models are Few-Shot Learners." Brown et al., *Language Models are Few-Shot Learners* (2020). In this white paper, OpenAI announced to the public improvements it had achieved in its GPT-3 model over prior versions, including GPT-1 and GPT-2. The white paper described Books1 and Books2 as a "corpora of books from the Internet" and formed 16 percent of the training data used to create GPT-3. *Id.* at 8. This murky description appears intended to conceal OpenAI's illegal use of the pirated material. Amodei appears to have direct personal knowledge of this conduct and indeed was likely its principal protagonist, along with Mann. The terms "Books1" and "Books2" are not familiar names of datasets used for research or other purposes. The true source of this material has remained mysterious and has been the focus of considerable speculation. *See* Alex Reisner, *Revealed: The Authors Whose Pirated Books are Powering Generative AI*, ATL., https://www.theatlantic.com/technology/archive/2023/08/books3-ai-meta-llama-pirated-books/675063/ (Aug. 19, 2023) (discussing efforts to determine source of Books1 and Book2).

The Ninth Circuit and courts in this District have long held that ███████ pirated copyrighted material is unlawful and conduct for which there is no fair use defense. *See, e.g., Glacier Films, Inc.*, 896 F.3d at 1041 (rejecting, as not "a close and difficult case," defendant's argument that ████████ a copyrighted movie was fair use); *In re DMCA § 512(h)*, 608 F. Supp. 3d at 879 (stating, "it is obvious, for example, that downloading and distributing copyrighted music via peer-to-peer systems does not constitute fair use"). Judge Chhabria also recently held that information specifically concerning torrenting of copyrighted works from LibGen for use as generative AI training data is relevant to not only the fair use defense but willful infringement. *Kadrey v. Meta Platforms, Inc.*, Case No. 23-cv-03417, 2025 WL 82205, at *1 (N.D. Cal. Jan. 13, 2025). ███████████████████████
███████████████████

Documents produced by OpenAI confirm Amodei's personal knowledge of OpenAI's ██████████████████████████████████████████████. For example, as far back as 2018, Amodei discussed buying books and access to long-form content from various legitimate sources to train OpenAI large language models. *See* OPCO_NDCAL_0853484; OPCO_NDCAL_0854459; OPCO_NDCAL_1496743. Rather than do so through legal means, Amodei proceeded with ██████████████████████████████████████████████████████.[6]

*Reasons for acquiring long form text (books) and their importance to OpenAI's large language models.* ████████████████████████████████████████████████████ he has firsthand knowledge as to why a particular database was chosen. Indeed, Amodei, Mann, and other OpenAI employees were interested in getting as many books as they could. OPCO_NDCAL_1525478. Long form text, like books, are important so that models can produce natural-sounding language in response to

---

[6] Amodei has documented in his personal files that ████████████████████████████████ OPCO-NDCAL_0067518; OPCO_NDCAL_0067583; OPCO_NDCAL_0866414; *see also* OPCO_NDCAL_0854787 (confirming that ████████████████████████████████. OpenAI has produced documents ████████████████████████████████████████████ OPCO_NDCAL_0858690. Amodei and Mann also discuss "█████████████████████████████████████████ OPCO_NDCAL_0867222. These documents are consistent with OpenAI's representation that █████████████████████████████

a user's query. OPCO_NDCAL_1478490. Amodei was involved in OpenAI's initial decision making to acquire books data and thus is likely to have unique firsthand knowledge on these issues.

████████████████████████████████████████████████████ Having decided to ignore legitimate means of acquiring necessary training data and instead ████████████████ ████████████████ OpenAI (and Amodei and Mann) decided to conceal their conduct.

