Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Holden Benon (State Bar No. 325847)
Aaron Cera (State Bar No. 351163)
Margaux Poueymirou (State Bar No. 35600)
Melissa Tribble (State Bar No. 339098)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940
Email:             jsaveri@saverilawfirm.com
                        czirpoli@saverilawfirm.com
                        cyoung@saverilawfirm.com
                        hbenon@saverilawfirm.com
                        acera@saverilawfirm.com
                        mpoueymirou@saverilawfirm.com
                        mtribble@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:      (415) 395-9940
Email:             mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION<br><br>This document relates to:<br><br>Case No. 3:23-cv-03223-AMO<br>Case No. 3:23-cv-03416-AMO | Master File No. 3:23-cv-03223-AMO<br><br>**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM NON-PARTY REUTERS NEWS & MEDIA INC.**<br><br>Hearing<br>Date: March 18, 2025<br>Time: 11:00 a.m.<br>Judge: Hon. Robert M. Illman |

PLEASE TAKE NOTICE that Plaintiffs hereby seek to compel the production of documents from non-party Reuters News & Media Inc. ("Reuters") pursuant to the attached document subpoena (the "Subpoena," attached as Exhibit A) served on Reuters through its registered agent in *In re OpenAI ChatGPT Litig.*, 3:23-cv-03223-AMO. This Motion is based on the following points and authorities, the Declaration of Aaron Cera ("Cera Decl."), the entire record in this matter, and on such evidence and argument as may be presented at any hearing of this Motion, on a date and time to be determined by the Court.

**Introduction.** The premise underlying this Rule 45 motion to compel is simple—the companies developing generative AI models must respect the law. Plaintiffs allege that OpenAI stole vast quantities of copyrighted material from across the internet to train its commercial Large Language Models ("LLMs") without seeking licenses from authors. Open AI's defense of that theft is fair use under the Copyright Act. 17 U.S.C. § 107. To prosecute their case and respond to OpenAI's fair use defense, Plaintiffs require information from Reuters that they cannot get from OpenAI.

Reuters possesses information relevant to the existence of a market for copyrighted content as training data for LLMs. On October 24, 2024, it was reported that Reuters had entered into a multi-year licensing agreement with Meta Platforms Inc. for its news content to be used in Meta's AI ChatBot. *See* Sara Fischer, *Scoop: Meta strikes multi-year AI deal with Reuters*, AXIOS, Oct. 24, 2024, https://www.axios.com/2024/10/25/meta-reuters-ai-news-facebook-instagram. This transaction is one of only a handful of AI data licensing agreements in the LLM training data market. *See* Thani Shamsi, *Ultimate List of Data Licensing Deals for AI*, THE MONDA BLOG, (Oct. 28, 2024), https://www.monda.ai/blog/ultimate-list-of-data-licensing-deals-for-ai. And the existence of this public agreement suggests many more private documents behind the scenes including key documents concerning valuation and negotiation.

Plaintiffs seek the Reuters/Meta Platforms Inc. agreement and related information in support of their allegations against OpenAI. Specifically, the requested documents are relevant to OpenAI's anticipated fair use defense, namely the effect of its theft of copyrighted material on the market for copyrighted content as training data for LLMs, and to assist in valuing the copyrighted works for use as training data, including developing a damages methodology. This material is in the possession, custody,

or control of Reuters and cannot be obtained from OpenAI because it is an exclusive agreement between Reuters and Meta Platforms Inc., the terms and conditions of which are not public. Mia Sato, *Meta signs its first big AI deal for news*, THE VERGE, (Oct. 25, 2024), https://www.theverge.com/2024/10/25/24279259/meta-reuters-ai-chatbot-deal-news-licensing-media (noting the confidentiality of the terms of the agreement).

Despite Plaintiffs' good faith efforts to obtain compliance with the subpoena, Reuters has refused to produce documents both relevant and proportional to the needs of this case. Instead, Reuters has chosen to stand on boilerplate objections that are unsupported in the law. The Court should order Reuters to comply with the subpoena.

