# EXHIBIT C

1            UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3     Before The Honorable Robert M. Illman, Magistrate Judge

4

5   TREMBLAY, et al.,              )
                                   )
6           Plaintiffs,            )
                                   )
7   vs.                            )   No. C 23-03223-AMO
                                   )
8   OPENAI, INC., et al.,          )
                                   )
9           Defendants.            )
    _____)

10

                                   San Francisco, California
11                                 Tuesday, February 11, 2025

12

     TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
13            RECORDING 11:05 - 11:54 = 48 MINUTES

14  APPEARANCES:

15  For Plaintiffs:

                              Joseph Saveri Law Firm, LLP
16                            601 California Street
                              Suite 1505
17                            San Francisco, California
                                94108
18                       BY:  HOLDEN J. BENON, ESQ.
                              AARON CERA, ESQ.
19
                              Boies Schiller Flexner, LLP
20                            44 Montgomery Street
                              Floor 41
21                            San Francisco, California
                                94104
22                       BY:  REED D. FORBUSH, ESQ.
                              JOSHUA M. STEIN, ESQ.
23

24            (APPEARANCES CONTINUED ON NEXT PAGE)

25

2

```
 1  For Plaintiffs:
                                Susman Godfrey, LLP
 2                              1900 Avenue of the Stars
                                Suite 1400
 3                              Los Angeles, California 90067
                           BY:  ROHIT D. NATH, ESQ.
 4
                                Lieff Cabraser Heimann &
 5                                Bernstein, LLP
                                275 Battery Street
 6                              Floor 29
                                San Francisco, California
 7                                94111
                           BY:  REILLY T. STOLER, ESQ.
 8  For Anthropic:
                                Cooley, LLP
 9                              3 Embarcadero Center
                                Floor 20
10                              San Francisco, California
                                  94111
11                         BY:  JEFFREY GUTKIN, ESQ.

12                              Cooley, LLP
                                3175 Hanover Street
13                              Palo Alto, California 94304
                           BY:  SHANNON EAGAN, ESQ.
14  For Microsoft:
                                Orrick Herrington & Sutcliffe
15                                LLP
                                The Orrick Building
16                              405 Howard Street
                                San Francisco, California
17                                94105
                           BY:  ANNETTE L. HURST, ESQ.
18
                                Faegre Drinker Biddle & Reath,
19                                LLP
                                1144 Fifteenth Street
20                              Suite 3400
                                Denver, Colorado 80202
21                         BY:  JARED B. BRIANT, ESQ.

22  Transcribed by:             Echo Reporting, Inc.
                                Contracted Court Reporter/
23                              Transcriber
                                echoreporting@yahoo.com
24

25
```

3

1  <u>Tuesday, February 11, 2025</u>                    <u>11:05 a.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4          THE CLERK:  The court calls civil case number

5  3233223AMO, Tremblay, et al. versus OpenAI, Incorporated, et

6  al.

7       Parties, please state their appearances for the record.

8          MR. BENON (via Zoom):  Good morning, your Honor,

9  Holden Benon on behalf of the Plaintiffs.

10         MR. CERA (via Zoom):  Good morning, your Honor,

11  Aaron Cera on behalf of Plaintiffs.

12         MR. FORBUSH (via Zoom):  Good morning, your Honor,

13  Reed Forbush on behalf of Plaintiffs, with Boies Schiller

14  Flexner.  I'm here with my colleague Joshua Stein.

15         MR. STEIN (via Zoom):  Good morning, your Honor.

16         MR. NATH (via Zoom):  Good morning, your Honor.

17  Rohit Nath from Susman Godfrey on behalf of the Authors

18  Guild Plaintiffs and the Plaintiffs in the In re Motion to

19  Compel action that was just related to the <u>In re ChatGPT</u>

20  action.  And with me is Reilly Stoler, from Lieff Cabraser,

21  a co-counsel.

22         MR. STOLER (via Zoom):  Good morning, your Honor.

23         THE COURT:  Good morning.

24         MS. HURST (via Zoom):  Good morning, your --

25         MR. GUTKIN (via Zoom):  Good morning --

4

1          MS. HURST:  Sorry.

2          MR. GUTKIN:  Go ahead, Ms. Hurst.

3          MS. HURST:  No, go ahead, Mr. Gutkin, please.

4          MR. GUTKIN:  Your Honor, good morning.  This is

5   Jeff Gutkin from the Cooley Firm, appearing for Anthropic, a

6   third-party subpoena recipient.  And I'm here with my

7   colleague Shannon Eagan.

8          MS. EAGAN (via Zoom):  Good morning, your Honor.

9   We're here for also Mr. Mann.

10          THE COURT:  Okay.

11          MS. HURST:  Good morning, your Honor.  Annette

12   Hurst from Orrick for non-party Microsoft.

13          THE COURT:  Okay.

14          MR. BRIANT (via Zoom):  And good morning, your

15   Honor, Jared Briant from Faegre Drinker Biddle and Reath on

16   behalf of the non-party Microsoft.

17          THE COURT:  All right.

18      I apologize for the delay in this morning's hearing.

19   My computer needed one of those turn off, restart things to

20   get connected, and then there were some Windows updates it

21   needed to do.

22      All right.  So let's start with the first motion, which

23   was 248, which was the Benjamin Mann motion to quash

24   Plaintiffs' third-party deposition subpoena.  I think this

25   one was set and then reset -- I wondered if the parties have

5

1  had any discussions related to that.

2         MR. BENON:  Yes, your Honor.  I'll start with

3  that.  I think if your Honor is referring to efforts to

4  resolve the dispute by negotiation, I can speak to that.

5         THE COURT:  Yeah.

6         MR. BENON:  So we did interact with Mr. Mann's

7  former counsel.  We offered to resolve the matter by

8  proposing seven hours of deposition time with Mr. Mann.  And

9  our final compromise offer was five hours of deposition time

10 with Mr. Amodei, who's also represented by the same counsel.

