**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

<u>**E-FILED**</u>

United States District Court
Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Avenue
McKinleyville, CA, 95519

Re:    *In re OpenAI ChatGPT Litigation*; Master File No. 3:23-cv-3223-AMO

Dear Judge Illman:

Pursuant to this Court's standing order, the parties hereby submit this joint discovery letter brief concerning the sufficiency of Plaintiffs' search for, collection of, and production of responsive discovery from the files of individuals and entities within Plaintiffs' control. Counsel for the parties met and conferred yet they were unable to resolve their dispute.

2880856

**OpenAI's Statement**. The twelve Plaintiffs in this copyright litigation have not adequately searched for or obtained, and thus have not produced, documents from the files of those who work under their direction and on their behalf—their literary agents, ghostwriters, loan-out companies, assistants, and production companies (hereafter, "Agents"). Nor have Plaintiffs obtained documents from their publishers, despite having contractual rights to do so. These files undoubtedly contain responsive discovery related to the creation, licensing, and value of the asserted works. Plaintiffs' failure to produce these materials contravenes well-established law. *See* Fed. R. Civ. P. 34(a)(1); *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995) ("A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document."); *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987) (an attorney must employ "a reasonable procedure to distribute discovery requests to all employees and agents . . . potentially possessing responsive information, and to account for the collection and subsequent production of the information"). OpenAI moves for the complete production of responsive materials from Plaintiffs' Agents and publishers by February 28.

*Background*. In January, OpenAI identified significant deficiencies in Plaintiffs' productions, including a dearth of communications related to the negotiations of the publishing and licensing agreements for the works at issue, and asked Plaintiffs to confirm that they requested, collected, and would produce responsive documents from the Agents and publishers. Plaintiffs evaded the question. During a February 6 conferral, two disputes crystallized: First, although Plaintiffs do not dispute that the Agents' files are within their "control," the parties disagree as to whether Plaintiffs have conducted a reasonable search of those files. Second, the parties disagree as to whether Plaintiffs' publishers' files are within Plaintiffs' "control."

*Dispute No. 1 (Agents)*. Literary/Professional Agents. Plaintiffs' literary and other agents negotiate publishing and licensing agreements for their asserted works. Documents relating to such negotiations are relevant to (1) ownership of the works, (2) the purpose of the works, and (3) the market for the works and any alleged harm thereto. Yet, for example, Snyder's and Lippman's productions do not contain *any* responsive documents regarding the negotiations for their domestic publishing agreements. And Coates has not produced *any* documents from his literary agent, his film and TV agent, or his manager, all of whom, he testified at his deposition in the *Kadrey v. Meta* litigation, [redacted], but has produced *no* documents from their files. Golden has produced *no* documents from his literary agent's files either, even though his [redacted]. Plaintiffs claim below to have produced communications relating to the negotiations of their agreements, to the extent any were found, but they notably do not cite to a single produced document, let alone any *from their agents' files*. Plaintiffs' reliance on their ongoing ESI process—targeted only at collecting documents from *Plaintiffs' own ESI sources*—is plainly insufficient and does not address their failure to adequately collect documents from *others within their control*.

Ghostwriters. Ghostwriters of the works at issue possess information that is material to the ownership and originality of the asserted works. Plaintiffs assert they do not use ghostwriters. But the record shows otherwise. [redacted]

1

[REDACTED]

Loan-Out Companies. Loan-out companies are the alleged owners of some of the asserted works. Plaintiffs assert that a search of Plaintiffs' files is necessarily a search of the loan-out companies' files because these companies are sole-member entities. Not so. For example, [REDACTED] Coates has produced *no* documents from her files, [REDACTED] Below, Coates minimizes her role, but then points to OpenAI's citations to argue that "[he] has already produced documents from [REDACTED]." Wrong again. These emails are from *his* accounts—not from [REDACTED] accounts (which is the issue at hand).

