SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
KHIRIN A. BUNKER, Cal. Bar No. 329314
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3460
Telephone: 213.620.1780
Facsimile: 213.620.1398
Email kbunker@sheppardmullin.com

*Attorneys for Non-Party Reuters News & Media, Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION<br><br>This document relates to:<br><br>Case No. 3:23-cv-03416-AMO<br>Case No. 3:23-cv-04625-AMO | Master File No. 23-cv-3223-AMO<br><br>**NON-PARTY REUTERS NEWS & MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

SMRH:4900-8704-2591.7

# TABLE OF CONTENTS

| | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 2 |
|     A.  Reuters Is A Third Party Entitled To Protection From Undue Burden And Production Of Confidential Information Where A Substantial Need Is Not Demonstrated | 2 |
|     B.  Plaintiffs Rejected Reuters' Reasonable Offers to Narrow the Requests | 4 |
|     C.  Plaintiffs' Overbroad Requests Would Create an Undue Burden on Reuters and Require Unnecessary Production of Commercial Confidential Information | 5 |
| CONCLUSION | 8 |

TABLE OF AUTHORITIES

Page(s)

Cases

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*
   300 F.R.D. 406 (C.D. Cal. 2014) ................................................................................................ 2

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*
   109 F.3d 1394, 1403 (9th Cir. 1997) ........................................................................................... 6

*In re eBay Seller Antitrust Litig.*
   No. C09-0735RAJ, 2009 WL 10677051 (W.D. Wash. Aug. 17, 2009) ........................... 4, 6, 8

*Genus Lifesciences Inc. v. Lannett Co., Inc.*
   No. 18-cv-07603-WHO, 2019 WL 7313047 (N.D. Cal. Dec. 30, 2019) ................................. 3

*J.T. v. City & Cnty. of San Francisco*
   No. 23-CV-06524-LJC, 2024 WL 4361579 (N.D. Cal. Oct. 1, 2024) ................................. 3, 7

*Jarvis v. K2 Inc.*
   486 F.3d 526, 534 (9th Cir. 2007) ............................................................................................... 6

*Legal Voice v. Stormans Inc.*
   738 F.3d 1178 (9th Cir. 2013) ..................................................................................................... 6

*Moon v. SCP Pool Corp.*
   232 F.R.D. 633 (C.D. Cal. 2005) ................................................................................................ 3

*nSight, Inc. v. PeopleSoft, Inc.*
   No.3:04CV3836MMC(MEJ), 2006 WL 988807 (N.D. Cal. Apr. 13, 2006) ........................... 4

*Oracle Corp. v. SAP AG*
   765 F.3d 1081 (9th Cir. 2014) ..................................................................................................... 6

*Simplex Mfg. Co. v. Chien*
   No. C12-835RAJ, 2012 WL 3779629 (W.D. Wash. Aug. 31, 2012) .................................. 4, 8

*Vena v. Moore, Schulman & Moore, APC*
   No. 22CV437-W(BLM), 2023 WL 6194315 (S.D. Cal. Mar. 24, 2023) ............................. 3, 6

SMRH:4900-8704-2591.7

Non-Party Reuters News & Media Inc. ("Reuters") hereby opposes Plaintiffs' Motion to Compel Production of Documents from Reuters (the "Motion").[1]

## INTRODUCTION

Plaintiffs in the Motion take the extraordinary step of seeking to force Reuters to produce seven overbroad categories of documents in response to a third-party document subpoena served on Reuters (the "Subpoena") without any showing that the requested documents are relevant, let alone that Plaintiffs cannot obtain the information from the parties to the litigation.

