

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

February 25, 2025

**VIA ECF**

The Honorable Robert M. Illman
U.S. District Court for the Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Ave.
McKinleyville, CA 95519

Re: *In re OpenAI ChatGPT Litigation*, Master File No. 23-cv-3223-AMO

Dear Judge Illman:

Pursuant to paragraph 4 of the Court's General Standing Order, the parties submit this joint discovery letter brief concerning Defendant OpenAI OpCo, LLC's requests for production to Plaintiffs Kadrey, Silverman, Golden, Greer, Diaz, Hwang, Klam, Snyder, Lippman, Coates, and Woodson[1] ("Plaintiffs") for certain materials from the *Kadrey et al. v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC, in which all are plaintiffs. Specifically, OpenAI seeks (a) Plaintiffs' responses to interrogatories and requests for admission; (b) expert witness materials disclosed by Plaintiffs; and (c) the complete transcripts of any depositions of those experts. The parties conferred regarding the matters addressed herein via video conference on February 6, 2025, and have conferred via email both before and after the video conference.

---

[1] Plaintiff Tremblay is not a plaintiff in *Kadrey et al. v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC. As such, the requests at issue–and thus this motion–are not directed at him.

**OpenAI's Statement.**  In parallel to suing OpenAI, Plaintiffs filed separate lawsuits against Meta Platforms, Inc., asserting copyright infringement claims that are materially identical to the claims here.  *See Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417 (N.D. Cal.).  In both cases, Plaintiffs allege that the defendants engaged in the same alleged conduct (training large language models using Plaintiffs' books) and caused the same alleged harms (depriving Plaintiffs of payments for use of their asserted works as training data).  Given the substantial overlap between the legal and factual issues in *Kadrey* and this case, OpenAI sought specific, targeted discovery from Plaintiffs from the *Kadrey* case: (a) Plaintiffs' responses to interrogatories and requests for admission ("RFAs"), Ex. A (RFPs 88/89/90); (b) expert witness materials disclosed by or on behalf of Plaintiffs, Ex. B (RFPs 86/87/88); and (c) deposition transcripts and exhibits for Plaintiffs' expert witnesses, Ex. C (RFPs 87/88/89).  Plaintiffs cannot seriously dispute that *Kadrey* materials are relevant here–indeed, that relevance is presumably why Plaintiffs already produced their *Kadrey* deposition transcripts in this case.  Plaintiffs instead contend that OpenAI's requests are allegedly overbroad because *Kadrey* involves a different company's large language models ("LLMs"), and that requiring the discovery here will harm Meta.  However, OpenAI explicitly agreed to exclude from its request expert materials and testimony that solely address technical matters related to the Meta LLMs at issue in *Kadrey*.  And the *Kadrey* Protective Order has a provision to address the speculative concerns Plaintiffs raise regarding the potential for court-ordered production of designated materials.  *See Kadrey,* ECF No. 90 ¶ 10.  Plaintiffs nevertheless rejected OpenAI's narrowed proposal, thus necessitating this motion.

Instead of addressing the discovery OpenAI seeks, Plaintiffs contend they should not have to produce "all documents" or "cloned discovery" from *Kadrey*.  OpenAI does not seek either. Rather, OpenAI seeks specific, highly relevant discovery from a case involving "significant factual and legal overlap" with this one.  *See Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200, 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017).  Courts regularly order such discovery.  *See, e.g.*, *id.* at *4 (ordering party to provide discovery from another case involving claims brought under the same law); *Hall v. Marriott International, Inc.*, 2021 WL 1906464, at *7 (S.D. Cal. May 12, 2021) (ordering party to produce "deposition transcripts, interrogatory responses, [and] responses to requests for admission" from another case involving substantially similar claims and factual allegations).  Indeed, that is what the court did in *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, on which Plaintiffs rely.  No. 23-md-03084, 2024 WL 4950060, at *1 (N.D. Cal. Dec. 2, 2024) (ordering production of discovery from another case involving the same defendant because it bore on the "claims in this MDL").  Such discovery is relevant not only to overlapping legal and factual issues, but also "to identify changes in positions taken by" the party from whom the discovery is sought.  *Finjan, Inc. v. ESET, LLC*, No. 17-cv-183, 2018 WL 5263243, at *6 (S.D. Cal. Oct. 23, 2018); *see Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1105–06 (N.D. Cal. 2006) (material that may provide "grounds for challenging or testing positions taken during the litigation" is relevant).

