February 26, 2025

**Via ECF**

The Honorable Robert M. Illman
United States District Court for the Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Ave.
McKinleyville, CA 95519

Re:     *In re OpenAI ChatGPT Litigation*, Master File No. 23-cv-3223-AMO Joint Letter

Dear Honorable Judge Illman:

Pursuant to the Court's Standing Order, the parties hereby submit this joint discovery letter brief concerning Katie Mayer's custodial documents. The parties met and conferred on February 19th, but could not reach a resolution.

**Plaintiffs' Statement**

In November, Plaintiffs requested that Katie Mayer be added as a custodian. At the time, Plaintiffs contended that Mayer was likely to have unique, responsive documents because she "manage[d] Defendant's relationship with Microsoft." Dkt. 204 at 4. OpenAI opposed. On its view, although Mayer undisputedly communicated with Microsoft, her communications "principally concerned logistics." *Id.* at 6. Based on that understanding, OpenAI represented that "it might be true that Ms. Mayer has documents that … the existing custodians don't have …. But she doesn't have relevant information." Dec. 17, 2024, Tr. 66:11-15.

Even with that record, the Court "teeter[ed]" on whether to require OpenAI to designate Mayer as a custodian. *Id.* at 74:20-22. Ultimately, the Court required Plaintiffs to choose one of Mayer or Wu. *Id.* at 80:9-11. Based on the information they had (including OpenAI's representations), Plaintiffs chose Wu. The Court added, however, that Plaintiffs could request additional custodians if they pointed to "evidence produced to Plaintiffs on or after November 25, 2024" that justified the addition. Dkt. 243 at 1-2. Since the last custodial dispute, that evidence has been produced by OpenAI. It reveals that Mayer's relationship with Microsoft extended far beyond mere "logistics" and involved pivotal discussions over illicit datasets such as LibGen. Ms. Mayer thus has unique knowledge of issues central to this case. Plaintiffs respectfully ask the Court to order OpenAI to designate Mayer as a custodian.

*New discovery demonstrates Mayer played a pivotal Role in the OpenAI-Microsoft relationship.*

Discovery produced after the Court's November 25 cutoff has revealed that Plaintiffs were right about Mayer's role, and OpenAI was wrong. Mayer was no mere pencil pusher—she appears to have played a major, substantive role in running OpenAI's relationship with Microsoft, including facilitating ▮.

*First*, it has come out that Mayer was a manager of an OpenAI team that was literally entitled "Microsoft." In a document OpenAI produced *on* November 25, 2024, OpenAI lists the hiring managers for its teams. Those teams run the gamut of OpenAI's important functions: ▮ ▮. One of the teams is simply called the "Microsoft" team. Mayer is manager of that team. OPCO_NDCAL_1528495. Testimony confirms as much. Henrique Pinto testified *just this January* that: Mayer "was, in general, responsible for managing of a lot of the partnership." Pinto Tr. 209:2-5. When asked to clarify the nature of the partnership, Pinto said "OpenAI had a partnership with GitHub, Microsoft, it was a very complex relationship. She was involved in some of those, yes." *Id.* at 209:8-9.

*Second*, consistent with her role managing the Microsoft team, Mayer was, time and again, designated as OpenAI's point of contact and directly responsible person for projects between OpenAI and Microsoft. For example, just taking documents OpenAI produced on *December 2, 2024*, Mayer was designated as a point of contact and directly responsible person for projects like:

- "OpenAI + Microsoft Collaboration: ▮ ▮." OPCO_NDCAL_1588774.
- "OpenAI + Microsoft Collaboration Template: ▮." OPCO_NDCAL_1588788.
- "OpenAI + Microsoft Collaboration Template: ▮ ▮." OPCP_NDCAL_1588778.
- "OpenAI + Microsoft Collaboration ▮ ▮" OPCO_NDCAL_1588783.

1

- "███████████████" OPCO_NDCAL_1588793.

