Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Holden Benon (State Bar No. 325847)
Aaron Cera (State Bar No. 351163)
Margaux Poueymirou (State Bar No. 35600)
Melissa Tribble (State Bar No. 339098)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:         jsaveri@saverilawfirm.com
               czirpoli@saverilawfirm.com
               cyoung@saverilawfirm.com
               hbenon@saverilawfirm.com
               acera@saverilawfirm.com
               mpoueymirou@saverilawfirm.com
               mtribble@saverilawfirm.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION | Master File No. 3:23-cv-03223-AMO <br><br> **REPLY IN SUPPORT OF MOTION TO COMPEL NON-PARTY REUTERS NEWS & MEDIA, INC.'S PRODUCTION OF DOCUMENTS** <br><br> Judge: Hon. Robert M. Illman |

1    Reuters has not provided any reason to deny providing Plaintiffs core discovery in its possession. Plaintiffs seek highly relevant information pertinent to not only issues regarding liability but also to OpenAI's anticipated fair use defense. Reuters for its part has not explained why responding to Plaintiffs' narrowly tailored Requests for Production ("Requests") would be unduly burdensome. Reuters should produce the discovery sought.

Specifically, Reuters opposes the Motion on three grounds—each without merit. First, Reuters disputes the relevance of the Requests, arguing they are not connected to Plaintiffs' copyrighted works or the claims at issue in this action, and are based on conjecture regarding licensing deals "Reuters was *alleged* to have entered."[1] Reuters is wrong—fair use factor four will require analysis of the effects of the infringement on the market. Here, Plaintiffs seek information about nascent or consummated licensing agreements for textual AI training data, information that will be central to that analysis. Second, Reuters claims the requested discovery is unduly burdensome. But Reuters has ignored Plaintiffs' efforts to narrow the Requests to focus on the most important documents only available from Reuters, which fully satisfies Rule 45. Third, Reuters argues the Requests seek documents that contain confidential and commercially sensitive information. This is no reason to deny discovery. Indeed, the operative Protective Order in the underlying matter contemplates production subject to confidentiality designations with protections that are more than adequate to protect Reuters's interests.

Plainly, the objections Reuters raises are insufficient to deny discovery. While sensitive to legitimate concerns of undue burden imposed on a third party, Plaintiffs have demonstrated that the requested documents are nonetheless relevant, proportional, and necessary to support the factual allegations supporting their claims in this action. Fed. R. Civ. P. 26(b)(1). Moreover, Reuters is the only source for the requested documents. Because Reuters's positions are legally and factually untenable, the Court should grant Plaintiffs' Motion.

**Plaintiffs' Requests seek relevant documents.** The scope of discovery allowed under Rule 45 is generally the same as the scope of discovery permitted under Rule 34. *In re Subpoena to Power*

---

[1] Reuters in its opposition confirms that the licensing transaction is a reality, and not merely an allegation. ECF No. 348.

*Integrations, Inc.*, 2024 WL 3748366, at *2 (N.D. Cal. Aug. 9, 2024) (citing Fed. R. Civ. P. 45, advisory committee's note to 1970 amendment). Reuters argues that the Requests seek irrelevant records because they do not directly involve the copyrighted works at issue and do not concern OpenAI's conduct. ECF No. 348 at 1-2.

This is wrong for two reasons. First, the Requests are relevant to Plaintiffs' direct copyright infringement claims and refuting OpenAI's fair use defense because they seek information about the market for textual data for use as AI training data, an issue at the heart of this litigation. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 541 (1985) ("[T]o negate fair use one need only show that if the challenged use 'should become widespread, it would adversely affect the *potential* market for the copyrighted work.'"). Plaintiffs seek relevant evidence not otherwise obtainable from OpenAI about the market for textual data as training data for Large Language Models ("LLMs").[2] This information is important for demonstrating harm to the licensing market caused by unlicensed uses, a critical consideration in evaluating the fourth fair use factor. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (recognizing the fair use analysis requires evidence about relevant markets). The discovery is relevant regardless of whether the licensing agreements concern copyrighted works owned by the named Plaintiffs. The market for AI training data extends beyond OpenAI and Plaintiffs. If Reuters has negotiated or consummated licensing agreements for its textual content as AI training data, those agreements would have an effect on the market at large. This may show that but for OpenAI's theft of the putative class members' intellectual property, Plaintiffs would have had the opportunity to license their intellectual property at a competitive price. At bottom, whether the Requests involve the named Plaintiffs' works specifically at issue is of no consequence because the material sought is necessary to evaluate the fourth fair use factor: the effect of the use on the potential market for or value of the copyrighted work. 17 U.S.C. § 107(4); *see also Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997). Second, whether OpenAI was part of Reuters's putative

