**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
205 N. Monroe Street
Media, PA 19063
Telephone: (215) 864-2800
Email: bclobes@caffertyclobes.com

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Email: dboies@bsfllp.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@butiericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION<br><br>This document relates to:<br><br>Case No. 3:23-cv-03223-AMO<br>Case No. 4:23-cv-03416-AMO<br>Case No. 4:23-cv-04625-AMO | Case No. 3:23-cv-03223-AMO<br><br>**PLAINTIFFS' MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE [DKT. 357]** |

**MOTION**

Plaintiffs move under 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and N.D. Cal. Local Rule 72-2 for relief from a non-dispositive pretrial order of a Magistrate Judge. Plaintiffs respectfully object to and ask the Court to set aside portions of the Discovery Order at Dkt. 357 issued by Magistrate Judge Illman on February 27, 2025, as set forth in the accompanying Memorandum of Points and Authorities ("Memo"). In addition to this Motion and the Memo, the Motion is based on the underlying briefing at Dkt. 298, the Proposed Order for this Motion, the records and docket in this matter, and any oral argument.

## MEMORANDUM OF POINTS AND AUTHORITIES

On February 27, 2025, Judge Illman denied Plaintiffs' motion to compel OpenAI to run supplemental search terms in eight search strings and produce responsive documents. *See* Dkt. 357 (the "Order"). That Order was clearly erroneous for two reasons. First, the Order vested in OpenAI unilateral power to impose its own search terms for each set of Plaintiffs' RFPs without any input from Plaintiffs, contrary to well-established e-discovery caselaw. Second, the Order adjudicated Plaintiffs' request for additional search terms on a deficient record because the Court declined to review the proposed search terms before issuing its ruling. Accordingly, this Court should reverse the Order and direct OpenAI to run Plaintiffs' searches.

### I. BACKGROUND

Throughout discovery, Plaintiffs have received document productions from OpenAI without having any input into the search terms underlying OpenAI's document collection. On January 2, 2025, after receiving and reviewing several productions from OpenAI and the search terms OpenAI disclosed pursuant to the ESI Order, Plaintiffs proposed that OpenAI run eight supplemental search strings designed to capture additional key documents. *See* Pritt Decl., Ex. A. Although OpenAI provided hit counts for these proposed searches, which confirmed they hit on many responsive documents, OpenAI refused to answer basic questions about those hit counts and refused to implement the proposed searches. Plaintiffs brought the issue to the Court via joint letter brief on February 3, and the Court denied Plaintiffs' request on February 27.

### II. LEGAL STANDARD

Under Rule 72(a), a district court shall modify or set aside a magistrate judge's order that is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (citing same). A magistrate judge's findings of fact are reviewed for clear error while legal conclusions are reviewed for whether they are contrary to law. *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999). Notably, reversal is appropriate where the magistrate judge denies requested discovery through an incorrect application of Rule 26. *See Matter of Application of O'Keeffe*, 184 F. Supp. 3d 1362, 1370 (S.D. Fla. 2016) (reversing magistrate judge's quashing of subpoena because "the discovery sought is not unreasonably cumulative or duplicative"); *Geophysical Sys. Corp. v. Raytheon Co, Inc.*, 117 F.R.D. 646, 647-649 (C.D. Cal. 1987) (reversing magistrate judge order denying motion to compel RFPs because it construed the "broad standard of relevance in the discovery context" too narrowly).

Case No. 3:23-cv-03223-AMO                    1
PLAINTIFFS' MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER [DKT. 357]

## III. ARGUMENT

Judge Illman denied Plaintiffs' motion to compel OpenAI to produce documents responsive to Plaintiffs' supplemental search terms because, in the Court's view, Plaintiffs failed to make "a clear showing of prejudice stemming from gaps or deficiencies in the search terms disclosed by the producing Party." Order at 2-3. But the Order did not engage with Plaintiffs' proposed search strings, *nor did the Court even review* the search terms before denying Plaintiffs' motion. The Order also ignored the new facts—key to Plaintiffs' copyright infringement claims and OpenAI's fair use defense—that Plaintiffs adduced in discovery warranting the additional search strings. *See* Dkt. 298 at 3. The failure to address these key issues is clear error.

