1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
205 N. Monroe Street
Media, PA 19063
Telephone: (215) 864-2800
Email: bclobes@caffertyclobes.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

[Additional counsel on signature page]

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Email: dboies@bsfllp.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@butericklaw.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION | Case No. 3:23-cv-03223-AMO |
| This document relates to: | **NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT** |
| Case No. 3:23-cv-03223-AMO<br>Case No. 4:23-cv-03416-AMO<br>Case No. 4:23-cv-04625-AMO | |

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

NOTICE OF MOTION AND MOTION ................................................................................. vi

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.     LEGAL STANDARD ................................................................................................. 1

II.    ARGUMENT .............................................................................................................. 2

   A.   PLAINTIFFS DID NOT DELAY IN MOVING FOR LEAVE TO AMEND ............................... 2

   B.   THE PROPOSED AMENDMENT DOES NOT CAUSE UNDUE PREJUDICE ....................... 3

   C.   THE PROPOSED AMENDMENTS ARE NOT FUTILE ............................................................. 4

   D.   PLAINTIFFS' AMENDMENT IS BROUGHT IN GOOD FAITH ........................................... 12

III.   CONCLUSION ......................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*A & M Records v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ......................................................................................... 6

*Altera Corp. v. Clear Logic*, Inc.,
424 F.3d 1079 (9th Cir. 2005) ......................................................................................... 8

*Biden v. Ziegler*,
737 F. Supp. 3d 958 (C.D. Cal. 2024) ............................................................................. 8

*Brown v. Google LLC*,
2022 WL 2289057 (N.D. Cal. Mar. 18, 2022) ................................................................. 1

*Castillo-Antonio v. Barron*,
2014 WL 7185998 (N.D. Cal. Dec. 16, 2014) ................................................................. 4

*Castillo-Antonio v. Mejia*,
2014 WL 6735523 (N.D. Cal. Nov. 26, 2014) ................................................................. 3

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) ...................................................................................... 2, 4

*De Malherbe v. Int'l Union of Elevator Constructors*,
438 F. Supp. 1121 (N.D. Cal. 1977) ............................................................................... 4

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ............................................................................. 8

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ................................................................................... 1, 2

*Foman v. Davis*,
371 U.S. 178 (1962) ......................................................................................................... 1

*Frasco v. Flo Health, Inc.*,
2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) ................................................................ 8

*G.S. Rasmussen & Associates v. Kalitta Flying Service*,
958 F.2d 896 (9th Cir. 1992) ......................................................................................... 10

*Gardner v. Martino*,
563 F.3d 981 (9th Cir. 2009) ........................................................................................... 5

*Griggs v. Pace Am. Grp., Inc.*,
170 F.3d 877 (9th Cir. 1999) ......................................................................................... 12

*Grosso v. Miramax Film Corp.*,
  383 F.3d 965 (9th Cir. 2004) ................................................................. 8

*Hansen Beverage Co. v. Nat'l Beverage Corp.*,
  2007 WL 9747720 (C.D. Cal. Feb. 12, 2007) ..................................... 4

*Kadrey et al. v. Meta Platforms, Inc.*,
  2025 WL 82205 (N.D. Cal. Jan. 13, 2025) ..................................... 2, 3

*Leines v. Homeland Vinyl Prods., Inc.*,
  2020 WL 6044037 (E.D. Cal. Oct. 13, 2020) ..................................... 4

*Lockheed Martin Corp. v. Network Sols., Inc.*,
  194 F.3d 980 (9th Cir. 1999) ................................................................. 3

*Logan v. Meta Platforms, Inc.*,
  636 F. Supp. 3d 1052 (N.D. Cal. Oct. 25, 2022) ............................... 9

*Malone v. U.S. Postal Serv.*,
  833 F.2d 128 (9th Cir. 1987) ................................................................. 3

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984) ............................................................................... 6

*Moretti v. Hertz Corp.*,
  2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ...................................11

*Optrics Inc. v. Barracuda Networks Inc.*,
  2020 WL 8680000 (N.D. Cal. June 11, 2020) ..................................... 1

*Owens v. Kaiser Found. Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) ................................................................. 1

*People v. Szarvas*,
  142 Cal. App. 3d 511 (Cal. Ct. App. 1983) ..................................... 10

*Poe v. Northwestern Mut. Life Ins. Co.*,
  2023 WL 4155379 (C.D. Cal. Jan. 20, 2023) ................................. 3, 4

*Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman*,
  65 Cal.App.4th 1469 (1998) ............................................................... 10

*Royal Ins. Co. v. S.W. Marine*,
  194 F.3d 1009 (9th Cir. 1999) ............................................................. 2

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
  2019 WL 13062617 (C.D. Cal. Dec. 17, 2019) ................................. 2

