## FILED UNDER SEAL – REDACTED VERSION

1  **LATHAM & WATKINS LLP**
   Andrew M. Gass (SBN 259694)
2   andrew.gass@lw.com
   Joseph R. Wetzel (SBN 238008)
3   joe.wetzel@lw.com
   505 Montgomery Street, Suite 2000
4  San Francisco, CA 94111
   Telephone: 415.391.0600
5
   Sarang V. Damle (*pro hac vice*)
6   sy.damle@lw.com
   Elana Nightingale Dawson (*pro hac vice*)
7   elana.nightingaledawson@lw.com
   Michael A. David (*pro hac vice*)
8   michael.david@lw.com
   555 Eleventh Street, NW, Suite 1000
9  Washington, D.C. 20004
   Telephone: 202.637.2200
10
   Allison L. Stillman (*pro hac vice*)
11   alli.stillman@lw.com
   Rachel R. Blitzer *(pro hac vice)*
12   rachel.blitzer@lw.com
   Herman H. Yue (*pro hac vice*)
13   herman.yue@lw.com
   1271 Avenue of the Americas
14  New York, NY 10020
   Telephone:  212.906.1200
15
   Allison S. Blanco (SBN 287554)
16   allison.blanco@lw.com
   650 Town Center Drive 20th Floor
17  Costa Mesa, CA 92626
   Telephone: 714.540.1235

**MORRISON & FOERSTER LLP**
Joseph C. Gratz (SBN 240676)
 jgratz@mofo.com
Tiffany Cheung (SBN 211497)
 tcheung@mofo.com
Joyce C. Li (SBN 323820)
 joyceli@mofo.com
Melody E. Wong (SBN 341494)
 melodywong@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone: 415.268.7000

Rose S. Lee (SBN 294658)
 roselee@mofo.com
Alexandra M. Ward (SBN 318042)
 alexandraward@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: 213.892.5200

*Attorneys for Defendants OpenAI, Inc.,*
*OpenAI, L.P., OpenAI OpCo, L.L.C.,*
*OpenAI GP, L.L.C., OpenAI Startup Fund*
*GP I, L.L.C., OpenAI Startup Fund I,*
*L.P., and OpenAI Startup Fund*
*Management, LLC*

18  [CAPTION CONTINUED ON NEXT PAGE]

19
## UNITED STATES DISTRICT COURT
20
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION
21

| | |
|---|---|
| 22  IN RE OPENAI CHATGPT LITIGATION | Master File No. 3:23-cv-03223-AMO |
| 23  This Document Relates To: | **DEFENDANTS' OPPOSITION TO MOTION** |
| 24  Case No. 3:23-cv-03223-AMO | **FOR LEAVE TO FILE SECOND AMENDED** |
|    Case No. 3:23-cv-03416-AMO | **COMPLAINT** |
| 25  Case No. 3:23-cv-04625-AMO | |
|    | Hearing: April 17, 2025 |
| 26  | Time:   2:00 p.m. |
|    | Location: Courtroom 10—19th Floor |
|    | Hon. Araceli Martínez-Olguín |
| 27  | |
| 28  | |

**FILED UNDER SEAL – REDACTED VERSION**

1  Max I. Levy (SBN 346289)
    *mlevy@mofo.com*
2  755 Page Mill Road
   Palo Alto, CA 94304
3  Telephone: 650.813.5600

4  John R. Lanham (SBN 289382)
    *jlanham@mofo.com*
5  Sarah J. Vandervalk (SBN 332651)
    *svandervalk@mofo.com*
6  12531 High Bluff Drive, Suite 100
   San Diego, CA 92130
7  Telephone: 858.720.5100

8  Eric K. Nikolaides (*pro hac vice*)
    *enikolaides@mofo.com*
9  Zachary S. Newman (*pro hac vice*)
    *znewman@mofo.com*
10 250 West 55th Street
   New York, NY 10019
11 Telephone: 212.468.8000

12 Carolyn M. Homer (SBN 286441)
    *cmhomer@mofo.com*
13 2100 L Street, NW, Suite 900
   Washington, D.C. 20037
14 Telephone: 202.650.4597

15
   **KEKER, VAN NEST & PETERS LLP**
16 Robert A. Van Nest (SBN 84065)
    *rvannest@keker.com*
17 R. James Slaughter (SBN 192813)
    *rslaughter@keker.com*
18 Paven Malhotra (SBN 258429)
    *pmalhotra@keker.com*
19 Michelle S. Ybarra (SBN 260697)
    *mybarra@keker.com*
20 Nicholas S. Goldberg (SBN 273614)
    *ngoldberg@keker.com*
21 Thomas E. Gorman (SBN 279409)
    *tgorman@keker.com*
22 Katie Lynn Joyce (SBN 308263)
    *kjoyce@keker.com*
23 Christopher S. Sun (SBN 308945)
    *csun@keker.com*
24 Edward A. Bayley (SBN 267532)
    *ebayley@keker.com*
25 633 Battery Street
   San Francisco, CA 94111
26 Telephone: 415.391.5400
   Facsimile: 415.397.7188

27

28

**FILED UNDER SEAL – REDACTED VERSION**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     BACKGROUND ...................................................................................... 3

    A.  Current Stage of the Proceedings............................................. 3

    B.  The Putative Class To Date....................................................... 4

    C.  Related Cases Involving Microsoft............................................ 5

    D.  Plaintiffs' Proposed Amendments ............................................. 6

III.    LEGAL STANDARD ............................................................................. 6

IV.     ARGUMENT ........................................................................................... 7

    A.  Permitting the Proposed Amendments Will Materially Prejudice
        OpenAI....................................................................................... 7

        1.  The Proposed Amendments Will Necessitate Extensive
            Additional and Burdensome Discovery ............................ 8

        2.  Plaintiffs Rely on Inapposite Case Law to Minimize the
            Prejudice to OpenAI ....................................................... 12

    B.  Plaintiffs' Delay In Seeking Leave To Amend Is Undue And
        Unjustified............................................................................... 13

        1.  No "New" Discovery Supports Plaintiffs' Request ........... 13

        2.  Plaintiffs' Cited Authority is Inapposite ........................ 16

        3.  New Counsel Does Not Move The Needle ......................... 17

    C.  Plaintiffs' Proposed Amendments Are Futile .......................... 17

V.      CONCLUSION ...................................................................................... 23

<p style="text-align:center; color:red;"><strong>FILED UNDER SEAL – REDACTED VERSION</strong></p>

<h1 style="text-align:center;"><u>TABLE OF AUTHORITIES</u></h1>

<p style="text-align:right;"><strong>Page(s)</strong></p>

<h2 style="text-align:center;">CASES</h2>

*Alter et al. v. OpenAI et al.*,
No. 1:23-cv-10211, Dkts. 1, 26 (S.D.N.Y. Nov. 21 and Dec. 19, 2023)............................5, 13

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
465 F.3d 946 (9th Cir. 2006) ...............................................................................7, 13, 17

*Andersen v. Stability AI Ltd.*,
744 F. Supp. 3d 956 (N.D. Cal. 2024) ...................................................................................20

*Apple, Inc. v. Samsung Elecs. Co.*,
No. 12-2176, 2013 WL 12324184 (C.D. Cal. Jan. 3, 2013)...................................................11

*Authors Guild et al. v. OpenAI, Inc. et al.*,
No. 1:23-cv-08292-SHS, Dkt. 1 (S.D.N.Y. Sept. 19, 2023)....................................................5

*Basbanes, et al. v. Microsoft, et al.*,
No. 1:24-cv-00084, Dkt. 1 (S.D.N.Y. Jan. 5, 2024) ................................................................5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................9, 23

*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995) ...................................................................................................17

*Chodos v. West Publ'g Co.*,
292 F.3d 992 (9th Cir. 2002) ...................................................................................................6

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) ...........................................................................................11, 17

*Doe 1 v. GitHub, Inc.*,
2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ..........................................................................19

*Doe 1 v. GitHub, Inc.*,
672 F. Supp. 3d 837 (N.D. Cal. 2023) ....................................................................................19

*Ereikat v. Michael & Assocs., PC*,
No. 14-cv-05339-JSC, 2015 WL 4463653 (N.D. Cal. July 21, 2015).....................................7

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) ...............................................................................................21

*Firoozye v. Earthlink Network*,
153 F. Supp. 2d 1115 (N.D. Cal. 2001) ..................................................................................20

FILED UNDER SEAL – REDACTED VERSION

*Foman v. Davis*,
　371 U.S. 178 (1962)......................................................................................................7

*Guevara v. Marriott Hotel Servs. Inc.*,
　No. C 10-5347 SBA, 2013 WL 6172983 (N.D. Cal. Nov. 25, 2013).....................................12

*Hansen Beverage Co. v. National Beverage Corp.*,
　No. CV 06-5470 ER, 2007 WL 9747720 (C.D. Cal. Feb. 12, 2007).....................................12

*hiQ Labs, Inc. v. LinkedIn Corp.*,
　31 F.4th 1180 (9th Cir. 2022) ..................................................................................21

*Hueso v. Select Portfolio Servicing, Inc.*,
　527 F. Supp. 3d 1210 (S.D. Cal. 2021)....................................................................20

*Jackson v. Bank of Hawaii*,
　902 F.2d 1385 (9th Cir. 1990) ...............................................................6, 7, 10, 13

*Jacobsen v. Katzer*,
　609 F. Supp. 2d 925 (N.D. Cal. 2009) .......................................................................21

