**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
205 N. Monroe Street
Media, PA 19063
Telephone: (215) 864-2800
Email: bclobes@caffertyclobes.com

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Email: dboies@bsfllp.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@butioricklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION<br><br>This document relates to:<br><br>Case No. 3:23-cv-03223-AMO<br>Case No. 4:23-cv-03416-AMO<br>Case No. 4:23-cv-04625-AMO | Case No. 3:23-cv-03223-AMO<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ....................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

    I.    PLAINTIFFS MOVED TO AMEND AT THE APPROPRIATE TIME ............................ 2

    II.    PERMITTING AMENDMENT CAUSES MINIMAL PREJUDICE ................................ 4

        A.    REVISIONS TO CLASS DEFINITION ................................................................ 4

        B.    ADDITION OF CLAIMS ....................................................................................... 6

        C.    ADDITION OF MICROSOFT AS DEFENDANT ................................................. 7

        D.    ADDITION OF NEW ASSERTED WORKS ......................................................... 8

        E.    PROCEDURAL SCHEDULE ................................................................................. 9

    III.    PLAINTIFFS' NEW CAUSES OF ACTION ARE NOT FUTILE .................................. 9

        A.    SHERMAN ACT CLAIMS .................................................................................. 10

        B.    DMCA .................................................................................................................. 11

        C.    CFAA ................................................................................................................... 12

        D.    STATE LAW CLAIMS ....................................................................................... 12

    IV.    PLAINTIFFS SEEK TO AMEND IN GOOD FAITH ..................................................... 15

    V.    CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Case(s)**

*Altera Corp. v. Clear Logic, Inc.*,
 424 F.3d 1079 (9th Cir. 2005) ............................................................................................ 12, 14

*AmerisourceBergenCorp. v. Dialysist West*,
 465 F.3d 946 (9th Cir. 2006) .................................................................................................... 3

*Bell v. Wilmott Storage Servs.*,
 12 F.4th 1065 (9th Cir. 2021) ................................................................................................. 14

*Biden v. Ziegler*,
 737 F. Supp. 3d 958 (C.D. Cal. 2024) .................................................................................... 12

*Brown v. Pro Football, Inc.*,
 1992 WL 88039 (D.D.C. Mar. 10, 1992) ................................................................................ 10

*Capitol Audio Access, Inc. v. Umemoto*,
 980 F. Supp. 2d 1154 (E.D. Cal 2013) ................................................................................... 14

*Chesler/Perlmutter Prods., Inc. v. Fireworks Ent., Inc.*,
 177 F. Supp. 2d 1050 (C.D. Cal. 2001) .................................................................................. 14

*DCD Programs v. Leighton*,
 833 F.2d. 183 (9th Cir. 1987) ................................................................................................... 4

*Facebook, Inc. v. Power Ventures, Inc.*,
 844 F.3d 1058 (9th Cir. 2016) ................................................................................................ 12

*Firoozye v. Earthlink Network*,
 153 F. Supp. 2d 1115 (N.D. Cal. 2001) .................................................................................. 13

*fuboTV Inc. v. Walt Disney Co.*,
 745 F. Supp. 3d 109 (S.D.N.Y. 2024) ..................................................................................... 11

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
 958 F.2d 896 (9th Cir. 1992) .................................................................................................. 13

*Gregg v. Monastery Camp*,
 2024 WL 2304564 (N.D. Cal. May 21, 2024) ........................................................................ 10

*Hansen Beverage v. Nat'l Beverage*,
 2007 WL 9747720 (C.D. Cal. Feb. 12, 2007) .......................................................................... 6

*In re Facebook, Inc. Internet Tracking Litig.*,
 956 F.3d 589 (9th Cir. 2020) .................................................................................................. 13

*Jackson v. Bank of Hawaii*,
    902 F.2d 1385 (9th Cir. 1990) .................................................................................................. 3

*James v. J2 Cloud Servs. Inc.*,
    2019 WL 184330 (C.D. Cal. Jan. 14, 2019) ............................................................................ 10

*Johnson v. Hewlett-Packard Co.*,
    809 F. Supp. 2d 1114 (N.D. Cal. 2011) ................................................................................... 4

*Kadrey v. Meta Platforms, Inc.*,
    2025 WL 744032 (N.D. Cal. Mar. 7, 2025) ............................................................... 11, 12, 14

*Kadrey v. Meta Platforms, Inc.*,
    2025 WL 82205 (N.D. Cal. Jan. 13, 2025) ................................................................. 1, 14, 15

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
    (9th Cir. 2000) ........................................................................................................................ 10

*Leines v. Homeland Vinyl Prods., Inc.*,
    2020 WL 6044037 (E.D. Cal. Oct. 13, 2020) ....................................................................... 4, 6

*McCormick v. Sony Pictures Ent.*,
    2008 WL 11336160 (C.D. Cal. Nov. 17, 2008) ..................................................................... 13

*Morand-Doxzon v. DEN Companies Sportservice*,
    2021 WL 831263 (S.D. Cal. Mar. 4, 2021) ............................................................................ 10

*Netbula, LLC v. Distinct Corp.*,
    212 F.R.D. 534 (N.D. Cal. 2003) ........................................................................................... 10

*Ohio Cas. Ins. Co. v. Eagle Mist Corp.*,
    2021 WL 1222424 (E.D. Mo. Mar. 31, 2021) ......................................................................... 6

*Owens v. Kaiser Foundation Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001) ................................................................................................... 1

*Tiedemann v. von Blanckensee*,
    72 F.4th 1001 (9th Cir. 2023) .................................................................................................. 4

*United States v. Socony-Vacuum Oil Co.*,
    310 U.S. 150 (1940) ............................................................................................................... 10

