KEKER VAN NEST & PETERS    LATHAM & WATKINS LLP    MORRISON FOERSTER

March 28, 2025

**VIA ECF**

The Honorable Robert M. Illman
U.S. District Court for the Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Ave.
McKinleyville, CA 95519

Re: *In re OpenAI ChatGPT Litigation*, Master File No. 23-cv-3223-AMO

Dear Judge Illman:

Pursuant to paragraph 4 of the Court's General Standing Order, the parties submit this joint discovery letter brief concerning Plaintiffs' improper redactions and failure to log privileged documents and communications pursuant to the parties' agreement. *See* Dkt. No. 340. Specifically, OpenAI respectfully requests this Court (i) order all Plaintiffs to properly log all documents withheld as privileged pursuant to the parties' agreement at ECF No. 340 and (ii) compel Plaintiffs to reproduce LIPPMAN000017, LIPPMAN000018, and SNYDER004792 without redactions. The parties conferred regarding the matters addressed herein via video conference on March 19, 2025, and have conferred via email both before and after the video conference.

**OpenAI's Statement.**  Plaintiffs Laura Lippman and Rachel Louise Snyder each produced communications from which they redacted material they claim is protected by attorney-client privilege.  As the parties asserting privilege, they bear the burden of establishing that the claimed privilege exists.  *Kirkpatrick v. City of Oakland*, No. 20-cv-05843-JSC, 2022 WL 137628, at *1 (N.D. Cal. Jan. 14, 2022).  But the communications themselves show no such privilege exists because they involve third parties and neither includes an attorney in relevant part.  Also, notwithstanding the parties' agreement at ECF No. 340, Plaintiffs claim that Lippman's documents do not need to be logged.  OpenAI thus requests that the Court order (i) all Plaintiffs to comply with Federal Rule of Civil Procedure 26(b)(5)(A)(ii) by logging all documents (including portions thereof) withheld as privileged unless they constitute "communications with outside counsel" or "attorney work product" from after June 28, 2023, *see* ECF No. 340, and (ii) Lippman and Snyder to produce the documents at issue without redactions.

*Privilege Logs*.  Parties must "describe the nature of the documents, communications, or tangible things not produced or disclosed" on the basis of a purported privilege. Fed. R. Civ. P. 26(b)(5)(A)(ii).  The parties agreed to exclude from logging those withheld documents that constitute "*their* privileged communications with outside litigation counsel." ECF No. 340 at 2 (emphasis added).  Plaintiffs nevertheless suggest that ECF No. 340 extends to a party withholding documents that consist of a *third party*'s purportedly privileged communications with *Plaintiffs'* outside litigation counsel.  ECF No. 340 states no such thing.  Plaintiffs' refusal to log such documents is contrary to the Federal Rules.  That refusal also raises serious questions about Plaintiffs' logging more generally, which has been extremely sparse (with three Plaintiffs logging no documents at all).  OpenAI thus seeks an order requiring Plaintiffs to include on their privilege logs *all* responsive documents withheld as privileged that are not communications *between* the withholding party and their counsel after June 28, 2023, *see* ECF No. 340, including the two Lippman documents discussed herein (to the extent not reproduced without redactions).

*LIPPMAN000017 & LIPPMAN000018*.  "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."  *U.S. v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020).  Lippman redacted the same conversation from two emails she produced: an email chain starting with an email from attorney Bryan Clobes to former plaintiff Ayelet Waldman, which Waldman then shared with non-party Tayari Jones (among others), who forwarded it to Lippman.  *See* LIPPMAN000017; LIPPMAN000018.  Lippman contends that the redactions are protected attorney-client communications within the scope of the common-interest doctrine.  They are neither.  As to the former, the only attorney-client communication is between Waldman and Clobes.  Only Waldman can assert privilege because the "attorney-client privilege is personal and can only be asserted by the holder of the privilege, which is the client."  *Avago Techs. Gen. IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. 04-cv-05385, 2007 WL 841785, at *2 (N.D. Cal. Mar. 20, 2007); *see also United States v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) (overturned on other grounds).  Plaintiffs now say that attorney "Clobes is asserting the privilege" himself.  Yet he does not contend to be asserting that privilege *on behalf of* Waldman, who owns the purported privilege, as the law requires.  *See Avago*, 2007 WL 841785, at *2.  That is fatal to his claim.

In any event, any privilege that Waldman might have had was destroyed when Waldman shared the Clobes-Waldman correspondence with Jones (and others).  *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012) ("voluntarily disclosing privileged documents to third parties

will generally destroy the privilege"). Lippman says no waiver occurred because the common-interest doctrine applies. She is wrong. That doctrine, which is a limited exception to waiver, applies where parties "make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *Id.* at 1129. Courts in the Ninth Circuit generally "restrict[] the application of the common-interest privilege to represented parties . . . because the doctrine is based on the parties reaching an agreement to pursue a joint legal strategy." *Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1020 (N.D. Cal. 2022); *see id.* at 1019 (collecting cases).

