SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
KHIRIN A. BUNKER, Cal. Bar No. 329314
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3460
Telephone: 213.620.1780
Facsimile: 213.620.1398
Email kbunker@sheppardmullin.com

*Attorneys for Non-Party Reuters News & Media, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPENAI CHATGPT LITIGATION<br><br>This document relates to:<br><br>Case No. 3:23-cv-03416-AMO<br>Case No. 3:23-cv-04625-AMO | Master File No. 23-cv-3223-AMO<br><br>**NON-PARTY REUTERS NEWS & MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE [ECF No. 378]** |

SMRH:4919-8711-9151

1    Non-Party Reuters News & Media Inc. ("Reuters") hereby opposes Plaintiffs' Motion For

2    Relief From Non-Dispositive Pretrial Order of Magistrate Judge [ECF 378] (the "Motion").

## INTRODUCTION

4    Prior to Plaintiffs' motion to compel being filed, Reuters confirmed to Plaintiffs' counsel

5    that it had no agreements and/or other documents involving the copyrighted materials at issue in the

6    First Consolidated Amended Complaint, or otherwise involving Plaintiffs *whatsoever*.  Ignoring

7    these facts, Plaintiffs continued to demand sweeping categories of Reuters' confidential documents

8    and communications – spanning over ten years – on the grounds that any information regarding

9    licensing of "textual data" *might* be somehow relevant to OpenAI's "anticipated" fair use defense or

10   damages.  When Reuters refused to produce this information, Plaintiffs moved to compel.

11   As Judge Illman correctly found in denying Plaintiffs' motion to compel, Plaintiffs are not

12   entitled to "undeniably confidential commercial information (if not trade secrets) from one non-

13   party, Reuters, about its relationship with another non-party" simply because they served a subpoena

14   and deemed the materials "relevant."  (ECF 378 at 4.)  Rather, Rule 45 required that Plaintiffs make

15   a "concrete, not speculative" showing of "substantial need" for the requested materials.  *Id.*

16   Plaintiffs wholly failed to meet this burden and their motion was denied.  (*Id.* at 4-5 ("what

17   Plaintiffs have not done is to even mention (let alone convincingly establish) why the essence of this

18   information (*i.e.*, its upshot or import, which is merely information about the existence of a market

19   for licensing copyrighted 'textual data' to train an AI model) cannot be either obtained from

20   OpenAI, or by expert witness testimony, or by any other means that would not involve prying into

21   the confidential commercial information of two non-parties").)  Hence, there was no "clear error" by

22   Judge Illman, Plaintiffs simply disagree with the outcome.

23   For these, and the reasons discussed below, Plaintiffs' disagreement with Judge Illman's

24   findings does not warrant relief under Rule 72 and their Motion should be denied.

## LEGAL STANDARD

26   A magistrate judge's non-dispositive pretrial order may only be reversed if it "is clearly

27   erroneous or is contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  "The standard for

28   review of magistrate judge's non-dispositive ruling under Federal Rule of Civil Procedure 72(a) is

-1-

1  highly deferential." *Magana-Munoz v. W. Coast Berry Farms, LLC*, No. 5:20-CV-02087-EJD, 2022

2  WL 6584545, at *2 (N.D. Cal. Sept. 29, 2022).  "The reviewing court may not simply substitute its

3  judgment for that of the deciding court," it must review the order for clear error.  *Grimes v. City &*

4  *Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991). "There is clear error only when the court

5  is 'left with the definite and firm conviction that a mistake has been committed.'" *Zepeda v. Paypal,*

6  *Inc.*, 2014 WL 4354386, at *3 (N.D. Cal. Sept. 2, 2014) (quoting *Easley v. Cromartie*, 532 U.S. 234,

7  242 (2001)).

8                                    **<u>ARGUMENT</u>**

9  **A.    Plaintiffs' Rejections of Reuters' Efforts To Compromise Do Not Support Reversal**

10         As an initial matter, Plaintiffs misconstrue the scope of the dispute before Judge Illman by

11  asserting that Reuters "agreed" to produce certain materials and Plaintiffs' motion to compel thus

12  involved only "additional material" sought by their Subpoena.  (ECF 405 at 2.)  This is untrue.

13  Reuters, through counsel, did seek to resolve its well-founded objections to the burdensome requests

14  in the Subpoena in an effort to avoid incurring the costs of motion practice.  (*See* ECF 348-1, ¶¶4-5.)

15  Plaintiffs' counsel rejected these efforts out of hand and no agreement was ever reached by the

16  parties.  Nevertheless, Plaintiffs claim that "Judge Illman *ignored the parties' agreement* and denied

17  the Motion in its entirety [. . .] rather than simply denying the Motion as to the additional material

18  Plaintiffs sought."  (ECF 405 at 2 (emphasis added).)  But even setting aside Plaintiffs'

19  mischaracterization of an "agreement", they have not shown "clear error" as Judge Illman *did*

20  expressly consider Plaintiffs' rejection of Reuters' offer in ruling on their motion.  (*See* ECF 378 at

21  p. 3 (discussing Reuters' "offered compromise").)  Put simply, Plaintiffs' refusal to compromise

22  before a ruling was reached does not support reversal of the Order and Reuters should not now be

23  penalized for attempting to negotiate a resolution (without waiver of its objections).