Documentary evidence again indicates that Amodei and Mann were ████████████████ ████████████████████████████████. OpenAI's documents reveal that ████████████████████████████████ In one document, for example, Amodei posed the question: ████████████████████████ ███████████████████████████████████████ . OPCO_NDCAL_0750438. Mann responded: ████████████████ ███████████████.; *see also* OPCO_NDCAL_0780353 (████████████████████████ ██████████████████████████████ These statements are relevant because they demonstrate that OpenAI had ethical concerns surrounding ████████████ (understandably, as it's stolen IP). Ultimately, as noted above, OpenAI settled on a ████████████████████████████ ████████ And from that point forward, OpenAI stayed studiously silent, despite many efforts from others to unearth the provenance of these key datasets.

Efforts to conceal infringement are likewise highly relevant information. *See Sanrio, Inc. v. Ronnie Home Textile, Inc.*, Case No. CV 14-06369, 2016 WL 5956096, at *9 (C.D. Cal. Jan. 5, 2016). Such evidence will prove violation of copyright law, scienter, as well as being admissible with respect to compensatory and statutory damages. These documents go to willfulness and whether OpenAI acted in good faith. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985) ("Also relevant to the 'character' of the use is the propriety of the defendant's conduct. Fair use presupposes 'good faith' and 'fair dealing.'") (cleaned up).

*Mitigation efforts.* Amodei and Mann also possess knowledge of potential mitigation strategies employed by OpenAI. OpenAI was aware that its large language models not only used copyrighted material as training data but that the models would output such protected material. As a result, OpenAI undertook extensive "mitigation" procedures to prevent such "regurgitation." OpenAI has produced

evidence of other confidential conversations between Amodei and Mann where Mann describes a ███████████████████████ including examples of ████████████████████ ████████████████████████. OPCO_NDCAL_0858864 (internal 0858871). Amodei responds: ████████████████████████████████ and Mann responds, ████ ████████████████████████ *Id.*

*Destruction of Books 1 and Book 2.* Inexplicably, on a date presently unknown, OpenAI destroyed Books1 and Books2. *Authors Guild et al. v. OpenAI Inc. et al.*, No. 23-cv-08292-SHS-OTW, ECF No. 143 (S.D.N.Y. May 6, 2024) ("On March 22, 2024, months into Plaintiffs' effort to obtain basic information about training, OpenAI revealed that it had destroyed *all* of its copies of books1 and books2.") (emphasis in original). OpenAI has never disclosed the details. Amodei likely possesses information regarding the circumstances, the reasons, and the persons involved—including himself, Mann, and others.

Accordingly, the documents and responses produced thus far demonstrate that Amodei has critical and unique knowledge about core issues in this case. He should therefore be deposed.

> ### b. Amodei Possesses First-Hand Knowledge of Relevant Factual Issues, and Thus Is Not a Quintessential Apex Witness.

Plaintiffs expect that Amodei will argue that Plaintiffs should be prohibited from deposing him, or that his deposition should be extremely circumscribed, because he is the CEO of Anthropic.[7] The fact that a witness has a busy schedule, by itself, is not a basis for foreclosing otherwise proper discovery. *In re Glumetza Antitrust Litig.*, No. 19-cv-05822-WHA-RMI, 2020 WL 3498067, at *8 (N.D. Cal. June 29, 2020). The fact that Amodei—a percipient witness—is a busy man and runs a business is not a reason to prevent plaintiffs from obtaining highly relevant information. This is not a case where plaintiffs are simply seeking to take the deposition of a top executive because they are a top executive. Amodei is hardly Lee Iacocca. *See Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985) (quashing the deposition of Chrysler Chairman Lee Iaccoca in a products liability case because "he is a singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse"); *see also In re Apple iPhone Antitrust Litig.*, No. 11-cv-06714Y-GRT-SH, 2021 WL 485709, at *4 (N.D. Cal. Jan. 26,

---

[7] As an initial matter, Ninth Circuit has never adopted the so-called "apex" doctrine as a shield to discovery. Therefore, ordinary discovery rules should apply.