**Factual background.** Plaintiffs served a document subpoena on Reuters on November 20, 2024. The subpoena sought three categories of documents:

- **Executed AI Training Data Licensing Agreements** (Requests for Production Nos. 1, 7): Documents pertaining to executed agreements that grant permission to use data for the purpose of training AI models.
- **AI Training Data Licensing Agreement Negotiations and Valuations** (Requests for Production Nos. 2, 5, 6): Documents pertaining to AI training data licensing agreements, whether executed or not, including the specific details of the agreements such as terms, conditions, pricing, and form of payment.
- **Specific Content for AI Training** (Requests for Production Nos. 3, 4): Documents pertaining to licensing agreements for specific content types used in AI training, including books and news articles.

Cera Decl. ¶ 2.

**Plaintiffs have exhausted reasonable efforts to obtain compliance.** Plaintiffs have made multiple attempts to resolve this dispute without Court intervention, including through meeting and conferring and multiple email exchanges. Cera Decl. ¶ 5, 7, 8, 9, 10, 11. After Plaintiffs granted a courtesy one-week extension for Reuters to respond, it responded on December 9, 2024 with boilerplate objections, refusing to produce the requested documents on various grounds, including claims of undue burden, overbreadth, and confidentiality. Cera Decl. ¶ 4. The parties met and conferred on December

23, 2024 and exchanged numerous emails attempting to resolve the subpoena. Cera Decl. ¶¶ 5, 7, 8, 9, 10, 11. Despite these efforts, the parties were unable to reach agreement. Cera Decl. ¶ 9, 10. Reuters has failed to produce any responsive documents or to otherwise compromise in any way, choosing to stand on its objections. Cera Decl. ¶ 9. Despite these efforts, and the clear importance of the requested information, Reuters has refused to produce the requested documents, necessitating this Motion.

**Reuters's boilerplate objections should be stricken.** Generally, the Federal Rules have a strong preference for full discovery when practicable. *Williams v. Condensed Curriculum Int'l*, No. 20CV05292YGRRMI, 2021 WL 6621071, at *2 (N.D. Cal. Dec. 29, 2021) (Illman, J.) (citation omitted). The party resisting discovery bears the "burden of clarifying, explaining, and supporting its objections." *Id*. Reuters's objections are without merit and cannot justify its non-compliance. Indeed, many of the objections raised by Reuters are frivolous.

**1. Relevance**

Rule 45 subpoenas are subject to the general relevancy standard applicable to discovery under Rules 26 and 34 and other discovery rules. *See* Fed. R. Civ. P. 45 advisory committee's note to 1970 amendment. *See also Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022) (citing *Aquastar Pool Prods. Inc. v. Paramount Pool & Spa Sys.*, 2019 WL 250429, *2 (D. Ariz. 2019)) ("The test for 'relevance,' in the context of a Rule 45 subpoena to a non-party, is no different than the test under Rules 26 and 34."). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The documents Plaintiffs request are directly relevant to their claim of direct copyright infringement and to counter OpenAI's fair use defense. The documents clearly pertain to important issues in the litigation, including licensing practices, the valuation of content utilized in training LLMs, and the terms of applicable agreements. The documents sought from Reuters via the subpoena will help establish the existence of a market for copyrighted work as training data for LLMs because they will provide evidence of benchmark licensing agreements and market demand. *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1093 (9th Cir. 2014) ("Although a copyright plaintiff need not…present evidence of "benchmark" agreements in order to recover hypothetical-license damages, it may be difficult for a

plaintiff to establish the amount of such damages without undue speculation in the absence of such evidence.").

This information is also relevant to calculating actual damages and recovery of lost profits. *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707–08 (9th Cir. 2004), as amended on denial of reh'g and reh'g en banc (9th Cir. Oct. 25, 2004) ("Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer.") (internal citations and quotations omitted).