11 So we shaved off two hours for Mr. Amodei if Mr. Mann would

12 withdraw his motion to quash.  He did not do so.  He forced

13 us into litigation.  So, as it stands, your Honor, that

14 offer is not on the table.

15     And I'll also note that we did agree to coordinate with

16 the Authors Guild Plaintiffs, so we would divide that time

17 with the Authors Guild Plaintiffs.

18         THE COURT:  Okay.  So you would give up the motion

19 to -- or the deposition with Mr. Mann in order to do five

20 hours with Mr. Amodei?  Or that's not --

21         MR. BENON:  No, your Honor.  Sorry -- sorry if I

22 wasn't clear.  No.  So we said -- our proposal was the full

23 seven hours with Mr. Mann, and then five hours with Mr.

24 Amodei.  And we heard from their counsel that, according to

25 them, Mr. Amodei's time is more precious to them, or they're

6

1  more sensitive about Mr. Amodei's time, so we said, "Okay.

2  We'll" --

3          THE COURT:  I see.

4          MR. BENON:  Yeah, we'll give up two hours with

5  him, but we want the seven with Mr. Mann.

6          THE COURT:  I see.  I see.  Okay.  All right.

7          MR. GUTKIN:  Your Honor, just to provide the

8  proposal on the other side, Mr. Mann offered to sit for

9  deposition for four hours, with the condition that the

10 deposition be coordinated with the Authors Guild Plaintiffs,

11 that the first-party discovery of OpenAI witnesses with the

12 same knowledge occur first and that Mr. Mann be the sole

13 representative from Anthropic who was being burdened with

14 the deposition.  That was the offer from our side.

15         THE COURT:  Let me get -- before we get too far

16 into this, let me get my reference points correct, okay?

17 There was -- and it's still in the briefing stage -- the

18 motion related to Mr. Amodei, because he received new

19 counsel.  And so that one, I believe, is -- there was a

20 stipulation to extend the briefing on that one.

21     With regard to Mr. Mann, we have this motion.  But then

22 there's also the motion from the other case to enforce.  Is

23 that right?  And which number --

24         MR. GUTKIN:  Yes, your Honor.

25         THE COURT:  Which number is that one?

7

1          MR. NATH:  That is -- your Honor, this is Rohit

2  Nath for the Authors Guild Plaintiffs.  That's case number

3  3:25MC --

4          THE COURT:  That's the case.  That's right.

5          MR. NATH:  -- 0017.

6          THE COURT:  Okay.  Okay.

7          MR. GUTKIN:  And, your Honor, just to add one

8  thing in case it's helpful, Mr. Benon said that there's a

9  motion to quash Mr. Amodei's deposition subpoena, which is

10 not quite right.  There was a motion to quash Mr. Mann's

11 subpoena, and then there was a motion to compel the

12 deposition of Mr. Amodei filed by Mr. Benon's firm.

13 Simultaneously, the Authors Guild, in the matter that's now

14 been related, filed motions to compel the depositions of

15 both Mr. Amodei and Mr. Mann.

16         THE COURT:  Are you speaking in the other -- are

17 you speaking about in the other case itself, some of those

18 motions?

19         MR. GUTKIN:  Yes, those -- the motion to compel

20 the deposition of Mr. Mann and Mr. Amodei was filed in the

21 miscellaneous case here that was related to enforce the

22 subpoena from the New York case.  And Mr. Nath can correct

23 me if I don't have that exactly right, but I think that's

24 the state of play.

25         MR. NATH:  That's correct.  We filed our -- we

8

1  filed the motion in the miscellaneous case, and the

2  opposition is still outstanding.

3          THE COURT:  Tell me, from Plaintiffs'

4  perspectives, why -- so, you know, Mr. Mann's contention is

5  that he's not a party to this and that there are other

6  people that have more knowledgeable information related to

7  this, and that you will get some of this information through

8  depositions of others if you do them first, meaning he

9  wouldn't have to sit for depositions for the proposed seven

10 hours with you guys.  Why wouldn't you take a compromise

11 that allows you to do the depositions of others first and

12 then do his deposition second?  Why is it important for you

13 to go ahead and schedule the seven hours with him now versus

14 waiting to see how much time you might need with him later?

15     Mr. Benon?

16          MR. BENON:  So the reason for that is, your Honor,

17 is that these are key witnesses with firsthand percipient

18 knowledge of important issues to this case.  Just to orient

19 the Court, the questions of where, how, why OpenAI accessed

20 unauthorized copies of our clients' copyrighted works are

21 core issues in this case.  We know it's through -- it's --

22 to some extent, it's through OpenAI's acquisition of LibGen,

23 which it anonymized using the monikers books one and books

24 two.  Ben Mann are among those who are primarily

25 responsible, and that's according to OpenAI's interrogatory

9

1  responses.  That's also confirmed by OpenAI's documents,

2  which are quoted in Plaintiffs' oppositions and are -- which

3  are before the Court.  They show that it's Ben Mann who was

4  using torrents to obtain documents from LibGen.  Mr. Mann

5  says, "Well, you should go talk to these employees who are

6  still at the company," but those employees are people with

7  secondhand knowledge of what happened, and limited

8  secondhand knowledge at that.  And to underscore the point,

9  your Honor, Mr. Mann points to this so-called transition

10 memo.  We just received that memo, so-called memo, from a

11 production from OpenAI last Friday.  It can hardly be called

12 a memo, your Honor.  It's really a skeletal outline of

13 questions.  It's unclear who drafted it.  It's unclear if it

14 was actually answered by Mr. Mann.  And at bottom, your

15 Honor, it just underscores the point that the current

16 employees have limited secondhand knowledge.  Mr. Mann is

17 the one who holds all the knowledge.  And to answer --

18         THE COURT:  Let me hear a response from Mann's

19 counsel.