Assistants. Similarly, Plaintiffs have not conducted a reasonable search of their assistants' files. For example, Silverman has produced a *single* email correspondence with [REDACTED], whose email address is [REDACTED], wherein Silverman [REDACTED]. In *Meta*, Silverman testified [REDACTED]. Yet Silverman's production includes *no* documents from [REDACTED] files, or the [REDACTED] account. Worse still, Silverman's counsel represented at the February 6 meeting that she *does not use assistants*. When confronted with the email, counsel appeared unaware of [REDACTED] existence and could not recall whether the Gmail account had been searched, despite the fact that the Court had ordered Silverman to complete her document production the next day. ECF 251. Counsel later explained that [REDACTED] is Silverman's assistant for "personal matters," such as dog-walking. Counsel's representation is belied by the single email with [REDACTED] on it, and in any event, does not explain the lack of documents produced from [REDACTED] files. Below, Silverman argues that she has no right to "invade" [REDACTED] files (a new argument not raised during the parties' conferral, where Plaintiffs admitted assistants would be within their control but claimed not to use any). It strains credulity that Silverman does not have control over the [REDACTED] account. Importantly, OpenAI cannot assess what rights Silverman has over [REDACTED] work-related files because she *has not produced* [REDACTED] *employment agreement* (or [REDACTED] even though she testified in *Meta* [REDACTED]. Other Plaintiffs also have assistants whose files were not searched. Coates testified in *Meta* that [REDACTED] Hwang testified that [REDACTED] But *no* documents have been produced from [REDACTED]

Production Companies. Plaintiffs have not requested responsive documents from production companies they control. For example, [REDACTED] provides its employees with email accounts. Other than documents from Coates' email account, *no* documents have been produced from [REDACTED] files.

2

2880856

Relief Requested for Dispute No. 1 (Agents). Given the April 28 fact discovery cut-off, the Court should compel *all* Plaintiffs to conduct a reasonable inquiry for responsive documents from the Agents' files and to produce them by February 28. This request is not as Plaintiffs assert—for the first time in this brief, and without citing any authority—"oppressive." *See A. Farber & Partners v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (ordering party that produced a "paltry number of documents" to conduct a reasonable inquiry to locate responsive documents from entities "with which he, his various business enterprises, and his counsel have dealings").

***Dispute No. 2 (Publishers) & Relief Requested.*** Plaintiffs do not dispute the existence of relevant discovery in their publishers' possession. Their only excuse for not producing it is that they do not control their publishers. But each Plaintiff's publishing agreement contains provisions entitling them to obtain from the publisher highly relevant and responsive information. *See, e.g.*, ███████████████████████████████████████████████ Plaintiffs should be compelled to produce, by February 28, responsive materials from their publishers to which they are entitled. *See Cryptography Rsch., Inc. v. Visa Int'l Serv. Ass'n*, 2005 WL 1787421, at *4 (N.D. Cal. July 27, 2005) ("Based on these contractual relationships, . . . Visa has the legal right to obtain on demand the information. . . . [T]his information is within the control of Visa[.]"). That OpenAI can seek this discovery via third-party subpoenas does not obviate Plaintiffs' obligation to produce documents over which they have control. *See Soto*, 162 F.R.D. at 619.

Plaintiffs' Statement: OpenAI's fishing expedition continues—it now clamors that Plaintiffs must search the files of individuals like Plaintiff Silverman's dogwalker on the unfounded suspicion that they may have relevant documents that Plaintiffs have the legal right to. But Plaintiffs have *already* conducted diligent searches for potentially responsive documents from a variety of data sources and agents, as required by the Federal Rules and the Parties' ESI Protocol. What OpenAI seeks now are documents from individuals who do not possess responsive documents, from individuals from which Plaintiffs have no legal right to obtain documents, or both. But rather than accept Plaintiffs' counsel's good faith representations about their search and collection efforts, OpenAI chose to manufacture this dispute.

The parties do not disagree about what it means for documents to be within the possession, custody, or control of a responding party. Instead, OpenAI categorically refuses to believe Plaintiffs' representations. This obstinance is perplexing because Plaintiffs' representations are consistent with documents Plaintiffs have already produced and have pointed out. As explained in more detail below, OpenAI also misconstrues Plaintiffs' rights to access documents possessed by publishers and other third parties with which they do not have a principal-agent relationship. OpenAI's rush to the courthouse to obtain a court order which would yoke Plaintiffs with oppressive obligations well beyond those required by the Federal Rules should be recognized as what it is—simply a fishing expedition which should be curtailed.