Reuters is the world's leading provider of trusted news, insight and analysis, reaching billions of people worldwide every day. Plaintiffs in the Motion have not identified any Reuters' agreements and/or other documents involving the copyrighted materials at issue in their First Consolidated Amended Complaint herein (and Reuters is not aware of any). Rather, Plaintiffs identify an article which reflects the fact that Reuters entered into an agreement with another non-party, Meta Platforms, Inc. for its news content to be used in Meta's AI chatbot (the "Meta Agreement"). As detailed herein, Reuters has confirmed to Plaintiffs' counsel the fact that the Meta Agreement has nothing to do whatsoever with Plaintiffs, a collection of book authors with no relationship to the news content owned by Reuters. Plaintiffs thus are left to argue that the existence of the Meta Agreement "*suggests* many more private documents behind the scenes including key documents concerning valuation and negotiation." (Doc. 314, at 2)(emphasis added).

The wide-ranging categories of documents identified in the Subpoena are immeasurable. For example, one of the requests (Request No. 2) is a demand (without any limitation as to whether Reuters – a media company – has any relationship to the information whatsoever) for "All Documents and Communications related to any licensing agreements concerning AI training data, including terms, conditions, valuation, and consideration." (Doc. 314-1, at 13). This request is not limited to agreements to which Reuters is a party. The Subpoena defines the Relevant Time Period as dating from January 1, 2015 to the present. In just this example from the Subpoena (there are six

---

[1] The actual parties to the Motion are identified in the Declaration of Aaron Cera in support of the Motion (Doc. 314-1) as authors Paul Tremblay, Christopher Golden, Richard Kadrey and Sarah Silverman (collectively identified herein as "Plaintiffs").

-1-

more categories) Plaintiffs thus are seeking *over ten years'* worth of documents Reuters might have relating to *any* licensing agreements *any party* might have concerning the broad category of AI training data.

Plaintiffs claim that the categories of information sought by the Subpoena "are relevant to OpenAI's *anticipated* fair use defense, namely the effect of its theft of [copyrighted material apparently owned by Plaintiffs] on the market for copyrighted content as training for LLMs, and to assist in valuing the copyrighted works [apparently, as owned by Plaintiffs] for use as training data, including  developing a damages methodology." (Doc. 314, at 2) (emphasis added). The information subject of the Subpoena does not concern the copyrighted content owned by Plaintiffs. It does not concern any actions taken to date by OpenAI. [2]  Plaintiffs in the Motion thus are engaging in outright speculation as to what relevance, if any, this information would have in connection with a defense which apparently has not yet even been raised in the underlying litigation.

Fed. R. Civ. P. 45 requires more than speculation about what might be "behind the scenes" of an agreement found in an article on Axios.com or what defenses "might" be asserted relating to Plaintiffs' claims of copyright infringement.  Plaintiffs' counsel in serving the Subpoena has failed to take reasonable steps to avoid imposing undue burden or expense on Reuters.  Rather, the Motion is improperly based in its entirety upon supposition and conjecture arising from a single news article identifying an agreement that Reuters was alleged to have entered completely unrelated to the underlying litigation.

## ARGUMENT

### A. Reuters Is A Third Party Entitled To Protection From Undue Burden And Production Of Confidential Information Where A Substantial Need Is Not Demonstrated

"The right to discovery, even plainly relevant discovery, is not limitless." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014).  Even where

---

[2] Plaintiffs in the Subpoena provide a definition for "OpenAI" – the party in this litigation. *See* Doc. 341-1, Exhibit A, Definition No. 13.  It is telling, however, that the Subpoena has nothing whatsoever to do with OpenAI.  None of the seven categories of documents are in any way limited to documents relating to OpenAI.  Indeed, other than defining OpenAI, the Subpoena makes no further reference to the actual party in this litigation.

requested discovery has some relevance, it "is subject to the limitations imposed by Rule 26(b)(2)(C)," and may be curtailed where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Id*. (quoting Fed. R. Civ. P. 26.)