Given the significant factual and legal overlap between *Kadrey* and this case, Plaintiffs should be required to produce the targeted discovery OpenAI seeks–Plaintiffs' expert reports, expert deposition transcripts, and written discovery responses. Contrary to Plaintiffs' argument, the overlap here is not just legal–it is factual too: nine Plaintiffs allege copyright infringement of the *exact same books*, in the *exact same manner*, for the *exact same purpose*–to create the same type of technology (LLMs)–actions that most Plaintiffs claim caused the *exact same harm*.  The two other Plaintiffs assert materially identical claims based on other works.  *See id.*  That is presumably

why every Plaintiff who was asked in their *Kadrey* deposition admitted that they are alleging that the "same thing happen[ed]" in "very similar cases" that resulted in the "same" alleged harm, and they are unaware of any material "differences" between the cases (other than the defendants). Those admissions make sense given that Plaintiffs' factual and legal allegations in the two cases are often indistinguishable. The alleged acts of infringement are the same. *Compare* ECF No. 120 ¶ 66 ("OpenAI made copies of Plaintiffs' books during the training process of the OpenAI Language Models without Plaintiffs' permission."), *with Kadrey*, ECF No. 407 ¶ 100 ("Meta made copies of the Infringed Works during the training process to develop Llama without Plaintiffs' permission."). The alleged method of the asserted infringement is the same. *Compare* ECF No. 120 ¶ 2 ("[A] large language model is 'trained' by copying massive amounts of text and extracting expressive information from it." ), *with Kadrey*, ECF No. 407 ¶ 34 ("During training, the large language model copies each piece of text in the training dataset and copies expressive information from it."). The way the technology at issue works is allegedly the same. *Compare* ECF No. 120 ¶ 3 ("A large language model's output is therefore entirely and uniquely reliant on the material in its training dataset."), *with Kadrey*, ECF No. 407 ¶ 4 ("A large language model's output is entirely and uniquely reliant on the material in its training dataset."). And the positions Plaintiffs assert regarding defendants' alleged conduct is the same. *Compare* ECF No. 120 ¶ 64 ("Plaintiffs never authorized OpenAI to make copies of their books, make derivative works, publicly display copies (or derivative works), or distribute copies (or derivative works)."), *with Kadrey*, ECF No. 407 ¶ 99 ("Plaintiffs never authorized Meta to make copies of their Infringed Works, make derivative works, publicly display copies (or derivative works), or distribute copies (or derivative works).").

Plaintiffs concede that cross-production is appropriate "to the extent that the facts overlap." Here, the overlap is extensive and includes: (1) whether Plaintiffs own the copyrighted works they assert in both cases (relevant to Plaintiffs' infringement claim); (2) whether a relevant market for Plaintiffs' works has been harmed by the conduct at issue (relevant to the defendants' primary defense in both cases–fair use, *compare* ECF No. 33 at 2, *with Kadrey*, ECF No. 23 at 8); and (3) what caused the harm Plaintiffs claim to have suffered, which, for example, Plaintiff Hwang admitted is the "same harm" in both cases. Plaintiffs attempt to distract from that reality by likening the issue here to that addressed in the Order at ECF No. 140. That Order, however, addressed Plaintiffs' generalized request for cross production of *all* OpenAI discovery from another case. Here, in contrast, OpenAI has propounded specific RFPs targeting narrow discovery that is highly relevant to Plaintiffs' claims and OpenAI's defenses in this case.