*Third*, recently produced documents also reveal that Mayer played a critical role in projects central to the allegations in this case. For example, a document produced in *January 2025* shows that Mayer played a lead role in facilitating ██████████████████ between OpenAI and Microsoft. Specifically, Mayer opened a thread on ██████████████████ ██████████████████ OPCO_NDCAL_1622427. In doing so, Mayer noted that ██████████████████████████████████████████████████████ That goes to the core of the case. The evidence shows that the datasets OpenAI described to outsiders using the pseudonyms Books1 and Books2 datasets, were actually datasets downloaded from LibGen—a notorious shadow library containing copyrighted works. *See Cengage Learning, Inc. v. Library Genesis*, Case No. 23-cv-08136, DE36 (S.D.N.Y. Sep. 24, 2024). The project Mayer was leading involved OpenAI taking the copyrighted works that it had illegally downloaded, copying them into its training dataset, ██████████████████. It is hard to imagine more relevant conduct to this case, and Mayer appears to have had a key role in it. In the same document, she is the one who started a "[t]hread to coordinate next steps." And she is the one who started ██████████████████ OPCO_NDCAL_1622427.[1]

OpenAI rejects all the new evidence as mirroring Plaintiffs' prior arguments. In doing so, OpenAI downplays its own role: it, after all, told the Court that Plaintiffs were wrong about Mayer's job and represented that Mayer handled mostly "logistics." New documents show that was inaccurate. Plaintiffs' new demand is thus neither gamesmanship nor regret over a prior custodial decision; it is an attempt to correct the mistaken record OpenAI itself created.

### Mayer is likely to have unique, relevant information.

Courts will order a party to provide an additional custodian if that custodian "possess[es] uniquely relevant information that is not available from the sources already designated." *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2021 WL 10282213 (N.D. Cal. Nov. 14, 2021). That inquiry is probabilistic. A demanding party can never know the contents of a custodial file until it is produced—so a demanding party need only show that an additional custodian is "likely to have unique information." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2018 WL 1440923, at *3 (D. Kan. Mar. 15, 2018); *see also MariCal, Inc. v. Cooke Aquaculture, Inc.*, 2016 WL 9459260, at *2 (D. Me. Aug. 9, 2016) ("potentially").

Mayer is likely to have exactly that type of unique information. This Court has already determined that OpenAI's relationship with Microsoft is relevant. That is why the Court found that Microsoft's documents related to its efforts commercialize OpenAI's products and training datasets were likewise relevant. *See* Feb. 11, 2025, Tr. 32:16. Mayer's custodial files will have the necessary documents from the OpenAI side. *E.g.*, OPCO_NDCAL_1681227 ("Katie has been ██████████████████████████████████. This has involved developing a strategy for how █ ██████████████[.]"). She was a manager on the "Microsoft" team. And she was repeatedly designated the OpenAI point of contact for Microsoft, even for ██████████████████████.

---

[1] OpenAI's citations are not to the contrary. OPCO_NDCAL_ 1483453 discusses Microsoft projects at a high level but does not reveal that Mayer was *leading* those projects. Same for OPCO_NDCAL_1483514—it suggests there was a ██████████████, but it neither discloses that Mayer led the effort, nor that ██████████████████████, which is not even mentioned.

To be sure, others beyond Mayer communicated with Microsoft. Others also made strategic decisions about the Microsoft partnership. But those custodians are unlikely to have the same breadth of relevant documents as Mayer. After all, Mayer was the manager of the "Microsoft" team. Mayer would thus be the person to whom documents flowed—she is the point of contact communicating directly with Microsoft, and so she is the one who would have the most relevant documents about the Microsoft relationship. Mayer's bosses, who are further removed from the day-to-day interaction with Microsoft, may have responsive information, but they are unlikely to be clued in to all the daily work that Mayer did to drive the Microsoft relationship. OpenAI's own citations show why. OpenAI cites OPCO_NDCAL_ 1494912 to show that Mira Murati has the same knowledge as Mayer. But in the document, Murati acknowledges that Mayer is "working on *more details*." (emphasis added). Mayer, in Murati's own words, is likely to have unique documents that others do not possess.