---

[2] Plaintiffs have sought licensing deals for AI training data from OpenAI. *E.g.*, Request for Production No. 78: All Documents and Communications, including discussions, deliberations, or negotiations Concerning any actual, proposed, or contemplated licensing agreements (even if never written or executed) for AI training data, including any actual, proposed, or contemplated terms, conditions, and consideration.

or executed licensing agreements has no impact on their relevance.[3] Regardless of OpenAI's involvement, such agreements provide a benchmark to evaluate the market value of licensing agreements for textual AI training data. Courts have recognized the importance of such benchmark agreements in calculating damages and evaluating market harm. *See Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1093 (9th Cir. 2014); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707-08 (9th Cir. 2004). Reuters's communications with AI developers concerning AI training data deals will shed light on how licensees value the copyrighted works and the scope of those licenses, even if those licenses were never executed. By way of example, in *Polar Bears Prods., Inc.*, the court upheld the portion of actual damages related to hypothetical lost license fee finding it was supported by evidence of Plaintiffs' price quote on a non-executed deal, even though the plaintiff never charged that rate. *Id.* at 709; *See also McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003) ("It is not improper for a jury to consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual damages, provided the amount is not based on undue speculation.") (citation and quotation omitted). It follows that the evidence sought by the Subpoena will reveal standard industry practices for licensing copyrighted works as AI training data. Given that the market for textual AI training data is nascent, the need for understanding the market here is even more important. *See Oracle Corp.*, 765 F.3d at 1093 (finding the need for benchmark licenses approximating a hypothetical license greater where Plaintiff had "no history of granting similar licenses").

Reuters argues that Plaintiffs can get the information they seek through their own licensing deals. ECF No. 348 at 7. But this ignores factual reality. The market for AI training data is broader than Plaintiffs; it includes other entities (like Reuters) who are also negotiating their own licensing deals. And Plaintiffs' own licensing deals offer only a glimpse into the market for AI training data. Data from other entities, including Reuters, is required to obtain adequate information in order to conduct a robust analysis. This critical fact is also why Reuters misses the import of *Jarvis v. K2 Inc.*, 486 F.3d 526 (9th Cir. 2007). In *Jarvis*, the court held that K2 infringed Jarvis's copyrights by using his images in ads after

---

[3] This is precisely the reason Plaintiffs seek this information from Reuters. Definitionally, it cannot be sought from OpenAI.

the expiration of applicable licensing agreements. *Id.* at 532-33. The court upheld the district court's calculation of actual damages based on Jarvis's "own damages figures for images used in print then halved the average of these figures to determine the damages per online use." *Id.* at 534. Reuters fails to point out a critical distinguishing fact: the market involved in *Jarvis* was for photographic display, i.e., a well-established market. Here, unlike in *Jarvis*, a world-altering, new and novel technology is at issue. Thus, while historical compensation records may be one small piece of a damages analysis, Plaintiffs must understand the broader market for textual works as training data for LLMs to objectively consider the market value of textual works in determining actual damages. Given that AI training data licensing deals have only been entered during the past few years, looking at "Plaintiffs' own records" does little to aid in understanding the value of the works in the specific AI training data market without viewing that data in conjunction with the material requested by the Subpoena. ECF No. 348 at 7. Further, unlike OpenAI's agreements, agreements from other players like Reuters would reflect genuine market value and competitive terms, including offers from market participant companies beyond OpenAI.

Reuters's claim that the requested documents are irrelevant because Plaintiffs are book authors, not news organizations, fares no better. This case is about LLMs, which are trained on text of all types. Thus, text has value, whether it is news, books, or other written text. While economic realities may price each type of text differently, that is the subject of expert economic analysis, which requires the underlying data that organizations that enter into AI training data licensing deals such as Reuters possess. Additionally, the class definition includes all U.S. copyright owners whose works were used as training data for OpenAI's models. Am. Compl. ¶ 53, ECF No. 120. Licensing agreements for news content are relevant to establishing the existence and structure of the market for licensing textual copyrighted works as AI training data. *See Williams v. Gaye*, 895 F.3d 1106, 1129 (9th Cir. 2018) (upholding use of benchmark licenses to establish damages). Even Reuters concedes the relevance of the agreements sought. *See* ECF No. 348 at 5 ("While an agreement entered into by Reuters *may* have some relevance to the value of a hypothetical license…"). It follows that the communications surrounding that agreement would provide helpful context for understanding the market dynamics, valuation, and negotiation practices associated with training data licenses.