### A. The Order Erroneously Allowed OpenAI To Develop and Run Search Terms Without Any Input.

The Order denied what it described as "Plaintiffs' suggestion that the requesting Party have input in developing" the producing Party's search terms. Order at 1. That holding clashes with decades of e-discovery caselaw, not to mention with a previous order in which the Court required *Plaintiffs* to implement OpenAI's "input" into Plaintiffs' search terms. *See* Dkt. 240.

#### 1. Negotiation of search terms is a bedrock feature of modern discovery.

For decades now, in almost every case of significance involving large entities and multiple custodians, search terms are a mutually negotiated effort. This makes sense: for every set of RFPs, the producing party has an obvious incentive to design searches that are as narrow as possible, whereas the requesting party is incentivized to advocate for broader searches. The optimal outcome usually lies somewhere in the middle after the parties negotiate in good faith. For that reason, courts in this District routinely permit—and often affirmatively *order*—litigants to engage in a meaningful negotiation of search terms after RFPs are served. In fact, courts even admonish litigants for *not* engaging in the very back-and-forth over search terms that Plaintiffs have repeatedly attempted to conduct in this case, but that the Order nevertheless prohibits. *See, e.g.*, *Humanmade v. SFMade*, 2024 WL 3378326, at *3 (N.D. Cal. July 10, 2024) (criticizing parties for failing to negotiate mutually agreeable search terms and ordering them "to undertake the normal type of search term negotiation and resulting ESI production that they should have done without the need for Court intervention" and to "propose, counter-propose, and negotiate . . . reasonable

modifications" to search terms); *Doe v. Kaiser Foundation Health Plan, Inc.*, 2024 WL 3225904, at *3 (N.D. Cal. June 28, 2024) ("The Court is disappointed that all counsel here . . . were unable to propose and negotiate search terms for these documents."). Nor are search term disputes an unusual topic for judicial intervention. Courts routinely order producing parties to run additional or modified searches that are proposed by requesting parties. *E.g.*, *Cook v. Meta Platforms, Inc.*, 2025 WL 251942, at *4 (N.D. Cal. Jan. 21, 2025) (ordering Meta to run two of plaintiff's proposed search strings as written and to propose narrower versions of five others). In complex cases like this one, a requesting party's additional proposed search terms can hit on many thousands of documents while still being proportional to the needs of the case. *See In re eBay Seller Antitrust Litig.*, 2009 WL 10694848, at *2 (N.D. Cal. Jul. 13, 2009) (Seeborg, C.J.) (ordering eBay to run 105 additional search terms proposed by Plaintiffs even though eBay already ran 300 of its own search terms and produced over 1.9 million pages because "[t]he case involves a large amount in controversy, potentially millions of plaintiffs, and a defendant with substantial resources").

In this case, however, the Magistrate Judge deviated from this bedrock e-discovery practice on the ground that allowing Plaintiffs to have input into OpenAI's search terms might lead to additional discovery disputes. Order at 1. But that is no justification at all, and the alternative is far worse: the Court instead granted OpenAI unfettered discretion to run self-serving search terms for all of Plaintiffs' RFPs, and then once OpenAI disclosed its search terms, Plaintiffs had no remedy to address their limitations. That clearly erroneous holding creates the wrong incentive for litigants to run unduly narrow search terms and undermines the usual back-and-forth between the parties. This unilateral search terms approach has been rejected by courts nationwide. *See*, *e.g.*, *William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 134-136 (S.D.N.Y. 2009) (issuing a "wake-up call to the Bar in this District about the need for careful thought, quality control, testing, and cooperation with opposing counsel in designing search terms" and warning against the perils of "lawyers designing keyword searches in the dark" while citing *The Sedona Conference Cooperation Proclamation* for the proposition that "the best solution in the entire area of electronic discovery is cooperation among counsel.").