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
  2007 WL 1455903 (N.D. Cal. May 16, 2007) ................................... 12

*Southwest Airlines Co. v. Roundpipe, LLC,*
    375 F. Supp. 3d 687 (N.D. Tex. 2019) ..................................................................11

*The Intercept Media, Inc. v. OpenAI, Inc.,*
    2025 WL 556019 (S.D.N.Y. Feb. 20, 2025) ............................................................ 9

*Theofel v. Farey-Jones,*
    359 F.3d 1066 (9th Cir. 2004) ................................................................................ 8

*Tiedemann v. von Blanckensee,*
    72 F.4th 1001 (9th Cir. 2023) ................................................................................. 2

*United States v. Christensen,*
    828 F.3d 763 (9th Cir. 2016) .................................................................................. 8

*United States v. Nosal,*
    930 F. Supp.2d 1051 (N.D. Cal. 2013) ................................................................... 8

*United States v. Webb,*
    655 F.2d 977 (9th Cir. 1981) .................................................................................. 1

*VHT, Inc. v. Zillow Grp., Inc.,*
    918 F.3d 723 (9th Cir. 2019) .................................................................................. 6

*Watson v. Ford Motor Co.,*
    2018 WL 3869563 (N.D. Cal. Aug. 15, 2018) ........................................................ 2

*West v. Ronquillo-Morgan,*
    526 F. Supp. 3d 737 (C.D. Cal. 2020) .................................................................... 8

*White Motor Co. v. United States,*
    372 U.S. 253 (1963) .............................................................................................. 7

**Statutes**

18 U.S.C. § 1030 ............................................................................................................ 8

Cal. Bus. & Prof. Code §§ 17200 ................................................................................11

Cal. Penal Code § 502(c)(2) ......................................................................................... 7

**Rules**

Federal Rule of Civil Procedure 15 ......................................................................... 1, 4

Federal Rule of Civil Procedure 15(a) ......................................................................... 1

Federal Rule of Civil Procedure 15(a)(2) .................................................................... 1

Federal Rule of Civil Procedure 21 ............................................................................. 4

Federal Rule of Civil Procedure 9(b)............................................................................................. 9

**<u>Other Authorities</u>**

Restatement (Third) of Restitution and Unjust Enrichment § 1 ................................................. 12

FILED UNDER SEAL

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 10, 2025, at 2:00 p.m., or as soon thereafter as the parties may be heard, Plaintiffs will and hereby do move for leave to file a Second Amended Consolidated Complaint ("SACC") pursuant to Fed. R. Civ. P. 15(a)(2). Plaintiffs seek an order granting their Motion for Leave to File the SACC to add additional causes of action based on the new evidence produced in discovery in recent weeks, and also to add Microsoft Corporation as a Defendant in this proceeding. Plaintiffs' Motion is based on this Notice of Motion and Motion, all pleadings and papers in this action, and any oral argument of counsel.

FILED UNDER SEAL

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs originally alleged that OpenAI engaged in widespread copyright infringement, ingesting their copyrighted works and millions of others in the race to be the first major player in the emerging field of "generative artificial intelligence," or GenAI. Those allegations are no longer in doubt. Indeed, while the parties are still in the midst of discovery, the evidence discovered so far shows that OpenAI intentionally targeted and downloaded tens of millions of pirated copyrighted works and then used those works with their GenAI models, all without permission from Plaintiffs and other copyright holders. And it is now clear that OpenAI's top investor, Microsoft, was anything but a bystander. To the contrary, Microsoft took advantage of OpenAI's massive data piracy through an illegal ▮▮▮▮▮ of data as part of an agreement to "tone down" competition in return for access to OpenAI's data.

This new evidence, which supports several new causes of action and the addition of Microsoft as a defendant, arose from recent discovery. It forms the backbone of the amended complaint that Plaintiffs seek leave to file long before either defendant might suffer any meaningful prejudice. Plaintiffs thus respectfully submit that they more than satisfy the "extreme[ly] liberal[]" amendment standard, *e.g.*, *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001), and request that the Court grant leave to amend their complaint.

## I.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend pleadings] when justice so requires." In considering a motion for leave to amend, courts examine: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failures to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Optrics Inc. v. Barracuda Networks Inc.*, 2020 WL 8680000, at *2 (N.D. Cal. June 11, 2020). "In exercising [its] discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Rule 15(a) is "to be applied with extreme liberality." *Brown v. Google LLC*, 2022 WL 2289057, at *1 (N.D. Cal. Mar. 18, 2022) (Gonzalez Rogers, J.) (citing *Owens*, 244 F.3d at 712). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC*

1  *v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original). The party opposing amendment

2  bears the burden of showing why leave to amend should not be granted. *See id.*