*Johnson v. Hewlett-Packard Co.*,
　809 F. Supp. 2d 1114 (N.D. Cal. 2011), *aff'd*, 546 F. App'x 613 (9th Cir.
　2013) .......................................................................................................13

*Kadrey v. Meta Platforms, Inc.*,
　No. 23-cv-03417, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025) ..........................................6, 20

*Kadrey v. Meta Platforms, Inc.*,
　No. 3:23-cv-03417-VC, 2025 WL 82205 (N.D. Cal. Jan. 13, 2025)..............................12, 16

*Karo v. San Diego Symphony Orchestra Ass'n*,
　762 F.2d 819 (9th Cir. 1985) ..................................................................................21

*Laws v. Sony Music Enter., Inc.*,
　448 F.3d 1134 (9th Cir. 2006) ..................................................................................18

*McCormick v. Sony Pictures Ent.*,
　No. 07-cv-05697, 2008 WL 11336160 (C.D. Cal. Nov. 17, 2008) .....................................19

*McGowan v. Weinstein*,
　505 F. Supp. 3d 1000 (C.D. Cal. 2020) ...................................................................20

*Media.net Advertising FZ-LLC v. Netseer, Inc.*,
　198 F. Supp. 3d 1083 (N.D. Cal. 2016) ..................................................................19

*Mobile Emergency Hous. Corp. v. HP, Inc.*,
　No. 20-CV-09157-SVK, 2022 WL 18098217 (N.D. Cal. Dec. 7, 2022) .................................9

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE
CASE NO. 3:23-cv-03223-AMO

**FILED UNDER SEAL – REDACTED VERSION**

*Morongo Band of Mission Indians v. Rose*,
    893 F.2d 1074 (9th Cir. 1990) ...............................................................................10

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
    472 U.S. 284 (1985)...............................................................................................23

*OpenRisk, LLC v. Microstrategy Servs. Corp.*,
    876 F.3d 518 (4th Cir. 2017) .................................................................................20

*Poe v. Northwestern Mutual Life Insurance Co.*,
    No. 8:21-cv-02065, 2023 WL 4155379 (C.D. Cal. Jan. 20, 2023)...................12, 17

*Saddiq v. Amazon.com*,
    857 Fed. App'x. 281, 2021 WL 3743861 (9th Cir. Aug. 24, 2021) .......................18

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
    No. 18-6825, 2019 WL 13062617 (C.D. Cal. Dec. 17, 2019)..........................16, 17

*Slaughter v. Uponor, Inc.*,
    No. 08-CV-1223-RCJ-GWF, 2009 WL 10693807 (D. Nev. Nov. 19, 2009)...........9

*Solomon v. N. Am. Life and Cas. Ins. Co.*,
    151 F.3d 1132 (9th Cir. 1998) ...............................................................................10

*Sound v. Meta Platforms, Inc.*,
    No. 22-cv-04223-JSC, 2024 U.S. Dist. LEXIS 185597 (N.D. Cal. Oct. 10,
    2024) ........................................................................................................................8

*The New York Times v. Microsoft et al.*,
    No. 1:23-cv-11195, Dkts. 47, 84 (S.D.N.Y. Feb. 23 and Apr. 1, 2024)...................5

*TrustLabs, Inc. v. Jaiyong*,
    No. 21-CV-02606-CRB, 2024 WL 1354486 (N.D. Cal. Mar. 30, 2024) .................9

*Verdugo-Gonzalez v. Holder*,
    581 F.3d 1059 (9th Cir. 2009) ...............................................................................20

*Watson v. Ford Motor Co.*,
    No. 18-cv-00928, 2018 WL 3869563 (N.D. Cal. Aug. 15, 2018) .........................16

*Watters v. Breja*,
    2024 WL 201356 (N.D. Cal. Jan. 18, 2024) ..........................................................21

*X Corp. v. Bright Data Ltd.*,
    733 F. Supp. 3d 832 (N.D. Cal. 2024) ...................................................................21

*Zivkovic v. S. California Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002) .................................................................................7

<p style="text-align:center; color:red"><strong>FILED UNDER SEAL – REDACTED VERSION</strong></p>

## STATUTES

15 U.S.C.
  § 1 ................................................................................................................6
  § 3 ................................................................................................................6

17 U.S.C.
  § 106 ............................................................................................................3
  § 301(a) ......................................................................................................19
  § 1201 ..........................................................................................................6
  § 1201(a)(3)(A) .........................................................................................18
  § 1201(a)(3)(B) .........................................................................................18
  § 1202(b) ......................................................................................................3

18 U.S.C. § 1030 ............................................................................................6

18 U.S.C. § 1030(a)(2)(C) ...........................................................................21

28 U.S.C. § 1407 ............................................................................................5

Cal. Bus. & Prof. Code §§ 17200, *et seq.* .................................................3

Cal. Pen. Code § 496 .....................................................................................6

Cal. Pen. Code § 502 .....................................................................................6

## RULES

Fed. R. Civ. P.
  30(a)(1) ......................................................................................................11
  33(a)(1) ......................................................................................................11
  34(a)(1) ......................................................................................................11

## OTHER AUTHORITIES

Reinventing Search with a New AI-Powered Microsoft Bing and Edge, Your
  Copilot for the Web, Microsoft (Feb. 7, 2023),
  https://blogs.microsoft.com/blog/2023/02/07/reinventing-search-with-a-new-
  ai-powered-microsoft-bing-and-edge-your-copilot-for-the-web/ ...........14

<p style="text-align:center; color:red;">**FILED UNDER SEAL – REDACTED VERSION**</p>

**I.      INTRODUCTION**

1

2          As fact discovery draws to a close, Plaintiffs seek to radically reshape this litigation by

3   (i) introducing eleven new claims, (ii) adding Microsoft Corporation as a defendant, and

4   (iii) broadening the scope of the putative class in a multitude of ways.  The new case, unlike the

5   one the parties have been litigating for nearly two years, would concern a putative class

6   encompassing any copyright holder whose work OpenAI ever "*accessed*," regardless of whether

7   OpenAI even *used* any such work for training; would now focus on "articles, essays, and other

8   written works" (rather than just books); and would expand the relevant time period by two years.

9   Redefining this case to be about any data OpenAI has ever allegedly accessed, regardless of

10  whether OpenAI allegedly used such data for training, will vastly expand the scope of this

11  litigation.  Expanding the case to focus on not just books, but also articles, essays, and short stories,

12  will require significant additional discovery into, *inter alia*, whether Plaintiffs are adequate class

13  representatives, particularly given the different issues of ownership and alleged harm implicated

14  by such works.  And the temporal expansion of the class will require additional discovery from

15  Plaintiffs to address, among other things, questions of numerosity, commonality, and typicality

16  during the expanded time period.  Plaintiffs' Motion for Leave to File Second Amended

17  Consolidated Complaint ("Motion") is not only prejudicial and untimely, but is built on

18  misrepresentations about the record, the procedural history, and the facts Plaintiffs have long

19  known.  The Court should deny Plaintiffs' request to upend and protract this litigation through the

20  addition of meritless claims.

21          Allowing amendment at this juncture would substantially prejudice OpenAI.  Plaintiffs

22  contend—implausibly—that their proposed amendments "will not disrupt the case schedule."

23  Mot. at 4.  That is false.  The parties have been engaged in extensive discovery for over a year.

24  Now, just weeks from the close of that already lengthy process—which the Court made clear will

25  not be extended—Plaintiffs seek to change the claims, parties, and class at issue.  To permit those

26  changes now would necessarily require OpenAI to seek and develop significant additional fact and

27  expert discovery (to the extent the claims survived a motion to dismiss), leading to months of delay

28  in these proceedings.  Plaintiffs' proposed antitrust claim alone will require expensive and lengthy

FILED UNDER SEAL – REDACTED VERSION

1  discovery into new issues related to the alleged market, market power, and injury to competition,
2  among others.  On top of that, Microsoft has not taken discovery in this case to date.  At least as
3  to that new party, the case will be back to square one if they are added.  Plaintiffs lack any good-
4  faith basis to assure this Court that permitting amendment will not cause delay and corresponding
5  prejudice to OpenAI.

6      The prejudice to OpenAI from Plaintiffs' proposed amendments is a direct result of
7  Plaintiffs' unjustified delay in seeking leave to amend.  Although Plaintiffs contend that the
8  proposed amendments are based on "new evidence" and "recent discovery,"[1] the record tells a
9  different story.  Plaintiffs have long been aware of the alleged facts underlying their proposed new
10 claims against both OpenAI and Microsoft.  Indeed, the majority of the documents Plaintiffs
11 identify as forming the basis of their new proposed claims were produced by OpenAI *nine months
12 ago*.  And the later-produced documents Plaintiffs do identify supposedly showing alignment
13 between OpenAI and Microsoft are duplicative of other documents that OpenAI produced in June
14 2024.  In addition, Plaintiffs have also long known of Microsoft's relationship with OpenAI and
15 Microsoft's status as a defendant in related cases—that is precisely why Plaintiffs attempted,
16 unsuccessfully, to involve Microsoft in this action *over a year ago*.  Plaintiffs do not—and
17 cannot—justify their failure to seek leave to amend until now.