*United States v. Trenton Potteries Co.*,
    273 U.S. 392 (1927) ............................................................................................................... 10

*Wang v. Zymergen Inc.*,
    2024 WL 773603 (N.D. Cal. Feb. 26, 2024) ............................................................................ 6

**Statutes**

Cal. Penal Code §502(c)(13) ........................................................................................................ 14

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs seek to amend their Complaint to add allegations, including those supporting new causes of action and the addition of Microsoft as a defendant, based on facts revealed by evidence only recently produced by OpenAI. For example, it was only on January 6, 2025, that Plaintiffs first learned that ███████████████████████████████████████████████████████. Under the "extreme[ly] liberal[]" standard that governs pleading amendments, *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001), discovery of these facts (and others, like the extent of OpenAI's piracy) justifies granting leave to amend. Indeed, if such evidence is not cause for amendment, it's hard to imagine what is.

OpenAI sidesteps the liberal amendment standard and cites the number of new claims, the addition of OpenAI's co-conspirator as a party, and the timing of Plaintiffs' Motion. But OpenAI ignores that the evidence now made available shows that the scope of its wrongdoing—and the involvement of Microsoft in the conspiracy—is far greater than Plaintiffs initially knew. The amendment process was designed for *precisely* such a situation. As for timing, OpenAI's quibble is puzzling—the parties just began taking depositions, a coordinated process with a parallel proceeding in another court in which Microsoft is already a defendant, and with nearly identical facts. Moreover, while OpenAI portrays amendment as threatening the case schedule, a nearly identical motion was granted by Judge Chhabria in an analogous AI copyright case against Meta. There, Meta proclaimed undue delay when the hearing on plaintiffs' motion for leave to amend occurred weeks *after* fact discovery closed. But the Court accepted the new complaint due to its introduction of additional probative facts. *Kadrey v. Meta Platforms, Inc.*, 2025 WL 82205, at *1 (N.D. Cal. Jan. 13, 2025). Indeed, the amendments there did little to disturb the case schedule. A motion to dismiss was fully briefed and adjudicated, without delaying any of the other case deadlines, including summary judgment.[1]

OpenAI's futility arguments similarly fall flat here. OpenAI does not raise a single argument suggesting Plaintiffs seek to add non-colorable or frivolous claims. Instead, OpenAI raises arguments about the *merits* of Plaintiffs' new claims. But whether Plaintiffs adequately state a claim and whether any of their new causes of action are preempted are questions for a Rule 12 motion, not Rule 15 pleading amendments.

---

[1] That action is arranged such that summary judgment will be adjudicated before class certification.

I.     PLAINTIFFS MOVED TO AMEND AT THE APPROPRIATE TIME

OpenAI's contention that Plaintiffs' amendment is "woefully untimely," Opp. at 13, ignores that documents giving rise to the new claims were produced as late as two weeks before Plaintiffs moved to amend, and many documents supporting these claims continue to be produced. *E.g.*, Mot. Ex. A. Rather than make speculative claims about OpenAI's wrongdoing, Plaintiffs waited until discovery revealed enough actionable facts to support their new claims. That is how the amendment process is supposed to work. Plaintiffs accrued substantial evidence supporting important amendments—including the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *see* Ex. A,[2] OPCO_NDCAL_1688072 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇)—and then moved to amend the Complaint to introduce those allegations.

Take the evidence of Microsoft's direct involvement in, and attempt to profit from, OpenAI's copyright infringement. OpenAI argues that "Microsoft's partnership with OpenAI has been a matter of public record since long before Plaintiffs even filed this lawsuit." Opp. at 13. And according to OpenAI, Microsoft's "commercial relationship with OpenAI was no secret." Opp. at 7. These answers might suffice if Plaintiffs' new allegations were merely that Microsoft is a joint venture partner of OpenAI. But they're not. Instead, OpenAI strategically omits the *actual* reason Plaintiffs move to add Microsoft: the recently discovered ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. The mere existence of a public business partnership is quite distinct from a secret illegal conspiracy.

The documents showing that Microsoft and OpenAI ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ were produced in the weeks immediately before Plaintiffs filed their Motion. One of those documents shows OpenAI and Microsoft ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Mot. Ex. G; *see also* Dkt. 402 (admitting "OpenAI produced Motion Exhibit G to Plaintiffs on January 6, 2025"). Another, a Microsoft slide deck titled ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. B, OPCO_NDCAL_1614289 (produced Jan. 6, 2025). A third is titled ▇▇▇▇▇▇▇▇

---

[2] All exhibit references are to the accompanying declaration of Joshua M. Stein.