Lippman does not dispute that an agreement is required, but says that an implied agreement existed because Jones, a third-party author, shared a "common legal interest" with Lippman "in protecting their copyrighted works" and the communications were part of a strategy to join this lawsuit. Not so. There is no indication that, when Jones emailed Lippman, or when Lippman responded, the two had *already* agreed to pursue a joint legal strategy. Because an agreement to pursue a joint legal strategy must occur before the disclosure, the common-interest doctrine does not apply here. *See Pac. Pictures*, 679 F.3d at 1129 (finding waiver where there was "no evidence that [the parties] agreed *before* the disclosure jointly to pursue [litigation]"); *see also Rodriguez*, 620 F. Supp. 3d at 1009 ("Thus, the common-interest doctrine preserves the privilege only . . . *after* [parties] reached an agreement to pursue a joint legal strategy.") (emphasis added)). Neither of the cases Lippman cites establish otherwise. *Nidec* simply articulates the general rule and then finds that the disclosures at issue there did not fall within the doctrine. And *Pecover* addresses the common-interest doctrine in the context of work-product protection, which the court there said involves a different standard.

Nor does Lippman dispute that neither she nor Jones was represented at the time of the communications at issue. Instead, she contends that "lack of representation at the time" of the communications is not dispositive. The cases Lippman cites, however, show the opposite. In each case–*Sapphire*, *Pucket*, and *Whitehall*–the parties to the communication at issue were represented before the communication occurred. That is exactly what courts in the Ninth Circuit find is generally required. *See Rodriguez*, 620 F. Supp. 3d at 1019-20.

**SNYDER004792.** Snyder contends that redactions in SNYDER004792 contain "[c]lient communications reflecting legal advice and substance of attorney-client communications and attorney work product to prospective co-plaintiffs concerning this litigation." Snyder Privilege Log (Mar. 18, 2025). The document at issue, however, is a WhatsApp group chat titled "Writers Group" in which Snyder and at least five other *non-party* individuals discussed their gatherings, the possibility of lawsuits by Authors Guild and others, ChatGPT, and Generative AI.

The attorney-client privilege and attorney work-product doctrine are subject to separate rules, but both fail here. As for attorney-client privilege, Snyder does not dispute that her correspondence with unrepresented third parties is not itself an attorney-client communication. Instead, she contends that her correspondence "quoted legal advice" between Snyder and Snyder's attorney. By sharing that "legal advice" with third parties—that is, the five other people in the WhatsApp chat—Snyder waived any claim of attorney-client privilege. *See Kirkpatrick*, 2022 WL 137628, at *1. Snyder, like Lippman, contends that no waiver occurred because the common-interest doctrine applies. It does not. Here, as above, there is no indication that Snyder and the third parties in her group chat had any agreement, formal or informal, to pursue a joint legal strategy. *In re*

3

*Pac. Pictures Corp.*, 679 F.3d at 1129.  Nor is there any indication that *any* of the chat participants were represented by counsel at the time.  *See Rodriguez*, 620 F. Supp. 3d at 1020.

Plaintiffs' reliance on *Rodriguez* and *Amphastar* is unavailing.  *Rodriguez* addresses a communication directly between an attorney and a prospective client–not common-interest privilege.  And *Amphastar* reinforces that parties must be represented at the time of the communication–something Plaintiffs seemingly concede was not the case here.  *See Amphastar Pharms., Inc. v. Aventis Pharma SA*, No. 09-cv-23, 2013 WL 12136380, at *5 (C.D. Cal. Aug. 9, 2013) (doctrine applies so parties can "communicate *with their respective attorneys* and with each other") (emphasis added).  Plaintiffs' position amounts to the contention that the common-interest privilege applies any time a named plaintiff conveys legal advice from counsel to any third parties who may be putative class members.  Such a position, if true, would turn the "narrow exception" provided by the common-interest doctrine into a gaping hole.  *See Rodriguez*, 620 F. Supp. 3d at 1020.  That is not the law.

Attorney work product "is a 'qualified privilege' that protects 'certain materials *prepared by an attorney* acting for his client in anticipation of litigation.'"  *Longitude Licensing Ltd. v. Apple Inc.*, No. 14-cv-04275, 2015 WL 7272667, at *2 (N.D. Cal. Nov. 17, 2015) (emphasis added); *see also United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) ("The work-product doctrine *covers documents . . . prepared by agents of the attorney* in preparation for litigation.") (emphasis added).  Snyder has the burden of showing the doctrine applies.  *Longitude Licensing*, 2015 WL 7272667, at *3.  She has not met her burden:  The communication at issue was not prepared by an attorney— it was a communication by Snyder in which she conveyed legal advice from her attorney.  While Plaintiffs now assert that the redacted content includes a link to attorney-work product, they do not claim that the link is itself work product.  All available indicia strongly suggest that the redacted material is not attorney work product.