24  **B.    Judge Illman Correctly Found That Plaintiffs Did Not Establish "Substantial Need"**

25  **       For The Requested Materials**

26          Plaintiffs further continue to ignore that "[t]he 'mere relevance standard [ ] does not apply to

27  nonparties'" and that "[a] party seeking to obtain discovery from a nonparty 'must demonstrate that

28  its need for discovery outweighs the nonparty's interest in nondisclosure.'"  *Vena v. Moore,*

*Schulman & Moore, APC*, No. 22CV437-W(BLM), 2023 WL 6194315, at \*3 (S.D. Cal. Mar. 24, 2023).  Rather, in seeking Reuters' confidential and trade secret material, Plaintiffs were required to establish a "substantial need for the [. . .] material that cannot be otherwise met without undue hardship."  Fed. R. Civ. Proc. 45(c)(3)(B).

As Judge Illman's order correctly reflects, "[t]he determination of substantial need is particularly important in the context of enforcing a subpoena when discovery of trade secret or confidential commercial information is sought from non-parties." *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 685 (N.D. Cal. 2006) (citing *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 814 (9th Cir. 2003)).  Thus, Plaintiffs were required to make a "concrete, not speculative" showing of "substantial need" for the requested materials.  (ECF 378 at 4-5.)

Here, as they did in their motion to compel, Plaintiffs broadly assert that Reuters' documents "are highly relevant to establishing the market for *text data* for use as LLM training data."  (ECF 405 at 4 (emphasis added).)  However, as Judge Illman recognized, "[b]y using the broad phrase, 'textual data,' Plaintiffs gloss over the difference between the news content which is the subject of the Reuters/Meta agreement, and the non-news content that is the subject of this case."  (ECF 378 at n.2.)[1]

To be clear: Reuters does not have any responsive documents related to Plaintiffs and/or the specific copyrighted materials at issue in this case.  Nevertheless, Plaintiffs continue to maintain that they are entitled to Reuters' confidential and trade secret materials to establish the "broader market for text training data."  (ECF No. 405 at 6.)  But, as Judge Illman properly concluded, the fact that a *non-party* (like Reuters) might enter into a licensing agreement with *another non-party* involving copyrighted materials held by *other non-parties* has "marginal relevance" – if any – to this dispute.  (ECF No. 378 at 4-5.)  And, in the context of Rule 45, Plaintiffs still "have not explained why prying into Reuters' commercial relationship with Meta is the only way to 'establish the existence of

---

[1] The fact that no class has been certified in this litigation is of no moment to Plaintiffs, who continue to point to the definition of the class in their First Consolidated Amended Complaint. (ECF 314 at 6; ECF 405 at 3.)  This seemingly boundless class of claimants certainly would themselves be a better source for information on the market valuation Plaintiffs claim to be seeking here than non-party Reuters.

1    a market for copyrighted work as training data for LLMs . . . [such as to] provide evidence of

2    benchmark licensing agreements and market demand . . . [so that Plaintiffs can] calculat[e] actual

3    damages and recovery of lost profits.'"  (ECF No. 378 at 4-5 (quoting Plaintiffs' motion to

4    compel).)[2]

5        Moreover, none of the authority cited by Plaintiffs demonstrates a "substantial need" for

6    Reuters' trade secret and confidential materials.  To the contrary, the authority Plaintiffs cite

7    confirms that copyright actual damages and fair use market considerations can be determined

8    without "benchmark" valuations from unrelated third parties.  For example, in *Dr. Seuss*

9    *Enterprises, L.P. v. Penguin Books USA, Inc.*, the Ninth Circuit found that market harm could be

10   inferred because the use was non-transformative and admittedly commercial and affirmed the lack

11   of fair use without regard to any benchmark valuations or agreements.  109 F.3d 1394, 1403 (9th

12   Cir. 1997).  Thus, as Judge Illman correctly found, "Plaintiffs have not demonstrated a ***substantial***

13   ***need*** for the discovery they seek" and their Motion should be denied.  (ECF No. 378 at 5 (emphasis

14   added).)

15                            **<u>CONCLUSION</u>**

16       For the foregoing reasons, Non-Party Reuters requests that the Court deny Plaintiffs' Motion

17   in its entirety.

18

19    Dated:  April 2, 2025                SHEPPARD MULLIN RICHTER & HAMPTON LLP

20

21                            By   _____
                                        */s/ Khirin A. Bunker*

22                                    Khirin A. Bunker

23                                   Attorneys for Non-Party
                                   REUTERS NEWS & MEDIA, INC.

24

25   _____

26   [2] Notably, as Judge Illman seemingly recognized, Plaintiffs' expansive definition of a "market for
     high-quality text data used to train LLMs" purports to make every text-related licensing agreement

27   *in existence* "relevant" to their claims without regard for *inter alia* the parties involved, nature
     and/or types of underlying copyrighted materials at issue, geographic scope, particular LLM at

28   issue, or the relationships between the contracting parties and the copyright holders.