2021) ("So, this is not a lawsuit by someone who slipped on a banana peel in the produce aisle at Safeway and now seeks to depose Safeway's CEO."). *Compare* Order, *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417, ECF No. 171 (Sept. 24, 2024) (requiring that CEO Mark Zuckerberg sit for a deposition because he had "specific involvement in [Meta's] AI initiatives").

Of course, Amodei is not—and never was—a top executive of OpenAI. Plaintiffs are not seeking to depose Amodei as a surrogate for OpenAI. Moreover, Plaintiffs have no interest in harassing Amodei or his company, even if it is not an enormous multinational company.

Nor is there the prospect of repeated cumulative discovery. To the contrary, Plaintiffs seek Amodei's deposition because of the particular knowledge he—and likely he alone—possesses. Rather, the documents demonstrate that—because of his status as a former employee of OpenAI—Amodei has a rich understanding of how and why OpenAI ████████████████████████████ ████ and the company's views regarding the same. It just so happens that Amodei is now a CEO at a competing company. Of course, the test for deciding a motion for a protective order "is not whether a putative deponent had personal involvement in an event, or even whether they have 'direct' knowledge of the event, but whether the witness may have information from whatever source that is relevant to a claim or defense." *Mills v. Wal-Mart Stores, Inc.*, No. 06 Civ. 5162, 2007 WL 2298249, at *1, 2 (W.D. Ark. Aug. 7, 2007); *see also Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D. Ill. 2007) (denying protective order for CEO despite her claims that she lacked personal involvement because she likely had relevant knowledge of issues in the case).

Allowing Plaintiffs to depose Amodei will streamline the presentation of the evidence at trial and facilitate the "just, speedy, and inexpensive" determination of this action. Fed. R. Civ. P. 1. In order to address issues of burden, the deposition will take place in a location in San Francisco, where Amodei resides, and Plaintiffs will coordinate the deposition with the *Authors Guild* plaintiffs. Plaintiffs have made efforts to coordinate and negotiate with Amodei's counsel to minimize any burden. Amodei has refused to negotiate at every turn, even where Plaintiffs have offered to compromise and limit his deposition to less than the default limit of seven hours.

1    IV.    **CONCLUSION**

2          For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion

3    to Compel the Deposition of Dario Amodei.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: January 28, 2025

By:     /s/ Joseph R. Saveri
        Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Holden Benon (State Bar No. 325847)
Aaron Cera (State Bar No. 351163)
Margaux Poueymirou (State Bar No. 35600)
Melissa Tribble (State Bar No. 339098)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:          jsaveri@saverilawfirm.com
                czirpoli@saverilawfirm.com
                cyoung@saverilawfirm.com
                hbenon@saverilawfirm.com
                acera@saverilawfirm.com
                mpoueymirou@saverilawfirm.com
                mtribble@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
Email:          mb@butterticklaw.com

Bryan L. Clobes (pro hac vice)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
205 N. Monroe Street
Media, PA 19063
Telephone:     215-864-2800
Email:          bclobes@caffertyclobes.com

Alexander J. Sweatman (pro hac vice anticipated)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone:     312-782-4880
Email:          asweatman@caffertyclobes.com

Daniel J. Muller (State Bar No. 193396)
**VENTURA HERSEY & MULLER, LLP**
1506 Hamilton Avenue
San Jose, California 95125
Telephone: (408) 512-3022
Facsimile: (408) 512-3023
Email: dmuller@venturahersey.com

David Boies
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8201
Fax: (914) 749-8300
Email: dboies@bsfllp.com

Evan Matthew Ezray
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone: (954) 377-4237
Email: eezray@bsfllp.com

Jesse Michael Panuccio
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW
Washington, DC 20005
Telephone: (202) 237-2727
Email: jpanuccio@bsfllp.com

Maxwell V. Pritt
Joshua Michelangelo Stein
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6813
Telephone: (415) 293-6800
Email: jstein@bsfllp.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*