The discovery sought from Reuters will assist in proving that, but for OpenAI's theft of vast amounts of copyright-protected works, Plaintiffs would have been able to license their works at a competitive price. The information sought directly relates to the fair use factor of the effect on the market for copyrighted material by setting parameters for its value and use. *Oracle Am., Inc. v. Google Inc.*, 847 F. Supp. 2d 1178, 1182 (N.D. Cal. 2012). If copyright owners could license their work for AI training, similar licensing agreements help to establish the market value of their work. *Jarvis v. K2 Inc.*, 486 F.3d 526 (9th Cir. 2007) (finding district court's calculations of actual damages were properly based on "objective considerations of market value"). Moreover, internal valuation memos can provide evidence of potential lost revenue due to infringement and would likely contain projections and analyses of potential licensing income. This supports Plaintiffs' claims for lost profits. If an AI developer uses copyrighted material without a license, the copyright owner's potential lost licensing revenue is valuable for determining damages. Additionally, negotiations surrounding a potential licensing deal will provide evidence of the license's value, helping to quantify losses. *Oracle Am., Inc.*, 847 F. Supp. 2d at 1182 ("To determine the work's market value at the time of the infringement, we have endorsed a hypothetical approach: what a willing buyer would have been reasonably required to pay to a willing seller for the owner's work.") (citations omitted).

In the context of a fair use defense, which is the critical issue in this case, the fourth factor in establishing such defense (the effect of the use upon the potential market for or value of the copyrighted work) requires consideration of whether the unlicensed use of the work undermines the market or licensing opportunities for it. 17 U.S.C. § 107(4). If a licensing market exists and is negatively impacted

by OpenAI's theft of data, this weighs against a finding of fair use. *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997). The documents sought will aid Plaintiffs in this analysis.

Despite the clear importance to Plaintiffs' claims, in the meet and confer, Reuters disputed the relevance of the requests, arguing that licensing deals with news organizations have no relevance here because the named Plaintiffs are book authors. Cera Decl. ¶ 5. Not so. The operative complaint's class definition is "[a]ll persons or entities domiciled in the United States that own a United States copyright in any work that was used as training data for the OpenAI Language Models during the Class Period." Am. Compl. ¶ 53, ECF No. 120; Cera Decl. ¶ 5, 7. Definitionally, news authors are part of the class. Moreover, even if the class were limited to books, news-related licensing agreements would be relevant. Indeed, the Federal Rules of Evidence permit the use of indirect evidence at trial. *See* Fed. R. Evid. 401; *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1082 (9th Cir. 2022) (recognizing Fed. R. Evid. 401 as a liberal standard). Plaintiffs could thus permissibly use a news licensing agreement—along with other evidence showing the value of books in LLM training—to establish the existence and value of a book market. *Williams v. Gaye*, 895 F.3d 1106, 1129 (9th Cir. 2018) (upholding award of profits where plaintiff tethered their hypothetical license damages to evidence of a benchmark license in the industry). In short, even under Reuters's strained reading of the Complaint, the requests are relevant.

2. **Overbreadth and Vagueness**

Reuters objects to the requests as overly broad and vague, particularly with respect to terms such as "AI training data," "licensing agreements," and "Article." That is a risible claim because Reuters itself uses the terms. For example, last year Reuters published an article called "Inside Big Tech's underground race to buy AI training data." *See* Katie Paul and Anna Tong, *Inside Big Tech's underground race to buy AI training data*, REUTERS (Apr. 5, 2024); *see also* Reuters, *OpenAI seeks partnerships to generate AI training data*, REUTERS (Nov. 9, 2023). If Reuters cannot understand terms like "AI training data" or "licensing agreements," it could have just asked its writers.

In any case, the terms are sufficiently defined within the context of the subpoena and the litigation. Reuters cannot avoid those definitions "by quibbling." *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994). Instead, if Reuters cannot understand a term, it can state that in a response and then produce documents within the meaning of the term as it understands it. But the idea that Reuters

cannot understand basic terms—and terms that it itself uses—is not a reason to avoid the subpoena. *Condensed Curriculum Int'l*, 2021 WL 5069946, at *5 (finding defendant's vagueness objections to common terms like "you," "contend," "due," and "support" frivolous and obstructive, especially given defendant's own use of such terms).