20     Is -- are you -- Mr. Gutkin, are you speaking on this

21 issue?

22         MR. GUTKIN:  I am.  Thank you, your Honor.  I'm

23 speaking on behalf of Mr. Mann.

24     A few things in Mr. Benon's response are telling.

25 First of all, he says Mr. Mann is among the people who are

10

1 familiar with the facts here.  And that is clear from Mr.

2 Mann's declarations.  He has identified, in both his first

3 declaration and second, several current OpenAI employees who

4 have knowledge about the relevant matters and knowledge to

5 the same extent that he does.

6      Plaintiffs' claim that Mr. Mann has firsthand knowledge

7 and others have secondhand knowledge is based on their

8 reading of OpenAI's interrogatory responses, and there are

9 some important facts about those interrogatory responses

10 that your Honor needs to understand.

11      Mr. Mann is identified in a supplemental response to

12 interrogatory 15.  That is the focus of Mr. Benon's

13 argument.  That was an interrogatory response that Mr.

14 Mann's predecessor counsel to me were not even permitted to

15 see.  When they filed the motion to quash, they hadn't even

16 seen it yet.  But interrogatory 15 names Mr. Mann in a

17 supplemental response.  What Counsel has failed to tell the

18 Court is that there was an initial response to interrogatory

19 15 naming three current OpenAI employees.  OpenAI -- I'm

20 sorry, Counsel, Mr. Benon, has taken only a single

21 deposition in this case.  I think that one of those three

22 employees has been deposed, but he was not, to my

23 understanding, someone from the data training team that's

24 the focus of this motion.  So they've actually taken no

25 depositions of the people that are the OpenAI employees who

11

1    Mr. Mann identified as having knowledge.  So there has just
2    not been -- this is a cart before the horse situation, your
3    Honor.  There has just not been an attempt to take the
4    first-party discovery.
5        Let me just say a couple of other things.  Mr. Benon
6    refers to this document that he received on Friday and that
7    I saw for the first time on Friday, produced by OpenAI, that
8    he asserts is the transition memo drafted by Mr. Mann and
9    referred to in Mr. Mann's declaration.  I was able to meet
10   with Mr. Mann yesterday.  That is not the transition memo.
11   Mr. Mann, in both of his declarations, referred to some
12   meetings that he participated in to make sure that any gaps
13   in the company's knowledge related to things that he had
14   personally done were filled before he left.  And I was only
15   able to kind of describe this memo to him because, under the
16   protective order, I couldn't show it to him.  But he said,
17   from the sound of what the memo contained -- what the
18   document contained, it looked -- sounded to him like notes
19   from one of those meetings that he references in the
20   declaration.
21       So they -- actually, Mr. Benon still has not even done
22   the first-party discovery necessary to get a copy of Mr.
23   Mann's transition memo.  That's like a basic document that
24   would probably shortcut a lot of the questions he would need
25   to ask Mr. Mann that he doesn't have yet.  So I want to just

12

1  point out, in Mr. Mann's reply declaration, which he was
2  only able to provide to the Court once he had kind of gotten
3  specific information about what Plaintiffs' claims were
4  about his supposed unique knowledge, he identified four
5  current employees who he said, under oath, have the same
6  level of knowledge about these subjects that he has, they
7  were as involved in the decision making around these issues
8  as he was.  None of these OpenAI employees have been
9  deposed.  And, in fact, in Plaintiffs' surreply, Counsel
10 complains about the way OpenAI is conducting discovery and
11 notes that one of these individuals, Shantanu (phonetic)
12 Jane (phonetic), that they requested that he be made a
13 document custodian, and OpenAI refused.
14     So what we have here is Plaintiffs not having the
15 documents from the other people that Mr. Mann has said,
16 under oath, were working with him and have the same level of
17 knowledge, not having deposed any of those people.  And what
18 they're trying to do is -- the law that we cited is settled
19 law, that third-party discovery is inherently unduly
20 burdensome and improper before first-party discovery on the
21 same subjects has been taken.  But Plaintiffs are just
22 trying to leapfrog all of that.  They're saying because of
23 some interrogatories that I would characterize as
24 misleadingly described, that they can leapfrog that, that
25 there's no one they can ask these questions to other than

13

1 Mr. Mann, which Mr. Mann's declaration shows is false and,

2 actually, a complete review of the original response to

3 interrogatory 15 also shows is false.  And they're just

4 trying to skip over all of that and force Mr. Mann to get

5 into the chair for seven hours.  And, your Honor, it's just

6 not permitted under the law.  They need to do their

7 homework.  They need to get the documents that Mr. Mann has

8 now told them, under oath, exists or somehow confirm that

9 they no longer exist.  And they need to depose the witnesses

10 that he's identified as being on his team and having the

11 same knowledge before they're allowed to get Mr. Mann.

12        THE COURT:  Mr. Nath, did you -- do you want to

13 speak on this?

14        MR. NATH:  Yes, your Honor.  I'll be very brief.

15    On the transition memo, I think, sort of -- the dispute

16 over the transition memo kind of underscores the problem

17 that we're having here.  We think that there -- that we,

18 particularly, at least Mr. Mann should be deposed in the

19 next couple of weeks.  The parties are moving towards a

20 situation -- I'm talking about both of the cases in New York

21 and (indiscernible) are moving towards taking depositions of

22 other fact witnesses, current OpenAI employees.  But even

23 after those depositions, there's one kind of critical thing,

24 critical part of the case, which is, there are these two

25 datasets created.  OpenAI has told us, and I think they've

14

1  also told the Northern District Plaintiffs the same thing,

2  that -- they've told us that these datasets were created by

3  two people, Ben Mann and Dario Amodei.  Those two

4  individuals left OpenAI.  And after they left, the datasets

5  were deleted.  We think some other information about the

6  datasets were deleted.  So when we sought this information

7  from OpenAI over the last year, from documents and

8  interrogatories, we have gotten very little.  And so we

9  think, given -- we don't have a lot of time left in the

10  discovery -- in the discovery period, both in the <u>In re</u>

11  <u>ChatGPT</u> action and the <u>SDNY</u> action, we have discovery cutoff

12  at the end of April.