Literary/Professional Agents: OpenAI's claim that Plaintiffs have not produced any files from their literary or professional agents is demonstrably false. As Plaintiffs confirmed with OpenAI's counsel, Plaintiffs have *already* collected and produced documents from their agents, including their literary agents. Examples of documents that have been collected and produced from Plaintiffs' agents include Plaintiffs' licensing agreements, subsidiary licensing agreements, royalty statements, and communications regarding the negotiations of these licensing agreements or subsidiary agreements to the extent they could be found based on a reasonably diligent search. Plaintiffs have conducted a reasonable and diligent search of their agents' records and produced

3

2880856

the responsive material found in those files. That is all the Federal Rules require. If OpenAI's position is that these third parties must submit to an invasive forensic collection of their data sources, such relief would be remarkable and disproportionately burdensome.

Ghostwriters: To begin, none of the Plaintiffs used "ghostwriters." OpenAI's continued use of the term "ghostwriter" is pejorative and intended to suggest that Plaintiffs did not author their own works. Not so. For example, ███████████████████████████████████████████████████████████████████████████ Under any definition, this is not ghostwriting, and in fact, quite ordinary. Aside from this outsized mischaracterization of ███ ████████ OpenAI is also incorrect that the documents reflecting ████████████████ are missing. OpenAI well knows that the agreement between ████ It admits as much. And Plaintiff has produced those documents—namely over five hundred pages of documents reflecting ██████████████████████████████████████████████████████████████████ Outside of those documents, Plaintiff does not have a right to seek documents from ██████████ ████████████ Moreover, it is unclear what other responsive documents OpenAI expects would be in ██████████ possession aside from those already produced.

Loan-Out Companies: OpenAI's argument that Plaintiffs have refused to search the files of their loan-out companies is also untrue. Plaintiffs never asserted that they are "not obligated" to search the files of their loan-out companies. Instead, as Plaintiffs told OpenAI, *there are no separate records for the loan-out companies outside of the emails and documents that Plaintiffs have already forensically collected and produced in this case.* To be clear, █████████████████████ ████████████████████████████████████████████████████████████████████████████ As OpenAI notes, Plaintiff already produced documents from █████████ as part of a thorough forensic collection process. OpenAI fails to point to anything that evidences an insufficient search of ██████████████ Because Plaintiffs themselves own and operate their loan-out companies, a search of Plaintiffs' records *is* a search of the loan-out companies. And Plaintiffs have produced their loan-out companies' responsive documents.

Assistants: Rule 26 requires only that a party search for and produce from sources likely to have discoverable information. The discovery rules do not require a party to comb through data sources and non-parties that plainly do not contain responsive information. And yet, that is precisely what OpenAI asks Plaintiffs to do. As Plaintiffs confirmed during the meet and confer discussions and correspondence with OpenAI, they do not have personal assistants who possess any potentially responsive documents. For example, Plaintiff Silverman's personal assistant ████████████, primarily watches and walks her dogs, and runs her errands. OpenAI points to a single document which reflects ████████████████████████████████████████████████████████████████████ . Although the document is entirely irrelevant, OpenAI says this is reason enough to invade ██████████████ files. Setting aside that Ms. Silverman has no right legal or otherwise to search ████████████ files, including the ██████████████████████████ email account which █████████████ herself created and maintains, she possesses no other potentially responsive documents, and certainly no unique responsive documents. This is precisely the oppressive and harassing conduct the Federal Rules

4

demand be arrested. Ms. Silverman's previous assistant, ▇▇▇▇ performed similar personal tasks that have no relation to the claims or defenses in this case, and similarly does not possess any responsive documents. Plaintiff Coates's and Hwang's assistants identified by OpenAI are also personal assistants who do not possess responsive documents. As reflected in the documents identified by OpenAI, these assistants primarily perform tasks like organizing Plaintiffs' calendars and personal affairs. OpenAI's position that Plaintiffs need to conduct a search of these individuals' records when Plaintiffs know and have represented to OpenAI that there are no responsive documents maintained by these individuals is unreasonable.