Furthermore, and importantly (though ignored by Plaintiffs in the Motion), "***[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in a Rule 45 inquiry***." *Id*. (emphasis added) (internal quotation marks omitted) (quashing a subpoena where the need for the evidence was slight while the burden on the non-party was substantial). Thus, "the 'mere relevance standard [ ] does not apply to nonparties.' A party seeking to obtain discovery from a nonparty 'must demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure.'" *Vena v. Moore, Schulman & Moore, APC*, No. 22CV437-W(BLM), 2023 WL 6194315, at *3 (S.D. Cal. Mar. 24, 2023) (numerous internal citations omitted) (citing 9th Circuit authority stating that "While discovery is a valuable right and should not be unnecessarily restricted ..., the 'necessary' restriction may be broader when a nonparty is the target of discovery.").

Thus, "[a]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party and, in particular, requires the court to consider ... 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Id*. at *5 (quoting *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).) Notably, "there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests…When the requesting party has not shown that it attempted to obtain documents from the opposing party in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party." *J.T. v. City & Cnty. of San Francisco*, No. 23-CV-06524-LJC, 2024 WL 4361579, at *1 (N.D. Cal. Oct. 1, 2024) (quoting *Genus Lifesciences Inc. v. Lannett Co., Inc.*, No. 18-cv-07603-WHO, 2019 WL 7313047, at *4 (N.D. Cal. Dec. 30, 2019)).

With regard to confidential information, while Plaintiffs make much of the lack of an absolute privilege, a non-party is not required to disclose confidential information merely because a party subpoenas such information; to the contrary, Rule 45(d)(3)(B)(i) expressly contemplates that subpoenas may be modified or quashed entirely where they would require disclosure of confidential commercial information. Fed. R. Civ. P. 45. To compel production of confidential information, the party serving the subpoena must show "a substantial need for the testimony or material that cannot be otherwise met without undue hardship." *nSight, Inc. v. PeopleSoft, Inc.*, No.3:04CV3836MMC(MEJ), 2006 WL 988807, at *2 (N.D. Cal. Apr. 13, 2006).

Thus, where confidential information is at issue, "[t]he court must, in its sound discretion, balance the harm from disclosing the information, the requesting party's need for the information, and the effectiveness of possible safeguards for the information." *In re eBay Seller Antitrust Litig.*, No. C09-0735RAJ, 2009 WL 10677051, at *4 (W.D. Wash. Aug. 17, 2009) (applying "substantial need" standard and denying motion to compel as to competitively sensitive material); *see also Simplex Mfg. Co. v. Chien*, No. C12-835RAJ, 2012 WL 3779629, at *2 (W.D. Wash. Aug. 31, 2012) (denying a motion to compel where subpoena was "overbroad" and "would require the disclosure of competitively sensitive information," despite possibility of a protective order.)

### B. Plaintiffs Rejected Reuters' Reasonable Offers to Narrow the Requests

Reuters, through counsel, sought to resolve its well-founded objections to the scope of the Subpoena. *See* Declaration of Paul W. Garrity submitted herewith (the "Garrity Decl."). Before this Motion was filed, Reuters confirmed to Plaintiffs' counsel that it had no agreements and/or other documents involving the copyrighted materials at issue in the First Consolidated Amended Complaint. Garrity Decl. ¶4. After this Motion was filed, and solely in exchange for Plaintiffs' deeming Reuters' obligations under the Subpoena fulfilled and the present Motion withdrawn, Reuters offered to produce all executed agreements related to AI training data (which would include the Meta Agreement) and, to the extent they exist, documents and communications with third parties related to all non-executed, proposed, or in pipeline licensing agreements related to AI training data where there was any reasonable chance of aligning on the financial or licensing terms. Garrity Decl. ¶5. Plaintiffs' counsel rejected these efforts out of hand. *Id*. Likewise, Plaintiffs' counsel declined

-4-

Reuters' request that the date for this opposition be adjourned to permit the parties to discuss the resolution of the Motion. *Id.*

### C. Plaintiffs' Overbroad Requests Would Create an Undue Burden on Reuters and Require Unnecessary Production of Commercial Confidential Information

The Motion should be denied because: (i) the purported relevance of the vast swath of the documents is minimal when compared to the burden on non-party Reuters; (ii) even accepting that some of the documents requested may have some level of relevance, Plaintiffs' requests are not tailored to those documents (and Plaintiffs refused to narrow their requests to those documents); (iii) the documents contain confidential commercially sensitive information, and Plaintiffs have not demonstrated, nor do Plaintiffs even attempt to demonstrate in the Motion, a substantial need for such information that cannot be otherwise met.