**Interrogatories and RFAs.** The written discovery served in *Kadrey* addresses matters directly relevant here. That discovery sought, *inter alia*, details on Plaintiffs' claims of ownership of their asserted works, Plaintiffs' positions on the markets for those works, and admissions regarding whether Plaintiffs have licensed those works to train LLMs. *See, e.g.*, *Kadrey*, ECF No. 340. Plaintiffs' positions on those issues–where the same works are asserted, the same alleged market and market harm is claimed, and the same damages are asserted–are directly relevant to Plaintiffs' claims of copyright infringement and OpenAI's fair use defense in this case. *See Gray v. Hudson*, 28 F. 4th 87, 96 (9th Cir. 2022); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013). For example, in response to an interrogatory about awareness of alleged infringement of Plaintiffs' works, Plaintiff Woodson said that she "believes that her copyrighted *Asserted Works* were infringed and continue[] to be infringed by the LLaMA, Books3, The Pile programs, *OpenAI models, and ChatGPT applications*." (Emphasis added.)

**Expert discovery.** The categories of expert witness documents Plaintiffs have refused to produce are also directly relevant to critical aspects of Plaintiffs' theories in this case. For example, one key issue that will undoubtedly require expert testimony in both cases is whether Plaintiffs are able to distinguish the harm or apportion damages allegedly caused by Meta versus OpenAI versus other LLM developers, as is evident from Plaintiffs' *Kadrey* deposition transcripts already produced in this action. ███████████████████████████████████████████████████████████████████████████████████████████████████. Plaintiffs' experts in both cases will almost certainly also opine on core issues common to both cases, such as (a) the traditional or potential markets for Plaintiffs' works and any alleged harm to such markets; (b) whether a market to license books to train LLMs exists; and (c) Plaintiffs' alleged damages, including an assessment of royalties generated by the asserted works common to both cases. Courts recognize that, in such circumstances, the materials OpenAI is seeking here are relevant and thus discoverable. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-0630, 2013 WL 3246094, at *22 (N.D. Cal. June 26, 2013) (in case about FaceTime, ordering Apple to produce discovery from another case showing "Apple's positions regarding customer instructions for FaceTime, its damages expert's opinions about the demand for FaceTime, and evidence about its methods for apprising itself about patents relating to FaceTime" because "all [are] relevant to Samsung's [patent infringement] claims"); *see also Finjan*, 2018 WL 5263243, at *5-6 (ordering production of "trial testimony, deposition testimony, deposition exhibits, and expert reports from [plaintiff's] prior litigations concerning one or more asserted patents" because such discovery is "relevant to identify changes in positions taken by [the plaintiff]"). OpenAI respectfully requests that the Court grant OpenAI's request.

**Plaintiffs' Statement:** This Court has already once denied cloned discovery from the parallel case involving OpenAI pending in the Southern District of New York. Then, OpenAI argued that cloned discovery was inappropriate because the cases raised "different claims against different defendants" and "would result in the production of materials that are irrelevant to *this* case." (ECF No. 139 at 4). OpenAI is now speaking out of the other side of its mouth by seeking cloned discovery that is even more attenuated. For the same reasons, the Court should deny OpenAI's request for discovery from the *Kadrey v. Meta* case, which is even more unlike this case than *Authors Guild*. OpenAI has failed to meet its burden to establish that all the documents it seeks are relevant to *this* case. Although the *Meta* case involves similar legal claims by some of the same Plaintiffs, that is where the similarities end; the *Meta* case is premised on different conduct by a different defendant. "[S]imilarities or overlap alone are insufficient to justify 'a carte blanche production of all documents from [other] cases.'" *Multiple Energy Techs., LLC v. Under Armour, Inc.*, 2023 WL 2529187, at *7 (W.D. Pa. Feb. 21, 2023) (quoting *Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009)). While Plaintiffs have not disputed that certain discovery from the *Meta* case may be relevant to this case (and have willingly cross-produced Plaintiffs' deposition transcripts and relevant documents) OpenAI's indiscriminate requests for *all* of Plaintiffs' discovery responses and expert discovery—which largely deal specifically with Meta's conduct and Meta's large language model—is overbroad. Moreover, producing these documents which contain significant protected material, including the highly sensitive proprietary information of OpenAI's direct competitor, would impose an undue burden on Plaintiffs and the third-party, Meta.