### *Producing Mayer's documents is consistent with the Court's order relating to Microsoft.*

One final point. When Plaintiffs tried to get documents about the Microsoft-OpenAI relationship from Microsoft, the Court instructed Plaintiffs to go to OpenAI first. *See* Feb. 11, 2025, Tr. 28:17-23. Plaintiffs are trying to do just that by asking OpenAI for documents from a custodian that managed the Microsoft relationship. It cannot be the case that OpenAI can avoid discovery by failing to provide a highly relevant custodian, and then its joint venture partner can avoid discovery by claiming Plaintiffs need to get documents from custodians that OpenAI refuses to provide. The Court has already concluded that the documents Katie Mayer likely possesses are relevant. Feb. 11, 2025, Tr. 32:16. One way or the other, Plaintiffs should be permitted to discover those relevant documents. Adding Mayer as a custodian starts to accomplish that.

### **OpenAI's Statement**

This Court warned Plaintiffs that if they "choos[e] [their] custodians unwisely, they will have to bear the consequences of that decision." Dkt. 191 at 3. Plaintiffs' present demand for Katie Mayer's files is their latest attempt to disprove that admonition. Plaintiffs had the chance to designate Ms. Mayer. Dkt. 243. They elected not to and should be held to that choice.

Although Plaintiffs cite out-of-Circuit cases to suggest otherwise, the bar for adding new custodians—to say nothing of custodians the Court has already considered—is high at this late stage of the case. The ESI Order requires that custodians only be added if they "possess non-cumulative, unique documents or information." Dkt. 175 at 3. Since the Court entered that order, OpenAI has designated **28 custodians** and agreed to cross-produce custodial files for one more. As the Court noted, that is "a very high number"—one "beyond what would be normally allowed." 12/17/24 Hr'g Tr. at 62:19-24. Thus, the Court imposed additional requirements Plaintiffs must satisfy before demanding additional custodians. Plaintiffs must base future requests "on evidence produced to Plaintiffs on or after November 25, 2024." Dkt. 243 at 2-3. And although Plaintiffs conspicuously fail to mention it, the Court has also clarified that "[a]ny future request for additional custodians will be granted only upon a showing of new and relevant information as to why granting the request is appropriate." *Id.* at 3.

Plaintiffs' demand does not satisfy those requirements. They assert that Ms. Mayer should be a custodian because she managed (aspects of) OpenAI's relationship with Microsoft. *Supra* at 1. That is the ***same justification*** Plaintiffs used when demanding Ms. Mayer's files two months ago. *See* Dkt. 204 at 3. Plaintiffs try to excuse their attempt to recycle the same argument by asserting that new discovery substantiates that assertion. But that's wrong on two counts.

3

*First,* the documents Plaintiffs cite confirm their demand isn't based on new information. All but two (OPCO_NDCAL_ 1622427, 1681227) were produced *a month before* Plaintiffs declined to designate Ms. Mayer. And regardless of when the documents were produced, the information they contain was available before November 25. Plaintiffs cite documents that purportedly show Ms. Mayer's involvement in discrete projects with Microsoft. But *all* of these projects, and Ms. Mayer's knowledge regarding the same, are disclosed in documents that OpenAI produced prior to November 25. *See, e.g.*, OPCO_NDCAL_ 1483453. Plaintiffs' reliance on OPCO_NDCAL_ 1494912 to suggest Ms. Mayer has "more details" about these projects proves OpenAI's point—this document was produced to Plaintiffs before November 25. Plaintiffs further point to Ms. Mayer's role in ████████████████████████, but that fact was also in documents produced before November 25. *See* OPCO_NDCAL_1483514. Waiting until now to use information Plaintiffs already had to designate Ms. Mayer—two months after accepting the benefits of designating Mr. Wu instead—is gamesmanship.