**Plaintiffs' Requests are not unduly burdensome.** "A party or attorney… must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The burden is on the party objecting to discovery to show undue burden and cost. *Andreoli v. Youngevity Int'l, Inc.*, 2018 WL 6334284, at *9 (S.D. Cal. Dec. 5, 2018) (citation omitted). Objections must be based "on specific facts, such as the numerosity of a particular type of document, to facilitate a meaningful evaluation of what may be considered relevant or an undue burden." *Id.* (citation omitted). "In deciding discovery disputes, courts must be careful not to deprive the party of discovery that is reasonably necessary to their case." *Holland-Hewitt v. Allstate Life Ins. Co.*, 343 F.R.D. 154, 159 (E.D. Cal. 2022).

Reuters cannot meet its burden to withhold relevant evidence responsive to the duly served Subpoena at issue. Reuters is correct that an evaluation of undue burden requires the Court to balance the burden to the nonparty against the value of the information. *Unisource Worldwide, Inc. v. Swope*, 2013 WL 12116382, at *1 (C.D. Cal. May 14, 2013). But the balance weighs heavily in favor of Plaintiffs, not Reuters. Reuters has failed to point to specific facts showing how searching for the requested material would be burdensome. *See id.* (rejecting undue burden objection based on generalized argument and lack of "declaration detailing why producing documents would be unduly burdensome."). Notably, Reuters ran no preliminary searches, and it has failed to articulate or approximate the volume of responsive documents to quantify its burden—as it must. Based on this fact alone, Reuters's conclusory burden argument fails.

Furthermore, Reuters ignores Plaintiffs' efforts to narrow and specify the Requests. Plaintiffs have narrowly tailored them to focus on documents directly relevant to the issues in this case, including executed licensing agreements and the negotiations and valuations surrounding those agreements related to AI training data. ECF No. 314 at 2. Plaintiffs recognize the need to avoid imposing undue burden on a third party and have not done so here. Reuters is a sophisticated entity with substantial resources and is well-equipped to comply with the Subpoena. *See* ECF No. 348 at 1 ("Reuters is the world's leading provider of trusted news, insight and analysis, reaching billions of people worldwide every day."). What is more, given OpenAI's public pronouncements regarding the far-reaching economic effects of large language models, coupled with the broad scope of the alleged infringement and considerable amount in

controversy, the matter is one of significant public importance. *See, e.g.*, *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 708 (9th Cir. 1995) (Ferguson, J., dissenting) (highlighting the significant public interest in protecting intellectual property, particularly in the context of rapidly evolving markets like computer software). Thus, Plaintiffs' Requests are clearly justified. Fed. R. Civ. P. 26(b)(1). Moreover, collecting the agreements sought by Plaintiffs would not be burdensome. These are likely documents that are easily retrievable, even without the use of search terms or any search methodology besides going and getting them. These facts all weigh in favor of requiring Reuters's compliance with the Subpoena.

Finally, Reuters's argument that Plaintiffs should first seek the requested information from OpenAI is nonsensical. The requested documents are in Reuters's exclusive possession, custody, or control and cannot be obtained from OpenAI because the Requests seek information regarding licensing deals that Reuters was a party to and OpenAI was not. *See Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81-82 (D. Ariz. 2022) (noting that discovery is appropriate where the responding party uniquely holds the requested information).

**The Protective Order adequately addresses Reuters's confidentiality concerns**. Reuters's objections based on confidentiality are also without merit. Reuters has not explained why a protective order cannot meet its concerns over confidentiality. Indeed, the Protective Order already entered in this case, and which was attached to the Subpoena served on Reuters, applies on its face to nonparties such as Reuters and includes various levels of protection, including a "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation. ECF No. 106 at 14 ("The terms of this Order are applicable to information produced by a Non-Party in this action."). Reuters has failed to articulate why the existing Protective Order is insufficient to address its confidentiality concerns.

Courts in this District have repeatedly held that confidentiality cannot provide a basis to fail to comply with discovery requests when a protective order is in place. *See e.g.*, *ICG Commc'ns., Inc. v. Allegiance Telecom*, 211 F.R.D. 610, 614 (N.D. Cal. 2002). Moreover, even if the Protective Order was inadequate (it is not) to address Reuters's concerns in this regard, the parties could enter a separate order to further address Reuters's confidentiality concerns. *See, e.g.*, *T1 Payments LLC v. New U Life Corp.*, 2021 WL 139989, at *8 (D. Nev. Jan. 14, 2021), *report and recommendation adopted in part*, 2021 WL

3406304 (D. Nev. Aug. 4, 2021) (finding no privacy or confidential concerns warranting quashing the subpoena where subpoenaing party offered to treat records as confidential and stipulate to a protective order); *In re Illumina Cambridge Ltd.*, 2019 WL 5811467, at *5 (N.D. Cal. Nov. 7, 2019); *In re NanoPyxis Co., Ltd.*, 2018 WL 1156838, at *4-5 (N.D. Cal. Mar. 5, 2018). It is clear that here, even if the requested documents contain truly competitively sensitive information, the Protective Order provides more than sufficient safeguards to prevent misuse and improper disclosure.