### 2. The Court has reached incongruous results on requests for search terms.

The Order suggests Plaintiffs' ordinary effort to supplement the search strings that OpenAI ran is an attempt to "relitigate an issue they have already lost" "for a third time." Order at 2. The Court treated

Plaintiffs' request as an extension of prior search term-related disputes and thus denied the request out of hand. But the disputes are *not* identical. For one, the Court's July 2024 order on Plaintiffs' first search term request only addressed whether Plaintiffs could "have input in determining search terms" *before* OpenAI produced documents. *See* Dkt. 166 at 3. In that order, Judge Illman believed that allowing input by the requesting party before the producing party devised its search terms "raises the specter of too many future delays and disputes over methodology and search term formulation." *Id.* Then, when Plaintiffs later brought a much narrower dispute regarding an RFP involving torrenting, the Court also denied Plaintiffs' request for a "targeted ESI search." Dkt. 247 at 2-3. The current motion addresses a third situation—Plaintiffs' discovery that OpenAI's search terms were unduly limited and left significant gaps in identifying key documents after OpenAI made several large productions and disclosed its search terms.

Perhaps most clearly erroneous is that the Magistrate Judge *approved* an intervening request *by OpenAI* to compel Plaintiffs to run additional search terms that *OpenAI* proposed. *See* Dkt 240. In other words, these orders have established a categorical rule that Plaintiffs cannot have input into the search terms that OpenAI ran, yet OpenAI can have input into Plaintiffs' search terms. This Court should not rubberstamp inconsistent treatment of the parties contrary to the practice in this District.

### 3. The ESI Order contemplates negotiated search terms.

The Order's position on search terms also clashes with the procedures in the stipulated ESI Order, Dkt. 175. As Plaintiffs pointed out in their letter brief, not only does nothing in the parties' ESI Order preclude the Requesting Party (here, Plaintiffs) from later proposing supplemental search terms, but the ESI Order also contemplates additional requests by mandating both sides to disclose their initial search terms and hit counts. Dkt. 175 at 7(b). Those disclosures would be pointless if the Requesting Party then had no recourse. The present dispute is a perfect example. OpenAI disclosed its search terms to Plaintiffs, who then reviewed OpenAI's productions and search terms and identified areas where the terms and connectors appeared too narrow or did not capture phrases commonly used by OpenAI employees. As addressed in detail in the underlying letter brief, each of Plaintiffs' eight search terms is highly relevant to the case, corresponds with specific RFPs that Plaintiffs served, and ameliorates the narrowness of OpenAI's search strings. *See* Dkt. 298 at 3. But under the Order's reasoning, Plaintiffs must make an extremely high evidentiary showing (specifically, a "clear showing of prejudice," Order at 2-3) to challenge or supplement

OpenAI's search terms at all. That standard is found nowhere in Rule 26, nor have Plaintiffs found it in any case law.

### B. The Magistrate Judge Committed Clear Error By Denying Plaintiffs' Request Without Reviewing The Search Strings.

As discussed in the letter brief, Plaintiffs only requested search strings on topics that OpenAI's existing searches failed to adequately capture. The Order did not address any of these deficiencies, at least in part because the Magistrate Judge did not grant Plaintiffs' request for leave to submit the supplemental search terms themselves. This means the Court never reviewed Plaintiffs' eight proposed search strings, much less reviewed them against any of OpenAI's preexisting searches.