3  **II.    ARGUMENT**

4           The five *Foman* factors each weigh in favor of granting Plaintiffs' leave to amend.

5           **A.  Plaintiffs Did Not Delay in Moving for Leave to Amend**

6           When evaluating undue delay, courts consider the length of time between discovery of the need to

7  amend and the date the amendment was filed. Courts routinely grant leave to amend when new facts are

8  discovered and promptly raised with the court, *see, e.g.*, *Watson v. Ford Motor Co.*, 2018 WL 3869563, at

9  *2 (N.D. Cal. Aug. 15, 2018) (six-month delay was not "undue" because, among other factors, the amending

10 party "only recently learned that [a new party] had not been named"), especially when the amendment does

11 not "reassert an old theory of liability based on previously-known facts," *Royal Ins. Co. v. S.W. Marine*, 194

12 F.3d 1009, 1017 (9th Cir. 1999). Indeed, "[l]ate-developing evidence, or a recent discovery of evidence, is

13 a customary basis for requesting leave to amend." *Santa Clarita Valley Water Agency v. Whittaker Corp.*,

14 2019 WL 13062617, at *2 (C.D. Cal. Dec. 17, 2019); *see DCD Programs, Ltd. v. Leighton*, 833 F.2d 183,

15 187 (9th Cir. 1987) (reversing denial of leave to amend where plaintiffs "waited until they had sufficient

16 evidence of conduct upon which they could base claims of wrongful conduct").

17          Just last month, in a similar case involving copyright infringement by one of OpenAI's and

18 Microsoft's competitors in the GenAI space, a court in this district granted leave to amend *after* the close

19 of fact discovery when discovery had revealed new facts giving rise to a renewed DMCA claim and a

20 CDAFA claim. *Kadrey et al. v. Meta Platforms, Inc.*, 2025 WL 82205, at *1 (N.D. Cal. Jan. 13, 2025)

21 (finding no undue delay and noting, "[i]n any event, 'delay, by itself, is insufficient to justify denial of leave

22 to amend'") (quoting *Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1011 (9th Cir. 2023)).

23          As in *Kadrey,* Plaintiffs here discovered new facts supporting their new causes of action during the

24 past several weeks, including key evidence and deposition testimony *obtained just this past week*. In

25 February alone, OpenAI produced more than *36,000 pages* of new documents, including some of the most

26 important documents produced thus far. For example, on February 19, <mark>OpenAI produced a document that</mark>

27 <mark>shows its methodical efforts to mask the sources of its training data. To conceal that OpenAI's model was</mark>

28

trained on "specific newspapers, published books, or news journals," OpenAI engineers instructed the model to "not even say it is possible or likely that this data was ever used in training." Stein Decl. Ex. A, OPCO_NDCAL_1725737.[1]

Further, the recent addition of Plaintiffs' new counsel, Boies Schiller Flexner LLP, militates against a finding of undue delay. Courts have addressed this very situation, finding, for example, that even a five-month delay between discovery of new facts and seeking leave to amend was not undue "under the circumstances of this case" because, among other reasons, "Plaintiff's newly retained counsel filed the motion only two months after joining this case." *Poe v. Northwestern Mut. Life Ins. Co*., 2023 WL 4155379, at *5 (C.D. Cal. Jan. 20, 2023). This mirrors the facts here, where Plaintiffs are moving for leave two months after new counsel was retained.

### B.  The Proposed Amendment Does Not Cause Undue Prejudice

Neither OpenAI nor Microsoft face undue prejudice from Plaintiffs' introduction of their new claims. In analyzing whether a defendant would suffer prejudice, courts examine "whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987). For example, the "need to reopen discovery and therefore delay the proceedings" supports a finding of prejudice. *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). Here, there is no such need as discovery is still ongoing.

With respect to new *claims*, Plaintiffs seek to amend because of recent discovery. Further, the amendments are based on OpenAI's own documents and testimony, and thus are based on facts already within OpenAI's knowledge. *See, e.g., Kadrey*, 2025 WL 82205, at *1 (minimal prejudice where "[m]uch of the evidence [defendant] will need to develop is within its own knowledge").

With respect to the addition of a new *party*, prejudice is likewise minimal. *See Castillo-Antonio v. Mejia*, 2014 WL 6735523, at *1 (N.D. Cal. Nov. 26, 2014) (the "liberal standard applies even when the

---

[1] All exhibits cited in this brief refer to the accompanying Declaration of Joshua M. Stein.