18     Finally, even if one were to overlook all of the foregoing, Plaintiffs' proposed
19 amendments—which seek to reintroduce claims this Court has previously dismissed—are futile.
20 Plaintiffs ask the Court's permission to bring numerous claims plainly preempted by the Copyright
21 Act; others that this Court dismissed almost a year ago based on conclusory allegations that
22 Plaintiffs' proposed amendments fail to address; and others that are incoherent on their face.
23 Plaintiffs' Motion should be denied.

24

25

26

27

---

28  [1] Mot. at 1, ECF No. 371.  "ECF" citations herein refer to docket entries in this case, while "Dkt."
    citations refer to docket entries in other cases.

FILED UNDER SEAL – REDACTED VERSION

## II.  BACKGROUND

### A.  Current Stage of the Proceedings

This case is a consolidated action of three putative class actions filed between June and November 2023, in which Plaintiffs brought claims against OpenAI based on its alleged use of Plaintiffs' copyrighted works to train its large language models ("LLMs").  *See* ECF No. 1; No. 4:23-cv-03416, Dkt. 1; No. 4:23-cv-04625, Dkt. 1; ECF No. 74.  To date, although Plaintiffs seek to certify a class of persons defined to include all U.S. copyright holders whose works were "used as training data" in OpenAI's development of its LLMs, ECF No. 1, ¶ 42, this case has focused entirely on book authors pursuing claims based on OpenAI's alleged use of books. Plaintiffs' original complaint brought six causes of action for direct copyright infringement under 17 U.S.C. § 106, DMCA violations under 17 U.S.C. § 1202(b), unfair competition in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, negligence, and unjust enrichment.  *Id.* ¶¶ 51-86.  OpenAI moved to dismiss all of those causes of action other than the direct infringement claim.  ECF No. 33.  The Court granted the motion and dismissed the claims without prejudice, except for Plaintiffs' UCL claim, which the Court allowed to proceed only as to the "unfair" prong—although it noted that claim might be preempted.  ECF No. 104 at 10 & n.6.

On March 13, 2024, Plaintiffs filed a First Consolidated Amended Complaint ("FCAC") realleging (a) direct copyright infringement, and (b) a UCL claim under the unfair prong.  ECF No. 120, ¶¶ 62-69, 70-74.  Plaintiffs did not reallege their DMCA or unjust enrichment claims. The FCAC's putative class remained unchanged from the original complaint, *id.* ¶ 53, and Plaintiffs did not seek to add any new parties or works.  The Court granted OpenAI's motion to dismiss the FCAC's UCL claim, dismissing it with prejudice as "preempted by the Copyright Act." ECF No. 162 at 5.  The case thus proceeded with only the copyright infringement claim.

Discovery in this case has been underway since December 2023 on Plaintiffs' copyright claim, OpenAI's defenses, and class certification issues, and is now at an advanced stage.  OpenAI has produced over 111,000 documents.  Decl. of Allison S. Blanco in Supp. of Opp. to Mot. for Leave ¶ 3.  OpenAI produced more than half of the documents Plaintiffs rely on for their new

FILED UNDER SEAL – REDACTED VERSION

claims *nine months ago*, in June 2024.  *Id.* ¶¶ 5-17.  OpenAI has also made available over 204,000,000 source code files and over one hundred thousand gigabytes of training data source code and training data for inspection.  *Id.* ¶ 18.  Depositions have already begun.  Fact discovery closes in less than six weeks.  ECF No. 209.

The Court has been clear about the case schedule and the need to complete discovery by the April 28 deadline—a timeline OpenAI has been working diligently to meet.  At the November 26, 2024 status conference, the Court extended the close of fact discovery, but warned the parties not to "come back asking me for another three months because I will not be open to that."  Decl. Ex. 1 at 19:5-7.  At the time, Plaintiffs' counsel acknowledged that discovery was "behind [] schedule" but represented that Plaintiffs were "hopeful" that "we can [coordinate discovery] cooperatively and catch back up."  *Id.* at 20:3-6.  And yet, while OpenAI had produced ten of the thirteen documents cited in Plaintiffs' Motion *before* that conference, Plaintiffs did not even suggest then that they intended to seek leave to amend their complaint.  In other words, when the Court set the firm schedule in November 2024, Plaintiffs already had all the information they needed to decide whether to seek leave to amend (indeed, they had that information long before November 2024); they simply chose not to do so until now.

## B. The Putative Class To Date

Since they filed this case, Plaintiffs have focused on books and book authors.  Until now, they had not sought to add any new works or parties.  The class definition, and the class period, have likewise remained consistent throughout the nearly two-year span of this litigation.

Plaintiffs have never suggested that they intended to seek leave to amend to plead new claims, add new parties or works, or expand the scope of the putative class.  Decl. ¶ 24.  Indeed, while the FCAC alleged that the list of its asserted works[2] was "non-exhaustive," FCAC ¶ 22, Plaintiffs refused to provide discovery into any works other than those specifically identified in the FCAC.  *See, e.g.*, Decl. Exs. 2-4; *see also* Decl. ¶ 18. In fact, until February 27, 2025—five days before filing the instant Motion—Plaintiffs repeatedly disclaimed asserting works other than

---

[2] These works are listed in Exhibit A to the FCAC.

FILED UNDER SEAL – REDACTED VERSION

those identified by name in the FCAC, without once communicating that they planned to assert new works.  Decl. Ex. 5.

## C.    Related Cases Involving Microsoft

As Plaintiffs well know, this case is not one of a kind.  By January 2024, fiction and nonfiction book authors had filed three more putative class actions against OpenAI in the Southern District of New York, asserting similar infringement claims arising from OpenAI's alleged use of their works to train its LLMs.  *See Authors Guild et al. v. OpenAI, Inc. et al.*, Case No. 1:23-cv-08292-SHS, Dkt. 1 (S.D.N.Y. Sept. 19, 2023) ("*Authors Guild*"); *Alter et al. v. OpenAI et al.*, Case No. 1:23-cv-10211, Dkts. 1, 26 (S.D.N.Y. Nov. 21 and Dec. 19, 2023) ("*Alter*"); *Basbanes, et al. v. Microsoft, et al.*, Case No. 1:24-cv-00084, Dkt. 1 (S.D.N.Y. Jan. 5, 2024) ("*Basbanes*").  Microsoft is a defendant in all three actions, which have been consolidated (the "New York Consolidated Class Action").[3]  *Authors Guild*, Case No. 1:23-cv-08292-SHS, Dkt. 1; *Alter,* Case No. 1:23-cv-10211, Dkt. 26; *Basbanes*, Case No. 1:24-cv-00084, Dkt. 1.

Plaintiffs are fully aware of those cases, having tried on multiple occasions to participate in them.  Plaintiffs first moved to enjoin the New York Consolidated Class Action in February 2024.  ECF No. 98.  The Court denied that motion.  ECF No. 118.  Plaintiffs then filed a motion to intervene and dismiss or, in the alternative, stay and transfer, the New York Consolidated Class Action, as well as another related case involving the New York Times Company.  Those motions were denied too.  *Authors Guild*, Dkts. 71, 100 (S.D.N.Y. Feb. 12 and Apr. 1, 2024); *The New York Times v. Microsoft et al.*, Case No. 1:23-cv-11195, Dkts. 47, 84 (S.D.N.Y. Feb. 23 and Apr. 1, 2024) ("*The New York Times*").  Plaintiffs sought an interlocutory appeal of those denials, *Authors Guild*, Dkt. 104; *The New York Times*, Dkt. 87, but voluntarily dismissed the appeals months later, *Authors Guild*, Dkt. 215; *The New York Times*, Dkt. 255.  And in January of this year, Plaintiffs opposed OpenAI's motion to consolidate many similar actions across the country under 28 U.S.C. § 1407.  MDL No. 3143, Dkt. 58.  Plaintiffs opposed centralization explicitly because this proceeding is "deep into discovery . . . with depositions imminent," *id.* at 1, and

---

[3]  The *Basbanes* Plaintiffs subsequently stipulated to dismiss their class claims, proceed individually, and stay their action pending a decision on class certification in the consolidated action.  *Basbanes*, Dkt. 103 (Sept. 26, 2024).

FILED UNDER SEAL – REDACTED VERSION

1  "Microsoft is a defendant in" other actions, but "is not named as a defendant" here, *id.* at 16-17.

2  Plaintiffs also opposed centralization because of "many material differences" among the various

3  actions, including that they focus on "different types of work (from books, to news articles and

4  reporting, to audiovisual works), and involve different claims with different elements of proof."

5  *Id.* at 14-15.

6      D.    **Plaintiffs' Proposed Amendments**

7      On March 4, 2025, following the appearance of new lead counsel, Plaintiffs filed the instant

8  Motion.[4]  ECF No. 371.  Plaintiffs' proposed amendments seek to add eleven claims, including a

9  DMCA claim (Count 6), a UCL claim (Count 3), and an unjust enrichment claim (Count 8)—

10  claims this Court already dismissed.  *See* ECF No. 371-16, Second Am. Consolidated Compl.

11  ("SACC").[5]  The proposed SACC would also add a new plaintiff, BCP Literary Inc., Plaintiff

12  Coates's professional corporation, and an entirely new defendant, Microsoft.  *See id.* at p. 1 &

13  ¶ 20.  The proposed amendments also seek material changes to the putative class.  First, they move

14  the beginning of the class period from June 28, 2020, to January 1, 2018—expanding the class

15  period by two-and-a-half years.  *Id.* ¶ 107.  Second, they change the definition of the class from

16  those whose works were allegedly "used as training data for the OpenAI [LLMs]," FCAC ¶ 53, to

17  cover all works allegedly "accessed, copied, or used by OpenAI" for any purpose.  SACC ¶ 108.