1   ██████████████████████████████████████████ Ex. C, OPCO_NDCAL_1606971 (produced Dec.
2   27, 2024).
3       OpenAI says *nothing* to suggest Plaintiffs misunderstand or otherwise mischaracterize the nature of
4   its ████████████ with Microsoft. And OpenAI fails to point to any other earlier-produced documents
5   (outside the ones included as exhibits to the Motion) that could possibly have put Plaintiffs on notice of this
6   arrangement sooner. Instead, OpenAI attempts to distract from highly probative, newly-produced
7   documents by pointing to a single document produced months ago that is only tangentially relevant to
8   Plaintiff's new claims. That document, which was produced in June 2024, contains nothing but vague
9   references to ████████████████████ Mot. Ex. D. That sort of document is a far cry from the
10  newly-produced evidence that Microsoft and OpenAI knowingly partnered to ███████████████
11  ████████████████████████████. *E.g.*, Mot. Ex. F ██████████████████████
12  ██████████████████████) (produced November 25, 2024). Moreover, there was
13  nothing obvious about Microsoft's role as a ████████████████████ from OpenAI. While
14  Microsoft's partnership with OpenAI is "a matter of public record," Opp. at 13, the covert ██████
15  ████████████████████████████████████████████████
16  ████████████████████████████████████████████████
17  is decidedly non-public and new. Mot. Ex. G. Thus, OpenAI's argument is analogous to the one rejected by
18  Judge Chhabria in *Kadrey*, where Meta unsuccessfully argued Plaintiffs were "on notice" of Meta's
19  torrenting activities due to a single earlier-produced document. 2025 WL 82205, at *1 ("The earlier
20  reference to torrenting indicated that Meta was *not* torrenting."). The discovery of those facts is what merits
21  adding Microsoft as a defendant and introducing many of Plaintiffs' other causes of action.
22      In support of its claims of delay, OpenAI cites inapposite caselaw involving vastly different
23  circumstances. For example, OpenAI cites *AmerisourceBergen Corp. v. Dialysist West*, but in that case the
24  moving party "never provided a satisfactory explanation of why" it drastically changed course *fifteen months*
25  after discovering the relevant facts. 465 F.3d 946, 953 (9th Cir. 2006). *Jackson v. Bank of Hawaii* is also
26  easily distinguishable because there the plaintiffs "cite[d] no facts or theories gleaned from the additional
27  discovery period." 902 F.2d 1385, 1388 (9th Cir. 1990). Here, in contrast, Plaintiffs cite specific new
28  evidence to support their newly asserted legal theories—not just the ████████████████ but also newly

discovered evidence that OpenAI ████████████████████████████████████
████████████████████████████████████████████, which has obvious relevance
to infringement and fair use. Plaintiffs' actions therefore align with the principle that a party should "seek amendment reasonably promptly after it knew or should have known that amendment was called for." *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1120 (N.D. Cal. 2011), *aff'd*, 546 F. App'x 613 (9th Cir. 2013) (quotations omitted).

Finally, the availability of *some* earlier facts does not foreclose amendment based on clearer evidence produced later. *See Leines v. Homeland Vinyl Prods., Inc.*, 2020 WL 6044037, at *3 (E.D. Cal. Oct. 13, 2020) (allowing amendment after the discovery cutoff notwithstanding that there was "some support for additional counterclaims well before the discovery cutoff."). OpenAI essentially demands that Plaintiffs move *in seriatim* for leave to amend the Complaint every time a new probative fact is uncovered during discovery. Of course, OpenAI cites no case (nor can it find one) suggesting that is the law or an appropriate use of party and judicial resources. On the contrary, in the Ninth Circuit, plaintiffs who wait until they have "sufficient evidence of conduct upon which they could base claims of wrongful conduct" have "a satisfactory explanation for their delay." *DCD Programs v. Leighton*, 833 F.2d. 183, 187 (9th Cir. 1987); *see also Kadrey*, 2025 WL 82205, at *1 (holding Plaintiffs "did not unduly delay by waiting to move for leave to amend" despite possessing some amount of discovery evidence related to the amendments months earlier, and citing *DCD Programs*). Here, any "delay" occurred because OpenAI withheld some of the most important documents until early 2025. And even if OpenAI is right that Plaintiffs could have amended sooner, this Circuit applies the rule that "delay, by itself, is insufficient to justify denial of leave to amend." *DCD Programs*, 833 F.2d at 186; *Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1011 (9th Cir. 2023) (district court abused discretion by denying leave based on delay alone). Plaintiffs' Motion, filed well before the end of fact discovery and just weeks after probative new documents were produced, is timely.

## II. PERMITTING AMENDMENT CAUSES MINIMAL PREJUDICE

### A. Revisions to Class Definition

The amendment of the class period start date from June 28, 2020, to January 1, 2018, is not prejudicial and aligns with the evidence of OpenAI's copyright infringement. Many of the most probative documents in the case are dated in 2018 and 2019. About 10,000 of the 111,000 OpenAI documents

produced to date were generated between January 2018 and June 2020—enough to show significant activities occurred during that time period that warrant inclusion in the class period. In fact, four of the thirteen documents included as exhibits to the Motion are dated from before the beginning of the current class period, as are many of the documents showing the staggering scale of OpenAI's torrenting of pirated books. *E.g.*, Ex. D, OPCO_NDCAL_0868997 (October 8, 2019 document showing ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). These documents reflect relevant acts of copyright infringement from the very same pirated databases that constitute the basis for Plaintiffs' later allegations, so expanding the class period is appropriate.

      Next, OpenAI argues that the new inclusion of works that were "accessed, copied, or used" by OpenAI, rather than merely works that were "used as training data," creates meaningful prejudice. OpenAI alleges this change will "require significant, additional discovery (as well as an exponential number of additional putative class members)." Opp. at 8. That argument can be translated as follows: OpenAI has fought vigorously to limit the evidence in discovery to only copyrighted works that made it into ChatGPT training datasets, and OpenAI repeatedly asserts that *any other copies it made*—whether for exploratory purposes, for model testing, or just for fun—are not actionable or relevant. Even apart from the merits of the proposed Second Amended Consolidated Complaint ("SACC"), that position is untenable. If OpenAI downloaded ten million copyrighted works from pirated databases, but only used five million of those works in actual ChatGPT training datasets, it *still made unauthorized copies of all ten million works*, and the authors of those works are entitled to join the putative class. Regardless, information about the copies OpenAI made is squarely within OpenAI's possession and there is no prejudice from requiring OpenAI to identify the copies it made of copyrighted works.