**Plaintiffs' Statement.**  Plaintiffs Lippman and Snyder's redactions are proper under the attorney-client privilege and attorney work product doctrine. Over the course of email and videoconference meet and conferrals, Plaintiffs have repeatedly informed OpenAI of the bases of these redactions and therefore met the burden of establishing the claimed privilege over the few documents at issue here.

**LIPPMAN000017 & LIPPMAN000018**.  This redacted communication consists of legal advice between an attorney, Bryan Clobes, and his client, Ayelet Waldman. As an initial matter, Mr. Clobes can and is asserting privilege over this protected communication between attorney and client. Next, this communication remains protected even after the client shared the email with other clients and prospective clients pursuant to the common-interest doctrine. *See United States v. Bergonzi*, 216 F.R.D. 487, 495-96 (N.D. Cal. 2003) (noting that the common interest doctrine is an "anti-waiver exception" that applies when the communication at issue is privileged in the first instance).

First, OpenAI claims that only Waldman can make a claim of attorney-client privilege and that Lippman cannot assert privilege on Waldman's behalf. Not so. Indeed, OpenAI's cited authority makes clear that Mr. Clobes has standing to assert the privilege here concerning a document in his client's possession, custody and control. Immediately after the sentence OpenAI relies on, the court in *Avago Techs. Gen. IP Pte. Ltd. v. Elan Microelectronics Corp.*, No. 04-cv-05385, 2007

WL 841785, at *2 (N.D. Cal. Mar. 20, 2007) specifically held that "[a]n attorney or other representative of a client can claim the attorney-client privilege on the client's behalf …" Here, the attorney—Mr. Clobes—is asserting the privilege over his protected communication with his client Ayelet Waldman. Additionally, the facts in *United States v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988) are distinguishable as the communications at issue were made by a third-party to his attorney. Here, the redacted communication is between the attorney (Mr. Clobes) and his client (Waldman) over which Mr. Clobes is asserting the privilege.

Second, a party's lack of representation at the time they received the privileged communication does not render the common interest doctrine inapplicable. Indeed Courts take a "nuanced approach and look to the circumstances of the particular case" and apply the common interest privilege when "one party is relaying confidential information to the other on behalf of an attorney." *Sapphire Sales Sols., LLC v. Best W. Intl., Inc.*, No. CV-12-01538-PHX-ROS, 2013 WL 12284534, at *2 (D. Ariz. June 27, 2013); *See also Pucket v. Hot Springs Sch. Dist*. No. 23-2, 239 F.R.D. 572, 582-83 (D.S.D. 2006); *IBJ Whitehall Bank & Tr. Co. v. Cory & Associates, Inc*., No. CIV. A. 97 C 5827, 1999 WL 617842, at *6 (N.D. Ill. Aug. 12, 1999).

OpenAI is wrong that there is no common interest between the parties. A written agreement is not required for application of the common interest doctrine and an agreement "may be implied from conduct and situation." *U.S. v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012). Here, at the time of the communication, Plaintiffs Waldman and Lippman shared a common legal interest with Tayari Jones, an author, in protecting their copyrighted works. The communications were a part of their formulation of a common legal strategy to join as party Plaintiffs in anticipated class action litigation to enforce and protect their intellectual property. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (common interest may apply where the parties are likely to be involved in anticipated joint litigation); *Pecover v. Elec. Arts Inc*., No. C08-2820 CW BZ, 2011 WL 6020412, at *2 (N.D. Cal. Dec. 2, 2011) (finding common interest when parties anticipate litigation against a common adversary concerning similar issues). The legal advice provided to and shared between them is privileged and not discoverable.

Next, the material redacted in SNYDER004792 contains both quoted legal advice between a client (Rachel Louise Snyder) and her attorney (Bryan Clobes) and attorney work-product. Moreover, Snyder's circulation of this advice and work product to prospective clients remains protected under the common-interest doctrine. *See Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1020 (N.D. Cal. 2022) ("The common-interest doctrine preserves work-product protection over materials communicated to third parties, so long as they generally share the client's interests and are not adversaries, irrespective of whether they have representation."). As detailed above, Rachel Louise Snyder and her writers group possess a clear common interest, as they are all authors, were all clients and potential clients, and interested in protecting their copyrights against a common adversary.