3. **Undue Burden**

Reuters next claims that compliance would impose an undue burden, and that Plaintiffs should first seek production from OpenAI. To start, that is largely impossible because the publicly disclosed agreement is between Reuters and Meta Platforms, not OpenAI. What is more, as a sophisticated entity with substantial resources, Reuters is well-equipped to produce the requested documents. Reuters's undue burden objection should also be overruled.

Each factor in Rule 26(b)(1) supports a finding of no undue burden. This action involves issues of significant public importance, considering OpenAI's public predictions about LLMs' economic impact and the scope of the alleged infringement. The amount in controversy is substantial. Reuters possesses unique information, specifically its confidential licensing agreement with Meta Platforms and related details. And it has ample resources to comply with the subpoena.

4. **Confidentiality**

Reuters asserts that the requests seek confidential or proprietary information. However, a Protective Order (ECF No. 106) is in place in this litigation to safeguard such information, and confidentiality concerns do not justify withholding responsive documents. Indeed, "there is no absolute privilege [against disclosure] for trade secrets and similar confidential information." *DDS, Inc. v. Lucas Aerospace Power Transmission Corp.*, 182 F.R.D. 1, 4 (N.D.N.Y. 1998) (quoting *Fed. Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362, (1979)) (alteration in original); *see also ICG Commc'ns., Inc. v. Allegiance Telecom*, 211 F.R.D. 610, 614 (N.D. Cal. 2002) ("courts generally eschew an absolute privilege for trade secrets and similar confidential information in favor of a case-by-case approach that balances privacy against the need for disclosure. Other confidential business information is generally afforded even less protection than trade secrets.") (quotations and citations omitted). Reuters's confidentiality objections are without merit.

1  At bottom, Reuters's boilerplate objections are meritless. Plaintiffs' requests are relevant and
2  proportional to the needs of this case, and Reuters has not articulated a legitimate reason for its refusal to
3  comply. For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and
4  order Reuters to produce documents responsive to Plaintiffs' Requests for Production.

| | | |
|---|---|---|
| Dated: February 10, 2025 | By: | */s/ Joseph R. Saveri* |
| | | Joseph R. Saveri |

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Holden Benon (State Bar No. 325847)
Aaron Cera (State Bar No. 351163)
Margaux Poueymirou (State Bar No. 35600)
Melissa Tribble (State Bar No. 339098)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:   (415) 500-6800
Facsimile:    (415) 395-9940
Email:         jsaveri@saverilawfirm.com
               czirpoli@saverilawfirm.com
               cyoung@saverilawfirm.com
               hbenon@saverilawfirm.com
               acera@saverilawfirm.com
               mpoueymirou@saverilawfirm.com
               mtribble@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:   (323) 968-2632
Facsimile:    (415) 395-9940
Email:         mb@buttericklaw.com

Bryan L. Clobes (pro hac vice)
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
205 N. Monroe Street
Media, PA 19063
Telephone:   215-864-2800
Email:         bclobes@caffertyclobes.com

Alexander J. Sweatman (pro hac vice anticipated)
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone:   312-782-4880
Email:         asweatman@caffertyclobes.com

Daniel J. Muller (State Bar No. 193396)
**VENTURA HERSEY & MULLER, LLP**
1506 Hamilton Avenue
San Jose, California 95125
Telephone:  (408) 512-3022
Email:  dmuller@venturahersey.com

David Boies
**BOIES SCHILLER FLEXNER LLP**
333 Main Street Armonk, NY 10504
Telephone:  (914) 749-8201
Email:  dboies@bsfllp.com

Evan Matthew Ezray
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone:  (954) 377-4237
Email:  eezray@bsfllp.com

Jesse Michael Panuccio
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW Washington, DC 20005
Telephone:  (202) 237-2727
Email:  jpanuccio@bsfllp.com

Maxwell V. Pritt
Joshua Michelangelo Stein
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone:  (415) 293-6813
Telephone:  (415) 293-6800
Email:  jpanuccio@bsfllp.com
Email:  mpritt@bsfllp.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*