13      We actually think Mr. Mann's deposition is important to

14  happen earlier in discovery, rather than later, because

15  there are likely other documents or threads to pull on for

16  us to be able to get from OpenAI that we're unaware of,

17  because the stories between Mr. Mann on the one hand and

18  OpenAI about what's available, what happened, how these

19  books were pulled, are very different.  And so it is

20  important for this deposition to take place.  This is a

21  critical witness.  There's been an unusual amount of

22  turnover at OpenAI, and so a lot of the witnesses that

23  otherwise would have been there are all former employees,

24  and Mr. Mann and Mr. Amodei were former employees who just

25  happened to be the ones who, according to OpenAI, created

15

1  the datasets that are really at the heart of this

2  litigation.

3          THE COURT:  All right.

4          MR. BENON:  If I could just make a quick

5  clarifying point, your Honor.

6          THE COURT:  No.

7      As to Mr. Mann, I will grant the request to compel his

8  deposition for seven hours, split between the two plaintiff

9  set.  You guys can determine who -- you know, three and a

10  half hours each or however you want to do it.  And I will

11  order that it take place within the next couple of weeks.

12  And the parties can meet and confer and determine the best

13  date for that to take place.  I find that based on his

14  firsthand knowledge at the time, that's relevant to

15  Plaintiffs' claims, and that although he is a third party,

16  he was an employee of the company at the time when those

17  events took place, and he has firsthand knowledge, and

18  they've shown the relevancy for that.

19      All right.  So that takes care of 248, and then as well

20  as a portion of the other case.  Is that right?  The related

21  case?  Or the whole related case?

22          MR. NATH:  Correct, your Honor.  It takes part --

23  it takes care of part of the related case.  We still have a

24  motion pending about Mr. Amodei.

25          THE COURT:  Mr. Amodei.  Okay.

16

1    Let's go ahead and get into that one then, right now.

2  Wait, that one is not fully briefed, right?  That's the one

3  that -- yeah, that's --

4        MR. GUTKIN:  It's not, your Honor.  We haven't

5  even opposed the motion to compel in either action.

6        THE COURT:  Okay.  That's right.

7    All right.  So you guys are still meeting and

8  conferring on Mr. Amodei, then?

9        MR. GUTKIN:  Well, we have not really started that

10  process yet because we were coming to today's hearing and

11  trying to -- you know, as you've seen, your Honor, there was

12  a surreply and a letter filed yesterday, but we can do that.

13        THE COURT:  Yes, please meet and confer.

14    All right.  So then the next one for me is related to

15  Microsoft's -- and I don't remember the -- wait.  No, it all

16  got closed when I closed my computer.  What's the motion

17  number on the Microsoft one?  And that's the one we were

18  going to hear last week, and it got moved, and then I think

19  you guys were going to meet and confer in between, and then

20  bring me a resolution.  Is that right?

21        MR. FORBUSH:  Your Honor, the docket numbers are

22  268 and 270, which I'm doing from memory.

23        THE COURT:  Yes, 268 -- two -- no, that's the

24  administrative motion.

25        MR. BRIANT:  I believe it's 267, your Honor.

1          THE COURT:  267.  Here we go.  Yeah.  And then

2  269, which was the correction of 267, yeah.  Yes, I got it

3  now.  Okay.

4      So who's taking the lead on that?

5          MR. FORBUSH:  I am, your Honor.  And good morning.

6          THE COURT:  Good morning.

7          MR. FORBUSH:  Reed Forbush for the Plaintiffs.

8          THE COURT:  Okay.  Go ahead.

9          MR. FORBUSH:  Plaintiffs' subpoena to Microsoft

10  has 22 document requests across three general topics, and

11  Microsoft has offered to produce only one category of

12  documents in response to one request --

13          THE COURT:  Let's start --

14          MR. FORBUSH:  -- (indiscernible) licensing and

15  data --

16          THE COURT:  Hold on.  Hold on just a second.  Hold

17  on.  Before we get into all that, let's start with their

18  challenge to it being raised in this court.

19          MR. FORBUSH:  Yes, your Honor.  So with respect to

20  the place of compliance, the Court does not need to go

21  further than the text of the rule.  In Rule 45(c)(2)(A), it

22  says that a subpoena may command production of documents or

23  electronically stored information at a place within 100

24  miles of where the subpoenaed person regularly transacts

25  business.  And there is no dispute that Microsoft regularly

18

1  transacts business in San Francisco.  The place of

2  compliance was set in San Francisco, and we have brought

3  this action to compel in the Northern District.

4           THE COURT:  All right.  Super easy.

5      Let me hear from Microsoft.  I guess you guys are in

6  agreement.

7           MR. BRIANT:  Yes, your Honor.  I think in our --

8  Jared Briant on behalf of Microsoft.  In our letter brief,

9  we just identified the fact that Europlay (phonetic) and

10 other cases in this district find that the place of

11 compliance is the place both where the headquarters is and

12 the custodians and the documents that are sought.  But we

13 recognize that there are cases that go both ways on this

14 issue.