<u>Production Companies</u>: Again, OpenAI's statement that Plaintiffs "have not requested responsive documents from production companies they control" is wrong. As OpenAI recognizes above, Plaintiff Coates conducted a forensic collection of his ▇▇▇▇ email account and has produced numerous documents concerning the discrete issue of the film adaptation of his asserted work.

<u>Publishers</u>: Plaintiffs do not have a right to receive the documents requested by OpenAI from their publishers. OpenAI misconstrues and oversimplifies the extent of Plaintiff's rights under the publishing agreements. For example, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This wording plainly does not confer a right to receive specific documents from the publisher. Similarly, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ However, the information Plaintiff may request on this basis ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ which OpenAI has not requested. The portion of Plaintiff Coates's agreement which OpenAI cites ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ As another example, Plaintiff Silverman may request ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The other literary agreements follow a similar pattern.

Importantly, Plaintiffs have already produced the documents they *are* entitled to under their agreements—they have produced sales and royalty statements that Plaintiffs have received from their publishers. But OpenAI demands more, for example, market analyses of the works, but those documents are simply not within the scope of documents that Plaintiffs have a right to obtain, as Plaintiffs have explained to OpenAI. OpenAI has the same rights to the other documents it seeks from Plaintiffs' publishers as Plaintiffs do through Rule 45 subpoenas. In fact, OpenAI has already issued requests to Plaintiffs' publishers seeking the documents they insist Plaintiffs have access to including "Documents Regarding the valuation of and/or market, if any, for any of the Plaintiffs' Copyrighted Works . . ." and "Documents and Communications Related to the application for a copyright registration for any of the Asserted Works, including . . . deposit copies of the Asserted Works." The Court should deny OpenAI's request that Plaintiffs seek from publishers either documents they do not have a right to obtain, or the same documents they have already received from their publishers—and have produced to OpenAI. The Federal Rules impose no obligation on Plaintiffs to obtain discovery from a nonparty for their adversary with equal access.

The Court should deny OpenAI's motion in its entirety because it seeks to impose burdens on Plaintiffs beyond the scope of their discovery obligations or because Plaintiffs have already undertaken the search and collection that OpenAI requests.

|  |  |
|---|---|
|  | KEKER, VAN NEST & PETERS LLP |
| Dated: February 20, 2025 | By: /s/ *Katie Lynn Joyce* |
|  | KATIE LYNN JOYCE (SBN 308263)<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:     415 391 5400<br>kjoyce@keker.com |
|  | LATHAM & WATKINS LLP |
| Dated: February 20, 2025 | By: /s/ *Elana Nightingale Dawson* |
|  | ELANA NIGHTINGALE DAWSON (*pro hac vice*)<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C. 20004<br>Telephone:     (202) 637-2200<br>Elana.nightingaledawson@lw.com |
|  | MORRISON & FOERSTER LLP |
| Dated: February 20, 2025 | By: /s/ *Carolyn M. Homer* |
|  | CAROLYN M. HOMER (SBN 286441)<br>2100 L Street NW, Suite 900<br>Washington, D.C. 20003<br>Telephone:     (202) 887-1500<br>cmhomer@mofo.com<br><br>*Counsel for OpenAI Defendants* |

|  |  |
|---|---|
|  | JOSEPH SAVERI LAW FIRM, LLP |
| Dated: February 20, 2025 | By: /s/ *Joseph R. Saveri* |
|  | JOSEPH R. SAVERI (SBN 130064)<br>601 California Street, Suite 1505<br>San Francisco, CA 94108<br>Telephone: (415) 500-6800<br>jsaveri@saverilawfirm.com |
|  | CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP |
| Dated: February 20, 2025 | By: /s/ *Bryan L. Clobes* |
|  | BRYAN L. CLOBES (*pro hac vice*)<br>135 S. LaSalle Street, Suite 3210<br>Chicago, IL 60603<br>Telephone: (312) 782-4880<br>bclobes@caffertyclobes.com<br><br>*Counsel for Individual and Representative Plaintiffs and the Proposed Class* |

**E-FILING ATTESTATION**

      I, Katie Lynn Joyce, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above have concurred in this filing.

*/s/ Katie Lynn Joyce*
Katie Lynn Joyce