To begin with, Plaintiffs assert that the documents they seeks are relevant because they "might" demonstrate the value of a benchmark license and, with regard to fair use, that a market exists that fair use may undermine. (Doc. 314, Motion, pp. 4-6.) But Plaintiffs fail to demonstrate how the majority of their requests connect to the valuation of a license/the market. While an agreement entered into by Reuters *may* have some relevance to the value of a hypothetical license (though, as noted below, there may be more relevant documents that Plaintiffs can seek from parties, though they have not demonstrated that they have done so), six out of seven requests are vastly broader than licensing agreements. Plaintiffs have not explained how their requests for (i) **ALL** documents and communications relating to **ANY** "license agreements concerning 'AI training data,'" including "actual, proposed, or contemplated licensing agreements," without delimitation; (ii) **ALL** documents and communications relating to "valuation of licenses for AI training data" without delimitation; (iii) **ALL** documents and communications relating to licensing books and articles for use as "AI training data"; and (iv) **ALL** documents and communications related to Reuters' deal with Meta, are narrowly tailored to provide the benchmark license value that Plaintiffs claim underpins their requests.

With regard to Plaintiffs' requests for documents and communications beyond final licensing agreements, the subjective views of Reuters or any third parties on the valuation of the market are

not relevant; Plaintiffs' own cited authority confirms that, for the purpose of hypothetical-license damages, "fair market value is based on an objective, not a subjective, analysis." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1088 (9th Cir. 2014). Indeed, a motion to compel production by a third party should be denied where it seeks "subjective and highly competitively sensitive analyses of the landscape in which it competes," and where the actual inquiry with regard to the "relevant markets" is an "objective inquiry." *See In re eBay Seller Antitrust Litig.*, 2009 WL 10677051 at *5. Despite Reuters' objection, Plaintiffs have failed to explain, even in the Motion, how the vast pool of documents and communications they seek, beyond an agreement itself, is relevant.[3]

Furthermore, even if the license agreement or other documents have some relevance, as noted above Plaintiffs must demonstrate not only mere relevance, but also that "its need for discovery outweighs the nonparty's interest in nondisclosure." *See Vena v. Moore, Schulman & Moore, APC*, 2023 WL 6194315, at *3. The terms of Reuters' agreement with Meta have never been disclosed publicly, and the content of this agreement comprises competitively sensitive commercial information. Garrity Decl. ¶6. None of the authority cited by Plaintiffs demonstrates a "substantial need." To the contrary, the authority Plaintiffs cite confirms that copyright actual damages and fair use market considerations can be determined without "benchmark" valuations from unrelated third parties. For example, in *Jarvis v. K2 Inc.*, the Ninth Circuit held that actual damages were appropriately calculated using testimony from expert witnesses, defendant, and the Plaintiffs' own historical compensation for use of his own work. 486 F.3d 526, 534 (9th Cir. 2007). In *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, the Ninth Circuit found that market harm could be inferred because the use was non-transformative and admittedly commercial and affirmed

---

[3] In the event that the Court, responding to the Motion, orders the production of this vast collection of documents in response to the Subpoena, which Reuters opposes, Reuters respectfully notes that any such order "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance," pursuant to Rule 45(d)(2)(B)(ii). *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013). Given the broad categories of documents subject of the Subpoena, the costs here will be significant. In such circumstances, cost shifting is required by Rule 45. *Id*. ("when discovery is ordered against a non-party, the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party. If so, the district court *must* order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'") (emphasis added).

the lack of fair use without regard to any benchmark valuations or agreements. 109 F.3d 1394, 1403 (9th Cir. 1997). Thus, Plaintiffs have not demonstrated a ***need*** for such documents, even if they have some relevance.