    **I.    OpenAI Does Not Meet Its Burden to Show Relevance**

Courts in the Ninth Circuit generally disfavor "piggyback" discovery requests. *See Racing Optics*

*v. Aevoe Corp*, 2016 WL 4059358, at *1 (D. Nev. July 28, 2016); *Goro v. Flowers Foods, Inc.*, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019) ("Asking for all documents produced in another matter is not generally proper."). Instead, in order to meet the relevance required by Rule 26 and the particularity required by Rule 34, the party seeking discovery from another case "must specifically ask for the documents he wants and be able to demonstrate that the information he seeks is relevant to his claims in this case." *Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *3. OpenAI has not met this burden.

**The cases do not have the same legal claims:** OpenAI misrepresents the type of similarity necessary for "piggyback" discovery. Courts have ordered cross-discovery in instances where the cases "'have significant factual and legal overlap' and involve the same legal claims." *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 4950060, at *1 (N.D. Cal. Dec. 2, 2024) (quoting *Schneider v. Chipotle Mexican Grill, Inc*, 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017)). The cases OpenAI relies on involve the (1) same or similar legal claims (2) based on the *same* conduct, and (3) by the *same* defendant. In other words, discovery in those cases was relevant because they had the same legal *and* factual basis. In *Schneider v. Chipotle Mexican Grill, Inc*, both cases brought the same claims based on the same conduct against the same defendant, with the only difference being the residence of the class members. 2017 WL 1101799, at *2. Similarly, in *Hall v. Marriott International, Inc.* the court ordered cross discovery where the claims were brought against the same defendant, were based on the same conduct, and had the same or similar elements. 2021 WL 1906464, at *7 (S.D. Cal. May 12, 2021).

This case and the *Meta* case are missing that necessary factual nexus. Here, Plaintiffs claims are brought against an entirely different defendant and have a different factual basis. The similarities OpenAI points to are elements of legal claims, not factual overlap. It would defy credulity if a party could compel discovery from any case simply alleging a similar legal theory. In fact, courts have been reticent to order cross-discovery even where the claims have only minor differences. *See, e.g. Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *2 (denying motion to compel cross-discovery, even where the claims were based on the same defendant's same conduct, because the other cases were, *inter alia*, in a "more advanced phase of discovery" and "involve[d] different . . . time periods"). OpenAI has previously recognized that a difference in defendants and claims makes cross-discovery requests overboard and irrelevant. In response to Plaintiffs' motion to compel cross-discovery from the *Authors Guild* case, OpenAI argued that cloned discovery was inappropriate because the cases raised "different claims against different defendants" and "would result in the production of materials that are irrelevant to *this* case." (ECF No. 139 at 4). The same principle holds even stronger here where none of the defendants or factual bases for the claims are the same.

**The discovery is overbroad and irrelevant:** The production of *all* Plaintiffs' discovery responses and expert discovery would result in the production of irrelevant material in contravention of Rule 34. "Sweeping requests for 'all documents' that may encompass swaths of both relevant and irrelevant documents do not satisfy Rule 34's 'reasonable particularity' standard." *See Life Alert Emergency Response, Inc. v. Connect America.com LLC*, 2015 WL 12765465, at *7 (C.D. Cal. Jan. 23, 2015). For example, many of the interrogatories and requests for admissions issued by Meta sought information related to Plaintiffs' contentions about *Meta's* conduct or the numerous additional and different works at issue in that action. Similarly, Plaintiffs' expert discovery deals with *Meta's* conduct, the particular training data *Meta* used, the way *Meta* processed and used Plaintiffs' copyrighted works, the technical details of *Meta's* large language models, and the

5

particular harm caused by *Meta's* conduct. OpenAI has never explained how Meta's conduct, or Meta's different language model is relevant here.