*Second,* even if Plaintiffs did cite "new and relevant" information, Dkt. 243 at 3, the Court should still deny Plaintiffs' demand for Ms. Mayer as cumulative and disproportionate. As OpenAI has previously described, it has designated *five* of its executives that regularly communicated with Microsoft and/or have knowledge of its relationship with OpenAI. *See* Dkt. 204 at 6. Indeed, Plaintiffs previously demanded one of them, Mr. Lightcap, because of his purported knowledge about that relationship. *See* Dkt. 184 at 3 (citing a document "referencing separate communication between Mr. Lightcap and a representative of third-party Microsoft in connection with OpenAI's partnership with Microsoft").

Contrary to what Plaintiffs argue, the inquiry here isn't "probabilistic." Plaintiffs are unable to answer the actual inquiry: what non-duplicative information do they hope to obtain from Ms. Mayer? While Plaintiffs cite documents discussing various collaborations with Microsoft, they cannot explain why those projects—which concern things like ████████████ ████████████████████—are relevant to Plaintiffs' allegations that OpenAI trained models on their books. Instead, Plaintiffs assert Ms. Mayer's involvement in these projects, when combined with evidence of her role at OpenAI, show that she was mainly responsible for managing OpenAI's relationship with Microsoft (during a particular time period). But even if that characterization was accurate, Plaintiffs never describe what "non-cumulative, unique documents or information [she likely possesses] that would justify enlarging the list of custodians." Dkt. 175 at 3. Instead, they speculate that she must have additional unspecified, relevant documents of some kind. But "speculation that more documents must exist is no basis for a compulsory discovery order of any kind." *Happy Place, Inc. v. Hofesh, LLC*, No. 2:18-CV-6915-ODW-SKX, 2019 WL 4221400, at *2 (C.D. Cal. May 17, 2019) (citing *Thomas v. Saafir*, No. C06-0184-MMC-PR, 2007 WL 1063474, at *2 (N.D. Cal. Apr. 9, 2007)). Microsoft is not a defendant in this case. The Court has never held, and Plaintiffs cannot credibly argue, they have carte blanche to seek discovery on every aspect of the relationship. If there are aspects of the relationship that are relevant, Plaintiffs should identify them and explain why Ms. Mayer is likely to have those documents. They do neither, so their demand should be rejected.

Regardless, OpenAI has already designated OpenAI's main point of contact for Microsoft and the people responsible for managing the relationship. OpenAI designated Ms. Murati as a custodian, to whom Ms. Mayer reported, and whom Microsoft representatives have described as "ha[ving] been [their] **primary contact** ████████████████████." OPCO_NDCAL_ 1494912 at 913 (emphasis added). OpenAI's list of custodians also includes multiple members of

the ▌ *See, e.g.* OPCO_NDCAL_1478766, 1478767. Plaintiffs thus have what they need.

      The documents Plaintiffs cite do not prove otherwise. Ms. Murati had knowledge of the same projects that Plaintiffs contend Ms. Mayer participated in. *See* OPCO_NDCAL_1483453. Ms. Murati also knew about the ▌ Plaintiffs reference (which concerned a proposed initiative that never materialized). In fact, the cited document shows Ms. Murati was the one that ▌. OPCO_NDCAL_1622427. And while Plaintiffs assert otherwise, the cited document says nothing about Ms. Mayer leading that effort. Furthermore, to the extent the content of that data is relevant, OpenAI has already designated several knowledgeable custodians. *See* Dkt. 204 at 6-7. Where Plaintiffs cite documents purporting to show Ms. Mayer managing aspects of OpenAI's relationship with Microsoft, those aspects have no relevance to the case. For example, the cited testimony from Mr. Pinto concerns ***Github***, a company acquired by Microsoft, not Microsoft generally—a fact Plaintiffs strategically omit from their quote. *See* Pinto Dep. Tr. at 208:25-209:5 ("Q. So you understand the inbounds to mean . . . communications from GitHub; correct? A. Most likely. Katie was, in general, responsible for managing of a lot of the partnership."). Github provides a platform used to write and develop ***computer code*** and is thus irrelevant to OpenAI's alleged training of text-based LLMs using ***books***. Plaintiffs cite OPCO_NDCAL_1528495, which lists Ms. Mayer as managing a team with the name "Microsoft," but that document says nothing about the team's function or Ms. Mayer's responsibilities. Plaintiffs also cite OPCO_NDCAL_1681227 to establish Ms. Mayer's knowledge of OpenAI's partnership with Microsoft on "Azure and Dynamics" but cannot describe why those partnerships are relevant. (Azure is Microsoft's cloud computing platform and Dynamics is its suite of enterprise business applications.)