**Plaintiffs rejected Reuters's final proposal because it was amorphous, and Reuters refused to provide any information about its search methodology, which could have resolved the issue.** In negotiations concerning the Requests, Reuters's final proposal was a counteroffer to Plaintiffs' more specific and narrowly tailored compromise, which sought: 1) all executed licensing agreements related to AI training data, and 2) documents and communications with third parties concerning all non-executed, proposed, or in-pipeline licensing agreements related to AI training data **where pecuniary terms or other value exchanges were discussed.** ECF No. 348-3 at 3. Plaintiffs' proposal was clear, precise, and designed to minimize undue burden on Reuters. In contrast, Reuters's counterproposal introduced an ambiguous and subjective "reasonableness" standard, which omits any clear definition or objective criteria. ECF No. 348-3 at 2 ("Documents and communications with third parties relating to all non-executed, proposed, or in-pipeline licensing agreements related to AI training data **where there was any reasonable chance of aligning on the financial or licensing terms.**")

This vague language undermines the specificity required for compliance with the Subpoena and creates uncertainty about the scope of the production. It also begs the question of how Reuters proposed to determine what a "reasonable chance" means in this context. Plaintiffs requested basic information about how Reuters would go about searching for such material to better evaluate its proposal. *Id.* In response, Reuters declined to provide any further information, further compounding the problems with its proposal. *Id.* Without transparency regarding its search methodology, Reuters's proposal fails to provide any assurance that its production would be complete or reliable. Plaintiffs' narrowly tailored proposal explicitly identified the categories of documents and communications necessary to evaluate the market for AI training data and assess damages. *Id.* at 3. By contrast, Reuters's refusal to disclose its search methodology raises significant concerns about whether there would be a thorough, good-faith

1  search for responsive documents. Courts have consistently rejected discovery proposals that lack clarity
2  and fail to ensure compliance with discovery obligations. *See e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*,
3  2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013) (In the context of nonparty discovery, finding
4  transparency and collaboration are essential to meaningful cost-effective discovery and admonishing
5  that "[t]hird-party status does not confer a right to obfuscation or obstinacy."). Reuters appears to
6  "confuse[] undue burden with its obligations, once subject to a subpoena, to participate in transparent
7  and collaborative discovery." *Id.*

8      For the foregoing reasons, Plaintiffs request the Court grant their Motion and order Reuters to
9  produce all material in its possession, custody and control responsive to the Requests. The information
10 sought is critical to understanding the market for AI training data, evaluating the harm caused by
11 OpenAI's unauthorized use, and determining damages.

| | | |
|---|---|---|
| Dated: March 3, 2025 | By: | */s/ Joseph R. Saveri* |
| | | Joseph R. Saveri |

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Holden Benon (State Bar No. 325847)
Aaron Cera (State Bar No. 351163)
Margaux Poueymirou (State Bar No. 35600)
Melissa Tribble (State Bar No. 339098)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:     jsaveri@saverilawfirm.com
           czirpoli@saverilawfirm.com
           cyoung@saverilawfirm.com
           hbenon@saverilawfirm.com
           acera@saverilawfirm.com
           mpoueymirou@saverilawfirm.com
           mtribble@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
Email:     mb@buttericklaw.com

Bryan L. Clobes (pro hac vice)
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
205 N. Monroe Street
Media, PA 19063
Telephone:     215-864-2800
Email:     bclobes@caffertyclobes.com

Alexander J. Sweatman (pro hac vice anticipated)
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone:     312-782-4880
Email:     asweatman@caffertyclobes.com

Daniel J. Muller (State Bar No. 193396)
**VENTURA HERSEY & MULLER, LLP**
1506 Hamilton Avenue
San Jose, California 95125
Telephone: (408) 512-3022
Facsimile: (408) 512-3023
Email: dmuller@venturahersey.com

David Boies
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8201
Fax: (914) 749-8300
Email: dboies@bsfllp.com

Evan Matthew Ezray
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone: (954) 377-4237
Email: eezray@bsfllp.com

Jesse Michael Panuccio
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW
Washington, DC 20005
Telephone: (202) 237-2727
Email: jpanuccio@bsfllp.com

Maxwell V. Pritt
Joshua Michelangelo Stein
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6813
Telephone: (415) 293-6800
Email: jstein@bsfllp.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*