Ordinarily, Step 1 of adjudicating a search term dispute is to review the search terms proposed by the parties. *E.g.*, *AMEC Env't & Infrastructure, Inc. v. Integral Consulting, Inc.*, 2014 WL 12975818, at *1 (Aug. 28, 2014) (ordering a party to "submit additional information" regarding "what search terms it applied to the documents in prior productions" and "what the hit count is on [requesting party's] most recent proposed search terms" before adjudicating the dispute); *Humanmade*, 2024 WL 3378326 at *2 (where "[n]either Party has submitted all seven proposed search terms to the Court," the parties were ordered to "submit . . . a chart setting forth the seven disputed search terms" before the issue was adjudicated). The Court did not perform this necessary step here. Due to exhibit restrictions for discovery letters,[1] Plaintiffs had to request the Court's leave to submit the eight proposed search strings and hit counts as an exhibit— which Plaintiffs requested on the first page of the letter brief. Dkt. 298 at 1. Yet the Court never granted the requested leave. Instead, the Court *expressly declined* to analyze the specifics of the proposed search terms. *See* Order at 2-3 (denying Plaintiffs' request "[w]ithout repeating the details of the parties disputes as to the numerous search terms included in Plaintiffs' search strings"). Again, the Magistrate Judge *did not review the proposed search terms at all*, just the parties' characterizations of some of those search terms in the body of the letter brief. This lack of a factual record upon which to adjudicate warrants reversal under *any* standard of review.

---

[1] General Standing Order of Judge Robert M. Illman, ¶ 4(a) (effective Sept. 19, 2022).

| | |
|---|---|
| Dated: March 13, 2025 | By:  */s/ Maxwell V. Pritt*<br>Maxwell V. Pritt |

| | |
|---|---|
| **JOSEPH SAVERI LAW FIRM, LLP**<br>Joseph R. Saveri (SBN 130064)<br>Cadio Zirpoli (SBN 179108)<br>Christopher K.L. Young (SBN 318371)<br>William W. Castillo Guardado (SBN 294159)<br>Holden Benon (SBN 325847)<br>Aaron Cera (SBN 351163)<br><br>601 California Street, Suite 1505<br>San Francisco, CA 94108<br>Telephone: (415) 500-6800<br>Facsimile: (415) 395-9940<br><br>jsaveri@saverilawfirm.com<br>czirpoli@saverilawfirm.com<br>cyoung@saverilawfirm.com<br>wcastillo@saverilawfirm.com<br>hbenon@saverilawfirm.com<br>acera@saverilawfirm.com<br><br>**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**<br>Bryan L. Clobes (*pro hac vice*)<br>Alexander J. Sweatman (*pro hac vice*)<br>Mohammed A. Rathur (*pro hac vice*)<br>135 South LaSalle Street, Suite 3210<br>Chicago, IL 60603<br>Tel: (312) 782-4880<br>bclobes@caffertyclobes.com<br>asweatman@caffertyclobes.com<br>mrathur@caffertyclobes.com<br><br>Matthew Butterick (SBN 250953)<br>1920 Hillhurst Avenue, 406<br>Los Angeles, CA 90027<br>Telephone: (323) 968-2632<br>Facsimile: (415) 395-9940<br>Email: mb@butericklaw.com<br><br>**VENTURA HERSEY & MULLER, LLP**<br>Daniel J. Muller (SBN 193396)<br>1506 Hamilton Avenue<br>San Jose, California<br>Telephone: (408) 512-3022<br>Facsimile: (408) 512-3023<br>Email: dmuller@venturahersey.com | **BOIES SCHILLER FLEXNER LLP**<br>David Boies (*pro hac vice*)<br>333 Main Street<br>Armonk, NY 10504<br>(914) 749-8200<br>dboies@bsfllp.com<br><br>Maxwell V. Pritt (SBN 253155)<br>Joshua M. Stein (SBN 298856)<br>Margaux Poueymirou (SBN 356000)<br>Reed Forbush (SBN 347964)<br>44 Montgomery Street, 41st Floor<br>San Francisco, CA 94104<br>(415) 293-6800<br>mpritt@bsfllp.com<br>jstein@bsfllp.com<br>mpoueymirou@bsfllp.com<br>rforbush@bsfllp.com<br><br>Jesse Panuccio (*pro hac vice*)<br>1401 New York Ave, NW<br>Washington, DC 20005<br>(202) 237-2727<br>jpanuccio@bsfllp.com<br><br>Evan Matthew Ezray *(pro hac vice)*<br>401 E. Las Olas Blvd., Suite 1200<br>Fort Lauderdale, FL 33301<br>eezray@bsfllp.com<br><br>*Counsel for Individual and Representative Plaintiffs and the Proposed Class* |