FILED UNDER SEAL

proposed amendment seeks to add a new party to the action.").[2] Importantly, the addition of Microsoft as a defendant will not disrupt the case schedule. The Ninth Circuit has explained that prejudice to a new defendant is minimal when, as here, a "case is still at the discovery stage with no trial date pending[.]" *DCD Programs*, 833 F.2d at 188. Further, Microsoft is already named as a co-defendant in two related copyright infringement cases pending against OpenAI. *See The New York Times Co. v. Microsoft Corp.*, No. 23-cv-11195 (S.D.N.Y); *Authors Guild v. OpenAI Inc.*, No. 23-cv-08292 (S.D.N.Y.). These cases center on the same course of conduct—OpenAI, with Microsoft's backing, took and trained its large language models on copyrighted works without permission. Notably, Microsoft is well aware of this action. In fact, Microsoft has been participating in these very proceedings. Just two weeks ago, an attorney for Microsoft attended the deposition of an OpenAI witness noticed in this case. *See* Ex. N. The addition of Microsoft as a defendant will allow Microsoft to stop operating as a shadow defendant behind the scenes and instead openly defend itself on an equal basis with OpenAI.

In circumstances like this one, when the introduction of new claims was made in good faith and prejudice is minimal, courts have granted motions to amend the complaint far into, and even after, the fact discovery period. *See Hansen Beverage Co. v. Nat'l Beverage Corp.*, 2007 WL 9747720, at *2 (C.D. Cal. Feb. 12, 2007) (finding marginal prejudice in allowing amendment of complaint a few weeks before fact discovery cut-off); *Leines v. Homeland Vinyl Prods., Inc.*, 2020 WL 6044037, at *3-5 (E.D. Cal. Oct. 13, 2020) (granting leave to amend complaint after the close of fact discovery where added claims did not appear to be brought in bad faith); *Poe*, 2023 WL 4155379, at *3 (granting motion to amend complaint to define a broader proposed class when information relevant to the class definition was learned during a deposition conducted deep into fact discovery). This case should be no exception.

### C.  The Proposed Amendments Are Not Futile.

Plaintiffs' proposed amendments are not futile. The new claims raise formidable, well-supported theories of liability. Amendments are only futile when they offer no new set of facts or legal theory or fail

---

[2] "Rule 15 must be read in conjunction with Rule 21, which states: 'On motion or on its own, the court may at any time, on just terms, add or drop a party.'" *Castillo-Antonio v. Barron,* 2014 WL 7185998, at *1 (N.D. Cal. Dec. 16, 2014) (quoting Fed. R. Civ. P. 21). "The liberal standard of Rule 15 also applies to Rule 21 motions." *De Malherbe v. Int'l Union of Elevator Constructors*, 438 F. Supp. 1121, 1128 (N.D. Cal. 1977) (citations omitted).

to state a cognizable claim. *See Gardner v. Martino*, 563 F.3d 981, 991-92 (9th Cir. 2009). Plaintiffs' SACC seeks to resolve the Court's concerns that led to the dismissal of the DMCA and UCL claims. In addition, the proposed SACC aligns the Complaint more closely with the evidence, proposing revisions to include all the parties who conspired to carry out the alleged unlawful scheme and to conform the causes of action to OpenAI's actual wrongdoing. In addition to new claims and an additional defendant, the SACC also alleges additional facts supporting Plaintiffs' existing copyright infringement claims.[3] Because recent evidence shows that the scope of OpenAI's wrongdoing was far broader than originally realized, the Complaint should be amended to reflect this scope.

### 1. Microsoft's Involvement

The new claims against Microsoft are not futile. Recent discovery reveals that OpenAI did not act alone. SACC ¶ 4. Its primary partner, Microsoft, played a critical role in enabling and profiting from these unlawful activities. *Id.* In so doing, Microsoft also joined OpenAI in a conspiracy, not just in support of those activities, but also to restrain trade and jointly assume dominance in AI. *Id.*

Documents produced thus far in discovery show that Microsoft knew about, communicated about, and sought to benefit from OpenAI's unlawful data acquisition practices. SACC ¶ 89, 90. Microsoft had access to information about the sources of OpenAI's training data and approved them, notwithstanding their dubious legality. *Id.* In one thread about exchanging data with Microsoft, an OpenAI employee states, ███████ ████████████████████████████████████████████████████████████████ referring to the copyrighted books OpenAI torrented from LibGen, a notorious shadow library of pirated works. Ex. G, OPCO_NDCAL_1622427; *see also Cengage Learning, Inc. v. Library Genesis*, No. 23-cv-08136, DE36 (S.D.N.Y. Sep. 24, 2024) (permanently enjoining LibGen due to copyright infringement). In another instance, OpenAI created a document titled ████████████████████████████████████

---

[3] For example, the proposed SACC adds four additional Asserted Works (Plaintiff Tremblay's *Disappearance at Devil's Rock*, Plaintiff Coates's *The Beautiful Struggle,* Plaintiff Lippman's *Wilde Lake,* and Plaintiff Klam's *Sam the Cat*), which Plaintiffs have identified in OpenAI's training data. SACC ¶ 15, 19, 24, 25. The SACC also adds as a Plaintiff BCP Literary, Inc., the professional corporation of Plaintiff Coates, which owns the copyrights in *The Water Dancer* and *The Beautiful Struggle*. Id. ¶ 20. In addition, the proposed SACC alleges, based on code produced just last week, that OpenAI used pirated datasets like LibGen to make CommonCrawl data look even more like the pirated sets (i.e. replete with copyrighted works). OPCO_AG_SRC_CODE00000941. SACC ¶ 79.