18  And third, they enlarge the definition of the putative class to focus not just on books but on all

19  "text data," including but not limited to "books, articles, essays, and other written works."  *Id.*

20  **III.    LEGAL STANDARD**

21      Leave to amend "is not to be granted automatically."  *Jackson v. Bank of Hawaii*, 902 F.2d

22  1385, 1387 (9th Cir. 1990) (affirming denial of motion to amend filed seven months after plaintiffs

23

---

24  [4] Plaintiffs' lead counsel also represents plaintiffs in *Kadrey v. Meta Platforms, Inc.*, Case No.
25  3:23-cv-03417-VC.

[5] The other new claims alleged in the SACC are for vicarious copyright infringement (Count 2);
26  violation of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"),
Cal. Penal Code § 502; (Count 4), circumvention of technological measures in violation of
27  17 U.S.C. § 1201 (Count 5); conversion (Count 7); breach of contract as a third-party beneficiary
(Count 9); violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 (Count
28  10); larceny in violation of Cal. Penal Code § 496 (Count 11); and conspiracy to restrain trade in
violation of the Sherman Act, 15 U.S.C. §§ 1 & 3 (Count 12).

FILED UNDER SEAL – REDACTED VERSION

learned facts underlying amended complaint and "additional claims advance[d] different legal theories and require[d] proof of different facts"); *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (upholding denial of leave to amend where plaintiff had facts prior to first amendment and amendment was both prejudicial and dilatory).  Courts consider five factors when deciding whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the non-moving party; (4) futility of the proposed amendment; and (5) whether there have been previous amendments.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  "[A]ny of these factors [can] justif[y] denying an opportunity to amend[.]" *Ereikat v. Michael & Assocs., PC*, No. 14-cv-05339-JSC, 2015 WL 4463653, at *6 (N.D. Cal. July 21, 2015).  However, "[p]rejudice to the opposing party is the most important factor." *Jackson*, 902 F.2d at 1387.

## IV.    ARGUMENT

Justice requires denying Plaintiffs' Motion.  Their untimely proposed amendments, including the addition of Microsoft (whose commercial relationship with OpenAI was no secret) and the vast expansion of the putative class, are highly prejudicial to OpenAI, as they will impair all deadlines in this case, beginning with the close of fact discovery next month.  Plaintiffs' undue delay in waiting to seek amendment precipitated this prejudicial disruption, which will require the Court and the parties to go back to the drawing board.  Moreover, Plaintiffs' attempt to inject new claims at this late hour, based on a reframing of facts of which Plaintiffs have known for (at least) months, and after previously amending their complaint to narrow the scope of this case, demonstrates bad faith.  And in any event, Plaintiffs' proposed amendments are futile.  All of the *Foman* factors thus weigh against allowing Plaintiffs' amendment.

### A.    Permitting the Proposed Amendments Will Materially Prejudice OpenAI

Plaintiffs' Motion presents the classic sources of prejudice—additional, extensive discovery and a corresponding protraction of the proceedings—that warrant denying a motion for leave to amend. *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).  If the Court grants the Motion, OpenAI will need to address multiple new "causes of action" through a motion to dismiss and will need to conduct "further discovery" to defend against Plaintiffs' new allegations. *Id.*; *see also AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th

FILED UNDER SEAL – REDACTED VERSION

1  Cir. 2006) (finding prejudice where allowing amendment "would have unfairly imposed
2  potentially high, additional litigation costs on [defendant] that could have easily been avoided had
3  [plaintiff] pursued its 'tainted product' theory in its original complaint or reply").

4           1.       *The Proposed Amendments Will Necessitate Extensive Additional and*
5                    *Burdensome Discovery*

6           Plaintiffs' proposed amendments will put at issue new claims, parties, and theories—all of
7  which will require significant, additional discovery.  For example, OpenAI will need to obtain
8  from Plaintiffs discovery on the new asserted works.  To date, Plaintiffs have steadfastly refused
9  to provide discovery into any works other than those named in the FCAC.  OpenAI will need
10 additional discovery regarding, *inter alia*, the alleged ownership of the newly asserted works, the
11 purpose of those works, the publication and sale of those works, any licensing agreements for those
12 works, and the traditional and potential markets for those works.  *See, e.g.*, *Sound v. Meta*
13 *Platforms, Inc.*, No. 22-cv-04223-JSC, 2024 U.S. Dist. LEXIS 185597, at *3 (N.D. Cal. Oct. 10,
14 2024) (denying motion to compel aimed at facilitating plaintiff's ability to move for leave to
15 expand number of copyrighted works at issue because such amendment would unduly delay and
16 "make this complicated action even more unmanageable" by requiring plaintiff "to produce all its
17 evidence showing copyright registration," and defendant "to produce evidence regarding third
18 parties who may have licensed the work").  OpenAI will not only need to obtain document
19 discovery on these new works, but once it has such documents, it will need to re-depose the
20 Plaintiffs who are seeking to assert new works to address those new works.

21          ***Proposed Expanded Class.***  Plaintiffs' proposed expansion of the putative class to focus
22 on *all* text works allegedly "accessed" or "used" by OpenAI for any purpose since 2018 (rather
23 than 2020) will likewise require significant, additional discovery (as well as an exponential number
24 of additional putative class members).  *Compare* SACC ¶ 22 (alleging putative class of "hundreds
25 of thousands of members")*, with* FCAC ¶ 55 ("thousands").  And while Plaintiffs argue here that
26 the proposed amendments will not change the scope of discovery, Plaintiffs said exactly the
27 opposite in response to OpenAI's motion to centralize other cases in this District, claiming that the

28

FILED UNDER SEAL – REDACTED VERSION

differences in copyrighted materials would cause "the discovery and case [to] be differently focused." MDL Dkt. 58, Resp. in Opp. at 14, 16.

To date, Plaintiffs have focused this case on their claims as book authors and their contention that OpenAI used books to train LLMs. *See, e.g.*, ECF No. 98 at 10 (explaining that Plaintiffs were asserting "theories of copyright infringement against OpenAI for OpenAI's copying Plaintiffs' *books* during the *training process*") (emphasis added); *see also* FCAC ¶ 52 (defining the class as involving works that were "used as training data"); FCAC ¶ 66 (alleging, in support of copyright infringement claim, that "OpenAI made copies of Plaintiffs *books during the training process*") (emphasis added). Discovery has developed based on that unwavering focus. The class expansion Plaintiffs propose will thus require discovery into, *inter alia*, whether Plaintiffs can adequately represent the interests of absent class members, such as those who own works different in kind from Plaintiffs' works (e.g., newspapers, composers, or bloggers); whether the harm Plaintiffs claim to have suffered related to their books is typical of the harm allegedly suffered by putative class members; and whether Plaintiffs' eleven newly asserted claims, should they survive dismissal, are typical of the claims of the newly expanded class. *See, e.g.*, *Mobile Emergency Hous. Corp. v. HP, Inc.*, No. 20-CV-09157-SVK, 2022 WL 18098217, at *3, *5, *11 (N.D. Cal. Dec. 7, 2022) (denying leave to amend complaint because, among other things, expansion of "Device Owner" class from "[a]ll persons and entities in the United States who own a Class Printer or a similar HP InkJet Printer" to "[a]ll persons and entities in the United States who own an HP printer" would "greatly alter[]" the litigation and require new discovery and investigation, increasing costs and prejudicing defendant); *Slaughter v. Uponor, Inc.*, No. 08-CV-1223-RCJ-GWF, 2009 WL 10693807, at *7-8 (D. Nev. Nov. 19, 2009) (denying leave to amend because expanded class definition implicated new defendants and was likely to cause significant delay, and "obviousness of the basis for expanded liability" suggested bad faith).

**Proposed Additional Claims.** All of that, of course, is before one gets to the discovery needed on any of the eleven new claims that survive dismissal. Discovery related to the antitrust claim alone will, as the Supreme Court has recognized, involve "unusually high cost" and be "extensive [in] scope." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558–59 (2007) (citations

FILED UNDER SEAL – REDACTED VERSION

omitted).  Plaintiffs' breach of contract claim will require discovery into an unknown (and unspecified) number of alleged contracts to determine, *inter alia*, what alleged contracts are at issue, whether such contracts were actually formed, whether Plaintiffs are third-party beneficiaries of such contracts, and whether the terms of such contracts were breached.  *See, e.g.*, *TrustLabs, Inc. v. Jaiyong*, No. 21-CV-02606-CRB, 2024 WL 1354486, at *8 (N.D. Cal. Mar. 30, 2024) (finding prejudice and denying leave to amend to add breach of contract counterclaim when it would necessarily require "additional, expansive discovery" into "entirely different facts," including whether parties "entered into various contractual agreements").  The other proposed new claims likewise involve issues that the parties have not yet addressed in discovery, such as whether any technological measures effectively controlled access to Plaintiffs' copyrighted works, and what, if any, harm Plaintiffs suffered due to OpenAI's alleged accessing of Plaintiffs' copyrighted works.  And because Plaintiffs waited to seek leave to amend until just before close of fact discovery, the need to extend discovery will prejudice OpenAI by further delaying the proceedings and, in turn, significantly increasing the cost and burden of this litigation.  *See Solomon v. N. Am. Life and Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (holding district court did not abuse its discretion in denying plaintiff's motion to amend on grounds of undue delay and prejudice where motion was made "on the eve of the discovery deadline . . . [and] would have required re-opening discovery, thus delaying the proceedings"); *Jackson*, 902 F.2d at 1388 ("Putting the defendants 'through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.'") (citation omitted).