      Relatedly, OpenAI falsely alleges that the class definition is dramatically expanded by the substitution of the phrase "All persons or entities domiciled in the United States that own a United States copyright in any text data, whether registered or otherwise held, including but not limited to books, articles, essays, and other written works," in place of "All persons or entities domiciled in the United States that own a United States copyright in any work." If anything, the revised definition *narrows* the putative class by limiting it to persons holding copyrights in *text data* rather than other types of data like images, which is covered by the existing definition. Moreover, the SACC's enumerated categories of written works (books,

articles, essays) already fall under the term "any work" in the existing definition. The only reason OpenAI alleges this language expands the class definition is because OpenAI has spent the past year trying to artificially limit the scope of this case to books. *See* Opp. at 3 ("this case has focused entirely on book authors pursuing claims based on OpenAI's alleged use of books"). Even the operative complaint's class definition is not limited to just books, so it is unclear where OpenAI got that idea. And to the extent OpenAI believes authors of other sources of text data do not belong in the same class as book authors, *see* Opp. at 1, 8-9, it can brief that issue at class certification—something it will have to do anyway because, again, the existing class definition *already includes* those other categories of written works like essays and articles.

### B. Addition of Claims

With respect to Plaintiffs' addition of claims, OpenAI ignores that "the fact that adding new claims to a complaint will require the defendants to defend against those claims on the merits does not constitute undue prejudice." *Wang v. Zymergen Inc.*, 2024 WL 773603, at *3 (N.D. Cal. Feb. 26, 2024) ("time and expense of litigating a motion to dismiss the new claim" not prejudicial); *see generally Ohio Cas. Ins. Co. v. Eagle Mist Corp.,* 2021 WL 1222424, at *4 (E.D. Mo. Mar. 31, 2021) ("Any time a party amends a pleading to add new claims or other parties, the case will demand additional work; denying leave to amend on that ground would not accord with Rule 15's dictate that leave to amend be freely given when justice so requires.") (cleaned up). Courts routinely allow parties to plead additional claims well into and after discovery. *See Leines*, 2020 WL 6044037, at *3-5; *Hansen Beverage v. Nat'l Beverage*, 2007 WL 9747720, at *2 (C.D. Cal. Feb. 12, 2007). OpenAI and Microsoft may choose to bring a motion to dismiss while fact discovery proceeds, without any ultimate change to the hearing date for class certification. Furthermore, any additional discovery that OpenAI or Microsoft need to defend against the new allegations and causes of action is already within OpenAI's and Microsoft's control. And fact witness depositions have barely gotten underway—as of this filing, Plaintiffs have noticed fourteen OpenAI witness depositions, only three of which have occurred, and several of which OpenAI unilaterally postponed.

OpenAI unpersuasively raises only a few specific issues they contend, in conclusory fashion, would require a prejudicial level of discovery. *See* Opp. at 9-10. Without elaboration or analysis, OpenAI claims that discovery into Count 12 for Conspiracy to Restrain Trade will be expensive and high-volume. Not so. Plaintiffs' claim and any associated discovery would be limited to agreements between the two companies

1 to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, see SACC ¶¶ 186-88. The reduced
2 marketplace value of the Asserted Works due to OpenAI's infringement is already at issue.

3       OpenAI further warns that the SACC's breach-of-contract claim will require discovery into an
4 "unknown" and "unspecified" number of contracts. Opp. at 10. But the SACC alleges (1) that OpenAI itself
5 scraped websites, see SACC ¶¶ 44, 68, 91, 106, and engaged in illegal torrenting or downloading, id. ¶¶ 44,
6 55, 64; (2) that OpenAI has publicly admitted that it has used Common Crawl, a site that has itself publicly
7 admitted that it crawled, among others, the domains WordPress.com and Blogspot.com, both of which are
8 known to host copyrighted blogs and articles, id. ¶¶ 73-74; and (3) that websites from which OpenAI
9 obtained data have terms and conditions prohibiting users from unauthorized copying and use. OpenAI
10 possesses all of the relevant information concerning the specific websites from which *it* scraped and
11 downloaded copyrighted material; and if OpenAI did not engage in any such copying, then there will be no
12 discovery. Otherwise, OpenAI and Microsoft should not be permitted to escape liability for validly pleaded
13 claims simply because they breached a great number of website user agreements and created a voluminous
14 paper trail in doing so.

15       **C. Addition of Microsoft as Defendant**

16       Microsoft is already a co-defendant to OpenAI in two related matters in S.D.N.Y., alleging both
17 companies infringed on copyrighted material to train the companies' LLMs, and is already a year into
18 discovery in those cases. OpenAI does not—because it cannot—dispute that, other than perhaps its ▓▓▓
19 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, those cases and this one "center on the same course of conduct—
20 OpenAI, with Microsoft's backing, took and trained its large language models on copyrighted works without
21 permission," and that Microsoft has been tracking and participating in this action. *See* Mot. at 4; Opp. at 11-
22 12. OpenAI fails to identify any way in which it or Microsoft will be prejudiced by Microsoft's addition
23 aside from speculation that Microsoft's involvement will affect the case schedule. Not so, as explained
24 below. Further, OpenAI and Microsoft have *already sought* to act as co-defendants in a centralized MDL
25 encompassing all of these cases. See *In re OpenAI, Inc. Copyright Infringement Litig.*, No. NYS/1:24-cv-
26 04872, Dkt. 23, at 2 (J.P.M.L. Jan. 3, 2025) (Microsoft brief stating, "the claims against Microsoft in the
27 cases at issue cannot be separated from the claims against OpenAI" because they are "inextricably linked");
28

*id.*, Dkt. 62, at 9 (Jan. 10, 2025) (OpenAI brief stating centralization between OpenAI and Microsoft is appropriate despite the fact that "Microsoft is a defendant in some, but not all, of the cases").