**SNYDER004792.** The redacted portions within this document contain quoted legal advice and mental impressions from Bryan Clobes to his client Rachel Louise Snyder along with a link to attorney-work product prepared by Snyder's attorneys. OpenAI is correct that this document is Snyder's WhatsApp group chat titled "Writers Group" however, OpenAI is incorrect that Snyder waived the privilege by sharing the communications with third parties. Snyder shared legal advice

to prospective plaintiffs who share a common-interest in enforcing their copyrights against OpenAI. *See Rodriguez v. Seabreeze Jetlev LLC*, 620 F.Supp.3d 1009, 1018-19 (N.D. Cal. 2022) ("Of course, communications may be privileged even if they occur before the attorney is formally retained. For example, communications from prospective clients with the aim of obtaining legal services are generally covered by the attorney-client privilege, even if the attorney is not ultimately retained.") (citing *Barton v. U.S. Dist. Ct.*, 410 F.3d 1104, 1111-12 (9th Cir. 2005). "Persons who share a common interest in litigation should be able to communicate with their respective attorneys *and with each other* to more effectively prosecute or defend their claims."*Amphastar Pharm., Inc. v. Aventis Pharma SA*, No. EDCV 09-23-MJG (OPX), 2013 WL 12136380, at *5 (C.D. Cal. Aug. 9, 2013). The Court should deny OpenAI's request to reveal the protected communications within LIPPMAN000017, LIPPMAN000018 and SNYDER004792.

Further, OpenAI baselessly claims, "the communication at issue was not prepared by an attorney" when in fact, one of the redactions is a link (SNYDER004793) containing attorney-work product prepared by Snyder's attorney. *See Pulse Eng'g, Inc. v. Mascon, Inc.*, No. CIV. 08CV0595JM (AJB), 2009 WL 3234177, at *4 (S.D. Cal. Oct. 2, 2009) ("The work product privilege is not automatically waived by any disclosure to third persons. Rather, the courts generally find a waiver of the work product privilege only if the disclosure 'substantially increases the opportunity for potential adversaries to obtain the information'. [A]ccordingly courts have generally held that where the disclosing party and the third party share a common interest, there is no waiver of the work product privilege."). Un-redacting the link would allow opposing counsel access to protected attorney work product. As described above, all of the parties to this communication share a common-interest in protecting their copyrighted works and OpenAI has not pointed to any evidence (because it cannot) that Snyder's disclosure of this protected communication substantially increased the opportunity for potential adversaries to obtain the information. In fact, to the contrary, Snyder specifically stated the communications were privileged. *See* SNYDER004795.

**Privilege Logs.** Plaintiffs have and will continue to comply with the Federal Rules and the parties' agreement (ECF No. 340). The parties' agreement regarding privilege logs (ECF No. 340) expressly provides June 28, 2023 as the cutoff date to log any privileged communications between the parties and their outside litigation counsel. The redacted portions at issue in LIPPMAN000017 and LIPPMAN000018 contain privileged communications between Mr. Clobes and his client from September 15, 2023, almost three months after the parties' agreed upon cut-off date. With respect to SNYDER004792, Plaintiffs logged this communication despite the fact that it postdated the agreed upon cut-off date because an attorney was not a party to the communication. OpenAI's unsubstantiated assertions that somehow the lack of a certain number of privileged communications between the Plaintiffs and their attorneys raises "significant questions about what Plaintiffs are not including on their logs" is not well taken. As this Court is well aware, the parties spent substantial time negotiating and reaching an agreement on specific parameters to reduce the parties' burden of logging obviously protected documents (ECF No. 340) and OpenAI's bald assertions that Plaintiffs are somehow not complying with this agreement should be rejected. Plaintiffs are complying with their agreement and the Court should deny OpenAI's request to discover protected communications between clients and their counsel and enforce the agreement reached between the parties to prevent the unnecessary logging of clearly privileged documents.

| | |
|---|---|
| Dated: March 28, 2025 | Respectfully Submitted, |

                                                  */s/ Elana Nightingale Dawson*
Elana Nightingale Dawson (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Email: elana.nightingaledawson@lw.com

*/s/ Brian M. Kramer*
Brian M. Kramer
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
Telephone: (858) 720-5100
Email: JLanham@mofo.com

*/s/ Katie Lynn Joyce*
Katie Lynn Joyce
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Email: kjoyce@keker.com

*Counsel for Defendants*

*/s/ Bryan L. Clobes*
Bryan L. Clobes (*pro hac vice*)
CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel: (312) 782-4880
Email: bclobes@caffertyclobes.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

## ATTESTATION

I, Elana Nightingale Dawson, am the ECF user whose user ID and password authorized the filing of this document. Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred in their filing.

Dated: March 28, 2025                                                          */s/ Elana Nightingale Dawson*