15          THE COURT:  Okay.  All right.

16     All right.  Then, Mr. Forbush, go ahead and proceed.

17 Oh, wait, just -- you guys didn't work anything out, right?

18 This is all still --

19          MR. FORBUSH:  We've not reached an agreement, your

20 Honor.

21          THE COURT:  All right.  Go ahead.

22          MR. FORBUSH:  So the -- as I was saying, your

23 Honor, there are 22 document requests, and Microsoft has

24 agreed to produce documents with respect to one of those 22

25 document requests.  And in offering this purported

19

compromise and refusing to work with Plaintiffs on any other
limitation to the subpoena, Microsoft is attempting to cast
itself as essentially a stranger to OpenAI and a stranger to
the issues in this case.  But treating Microsoft that way
has no logic under the law or under any commonsense
understanding of Microsoft's involvement in the issues here
and it's general partnership with OpenAI.  Microsoft has
committed vast resources into its management and oversight
of that partnership, as evidenced in both public reporting
and in documents OpenAI has produced.

     So the -- to begin with, Microsoft has reportedly
invested or committed to invest $13 billion into OpenAI, and
more generally, it has invested $80 billion -- just reported
in the past couple of weeks, $80 billion into AI
infrastructure overall.

     Top OpenAI executives -- and this was reflected in the
letter brief --

          THE COURT:  Let me just -- let me cut you off,
sorry.

          MR. FORBUSH:  Yes.

          THE COURT:  So -- I understand all that, but their
argument is that you should be getting this stuff from
OpenAI, the things that -- a lot of this stuff, that you
could be getting it from OpenAI directly.  Why aren't you
doing that instead of going through Microsoft?

20

1          MR. FORBUSH:  Well, your Honor, thank you for the

2 question.  Sixteen of the 22 requests seek documents that

3 would exist internally to Microsoft alone.

4          THE COURT:  Okay.

5          MR. FORBUSH:  And without any particular reason --

6          THE COURT:  Let me -- I'm sorry to do it this way,

7 but if I don't get, like, the individual things squared away

8 -- it's my brain, not yours.  So let me apologize for

9 cutting you off.

10     Let me hear from Microsoft.  Let's go to that very

11 question right there.

12          MR. BRIANT:  The very question being the notion

13 that they should be seeking this from OpenAI?  Yes.  Thank

14 you, your Honor.

15     I think it's -- it's a prerequisite for third-party

16 discovery that any party seeking discovery from a third

17 party has to not only explain why the discovery is relevant

18 and proportional, but also be able to explain why they

19 couldn't get it from a party (indiscernible) litigation.

20          THE COURT:  But he's saying that this -- vast

21 majority of this is something that only you guys would have.

22          MR. BRIANT:  Sure.  I understand that.  And we can

23 walk through these, but we -- if we just start at the top

24 with the first three, these are textbook requests for

25 production that seek documents that are admittedly and

1  undisputedly in the possession of OpenAI.  The requests lead

2  with "communications with OpenAI."  Those are the first

3  three requests, by their -- by definition seek

4  communications that are in OpenAI's possession.  Then we can

5  go beyond that.  For example, request number four seeks

6  "investments or products or services provided to OpenAI,"

7  also a textbook type of request for production that would be

8  in OpenAI's possession.

9      Admittedly, there are a handful of requests that do

10  seek internal Microsoft documents.

11          THE COURT:  And those are the ones that you claim

12  are either irrelevant or improper, right?

13          MR. BENON:  Correct, your Honor.

14          THE COURT:  Okay.

15      So, Mr. Forbush, as to the ones that are requests that

16  have OpenAI either being the recipient or -- you know, or

17  these communications between them, why wouldn't those be

18  just subject to subpoenas or through the discovery process

19  that you have with OpenAI?  Why are you dragging Microsoft

20  into the back end of it?

21          MR. FORBUSH:  Well, specifically as to request

22  four, that requests documents that would be in Microsoft's

23  possession, not exclusively OpenAI's possession.  Financial

24  documents related to the investments would be with

25  Microsoft, not with OpenAI.  No particular reason to expect

22

that there would be a comprehensive set of those documents

with OpenAI.  So we can go sort of tit for tat in all of the

requests for that, but we dispute that to begin with.

        For the more general question, your Honor, for those

overlapping communications, all Plaintiffs are asking is

that Microsoft conduct a good faith investigation into where

those communications may be, because they know who the

people are at Microsoft that are discussing the relevant

issues as they pertain to the OpenAI partnership and the

collaboration between Microsoft and OpenAI, and, indeed,

Plaintiffs are learning day by day, week by week, as we get

more documents from OpenAI, that the -- that Microsoft's

involvement in the key issues was very deep, and we could --

just a couple of documents that we reviewed in the past

couple of days have arisen -- I can raise this with the

Court, though I'm hesitant because of the -- of

confidentiality obligations.  If we go into closed session,

I can discuss them.  But what we see is that Microsoft had

awareness of OpenAI's possession of documents from the

shadow libraries, and it's -- and in the joint letter

briefing, we know that Microsoft was already very much

involved -- deeply involved in strategic partnership in how

to acquire that data.

                THE COURT:  Well, let me ask you this.  So they

point specifically to, for example, request number five,

23

1  seeking Microsoft's profits and revenues for its products,

2  saying that this is not -- you guys haven't even attempted

3  to justify the relevance related to this case.  What is your

4  response to that?

5      MR. FORBUSH:  Oh, respectfully, your Honor, that's

6  not so.  The reason that that's relevant is because

7  Microsoft was using OpenAI products, and Microsoft was

8  deeply involved in a explicit collaboration with OpenAI that

9  -- where Microsoft would be the lead company between the two

10  in acquiring training data for OpenAI.  So --

11      THE COURT:  But is the request tailored such that

12  it's tethered to that?  Let me take a look at the request.

13  Is that -- do I have that copy of that request?

14      MR. FORBUSH:  Yes, your Honor.  That's Exhibit A.

15      THE COURT:  It's not on that one.  It's got to be

16  on -- in 267?

17      MR. FORBUSH:  Yes.

18      THE COURT:  Okay.  I've got 268 open because --

19  oh, here we go.  Yeah, yeah, yeah.  And thank you for the

20  reminder that some of this stuff is still -- a request to

21  seal it has been made.  So if we do need to discuss anything

22  relevant to things that have been redacted, let me know and

23  if we need to go into closed session, but, hopefully, we can

24  avoid that.