Moreover, Plaintiffs have not shown that they cannot obtain information about the market valuation for the licenses at issue from parties to the litigation, including the actual defendant here (OpenAI) or even from the Plaintiffs' own records. To be clear, Reuters understands that neither Plaintiffs nor Defendant will have the terms of the Meta Agreement (nor could they, as they are maintained by Reuters as competitively sensitive commercial information), but Plaintiffs have failed to demonstrate why Reuters' agreements with other third parties are of any more value than license agreements or license valuation information that might be in the possession of the parties. Indeed, Plaintiffs have not explained how an agreement between a publisher like Reuters and another third party aligns with hypothetical licenses for individual class members, or why Reuters' agreements would have more probative value then, for instance, licenses previously entered by the Plaintiffs.[4] That Plaintiffs have not demonstrated any attempt to obtain licensing agreements or information about the valuation of the same from either its own records (i.e., records of past compensation for Plaintiffs' work) or any records that might in possession of another party to the litigation, renders Plaintiffs' requests to Reuters an undue burden on Reuters. *See*, *e.g.*, *J.T.*, 2024 WL 4361579 at *1 ("When the requesting party has not shown that it attempted to obtain documents from the opposing party in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party.")

Beyond the fact that Plaintiffs have not demonstrated an attempt to obtain relevant information from a party to the litigation, Plaintiffs' requests are still unduly burdensome given the vastness of their overbreadth compared to the narrow justification for the Subpoena. Yet another example – drawn from the seven categories of documents in the Subpoena – is Request No. 5, which

---

[4] The fact that no class has been certified in this litigation is of no moment to Plaintiffs, who point to the definition of the class in their First Consolidated Amended Complaint. (Doc. 314, p. 6). This seemingly boundless class of claimants certainly would be a better source for information on the market valuation Plaintiffs claim to be seeking here than non-party Reuters.

calls for "All Documents and Communications, including discussions, deliberations, or negotiations related to any actual, proposed or contemplated licensing agreements for AI training, including any actual, proposed, or contemplated terms, conditions, and consideration." This request is directed to a non-party. There is no claim that Reuters has infringed any copyrights owned by Plaintiffs. Notwithstanding, Plaintiffs again seek to impose a burden on Reuters to review at least a decades' worth of its records for what Plaintiffs define as "any kind of training of an AI model, whether supervised or unsupervised, including pretraining, fine-tuning, reinforcement training, or secondary training." This is improper, and beyond the scope of Fed. R. Civ. P. 45.

Finally, for the same reasons outlined above, Plaintiffs have not demonstrated a "substantial need" such that Reuters should be compelled to produce confidential commercially sensitive information. Without such a showing, the motion to compel should be denied as to the confidential business information of Reuters and any relevant third parties. *See*, *e.g.*, *In re eBay Seller Antitrust Litig.*, at *5 ("declin[ing] to force [third party] to reveal" "competitively sensitive" confidential documents where "Plaintiffs have not articulated a substantial need for" same); *Simplex Mfg. Co.*, 2012 WL 3779629 at *2.

## CONCLUSION

For the foregoing reasons, Non-Party Reuters requests that the Court deny Plaintiffs' Motion to Compel in its entirety.

Dated: February 24, 2025          SHEPPARD MULLIN RICHTER & HAMPTON LLP

                                  By   */s/ Khirin A. Bunker*
                                          Khirin A. Bunker

                                       Attorneys for Non-Party
                                       REUTERS NEWS & MEDIA, INC.

SMRH:4900-8704-2591.7