Even where courts have ordered the cross-production of discovery, they have ordered it only to the extent that the facts overlap. In *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, for example, the court ordered the production of deposition transcripts for "witnesses who are also scheduled to be deposed in this case" and other transcripts and exhibits related to particular enumerated topics. 2024 WL 4950060, at *2. *See also Rumble, Inc. v. Google LLC*, 2023 WL 3751797, at *8 (N.D. Cal. May 31, 2023). Here, not only is there little factual overlap, OpenAI has not targeted its discovery to areas where there may be overlap. Plaintiffs provided OpenAI with an opportunity to narrow the scope of its requests to be more particularized and relevant to the facts at issue in this case. But instead, OpenAI proposed a meaningless exclusion of expert material which "<u>solely</u> address technical matters related to the LLMs at issue in *Kadrey*." Not only does that exclusion fail to communicate what particular documents *are* being sought, OpenAI well knows that expert reports will not *solely* address any technical matter, but will instead necessarily provide general background information as well. And while OpenAI now, in the course of briefing, lists specific topics and categories of documents it seeks, OpenAI did not even attempt to narrow these requests during the conferral process. Much of OpenAI's brief merely obfuscates the fact that the requests as written are hopelessly overbroad. Accordingly, the Court should reject OpenAI's bid for this overbroad and irrelevant discovery. *See Pac. Wine Distributors, Inc. v. Vitol Inc.*, 2022 WL 1489474, at *2 (N.D. Cal. May 11, 2022) (requiring the party to "seek more targeted discovery" where it could not show that all of the documents sought were relevant).

## II.     Producing Protected Material Imposes an Undue Burden

Even if OpenAI were able to establish that some of the documents it seeks are relevant, production of that material would impose an undue burden on both Plaintiffs and third-party Meta. *See* Fed. R. Civ. P. 26(b)(1); *Pac. Wine Distributors*, 2022 WL 1489474, at *2 ("Every time a business is required to permit its confidential information to be shared there is a risk, and thus a burden, that it will not be maintained as confidential notwithstanding protective orders.") Because the material being sought by OpenAI largely involves a different defendant and different technical model, much of the material is designated highly confidential under that case's protective order. The burden of reviewing and redacting documents which are riddled with highly sensitive proprietary information would plainly be heavy. Plaintiffs did not designate the information, and Plaintiffs should not have to guess what information Meta considered confidential, particularly when guessing wrong would mean the violation of a court order.

When confronted with Plaintiffs' serious concerns about the confidential nature of the material sought, OpenAI blithely responded that Plaintiffs could simply seek permission from Meta or request the court in that case to amend the protective order, despite having itself taken extreme and burdensome measures to protect its information in this case. But this does not solve the problem. The protective order in the *Meta* case allows for disclosure only upon issuance of a subpoena or court order compelling production, and allows the designating party the right to then seek a protective order in the court ordering production. *See Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417, Dkt. No. 90, (N.D. Cal. Jan. 25, 2024). However, Meta must "bear the burden and expense of seeking protection in that court of its confidential material." *Id*.

At bottom, OpenAI has failed to establish that its broad request for discovery from a different case is relevant here. And even if it could, the importance of that discovery does not outweigh the substantial burden to its third-party competitor. The Court should deny OpenAI's request.

| | |
|---|---|
| Dated: February 25, 2025 | Respectfully Submitted, |

*/s/ Elana Nightingale Dawson*
Elana Nightingale Dawson (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Email: elana.nightingaledawson@lw.com

*/s/ John R. Lanham*
John R. Lanham
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
Telephone: (858) 720-5100
Email: JLanham@mofo.com

*/s/ Katie Lynn Joyce*
Katie Lynn Joyce
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Email: kjoyce@keker.com

*Counsel for Defendants*

*/s/ Joseph R. Saveri*
Joseph R. Saveri (SBN 130064)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Email: jsaveri@saverilawfirm.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

## **ATTTESTATION**

I, Elana Nightingale Dawson, am the ECF user whose user ID and password authorized the filing of this document and exhibits. Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred in their filing.

Dated: February 25, 2025                                          */s/ Elana Nightingale Dawson*