      Bereft of persuasive evidence supporting their request, Plaintiffs accuse OpenAI of previously misrepresenting Ms. Mayer's role. Not so. OpenAI never made any representations about Ms. Mayer's role or projects during meet and confers preceding Plaintiffs' prior motion. OpenAI argued then, as it does now, that "Plaintiffs cannot provide any reason to believe [Ms. Mayer's] knowledge is unique." Dkt. 204 at 6. Plaintiffs' selective—and misleading—quotations, when read in context, concern exactly that—Plaintiffs' failure to identify any evidence supporting that Ms. Mayer has relevant, non-duplicative documents (*e.g.*, the documents Plaintiffs previously cited to support their request merely evidenced Ms. Mayer handling logistics). *See* 12/17/24 Hr'g Tr. 64:21–65:12. That failure persists.

      Lastly, Plaintiffs try to resurrect their demand for Ms. Mayer by citing the Court's statements on Plaintiffs' motion to compel documents from Microsoft. But it is well-established in this District that parties should "seek documents from a party to the action in the first instance before pursuing discovery from a third party." *Suufi v. MediaLab.AI, Inc.*, No. 22-MC-80205-SVK, 2022 WL 21815809, at *2 (N.D. Cal. Sept. 20, 2022). So the Court's statements don't excuse Plaintiffs' decision to designate Mr. Wu instead of Ms. Mayer—they merely apply the well-known standard for third party discovery. Plaintiffs' argument also fails because they cannot show that whatever information they've been seeking from Microsoft is both (1) attainable from Ms. Mayer and (2) unobtainable from OpenAI's designated custodians. If Ms. Mayer's documents were as critical as Plaintiffs claim, they could have selected her when given the choice. Having decided to designate Mr. Wu instead, and having accepted the benefits of that choice, they should now have to live with it.

By:  /s/ *Christopher Sun*

Christopher Sun
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
Email: CSun@keker.com

John R. Lanham
**MORRISON & FOERSTER LLP**
12531 High Bluff Dr, Suite 100
San Diego, CA 92130
Telephone: (858) 720-5100
Fax: (858) 720-5125
Email: JLanham@mofo.com

Elana Nightingale-Dawson (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh St., NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Email: Elana.NightingaleDawson@lw.com

*Attorneys for Defendants*
OPENAI, INC., OPENAI, L.P., OPENAI OPCO, L.L.C., OPENAI GP, L.L.C., OPENAI STARTUP FUND GP I, L.L.C., OPENAI STARTUP FUND I, L.P., AND OPENAI STARTUP FUND MANAGEMENT, LLC

By:  /s/ *Maxwell V. Pritt*

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Reed D. Forbush (SBN 347964)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
rforbush@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

Evan M. Ezray (*pro hac vice*)
401 East Las Olas Blvd. Suite 1200
Fort Lauderdale, FL, 33301
(954) 377-4237
eezray@bsfllp.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)

601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940

jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

Matthew Butterick (SBN 250953)
mb@butaricklaw.com
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
Alexander J. Sweatman (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel: (312) 782-4880
bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 26, 2025

        BOIES SCHILLER FLEXNER LLP

        */s/ Maxwell V. Pritt*
        Maxwell V. Pritt

        *Counsel for Plaintiffs*