1    ████ where OpenAI discusses the datasets used to train their models, including LibGen. Ex. C,

2    OPCO_NDCAL_0067522 at -67523. Further, in an internal email thread between Microsoft and OpenAI

3    discussed a meeting for Microsoft ████████████████ and what OpenAI

4    is trying to achieve. Ex. D, OPCO_NDCAL_0001038. This deep partnership implicates Microsoft in

5    OpenAI's copyright infringement scheme. It gives rise to liability for many of the claims alleged against

6    OpenAI and also supports a claim under Section 1 of the Sherman Antitrust Act. SACC ¶ 184-194.

7         Starting with the copyright infringement scheme, Microsoft's involvement gives rise to both direct

8    and vicarious infringement claims.  SACC ¶ 115-24, 125-30. Liability for direct infringement extends to

9    third parties who are "actively involved" in the infringement. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723,

10   732 (9th Cir. 2019). Here, Microsoft and OpenAI ████████████████████

11   ████████████████ for OpenAI's infringing activities, which were

12   already well-pleaded in the First Amended Complaint. ██████████████

13   ████████████████████. Documents produced to date

14   also show that OpenAI and Microsoft ████████████████████

15   ████ Ex. G, OPCO_NDCAL_1622427.

16        A defendant is vicariously liable for copyright infringement if he enjoys a "direct financial interest"

17   in another's infringing activity and "has the right and ability to supervise' the infringing activity." *A & M*

18   *Records v. Napster, Inc*., 239 F.3d 1004, 1022 (9th Cir. 2001). Here, Microsoft supervised much of

19   OpenAI's development of its GenAI models while simultaneously incorporating those models into its own

20   products, directly profiting from their use. SACC ¶ 127-29. Indeed, as one example of the supervision that

21   Microsoft exerted over OpenAI, a document shows that ████████████████

22   ████████████████████ Ex. G, OPCO_NDCAL_1622427

23   ████████████████████

24        With respect to the Sherman Act, new discovery shows that Microsoft's conduct was designed, in

25   part, to restrain trade in the relevant markets for acquiring copyrighted works and for using those works as

26   training data. SACC ¶ 184-94. Section 1 of the Sherman Act imposes liability where conspirators "had a

27   conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v.*

28   *Spray-Rite Serv. Corp*., 465 U.S. 752, 764 (1984). The documents produced in this case demonstrate both

FILED UNDER SEAL

1    that unlawful objective and consciousness of its unlawfulness. *See* Ex. F, OPCO_NDCAL_1526800 at -

2    1526805 (███████████████████████████████████████████████████████████

3    ███████████). Indeed, the documents show that Microsoft and OpenAI agreed to ███████████████

4    ████████████████    *See* Ex. G, OPCO_NDCAL_1622427 (describing ████████████████

5    ████████). That type of parallel conduct along with horizontal agreement to ████████████——and thus

6    artificially lower the price for training data—is the type of per se anticompetitive conduct that Section 1

7    prohibits. *See, e.g.*, *White Motor Co. v. United States*, 372 U.S. 253, 263 (1963) (horizontal agreements are

8    "naked restraints of trade with no purpose except stifling of competition"). These claims are not futile.

9    **2.    CDAFA and CFAA**

10    Recent discovery has also revealed that OpenAI *knowingly and illegally accessed* Plaintiffs' works

11    (and millions of others) by targeting and torrenting pirated datasets of copyrighted works, and then using

12    those works to train ChatGPT models. In other words, OpenAI knowingly accessed computer networks of

13    pirated copyrighted works, including Plaintiffs' works, and copied those works without Plaintiffs'

14    permission. In one message chain, then-OpenAI employee Ben Mann shared a daily to-do list, which

15    included "start libgen torrent downloading." Ex. H, OPCO_NDCAL_0872730. In a subsequent message,

16    he gave an update: "libgen fiction torrents started." *Id.* Another document shows the torrent site used for the

17    download of LibGen. Ex. I, OPCO_NDCAL_0854839.

18    A torrent is a "protocol . . . that is used to distribute a large computer file (such as of digitized music

19    or video) that has been segmented in small pieces between a large number of peer-to-peer users."[4] One of

20    OpenAI's own employees called OpenAI's decision to torrent LibGen "sketchy." Ex. J,

21    OPCO_NDCAL_0750434 at 75050438. Another cited his FUD ("fear, uncertainly, and doubt") about the

22    practice. Ex. K, OPCO_NDCAL_0873783 at -873788.