Plaintiffs self-servingly assert that their new claims "are based on OpenAI's own documents and testimony, and thus are based on facts already within OpenAI's knowledge."  Mot. at 3.  But this assertion is entirely one-sided—i.e., even if Plaintiffs have disavowed their need for additional discovery from OpenAI (or Microsoft, if made a party), the opposite is not true, as explained above.  The new claims Plaintiffs seek to add, along with the expanded putative class and additional parties, will unquestionably "greatly alter[] the nature of th[is] litigation and [] require[] [OpenAI] to . . . undertake[], at a late hour, an entirely new course of defense."  *Morongo*

FILED UNDER SEAL – REDACTED VERSION

*Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (upholding denial of leave to amend on basis of undue delay and prejudice where plaintiffs introduced new legal theory well into litigation).

***Proposed Additional Defendant.*** Even if one were to set aside all of the foregoing, the proposed addition of Microsoft alone will indisputably require a material extension of the discovery schedule. Should Microsoft be added, it will have a right to obtain (and will undoubtedly insist on obtaining) its own discovery from Plaintiffs to defend itself. It is axiomatic that a party has "the right to conduct [its] own discovery based on [its] own defense strategies and theories of the case, which may differ from those employed by" OpenAI. *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-2176, 2013 WL 12324184, at *1 (C.D. Cal. Jan. 3, 2013). That alone will, contrary to Plaintiffs' assertion, require the Court to "disrupt the case schedule." Mot. at 4. There is no reason to believe, as Plaintiffs implausibly suggest, that Microsoft will simply piggyback on OpenAI's discovery effort to date. In fact, the record in cases involving Microsoft suggests just the opposite. In the New York Consolidated Class Action, Microsoft has issued its own unique written discovery requests and engaged in its own discovery motions practice independent of OpenAI. Compare, e.g., *Authors Guild*, Dkt. 264, with *id.* Dkt. 263. Moreover, OpenAI will depose nine of the plaintiffs *before* the currently scheduled hearing date for this Motion, and two more plaintiffs in the five days immediately following—all without Microsoft. *See* Decl. ¶ 25.

Plaintiffs attempt to avoid the significance of adding Microsoft by suggesting that Microsoft has been "operating as a shadow defendant." Mot. at 4. Not so. As Plaintiffs are well aware, only parties may participate in discovery. *See, e.g.*, Fed. R. Civ. P. 30(a)(1) ("A *party* may . . . depose any person[.]"); *id.* 33(a)(1) ("[A] *party* may serve . . . written interrogatories[.]"); *id.* 34(a)(1) ("A *party* may serve . . . a request . . . to produce[.]"). Microsoft, as a non-party, has not participated in discovery in this case at all. Plaintiffs try to obfuscate that reality by misleadingly pointing to Microsoft's attendance at a single deposition of an OpenAI employee. That deposition, however, was *cross-noticed* in the New York Consolidated Class Action, where Microsoft *is* a defendant. *See* Decl. Ex. 6. Microsoft's participation in a deposition that was being

FILED UNDER SEAL – REDACTED VERSION

taken in multiple cases says nothing about whether Microsoft has sought, obtained, or otherwise participated in discovery in *this* case.  It has not.

Plaintiffs cite *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987), to argue that "prejudice to a new defendant is minimal" when the "case is still at the discovery stage with no trial date pending."  Mot. at 4.  That may be true where, as in *DCD Programs*, a plaintiff seeks leave to amend ten days after a dismissal, to add a previously disclosed defendant—and where there is "no evidence that [defendant] would be prejudiced."  833 F.2d at 185, 188.  Here, the proposed changes are much more substantial, the delay is unjustified and undue, and there is copious evidence of prejudice not just to the proposed new defendant (should further discovery not be permitted) but to the *existing* defendants.  *See supra* at 8-11.

2. *Plaintiffs Rely on Inapposite Case Law To Minimize the Prejudice to OpenAI*

Plaintiffs urge this Court to overlook the prejudice that will result from the proposed amendment here on the basis that other courts have permitted amendment and found minimal prejudice in cases involving different facts, procedural histories, and proposed amendments. Whether Plaintiffs' proposed amendment is prejudicial, however, requires consideration of the proposed amendments—and procedural history—of *this* case.  In *Kadrey v. Meta Platforms, Inc.*, on which plaintiffs rely, the proposed amendments—unlike the ones here—involved only two claims, did *not* add new parties, and did *not* expand the class definition.  No. 3:23-cv-03417-VC, Dkt. 407.  In those circumstances, the court found that minimal additional discovery was likely to be necessary.  *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC, 2025 WL 82205, at *1 (N.D. Cal. Jan. 13, 2025).  As described above, the same cannot be said here.

The other cases on which Plaintiffs rely are equally inapt.  For example, the amendment in *Hansen Beverage Co. v. National Beverage Corp.* "involve[d] the same parties, the same issues, and the same or similar facts."  Case No. CV 06-5470 ER, 2007 WL 9747720, at *2 (C.D. Cal. Feb. 12, 2007).  Likewise, *Poe v. Northwestern Mutual Life Insurance Co.* involved a proposed amended complaint that did *not* seek to add any additional causes of actions or parties, and "the factual allegations underlying the [proposed amendment were] virtually identical to the [operative complaint]."  Case No. 8:21-cv-02065, 2023 WL 4155379, at *4 (C.D. Cal. Jan. 20, 2023).  Here,

FILED UNDER SEAL – REDACTED VERSION

in contrast, the proposed amendments are substantial, as is the material prejudice they will cause OpenAI. Indeed, Plaintiffs' delay here is so prejudicial it evidences bad faith. *Guevara v. Marriott Hotel Servs. Inc.*, Case No: C 10–5347 SBA, 2013 WL 6172983, at *5 (N.D. Cal. Nov. 25, 2013) ("Bad faith may be shown when a party seeks to amend late in the litigation process with claims which were, or should have been, apparent early."). Plaintiffs' delay and the corresponding prejudice it will cause counsels strongly against granting leave to amend.

## B.     Plaintiffs' Delay In Seeking Leave To Amend Is Undue And Unjustified

Beyond the prejudice to OpenAI, Plaintiffs' request for leave is woefully untimely. Courts in this Circuit have long recognized that the existence of such undue delay militates against allowing leave to amend. *See AmerisourceBergen Corp.*, 465 F.3d at 953 (observing that "an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable"); *Jackson*, 902 F.2d at 1388 (9th Cir. 1990) (holding seven-month delay before seeking to amend claims was unjustified). A party's delay in seeking leave to amend is undue when the party fails to "seek amendment reasonably promptly after it knew or should have known that amendment was called for." *See Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1120 (N.D. Cal. 2011), *aff'd*, 546 F. App'x 613 (9th Cir. 2013) (internal quotations omitted). That is the case here.

### 1.     *No "New" Discovery Supports Plaintiffs' Request*

Plaintiffs assert they are seeking amendment based on "new evidence" obtained through "recent discovery." Mot. at 1. Not so. Plaintiffs knew (or should have known) of the factual bases underlying their proposed amendments months and, in some cases, years ago.

The most striking example of this is the proposed addition of Microsoft. Microsoft's partnership with OpenAI has been a matter of public record since long before Plaintiffs even filed this lawsuit. *See, e.g.*, Mot. at 12 & n.9 (citing a *January 23, 2023* press release announcing "Microsoft and OpenAI Extend Partnership"). Moreover, as Plaintiffs acknowledge, "Microsoft is already named as a co-defendant in two related copyright infringement cases pending against OpenAI," *Authors Guild* and *Alter*, that "center on the same course of [alleged] conduct—OpenAI, with Microsoft's backing, took and trained its large language models on copyrighted works

FILED UNDER SEAL – REDACTED VERSION

without permission." *Id.* at 4.  Indeed, in February 2024, Plaintiffs moved to intervene in *Authors Guild* and *Alter*, as well as two other related cases.  *E.g.*, Mot. to Intervene, *Authors Guild*, Dkt. 71 (S.D.N.Y. Feb. 5, 2024).  The briefing on that intervention motion, including Plaintiffs' reply in support of the motion, expressly discussed the presence of Microsoft as a defendant in those actions and the corresponding allegations against it.  *Id.*, Dkt. 79 at 4, 6-8; *id.*, Dkt. 89 at 12-13; *id.*, Dkt. 100 at 4.  Plaintiffs' decision not to name Microsoft sooner was clearly a *strategic* choice, not a *factual* one predicated on the need for discovery.