The evidence OpenAI cites for its assertion that Microsoft has acted independently in discovery in one of the S.D.N.Y. matters actually shows that the two parties *can* be counted on to "piggyback" on each other. The codefendants' two letters to the court, filed on the same day as each other, request the same relief to address the same discovery into market harm. *Compare Authors Guild*, Dkt. 263 at 2 (Microsoft seeking pre-motion conference to compel discovery from plaintiffs "to assess the market for . . . [and] value of the copyrighted works-in-suit") *with id.*, Dkt. 264 at 1 (OpenAI seeking pre-motion conference to compel discovery from plaintiffs "to produce . . . market-related discovery specific to Plaintiffs' works"). Further, Plaintiffs' description of Microsoft "operating as a shadow defendant" is entirely accurate, as Microsoft already attended a party deposition and at least one party discovery meet-and-confer here. Microsoft is likewise fully apprised of the allegations in this action through litigation of Plaintiffs' third-party subpoena against it. *See*, *e.g.*, Dkt. 409. This is far from a case of Plaintiffs adding a new defendant out of the blue.

### D. Addition of New Asserted Works

There is minimal prejudice to OpenAI from Plaintiffs' modest amendments to their list of Asserted Works. Plaintiffs' First Amended Consolidated Complaint ("FACC") alleges that OpenAI committed direct copyright infringement with respect to 12 literary works written by the 12 named plaintiffs. In recent months, however, Plaintiffs' counsel and experts have reviewed a small subset of datasets that OpenAI has made available on-site at the offices of OpenAI's counsel. In that review, Plaintiffs' counsel and experts identified four additional works written by certain plaintiffs that are also contained within these datasets. So Plaintiffs seek to amend the Complaint to introduce those additional works now that Plaintiffs empirically know OpenAI used them as training data.[3]

---

[3] With respect to adding BCP Literary, Inc. as a new plaintiff, this amendment is far less significant than OpenAI asserts. Certain of Plaintiff Ta-Nehisi Coates's works are technically registered in the name of BCP Literary, Inc., a professional corporation that Coates solely owns. This amendment simply aligns the Asserted Works with the ownership listed on the copyright registrations. Indeed, Appendix A to the FACC, filed in March 2024, showed *The Water Dancer* was written by Coates but the copyright claimant was BCP Literary, Inc., as transferred by written agreement. Dkt. 120-1 at 6. OpenAI thus cannot explain how adding BCP Literary, Inc. would cause any prejudice, especially since Coates has not yet been deposed.

**E. Procedural Schedule**

OpenAI portrays a doomsday scenario where amendment will upend the case schedule. *See* Opp. at 1, 4, 11, 17. Even if modest scheduling adjustments are necessary, there is room in the current case schedule to complete any additional discovery that OpenAI and Microsoft may require. Fact discovery is currently scheduled to conclude on April 28, 2025. *See* Dkt. 209. Opening expert reports—the very next case event—are not due until July 14. *Id.* A substantial portion of that 2.5-month period could be devoted to completing any additional fact discovery if it is necessitated by the SACC. Looking even further downfield, rebuttal expert reports are due a month later on August 12; expert depositions must be completed within another month by September 11; and then there is yet another month for the parties to prepare opening class certification and *Daubert* briefs, which are due October 9 (with another six weeks for oppositions, and then five more weeks for replies). Under the current schedule, the next truly dispositive case event—the class certification hearing—will not occur until January 2026. Thus, if needed, the Court could instead adopt modified case deadlines like the proposal below, which allows additional time for fact discovery while maintaining workable deadlines for subsequent case events.

| CASE EVENT | CURRENT DEADLINE | MODIFIED DEADLINE |
|---|---|---|
| Close of Fact Discovery | April 28, 2025 | June 30, 2025 |
| Opening Expert Reports Due | July 14, 2025 | July 28, 2025 |
| Rebuttal Expert Reports Due | August 12, 2025 | August 25, 2025 |
| Close of Expert Discovery | September 11, 2025 | September 15, 2025 |
| Opening Class Certification & *Daubert* Briefs | October 9, 2025 | October 16, 2025 |
| Class Certification & *Daubert* Opp. Briefs | November 21, 2025 | November 20, 2025 |
| Class Certification & *Daubert* Reply Briefs | December 22, 2025 | December 18, 2025 |

**III. PLAINTIFFS' NEW CAUSES OF ACTION ARE NOT FUTILE**

OpenAI incorrectly seeks to apply a Rule 12 standard to this Motion, arguing it "should be denied on the independent ground that Plaintiffs' proposed amendments are futile." Opp. at 17. But OpenAI fails to acknowledge that "the merits or facts of a controversy are not properly decided in a motion for leave to

amend and should instead be attacked by a motion to dismiss for failure to state a claim or for summary judgment." *Gregg v. Monastery Camp*, 2024 WL 2304564, at *2 (N.D. Cal. May 21, 2024) (Martínez-Olguín, J.) (quotations omitted). Denial of leave to amend is only appropriate in the rare case that the new claims are "obviously futile[.]" *James v. J2 Cloud Servs.,* 2019 WL 184330, at *5 (C.D. Cal. Jan. 14, 2019); *see Morand-Doxzon v. DEN Companies Sportservice*, 2021 WL 831263, at *4 (S.D. Cal. Mar. 4, 2021) ("where there is a colorable claim, courts must grant leave to amend") (emphasis added); *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003) ("Denial of leave to amend on this ground is rare."). In this case, Plaintiffs have sufficiently alleged all their new causes of action and any questions about the ultimate merits of the claims should be resolved on fuller briefing via motion to dismiss.