25      Okay.  So general objections, question number two,

24

1  three, four, five.  Okay.

2          "All documents concerning or related to

3          the use or inclusion of OpenAI language

4          models, Microsoft products, including,

5          but not limited, to Azure, and

6          including, but not limited to, documents

7          concerning or related to any profits or

8          revenues from such products and the

9          distribution thereof among you and

10         OpenAI."

11     All right.  So, Mr. Briant, will you respond to Mr.

12 Forbush's claims of relevancy and it being a proper request?

13         MR. BRIANT:  Absolutely, your Honor.

14     First off, there's nothing in this request that relates

15 to training data whatsoever.  This request is geared

16 towards --

17         THE COURT:  Right.  The products.

18         MR. BRIANT:  -- Microsoft's products.  Microsoft

19 is not a party here.  Its products are not at issue in this

20 case.  Microsoft is not mentioned in the allegations of the

21 complaint.  And so any profits or revenues regarding

22 Microsoft's products have no relevance in this case.  The

23 profits or revenues that could potentially be relevant here

24 are the profits or -- and/or revenues of OpenAI.  And to the

25 extent request number five seeks, at the very end of this

25

1  request, the distribution of such profits and revenues among

2  Microsoft and OpenAI, that information is, by definition, in

3  OpenAI's possession.

4            THE COURT:  So Mr. --

5            MR. BRIANT:  So that's the problem there is

6  that --

7            THE COURT:  Let me hear -- let me hear from Mr.

8  Forbush on that.

9            MR. FORBUSH:  Your Honor, Microsoft's -- the

10 financial benefits from OpenAI's development of its training

11 models is at issue here.  We're seeking remedies from

12 OpenAI.

13           THE COURT:  Right.  But that's --

14           MR. FORBUSH:  (Indiscernible) --

15           THE COURT:  -- a little bit different -- but

16 that's different than your request for production, which is

17 seeking Microsoft's profits, right?  That's a little bit

18 different than just the distribution and what OpenAI may

19 have received, if you're asking for Microsoft's profits or

20 revenues from its use of OpenAI, right?

21           MR. FORBUSH:  Yes, your Honor, because of the

22 general partnership between Microsoft and OpenAI, from which

23 they both benefited.

24            THE COURT:  So, in other words, the -- but the

25 second half of that would be related to your claims against

26

1  OpenAI.  Since Microsoft is not a party here, their profits
2  wouldn't necessarily be relevant to your claims, right?  If
3  OpenAI is making money off of its sale or its distribution
4  to Microsoft, then that's relevant to your claims.  But
5  whatever Microsoft is making on it and using it, how is that
6  relevant to your claims?

7          MR. FORBUSH:  It would go to the motivation to --
8  for Microsoft to exercise its heavy hand and reach into the
9  management of OpenAI and direct them on acquiring the --
10 collaborating in the acquisition of training data, cutting
11 corners with respect to that acquisition, and eventually
12 profiting for the -- through the general partnership for the
13 both of them.

14         MR. BRIANT:  And, your Honor, respectfully, to the
15 extent -- first off, we disagree with that characterization.
16 Secondly, to the extent that any of this is relevant, these
17 are documents that are in openAI's possession, how training
18 data was acquired, what profit, if any, was generated by
19 OpenAI with respect to use of the LLMs.  Simply stated,
20 like, Microsoft's profits are not at issue in this case.
21 And since this is third-party discovery, Plaintiff, as a
22 prerequisite here, has an obligation to define the discovery
23 that it's not able to get from OpenAI.  And instead of doing
24 that, instead of taking those reasonable steps to avoid
25 imposing this burden, Microsoft was served with these

27

1  wide-ranging requests for all such documents about

2  Microsoft's investment in OpenAI, all such communications

3  with OpenAI about the training, the development, the

4  commercialization of OpenAI's LLMs.  So Plaintiffs have

5  bypassed the prerequisite step here to seek third-party

6  discovery.

7      THE COURT:  And you've already agreed to give over

8  some of these requests, correct?

9      MR. BRIANT:  Correct.  To the extent the requests

10 seek something that is relevant and squarely in Microsoft's

11 possession, yes.  And for -- and a good example of that are

12 data access agreements.  These are data access agreements

13 that Microsoft has reached with third parties.  And that's

14 obviously something that wouldn't be in OpenAI's possession.

15 We understand that executed agreements could have some

16 relevance to the existence of a market, or at least the

17 allegations thereof, so yes.

18     THE COURT:  All right.

19     MR. FORBUSH:  Your Honor, I'll need to respond to

20 that.  That is -- that's not an example of what Microsoft

21 has agreed to produce.  That's the only item that Microsoft

22 has agreed to produce across all 22 requests.

23     And with respect to burden, I appreciate the

24 opportunity to discuss it, because all we seek is that good

25 faith investigation that I mentioned before.  And we have

28

1  every reason to think, and the Court has every reason to

2  believe, that the good faith investigation we're -- under

3  discussion here would be no burden or a very low burden on

4  Microsoft.  That's --

5          THE COURT:  So this is going to be my ruling on

6  this.  I'm not going to grant it as to profits.  I don't see

7  the basis for that.  As to some of the communications and

8  things like that within the list -- I'm not going to go

9  through the list.  As to what's already been agreed to, I

10 will agree to that.  I will permit that.

11      I'll have you guys meet and confer and determine

12 whether or not there are other things related to that data

13 access agreements, or anything else along those lines that

14 fall outside the scope of profits.