23    CDAFA creates liability for anyone who "[k]nowingly accesses and without permission takes,

24    copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies

25    any supporting documentation, whether existing or residing internal or external to a computer, computer

26    system, or computer network." Cal. Penal Code § 502(c)(2). The CFAA similarly prohibits accessing

27

28    ———————————
[4] MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/torrent (last visited Nov. 25, 2024).

protected computers without authorization, or exceeded authorized access, and obtaining information. 18 U.S.C. § 1030.

Plaintiffs' CDAFA and CFAA claims thus are not futile. OpenAI's unauthorized access to and fraudulent attainment of pirated data via torrenting constitutes both a CDAFA and CFAA violation. SACC ¶ 138-43, 175-78. The law is clear that CDAFA and CFAA do not require actual hacking or "breaking in." Rather, any unauthorized access can give rise to claims under these computer fraud statutes. *See West v. Ronquillo-Morgan*, 526 F. Supp. 3d 737, 745–46 (C.D. Cal. 2020) (CDAFA liability can attach without circumventing technical or code-based barriers) (citing *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2016)); *United States v. Nosal*, 930 F. Supp.2d 1051, 1063 (N.D. Cal. 2013) (noting that the CFAA prohibits any unauthorized access).[5] That can be true of data obtained on computers other than plaintiffs'. *E.g.*, *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004) ("The district court erred by reading an ownership or control requirement into the Act."); *Biden v. Ziegler*, 737 F. Supp. 3d 958, 968 (C.D. Cal. 2024) ("Neither the CFAA nor the CCDAFA contain any requirement that Plaintiff must 'own,' 'possess,' or 'control' the physical device or computer that Defendants accessed."); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 836-37 (N.D. Cal. 2024) ("The plaintiffs are twelve people proceeding anonymously who allege that Google unlawfully tracks, collects, and monetizes their private health information through source code that is 'secretly embedded' on their health care providers' websites."); *Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *1 (N.D. Cal. Sept. 23, 2024) ("Plaintiffs' claims are premised on the allegation that Google violated their privacy rights by obtaining and storing, without plaintiffs' knowledge or consent, sensitive personal information from the Flo App . . . .").

### 3.   DMCA Claim

To minimize the risks that ChatGPT users or the public, including Plaintiffs and the putative class of copyright owners in this case, might learn that OpenAI infringed on copyrights, OpenAI's programmers

---

[5] Plaintiffs' CDAFA claim is not preempted by the Copyright Act. OpenAI's unauthorized access of Plaintiffs' and class members' texts provides an "extra element" that renders the CDAFA claim "qualitatively different" from Plaintiffs' infringement claims. *See, e.g.*, *Altera Corp. v. Clear Logic*, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005) (state laws with an "extra element" that is "qualitatively different from those protected under the Copyright Act" are "not preempted"); *see also Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004).

FILED UNDER SEAL

removed copyright management information ("CMI") to ensure ChatGPT's output would include less incriminating answers when answering prompts regarding the source of OpenAI's AI training data.

Earlier in this case, the Court dismissed Plaintiffs DMCA claim because "Plaintiffs provide[d] no facts supporting this assertion." ECF No. 104 at 6. Now, with the benefit of discovery, Plaintiffs can allege those facts that were previously unavailable. SACC ¶ 151-54. As amended, the DCMA claim sufficiently alleges that OpenAI actually removed CMI for training its large language models. *Id.* In addition, the SACC alleges the requisite scienter with specific allegations about OpenAI's knowing and intentional removal of CMI. *Id.* ¶ 155; *see Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1063 (N.D. Cal. Oct. 25, 2022) ("Federal Rule of Civil Procedure 9(b) provides that 'intent, knowledge, and other conditions of a person's mind may be alleged generally.'"). Specifically, the newly discovered evidence forming the basis of Plaintiffs' proposed amendments include documents that confirm CMI was removed. Just last week, OpenAI produced source code that specifically references an approach that ██████████████████ ███████████████████████████████ with respect to the LibGen dataset.[6] *See also* Ex. L, OPCO_NDCAL_0067593 at -67595 ("For libgen this helps to eliminate copyright info from start of document."); Ex. M, OPCO_NDCAL_1355540 (a copyrighted book used for training that appears to have CMI stripped). This discovery suggests that OpenAI strips CMI to enable, facilitate, and conceal its infringement because stripping copyrighted works' CMI prevents ChatGPT from outputting copyright information that might alert ChatGPT users and the public to OpenAI's infringement.