In light of the foregoing, Plaintiffs' suggestion that they only learned through "[r]ecent discovery" that "OpenAI did not act alone," Mot. at 5, strains credulity.  And the exhibits Plaintiffs cite in support of their claim against Microsoft (Exhibits C, D, F, and G) do not establish otherwise.  OpenAI produced Exhibit D, for example, on June 8, 2024.  Decl. ¶ 8.  That document shows that OpenAI was corresponding with Microsoft about ███████████████████████████ ███████████████████████████████████████████████████ ████████  ECF No. 371-5, at 3.  Later-produced documents are of a piece, discussing ways OpenAI and Microsoft were ███████████████████████████.  *See, e.g.*, Ex. G, ECF No. 371-8 (█████████████████████████████████) (produced Jan. 6, 2025); Ex. C, ECF No. 371-4 (██████████████████████) (produced Nov. 1, 2024); Decl. ¶¶ 7, 11.  Moreover, OpenAI produced documents providing much of the same information in June 2024.  Decl. ¶¶ 27-28, Exs. 7, 8.  And the only thing Exhibit F shows regarding Microsoft is that an OpenAI employee █████████████████████████████████ █████████████████████████████████████.  Ex. F, ECF No. 371-7, at 7 (produced Nov. 25, 2024); Decl. ¶ 10.  Plaintiffs do not point to anything in Exhibit F that provided new information that is in any way material to the proposed amendments.  *See, e.g.*, Reinventing Search with a New AI-Powered Microsoft Bing and Edge, Your Copilot for the Web, Microsoft (Feb. 7, 2023),   https://blogs.microsoft.com/blog/2023/02/07/reinventing-search-with-a-new-ai-powered-microsoft-bing-and-edge-your-copilot-for-the-web/ (stating "[w]e're excited to announce the new Bing is running on a new, next-generation OpenAI large language model," that "takes key learnings and advancements from ChatGPT and GPT-3.5").

FILED UNDER SEAL – REDACTED VERSION

Plaintiffs' proposed addition of BCP Literary—the actual owner of the copyright asserted by Mr. Coates—is likewise not based on any new information learned during discovery. BCP Literary was identified as the owner of that work on its 2019 copyright registration—*four years* before this lawsuit was filed. Nothing prevented Mr. Coates from including BCP Literary as a plaintiff at the outset of this litigation—a fact Plaintiffs do not contest.

Even accepting at face value Plaintiffs' (dubious) assertion that they did not know the facts underlying their new claims against OpenAI until OpenAI produced certain documents in June 2024, Plaintiffs failed to timely seek amendment of their complaint or even to put OpenAI on notice of the possibility that they might do so. Plaintiffs cite ten documents produced in discovery as supporting their proposed amendments, all of which are irrelevant, cumulative, and, in many cases, produced long ago. As an initial matter, for the same reasons the proposed addition of Microsoft is based on information Plaintiffs have long known, so too is the proposed addition of the Sherman Act claims, and none of the documents Plaintiffs cite indicate otherwise. *See supra* at 14. For the proposed Sherman Act, CDAFA, CFAA, and DMCA claims, Plaintiffs rely almost entirely on documents OpenAI produced on June 14, 2024. *See* Exs. H, I, J, K, and L, ECF Nos. 371-9 to 371-13. Nowhere do Plaintiffs explain why they could not have moved to add those claims earlier, given the production of those documents nine months ago. And for the breach of contract claim, Plaintiffs point to Exhibit B, but Exhibit B is simply the output of an OpenAI large language model. ECF No. 371-3. It says nothing about whether OpenAI has or has not breached any particular contract. More importantly, Plaintiffs alleged in the FCAC that OpenAI "downloaded copies of Plaintiffs' copyrighted books." FCAC ¶ 58(a). Had they wanted to allege the breach of contract claim they now seek to assert, they could have done so.

Finally, Plaintiffs do not even attempt to justify the significant proposed expansion of the putative class. They do not identify a single piece of discovery supposedly justifying the expansion, presumably because there is none. In fact, by June 2024, OpenAI had already produced over 7,100 documents dated between January 1, 2018, and June 28, 2020, undermining any argument that the purported basis for expanding the putative class period is "new." *See* Decl. ¶ 4. Plaintiffs have no explanation for suddenly expanding it by two-and-a-half years. Nor do Plaintiffs

FILED UNDER SEAL – REDACTED VERSION

1   have any explanation for expanding the focus of the class beyond book authors, to owners of *any*

2   text data "including but not limited to books, articles, essays, and other written works."[6]  SACC

3   ¶ 108.  Nor do Plaintiffs explain why, all of a sudden, the class should encompass OpenAI's

4   alleged accessing of textual data, regardless of whether OpenAI used the data for training.

5                              2.      *Plaintiffs' Cited Authority is Inapposite*

6            To bolster their thin arguments regarding undue delay, Plaintiffs misrepresent several

7   authorities.  Plaintiffs again argue that this case is similar to *Kadrey*, where they allegedly

8   "discovered new facts supporting their new causes of action during the past several weeks."  Mot.

9   at 2.  According to Plaintiffs, because the court there permitted amendment, the Court should do

10  so here as well.  Plaintiffs are wrong.  In *Kadrey*, unlike here, the plaintiffs moved for leave to add

11  just two claims under the DMCA and CDAFA—and nothing else—and they did so just two months

12  after they claimed to have obtained sufficient evidence to support their new allegations.  2025 WL

13  82205, at *1; *Kadrey*, Case No. 3:23-cv-03417-VC, Dkt. 376 at 1 (Jan. 8, 2025).  Here, in contrast,

14  Plaintiffs have known of the facts underlying their proposed amendments for at least 6 months in

15  some cases, and for years in others.  The *Kadrey* ruling therefore says nothing about the appropriate

16  outcome here, where Plaintiffs seek to add eleven claims, multiple new parties, new copyrighted

17  works, and a new putative class.

18          Plaintiffs also assert that the decisions in *Watson v. Ford Motor Co.*, No. 18-cv-00928,

19  2018 WL 3869563 (N.D. Cal. Aug. 15, 2018), *Santa Clarita Valley Water Agency v. Whittaker

20  Corp.*, No. 18-6825, 2019 WL 13062617 (C.D. Cal. Dec. 17, 2019), and *DCD Programs, Ltd. v.

21  Leighton* show that, when new facts or evidence are promptly raised after being discovered, courts

22  routinely grant leave to amend.  Mot. at 2.  What those cases do not say, however, is that a party

23  can sit on its hands, silently, for months (or years) after learning the relevant facts without causing

24  undue delay.  In *Watson*, the court found that a six-month delay (from the filing of the operative

25  complaint, *not* from learning the new facts) was not "undue" in part because the plaintiffs "only

26  recently learned that the [new party] had not been named."  2018 WL 3869563, at *2.  Here,

27  ───────────────

28  [6] Plaintiffs have long known that other copyright cases related to OpenAI's LLMs, including those
    in which Plaintiffs sought to intervene, involved "different types of work (from books, to news
    articles and reporting, to audiovisual works)."  MDL Dkt. 58, Resp. in Opp. at 14.

FILED UNDER SEAL – REDACTED VERSION

Plaintiffs have known that Microsoft was named as a defendant in other ChatGPT-related proceedings, but not this case, for more than a year. *See supra* at 5, 13-14. *Santa Clarita* and *DCD Programs* are just as inapposite as *Watson.* In *Santa Clarita*, the party opposing amendment did not even assert any undue delay or prejudice, and thus the court had no occasion to address those issues. 2019 WL 13062617, at *2. And Plaintiffs cite *DCD Programs* for the proposition that it is permissible for a party moving to amend to wait until they have a sufficient basis to amend. *See* 833 F.2d at 187. The problem here is that Plaintiffs have long known of the alleged bases for the proposed amendments. *DCD* is thus of no help to Plaintiffs.

### 3.    *New Counsel Does Not Move The Needle*

As a last-ditch effort, Plaintiffs contend that the recent appearance of new counsel weighs against a finding of undue delay. Mot. at 3. But in the case on which Plaintiffs rely, *Poe v. Northwestern Mutual Life Insurance Co.*, several factors weighed in favor of permitting amendment that do not exist here. For example, the motion to amend was filed before the deadline to move to amend, and fact discovery did not close until *six months* after it was filed. 2023 WL 4155379, at *5. Here, there is no scheduling order permitting such motions, and Plaintiffs moved to amend less than two months before the close of fact discovery. Most importantly, by June 2024 *at the latest*, Plaintiffs "had all the information necessary to raise the [new claims] [they] now pursue[]." *AmerisourceBergen Corp.*, 465 F.3d at 953. That Plaintiffs waited until the end of fact discovery before moving to amend constitutes undue delay.

* * *

Plaintiffs' belated and untimely request smacks of gamesmanship. The Court was unequivocal that no further discovery extensions would be forthcoming. *See supra* at 4. So rather than request such an extension, Plaintiffs now ask for leave to massively expand the litigation—knowing a case schedule extension would need to follow. The Court should deny this end-run around the case schedule and the Court's November 2024 direction.

### C.    **Plaintiffs' Proposed Amendments Are Futile**

Finally, Plaintiffs' Motion can and should be denied on the independent ground that Plaintiffs' proposed amendments are futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.

FILED UNDER SEAL – REDACTED VERSION

1    1995).  This Court has already rejected several of Plaintiffs' proposed claims—some twice over,

2    and one *with prejudice*.  *See* ECF Nos. 104 at 9, 162 at 3-5.  Plaintiffs' new allegations provide no

3    basis to depart from the Court's prior conclusions; each new claim fails as a matter of law.

4        **DMCA.**  This Court previously dismissed Plaintiffs' Section 1201(b)(1) DMCA claim

5    because, even assuming Plaintiffs alleged that OpenAI removed CMI, Plaintiffs "ha[d] not shown

6    how omitting CMI in the copies used in the training set gave Defendants reasonable grounds to

7    know that ChatGPT's output would induce, enable, facilitate, or conceal infringement."  ECF No.

8    104 at 7.  Plaintiffs' resurrected Section 1201(b)(1) claim suffers from the same fatal flaw.