### A. Sherman Act Claims

OpenAI, without citing any authority, states that "*buyers* can't be liable for price-fixing; only *sellers* can." Opp. at 22. Purchasers can be liable for conspiring to keep prices low in the same way sellers can be liable for conspiring to keep prices high. The Ninth Circuit has held: "Horizontal price fixing is a per se violation regardless of whether the prices set are minimum or maximum." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 988 (9th Cir. 2000) (conspiracy among cheesemakers (milk buyers) to depress the price of milk purchased from dairy farmers (milk sellers)). Indeed, this type of buy-side conspiracy is the factual predicate in virtually all labor antitrust cases involving wage fixing. In those cases, employers (the buyers of labor) conspire to keep the price of labor low. *E.g. Brown v. Pro Football, Inc.,* 1992 WL 88039, at *6 (D.D.C. Mar. 10, 1992) ("wage-fixing is an antitrust violation to which the Sherman Act applies"), *aff'd,* 518 U.S. 231 (1996).

Moreover, price-fixing conspiracies are *per se* illegal under the Sherman Act. For nearly a century, courts have embraced the well-established tradition of applying a rule of *per se* liability to price-fixing. *See United States v. Trenton Potteries Co.,* 273 U.S. 392, 397 (1927) ("The power to fix prices, whether reasonably exercised or not, involves power to control the market and to fix arbitrary and unreasonable prices."). "Whatever economic justification particular price-fixing agreements may be thought to have, the law does not permit an inquiry into their reasonableness. They are all banned because of their actual or potential threat to the central nervous system of the economy." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 225-26 n.59 (1940). That is precisely what the SACC alleges: a buy-side conspiracy between

1    OpenAI and Microsoft to deflate the price of training data. OpenAI's documents show that it was
2    consciously working to ███████████████████████████████, Ex. E, OPCO_NDCAL_1683274, and
3    that ███████████████████████████████ Ex. F, OPCO_NDCAL_1483514.

4        OpenAI's argument that its arrangement is a joint venture and thus somehow immune from antitrust
5    scrutiny is also wrong. "The antitrust laws recognize that joint ventures between horizontal competitors pose
6    particular dangers to competition." *fuboTV Inc. v. Walt Disney Co.*, 745 F. Supp. 3d 109, 134 (S.D.N.Y.
7    2024). Further, the fact that Microsoft and OpenAI were engaged in a partnership for certain purposes does
8    not negate the fact that they are also competitors in the relevant market. *See* Sol Rashidi, *Microsoft Says*
9    *OpenAI Is Now A Competitor*, FORBES (Aug. 4, 2024) ("In the rapidly evolving world of artificial
10   intelligence, partnerships and competition often intertwine unexpectedly.").[4] If not for Microsoft and
11   OpenAI's conspiracy, the companies would have been competitors in the market for training data,
12   competing to offer the most lucrative deals to copyright holders and publishers. Instead, they colluded to
13   ███████████████████████████████████████████████████████████████████████████ deflating the
14   compensation that would've otherwise been paid to the rightsholders. This theory is not futile, and any joint
15   venture-related arguments can again be addressed through motions to dismiss and/or for summary judgment.

16       **B. DMCA**

17       Instead of addressing Plaintiffs' *new* claim, OpenAI merely restates why Plaintiffs' *earlier* §
18   1201(b)(1) claim was dismissed. This Court previously rejected Plaintiffs' argument that the removal of
19   CMI would "knowingly enable[] infringement" because "ChatGPT users will not know if any output is
20   infringing." But the theory of enablement alleged in the SACC is fundamentally different. Whether the end
21   user will know an *output* is infringing is irrelevant: the removal of the CMI made it easier for OpenAI to
22   use the Asserted Works as *inputs*—i.e., as training data. SACC ¶ 152. In doing so, OpenAI enabled and
23   facilitated infringement.

24       Despite OpenAI's improper conflations of the statutory terms "facilitate," "enable," and "conceal,"
25   the statute is disjunctive and only one of the three is necessary. *See Kadrey v. Meta Platforms, Inc.*, 2025
26   WL 744032, at *1-2 (N.D. Cal. Mar. 7, 2025). And Plaintiffs have also alleged that OpenAI's CMI stripping

27
28

---

[4] https://www.forbes.com/sites/solrashidi/2024/08/04/microsoft-says-openai-is-now-competitors/.

*concealed* infringement by lessening the risk that ChatGPT users and the public might learn that it had trained the model on copyrighted works. SACC ¶ 154. OpenAI fails to mention that Judge Chhabria declined to dismiss an analogous DMCA claim against Meta earlier this month. *Kadrey*, 2025 WL 744032, at *2. Judge Chhabria held that "plaintiffs have adequately alleged that Meta intentionally removed CMI to conceal copyright infringement[.]" *Id.* There, as here, plaintiffs' allegations stated a sufficient claim for relief under § 1201(b)(1), and at bare minimum, the amendments are not "futile."

With respect to § 1201(a), OpenAI argues Plaintiffs do not sufficiently allege the circumvention of a "technological measure that effectively controls access[.]" Opp. at 18. But the complaint alleges that Defendants circumvented technological measures that control access to Plaintiffs' copyrighted works by implementing procedures to ignore Robots.txt files in its web crawling to bypass explicit website security measures. *See* SACC ¶ 145.