15      Now as to the information that you could be collecting

16 from -- so this is how I want these things narrowed, I guess

17 is the way I'm going to say this.  Where you've asked for

18 these things that have this crossover with things that

19 OpenAI are going to have, those are going to be denied.

20 Where it relates to things that are going to be -- then it's

21 going to be denied based on the fact that you can get that

22 stuff from OpenAI, unless you can show me that you haven't

23 been able to get that from OpenAI and that a non-party is in

24 the exclusive control of that, or it's the only way for you

25 to get that information.  Where it's related to the profits

29

1  and things that are Microsoft alone, that's denied.  Where

2  it's related to profits as between OpenAI and Microsoft,

3  that -- which I know it sounds a little bit like I'm

4  disagreeing with myself -- that I am going to permit,

5  because there may be information exclusive within that that

6  Microsoft is in connection with.  So, for example -- so

7  number five, the first part of that is documents related or

8  concerning any profits or revenues that's related to simply

9  Microsoft, that part is denied.  From any distribution of

10 profits or revenues between OpenAI and Microsoft, I will

11 permit that.  As it relates to other types of materials,

12 training materials, data access sets, and stuff like that

13 that's just going to be within the -- that's also just going

14 to be in the control of OpenAI, then I'm going to deny that.

15      So it looks -- look at number six,

16          "Documents sufficient to show any

17          exclusive or nonexclusive rights granted

18          by OpenAI to you to commercialize,

19          monetize, or produce OpenAI language

20          models, training data, or intellectual

21          property."

22      So that would be granted.

23          MR. BRIANT:  Your Honor, just asking for

24 clarification, if this is a right granted by OpenAI to

25 Microsoft, wouldn't that necessarily be something that is in

30

1  OpenAI's possession and that we should at least understand

2  if Plaintiffs have sought this from OpenAI first and been

3  unable to --

4           THE COURT:  Yeah, that's reasonable.  That's

5  reasonable.

6           MR. FORBUSH:  Your Honor, Plaintiffs disagree.

7  There's no reason to think that there's going to be a

8  comprehensive set of documents related to this request or

9  others in --

10          THE COURT:  Have you made similar requests to

11 OpenAI?

12          MR. FORBUSH:  I don't know for sure, your Honor.

13 I --

14          THE COURT:  So I think -- you know, the test, Mr.

15 Forbush, is -- Microsoft is correct, they're a non-party

16 here, right?  And so just like -- you know, you guys -- or

17 Plaintiffs were able to make a showing as to the importance

18 of a non-party, as to Mr. Mann.  I don't think you've made

19 it fully here as to Microsoft, simply because this is

20 document -- these are document requests of things that may

21 be in the possession of OpenAI and you need to go through

22 them first.  And you're trying to tie them into this

23 intimate relationship, so tied up with Microsoft that -- to

24 sort of get around it.  And the problem is, Microsoft is not

25 a party to this action.  And so I'm not going to let you

31

1  stretch through the rules related to non-parties as it

2  relates to that.

3      So we can go through them one by one if you would like

4  to.  I was hoping that maybe my general confusing guidance

5  would allow you guys to go back and sort it out.  But if you

6  want to, we can go through all the requests one by one.

7  What would you like to do?

8          MR. FORBUSH:  Your Honor, respectfully, Plaintiffs

9  would request an opportunity for further briefing to show

10 the depth of Microsoft's involvement in -- and knowledge of

11 the --

12         THE COURT:  But that doesn't help me with question

13 -- that doesn't help me with the question of whether or not

14 you can get this from OpenAI.

15         MR. FORBUSH:  Well, with respect to the

16 acquisition of training data, among other things, and -- we

17 would seek those documents, at the very least, your Honor,

18 that are -- that pertain to these requests but would only be

19 exclusively within the possession of Microsoft.

20         THE COURT:  No, I did grant that.  I gave you

21 that.  I said just not as to profits.

22         MR. FORBUSH:  Okay.  So, your Honor, maybe I

23 misunderstand.  So, for number six, is there -- is this

24 granted in part?

25         THE COURT:  Let me go back.

32

1           MR. FORBUSH:  Apologies, your Honor.  It could be

2    my misunderstanding.

3           THE COURT:  Hang on.  I'm -- it's stuck.  My page

4    is stuck.  Stuck on number two.  There we go.  It's moving.

5    All right.

6           MR. FORBUSH:  You just are above making any quips

7    about the performance of Microsoft's software.

8           THE COURT:  "Documents sufficient to show any

9    exclusive or nonexclusive rights granted by OpenAI to you to

10   commercialize, monetize, or productize OpenAI language

11   models, training data, or intellectual property."  So that

12   would be in part, right?

13          MR. FORBUSH:  Thank you, your Honor.  So to the

14   extent that there are discussions internally in OpenAI on

15   this topic, that would be granted in part?

16          THE COURT:  That's correct.  Does that make sense?

17          MR. FORBUSH:  It does, your Honor.  Thank you.

18          MR. BRIANT:  And just to be clear, your Honor,

19   OpenAI trained the models at issue here.

20          THE COURT:  I know.

21          MR. BRIANT:  So there's nothing that's about

22   training that's going to be exclusively in Microsoft's

23   possession.  So I -- we can go through -- I'm happy to

24   confer --

25          THE COURT:  A good faith effort on that would be

33

1    -- yeah.  Sure.

2           MR. FORBUSH:  And, your Honor, this is why I put

3    in this prayer for a further briefing.  We have documents

4    coming in from OpenAI showing that Microsoft was the lead

5    company when it came to acquisition of data.

6           THE COURT:  Right.  But -- so you're saying that

7    they're going to have stuff that OpenAI wouldn't because of

8    that?

9           MR. FORBUSH:  Yes, your Honor.

10          THE COURT:  Okay.

11          MR. FORBUSH:  Internal discussions regarding the

12   legal risks of using copyrighted material or even directives

13   from Microsoft to OpenAI to speed things up by cutting those

14   corners.