Because the SACC states a viable DMCA claim against OpenAI, the proposed amendment is not futile and should be permitted. *See The Intercept Media, Inc. v. OpenAI, Inc.*, 2025 WL 556019, at *7-8 (S.D.N.Y. Feb. 20, 2025) (Rakoff, J.) (permitting § 1202(b)(1) claim to proceed past motion-to-dismiss stage where Plaintiffs alleged that defendant removed CMI and included them in training sets to train ChatGPT).

### 4. Theft Claims

OpenAI didn't just infringe Plaintiffs' copyrights; it did so by engaging in a massive theft of millions of copyrighted books and other literary works. Indeed, hundreds of documents confirm that OpenAI trained

---

[6] That source code was printed out in paper copy format pursuant to the Protective Order with Bates stamp OPCO_AG_SRC_CODE00000941.

1  its models using copyrighted material from LibGen that it knew were pirated. OpenAI's unauthorized

2  acquisition and use of Plaintiffs' copyrighted works constitutes conversion and larceny under California

3  law. SACC ¶ 157-61, 179-83. By taking Plaintiffs' copyrighted works without permission, OpenAI

4  wrongfully exercised dominion and control over Plaintiffs' property, depriving them of their rights to use

5  and control their works. OpenAI and Microsoft also committed larceny by knowingly receiving stolen

6  property. *Id.* ¶ 180.

7          These state law claims are not preempted. Where Plaintiffs' copyright claims are based on

8  defendants' unlawful *copying and use* of the Asserted Works, their theft claims are based on defendants'

9  unlawful *acquisition* of the Asserted Works. To be sure, OpenAI and Microsoft stole Plaintiffs' copyrighted

10  works. But the theft and the copyright infringement are distinct: if a defendant steals a copyrighted book out

11  of an author's car, the defendant committed theft but not necessarily copyright infringement. Conversely, if

12  a defendant reproduces a copyrighted work that it lawfully acquired from a bookstore, it commits

13  infringement but not theft. Here though, OpenAI and Microsoft *both* infringed copyrights *and* committed

14  theft through torrenting pirated works. *See G.S. Rasmussen & Associates v. Kalitta Flying Service*, 958 F.2d

15  896, 904, 906 (9th Cir. 1992) (sustaining conversion claim where aircraft owner "pirated" engineer's aircraft

16  modification system and then copied it to obtain FAA approval); *People v. Szarvas*, 142 Cal. App. 3d 511,

17  521-22 (Cal. Ct. App. 1983) (permitting a larceny conviction for the bootlegging of copyrighted music).

18  Accordingly, these claims are not futile.

19          **5.      Contract Claims**

20          OpenAI's scraping of the internet violates websites terms and conditions, which are designed, in

21  part, to protect copyright holders. "California law permits third party beneficiaries to enforce the terms of a

22  contract made for their benefit." *Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman*, 65

23  Cal.App.4th 1469, 1485 (1998).

24          Discovery has revealed the breadth of OpenAI's web "scraping" or "crawling." Through these

25  processes, OpenAI obtains data from websites across the internet. Many of these websites have terms and

26  conditions that prohibit the unauthorized copying and use of their content. These terms and conditions are

27  specifically intended to protect the rights of those involved in the creation of that content, including

28  Plaintiffs, who publish their works on these platforms. Because the terms and conditions are designed to

protect Plaintiffs' material, Plaintiffs are third-party beneficiaries of these contracts between the websites and their users. SACC ¶ 170-171. *See Moretti v. Hertz Corp.*, 2014 WL 1410432, at *4 (N.D. Cal. Apr. 11, 2014) (recognizing Terms of Service can confer contract enforcement rights on third party beneficiaries). When OpenAI violates these terms, Plaintiffs are harmed. Legal scholars have noted that the "Terms of Service agreements are a creature of contract law" and the proliferation of "bots" that scrape data from the internet in violation of these terms "subvert the purpose of contract law." David Atkinson, *Putting GenAI on Notice: GenAI Exceptionalism and Contract Law*, N.W. L. Rev. (forthcoming 2025).[7]  *See also Southwest Airlines Co. v. Roundpipe, LLC,* 375 F. Supp. 3d 687, 706 (N.D. Tex. 2019) (sustaining a breach of contract claim against an entity that scraped data from plaintiff's website in violation of the website terms of use).

OpenAI's model acknowledges that "some books may be copyrighted and downloading them for free may be illegal. It is best to check the terms and conditions of each website before downloading any books." Ex. B, OPCO_NDCAL_1540718. But OpenAI didn't heed its own warning. Instead, it simply ignored these terms and conditions—just as it ignored the copyright laws—and violated millions of contracts and user agreements. SACC ¶ 168-74. These claims are not futile.