9    Plaintiffs now contend that OpenAI's alleged removal of CMI would "conceal [] infringement" by

10   "reduc[ing] the chances" that Plaintiffs would know OpenAI had trained on its works.  SACC

11   ¶¶ 153, 155.  That is exactly the theory the Court already rejected–that the alleged removal of CMI

12   would "knowingly enable[] infringement" because "ChatGPT users will not know if any output is

13   infringing."  ECF No. 104 at 7.

14       Plaintiffs' Section 1201(a) claim is equally deficient because Plaintiffs do not plausibly

15   allege circumvention of a "technological measure that effectively controls access" to their

16   copyrighted works, as required to state a claim.  *See* 17 U.S.C. § 1201(a)(3)(A), (B).  Plaintiffs fail

17   to identify any technological measures that allegedly controlled access to their copyrighted works,

18   let alone that OpenAI "circumvented" the same to access Plaintiffs' works.  Plaintiffs therefore

19   fail to state a Section 1201 claim.  *See Saddiq v. Amazon.com*, 857 Fed. App'x. 281, 2021 WL

20   3743861 (9th Cir. Aug. 24, 2021) (Mem. Op.) (affirming dismissal of Section 1201 claim where

21   plaintiff "failed to allege facts sufficient to show that defendants circumvented any technological

22   control with respect to any . . . copyrighted work").

23       **UCL.**  This Court has *twice* rejected Plaintiffs' attempts to state a UCL claim—most

24   recently dismissing Plaintiffs' UCL claim *with prejudice* because it "lacks a tenable legal theory"

25   and is "preempted by the Copyright Act."  ECF No. 162 at 5.  That should be the end of the matter.

26   Even if the Court were to consider Plaintiffs' improperly repleaded UCL claim, the result will be

27   the same.

28

FILED UNDER SEAL – REDACTED VERSION

1    Plaintiffs now seek to pursue a UCL claim based on OpenAI's alleged acquisition of

2    "Plaintiffs' works through unlawful means."  SACC ¶ 132.  This claim, like the prior UCL claims

3    Plaintiffs sought to pursue, is preempted because Plaintiffs' "unlawful acquisition" theory is "part

4    and parcel" of a copyright claim.  *Laws v. Sony Music Enter., Inc.*, 448 F.3d 1134, 1144 (9th Cir.

5    2006) (citation omitted); *see also* ECF No. 162 at 3 ("[T]he Copyright Act [] expressly preempts

6    state law claims where the plaintiff's work 'come[s] within the subject matter of copyright' and

7    the state law grants 'legal or equitable rights that are equivalent to any of the exclusive rights

8    within the general scope of copyright[.]'") (citing 17 U.S.C. § 301(a)).  Plaintiffs attempt to avoid

9    this reality by arguing that, because they alleged that OpenAI "misrepresent[ed]" its adherence to

10    ethics and intellectual property rights, *see* Mot. at 11-12; SACC ¶ 133, their entire claim escapes

11    preemption.   Not so.   "To the extent . . . that the misrepresentation claim merely reasserts

12    defendant's liability for copyright infringement, it is preempted."  *McCormick v. Sony Pictures*

13    *Ent.*, No. 07-cv-05697, 2008 WL 11336160, at *10 (C.D. Cal. Nov. 17, 2008).

14    The entire UCL claim (including the "misrepresentation" allegation) also fails on the merits

15    for the same reason it failed previously—Plaintiffs fail to allege an economic injury, as required

16    to state a claim under the UCL.  *See* ECF No. 104 at 9; *see also, e.g., Doe 1 v. GitHub, Inc.*, 672

17    F. Supp. 3d 837, 860-61 (N.D. Cal. 2023) (*GitHub I*) (dismissing arguments claiming injury from

18    "lost [] value of [plaintiffs'] work, including their ability to receive compensation").  Moreover,

19    Plaintiffs' "misrepresentation" claim—apparently an attempt to state a claim under the

20    "fraudulent" prong of the UCL—must satisfy the heightened pleading requirements of Rule 9(b).

21    *See Media.net Advertising FZ-LLC v. Netseer, Inc.*, 198 F. Supp. 3d 1083, 1088 (N.D. Cal. 2016).

22    Plaintiffs do not—and cannot—meet that standard.  The only actual statement Plaintiffs identify

23    in the SACC is a July 2019 press release in which Microsoft and OpenAI stated, "[w]e are

24    dedicated to ensuring that our AI technologies are developed and used in a manner that is ethical

25    and respects the rights of all individuals."  SACC ¶ 91.  Plaintiffs' conclusory allegations about a

26    vague "statement" that does not even mention the use of copyrighted works, without any

27    explanation of how the statement is allegedly false or misleading, do not satisfy Rule 9(b).

28

FILED UNDER SEAL – REDACTED VERSION

1      ***Unjust enrichment.*** Like their UCL claim, Plaintiffs' revived unjust enrichment claim is

2  (1) preempted and (2) fails on the merits. That claim hinges on OpenAI's purported "unauthorized

3  access, copying, and use of Plaintiffs' copyrighted material," SACC ¶ 163—the same core

4  allegations underlying Plaintiffs' copyright claim. *See id.* ¶ 118. The claim is thus preempted.

5  *See GitHub I*, 672 F. Supp. 3d at 856–57; *Doe 1 v. GitHub, Inc.*, 2024 WL 235217, at *7–8 (N.D.

6  Cal. Jan. 22, 2024) (*GitHub II*); *Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 972, 985 (N.D.

7  Cal. 2024). On the merits, Plaintiffs' unjust enrichment claim suffers from the same defect this

8  Court already identified: "Plaintiffs have not alleged that OpenAI unjustly obtained benefits from

9  Plaintiffs' copyrighted works through fraud, mistake, coercion, or request." ECF No. 104 at 12;

10 *compare* ECF No. 1 ¶¶ 81-84, *with* SACC ¶¶ 163, 166.

11     ***CDAFA.*** The CDAFA claim is also preempted. The court in *Kadrey v. Meta Platforms,*

12 *Inc.* recently dismissed a CDAFA claim based on the same theory alleged in the SACC. Here, as

13 there, Plaintiffs "do not allege that [the defendant] accessed their computers or servers—only their

14 data (in the form of their books)." No. 23-cv-03417, 2025 WL 744032, at *2 (N.D. Cal. Mar. 7,

15 2025). Yet the only reason the books could plausibly be considered Plaintiffs' data is because

16 Plaintiffs own the copyrights on those books. *See id.* Plaintiffs' CDAFA claim is thus based on

17 the same rights governed by copyright and therefore preempted. *See supra* at 19 .

18     ***Conversion.*** Plaintiffs' conversion claim is likewise futile. It is preempted because it is

19 premised entirely on allegedly "unauthorized acquisition and use" of Plaintiffs' copyrighted

20 works. *See* SACC ¶ 158; *see also Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1130

21 (N.D. Cal. 2001). And it fails on the merits because Plaintiffs do not and cannot allege any facts

22 showing that OpenAI deprived *Plaintiffs* of the use or possession of their property, as required to

23 state a claim for conversion. *See McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1022 (C.D. Cal.

24 2020) (conversion claim failed as matter of law where, "[b]ased on the facts alleged, Defendants

25 did not deprive McGowan of possession over her own copy of [a script]").

26     ***Larceny.*** Plaintiffs' claim for larceny under section 496 of the California Penal Code is

27 futile for similar reasons. To plead a larceny claim, Plaintiffs must establish, *inter alia*, that their

28 "property was stolen." *Hueso v. Select Portfolio Servicing, Inc.*, 527 F. Supp. 3d 1210, 1229 (S.D.

FILED UNDER SEAL – REDACTED VERSION

Cal. 2021) (quoting *Verdugo-Gonzalez v. Holder*, 581 F.3d 1059, 1061 (9th Cir. 2009)).  Like nearly all of Plaintiffs' state law claims, this claim is preempted.  Plaintiffs' allegations that their "taken copyrighted material" was "stolen," or "unlawfully acquired," SACC ¶ 182, involve "unauthorized reproduction"—just like a copyright claim.  *OpenRisk, LLC v. Microstrategy Servs. Corp.*, 876 F.3d 518, 526-27 (4th Cir. 2017) (Virginia larceny claim preempted by Copyright Act); *see supra* at 19  (explaining that "misappropriation" of copyrighted material is preempted by Copyright Act).  In addition, as with Plaintiffs' claim for conversion, Plaintiffs' larceny claim fails because Plaintiffs do not allege that they were deprived of possession or use of their property.  *See supra* at 20 .

> **Breach of Contract.**  Plaintiffs' claim for breach of contract as a third-party beneficiary fares no better.  First, the claim, which is predicated on OpenAI's alleged unauthorized copying and use of Plaintiffs' copyrighted works from third-party websites, *see* SACC ¶ 172, is preempted by the Copyright Act.  That claim does not include an "'extra element' which changes the nature of the action or the rights secured under federal copyright protection," as is necessary to avoid preemption.  *Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 933 (N.D. Cal. 2009).  Even if not preempted, however, Plaintiffs fail to allege any specific contract made expressly for Plaintiffs' benefit, as required by California law.  *See Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 822 (9th Cir. 1985).  Instead, they allege generally that "websites from which Defendants obtained data" contain "terms and conditions that prohibit [] unauthorized copying."  SACC ¶ 169.  Such conclusory allegations do not state a claim.  And Plaintiffs' breach of contract claim fails for the additional reason that Plaintiffs have alleged no damages connected with the breach, alleging only "loss of control" and "unauthorized use" of their copyrighted works.  *Id.* ¶ 173;  *see X Corp. v. Bright Data Ltd.*, 733 F. Supp. 3d 832, 847-48 (N.D. Cal. 2024).