### C. CFAA

OpenAI argues Plaintiffs' CFAA claim fails because it does not adequately allege a "protected computer" was accessed "without authorization." Opp. at 21. But the law is clear: the CFAA does *not* require a plaintiff to control the physical device that was accessed. *Biden v. Ziegler*, 737 F. Supp. 3d 958, 968 (C.D. Cal. 2024); *see also Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016) ("technological gamesmanship . . . will not excuse liability"). OpenAI's conduct went far beyond just violating a website's terms of use. It employed sophisticated web crawling technology that "copie[d] essentially the entire internet[.]" SACC ¶ 74. And to do so, it bypassed security measures meant to prohibit scraping. *See supra* § II(B); SACC ¶ 145.

### D. State Law Claims

OpenAI repeatedly asserts that each of Plaintiff's state law claims is facially preempted by the Copyright Act. Not so. All of the state law claims are based on OpenAI's unlawful *acquisition* of Plaintiffs' works while the copyright claim is based on OpenAI's *copying* of them. OpenAI's argument that Plaintiffs' state law claims are "part and parcel" of their copyright claim and thus preempted does not stand up to scrutiny. Opp. at 19. A state law is not preempted when it has an "extra element" that is "qualitatively different from those protected under the Copyright Act[.]" *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005).The state law claims alleged here each include an "extra element" distinct from the

1  copyright act and are thus not preempted—and at minimum, are not so obviously preempted as to render
2  amendment futile.

3  **UCL and Unjust Enrichment.** OpenAI notes that when a UCL claim "merely reasserts defendant's
4  liability for copyright infringement, it is preempted." Opp. at 19 (citing *McCormick v. Sony Pictures Ent.*,
5  2008 WL 11336160, at *10 (C.D. Cal. Nov. 17, 2008)). Here though, the UCL claim is based on OpenAI's
6  systematic campaign to mislead the public about the sources of its training data. For example, one OpenAI
7  employee asked ███████████████████████ and another answered ███████
8  ███████████████████████████████████████████████████████████
9  ███████████████████████ Ex. G, OPCO_NDCAL_0045948. This deceptive scheme to
10 conceal the provenance of OpenAI's training data is distinct from the illegality of OpenAI's use of that data
11 in training ChatGPT models. Even if OpenAI's use of its training data was legal, its misrepresentation of its
12 conduct could still violate the UCL because the "element of misrepresentation or deception 'is no part of a
13 cause of action for copyright infringement' and is therefore not preempted." *Firoozye v. Earthlink Network*,
14 153 F. Supp. 2d 1115, 1128 (N.D. Cal. 2001) (quoting 1 *Nimmer on Copyright* § 1.01(B)(1)(e)).

15       OpenAI also falsely contends that Plaintiffs fail to allege an economic injury. OpenAI was unjustly
16 enriched by its own unfair business practices. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589,
17 599-600 (9th Cir. 2020) ("California law recognizes a right to disgorgement of profits resulting from unjust
18 enrichment, even where an individual has not suffered a corresponding loss. . . . Because California law
19 recognizes a legal interest in unjustly earned profits, Plaintiffs have adequately pleaded an entitlement to
20 Facebook's profits"). But for OpenAI's campaign to mislead, Plaintiffs would have shared in OpenAI's
21 profits.

22       **Conversion.** OpenAI fails to appreciate that a conversion need not involve the physical taking of
23 another's tangible personal property. It ignores Ninth Circuit caselaw explaining that the property right at
24 issue is not the physical work itself, but the right to use it: "The property right is in the *use* of [the
25 work] . . . not in the physical possession of [the work]." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying
26 Serv., Inc.*, 958 F.2d 896, 907 n.15 (9th Cir. 1992) (conversion claim not preempted by copyright). By taking
27 Plaintiffs works, OpenAI deprived Plaintiffs of the ability to use them for similar purposes.
28

***Larceny.*** Similarly, OpenAI wrongly asserts that Plaintiffs larceny claim turns on "unauthorized reproduction" and that plaintiffs do not allege their property was stolen. Opp. at 20-21. Not so. OpenAI acquired plaintiffs *stolen* works via online peer-to-peer piracy networks. That act alone constitutes larceny and is wholly independent of the fact that OpenAI later reproduced the works for the purpose of training its GPT models. This massive theft—whereby OpenAI acquired millions of books without paying for them—is an extra element independent of the infringement that occurred later.

***CDAFA.*** OpenAI argues that Plaintiffs' CDAFA claim is "based on the same rights governed by copyright and therefore preempted." Opp. at 20. But the rights protected by CDAFA (to be free from unauthorized access to one's data) are far different from the rights protected by the Copyright Act (to enjoy the profits of one's own creative endeavors). OpenAI's use of peer-to-peer torrenting networks to gain unauthorized access to Plaintiffs' works is an extra element distinct from its copyright infringement. *Capitol Audio Access, Inc.* v. *Umemoto,* 980 F. Supp. 2d 1154, 1159 (E.D. Cal 2013) (rejecting preemption where defendant "engage[d] in various activities relating to accessing computers and data without authorization").[5]

***Breach of Contract.*** OpenAI argues once again that Plaintiffs' Breach of Contract claim contains no extra element. But the contract itself *is* the extra element. That is why "[m]ost courts have held that the Copyright Act does *not* preempt the enforcement of contractual rights." *Altera*, 424 F.3d at 1089; *see also Chesler/Perlmutter Prods., Inc. v. Fireworks Ent., Inc.*, 177 F. Supp. 2d 1050, 1058 (C.D. Cal. 2001) ("A majority of courts have found that breach of contract claims are not preempted because the rights asserted in those claims were not equivalent to rights that could have been asserted in copyright."). While a contract