15          THE COURT:  But I don't have a problem granting

16   your request for relief as regards to things that aren't

17   going to be in OpenAI's possession.  What I want you to do

18   is make sure that when you're asking that stuff from

19   Microsoft, you've already made a showing that you've tried

20   to get this stuff from OpenAI, such as to lessen the burden

21   on a non-party.  See what I'm saying?  I'm just trying to

22   set up that scheme for you, such that you're going through

23   that first hoop, because I understand your argument, which

24   is that they're so married together that you shouldn't have

25   to treat them like a third party.  But they are a third

34

1  party, and I want you to treat them as such.  Go through

2  that hoop, make that showing, and then you can seek

3  something that shows that this -- it's in their exclusive

4  control.  If there's an issue with that on the back end,

5  then you can bring it to me discreetly, showing, "This is

6  what we did, how we tried to get it without bothering them.

7  We're unable to do that.  They should give it over."  Now,

8  Microsoft has heard my rulings today, and so they're likely

9  to work it out with you, and you guys shouldn't have to

10  present me with anything.  But I can see from my docket that

11  you're more likely to come back tomorrow with something

12  else, so -- anyway.

13          MR. FORBUSH:  Your Honor, so -- I'm sorry for --

14  to beg for clarification, your Honor.  It is -- it's my

15  understanding then that you are ordering, in the first

16  instance, the production of documents that Microsoft knows

17  are internal to itself and would not be --

18          THE COURT:  Correct.

19          MR. FORBUSH:  Yes.

20          THE COURT:  Correct.

21          MR. FORBUSH:  Thank you.

22          THE COURT:  The only thing -- the only exclusion

23  on that is related to profits -- Microsoft profits on the

24  matter, okay?

25          MR. FORBUSH:  Thank you, your Honor.

35

1          MR. BRIANT:  And, your Honor, just for

2   clarification, there should also be a relevance prong here,

3   too.  Not only --

4          THE COURT:  Yes.

5          MR. BRIANT:  -- do the requests need to be

6   tailored to seek documents that are not in OpenAI's

7   possession, they also need -- if they're seeking --

8          THE COURT:  Yes.

9          MR. BRIANT:  -- exclusive Microsoft documents,

10  they also need to be relevant to the claims in this case.

11         THE COURT:  That's correct.

12         MR. BRIANT:  So there's two hoops -- and we're

13  happy to confer further with Plaintiffs on this, but there's

14  two hoops I think that we need to jump through before we get

15  to that -- what that universe is.

16         THE COURT:  Send me by next week Wednesday a

17  status update letting me know jointly that it's all taken

18  care of.  If it's not, then I'll put you guys back on

19  calendar.  We'll go through one at a time, and I'll just

20  make rulings all the way down the list, okay?  Does that

21  make sense to everybody?

22         MR. FORBUSH:  It does, your Honor.  I do -- I

23  anticipate that the -- this time might be best spent by

24  going through that relevance, considering Mr. Briant's

25  objection at the moment.  But we're happy to go through --

36

1          THE COURT:  No, no.  But Mr. Briant heard my

2    response that there are -- you have made relevance showings

3    as to some of this stuff, specifically as to a portion of

4    six and five, and so he understands where I'm coming from.

5    So it's all going to be worked out.  You're going to send me

6    a happy memo on Wednesday.

7        All right.  Is there anything else I can do for anybody

8    at this point?  I think there's some letter briefs that are

9    still on my docket that we're going to be doing, not by way

10   of hearing, if I remember correctly.  Or maybe I've already

11   taken care of them, and I can't remember that.  I apologize,

12   I was out sick last week, and I'm getting caught back up.

13       Did I do anything with 255, which was the English

14   collating dataset?  Have I taken care of that one yet?

15          MR. STEIN:  This is Josh Stein from Boies Schiller

16   Flexner.

17          THE COURT:  Yeah.

18          MR. STEIN:  You're awaiting a stipulation as to --

19          THE COURT:  Oh.

20          MR. STEIN:  -- the parameters of the production

21   there.

22          THE COURT:  Right.  I made some --

23          MR. STEIN:  We're still meeting and conferring as

24   to the bounds of that stipulation, but we anticipate coming

25   to the Court sometime this week with the stipulation.

37

```
 1          THE COURT:  With the stipulation.  Wonderful.
 2     Okay.  Just -- while I have everybody here, let me just
 3 go through this report real quick and make sure --
 4 fortunately, I have this case number memorized.  Okay.  So
 5 that was the 254, I think.  Yeah.  Okay.  And then 267.  You
 6 guys just filed a brand new one on -- well, it's last week,
 7 I guess, the search terms, right?
 8          MR. STEIN:  Right, your Honor.
 9          THE COURT:  Okay.  And then the deposition of
10 Amodei, and then -- I think that's it.  No, there was
11 another one.  Reuters (phonetic) News.  That was just filed
12 yesterday.
13     Okay.  All right.  So then you'll hear from me whether
14 or not we're going to have a hearing on the search terms
15 brief.  And then the motion to compel I think is going
16 through the briefing process.  I think the hearing is set
17 sometime in March, so --
18     Okay.  All right.  Just trying to tread water here.
19 And -- all right.  So I'll look forward to hearing from you
20 guys Wednesday of next week regarding whether or not all
21 this has been worked out, or whether or not we can just get
22 on video and go through them one at a time and make a bunch
23 of rulings on them.
24     All right.  Anything further from the parties in this
25 matter then?
```

38

1          MR. STEIN:  No.  Thank you, your Honor.

2          MR. FORBUSH:  Not from Plaintiffs.  Thank you,

3  your Honor.  Thank you for your patience.

4          THE COURT:  All right.  Thank you, everyone.  Take

5  care.

6          MR. BRIANT:  Thank you, your Honor.

7          MR. FORBUSH:  Thanks, your Honor.

8          THE COURT:  All right.  Thank you.

9       (Proceedings adjourned at 11:54 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

39

CERTIFICATE OF TRANSCRIBER

     I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

     I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber
Friday, February 14, 2025