### 6.        Unjust Enrichment/Quasi-Contract and UCL Claims

Defendants' illegal acts detailed above and in the SACC also give rise to new claims under California's Unfair Competition law. Cal. Bus. & Prof. Code §§ 17200. This claim is premised on different facts than the earlier-pleaded UCL claim, which this Court dismissed as preempted. The SACC alleges a far broader course of conduct that is not based solely on copyright infringement. Rather, the UCL claim pleaded in the SACC alleges an elaborate scheme to steal, torrent, conceal, share, and train on the Asserted Works. SACC ¶ 131-137. It also addresses the misrepresentation to the public arising out of (false) promises to behave ethically and to respect people's rights. *Id.* ¶ 133. And the SACC alleges a massive scale of CMI stripping in violation of the DMCA. *Id* ¶ 149-56.

Just to take one example of the new claim's breadth: Courts in this district recognize that state law claims "that involve the element of misrepresentation or deception—including false advertising—are not

---

[7] https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4981332.

equivalent to any exclusive right protected by the Copyright Act, and therefore are not preempted." *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2007 WL 1455903, at *7 (N.D. Cal. May 16, 2007). Whereas the earlier-pleaded UCL claim merely borrowed from other laws under the "unlawful" prong, this renewed UCL claim alleges, with particularized facts, the element of misrepresentation. Importantly, none of the other claims alleged similarly rely on defendants' misrepresentation as an essential element. These business practices give rise to a UCL claim that is not preempted.

In addition, and as the result of its unfair business practices, OpenAI was unjustly enriched by its unauthorized use of Plaintiffs' copyrighted works to train its AI models. SACC ¶ 163. Specifically, OpenAI has derived significant commercial benefits and profits from this use. Indeed, these commercial benefits were so substantial that they prompted OpenAI's shift from a non-profit to a for-profit company. *See* Emma Roth, *OpenAI announces plan to transform into a for-profit company,* THE VERGE (Dec. 27, 2024).[8] Further, Microsoft directly benefited from this unjust enrichment by integrating OpenAI's infringing models into its own products and services, leveraging the unlawfully obtained data to enhance its offerings and increase its profits. SACC ¶ 164, *see* Microsoft, Microsoft and OpenAI Extend Partnership (Jan. 23, 2023).[9]

Defendants' enrichment came at the expense of Plaintiffs, who have not been compensated for the use of their copyrighted works by OpenAI or Microsoft. SACC ¶ 162-67. "A person who is unjustly enriched at the expense of another is subject to liability." Restatement (Third) of Restitution and Unjust Enrichment § 1; *see also id.* cmt. a (enrichment "at the expense of another" requires "violation of the other's legally protected rights, without the need to show that the claimant has suffered a loss"). It would be inequitable for Defendants to retain the benefits derived from their unauthorized use of Plaintiffs' works.

**D.  Plaintiffs' Amendment Is Brought In Good Faith**

Plaintiffs move in good faith to amend their complaint to better reflect the evidence to date. While a party may exhibit bad faith by seeking to amend "to prolong the litigation by adding new but baseless legal theories," *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999), that is not the case here. Plaintiffs do not seek to prolong the litigation but to conform the pleadings and assert claims based on the

---

[8] https://www.theverge.com/2024/12/27/24330131/openai-plan-transform-for-profit-company.
[9] https://blogs.microsoft.com/blog/2023/01/23/microsoftandopenaiextendpartnership//.

FILED UNDER SEAL

facts discovered to date. Denying leave to amend would punish Plaintiffs for waiting for a good faith basis for these new claims.[10]

### III.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs leave to file the proposed Second Amended Consolidated Complaint.

---

[10] Plaintiffs also have not previously amended their complaint to introduce new substantive claims. The First Amended Complaint merely re-pleaded two of the claims pleaded in the initial complaint. Those earlier amendments focused on curing pleading deficiencies, whereas the instant amendment adds a party and raises additional theories of liability that could not reasonably have been known at the time of the earlier amendments. *See Kadrey,* No. 23-cv-03417, ECF No. 389 (granting leave to amend to add new claims long after deficiencies in earlier complaints had been cured by two prior amendments).

Dated: March 4, 2025

By: _____ */s/ Joshua M. Stein* _____
Joshua M. Stein

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Margaux Poueymirou (SBN 356000)
William W. Castillo Guardado (SBN 294159)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)

601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940

jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
mpoueymirou@saverilawfirm.com
wcastillo@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
Alexander J. Sweatman (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel: (312) 782-4880
bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, 406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

**VENTURA HERSEY & MULLER, LLP**
Daniel J. Muller (SBN 193396)
1506 Hamilton Avenue
San Jose, California

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Reed Forbush
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
rforbush@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

Evan Matthew Ezray (*pro hac vice*)
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
eezray@bsfllp.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Telephone: (408) 512-3022
Facsimile: (408) 512-3023
Email: dmuller@venturahersey.com