> **CFAA.**  Plaintiffs fail to state a CFAA claim because they have not adequately alleged that a "protected computer" was accessed "without authorization."  18 U.S.C. § 1030(a)(2)(C).  Plaintiffs have alleged only that OpenAI accessed information publicly available on third-party websites, which the Ninth Circuit has held does not constitute access "without authorization."  *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1199 (9th Cir. 2022).  Moreover, Plaintiffs' proposed

FILED UNDER SEAL – REDACTED VERSION

1   CFAA claim does not allege anything "more" than the violation of the terms of use of third-party

2   websites, and thus fails to plead a violation of the CFAA. *See Facebook, Inc. v. Power Ventures,*

3   *Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016) (holding that "violation of the terms of use of a website—

4   without more—cannot establish liability under the CFAA"); *Watters v. Breja*, 2024 WL 201356,

5   at *3 (N.D. Cal. Jan. 18, 2024) (dismissing CFAA claim where plaintiff did not allege anything

6   "more" than a violation of its terms of use).

7       **Sherman Act.**  Amendment to add the asserted Sherman Act claim, or anything like it,

8   would be futile.  The claim is bizarrely asserted not just under Section 1, but also Section 3, *see*

9   SACC Count 12—which concerns conduct transpiring in "territories" of the United States or the

10  District of Columbia, a topic altogether unmentioned anywhere in the alleged facts.  Its premise is

11  that "OpenAI and Microsoft artificially and unreasonably restrained the price of training data for

12  LLMs" by "███████████" that training data. *Id.* ¶¶ 186, 188.  That ████████████

13  harms competition, the theory goes, because but for the conspiracy, Microsoft would "████████

14  ████████████████████," *id.* ¶ 188, by ████████████

15  ██████████.  So the alleged agreement effectively amounts to a form of price-fixing,

16  albeit "agreement to a price of zero." *Id.* ¶ 92.

17      None of this makes any sense as a matter of antitrust law.  For one thing, *buyers* can't be

18  liable for price-fixing; only *sellers* can.  There is a separate antitrust theory known as a "group

19  boycott," in which buyers collectively agree not to transact with a particular seller—but the facts

20  alleged do not remotely fit the requirements of that claim either.  Among other problems, the

21  proposed Amended Complaint alleges that OpenAI was training on Plaintiffs' works without a

22  license at least as of 2018, *id* ¶ 107—while the earliest date of any alleged cooperation with

23  Microsoft is July 2019, *id.* ¶ 91.  So even on Plaintiffs' own assertions, OpenAI was evidently

24  training on their works without bidding for licenses well before Microsoft came on the scene.  The

25  facts alleged thus do not support the suggestion that the alleged ████████████ was the

26  product of a conspiracy, as opposed to unilateral conduct.

27      And the problems don't end there.  Another fundamental issue is that copyright licenses

28  are non-rivalrous, in the sense that a given seller can and frequently does grant them concurrently

FILED UNDER SEAL – REDACTED VERSION

1  to multiple buyers.  As a result, the notion of ████████████████████████

2  ███, as presumed in the SACC, lacks any of the foundational facts required for the theory to be

3  coherent.  Would copyright holders have chosen to offer licenses only to *one* AI developer, on an

4  exclusive basis?  If not, in what sense would prospective buyers have been bidding against each

5  other at all, if sellers were happy to deal with each of them separately?

6      Separately, while Plaintiffs seek to attach the label of *per se* liability to their claim, the

7  facts they have alleged show that they are attacking an explicit joint venture between OpenAI and

8  Microsoft.  As a matter of law, such commercial arrangements are not *per se* illegal, and are instead

9  assessed under antitrust's Rule of Reason.  *See Nw. Wholesale Stationers, Inc. v. Pac. Stationery*

10  *& Printing Co.*, 472 U.S. 284, 298 (1985).  Under the Rule of Reason, any theory of liability

11  requires a showing of the defendants' market power.  *Id.*  But the SACC is essentially silent

12  regarding the contours of the supposed market for "copyrighted works as training data for LLMs."

13  SACC ¶ 193.  It contains a conclusory assertion that OpenAI and Microsoft have some kind of

14  market power, s*ee id.* ¶ 190—which under the circumstances would have to mean market power

15  as *buyers* rather than *sellers*.  But that bare assertion, devoid of any underlying facts regarding

16  market share, or even who the relevant competitors are, does not state a claim under *Bell Atlantic*

17  *Corp. v. Twombly*, 550 U.S. at 566-69.  In short, Plaintiffs' legal theory is not even half baked, and

18  should not be injected into the case at this late date.

19  **V.    CONCLUSION**

20      For these reasons, Plaintiffs' Motion for Leave to File Second Amended Consolidated

21  Complaint should be denied.

22

23

24

25

26

27

28

FILED UNDER SEAL – REDACTED VERSION

1    Dated:  March 18, 2025                          Respectfully Submitted,

2

3                                                    By:  */s/ Joseph C. Gratz*

4                                                    MORRISON & FOERSTER LLP
                                                     Joseph C. Gratz (SBN 240676)
5                                                     *jgratz@mofo.com*
                                                     Tiffany Cheung (SBN 211497)
6                                                     *tcheung@mofo.com*
                                                     Joyce C. Li (SBN 323820)
7                                                     *joyceli@mofo.com*
                                                     Melody E. Wong (SBN 341494)
8                                                     *melodywong@mofo.com*
                                                     425 Market Street
9                                                    San Francisco, CA 94105
                                                     Telephone: 415.268.7000
10
                                                     Rose S. Lee (SBN 294658)
11                                                    *roselee@mofo.com*
                                                     Alexandra M. Ward (SBN 318042)
12                                                    *alexandraward@mofo.com*
                                                     707 Wilshire Boulevard, Suite 6000
13                                                   Los Angeles, CA 90017
                                                     Telephone: 213.892.5200
14
                                                     Eric Nikolaides (*pro hac vice*)
15                                                    *enikolaides@mofo.com*
                                                     Zachary S. Newman (*pro hac vice*)
16                                                    *znewman@mofo.com*
                                                     250 West 55th Street
17                                                   New York, NY 10019
                                                     Telephone: 212.468.8000212-336-4061
18
                                                     Max I. Levy (SBN 346289)
19                                                    *mlevy@mofo.com*
                                                     755 Page Mill Road
20                                                   Palo Alto, CA 94304
                                                     Telephone: 650.813.5600
21
                                                     John R. Lanham (SBN 289382)
22                                                    *jlanham@mofo.com*
                                                     Sarah J. Vandervalk (SBN 332651)
23                                                    *svandervalk@mofo.com*
                                                     12531 High Bluff Drive, Suite 100
24                                                   San Diego, CA 92130
                                                     Telephone: 858.720.5100
25
                                                     Carolyn M. Homer (SBN 286441)
26                                                    *cmhomer@mofo.com*
                                                     2100 L Street, NW, Suite 900
27                                                   Washington, DC 20037
                                                     Telephone: 202.650.4597
28

FILED UNDER SEAL – REDACTED VERSION

By:/s/ Andrew M. Gass _____

**LATHAM & WATKINS LLP**
Andrew M. Gass (SBN 259694)
 andrew.gass@lw.com
Joseph R. Wetzel (SBN 238008)
 joe.wetzel@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle (*pro hac vice*)
 sy.damle@lw.com
Elana Nightingale Dawson (*pro hac vice*)
 elana.nightingaledawson@lw.com
Michael A. David (*pro hac vice*)
 michael.david@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Allison L. Stillman (*pro hac vice*)
 alli.stillman@lw.com
Rachel R. Blitzer (*pro hac vice*)
 rachel.blitzer@lw.com
Herman H. Yue (*pro hac vice*)
 herman.yue@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.906.1200

Allison S. Blanco (SBN 287554)
 allison.blanco@lw.com
650 Town Center Drive 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235

By:/s/ Katie Lynn Joyce _____

**KEKER, VAN NEST & PETERS LLP**
Robert A. Van Nest (SBN 84065)
 rvannest@keker.com
R. James Slaughter (SBN 192813)
 rslaughter@keker.com
Paven Malhotra (SBN 258429)
 pmalhotra@keker.com
Michelle S. Ybarra (SBN 260697)
 mybarra@keker.com
Nicholas S. Goldberg (SBN 273614)
 ngoldberg@keker.com
Thomas E. Gorman (SBN 279409)
 tgorman@keker.com
Katie Lynn Joyce (SBN 308263)
 kjoyce@keker.com
Christopher S. Sun (SBN 308945)

FILED UNDER SEAL – REDACTED VERSION

1

*csun@keker.com*
Edward A. Bayley (SBN 267532)

2

*ebayley@keker.com*
633 Battery Street

3

San Francisco, CA 94111
Telephone: 415.391.5400

4

Facsimile: 415.397.7188

5

6

*Attorneys for OpenAI Defendants*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED UNDER SEAL – REDACTED VERSION

**ATTESTATION CLAUSE**

I am the ECF User whose identification and password are being used to file the foregoing document.  Pursuant to Local Rule 5-1(i)(3) regarding signatures, I, Andrew M. Gass, attest that concurrence in the filing of this document has been obtained.

Dated: March 18, 2025                                    */s/ Andrew M. Gass*