---

[5] While Judge Chhabria ultimately dismissed a CDAFA claim in *Kadrey*, he first held that the claim was not so futile as to deny motion for leave to amend. 2025 WL 82205, at *1. Moreover, the Court's conclusion that the CDAFA claim was not "based on any right that is 'qualitatively different' from the plaintiffs' rights under the Copyright Act" ignores the "qualitative difference" arising from the use of peer-to-peer file sharing of pirated works. That acquisition method results in more than just "access" to such works: it expands the ability for *others* to download them, thereby contributing to Internet piracy. *See* Cal. Penal Code §502(c)(13) (addressing persons who "[k]nowingly and without permission provide[] or assist[] in *providing a means of accessing* a computer, computer system, or public safety infrastructure computer system computer, computer system, or computer network in violation of this section." (emphasis added)). Judge Chhabria also stated there would be no CDAFA claim if the works were in the public domain. 2025 WL 744032, at *2. But setting aside that the works were *not* in the public domain, the CDAFA analysis is different from copyright. CDAFA requires *knowing* access (i.e. the *extra element* required by the Ninth Circuit), whereas infringement is strict liability, aside from the question of willful infringement. *Bell v. Wilmott Storage Servs.*,12 F.4th 1065, 1081 (9th Cir. 2021). Judge Chhabria did not address that distinction.

claim based on the mere *use* of a copyrighted work may be preempted, "non-preempted copyright cases often involve written contracts that have specific promises that provide an 'extra element[.]'" *Id.* (cleaned up). In this case, the actual terms of service of the websites OpenAI scraped are the written contracts providing the "extra element." Plaintiffs' Breach of Contract claim is thus not preempted. Further, OpenAI misconstrues Ninth Circuit caselaw as requiring Plaintiffs to specifically identify each contract at the pleading stage. Opp. at 21. No such requirement exists and doing so in a complaint would be near-impossible given that OpenAI has scraped data from *millions* of websites and violated an untold number of contracts benefiting Plaintiffs.

### IV. PLAINTIFFS SEEK TO AMEND IN GOOD FAITH

Finally, OpenAI makes baseless offhand references to Plaintiffs' purported delay as constituting "bad faith." Opp. at 7, 12-13. As discussed above, Plaintiffs appropriately waited to bring their amendments until they had gathered sufficient evidence from discovery to support the new claims. This is the appropriate process for amending a pleading, not evidence of bad faith. *See Kadrey*, 2025 WL 82205, at *1 ("Finally, there is no indication that the plaintiffs sought leave to amend in bad faith.").

### V. CONCLUSION

For these reasons, Plaintiffs' Motion for Leave to File Second Amended Consolidated Complaint should be granted.

| | |
|---|---|
| Dated: March 25, 2025 | By: */s/ Joshua M. Stein* <br> Joshua M. Stein |
| **JOSEPH SAVERI LAW FIRM, LLP** <br> Joseph R. Saveri (SBN 130064) <br> Cadio Zirpoli (SBN 179108) <br> Christopher K.L. Young (SBN 318371) <br> William W. Castillo Guardado (SBN 294159) <br> Holden Benon (SBN 325847) <br> Aaron Cera (SBN 351163) <br><br> 601 California Street, Suite 1505 <br> San Francisco, CA 94108 <br> Telephone: (415) 500-6800 <br> Facsimile: (415) 395-9940 <br><br> jsaveri@saverilawfirm.com <br> czirpoli@saverilawfirm.com <br> cyoung@saverilawfirm.com <br> wcastillo@saverilawfirm.com <br> hbenon@saverilawfirm.com <br> acera@saverilawfirm.com <br><br> **CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP** <br> Bryan L. Clobes (*pro hac vice*) <br> Alexander J. Sweatman (*pro hac vice*) <br> Mohammed A. Rathur (*pro hac vice*) <br> 135 South LaSalle Street, Suite 3210 <br> Chicago, IL 60603 <br> Tel: (312) 782-4880 <br> bclobes@caffertyclobes.com <br> asweatman@caffertyclobes.com <br> mrathur@caffertyclobes.com <br><br> Matthew Butterick (SBN 250953) <br> 1920 Hillhurst Avenue, 406 <br> Los Angeles, CA 90027 <br> Telephone: (323) 968-2632 <br> Facsimile: (415) 395-9940 <br> Email: mb@butterricklaw.com <br><br> **VENTURA HERSEY & MULLER, LLP** <br> Daniel J. Muller (SBN 193396) <br> 1506 Hamilton Avenue <br> San Jose, California <br> Telephone: (408) 512-3022 <br> Facsimile: (408) 512-3023 <br> Email: dmuller@venturahersey.com | **BOIES SCHILLER FLEXNER LLP** <br> David Boies (*pro hac vice*) <br> 333 Main Street <br> Armonk, NY 10504 <br> (914) 749-8200 <br> dboies@bsfllp.com <br><br> Maxwell V. Pritt (SBN 253155) <br> Joshua M. Stein (SBN 298856) <br> Margaux Poueymirou (SBN 356000) <br> Reed Forbush (SBN 347964) <br> 44 Montgomery Street, 41st Floor <br> San Francisco, CA 94104 <br> (415) 293-6800 <br> mpritt@bsfllp.com <br> jstein@bsfllp.com <br> mpoueymirou@bsfllp.com <br> rforbush@bsfllp.com <br><br> Jesse Panuccio (*pro hac vice*) <br> 1401 New York Ave, NW <br> Washington, DC 20005 <br> (202) 237-2727 <br> jpanuccio@bsfllp.com <br><br> Evan Matthew Ezray *(pro hac vice)* <br> 401 E. Las Olas Blvd., Suite 1200 <br> Fort Lauderdale, FL 33301 <br> eezray@bsfllp.com <br><br> *Counsel for Individual and Representative Plaintiffs and the Proposed Class* |

Case No. 3:23-cv-03223-AMO

REPLY ISO MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT